IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| PARKERVISION, INC.,<br><br>    *Plaintiff,*<br><br>    v.<br><br>QUALCOMM INCORPORATED,<br><br>    *Defendant.* | Civil Action No. 3:11-cv-719-J-37-JBT |
| QUALCOMM INCORPORATED,<br><br>    *Counterclaim Plaintiff,*<br><br>    v.<br><br>PARKERVISION, INC., and<br>STERNE KESSLER GOLDSTEIN FOX<br><br>    *Counterclaim Defendants.* | |

**DECLARATION OF CULVER SMITH III**
**(Expert Witness)**

I, Culver Smith III, state the following:

1. I am a lawyer licensed to practice law in the state of Florida and have been a member of the Florida Bar in good standing since November 1967. I also am admitted to practice before the United States Supreme Court, the United States Court of Appeals, Eleventh Circuit, and the United States district courts for the Middle and Southern Districts of Florida.

2. I am the sole shareholder of Culver Smith III, P.A., a Florida professional-service corporation based in West Palm Beach, Florida. I have been in private practice in West Palm Beach, Florida, since 1972, after serving for one year as a research aide to a judge of the District

*ParkerVision, Inc.* v. *Qualcomm Inc.*
CASE NO. 3:11-cv-719-J-37-JBT
Declaration of Culver Smith III

Court of Appeal of Florida, Second District, and four years on active duty in the U.S. Navy Judge Advocate General's Corps.  Prior to opening my own practice I spent several years as a civil-litigation partner in the West Palm Beach offices of large Florida firms, including Steel Hector & Davis LLP, Jones Foster Johnston & Stubbs, P.A., and Holland & Knight LLP.

      3.    Over the course of much of my career, I focused on civil trial and appellate matters. For the past several years, the principal focus of my practice has been on issues pertaining to the professional ethics and responsibility of lawyers.  This has taken the form of advising lawyers and law firms on those issues, performing ethics audits for law firms, representing respondents in professional-disciplinary proceedings, representing lawyers in disqualification and sanctions proceedings, and serving as an expert witness, including testifying in court.  In the course of this practice, I have become closely familiar with the body of law often referred to as "the law of lawyering."  This includes lawyers' ethical and fiduciary obligations as applied both in Florida and nationally.

      4.    I am a past president of the Palm Beach County Bar Association and a former member of the Florida Bar Board of Governors.  I have served as a member and chairperson of a Florida Bar grievance committee.  I previously chaired and currently serve as a member of the Florida Bar Professional Ethics Committee, which issues advisory ethics opinions for the benefit of Florida lawyers.  I served on the Florida Bar committee that reviewed the 1983 ABA Model Rules of Professional Conduct for application to Florida and on the Florida Bar committee that performed the same analysis of the revisions to the Model Rules adopted by the ABA in 2002.

      5.    I am a member of the Association of Professional Responsibility Lawyers.  I am a Fellow in the American College of Trial Lawyers and for several years have served on its Legal

Ethics and Professionalism Committee. I have served on and currently co-chair the Professionalism Committee of the Palm Beach County Bar Association.

6. I have written and lectured extensively on the professional ethics and responsibility of lawyers. Lists of those articles and lectures are included in my Curriculum Vitae, a copy of which is attached to this declaration.

7. I have been engaged by Cravath, Swaine & Moore LLP ("Cravath"), counsel for Qualcomm Incorporated ("Qualcomm"), to evaluate and opine on whether the law firm of Sterne, Kessler, Goldstein & Fox LLP ("Sterne Kessler") is allowed under the relevant ethical rules to assist ParkerVision, Inc. ("ParkerVision") in this litigation. In furtherance of this engagement, I have reviewed ParkerVision's Complaint for Patent Infringement, Qualcomm's Answer and Counterclaims, a January 12, 1999, letter agreement entitled "Waiver of Conflict" between Qualcomm and Sterne Kessler, and the following correspondence between the parties and their counsel: an August 16, 2011, letter from Alexander H. Rogers to Michael B. Ray; an August 25, 2011, letter from Michael B. Ray to Alexander H. Rogers; a September 2, 2011, letter from Alexander H. Rogers to Michael B. Ray; a September 9, 2011, letter from Thomas B. Mason to Alexander H. Rogers; an October 14, 2011, letter from Thomas B. Mason to Alexander H. Rogers; an October 18, 2011, letter from David Greenwald to Thomas B. Mason and David M. Wells; and an October 24, 2011, letter from David M. Wells to David Greenwald.

