**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PARKERVISION, INC.,

       Plaintiff,

v.

QUALCOMM INCORPORATED,

       Defendant.

_____

QUALCOMM INCORPORATED,

       Counterclaim Plaintiff,

v.

PARKERVISION, INC., AND STERNE,
KESSLER, GOLDSTEIN, & FOX PLLC,

       Counterclaim Defendants.

_____

Case No. 3:11-cv-719-J-37TEM

**PLAINTIFF PARKERVISION, INC.'S MOTION TO**
**DISMISS AND STRIKE QUALCOMM'S FIRST AMENDED COMPLAINT**

Plaintiff ParkerVision, Inc. ("ParkerVision") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts One through Seven (patent unenforceability due to inequitable conduct), Count Eleven (aiding and abetting breach of fiduciary duty), Count Thirteen (tortious interference), and Count Fourteen (breach of contract) of Defendant Qualcomm Incorporated's ("Qualcomm") Counterclaims.  Dkt. No. 60 (Qualcomm's "Amended Answer").  ParkerVision also moves to strike ¶¶ 8 through 69 of Qualcomm's Amended Answer and Qualcomm's affirmative defenses of inequitable conduct and unclean hands.

## I.   INTRODUCTION

On July 20, 2011, ParkerVision filed a straightforward complaint seeking relief from Qualcomm's infringement of its patents.  *See* Dkt. No. 1.

On September 16th, Qualcomm answered ParkerVision's complaint. *See* Dkt. No. 18.  In that answer, Qualcomm launched a number of frivolous counterclaims.  Most notably, Qualcomm sued its own lawyers, Sterne Kessler, for allegedly breaching its fiduciary duty. These claims, however, were based on nothing than more than speculation.  Qualcomm also accused ParkerVision for aiding and abetting that alleged breach.  *See* id.  Qualcomm even accused ParkerVision of defrauding the United States Patent Office. *See* id. On November 7th, ParkerVision moved to dismiss and strike these frivolous claims by demonstrating that these counterclaims are legally defective, were not pleaded with the requisite particularity, and are therefore not actionable. *See* Dkt. Nos. 35 and 36.  On December 2nd, Qualcomm filed its first Amended Answer.  In this Amended Answer, did Qualcomm not correct the deficiencies of its Original Answer; moreover, Qualcomm made its pleading worse by adding new, frivolous counterclaims.  Indeed, Qualcomm is now claiming that it, through one of its employees, is a co-inventor of one of ParkerVision's patents.

Before turning to the legal deficiencies of Qualcomm's pleading, it may help the Court to understand why Qualcomm has responded so aggressively and disproportionately to ParkerVision's straightforward complaint.  The reason is that this case is exceptional, in the sense that Qualcomm's past dealings with ParkerVision—where ParkerVision taught Qualcomm about its patented technology and where Qualcomm attempted to license ParkerVision's patents for considerable royalties—are exceptionally bad for Qualcomm.  Simply put, Qualcomm's counterclaims are nothing more than a desperate attempt to do anything it can to avoid standing accountable for its willful infringement.

## II.  LEGAL STANDARDS

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009)).  A pleading that "tenders naked assertions devoid of further factual enhancement," or offers only "labels and conclusions" or a "formulaic recitation of a cause of action" fails to meet this standard and must be dismissed. *See id*. (quoting *Twombly*, 550 U.S. at 555-7).

## III. ARGUMENT

### A.  Qualcomm's Claims of Inequitable Conduct Should Be Dismissed.

Qualcomm's claims for inequitable conduct should be dismissed for the simple reason that they are not actionable.  Everything that Qualcomm alleges in its Amended Answer could be true, yet Qualcomm's theories of inequitable conduct would still be legally deficient.

#### 1.   Background of the Doctrine of Inequitable Conduct

"To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO."  *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir.

-2-

2011) (citing *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir.

2008)).  In other words, inequitable conduct is a very serious allegation—it is no less than

outright fraud on the Patent Office.

