THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| PARKERVISION, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> QUALCOMM INCORPORATED, <br><br> *Defendant.* | Case No.  3:11-cv-719-J-37-TEM |
| QUALCOMM INCORPORATED, <br><br> *Counterclaim Plaintiff,* <br><br> v. <br><br> PARKERVISION, INC., and <br> STERNE, KESSLER, GOLDSTEIN, & FOX PLLC, <br><br> *Counterclaim Defendants.* | |

**QUALCOMM INCORPORATED'S MEMORANDUM OF LAW IN OPPOSITION TO STERNE, KESSLER, GOLDSTEIN & FOX'S MOTION TO DISMISS, STRIKE OR ABATE PORTIONS OF QUALCOMM'S FIRST AMENDED COUNTERCLAIM**

Qualcomm Incorporated ("Qualcomm") respectfully submits this memorandum of law in opposition to Sterne, Kessler, Goldstein & Fox's ("SKGF") Motion to Dismiss Or, Alternatively, To Strike Portions of Qualcomm's First Amended Counterclaim, Or, in the Alternative, Motion to Abate Qualcomm's First Amended Counterclaim (the "Motion").

**Preliminary Statement**

One unassailable—and utterly reasonable—inference emerges from SKGF's moving papers:  SKGF helped its client ParkerVision, Inc. ("ParkerVision") to bring this lawsuit against its other client, Qualcomm.  Afforded numerous opportunities to deny that it ever provided such assistance or explain what it did, SKGF has remained steadfastly silent.

Although  SKGF has repeatedly and forcefully denied providing assistance to ParkerVision *after the filing of the complaint*, it has not once denied that it assisted ParkerVision in the infringement analysis that was required to bring this litigation against Qualcomm.  Even at oral argument on Qualcomm's motion for a preliminary injunction, SKGF never denied committing in the past the wrong that Qualcomm sought to enjoin.  In this motion too, despite several forceful denials of other allegations, SKGF is mum concerning the core allegation underlying Qualcomm's counterclaims.  If SKGF did not provide the pre-suit analysis in violation of its duties to Qualcomm, it would simply have said "we did not do it."  But it cannot because it did.

As a result, even at this early stage and before discovery has revealed the full extent and nature of its breaches, there should be no doubt that SKGF violated its duty of loyalty, which prevents lawyers from representing one client (*i.e.*, ParkerVision), when that assistance will be directly adverse to the interests of another client (*i.e.*, Qualcomm) unless each client consents (which Qualcomm has never done).  SKGF's assistance to ParkerVision also breached an agreement with Qualcomm, in which SKGF promised that none of its lawyers "would in any future matter take an adversarial position (*e.g.,* participate in litigation against either QUALCOMM or ParkerVision on any matters), at least as long as we continue to represent such company, even in unrelated matters."

Rather than acknowledge its breaches, or even to squarely deny them, SKGF seeks through this motion to avoid both discovery of and accountability for its wrongdoing. SKGF first argues that Qualcomm's claims for breach of fiduciary duty and breach of contract, which are premised on its assistance of ParkerVision in connection with this litigation, fail because Qualcomm's allegations of breach "rest entirely on reckless inferences and unwarranted deductions."  This argument fails, however, because Qualcomm's allegation that SKGF, as ParkerVision's longtime patent counsel, assisted ParkerVision in preparing this

litigation concerning patents prosecuted by SKGF attorneys is itself "plausible on its face," and therefore sufficient to withstand a motion to dismiss.  It is made even more plausible by the additional allegations concerning, *inter alia*, SKGF's obvious inability to deny that such pre-suit representation had occurred, contrasted with its repeated denials that post-suit representation has not occurred.  These allegations are more than sufficient to "raise a reasonable expectation that discovery will reveal evidence" corroborating Qualcomm's claim.  Contrary to SKGF's suggestion, Qualcomm is not required to prove that a breach occurred at the pleading stage.

SKGF's motion then turns to the technical argument that Qualcomm has not sufficiently alleged that SKGF's misconduct caused Qualcomm any harm.  But as set forth in Qualcomm's First Amended Answer and Counterclaim (the "Amended Counterclaim"), the sources of causally related, legally compensable harm are several.  To begin with, Qualcomm alleges that it paid SKGF substantial fees during the period when SKGF was improperly assisting ParkerVision.  Qualcomm need not allege anything further to state a claim for tortious breach of the duty of loyalty.  *See, e.g.*, *Hendry v. Pelland*, 73 F.3d 397, 402 (D.C. Cir. 1996) ("Because a breach of the duty of loyalty diminishes the value of the attorney's representation as a matter of law, some degree of forfeiture is thus appropriate without further proof of injury.").  Qualcomm has therefore sufficiently pleaded harm by claiming as damages the fees paid by Qualcomm to SKGF during the period of its improper concurrent representation.

In addition, the allegation in Qualcomm's original counterclaims that SKGF's breaches harmed Qualcomm by forcing it to defend against this lawsuit is itself sufficient to withstand a motion to dismiss.  That allegation, premised on SKGF's access to Qualcomm's confidential information regarding the exact technology that it is the subject of ParkerVision's claims, satisfies the *Twombly* standard by stating a claim that is plausible on its face.  That is clear for the fiduciary breach claim, and perhaps even more so for the claim of contractual

breach, where the very outcome against which Qualcomm sought contractual protection—being sued by SKGF while SKGF was its own lawyer—is the outcome SKGF has wrongfully procured.

