THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| PARKERVISION, INC.,<br><br>     *Plaintiff,*<br><br>    v.<br><br>QUALCOMM INCORPORATED,<br><br>     *Defendant.* | Case No.  3:11-cv-719-J-37-TEM |
| QUALCOMM INCORPORATED,<br><br>     *Counterclaim Plaintiff,*<br><br>    v.<br><br>PARKERVISION, INC., and<br>STERNE, KESSLER, GOLDSTEIN, & FOX PLLC,<br><br>     *Counterclaim Defendants.* | |

**QUALCOMM'S MEMORANDUM OF LAW IN OPPOSITION TO
PARKERVISION'S MOTION TO DISMISS AND STRIKE**

Qualcomm Incorporated ("Qualcomm") respectfully submits this memorandum of law in opposition to ParkerVision, Inc.'s ("ParkerVision") motion to dismiss certain counts of Qualcomm's Amended Counterclaim and to strike certain portions of its Amended Answer.

**Preliminary Statement**

ParkerVision starts off its brief by gratuitously complaining that Qualcomm has overreacted to what ParkerVision claims is a "straightforward" patent case by filing "frivolous" counterclaims.  It then further attempts to minimize the impact of Qualcomm's meritorious claims by contending that Qualcomm filed them in a "desperate" attempt to avoid what ParkerVision asserts is its "exceptional case" against Qualcomm.  These attacks on Qualcomm's

1

counterclaims and affirmative defenses are simply a smokescreen raised by ParkerVision to deflect attention away from serious misconduct by itself and SKGF, misconduct that does make this case "exceptional."  As Qualcomm has learned, even before taking any discovery, and as the Court will eventually learn, little is "straightforward" about this case.

First, ParkerVision's history is not at all "straightforward."  ParkerVision claims to be a technology innovator and alleges, in the complaint, that the patents-in-suit enable it "to differentiate its technology from that of its competitors."  (Dkt. 1 ¶ 2.)  ParkerVision raised nearly $200 million from investors over the past two decades with repeated promises of technological development and commercial success.  According to ParkerVision's public statements, a breakthrough deal that will result in tremendous sales is perpetually around the corner.  But, while millions of dollars of investors' funds have flowed into the hands of the company's principals and their relatives and the company's lawyers, there is no tangible evidence of any commercial success and ParkerVision has never credibly competed for sales of any products embodying its alleged technology.  Knowledgeable scientists and investors, including one who recently filed a separate fraud lawsuit in New Jersey, have devoted significant effort to demonstrating that ParkerVision's claims of innovation and commercial success are simply false.  Faced with the inability throughout its existence to show actual sales instead of unfulfilled promises, it is not surprising that ParkerVision would succumb to the pressure and convince SKGF to turn against its other client, Qualcomm.

Second, SKGF's relationship with ParkerVision is not at all "straightforward." The firm did not merely represent ParkerVision in its patent prosecution efforts.  SKGF attorneys were heavily invested in ParkerVision stock.  Robert Sterne at one point had accumulated over 200,000 ParkerVision stock options.  At least ten SKGF lawyers were granted many thousands of options in the company's stock.  SKGF was not simply paid to perform legal

services; rather, individual lawyers had (and perhaps still have) a direct financial interest in the value of the stock, which, given the company's utter lack of commercial success, is tied principally to the patents at issue and the outcome of this case.  SKGF, therefore, had a powerful motivation not only to assist ParkerVision in fraudulently obtaining the patents-in-suit from the PTO, but also to breach its fiduciary and contractual duties to Qualcomm and help ParkerVision bring this suit.

Third, ParkerVision's dealings with the PTO were not at all "straightforward." ParkerVision and SKGF did not innocently withhold references or perform sloppy prosecution. As described in more detail below, ParkerVision's conduct is inequitable because it and SKGF buried the patent examiner in prior art references and then materially mischaracterized the most relevant references in an effort to get the PTO Examiner to pay no attention to those critical references.  In doing so, ParkerVision and SKGF breached their most basic duty to the PTO—the duty of an applicant to be candid with the PTO.  Further, the presentation of information within the patents is designed to obscure the fact that the claimed inventions are simply old technology dressed up in different language and, therefore, not patentable.  Indeed, during the examination of the international application corresponding to one of the patents-in-suit, the examiner was highly critical of the disclosure, stating:  "[t]he extreme length of [the] description, the large number of drawings, their poor presentation, the numerous unnecessary repetitions all obscure the main concepts [and attempt] to extend the meaning of the terms in the claims beyond their normal meaning in the art" and that the application "fails to cite any relevant prior art and misleads the reader as to the relevance of the preexisting state of the art." Through its misleading disclosure, mischaracterization of the prior art and burying of relevant references, ParkerVision misled the PTO into issuing patents it should never have received.