8. Based on the foregoing and on consultation with counsel, I am assuming the following facts (all of which I understand to be undisputed):

As of July 20, 2011, both Qualcomm and ParkerVision were current clients of Sterne Kessler. On July 20, 2011, ParkerVision filed a lawsuit against Qualcomm

*ParkerVision, Inc.* v. *Qualcomm Inc.*
CASE NO. 3:11-cv-719-J-37-JBT
Declaration of Culver Smith III

alleging infringement of certain patents.  On August 1, 2011, Sterne Kessler informed Qualcomm that the firm wished to withdraw from representing Qualcomm in certain ongoing matters.  Qualcomm refused to provide the requested consent.  On August 25, 2011, Sterne Kessler acknowledged in writing that Qualcomm was a current Sterne Kessler client and represented that Sterne Kessler would complete the ongoing Qualcomm matters.  Sterne Kessler further stated: "Sterne Kessler will not enter its appearance or otherwise act as counsel for ParkerVision in the pending Florida matter or any related litigation between Qualcomm and ParkerVision.  We will not advise ParkerVision or its litigation counsel regarding the Florida matter or any other litigation with Qualcomm.  These commitments will remain in place so long as Qualcomm remains a firm client."

On September 16, 2011, Qualcomm filed its Answer and Counterclaims and joined Sterne Kessler as an additional counterclaim defendant.  Qualcomm alleged that Sterne Kessler breached its fiduciary duty of loyalty to Qualcomm and a January 12, 1999 agreement by representing ParkerVision in connection with this litigation.

On October 14, 2011, Sterne Kessler wrote to Qualcomm:  "In light of Qualcomm's recent allegations that Sterne Kessler breached its contractual and fiduciary duties to Qualcomm, Sterne Kessler has an ethical obligation to withdraw immediately from its representation of Qualcomm" and that "Sterne Kessler's withdrawal is effective immediately."

9. Based on those facts and on the knowledge and experience gained in my forty-four years as a practicing lawyer, I have reached and offer the following opinions:

*ParkerVision, Inc.* v. *Qualcomm Inc.*
CASE NO. 3:11-cv-719-J-37-JBT
Declaration of Culver Smith III

    a.  The question of whether Sterne Kessler may assist ParkerVision in connection with this litigation is governed by Florida's Rules of Professional Conduct. *See* R. Reg. Fla. Bar 3-4.6(b) (the rules of professional conduct to be applied "for conduct in connection with a matter pending before a tribunal [are] the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise"). My opinions are based upon ethical principles that are well established both in Florida and nationally, and I would expect my opinions to be the same under another state's ethical rules.

    b.  Even if Sterne Kessler is not (and never becomes) the attorney of record for ParkerVision in the litigation, any legal assistance that Sterne Kessler provides to ParkerVision is considered to be "representation" governed by the Rules of Professional Conduct. *See* Florida Bar Prof'l Ethics Comm. Op. 79-7 (Feb. 15, 2000) ("An attorney who drafts pleadings or other filings for a party triggers an attorney-client relationship with that party even if the attorney does not represent the party as attorney of record.").

    c.  Under Rule 4-1.7 of the Rules Regulating the Florida Bar ("Conflict of Interest; Current Clients"), "a lawyer shall not represent a client if … the representation of [one] client will be directly adverse to another client," unless, *inter alia*, "each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing." R. Reg. Fla. Bar 4-1.7(a)(1) ("Representing Adverse Interests"). The basis for the rule is the duty of loyalty owed by lawyers to their clients. *See id.* R. 4-1.7 cmt. para. [1] ("Loyalty and independent judgment are essential elements in the lawyer's relationship to a client."). The rule applies even if the representation adverse to the client is wholly unrelated to the other matters for which the firm represents the client. *See id.* R. 4-1.7 cmt. para. [3]. In light of Rule 4-1.7, Sterne Kessler

*ParkerVision, Inc.* v. *Qualcomm Inc.*
CASE NO. 3:11-cv-719-J-37-JBT
Declaration of Culver Smith III

could not have represented ParkerVision in this litigation while Qualcomm was also a Sterne Kessler client.

   d. Sterne Kessler cannot represent ParkerVision in this litigation even after Sterne Kessler's withdrawal from its representation of Qualcomm.  A law firm may not avoid a conflict of interest arising from representing clients on opposite sides of a lawsuit by terminating its relationship with the disfavored client.  This rule is commonly referred to as the "hot potato" rule and is well recognized in court decisions and ethics opinions in Florida and other jurisdictions.  Under the "hot potato" rule, the termination of the client does not result in the conflict analysis falling under the less demanding "former client" standard of Rule 4-1.9, which only prohibits a firm that has represented a former client in a matter from representing a current client "in the same or a substantially related matter."  R. Reg. Fla. Bar 4-1.9(a).  Instead, the concurrent-clients analysis under Rule 4-1.7 applies.  Sterne Kessler's termination of its relationship with Qualcomm fits squarely within the "hot potato" rule.  Therefore, Sterne Kessler cannot represent ParkerVision in this litigation any more than it could have when Qualcomm was its client.