And while inequitable conduct may be useful to correct actual instances of fraud on the

Patent Office, the Federal Circuit has recognized that it is over-pleaded and abused by

Defendants:

> [T]he habit of charging inequitable conduct in almost every major
> patent case has become an absolute plague. Reputable lawyers
> seem to feel compelled to make the charge against other reputable
> lawyers on the slenderest grounds, to represent their client's
> interests adequately, perhaps. They get anywhere with the
> accusation in but a small percentage of the cases, but such charges
> are not inconsequential on that account. They destroy the respect
> for one another's integrity, for being fellow members of an
> honorable profession, that used to make the bar a valuable help to
> the courts in making a sound disposition of their cases, and to
> sustain the good name of the bar itself. A patent litigant should be
> made to feel, therefore, that an unsupported charge of "inequitable
> conduct in the Patent Office" is a negative contribution to the
> rightful administration of justice. The charge was formerly known
> as "fraud on the Patent Office," a more pejorative term, but the
> change of name does not make the thing itself smell any sweeter.

*Burlington Industries, Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988); *see*

*also Multiform Desiccants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1482 (Fed. Cir. 1998) ("[T]he

charge of inequitable conduct before the patent office had come to be attached to every patent

prosecution, diverting the court from **genuine issues** and simply spawning satellite litigation.")

(emphasis added).

In an effort to quarantine this "plague," the Federal Circuit, sitting en banc in *Therasense*,

restricted the type of conduct that can even be considered for inequitable conduct.  *See*

*Therasense*, 649 F.3d at 1290 ("This court now tightens the standards for finding both intent and

materiality in order to redirect a doctrine that has been overused to the detriment of the public.").

Similarly, the Federal Circuit's *Exergen* opinion was explicitly directed to curbing "frivolous"

allegations of inequitable conduct. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312,

1331 (Fed. Cir. 2009).

### 2.   Qualcomm's Theories of Inequitable Conduct

Qualcomm has two basic theories of inequitable conduct that it asserts against all patents

in suit: (i) that ParkerVision "concealed a highly material reference;" and (ii) that ParkerVision

"mischaracterized four or more references." *See* Amended Answer at ¶ 10.  These two theories

are the only bases of Qualcomm's inequitable conduct counterclaims for all of the patents-in-

suit. *See* Counts 1-7 of Amended Answer at ¶¶ 72, 83-84, 92-93, 101-102, 110-111, 118-119,

and 127-128.

### 3.   Qualcomm's Own Answer Demonstrates that its "Concealment" Theory is Not Plausible and is Demonstrably Wrong.

In Qualcomm's inequitable conduct counterclaims, Qualcomm accuses ParkerVision of

concealing from the USPTO a reference that it refers to as "Parssinen 1997." *See* Counts 1-7 of

Amended Answer at ¶¶ 72, 84, 93, 102, 111, 119, and 128.  Qualcomm concedes, however, in its

Amended Answer that this reference was disclosed to the Patent Office and was therefore *not*

concealed. *See*, *e.g.*, Amended Answer ¶ 24 ("ParkerVision, David Sorrells and Michael Lee

**must have disclosed** Parssinen 1997 to the PTO at some point subsequent to the granting of the

Petition to Make Special because Parssinen 1997 is listed on the face of the '551 Patent.")

(emphasis added).  Indeed, this reference is listed on the face of all patents-in-suit.  As

Qualcomm's own answer concedes that ParkerVision disclosed the Parssinen 1997 reference to

the Patent Office, not only is Qualcomm's theory of inequitable conduct not "plausible on its

face," *see Iqbal*, 129 S.Ct. at 1949; it is demonstrably wrong.[1, 2]

> 4.  Qualcomm's "Mischaracterization" Theory is Not Actionable.

Qualcomm accuses ParkerVision of making material misrepresentations to the Patent

Office.  *See* Counts 1-7 of Amended Answer at ¶¶ 72, 83, 92, 101, 110, 118, and 127.  But every

alleged fact that Qualcomm cites in support of this allegation is merely attorney argument

regarding the scope of (i.e., what is taught by) the prior art.  This attorney argument, however, is

not an actionable basis for inequitable conduct.