Lastly, SKGF's breaches will force Qualcomm to hire new counsel for the matters that were ongoing when ParkerVision brought suit against Qualcomm.  When confronted with Qualcomm's counterclaims, SKGF withdrew from representing Qualcomm, leaving its work on the matters unfinished and greatly reducing the value of the work it had already done on those matters.  SKGF's withdrawal was directly related to its breaches because in the absence of those breaches and SKGF's persistent refusal to acknowledge them and to make amends therefor, Qualcomm would never have been compelled to sue SKGF, the pretext for SKGF's withdrawal.

### Factual Background

#### A.     SKGF's Representation of Qualcomm.

Qualcomm regularly retains outside law firms to assist in the filing and prosecution of the many patent applications it files every year.  Through this "prosecution work," outside attorneys retained by Qualcomm acquire very detailed and highly confidential knowledge of Qualcomm's products—including future products—and are privy to confidential attorney-client privileged communications.  (Dkt. 60 ¶ 141.)

Qualcomm also retains outside law firms to analyze and provide opinions relating to third-party patents that have been, or may be, asserted against Qualcomm.  Through this "opinion work," outside attorneys also acquire very detailed knowledge of confidential information relating to Qualcomm's products, and are involved in confidential attorney-client privileged communications.  (*Id.* ¶ 143.)  Based on this information, such "opinion counsel" may provide written opinions about whether Qualcomm products infringe the asserted patents, and whether such patents are valid and enforceable.  Preparing such an opinion is only the first step in such opinion work, followed by the delivery of the opinion, potentially updating the opinion

and defending the opinion if Qualcomm chooses to rely on it as part of an advice of counsel defense to claims of willful infringement.  (*Id.*)  This multi-step process can, and often does, occur over a period of years with respect to any given opinion project.  (*Id.*)

Since 1998, SKGF has served as outside counsel to Qualcomm on over 100 matters.  Over the course of this relationship, SKGF has served as counsel to Qualcomm in the prosecution of over 50 U.S. patents.  (*Id.* ¶ 147.)  Many of the patent applications SKGF prosecuted for Qualcomm related to technologies found in RF devices and, significantly, at least one of those applications related to Qualcomm's own direct conversion receiver technology (*id.*), which is also the alleged technology of the patents-at-issue in this litigation.  (*See* Dkt. 1 ¶ 11.)  In particular, SKGF assisted in the prosecution of U.S. Patent No. 6,985,711 (the "'711 Patent"), entitled "Direct Current Offset Cancellation for Mobile Station Modems Using Direct Conversion," which relates to a "system and method for canceling DC offset for Mobile Station Modems having direct conversion architectures."  (Dkt. 60 ¶ 147.)

During SKGF's early representation of Qualcomm, in 1999, SKGF sought Qualcomm's consent to allow the firm to represent ParkerVision in licensing negotiations with Qualcomm.  (*Id.* ¶ 151.)  These negotiations concerned direct conversion receiver technology that ParkerVision claimed to possess.  (*Id.* ¶ 155.)  In response to SKGF's request for consent, ParkerVision and Qualcomm each agreed to waive, with important limitations, the conflict of interest that resulted from SKGF's representation of ParkerVision in negotiations opposite SKGF's other client, Qualcomm.  (*Id.* ¶ 152.)

In soliciting Qualcomm's consent, SKGF stated in a January 12, 1999 Letter Agreement that "if this negotiation were unsuccessful and hypothetically resulted in some dispute between the parties, [SKGF] would not represent either party in connection with such a dispute."  (*Id.* ¶ 153.)  Furthermore, in this same letter agreement, SKGF committed, "as a

5

condition for this waiver of any potential conflict, that no one at [SKGF] would in any future matter take an adversarial position (*e.g.,* participate in litigation against either QUALCOMM or ParkerVision on any matters), at least as long as we continue to represent such company, even in unrelated matters." (*Id.* ¶ 154.) Those licensing negotiations were ultimately unsuccessful, but the waiver letter and the restrictions on SKGF remained as agreed. (*Id.* ¶ 155.)

From 2010 until the start of this lawsuit, Qualcomm retained SKGF for six "opinion" matters. (Dkt. 60 ¶ 156.) For each of those matters, Qualcomm executed an engagement letter prepared by SKGF. (*Id.* ¶ 157.) Those letters, while requesting waivers of certain types of conflicts of interest, did *not* include a waiver of the conflict of interest that would arise if SKGF represented another client in litigation against Qualcomm while Qualcomm was a current client of SKGF. (*Id.*) To the contrary, in every such letter, SKGF stated, "We understand that this consent does not extend to concurrent representation of clients adverse to Qualcomm in a litigation concurrent with the firm's representation of Qualcomm." (*Id.*) In addition, in each of the 2010 engagement letters, SKGF confirmed that even after Qualcomm ceased to be a SKGF client, SKGF would not represent a different client in litigation against Qualcomm if SKGF was "in possession of confidential information of Qualcomm that would preclude the representation adverse to Qualcomm in violation of an applicable rule of professional conduct." (*Id.* ¶ 158.) Of these six opinion matters, two were still ongoing when ParkerVision filed this lawsuit, and they remain ongoing today. (*Id.* ¶¶ 159, 165-66.)

B.     **SKGF's Involvement in the Present Litigation.**

On July 20, 2011, ParkerVision sued Qualcomm alleging infringement of the seven patents-in-suit, each of which was prosecuted by members of SKGF. (Dkt. 60 ¶ 160.)