Finally, ParkerVision's dealings with Qualcomm were not at all "straightforward." When ParkerVision first came to Qualcomm over a decade ago, in a pattern that would repeat itself over the years in claims made to investors, ParkerVision claimed to have developed a unique and viable RF technology. However, time and scrutiny revealed ParkerVision's promises to be false. After performing a competent technical analysis, Qualcomm provided to ParkerVision, pursuant to an NDA, a critique of ParkerVision's flawed design and suggestions for developing a viable technology. ParkerVision was so desperate to come up with something novel that it misappropriated Qualcomm's ideas and gave it to SKGF for inclusion in a ParkerVision patent application. Unbeknownst to Qualcomm, a patent then issued to ParkerVision incorporating the insight and contributions of Qualcomm—of course, without naming Qualcomm as a co-inventor. "Straightforward" is not a description that suits ParkerVision or the history that Qualcomm's counterclaims will expose.

As demonstrated below, each count of Qualcomm's counterclaim complies with the applicable pleading standard and easily survives ParkerVision's motion to dismiss, which should be denied. And because Qualcomm's inequitable conduct claim is adequately pleaded, ParkerVision's motion to strike should also be denied. The Court should see ParkerVision's motion for what it really is—an attempt prematurely to cut off inquiry into ParkerVision's serious misconduct in securing the patents at issue and asserting them against Qualcomm.

### Legal Standard

When considering a motion to dismiss pursuant to Rule 12(b)(6) a court must accept as true all factual allegations giving rise to the claim and construe them in a light most favorable to the claimant. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Bumpus v. Watts*, No. 10-14196, 2011 U.S. App. LEXIS 19659, at *1-2 n.1 (11th Cir. Sept. 26, 2011). To survive a motion to dismiss, a pleading need only "contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949

(2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id*. The threshold of sufficiency that a complaint must meet is "exceedingly low." *Collins v.*

*Countrywide Home Loans, Inc.*, 680 F. Supp. 2d 1287, 1292 (M.D. Fla. 2010).

A court is authorized to strike an affirmative defense only if the statement of the

defense is insufficient to give "fair notice" of the issue involved. *Tyco Fire Prods. LP v. Victaulic*

*Co.*, 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011); Fed. R. Civ. P. 8. A motion to strike seeks "a drastic

remedy to be resorted to only when required for the purposes of justice, and only when the

allegations to be stricken have no possible relation to the controversy." *Graphic Packaging*

*International, Inc. v. C.W. Zumbiel Co.*, No. 3:10-cv-891-JBT, 2011 U.S. Dist. Lexis 121070 (M.D. Fla.

Sept. 12, 2011).

## Argument

### I.      Qualcomm States a Claim of Inequitable Conduct.

#### A.      Qualcomm's Inequitable Conduct Claim Satisfies the *Therasense* Standards.

ParkerVision does not dispute that each individual associated with the filing and

prosecution of a patent application has a duty of candor and good faith in dealing with the

PTO. *See* 37 C.F.R. § 1.56. This duty applies at all times during the pendency of a patent

application and applies to all filings made to the PTO. *See Fox Indus. v. Structural Pres. Sys.*, 922

F.2d 801, 803 (Fed. Cir. 1990). An applicant's breach of its duty of candor and good faith

constitutes inequitable conduct. *Id*.

Qualcomm properly alleges that two individuals associated with the prosecution

of the '551 Patent—David F. Sorrells, a named inventor, and Michael Q. Lee, a SKGF lawyer

who prosecuted the patent—made materially false statements to the PTO concerning the scope

and teaching of four references submitted in connection with a request for accelerated examination called a "petition to make special" (the "Petition") (*See* Dkt. 60 ¶¶ 9-10, 29-64.) These misrepresentations were made in clear violation of these individuals' duty of candor and good faith.  Qualcomm also alleges that the Applicants misrepresented the significance of another reference from the PTO, which they knew to be highly material, first by failing to update the Petition to inform the Examiner of the importance of this reference, and then by hiding the reference by disclosing it to the PTO along with scores of irrelevant references.  (*See id.* ¶ 10, 18-28.)

Contrary to ParkerVision's suggestion, the recent Federal Circuit decision in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011), does *not* prohibit these types of inequitable conduct claims.  In *Therasense*, the Federal Circuit made clear that affirmative acts of misrepresentation to the PTO continue to be actionable:  "When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material" and thus actionable because "a patentee is unlikely to go to great lengths to deceive the PTO with a falsehood unless it believes that the falsehood will affect issuance of the patent."  *Id.* at 1292.

Here, Qualcomm alleges that ParkerVision and SKGF engaged in the very type of affirmative acts of misrepresentation that the Federal Circuit condemned in *Therasense*. Indeed, ParkerVision's pattern of conduct is particularly egregious—as Qualcomm alleges, ParkerVision and SKGF buried the PTO with hundreds of references, many of which were utterly irrelevant (Dkt. 60 ¶¶ 11, 14-15); asked the PTO to expedite its review of the patents-in-suit through the Petition (*id.* ¶¶ 29-30); told the PTO in the Petition that 21 of the hundreds of references it submitted were most relevant to the patentability of patents at issue (*id.* ¶¶ 29-30, 33); and then misrepresented what four of these references actually said in order to divert the

6

Examiner's attention from them.  (*Id.* ¶¶ 9-10, 34-64.)  To compound their misconduct, ParkerVision and SKGF withheld from the Examiner the highly material Parssinen reference until later in the prosecution.  (*Id.* ¶ 24.)  When they finally did disclose Parssinen to the PTO, they failed to tell the Examiner, as they were required to do, that this reference was *more* relevant than the references that had been identified in the Petition.  ParkerVision and SKGF therefore affirmatively misrepresented the significance of the Parssinen reference to the PTO.