   e. That Qualcomm has brought counterclaims against Sterne Kessler does not change my conclusion.  Sterne Kessler has asserted that it had an "ethical obligation" to withdraw from representing Qualcomm as a result of Qualcomm's counterclaims against it.  My opinion is that Sterne Kessler did not have any such obligation.  The Rules of Professional Conduct mandate withdrawal from an ongoing representation only in narrowly-defined circumstances, such as where the continued representation would be in violation of the Rules of Professional Conduct or law, the attorney becomes physically or mentally incapable of

continuing the representation or is discharged by the client, or the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent or has used the lawyer's services to perpetrate a crime or fraud.  *See* R Reg. Fla. Bar 4-1.16(a).  Qualcomm's decision to seek redress for Sterne Kessler's past wrongdoing does not fall within any of the categories of mandated withdrawals.

        f.   Regardless of whether Sterne Kessler's withdrawal was mandatory, Sterne Kessler's present/future assistance to ParkerVision is barred by the same hot-potato rule that would have made such assistance improper when Sterne Kessler acknowledged that Qualcomm was its client.  Clients who assert legally recognized claims against a law firm for purported breaches of fiduciary or contractual duties should not lose the protections of Rule 4-1.7 on account of that lawful decision.  Nor should a law firm be rewarded for those breaches by having the less stringent former-client conflict rule apply.  A contrary result would make the hot-potato rule *less* protective of client interests when the withdrawal is preceded by a course of wrongful conduct on the part of the withdrawing law firm, which is foreign to the policy underlying not only the hot potato rule but the ethics rules as a whole.

        g.   Although Sterne Kessler's conflict is properly analyzed under Rule 4-1.7, its representation of ParkerVision also may violate Rule 4-1.9, which provides, in relevant part, that "[a] lawyer who has formerly represented a client in a matter shall not thereafter . . . represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." R. Reg. Fla. Bar 4-1.9(a). Matters are "substantially related" if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual

*ParkerVision, Inc.* v. *Qualcomm Inc.*
CASE NO. 3:11-cv-719-J-37-JBT
Declaration of Culver Smith III

information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. Further, Florida case law recognizes an irrefutable presumption that confidences are disclosed by a client to an attorney during a representation. *Cf.* R. Reg. Fla. Bar 4-1.9 cmt. para. [5] ("A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in a subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services."). If Sterne Kessler's prosecution or opinion work for Qualcomm ordinarily would have involved the disclosure to Sterne Kessler of confidential information that would "materially advance" ParkerVision's position in this matter, then Sterne Kessler's representation of ParkerVision would violate Rule 4-1.9.

10. In summary, whether Sterne Kessler may assist ParkerVision in the litigation is to be determined by the concurrent-clients conflict rule, Rule 4-1.7. Under that rule, Sterne Kessler is prohibited from assisting ParkerVision in this litigation, because Sterne Kessler's representation will be "directly adverse" to Qualcomm's interests in the litigation.

UNDER PENALTIES OF PERJURY, I declare that I have read the foregoing declaration and that the facts stated in it are true.

*Culver Smith* /W/

**Culver Smith III**

*Date*: November 8, 2011

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 10th day of November, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

> Stephen D. Busey
> busey@smithhulsey.com
>
> James A. Bolling
> jbolling@smithhulsey.com
>
> Ava K. Doppelt
> adoppelt@addmg.com
>
> Brian R. Gilchrist
> bgilchrist@addmg.com
>
> Jeffrey S. Boyles
> jboyles@addmg.com
>
> David R. Atkinson
> datkinson@gunster.com
>
> David M. Wells
> dwells@gunster.com
>
> Katherine H. Underwood
> KUnderwood@gunster.com

                              s/ Keith R. Hummel
                              Keith R. Hummel (admitted pro hac vice)
                              khummel@cravath.com
                              Worldwide Plaza
                              825 Eighth Avenue
                              New York, New York  10019
                              Telephone:  (212) 474-1000
                              Facsimile:  (212) 474-3700
                              *Attorney for Defendant,*
                              *Counterclaim Plaintiff*