A patentee's legal or interpretive arguments in favor of patentability are not actionable.

*See Rothman v. Target Corp.*, 556 F.3d 1310, 1328-29 (Fed. Cir. 2009) ("While the law prohibits

genuine misrepresentations of material fact, a prosecuting attorney is free to present argument in

favor of patentability without fear of committing inequitable conduct.").  The question then

becomes: What is a "genuine misrepresentations of material fact" and what is "attorney

---

[1]  Qualcomm's allegations that the reference was "buried" cannot save its claim of inequitable conduct.  As a matter of law, inequitable conduct cannot be based on references that were submitted to the Patent Office. *Fiskars, Inc. v. Hunt Mfg.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000) ("An applicant can not be guilty of inequitable conduct if the reference was cited to the examiner.").  As a result, "burying" cannot form a basis for inequitable conduct, because a "buried" reference by definition is one that was submitted to the PTO.  *See Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 358-59 (D. Del. 2009) (dismissing inequitable conduct counterclaim, based on alleged burying, as a matter of law).

[2]  Similarly, Qualcomm's claim cannot be saved by its allegation that the Parssinen 1997 reference was not timely submitted.  *See Young v. Lumenis, Inc.*, 492 F.3d 1336, 1348 (Fed. Cir. 2007) ("We conclude that there was no 'failure to disclose material information' to the PTO because the alleged material information was disclosed to the PTO **at a time when it could be considered by the examiner**.") (emphasis added).  As Qualcomm's answer concedes, the Parssinen reference was submitted in late 1999 and could therefore have been considered by the examiner. *See* Amended Answer at ¶ 24.  Moreover, because Parssinen 1997 is a reference cited on the face of the patents-in-suit, it is presumed that the examiner did, in fact, consider it.  *See Molins Plc v. Textron*, 48 F.3d 1172, 1184 (Fed. Cir. 1995) ("Absent proof to the contrary, we assume that the examiner did consider the references.").

argument?"  Courts have consistently made clear that arguments and statements about the scope

of prior art are merely attorney argument, whereas facts that can be demonstrated to be wrong

are misrepresentations.  *See Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007) ("We

therefore fail to see how the statements . . . which consist of attorney argument and an

interpretation of what the prior art discloses, constitute affirmative misrepresentations of material

fact."); *see also id.* ("[T]hat [challenged] statement does not appear to be demonstrably false and,

instead, represents Young's interpretation of what the [prior art] teaches."); *Innogenetics, N.V. v.*

*Abbott Labs.*, 512 F.3d 1363, 1379 (Fed. Cir. 2008) ("[A]n applicant is free to advocate its

interpretation of its claims and the teachings of prior art."); *Life Techs., Inc. v. Clontech Lab.,*

*Inc.*, 224 F.3d 1320, 1326 (Fed. Cir. 2000) ("an applicant is free to advocate its interpretation of

its claims and the teachings of prior art."); *McKechnie Vehicle Components USA, Inc. v. Lacks*

*Indus., Inc.*, No. 09-cv-11594, 2010 U.S. Dist. LEXIS 119073, at *5 (E.D. Mich. Nov. 9, 2010)

("[M]isrepresentation of a disclosed prior art reference must be distinguished from instances

when an attorney takes a legal position on a particular patent that parties in litigation disagree

upon, or that a court deems erroneous at a later date.").

   As alluded to above, every alleged fact that Qualcomm cites in support of this allegation

is merely attorney argument advocating for patentability:

- "During the prosecution of the '551 Patent, the Applicants . . . made several false statements concerning the **scope and content** of the Subharmonic Sampling Exemplars . . ." Amended Answer at ¶ 72 (emphasis added); s*ee also* Amended Answer at ¶¶ 101, 118, and 127 (referring to alleged "material misrepresentations made to the PTO in connection with the prosecution of the '551 patent").