SKGF did not enter an appearance, but it soon became apparent that SKGF had been involved in the preparation of this lawsuit. During a July 21, 2011 conference call with

investment analysts, Jeffery Parker, ParkerVision's founder and CEO deflected questions about the pre-suit legal analysis underlying the allegations of infringement against Qualcomm, stating only that such information would "come out in the lawsuit."  (*Id.* ¶ 161.)  But Parker stated that, when ParkerVision discovered the alleged infringement, it "took the information to its legal counselors immediately," who "helped walk [ParkerVision] through the process of [verifying the alleged infringement]."  (*Id.*)  Although Parker did not identify the "legal counselors" who had assisted ParkerVision, its website identifies SKGF as the company's sole "Patent Counsel." (*Id.* ¶ 162.)  Parker also dodged a question about longtime ParkerVision director and SKGF partner, Robert Sterne's role in the decision to sue Qualcomm, by saying, "Right. Well, the Sterne firm started from day one analyzing the core invention. . . . So, they've been very involved in the creation [and] prosecution of the patent and they will continue to be."  (*Id.* ¶ 164.)

On August 1, 2011, eleven days after the filing of this lawsuit, Qualcomm's in-house legal counsel was contacted by the SKGF lawyer handling Qualcomm's opinion work. (*Id.* ¶ 164.)  During a subsequent telephone call, the SKGF lawyer advised Qualcomm's in-house lawyers that due to ParkerVision's lawsuit against Qualcomm, SKGF needed to "wrap up" its work on opinion work it was handling for Qualcomm.  (*Id.*)  Qualcomm's counsel noted that SKGF's work was not complete, and that Qualcomm did not consent to SKGF' termination of its representation.  (*Id.*)  The SKGF lawyer noted that Robert Sterne had been an advisor to ParkerVision for a long time, and remarked that SKGF was now in a "tough spot."  (*Id.*)

On August 16, 2011, Qualcomm sent a letter to SKGF, seeking information about the extent of SKGF's involvement in the present litigation and reiterating Qualcomm's refusal to allow SKGF prematurely to withdraw from its ongoing representation of Qualcomm.  On August 25, 2011, SKGF responded, acknowledging that Qualcomm was a current client of

SKGF, and that it would complete the ongoing projects it was performing for Qualcomm.  (*Id.* ¶ 166.)  SKGF made cagey and limited promises about representing ParkerVision, stating that SKGF "will not advise ParkerVision or its litigation counsel regarding the Florida matter or any other litigation with Qualcomm . . . . so long as Qualcomm remains a firm client."  (*Id.*)

SKGF's August 25 letter was silent, however, on several questions Qualcomm had posed in its August 16 letter, including whether SKGF had helped ParkerVision prepare this action against Qualcomm.  (*Id.* ¶ 167.)  SKGF's excuse for refusing to answer these questions was "[its] obligations of confidentiality under District of Columbia Rule of Professional Conduct 1.6," prohibiting a lawyer from revealing client "confidences" and "secrets."  (*Id.* ¶ 168.)  However, if SKGF had not assisted ParkerVision in preparing this action, it would have been able to deny any such assistance without compromising any "secret" of ParkerVision, as that term is defined in codes of ethical conduct governing lawyers.  And in no event would the *fact* of such assistance (as distinct from its *substance*) be privileged or a "confidence" of ParkerVision.  Otherwise, SKGF's repeated statements that it is not *currently* representing ParkerVision in this action would similarly breach its duty of confidentiality.

Based on SKGF's refusal to deny pre-suit involvement and Jeff Parker's statements at the July 21 conference call, it was and remains reasonable to conclude that SKGF did, in fact, provide substantial assistance to ParkerVision in preparing this action.  Had it not assisted ParkerVision, there would have been no ethical impediment to SKGF's stating that it had not been involved.  A simple acknowledgement of a lack of involvement could not have disserved ParkerVision's interests or compromised any confidence or secret of ParkerVision.

On September 2, 2011, Qualcomm sent a letter to SKGF, explaining that SKGF's refusal even to address whether it had provided assistance to ParkerVision compelled the

8

inference that SKGF had provided such assistance.  (*Id.* ¶ 171.)  Qualcomm invited SKGF to rebut that inference by providing the previously requested assurances.  SKGF never has.

C.     **SKGF's Termination of Its Relationship with Qualcomm and Its Continued Refusal To Deny Providing Assistance to ParkerVision.**

On September 16, 2011, Qualcomm filed its Answer and Counterclaims, joining SKGF as an additional counterclaim defendant for breaching its fiduciary duty of loyalty to Qualcomm by representing ParkerVision in connection with this litigation.  (*Id.* ¶ 173.) Qualcomm also sued SKGF for breach of its January 12, 1999 letter agreement with SKGF in which SKGF had promised Qualcomm that it would not "take an adversarial position (*e.g.*, participate in litigation[)]" against Qualcomm in any future matter.  (*Id.* ¶ 154.)

Nearly a month later, on October 14, 2011, SKGF counsel wrote to Qualcomm, stating that Qualcomm's counterclaim against SKGF gave rise to an "ethical obligation" that the firm withdraw immediately from its representation of Qualcomm, leaving its work on the ongoing matters unfinished.  (*Id.* ¶ 174.)  SKGF's letter did not identify the source of that obligation, nor did it provide any response to Qualcomm's repeated inquiries about the nature of SKGF's representation of ParkerVision in connection with this litigation.