ParkerVision's and SKGF's pattern of misrepresentation and concealment eventually was noticed by the PTO during the prosecution of U.S. Patent No. 6,687,493 (the "'493 Patent"), which issued from an application that was a continuation-in-part of the application for the '551 Patent at issue here.  (*See id.* ¶ 27.)  When ParkerVision and SKGF attempted to bury that examiner with over 700 largely irrelevant references, and hide the highly material Parssinen reference among them, the Examiner admonished them for "fail[ing] to state that any submitted reference/document is materially relevant to the claims."  (*Id.*)  The Examiner refused to inspect more than "four or five of the references" after determining that "nothing at all materially relevant to the claims of the instant application" was contained in those four or five and, therefore, "the entire set of references need not be individually inspected for relevancy."  (*Id.*)  Despite the Examiner's admonition, ParkerVision and SKGF failed to direct the Examiner's attention to the relevant references in the IDS submission, including Parssinen.  (*Id.*)  In other words, the strategy worked—they succeeded in defrauding the PTO.

Qualcomm's detailed allegations of concealment and misrepresentation are more than sufficient to state a claim for inequitable conduct under the *Therasense* standard.[1]

---

[1] ParkerVision's bare assertion that Qualcomm has failed to meet *Exergen*'s "who, what, when, where, how" requirement lacks merit.  (Dkt. 71 at 7 n.4 (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009).)  The Counterclaim includes a detailed description of

B.    Material Misrepresentations of Prior Art Constitute Inequitable Conduct.

ParkerVision attempts to excuse its material misrepresentation of four references identified in the Petition by claiming those statements were merely non-actionable "attorney argument" about disclosed prior art.  (Dkt. 71 at 5.)  However, "if a person of skill in the art would understand a disclosed piece of prior art to teach a certain fact relevant to the prosecution of the patent in suit, and an applicant's statement distorts or otherwise misrepresents that fact, that statement can serve as the basis for inequitable conduct charges." *McKechnie Vehicle Components USA, Inc. v. Lacks Indus., Inc.*, No. 09-cv-11594, 2010 U.S. Dist. LEXIS 119073, at *20-21 (E.D. Mich. Nov. 9, 2010) (denying motion to dismiss claim of inequitable conduct premised on an applicant's mischaracterization of prior art that was before the PTO).

While the boundary between legal argument and factual misrepresentation can be difficult to ascertain in some cases, the Federal Circuit's recent decision in *Ring Plus, Inc. v. Cingular Wireless Corp.* makes clear that ParkerVision's and SKGF's misrepresentations of the art identified in the Petition are actionable.  614 F.3d 1354 (Fed. Cir. 2010).  During prosecution of the patent asserted in *Ring Plus*, the applicants represented to the examiner that a certain prior art reference did not disclose "software" to implement the claimed telephone system.  *See* 614 F.3d at 1360.  While the Federal Circuit noted that the reference did not "explicitly" disclose the software element, it affirmed the trial court's determination that the applicant had materially misrepresented the reference because the reference "describe[d] components that are generally understood by persons of skill in the art to be associated with computers and software."  *Id.*  In

the misconduct before the PTO, naming the individuals responsible for the misconduct, identifying specific misrepresentations and omissions and describing their materiality.  (*See* Dkt. 60 ¶¶ 9, 29-64.)  These allegations are sufficient to state a claim of inequitable conduct.

particular, the Federal Circuit held that, because "a person of skill in the art would have understood the reference to disclose software-based algorithms," representations to the contrary were material misrepresentations of fact. *Id.* In so holding, the court rejected the argument that such statements were innocuous "attorney argument," finding the false statements "outside the bounds of permissible attorney argument." *Id.* at 1361.

As Qualcomm's counterclaim sets forth in detail, ParkerVision's mischaracterizations are precisely the type of statements found actionable in *Ring Plus.* (*See* Dkt. 60 ¶¶ 29-64.) In particular, Qualcomm alleges that Sorrells and Lee misrepresented the contents of four references (the "Subharmonic Sampling Exemplars") by stating that each reference failed to disclose the following combination of elements of a claim then under consideration by the Examiner ("Pending Claim 8"):

> the combination of receiving a modulated carrier signal and transferring non-negligible amounts of energy from the modulated carrier signal, at a rate that is substantially equal to a sub-harmonic of the modulated carrier signal, whereby the transferred non-negligible amounts of energy forms the demodulated baseband signal.