- "In the Notice of Allowance of the '518 Patent, one of the reasons for allowance given by the examiner was that the limitation "of sampling the carrier signal over aperture periods to transfer energy from the carrier signal and integrating the energy over the aperture periods" **was not taught by the prior art**.  But for the Applicants' misrepresentations of [the alleged prior art], Applicants would not have been successful in making this **argument to overcome prior art**."  Amended Answer at ¶ 83 (emphasis added).

-6-

- "In the Notice of Allowance of the '371 Patent, one of the reasons for allowance given by the examiner was that **the prior art did not disclose** either a switch coupled to a pulse generator "wherein energy is transferred from the carrier signal and integrated" or "a switch opening and/or closing at an aliasing/sampling rate that is determined according to (a frequency of a carrier signal +/- a frequency of a lower frequency signal/N, where N is interpreted from the applicant's specification as representing a harmonic or sub-harmonic frequencies." (emphasis added). But for the Applicants' misrepresentations of [the alleged prior art], Applicants would not have been successful in making this **argument to overcome prior art**." Amended Answer at ¶ 92.[3]

For the reasons stated above, Qualcomm's counterclaims of inequitable conduct, counts 1-7, do not satisfy *Iqbal* and should be dismissed.[4]

### B.  Qualcomm's Claim of Aiding and Abetting Breach of Fiduciary Duty Should Be Dismissed.

Qualcomm's claim of aiding and abetting Sterne Kessler's alleged breach of fiduciary duty, Count 11, should be dismissed.

As an initial matter, this claim should be dismissed because there can be no "aiding and abetting" a breach of fiduciary duty where there is no underlying claim for breach of fiduciary duty.  And as Sterne Kessler has demonstrated in its motion to dismiss, Qualcomm's claim that Sterne Kessler breached its fiduciary duty is not plausible and should be dismissed.  *See* Dkt. No. 70 at 5-16.

---

[3]  For the sake of completeness, Qualcomm's allegations in ¶¶ 29-69 are simply Qualcomm's characterizations of what the alleged prior art taught, coupled with accusations that ParkerVision's interpretations were misrepresentations.  But again, ParkerVision "is free to advocate its interpretation of its claims and the teachings of prior art." *See Innogenetics*, 512 F.3d at 1379.

[4]  Qualcomm's complaint also fails to meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b).  *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1324-31 (Fed. Cir. 2009) ("the pleading [of inequitable conduct] must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO.").  For the sake of brevity and also because Qualcomm cannot cure the deficiencies of its pleadings by providing more specific facts (as its theories are not legally cognizable and/or demonstrably wrong), ParkerVision will not brief this point.

In any event, Qualcomm's allegations fail to state a claim because Qualcomm fails to plausibly allege causation and injury.  Specifically, allegations are facially defective in that they fail to allege proximate causation of damages. As one Florida Court explained:

> The Florida courts, in accord with most other jurisdictions, have historically followed the so-called "but for" causation-in-fact test, that is, to constitute proximate cause there must be such natural, direct, and continuous sequence between the negligence act or omission and the plaintiff's injury that is can reasonably be said that *but for* the negligent act or omission the injury would not have occurred.

*Stahl v. Metropolitan Dade County*, 438 So. 2d 14, 17 (Fla. 3d DCA 1983) (emphasis in original).  Qualcomm's claims of causation and injury fail to meet this "but for" test and therefore fail to state a claim in the following ways:

**¶¶ 192-193.**  Qualcomm claims that it has suffered injury by "defend[ing] against a lawsuit alleging the infringement" and by "incurring legal fees to defend a lawsuit."  *See* Amended Answer at ¶¶ 192-193.  Yet Qualcomm cannot allege the requisite injury because it cannot plausibly allege that it would not have to defend this action but for Sterne Kessler's alleged breach of fiduciary duty.  ParkerVision could have brought this action without Sterne Kessler breaching any duty to Qualcomm.