On October 18, 2011, Qualcomm's counsel responded, asking, among other things:  "[D]oes SKGF intend to assist ParkerVision in any way in its litigation against Qualcomm?" and stating that Qualcomm would seek to enjoin ParkerVision from providing such assistance if SKGF did not provide an unequivocal disavowal of such intent.  (*Id.* ¶ 175.)

On October 25, 2011, SKGF's counsel wrote that the firm "*is not* representing ParkerVision . . . with respect to the patent infringement claims against Qualcomm, nor regarding ParkerVision's defense of the counter-claim Qualcomm filed against ParkerVision." (*Id.* ¶ 176.)  SKGF's response was again silent about the extent of its *past* work for ParkerVision.

On October 27, 2011, Qualcomm's counsel sent a letter to SKGF's counsel, stating that, unless SKGF provided clear and unequivocal answers to its questions, Qualcomm would have no choice but to assume that SKGF has, in fact, breached its obligations to Qualcomm and would move to enjoin the firm from providing further assistance to ParkerVision in connection with this lawsuit.  (*Id.* ¶ 177.)  Instead of responding to that letter, SKGF moved on November 7, 2011 to dismiss the counterclaims against it.  (*See* Dkt. 34.)  In that motion to dismiss, which was rendered moot by Qualcomm's Amended Counterclaim (*See* Dkt. 62), SKGF again failed to deny that it had assisted ParkerVision in preparing this lawsuit.

On November 10, 2011, Qualcomm moved for a preliminary injunction enjoining SKGF from further representation of ParkerVision in connection with this litigation.  (Dkt. 38).  At the hearing on Qualcomm's motion, counsel for SKGF vehemently denied "preparing the complaint" or doing anything "*since the lawsuit was filed . . .* to advance the cause of ParkerVision."  (Dkt. 67 at 36-37 (emphasis added).)  While the various disavowals apparently led this Court to conclude that counsel for SKGF had included a disavowal of pre-suit representation, counsel for Qualcomm quickly corrected that misimpression.  (*Id.* at 42.)  The transcript is clear—not once did counsel for SKGF disclaim having assisted ParkerVision in conducting the infringement analysis that was required to file this litigation against Qualcomm.  Even after the Court's comment that it understood SKGF had disavowed pre-suit investigation, and the correction by Qualcomm's counsel, SKGF's counsel never stood up to contest the point.

### Argument

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all material allegations giving rise to the claim.  *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  The court must also draw all reasonable inferences in the light most favorable to the claimant.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Bryant v.*

*Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the [] allegations are true."  *Twombly*, 550 U.S. at 555 (citations omitted).  Claims "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 546).  "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low."  *Collins v. Countrywide Home Loans, Inc.*, 680 F. Supp. 2d 1287, 1292 (M.D. Fla. 2010) (citing *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)).

## I.      Qualcomm Has Properly Pleaded A Claim For Breach Of Fiduciary Duty.

"The elements of a claim for breach of fiduciary duty are:  the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages."  *Patten v. Winderman*, 965 So. 2d 1222, 1224 (Fla. Dist. Ct. App. 2007) (quoting *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).[1]  A lawyer breaches his or her duty of loyalty by simultaneously working for and against the same client.  *See* Fla. R. P.C. 4-1.7(a) "Representing Adverse Interests" ("A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless:  (1) the lawyer reasonably believes the representation will not adversely affect the lawyer's responsibilities to and relationship with the other client; and (2) each client consents after consultation").  Under Rule 4-1.7, SKGF could

---

[1] Qualcomm agrees that while there may ultimately be a choice-of-law issue in this case, the Court does not have to make a choice-of-law determination now because Florida and Washington, D.C., the two potential sources of law, do not appear to be materially different on the law at issue here.

not have assisted ParkerVision in its action against Qualcomm while Qualcomm was also a

SKGF client because Qualcomm never consented to allowing SKGF to so assist ParkerVision.[2]

A.    **Qualcomm's Factual Allegations Are Sufficient to State a Claim for Breach of Fiduciary Duty.**

Even though Qualcomm clearly alleges that SKGF breached its fiduciary duty to

Qualcomm by assisting ParkerVision in bringing this litigation (Dkt. 60 ¶¶ 182-86), SKGF

contends that Qualcomm has made "no factual allegations that could reasonably support" the

inference that SKGF provided that assistance to ParkerVision.  (Dkt. 70 at 6.)  Significantly,

SKGF does not contend that it would be incorrect to infer that it assisted ParkerVision in

preparing this litigation.  Rather, SKGF argues that Qualcomm's factual allegations fail

adequately to support such an inference.  (Dkt. 70 at 6-9.)  This argument misconstrues the

applicable pleading standard and is, accordingly, without merit.

Qualcomm's allegation that SKGF, as ParkerVision's longtime patent counsel

(Dkt. 60 ¶ 148), assisted ParkerVision in preparing this litigation concerning patents prosecuted

by SKGF attorneys is itself "plausible on its face" and therefore sufficient.  *Iqbal*, 129 S. Ct. at

1949 (complaint need only "contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face").  This allegation is made more plausible in light of

Qualcomm's further allegations concerning, *inter alia*, SKGF's persistent refusal to deny that

such representation had occurred (Dkt. 60 ¶¶ 167, 169, 171, 177, 178) and Jeff Parker's cagey

responses during the July 21, 2011 call to inquiries about who had helped ParkerVision bring

this lawsuit (Dkt. 60 ¶ 161).  Together, these allegations "raise a reasonable expectation that