(*See id.* ¶¶ 35, 41, 46, 52.) Qualcomm alleges that this statement was demonstrably false, and outside the bounds of permissible attorney argument, because a person of ordinary skill in the art would have understood each of the Subharmonic Sampling Exemplars to disclose each of the claimed elements of Pending Claim 8. (*Id.* ¶¶ 60-63.) This misrepresentation was material because it relates to patentability of the claims of the '551 Patent, including Claim 1. (*Id.* ¶ 64.) Indeed, the counterclaim alleges that, but for the Applicants' materially false characterizations of the Subharmonic Sampling Exemplars, Claim 1 of the '551 Patent would not have issued. (*Id.* ¶ 72.) Qualcomm's allegations about the misrepresentations made during prosecution of the '551 Patent are, therefore, sufficient to state a claim of inequitable conduct.

ParkerVision's reliance on *Rothman v. Target Corp.* 556 F.3d 1310, 1328-29 (Fed. Cir. 2009) is misplaced.  In *Rothman*, the applicants argued during prosecution that in determining whether a claimed nursing garment was obvious it was improper to combine prior art from the general field of garment design with art from the specialized field of nursing garments.  *Id.* at 1328.  The Federal Circuit held that this purely legal argument over whether certain references may be combined as part of an obviousness analysis "d[id] not even approach an effort to deceive the PTO or abuse the prosecution process."  *Id.* at 1329.  Indeed, the challenged statement did not contain any *factual* assertions about the contents of the prior art; it was merely a legal argument about the scope of prior art available for an obviousness analysis. Here, by contrast, ParkerVision expressly mischaracterized the disclosure of the cited references.[2]

C.   <u>Qualcomm's Allegations Concerning the Misrepresentation of the Significance of the Parssinen Reference State a Claim for Inequitable Conduct.</u>

While Qualcomm's allegations concerning the Applicants' material misstatements to the PTO are, by themselves, sufficient to state a claim for inequitable conduct, the additional allegation that the Applicants effectively misrepresented the significance of the highly material Parssinen reference provides independent support for that claim.  Qualcomm

---

[2] The other cases cited by ParkerVision are similarly inapposite.  Unlike ParkerVision's factually misleading characterization of the disclosures of the Subharmonic Sampling Exemplars, the statements at issue in those cases were either purely legal arguments about the proper application of a legal standard, *see Innogenics, N.V. v. Abbott Laboratories*, 512 F.3d 1363, 1378-79 (Fed. Cir. 2008) (holding that a patent attorney's general assessment of relevance—that the identified prior art "d[id] not relate to the invention"—was merely a legal argument that did not contain any factual assertions); *Life Technologies v. Clontech Laboratories*, 224 F.3d 1320, 1325-26 (Fed. Cir. 2000) (finding the challenged statements to be legal argument concerning the level of skill in the art that "did not contain any factual assertions that could give rise to a finding of misrepresentation"), or were factual allegations that were not demonstrably false and, therefore, were not mischaracterizations, *see Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007) (holding that alleged misrepresentations were "not . . . demonstrably false" and therefore did not constitute affirmative misrepresentations of material fact).

alleges that the Applicants violated their duty of candor by misrepresenting to the PTO the relevance of an anticipatory, and thus highly material, reference by A. Parssinen, entitled "A 2-GHz Subharmonic Sampler for Signal Downconversion."  (Dkt. 60 ¶¶ 18-28.)

An applicant receives a significant benefit in taking advantage of the petition to make special process—*i.e.*, accelerated prosecution of the patent application.  To protect the integrity of that process, certain rules govern an applicant's filing of such a petition. ParkerVision violated those rules.

Specifically, an applicant who submits a petition to make special to obtain accelerated prosecution of a patent is required to perform a pre-examination search for prior art and submit to the PTO copies of each reference deemed most closely related to the claimed subject matter along with a "a detailed discussion" of how the claims are patentable over each reference.  *See* MPEP § 708.02[VIII] (7th Ed., July 1998); *see also* MPEP § 708.02[VIII] (8th Ed., July 2010).  When, after filing a petition to make special, an applicant discovers additional prior art that is closer to the claimed subject matter of the application than the references provided in the petition to make special, the duty of candor and good faith requires that the applicant supplement the petition to account for the newly discovered art.[3]

Qualcomm alleges that the Applicants, having learned of Parssinen and its materiality to the pending application for the '551 Patent shortly after filing their Petition, violated their duty of candor by failing to update the Petition to include Parssinen.  Instead of supplementing the Petition to include Parssinen, ParkerVision and SKGF buried Parssinen in a later disclosure to the PTO along with scores of irrelevant references.  (Dkt. 60 ¶¶ 24-28.)  And

---

[3] *See* 37 C.F.R. § 1.56; Accelerated Examination FAQs, http://www.uspto.gov/patents/process/file/accelerated/ae_faq_091207.pdf (last visited Jan. 23, 2012).

instead of properly characterizing Parssinen as a highly material piece of prior art as they were required to do by the PTO rules, ParkerVision simply listed it in the subsequent disclosure. ParkerVision and SKGF therefore mischaracterized the significance of the Parssinen reference to the PTO.