**¶¶ 194-195.**  Qualcomm claims that it has suffered injury by "losing the value of the opinion work that Sterne Kessler has performed on the two matters that were still ongoing at the time the Complaint was filed."  *See* Amended Answer at ¶ 194.  Similarly, Qualcomm claims that it has suffered injury "because it paid fees to Sterne Kessler during the period when Sterne Kessler was assisting ParkerVision in its action against Qualcomm."  *See* Amended Answer at ¶ 195.  Yet Qualcomm cannot allege the requisite injury because it cannot plausibly allege that it would not have lost the value of the opinion work or would not have paid fees to Sterne Kessler but for Sterne Kessler's alleged breach of fiduciary duty.  Indeed, Sterne Kessler could have

-8-

continued working for Qualcomm despite a breach of fiduciary duty.  Also, it was Qualcomm's decision to sue Sterne Kessler that caused Sterne Kessler to withdraw from that engagement.

For the reasons stated above, Qualcomm's counterclaim of aiding and abetting Sterne Kessler's alleged breach of fiduciary duty, Count 11, does not satisfy *Iqbal* and should be dismissed.

### C.  Qualcomm's Claim of Tortious Interference Should Be Dismissed.

Qualcomm's claim of tortious interference, Count 13, should be dismissed for the simple reason that there can be no claim of tortious interference of a contractual relationship brought against a party to that contract.  Because ParkerVision is a party to the agreement underlying Qualcomm's claim for tortious interference, ParkerVision cannot, as a matter of law, be liable for interfering with that contract. *See United of Omaha Life Insurance v. Nob Hill, Association*, 450 So. 2d 536, 539 (Fla. 3d DCA 1984).  In *Nob Hill*, the court reversed a finding of tortious interference, noting that, "[u]nder Florida law, a cause of action for tortious interference does not exist against one who is himself a party to the contract allegedly interfered with." *Id.*; *see also Ethyl Corporation v. Balter*, 386 So. 2d 1220, 1224 (Fla. 3d DCA 1980) (finding "a cause of action for interference does not exist against one who is himself a party to the contract allegedly interfered with."); *Salit v. Ruden, McClosky*, 742 So.2d 381, 386 (Fla. 4th DCA 1999) ("For the interference to be unjustified [a necessary element of tortious interference], the interfering defendant must be a third party, a stranger to the business relationship.").  As such, Qualcomm's claim for tortious interference fails to state a claim upon which relief can be granted and should be dismissed.

### D.  Qualcomm's Breach of Contract Claim Should Be Dismissed.

Qualcomm's claim of breach of contract, Count 14, should also be dismissed.  "For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the

-9-

existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the

breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. Fla. 2009).  Qualcomm

fails to state any facts giving rise to a breach of contract.  Specifically, the breach of contract that

Qualcomm alleges is a based on a non-disclosure agreement, which Qualcomm describes as,

"requir[ing] that any party receiving confidential information pursuant to the agreement hold that

information in strict confidence and use it only for certain authorized purposes."  *See* Amended

Answer at ¶ 217.  But Qualcomm never alleges that ParkerVision did anything—let alone

anything improper—with Qualcomm's confidential information.  Instead, Qualcomm's claim

exclusively pertains to ParkerVision's technology.  See Amended Answer at ¶¶ 218 ("The

Qualcomm Memorandum . . . provided detailed **criticisms of the technology ParkerVision**

**disclosed to Qualcomm** at the March 17 meeting, as well as suggestions for overcoming the

perceived deficiencies.") (emphasis added); *see also* ¶¶ 219-223 (discussing only ParkerVision's

technology).  In sum, Qualcomm has not set out the requisite "factual matter" that "state[s] a

claim to relief that is plausible on its face."  *See Iqbal*, 129 S.Ct. at 1949.[5]  As such, Count 14

should be dismissed.