---

[2] Even if SKGF is not (and never becomes) the attorney of record for ParkerVision in the litigation, any legal assistance that SKGF provides to ParkerVision is considered to be "representation" governed by the Rules of Professional Conduct.  *See Hilton v. Barnett Banks, Inc.*, No. 94-1036, 1994 WL 776971, at *3 (M.D. Fla. Dec. 30, 1994) (a law firm is per se ineligible to represent plaintiff where the firm had not clearly terminated its representation of defendant by the time "preparation for litigation commenced on plaintiffs' behalf," *citing Strategem Dev't Corp. v. Heron Int'l N.V.*, 756 F. Supp. 789, 793 (S.D.N.Y. 1991)).

discovery will reveal evidence" corroborating Qualcomm's claim. *See Twombly*, 550 U.S. at 556; *Prokopenko v. Royal Caribbean Cruise Ltd.*, No. 10-20068, 2010 WL 1524546 (S.D. Fla. Apr. 15, 2010) (denying in part motion to dismiss a complaint alleging only that a cruise passenger slipped on water on board a ship, requiring the court to infer the facts of the defendant's misconduct).

SKGF's argument that Qualcomm's allegations are somehow "reckless" or "unreasonable" is disingenuous and logically flawed. For example, SKGF contends that it is "particularly unreasonable" to infer that it had improperly assisted ParkerVision given that, in response to Qualcomm's inquiries about its *past conduct*, SKGF responded that it "*will not* enter its appearance" and "*will not* advise ParkerVision . . . so long as Qualcomm remains a firm client." (Dkt. 70 at 7). To the contrary, because SKGF completely and persistently refused to answer questions about its *past conduct* (*see* Dkt. 60 ¶¶ 167, 169, 171, 177, 178), and instead deflected the question with equivocal, non-committal responses about its *future* plans concerning the representation of ParkerVision, it was entirely reasonable for Qualcomm to assume that SKGF had something to hide in its past. (*See* Dkt. 60 ¶ 177.) Such an inference requires no incredible leap of faith. Accordingly, Qualcomm has sufficiently alleged that SKGF breached its fiduciary duty by undertaking a representation of ParkerVision adverse to its current client, Qualcomm.

SKGF also appears to contend that Qualcomm is required to allege in its counterclaim facts to contradict an affirmative defense that SKGF has not yet pleaded—*i.e.*, that SKGF's representation of ParkerVision in connection with this action is permitted by certain engagement letters executed in 2010. (*See* Dkt. 70 at 6-7, Ex. A.) The Rules of Civil Procedure do not create such a heightened pleading standard, and certainly do not require Qualcomm to anticipate and respond in its Counterclaim to every affirmative defense that SKGF might assert. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("We see no basis for imposing on the plaintiff an

obligation to anticipate [an affirmative defense] by stating in his complaint that [defendant failed to satisfy the requirements of the defense].").  It is sufficient to state a claim for Qualcomm to allege that SKGF breached its fiduciary duty by wrongfully undertaking a conflicting representation of ParkerVision adverse to Qualcomm.[3]  *Id.*

**B.     Qualcomm's Allegation That It Paid Fees to SKGF While SKGF Was Simultaneously Assisting ParkerVision in This Lawsuit Is Sufficient To State a Claim for Breach of Fiduciary Duty.**

To state a claim for breach of fiduciary duty, Qualcomm need not show damages but only that SKGF received Qualcomm's payments for legal fees during the period of improper concurrent representation.  In its Amended Counterclaim, Qualcomm alleges explicitly that Qualcomm paid SKGF substantial fees from legal work that SKGF performed at the same time it was assisting ParkerVision to bring suit against Qualcomm.  (Dkt. 60 ¶¶ 179.)  Qualcomm has also pleaded that it has been injured as a proximate result of SKGF's improper representation of ParkerVision because it paid fees to SKGF during the period when SKGF was assisting ParkerVision in its action against Qualcomm and that it seeks the disgorgement of the fees paid to SKGF during this period.[4]  (*Id.* ¶¶ 184-86.)

Courts in Florida and elsewhere have long recognized that a client is entitled to the return of fees paid to an attorney who has breached his or her fiduciary duties through a

---

[3] As shown in Qualcomm's reply in support of its motion to disqualify SKGF, SKGF's lawyers' recently devised, litigation-driven interpretation of the 2010 Engagement Letters is simply wrong; nothing in the letters authorized SKGF's breaches of fiduciary duty.  (*See* Dkt. 63 at 5-6.)  Further, contrary to SKGF's contention, Qualcomm alleges explicitly that the waiver in the 2010 Engagement Letters does not extend to SKGF's representation of ParkerVision at issue in connection with this action. (*See* Dkt. 60 ¶ 157.)

[4] Despite Qualcomm's many allegations that its injuries were "proximately" caused by SKGF's misconduct (Dkt. 60 at ¶¶ 184, 185, 192-94, 200-02), SKGF contends that Qualcomm has not alleged "but-for" causation.  (*See* Dkt. 70 at 10-11.)  This disregards the fundamental principle of tort that "proximate cause" is shorthand for the concept that "injuries have countless causes, and not all should give rise legal liability."  *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2637 (2011).  In other words "proximate" causation refers to the subset of "but-for" causation that may give rise to legal liability.  *Id.*

conflict of interest.[5]  Thus, when a party claiming breach of fiduciary duty has pleaded payment

of fees to the breaching attorney, there is no requirement to plead further injury.[6]  Accordingly,

because Qualcomm has pleaded payment of fees to SKGF for services rendered while SKGF

was simultaneously working both for and against Qualcomm, Qualcomm has properly pleaded

a claim for breach of fiduciary duty against SKGF.