ParkerVision claims that it could not commit inequitable conduct because Parssinen is listed on the face of the '551 Patent and, accordingly, must have been disclosed to the PTO during prosecution.  (*See* Dkt. 71 at 4.)  This argument misses the point entirely and ignores the context of the petition to make special.  Qualcomm is not basing its claim on any failure to disclose Parssinen to the PTO.  Rather, the manner in which Parssinen was disclosed, in violation of the PTO rules, was an intentional misrepresentation of Parssinen's significance. Because the Applicants learned of the highly material, non-cumulative Parssinen reference shortly after they filed their Petition, and long before the PTO acted on the Petition, their duty of candor required them to update the Petition to include the newly discovered reference.  By instead burying Parssinen in a later-filed IDS, the Applicants misrepresented to the PTO that it was *less* material than those references submitted with the Petition.  (*See* Dkt. 60 ¶ 25.)

Even if the Applicants were not compelled by their duty of candor to update the Petition to discuss Parssinen, the fact that they intentionally buried it among scores of irrelevant references is also sufficient to state a claim for inequitable conduct.  *See, e.g., Golden Valley Microwave Foods Inc. v. Weaver Popcorn Co. Inc.*, 837 F. Supp. 1444, 1447 (N.D. Ind. 1992), *aff'd.*, 11 F.3d 1072 (Fed Cir. 1993) ("it is . . . a violation of the duty of candor" for an applicant to disclose a highly material prior art reference in such a way as to "bury" it among less relevant prior art); *Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., LLC*, No. 06-4693, 2007 U.S. Dist. LEXIS 37665, at *20-21 (N.D. Cal. May 10, 2007) (noting that allegations of "burying" may be sufficient to support a claim of inequitable conduct); *Penn Yan Boats, Inc. v. Sea Lark Boats, Inc.*, 359 F.

12

Supp. 948, 965 (S.D. Fla. 1972) ("the purpose of this misrepresentation was to bury [the reference] in a long list of allegedly old prior art patents in the hope that the examiner . . . would ignore the list and permit the [patent] to issue.").

The lone appellate case relied upon by ParkerVision, *Fiskars, Inc. v. Hunt Mfg., Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000), does not foreclose inequitable conduct claims based on burying.  In that case, the patentee was *not* accused of burying a highly material reference among a voluminous amount of irrelevant prior art.  *Id.*  Rather, the defendant in that case argued that the plaintiff was required to direct the examiner's attention to an already submitted reference that the examiner had affirmatively chosen not to consider.  *Id.*  The Federal Circuit rejected this argument, holding that the patentee had no obligation to tell the PTO about the same reference twice.  *Id.*; *see also Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 749 F. Supp. 2d 892, 903 (W.D. Wis. 2010) (noting that *Fiskars* does not foreclose burying claims).

Even if the allegations of burying the Parssinen reference were insufficient to support Qualcomm's claim for inequitable conduct, they are, at a minimum, probative of the applicants' bad faith in prosecuting the '551 Patent.  *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995) (noting that "burying a particularly material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith").

D.    Qualcomm's Amended Counterclaims for a Declaration of Unenforceability of the Related Patents Due to Inequitable Conduct Should Not Be Dismissed.

Claims 1 through 7 of Qualcomm's Amended Counterclaim sufficiently allege the unenforceability of all seven patents-in-suit, including the '551 Patent and each of the Related Patents. Under the doctrine of infectious unenforceability, inequitable conduct occurring early in the prosecution of an application may render unenforceable all claims that eventually issue from the same or a related application.  *Agfa Corp. v. Creo Prods.*, 451 F.3d 1366,

1379 (Fed. Cir. 2006).  Infectious enforceability applies where the inequitable conduct committed during the prosecution of an earlier patent is "related to the targeted claims of the ultimately-issued patent or patents sought to be enforced."  *eSpeed Inc. v. Brokertec USA, LLC*, 417 F. Supp. 2d 580, 595 (D. Del. 2006). Accordingly, the inequitable conduct that occurred during the prosecution of the '551 Patent may—and, as alleged in the Amended Counterclaim, does—render unenforceable each of the Related Patents.  *See id.*

ParkerVision does not challenge the sufficiency of the pleadings with respect to Counts 2-7 of the Amended Counterclaim except to argue that those claims fail because the underlying claim of inequitable conduct  during prosecution of the '551 Patent is defective.  (*See* Dkt. 71 at 4-7.)  But, as shown above, Count 1 of the counterclaim states a claim for unenforceability of the '551 Patent, and therefore ParkerVision's motion to dismiss Counts 2-7 should be denied.

## II.    Qualcomm States a Claim for Aiding and Abetting Breach of Fiduciary Duty.

To state a claim for aiding and abetting breach of fiduciary duty, a plaintiff must allege:  "(1) a fiduciary duty on the part of the primary wrongdoer, (2) a breach of this fiduciary duty, (3) knowledge of the breach by the alleged aider and abettor and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing."  *Amerifirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991).