---

[5]  Moreover, Qualcomm's alleged injury of unjust enrichment, *see* Amended Answer at ¶ 227, is
legally defective.  A party "cannot an equitable theory, such as unjust enrichment or quantum
meruit, to prove entitlement to relief if an express contract exists."  *See Ocean Communications,
Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007) (citing *Kovtan v. Frederiksen*, 449
So. 2d 1, 1 (Fla. 2d DCA 1984)); *see also Diamond "S" Development Corporation v. Mercantile
Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) ("Florida courts have held that a plaintiff cannot
pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the
same subject matter.") *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009) ("[W]here
there is an express contract between the parties, claims arising out of that contractual relationship
will not support a claim for unjust enrichment.").

McKool 406595v1

**E. Paragraphs 8 through 69 and Qualcomm's Affirmative Defenses of Inequitable Conduct and Unclean Hands Should Be Stricken.**

    1.  <u>Paragraphs 8 through 69 Should Be Stricken.</u>

Paragraphs 8 through 69 of Qualcomm's Amended Answer include an introductory section on ParkerVision's alleged inequitable conduct titled, "ParkerVision's Pattern of Inequitable Conduct." This commentary is not authorized by the Federal Rules of Civil Procedure. Rather, the Rules authorize only certain pleadings, *e.g.*, a complaint, answer, and reply to counterclaims, *see* Rule 7(a); require a party to admit or deny allegations against it, and set forth its defenses, *see* Rule 8(b); and to make all such averments of claims or defenses in numbered paragraphs, *see* Rule 10. Rule 12(f) specifically authorizes a court to strike any "redundant, immaterial, impertinent, or scandalous matter." The Court should exercise its authority under Rule 12(f) by striking Paragraphs 8-69 in conjunction with dismissal of Qualcomm's inequitable conduct counterclaims, discussed in § A *supra*.

    2.  <u>Qualcomm's Affirmative Defenses of Inequitable Conduct and Unclean Hands Should Be Stricken.</u>

Under authority of Fed.R.Civ.P. 12(f), a Court may strike affirmative defenses. "[T]he pleading requirements for complaints and affirmative defenses . . . are essentially the same." *United Fixtures Co. v. Base Mfg.*, 2008 U.S. Dist. LEXIS 114766 (M.D. Fla. Sept. 12, 2008). As such, Qualcomm's affirmative defense of inequitable conduct should be stricken for the reasons given in § A, above. Similarly, Qualcomm's affirmative defense of unclean hands should be stricken. For this affirmative defense, Qualcomm merely incorporates by reference paragraphs 8-69, which pertain exclusively to Qualcomm's allegations of inequitable conduct. As such, Qualcomm's affirmative defense of unclean hands should be stricken for the reasons given in § A *supra*.

McKool 406595v1

-12-

## IV. CONCLUSION

For the foregoing reasons, ParkerVision respectfully requests that the Court dismiss Counts One through Seven, Eleven, Thirteen and Fourteen of Qualcomm's counterclaims. ParkerVision also requests that the Court strike Paragraphs 8 through 69 of Qualcomm's Amended Answer and Qualcomm's affirmative defenses of inequitable conduct and unclean hands.

McKool 406595v1

January 6, 2012                                Respectfully submitted,

**McKOOL SMITH, P.C.**
*/s/  Douglas A. Cawley*
Douglas A. Cawley, Lead Attorney
Texas State Bar No. 04035500
E-mail: dcawley@mckoolsmith.com
John Austin Curry
Texas State Bar No. 24059636
E-mail: acurry@mckoolsmith.com
McKool Smith P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

T. Gordon White
Texas State Bar No. 21333000
gwhite@mckoolsmith.com
McKool Smith P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

**SMITH HULSEY & BUSEY**

/*s/ James A. Bolling*
Stephen D. Busey
James A. Bolling
Florida Bar Number 117790
Florida Bar Number 901253
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
jbolling@smithhulsey.com

*ATTORNEYS FOR PLAINTIFF*
*PARKERVISION, INC.*

McKool 406595v1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this day, January 6, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Austin Curry*

John Austin Curry