SKGF contends that it is improper to seek disgorgement as a remedy for breach

of fiduciary duty because claims seeking compensatory damages and those seeking equitable

relief "require different elements of proof."  (Dkt. 70 at 14-15.)  The authority SKGF cites not

only fails to support this argument, but also it stands for the opposite proposition:  regardless of

the type of relief sought, the elements of a claim for breach of fiduciary duty are the same.  *See*

*Bode & Grenier, L.L.P.  v. Knight*, No. 08-01323, 2011 WL 5114829, at *6 (D.D.C. Sept. 20, 2011).

The type of relief sought makes a difference only to the extent that, where a plaintiff seeks

disgorgement of fees, the element of causation is presumed.[7]  *Id.*  Thus, Qualcomm's Amended

---

[5] *See White v. Roundtree Transport, Inc.*, 386 So. 2d 1287,1289 (Fla. Dist. Ct. App. 1980) (attorney who simultaneously represented two clients with conflicting interest was not entitled to receive fee for representation of second client); *Hamilton v. Whip*, Nos. 02-24-CA, 02-25-CA, 2004 WL 6004471, at *1 (Fla. 4th Cir. Ct. Oct. 22, 2004) ("an attorney's right to a fee terminates when he realizes or should realize that he can not ethically represent his client's interests"; attorney violated his duty of loyalty by representing adverse party without client's consent; *see also Burrow v. Arce*, 997 S.W.2d 229, 239 (Tex. 1999) ("It would be a dangerous precedent for us to say that unless some affirmative loss can be shown, the person who has violated his fiduciary relationship with another may hold on to any secret gain or benefit he may have thereby acquired."); *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 258 (1992) ("Courts throughout the country have ordered the disgorgement of fees paid or the forfeiture of fees owed to attorneys who have breached their fiduciary duties to their clients by engaging in impermissible conflicts of interest.").

[6] *See Hendry*, 73 F.3d at 397 (finding that to the extent a client is entitled to disgorgement of fees, it need only prove that the attorney breached his duty of loyalty, not that the breach proximately caused an injury); Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering:  A Handbook on the Model Rules of Professional Conduct* § 1.5:108 (2d ed. Supp. 1998) ("Generally speaking, where the claim rests on the disloyalty of the lawyer, and the remedy sought is forfeiture or disgorgement of fees already paid, rather than compensatory damages for poor service, the breach of the duty of loyalty is the harm, and *the client is not required to prove causation or specific injury*.")  (Emphasis added).

[7] SKGF also cites *Searcy, Denney, Scarola, Barnhardt & Shipley, P.A. v. Scheller*, 629 So. 2d 947 (Fla. Dist. Ct. App. 1993).  *Searcy* is inapposite, however, as it merely stands for the proposition that complete

Counterclaim does not, as SKGF contends, "improperly commingle" claims requiring different elements of proof. (*See* Dkt. 70 at 14-16.)

### C. Qualcomm's Allegation That It Has Lost the Value of the Work SKGF Incompletely Performed Provides a Sufficient Causal Nexus to State a Claim for Breach of Fiduciary Duty.

Qualcomm alleges that it has been further injured as a proximate result of SKGF's breach of its fiduciary duty of loyalty because it has lost the value of the opinion work that SKGF has performed on the two matters that were still ongoing at the time of SKGF's withdrawal, and that it will need to retain replacement counsel to complete, or possibly restart, that work.[8]  (Dkt. 60 ¶ 169.)  SKGF's withdrawal was directly related to its breach of fiduciary duty because, but for that breach and SKGF's ensuing refusal to acknowledge and make amends for it, Qualcomm would never have been forced to bring suit against SKGF, thereby affording SKGF a pretext for its permissive (not mandatory) withdrawal.

SKGF contends that this injury was not proximately caused by SKGF's breach of its fiduciary duty because the firm would have been required to withdraw when Qualcomm filed its Answer alleging, *inter alia*, that SKGF attorneys had committed inequitable conduct before the PTO.  (Dkt. 70 at 12.)  However, had SKGF not been encumbered with the disabling conflict caused by its representation of ParkerVision adverse to Qualcomm, its withdrawal would not have been mandatory.  *See* R. Reg. Fla. Bar 4-.1.16(a).  The Rules of Professional Conduct require a lawyer to withdraw from an ongoing representation only in narrowly-

---

forfeiture of attorneys fees is inappropriate where it would result in an enormous windfall to the client, and therefore cannot be pleaded as a complete defense to the attorneys' claim in quantum meruit to recover such fees.  *Id.* at 955.

[8] SKGF contends that Qualcomm has not alleged facts sufficient to show that SKGF's withdrawal necessarily destroyed the value of the opinion work that it had performed.  (Dkt. 70 at 14.)  This is simply incorrect.  Qualcomm alleges that it retains opinion counsel with the expectation that it will not only render a written opinion, but also be available to defend that opinion in court.  (Dkt. 60 ¶ 143.)  Because SKGF's withdrawal has rendered it unavailable to defend in litigation any work that it has already performed, Qualcomm has clearly alleged that it has been harmed by SKGF's withdrawal.

defined circumstances,[9] none of which apply to SKGF's representation of Qualcomm.  *Id.*

Absent the conflict, SKGF could have withdrawn from representing Qualcomm only if the

withdrawal could have been accomplished without "material adverse effect" on Qualcomm's

interests—*i.e.*, without causing Qualcomm to lose the value of the unfinished opinion work.  R.