ParkerVision does not contest that Qualcomm has sufficiently pleaded that SKGF owed a fiduciary duty of loyalty to Qualcomm; that such duty was breached by SKGF's assisting ParkerVision in this litigation; and that ParkerVision both knew of and provided substantial assistance or encouragement of that breach.  (*See* Dkt. 71 at 7-8.)  Indeed, it is clear Qualcomm's breach of fiduciary duty claim is based on far more than "speculation," as ParkerVision erroneously claims (*Id.* at 1.)  Despite numerous opportunities to do so, neither

SKGF nor ParkerVision has denied that SKGF, while Qualcomm was its client, helped

ParkerVision do a pre-suit analysis adverse to Qualcomm.  That act was a clear-cut breach of

SKGF's fiduciary duty to Qualcomm.

ParkerVision instead contends that Qualcomm's claim for aiding and abetting

breach of fiduciary duty is defective because Qualcomm fails to allege an injury to it that was

proximately caused by SKGF's breach.  (*Id.* at 8.)  Specifically, ParkerVision contends that the

three harms identified in Qualcomm's counterclaim are not sufficiently connected to the alleged

misconduct to satisfy the proximate cause requirement.  (*Id.*)  As set forth in greater detail in

Qualcomm's opposition to SKGF's motion to dismiss, however, the harms alleged by

Qualcomm are more than sufficient to state a claim for both SKGF's breach of fiduciary duty

and ParkerVision's aiding and abetting of that breach.

For example, Qualcomm alleges that it paid SKGF substantial fees for legal work

performed during the period of improper concurrent representation.  (*See* Dkt. 60 ¶ 193.)  This

allegation alone is sufficient to support claims for both SKGF's breach of fiduciary duty and

ParkerVision's aiding and abetting thereof because SKGF was not entitled to payment of those

fees.  *See White v. Roundtree Transp., Inc.*, 386 So. 2d 1287, 1289 (Fla. Dist. Ct. App. 1980) ("[a]n

attorney's right to a fee terminates when the attorney realizes or should realize that he cannot

ethically represent his client's interests"); *Hendry v. Pelland*, 73 F.3d 397, 401-02 (D.C. Cir. 1996).

ParkerVision contends that "[Qualcomm] cannot plausibly allege that it . . . would not have

paid fees to [SKGF] but for [SKGF's] alleged breach of fiduciary duty."  (Dkt. 71 at 8.)  This

argument is fallacious at best.  But for SKGF's breach of its fiduciary duties owed to Qualcomm,

the legal fees Qualcomm paid during the period of SKGF's conflicting representations would

not have constituted a harm to Qualcomm.  The harm to Qualcomm in paying such fees is

necessarily a proximate result of SKGF's breach.

Qualcomm further alleges that it was injured because it has lost the value of the opinion work that SKGF had performed on the two matters that were still ongoing when ParkerVision filed this lawsuit, and will need to retain replacement counsel to perform that opinion work.  (*See* Dkt. 60 ¶ 194.)  ParkerVision contends that this injury was not proximately caused by SKGF's breach of fiduciary duty, but was instead precipitated by the filing of Qualcomm's counterclaim against SKGF.  In other words, ParkerVision asserts that any harm to Qualcomm occurred as a consequence of its own conduct in seeking redress for SKGF's misconduct, since "SKGF could have continued working for Qualcomm despite [its] breach of fiduciary duty."  (Dkt. 71 at 9.)  This argument fails, however, because had Qualcomm not sued SKGF, it would nevertheless have been entitled to discharge the law firm for its misconduct and to seek recovery for the lost value of the opinion work even though it had discharged it.

Finally, Qualcomm alleges that it has been harmed by SKGF's breach of fiduciary duty, and ParkerVision's participation therein, because it has been required to defend itself in this litigation.  (*See* Dkt. 60 ¶ 195.)  As set forth in Qualcomm's opposition to SKGF's motion to dismiss, this allegation is also sufficient to state a claim for breach of fiduciary duty because, due to SKGF's familiarity with the patents-in-suit and access to Qualcomm's confidential information, it is certainly plausible that ParkerVision would not have brought this lawsuit, and Qualcomm not have been forced to incur fees defending it, without the assistance provided by SKGF.[4]  *See Twombly*, 550 U.S. at 546.  Accordingly, Claim 11 of Qualcomm's Amended Answer and Counterclaims contains sufficient factual allegations to state a claim for ParkerVision's aiding and abetting SKGF's breach of its fiduciary duty.

---

[4] Indeed, it is certainly plausible that it is more than simply a coincidence that ParkerVision's first target, among all RF chip suppliers, happens to be one of SKGF's clients, including in matters related to RF technology.