Reg. Fla. Bar 4-.1.16(b).  Thus, but for SKGF's breach of fiduciary duty, it would not have been

required to withdraw and Qualcomm would not have lost the value of SKGF's opinion work.

> **D.    Qualcomm's Allegation That It Has Incurred Legal Fees to Defend Against a Lawsuit Brought With the Assistance of SKGF Is Sufficient to Allege a Claim for Breach of Fiduciary Duty.**

Qualcomm alleges that it has been injured as a proximate result of SKGF's breach

of its fiduciary duty by incurring legal fees to defend against a lawsuit brought with the

assistance of Qualcomm's own lawyers, in violation of their duty of loyalty to Qualcomm.  (Dkt.

60 ¶ 167.)  Qualcomm further alleges that SKGF attorneys, while prosecuting patents for

Qualcomm, gained access to significant amounts of highly confidential information about the

Qualcomm technology at issue *in this litigation*.  (Dkt. 60 ¶ 125.)  Through its access to

Qualcomm information as well as its deep knowledge of the seven patents-in-suit (which it

prosecuted), SKGF could assist ParkerVision in preparing this lawsuit to a degree that no other

law firm could.  Accordingly, it is certainly "plausible" that ParkerVision could not have

brought this lawsuit, and Qualcomm would not have been forced to incur fees defending it,

without the assistance provided by SKGF.  *See Twombly*, 550 U.S. at 546.  Qualcomm's

allegations of damages are, therefore, sufficient to state a claim of breach of fiduciary duty.  *Id.*

SKGF's unsupported assertion that other law firms representing ParkerVision

determined that ParkerVision had a good faith basis for bringing its claims, thereby

---

[9] Circumstances requiring withdrawal include where an attorney becomes physically or mentally incapable of continuing the representation, is discharged by the client, or where the continued representation would be in violation of the ethical rules or law.  *See* R. Reg. Fla. Bar 4-.1.16(a).

purportedly showing that the lawsuit could have been brought without SKGF's assistance (Dkt. 70 at 12-13) does not compel a different result.  It is not Qualcomm's burden to plead with precision how damages would have been different had SKGF not breached its fiduciary duty in assisting ParkerVision.  *See Amato v. KPMG LLP*, 433 F. Supp. 2d 460, 471 (M.D. Pa. 2006) ("Plaintiffs need not specifically plead how the alleged damages at issue would have been avoided had [law firm not breached its fiduciary duty]"), *vacated in part on other grounds by Amato v. KPMG LLP*, No. 06-cv-39, 2006 WL 2376245 (M.D. Pa. Aug. 14, 2006)).  It is enough to survive a motion to dismiss for Qualcomm to allege that it would not have incurred fees to defend the lawsuit had SKGF not provided assistance to ParkerVision.[10]

## II.  Qualcomm Has Properly Pleaded a Claim for Breach of Contract.

Qualcomm's breach of contract claim is based upon certain promises SKGF made in a January 12, 1999 letter agreement.  SKGF stated in the agreement that "if this negotiation were unsuccessful and hypothetically resulted in some dispute between the parties, [SKGF] would not represent either party in connection with such a dispute."  (Dkt. 60 ¶ 153.)  In the same letter agreement, SKGF committed, "as a condition for this waiver of any potential conflict, that no one at [SKGF] would in any future matter take an adversarial position (*e.g.*, participate in litigation against either QUALCOMM or ParkerVision on any matters), at least as long as we continue to represent such company, even in unrelated matters."  (*Id.*)  SKGF's assistance to ParkerVision in its litigation against Qualcomm clearly violates this agreement. The very outcome SKGF promised would not happen—its participation in litigation against Qualcomm—is the outcome that has occurred.

---

[10] SKGF moves in the alternative, with no unique support, to strike Qualcomm's allegations of damages due to SKGF's breach of fiduciary duty.  (Dkt. 70 at 16-17.)  Because, as set forth in sections I.A – I.D herein, Qualcomm has stated a claim for breach of fiduciary duty against SKGF, this motion in the alternative should be denied.

To support its argument that Qualcomm fails to state a claim for breach of contract, SKGF relies principally upon the same argument it made with regard to Qualcomm's breach of fiduciary claim:  that Qualcomm has not alleged causation and resulting damages.[11] (Br 19-20.)  But Qualcomm has properly pleaded a claim for breach of contract for the same reasons it has properly pleaded a claim for breach of fiduciary duty.  Indeed, the causal nexus between SKGF's breach of contract and the damages claimed is particularly tight:  SKGF broke its promise that it would not participate in litigation against Qualcomm.  A proximate result of that breach is that Qualcomm must bear the cost of defending itself.  The lost value of SKGF's opinion work is also a foreseeable consequence of SKGF's breach and, therefore, a harm proximately caused by its breach.  *See Fla. E. Coast Ry. Co. v. Beaver Street Fisheries, Inc.*, 537 So. 2d 1065, 1068 (Fla. Dist. Ct. App. 1989) (citing *Hadley v. Baxendale*, 156 Eng. Rep. 145 (1854)).  Additionally, contrary to SKGF's contention, it is appropriate for Qualcomm to seek as a judicial remedy for breach of contract an award including "a sum of money to prevent unjust enrichment"—*i.e.*, the fees it has paid to SKGF.  *See* Restatement (Second) of Contracts § 345(d).  These allegations are sufficient to state a claim for breach of contract.[12]

## III.   SKGF's Alternative Request For An Abatement or Stay Should be Denied.

SKGF's alternative request for an abatement or stay of the claims against it is predicated on SKGF's argument that Qualcomm lacks redressable damages on its claims of breach of fiduciary duty and breach of contract until the action brought by ParkerVision is

---

[11] SKGF also contends that Qualcomm's complaint fails to make sufficient factual allegations to support its claim for breach of contract, on the theory that Qualcomm has drawn unwarranted inferences about whether SKGF has represented ParkerVision in connection with this action.  (Dkt. 70 at 17-19.)  As shown in section I.A., *supra*, Qualcomm's allegation is plausible on its face and, accordingly, is sufficient to withstand a motion to dismiss.  *See Twombly*, 550 U.S. at 556.