III.     **Qualcomm States a Claim for Tortious Interference with a Contractual Relationship.**

ParkerVision contends that it cannot, as a matter of law, be liable for interfering with SKGF's commitment that "no one at [SKGF] would in any future matter take an adversarial position" against Qualcomm for as long as Qualcomm remained a client.  (Dkt. 71 at 9.)  This argument fails because it is premised on a fundamental misunderstanding of the law.

While it is generally true that a party who breaches a contract cannot be sued for tortious interference with that contract—"for that would make every breach of contract a tort"—this rule does not bar tortious interference claims where the breaching party's rights and obligations with respect to the claimant are *independent* of the interfering party.  *Sufrin v. Hosier*, 128 F.3d 594, 598 (7th Cir. 1997) (Posner, J.); *see also Montgomery & Larmoyeux v. Philip Morris, Inc.*, 992 F. Supp. 1372, 1377 (S.D. Fla. 1998) (finding a tortious interference claim against a party to the same contract sufficient to state a cause of action under Florida law); *Nautica Int'l., Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1346 (S.D. Fla. 1998) (denying a motion to dismiss a claim for tortious interference against a party to the same contract).  A claim for tortious interference may be brought where the interfering party has no right under the contract to affect the rights and obligations of the claimant.  *See Nautica Int'l*, 5 F. Supp. 2d at 1346.

Qualcomm alleges that, under the January 12, 1999 Agreement, SKGF had independent contractual obligations to Qualcomm and to ParkerVision (Dkt. 60 ¶ 210), and ParkerVision had no greater right under the agreement to interfere with the SKGF's obligations to Qualcomm than it would have had if that obligation had been set forth on a separate piece of paper.  *See Sufrin*, 128 F.3d at 598 (holding that "[defendant] had no greater right to interfere with the [the breaching party's] obligation to [plaintiff] than he would have had if that obligation had been set forth on a separate piece of paper"). The law does not deny Qualcomm redress against ParkerVision for its knowing participation in SKGF's breach of contract simply

because, out of expediency, the two independent agreements—ParkerVision's conflict waiver and Qualcomm's conflict waiver—were included in a single document, drafted by the party in breach. *See Sufrin*, 128 F.3d at 598; *Montgomery & Larmoyeux*, 992 F. Supp. at 1377.

The cases cited by ParkerVision are inapposite.  In *United of Omaha Life Insurance v. Nob Hill Associates,* 450 So. 2d 536, 539 (Fla. Dist. Ct. App. 1984), the plaintiff's tortious interference claim was barred because the plaintiff's agreement with the breaching party was subject to the defendant's approval and parallel commitment.  Similarly, the claim in *Ethyl Corporation v. Balter*, 386 So. 2d 1220, 1224 (Fla. Dist. Ct. App. 1980) was defective because the defendant was, among other things, the guarantor of the breached loan agreement.  Finally, *Salit v. Ruden, McClosky*, 742 So.2d 381, 386 (Fla. Dist. Ct. App. 1999) merely stands for the proposition that a claim for tortious interference cannot be brought against a party having the "privilege to interfere" with the contract.  ParkerVision would have a point if Qualcomm were to contend that ParkerVision interfered with its own obligations to Qualcomm under the agreement.  But that is not the allegation here.  The allegation only addresses SKGF's obligations to Qualcomm.  ParkerVision cannot credibly contend, nor does it appear to, that it had a right under the January 12, 1999 Agreement to interfere with SKGF's commitment to Qualcomm that it would not become adverse to Qualcomm.

Because ParkerVision had no right under the contract to affect Qualcomm's rights and SKGF's obligations to Qualcomm, Claim 13 of the counterclaim states a viable claim for tortious interference.

## IV.   Qualcomm States a Claim for Breach of Contract.

Qualcomm alleges in Claim 14 of its counterclaim that ParkerVision breached a March 15, 1999 Non-Disclosure Agreement (the "March 1999 NDA") by using proprietary and confidential information it received from Qualcomm pursuant to the March 1999 NDA for

unauthorized purposes.  (Dkt. 60 ¶¶ 217-27.)  The March 1999 NDA requires that *any* party receiving confidential information pursuant to the agreement hold that information in strict confidence and use it only for certain authorized purposes related to the ongoing negotiations between the parties.  (*Id.* ¶ 217.)

On or around March 26, 1999, Qualcomm gave ParkerVision a confidential memorandum (the "Qualcomm Memorandum") that contained a Qualcomm employee's critique of ParkerVision's proposed RF technology and suggestions for overcoming the perceived deficiencies to develop viable technology.  (*Id.* ¶ 218-20.)  ParkerVision made unauthorized use of this confidential information by incorporating it into ParkerVision's own patents.  (*Id.* ¶ 218-23.)  As a result of ParkerVision's misconduct, Qualcomm lost the value of its confidential and proprietary information.  (*Id.* ¶ 226.)  Accordingly, the counterclaim states a claim for breach of contract because it pleads (1) the existence of a valid contract, (2) a material breach of that contract, and (3) injury to Qualcomm.  *See Merin Hunter Codman, Inc. v. Wackenhut Corr. Corp.*, 941 So. 2d 396, 398 (Fla. Dist. Ct. App. 2006) (listing elements for breach of contract).[5]

ParkerVision contends that the counterclaim "fails to state any facts giving rise to a breach of contract" because it does not allege that "ParkerVision did anything—let alone anything improper—with Qualcomm's confidential information."  (Dkt. 71 at 10.)  However, this interpretation of the counterclaim is plainly incorrect.  Qualcomm alleges that ParkerVision took Qualcomm's proprietary and confidential information disclosed pursuant to an NDA and incorporated that information into its own patent applications.  (Dkt. 60 ¶¶ 221, 225.)