[12] SKGF moves in the alternative, with no unique support, to strike Qualcomm's allegations of damages due to SKGF's breach of contract.  (Dkt. 70 at 21.)  Because, as set forth in section II herein, Qualcomm has stated a claim for breach of contract against SKGF, this motion in the alternative should be denied.

resolved.  (Dkt. 70 at 22-23.)  But the propriety of awarding the damages Qualcomm seeks is not dependent on the resolution of ParkerVision's lawsuit or upon its underlying merit.  The basis for Qualcomm's claims is not that the lawsuit lacks merit (as it does), but rather that SKGF had duties under contract and tort law not to participate in its institution and prosecution.  As such, SKGF has acted wrongly even if ParkerVision's claims ultimately prove successful.

In this way, this claim differs from a more typical legal malpractice claim, in which there may be a real lack of causally related damages if the conduct alleging giving rise to the malpractice, such as bad advice or incompetent litigation, does not in fact result in a future adverse outcome for the affected client.  That is the situation described in the cases SKGF cites.[13] This case is different.  Here, the wrongful conduct caused injury to Qualcomm as soon as it was perpetrated, and the injury it has caused will persist regardless of how this patent infringement lawsuit is ultimately resolved.[14]

### Conclusion

For the foregoing reasons, Qualcomm respectfully requests that this Court deny SKGF's motion.

---

[13] *See Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061, 1065 (Fla. 2001) (malpractice claim against insurance agent for negligent failure to procure insurance accrued only after client's action against the insurer was resolved); *Hold v. Manzini*, 736 So. 2d 138, 142 (Fla. Dist. Ct. App. 1999) (legal malpractice claim based upon negligent legal advice did not accrue until underlying suit was resolved); *Bierman v. Miller*, 639 So. 2d 627, 628 (Fla. Dist. Ct. App. 1994) (legal malpractice cause based upon negligent drafting of agreement was premature while suit disputing the validity of the patent was pending).

[14] SKGF also contends that if Qualcomm is attempting to name SKGF as a party relating to its declaratory relief claims relating to the patents-in-suit, those claims must be dismissed because SKGF is not a proper party to such claims.  (Dkt. 70 at 21-22.)  That argument should never have been made because, as SKGF acknowledges, "[i]t does not appear that Qualcomm is naming [SKGF] as a party to its declaratory relief claims, because [SKGF] is not mentioned." (*Id*.)  That the allegations supporting those claims use the defined term, the "Applicants," which includes at least one identified SKGF attorney (*see* Dkt. 60 ¶ 9), does not render the claims unclear or identify SKGF or any of its attorneys as defendants to those claims.  ParkerVision, as the assignee of the patents in suit, is the only defendant to those claims.

20

January 23, 2012

CRAVATH, SWAINE & MOORE LLP

By:     s/ Keith R. Hummel
      Keith R. Hummel (admitted pro hac vice) (Trial Counsel)
      khummel@cravath.com
      David Greenwald (admitted pro hac vice)
      dgreenwald@cravath.com
      Worldwide Plaza
      825 Eighth Avenue
      New York, New York  10019
      Telephone:  (212) 474-1000
      Facsimile:  (212) 474-3700

-and-

BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.
      John A. DeVault, III
      Florida Bar No. 103979
      jad@bedellfirm.com
      Courtney K. Grimm
      cgrimm@bedellfirm.com
      Florida Bar No. 953740
      The Bedell Building
      101 East Adams Street
      Jacksonville, Florida 32202
      Telephone:  (904) 353-0211
      Facsimile:  (904) 353-9307

-and-

CADWALADER, WICKERSHAM & TAFT LLP
      Christopher A. Hughes (admitted pro hac vice)
      Christopher.Hughes @cwt.com
      1 World Financial Center
      New York, New York 10281
      Telephone:  (212) 504-6000
      Facsimile:  (212) 504-6666

*Counsel for Defendant, Counterclaim Plaintiff Qualcomm Incorporated*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of January, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Ava K. Doppelt
adoppelt@addmg.com

Brian R. Gilchrist
bgilchrist@addmg.com

Douglas Aaron Cawley
dcawley@mckoolsmith.com

James Arthur Bolling
jbolling@smithhulsey.com

Jeffrey Scott Boyles
jboyles@addmg.com

John Austin Curry
acurry@mckoolsmith.com

Stephen D. Busey
busey@smithhulsey.com

Travis Gordon White
gwhite@mckoolsmith.com

David R. Atkinson
datkinson@gunster.com

David M. Wells
dwells@gunster.com

Katherine H. Underwood
KUnderwood@gunster.com

s/ Keith R. Hummel
Keith R. Hummel (admitted pro hac vice)
khummel@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
*Counsel for Defendant, Counterclaim Plaintiff
Qualcomm Incorporated*