---

[5] This misappropriation of Qualcomm's confidential ideas also underlies Qualcomm's claim of inventorship (Claim 15).  Although ParkerVision attempts to denigrate this claim in its brief (Dkt. 71 at 10), Qualcomm believes it will be able to prove at trial that ParkerVision obtained patent claims that incorporated Qualcomm's employee's ideas, making Qualcomm an inventor (by assignment) of the patents that include those claims.

ParkerVision's contention that such activities do not constitute use of Qualcomm's confidential information is simply not credible and is, at best, a disputed question of fact that must be resolved in Qualcomm's favor on a motion to dismiss. *See Bumpus v. Watts*, 2011 U.S. App. LEXIS 19659, at *1-2 n.1.

Further, ParkerVision's argument that "Qualcomm's alleged injury of unjust enrichment is legally defective" is both incorrect and irrelevant to the motion to dismiss. (*See* Dkt. 71 at 10 n.5.) Unjust enrichment is a valid measure of damages in a claim for breach of contract. *See* Restatement (Second) of Contracts § 345(d) (remedies for breach of contract "include . . . awarding a sum of money to prevent unjust enrichment"). Even absent the allegation of unjust enrichment, the counterclaim alleges that Qualcomm suffered damages as a result of ParkerVision's breach of contract. (*See* Dkt. 60 ¶ 226 (alleging that Qualcomm was damaged by ParkerVision's public disclosure of its confidential information).)

## V.      ParkerVision's Motion to Strike Should Be Denied.

ParkerVision moves to strike Qualcomm's affirmative defenses of inequitable conduct and unclean hands, as well as certain paragraphs from Qualcomm's pleading setting forth the factual allegations in support of those defenses and the related counterclaims for inequitable conduct. (*See* Dkt. 71 at 11.) ParkerVision advances no unique grounds for its motion to strike and instead merely references arguments made in support of its motion to dismiss the inequitable conduct claims. Because, as shown above, the Amended Counterclaim states a claim for inequitable conduct, the factual allegations in support of the inequitable conduct claims and the related affirmative defenses should not be stricken from the pleading.

### Conclusion

For the foregoing reasons, Qualcomm respectfully requests this Court deny ParkerVision's Motion to Dismiss and Strike Qualcomm's First Amended Complaint.

January 23, 2012

CRAVATH, SWAINE & MOORE LLP

By:    s/ Keith R. Hummel

        Keith R. Hummel (admitted pro hac vice) (Trial Counsel)
        khummel@cravath.com
        David Greenwald (admitted pro hac vice)
        dgreenwald@cravath.com
        Worldwide Plaza
        825 Eighth Avenue
        New York, New York  10019
        Telephone:  (212) 474-1000
        Facsimile:  (212) 474-3700

        -and-

BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.
        John A. DeVault, III
        Florida Bar No. 103979
        jad@bedellfirm.com
        Courtney K. Grimm
        cgrimm@bedellfirm.com
        Florida Bar No. 953740
        The Bedell Building
        101 East Adams Street
        Jacksonville, Florida 32202
        Telephone:  (904) 353-0211
        Facsimile:  (904) 353-9307

        -and-

CADWALADER, WICKERSHAM & TAFT LLP
        Christopher A. Hughes (admitted pro hac vice)
        Christopher.Hughes @cwt.com
        1 World Financial Center
        New York, New York 10281
        Telephone:  (212) 504-6000
        Facsimile:  (212) 504-6666

*Counsel for Defendant, Counterclaim Plaintiff Qualcomm Incorporated*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of January, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Ava K. Doppelt
adoppelt@addmg.com

Brian R. Gilchrist
bgilchrist@addmg.com

Douglas Aaron Cawley
dcawley@mckoolsmith.com

James Arthur Bolling
jbolling@smithhulsey.com

Jeffrey Scott Boyles
jboyles@addmg.com

John Austin Curry
acurry@mckoolsmith.com

Stephen D. Busey
busey@smithhulsey.com

Travis Gordon White
gwhite@mckoolsmith.com

David R. Atkinson
datkinson@gunster.com

David M. Wells
dwells@gunster.com

Katherine H. Underwood
KUnderwood@gunster.com

s/ Keith R. Hummel
Keith R. Hummel (admitted pro hac vice)
khummel@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
*Counsel for Defendant, Counterclaim Plaintiff Qualcomm Incorporated*