THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| PARKERVISION, INC.,<br><br>            *Plaintiff*,<br><br>    v.<br><br>QUALCOMM INCORPORATED,<br><br>            *Defendant.*<br><br>QUALCOMM INCORPORATED,<br><br>            *Counterclaim Plaintiff*,<br><br>    v.<br><br>PARKERVISION, INC., and<br>STERNE, KESSLER, GOLDSTEIN & FOX PLLC<br><br>            *Counterclaim Defendants.* | Case No. 3:11-cv-719-J-37-TEM |

**QUALCOMM'S MOTION TO COMPEL STERNE KESSLER TO ANSWER REQUESTS
FOR PRODUCTION NOS. 37 AND 40 AND INTERROGATORIES NOS. 1-3 AND
MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 37, Qualcomm moves this Court to compel Sterne, Kessler, Goldstein & Fox PLLC ("Sterne Kessler") to produce documents in response to Requests Nos. 37 and 40 from Qualcomm's First Set of Requests for the Production of Documents ESI and Things and to answer its First Set of Interrogatories Nos. 1-3.

As the 9th and 11th counts of its Counterclaim, Qualcomm has sued its former counsel, Sterne Kessler, for breach of fiduciary duty and breach of contract (the "common law counterclaims"). The theory of Qualcomm's common law counterclaims is that by assisting ParkerVision to bring this action against Qualcomm while Qualcomm was Sterne Kessler's client, Sterne Kessler (i) breached the fiduciary duty of loyalty all attorneys owe their clients

1

and (ii) broke an express promise it had made to Qualcomm in 1999 that "no one at [Sterne Kessler] would in any future matter take an adversarial position (*e.g.,* participate in litigation against [Qualcomm] on any matters)" for as long as Qualcomm remained a Sterne Kessler client. (March 30, 2012 Declaration of David Greenwald ("Greenwald Decl.") Ex. 1.)

On January 30, 2012, Qualcomm served several document requests and three interrogatories on Sterne Kessler. Requests for Production ("RFP") Nos. 37 and 40 and Interrogatories Nos. 2 and 3 seek information concerning the nature of the assistance Sterne Kessler provided to ParkerVision in preparing to sue Qualcomm. This information goes to the very heart of Qualcomm's common law counterclaims; Sterne Kessler's assistance to ParkerVision against its then-current client is the basis for these claims.

Requests for Production ("RFP") Nos. 37 and 40 and Sterne Kessler's response thereto are as follows :

> RFP No. 37 seeks:
>
>> All billing records or internal time records of Sterne Kessler attorneys for work related to this action or enforcement of the Patents-in-Suit.
>
> RFP No. 40 seeks:
>
>> All documents and communications sufficient to show the billing charge number under which Sterne Kessler attorneys recorded time relating to this action or enforcement of the Patents-in-Suit and all time entries recorded under that charge.
>
> In response to both requests, Sterne Kessler has objected identically as follows:
>
>> SKGF hereby incorporates by reference, as if fully set forth herein, its General Objections as set forth above. SKGF objects to this Request because it is vague and indefinite. To the extent the Request seeks billing records between SKGF and ParkerVision, SKGF objects to this Request because it knowingly and improperly seeks to invade upon the attorney-client relationship between SKGF and

>ParkerVision. Any response which would either admit or deny the existence of responsive documents relating to this action or any enforcement of the Patents-in-Suit against the Counterclaim-Plaintiff would necessarily result in the disclosure of the substance of attorney-client communications between SKGF and ParkerVision. To the extent the Request seeks internal billing records relating to the action, SKGF objects to this Request because it seeks information protected by the Attorney-Client privilege and/or Work Product immunity doctrine as such work would have been performed at the request and direction of litigation counsel. SKGF further objects to this Request because it is vague, overbroad and unduly burdensome in that it is indeterminate whether "enforcement of the Patents-in-Suit" is intended to be limited to the present action or encompass activities not involving the Counterclaim-Plaintiff.

Interrogatory Nos. 2 and 3 and Sterne Kessler's responses thereto are as follows:

Interrogatory No. 2 asks:

>Identify every Sterne Kessler attorney who has communicated orally or in writing with any attorney from the law firms of McKool Smith, P.C., Smith Hulsey & Busey, or Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A. concerning this action and/or the Patents-in-Suit.

Sterne Kessler has objected to Interrogatory No. 2 as follows:

>SKGF hereby incorporates by reference, as if fully set forth herein, its General Objections as set forth above. SKGF objects to this Interrogatory because it knowingly and improperly seeks to invade upon the attorney-client and joint defense privileges between SKGF and ParkerVision. SKGF further objects to this Interrogatory because it seeks information protected by the Attorney-Client privilege and Work Product immunity doctrine. SKGF further objects to this Interrogatory because it seeks information protected by the Joint Defense privilege, or Common Interest rule. SKGF further objects to this Interrogatory because it is overbroad and unduly burdensome as it requests information not relevant to the underlying action nor reasonably calculated to lead to the discovery of admissible evidence.

Interrogatory No. 3 asks:

> Describe all steps you took to assist ParkerVision in analyzing Qualcomm's products or preparing to enforce the Patents-in-Suit against Qualcomm, including by (i) stating the total number of hours expended by Sterne Kessler attorneys during 2010 and 2011, whether or not recorded or billed, in connection with such assistance, and (ii) identifying all analyses, presentations, draft pleadings, or other documents prepared for the benefit of ParkerVision or its attorneys and identifying the authors, recipients and date that each document was created.

Sterne Kessler has objected to Interrogatory No. 3 as follows:

> SKGF hereby incorporates by reference, as if fully set forth herein, its General Objections as set forth above. SKGF objects to this Interrogatory because it knowingly and improperly seeks to invade upon the attorney-client and joint defense privileges between SKGF and ParkerVision. Any response would necessarily result in the disclosure of the substance of attorney-client communications between SKGF and ParkerVision.

In its objections to this discovery, Sterne Kessler has taken the position that disclosure of the basic facts of Sterne Kessler's assistance to ParkerVision—whether its attorneys provided assistance, which of its attorneys provided that assistance, when they provided that assistance and the form that assistance took (*e.g.*, preparation of memoranda, drafting of pleadings)—would disclose information allegedly protected by the attorney-client privilege and the work product immunity. (Greenwald Decl. Ex. 3.) Sterne Kessler's position is plainly without merit because none of the discovery requests seeks the substance of any advice or work product Sterne Kessler provided to ParkerVision. Qualcomm's interrogatories seek, at this time, only the basic "who," "what," "when" and "how long" that it is indisputably entitled to discover.

Because Sterne Kessler's privilege objections render it effectively impossible for Qualcomm to obtain discovery concerning its common law counterclaims, Qualcomm brings

4

this motion to compel Sterne Kessler to produce the documents requested by RFP Nos. 37 and 40, and to answer Interrogatories Nos. 2 and 3.

Qualcomm also moves to compel Sterne Kessler to answer Interrogatory No. 1, which asks Sterne Kessler to identify every Sterne Kessler attorney who, from 1997 to the present, has owned shares of ParkerVision stock or options rights in ParkerVision stock. Because this interrogatory seeks information about whether Sterne Kessler attorneys had a financial motive to deceive the PTO, and because evidence of motive is relevant to the intent element of Qualcomm's defense and counterclaim of inequitable conduct, Sterne Kessler's relevance objection is plainly without merit.

Interrogatory No. 1 and Sterne Kessler's response thereto are as follows:

Interrogatory No. 1 asks:

> Identify (i) every Sterne Kessler attorney who, from January 1, 1997 to the present, owned shares of ParkerVision stock or option rights in ParkerVision stock; (ii) the date(s) on which each identified attorney acquired shares of ParkerVision stock, the number of shares acquired on that date, and whether such shares were obtained pursuant to a grant of stock option rights; (iii) the date(s) on which each identified attorney acquired option rights in ParkerVision stock, the quantity and class of the underlying assets available under the options, and the exercise price and expiration date of the options; and (iv) the date(s) on which each identified attorney disposed of shares of ParkerVision stock and the number of shares sold on that date.

Sterne Kessler has objected to Interrogatory No. 1 as follows:

> SKGF hereby incorporates by reference, as if fully set forth herein, its General Objections as set forth above. SKGF objects to this Interrogatory because it is overbroad and unduly burdensome as it requests information not relevant to the underlying action nor reasonably calculated to lead to the discovery of admissible evidence. SKGF further objects to this Interrogatory because it is vague as the

5

phrase "class of the underlying assets" is undefined and indeterminate.

**Rule 37(a)(1) and Local Rule 3.01(g) Certification**

On March 8, 2012, counsel for Qualcomm wrote to counsel for Sterne Kessler concerning its objections, and particularly noting the impropriety of its assertion of attorney-client privilege and work product immunity to shield from discovery subjects that fall outside the scope of the privilege and immunity. (Greenwald Decl. Ex. 2.) Sterne Kessler responded to Qualcomm's letter on March 12. (Greenwald Decl. Ex. 3.) On March 19, 2012, counsel for both parties met and conferred in a good faith effort to resolve the issues raised by the present motion, but were unable to agree on the resolution of the motion. (Greenwald Decl. ¶¶ 7-12.)

**Request for Oral Argument**

Pursuant to Rule 3.01(j) Qualcomm requests oral argument on its Motion to Compel so that the parties may present their respective positions. Qualcomm estimates that a hearing time of one (1) hour will be sufficient.

**Argument**

**I.     Sterne Kessler Should be Compelled to Produce Billing/Time Records and the Billing Charge Number Pertaining to its Assistance of ParkerVision in Suing Qualcomm (RFP Nos. 37 and 40).**

In seeking Sterne Kessler billing/internal time records, RFP No. 37 seeks information "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Pro. 26(b)(1). The central question for discovery and trial on the common law counterclaims against Sterne Kessler is "did Sterne Kessler help ParkerVision prepare its lawsuit against its current client, Qualcomm?" The most reliable, contemporaneous documentary record of what a lawyer does, when, and for how long, is the lawyer's time sheets, and the billing records and invoices that are generally prepared based upon those time sheets.

RFP No. 37 thus targets documents that will reliably, succinctly and accurately answer its questions.

RFP No. 40 is also proper. If Sterne Kessler is like most other modern law firms, it employs an internal billing charge (generally a client-specific number, followed by a matter-specific number) not only for billing purposes, but as a basis for internal organization of files and word-processing documents related to specific engagements. If that assumption on Qualcomm's part is correct, then knowledge of the charge number Sterne Kessler has used for the work it did to help ParkerVision sue Qualcomm will indicate where pre-suit analyses/pleadings Sterne Kessler prepared for ParkerVision are stored within Sterne Kessler's document management/file-keeping systems. Federal Rule of Civil Procedure 26(b)(1) clearly makes such information discoverable, providing specifically that the "*location* of any documents" is a proper subject for discovery, in part because such information assists the parties in narrowing the scope of collection and production.[1]

The primary basis upon which Sterne Kessler has refused to produce documents responsive to these document requests is that they "invade upon the attorney-client relationship between [Sterne Kessler] and ParkerVision." (*See* Greenwald Decl. Ex. 7.) During the March 19 meet-and-confer, counsel for Sterne Kessler also argued that it would not produce such documents until the Court has ruled on the merits of an argument Sterne Kessler raised for the first time in its November 30, 2011 opposition to Qualcomm's motion for a preliminary injunction: namely that its assistance of ParkerVision in preparing this action is within the

---

[1] Indeed, Sterne Kessler, in its objections to other document requests from Qualcomm, has contended that it will not produce documents until the parties have "agreed upon search terms and SKGF custodians." (Greenwald Decl. Ex. 7.) Qualcomm believes that the efficiency of such a process will be greatly enhanced if Qualcomm knows the billing number(s) under which Sterne Kessler lawyers recorded time relating to their assistance of ParkerVision in suing Qualcomm and in prosecuting the patents-in-suit.

7

scope of a narrow conflict waiver contained in Qualcomm's 2010 engagement letter to Sterne Kessler (the "2010 Engagement Letter"). (*See* Greenwald Decl. ¶ 9.) Neither objection has force.

> A.  **Billing/Time Records and Internal Charge Numbers Are Subject to Discovery and May Be Redacted to Eliminate Legitimately Privileged Information.**

Contrary to Sterne Kessler's objection, billing records are not generally exempt from production when they contain relevant information. Documents may be withheld based on invocation of the attorney-client privilege only to the extent that they contain "descriptions of services rendered *which reveal the mental impressions and opinions of counsel*." *Brown Distrib. Co. of West Palm Beach v. Marcel*, 866 So. 2d 160, 161 (Fla. Dist. Ct. App. 2004) (emphasis added) (approving an order compelling production of redacted billing records); *see also In re Grand Jury Proceedings,* 33 F.3d 342, 354 (4th Cir. 2004) ("The attorney-client privilege normally does not extend to the payment of attorney's fees and expenses."). That is because attorney-client privilege protects only the substance of attorney-client communications related to the provision of legal advice. *See, e.g.*, *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 690 (M.D. Fla. 2005). The privilege does not shield from discovery factual information, even where such information concerns the existence of and basic facts concerning legal representation. *See Finol v. Finol*, 869 So.2d 666 (Fla. Dist. Ct. App. 2004) (billing information that does not reveal mental impressions or opinions of counsel is not privileged); *Fed. Trade Comm'n v. Cambridge Exch., Ltd.*, 845 F. Supp. 872, 874 (S.D. Fla. 1993) ("billing records, hourly statements, and fee arrangements which do not reveal client communications are not protected by the attorney-client privilege").

Accordingly, Sterne Kessler should be ordered to produce responsive billing records revealing the "who," "what," "when," and "how long" of the work it did to help ParkerVision sue Qualcomm. At least the "who," "when" and "how long" aspects of these

requests cannot under any circumstance contain privileged information. Whether judged under Florida or D.C. law, the attorney-client privilege and work product doctrines protect only "communications between an attorney and client" and an attorney's mental impressions as reflected in documents prepared for litigation. *See, e.g.*, *Carnival Corp. v. Romero*, 710 So.2d 690, 694 (Fla. Dist. Ct. App. 1998); *Tax Analysts v. Internal Revenue Service*, 117 F.3d 607, 618 (D.C. Cir. 1997) ("[t]he attorney-client privilege protects confidential communications from clients to their attorneys"); *In re Public Defender Service*, 831 A. 2d 890, 911 (D.C. 2003) (work product immunity protects "the mental processes of an attorney as reflected in documents prepared for litigation"); *Surf Drugs, Inc. v. Vermette*, 236 So.2d 108, 112 (Fla. 1970) (same). The names of lawyers, the days on which they worked and the number of hours they worked could not conceivably fit within either of those definitions; they epitomize the type of information that is well-recognized as *not* being privileged. *See, e.g.*, *Herrera v. Herrera*, 895 So. 2d 1171, 1175 (Fla. Dist. Ct. App. 2005) (attorney-client privilege does not apply to the factual circumstances of attorney's representation). If such information were privileged, then privilege logs, which are required to set forth the names of participants in communications and the dates on which those communications occurred, *see, e.g.*, *Hernandez v. Wilsonart Int'l, Inc.*, No. 2:09-cv-747, 2010 WL 2653223, at *3 (M.D. Fla. July 2, 2010) (setting forth the requirements of a privilege log), would themselves reveal privileged information.[2]

---

[2] Indeed, in its discovery request to Qualcomm, ParkerVision—with whom Sterne Kessler claims to have the attorney-client privilege—specifically asks for the production of a privilege log with the very same information Qualcomm is seeking. For example, ParkerVision's requests for production instruct Qualcomm to provide for each document withheld on the basis of privilege a log identifying, *inter alia*, (i) the date of the document, (ii) the identity of the person who prepared or signed the document, and (iii) the subject matter of the document. (*See* Greenwald Decl. Ex. 8.)

With respect to the "what," Qualcomm considers it highly unlikely that the typically terse, abbreviated billing descriptions lawyers use to describe what they did on a particular day would in fact reveal privileged information, any more than the "general subject matter descriptions" that are required to be placed on privilege logs would reveal the same. In any event, Qualcomm has never contended that Sterne Kessler has to produce task descriptions that *truly* in fact reveal the substance of legal advice provided to ParkerVision or an attorney's mental impressions. Qualcomm has made clear in its correspondence and at the meet-and-confer that it would accept time sheets that were properly redacted to eliminate legitimately privileged information. (Greenwald Decl. ¶ 8.) Numerous cases support that approach to production of attorney time sheets,[3] and none of which we are aware—including the cases to which Sterne Kessler has directed our attention in prior correspondence[4]—rejects it.

Sterne Kessler should also be compelled to produce documents sufficient to show the relevant billing charge number(s), which, like other basic factual information contained in billing records, is not privileged. *See, e.g.*, *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("the identification of payment by case file name . . . [is] usually not protected from disclosure by the attorney-client privilege").

---

[3] *See*, *e.g.*, *Old Holdings, Ltd. v. Taplin, Howard, Shaw & Miller, P.A.*, 584 So.2d 1128, 1129 (Fla. Dist. Ct. App. 1991) (even in the "peculiar" circumstance that billing records contain privileged information, "there is no reason why the trial court cannot order the immediate furnishing of [redacted copies]"); *Jacob v. Barton*, 877 So. 2d 935, 938 (Fla. Dist. Ct. App. 2004) (requiring redaction of privileged information from billing records before production).

[4] In its correspondence with us, Sterne Kessler has cited *Progressive Am. Ins. Co. v. Lanier*, 800 So. 2d 689, 690 (Fla. Dist. Ct. App. 2001) and *Jacob v. Barton*, 877 So.2d 935, 936 (Fla. Dist. Ct. App. 2001), to support its position that it cannot produce time sheets. These cases do not, however, hold that all information contained in billing records is privileged or that such records cannot be produced with appropriate redactions. Indeed, in *Jacob*, the court merely held that billing records containing privileged information were protected against discovery *until they were redacted*. *Jacob*, 877 So. 2d at 936.

**B.      Resolution of the Scope of Qualcomm's Advance Conflict Waiver Should Not Delay the Conduct of Discovery on Qualcomm's Common Law Counterclaims Against Sterne Kessler.**

In addition to asserting privilege objections to RFP Nos. 37 and 40, Sterne Kessler contended during the March 19 meet-and-confer that its compliance with those RFPs (as well as with Interrogatories Nos. 2 and 3, discussed below) must be postponed altogether until this Court rules upon the scope of the conflict waiver that Qualcomm made when it retained Sterne Kessler in 2010. (Greenwald Decl. ¶ 9.) Sterne Kessler's assertion that its pre-suit assistance to ParkerVision was permitted by this 2010 waiver—a position Sterne Kessler never asserted in any of its extensive pre-suit correspondence with Qualcomm—has now become not merely a defense on the merits, but also a basis upon which Sterne Kessler seeks to avoid discovery concerning Qualcomm's common law counterclaims against Sterne Kessler. Specifically, Sterne Kessler contends that because the waiver in Qualcomm's 2010 engagement letters waived conflicts relating to "patent analysis and opinions," Qualcomm's common law counterclaims are not viable. (*See* Dkt. 59 at 7.)

Whatever the merits of Sterne Kessler's waiver defense (which is only relevant if Sterne Kessler in fact assisted ParkerVision),[5] it has no bearing whatsoever on whether Sterne

---

[5] As explained in Qualcomm's Reply Memorandum of Law in Support of Its Motion for a Preliminary Injunction, Sterne Kessler's litigation-driven interpretation of the 2010 Engagement Letter is plainly incorrect. (*See* Dkt. 63 at 5-6.) In particular, such an interpretation is flawed because it disregards the clear, specific commitment in the same letter that Qualcomm's consent "does not extend to concurrent representation of clients adverse to Qualcomm in a litigation concurrent with the firm's representation of Qualcomm." (Greenwald Decl. Ex. 4.) If Sterne Kessler had intended the narrow waiver for "patent analysis and opinions" to undermine Qualcomm's refusal to waive litigation conflicts, it should have plainly and clearly said so. *See Fla.Ins. Guar. Ass'n, Inc. v. Carey Can., Inc.*, 749 F. Supp. 255, 257, 259 (S.D. Fla. 1990) (disclosure letter referring only in general terms to potential conflict insufficient due to lack of disclosure of known magnitude of adverse interests at stake). Because it did not, Sterne Kessler cannot now claim that Qualcomm gave informed consent to allow Sterne Kessler to assist in bringing suit against its current client, Qualcomm. *See Id.*

Kessler should be required to participate in discovery during the fact discovery phase of this case. The schedule to which the parties agreed and which the Court has entered calls for fact discovery to be conducted between December 5, 2011 and November 30, 2012. (Dkt. 84.) It makes no provision for pre-discovery resolution of particular issues, no matter how dispositive a party considers those issues to be. It is not even clear how such a phasing could be accomplished as a practical matter: the issue of the scope of Qualcomm's conflict waiver is a matter for resolution by the jury or, if and only if there is no genuine disputed issue of fact, by the Court through summary judgment. Those phases necessarily follow the completion of fact discovery. Hence, the effect of crediting Sterne Kessler's position that discovery of what assistance it gave ParkerVision should await a final ruling on whether that assistance was covered by the advance waiver, would be to guarantee that Qualcomm does not obtain *any* discovery concerning that assistance. It is difficult to imagine a more striking example in a litigation context of a Catch-22.

**II.     Sterne Kessler Should Disclose the Names of its Attorneys Who Communicated With ParkerVision Counsel Concerning this Action (Interrogatory No. 2).**

The information Interrogatory No. 2 seeks is plainly relevant to the common law counterclaims: if Sterne Kessler in fact helped ParkerVision "behind the scenes" to prepare its lawsuit against Qualcomm, it is highly likely that its own lawyers shared the results of its pre-suit analyses with the several lawyers who have actually appeared on ParkerVision's behalf. Qualcomm is entitled to learn the identities of those lawyers, so that it may ask follow-up questions designed to assess the nature of the assistance they provided.

Sterne Kessler's privilege objection is not well-founded. Neither the attorney-client privilege nor the doctrine of work product immunity authorizes Sterne Kessler to conceal the mere *identities* of Sterne Kessler attorneys who spoke to ParkerVision's counsel of record

12

concerning this litigation. Again, the attorney-client privilege protects from discovery only the substance of attorney-client communications related to the provision of legal advice, not the fact that such communications took place or the parties to the communications. *See, e.g.*, *Universal City Dev. Partners., Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 690 (M.D. Fla. 2005). A mere list of names cannot possibly reveal any hint of Sterne Kessler's substantive legal advice to ParkerVision. If it did, privilege logs would themselves be privileged.

Similarly, Sterne Kessler's invocation of the doctrine of work product immunity is unavailing because the doctrine of work product immunity protects from disclosure only documents that reveal an attorney's "mental impressions, conclusions, opinions, or legal theories." *See Hickman v. Taylor*, 329 U.S. 495, 508-12 (1947). Work product immunity does not apply to facts. *See Allstate Ins. Co. v. Levesque*, No. 8:08-cv-2253, 2010 WL 668181, at *1-2 (M.D. Fla. Feb. 5, 2010); *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, No. 6:07-cv-222, 2008 WL 5054695, at *3 (M.D. Fla. Nov. 17, 1998). Because the information sought by Interrogatory No. 2, a list of the Sterne Kessler attorneys who communicated with ParkerVision's counsel of record, are merely facts—names— it cannot possibly reveal the mental impressions, conclusions, opinions or legal theories of the attorneys who are named.

Nor is the request unduly burdensome; it asks for just a list of names. Interrogatories seeking identities of persons with knowledge of particular subjects is a standard form of interrogatory practice. *See, e.g.*, *Johnson v. Stryker Corp.*, No. 3:10-cv-483, 2012 WL 487443, at *3-4 (M.D. Fla. Feb. 14, 2012) (requiring a response to an interrogatory seeking identities of persons with knowledge of particular facts); *NetJets Aviation, Inc. v. Peter Sleiman Development Group, LLC*, 2011 WL 6780879, at *3 (M.D. Fla. Dec. 27, 2011) (same). Sterne Kessler can answer this question in short order by querying its own employees, and by reviewing their

email/written communications, calendars, time sheets, phone logs and records of conference calls/meetings.

### III. Sterne Kessler Should Describe the Work It Performed to Help ParkerVision Sue Qualcomm (Interrogatory No. 3).

Sterne Kessler's blanket privilege assertion as to Interrogatory No. 3 fails for the same reason as its other assertions of privilege: the attorney-client privilege protects only the substance of attorney-client communications, not the fact of the communication or the existence of the representation. *See*, *e.g.*, *Universal City Dev. Ptnrs., Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. at 690. Descriptions of the basic facts of meetings or conference calls ParkerVision or its other counsel had with Sterne Kessler concerning enforcement of ParkerVision's patents against Qualcomm are proper subjects of discovery. *See Provenzano v. Singletary*, 3 F. Supp. 2d 1353, 1366-67 (M.D. Fla. 1997) (description of circumstances of meeting, including client's behavior, not privileged because it did not relate to a confidential communication). Similarly proper are descriptions of all the analyses, draft pleadings, and other documents Sterne Kessler prepared to assist ParkerVision in suing Qualcomm, together with information about who authored the document, when, and its general nature (*e.g.*, memorandum, presentation, draft complaint, Rule 11 analysis) and subject matter. As is true of the information sought through RFP Nos. 37 and 40 and by Interrogatory No. 2, the type of information Interrogatory No. 3 seeks is precisely the type of information generally obtained through a privilege log.

### IV. Sterne Kessler Should Describe the Option Grants It Received From ParkerVision in the Course of Prosecuting the Patents-in-Suit (Interrogatory No. 1).

ParkerVision's SEC filings disclose the unusual circumstance that at least ten Sterne Kessler attorneys received options to purchase ParkerVision stock in 1998 alone, during the prosecution of one or more of the Patents-in-Suit. (Greenwald Decl. Ex. 5.) To obtain more information concerning these and any other grants to Sterne Kessler attorneys, Qualcomm seeks

14

through Interrogatory No. 1 information about Sterne Kessler attorneys' ownership of ParkerVision stock and stock options. This information is probative of whether Sterne Kessler attorneys had a motive to deceive the PTO, which is highly relevant to Qualcomm's affirmative defense and counterclaim of inequitable conduct. *See Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1186 (Fed. Cir. 2006) (discussing the role of motive and intent in the determination of inequitable conduct); *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 956 (N.D. Ill. 2008) (noting that "evidence of motive [to deceive the PTO] is often highly probative of intent").

        Sterne Kessler's objections to Interrogatory No. 1 are as meritless as they are vague. Evidence that any Sterne Kessler attorney had a significant financial incentive either to deceive the PTO or to encourage colleagues to deceive the PTO is highly probative of whether the Sterne Kessler attorneys who prosecuted the patents-in-suit possessed intent sufficient to satisfy the intent element of inequitable conduct. *See Rowe Int'l Corp. v. Ecast, Inc.*, 586 F.Supp.2d at 956. Interrogatory No. 1 is narrowly tailored to elicit such precisely this type of evidence of motive. Because Sterne Kessler attorneys who received ParkerVision stock options would have understood that the value of ParkerVision's stock, and, consequently, of their stock options, would likely increase if the PTO were persuaded to issue the pending applications as one or more patents, it is plausible to argue that the possession by Sterne Kessler attorneys of ParkerVision stock options would afford them a motive for helping ParkerVision to deceive the PTO.[6] To be sure, Qualcomm does not contend that evidence of a financial motive by itself

---

[6] ParkerVision's closing stock price on May 4, 2000, the day before it announced the '551 patent, was $23.50. Just one week after the announcement, the closing price rose to $28.44. The 75,000 options granted to Sterne Kessler attorneys had an exercise price of $18.75. (*See* Greenwald Decl. Ex. 5.) An option's value is the positive difference between the underlying stock's price and the option's exercise price. Therefore, if those options were still outstanding at that time, their aggregate exercise value more than doubled during that week, rising from $356,250 to $726,750.

15

establishes that Sterne Kessler attorneys prosecuted ParkerVision's patents with the intent to deceive. Qualcomm contends only that their financial stake in ParkerVision is probative of that intent, *see* Fed. R. Evid. 401(a) (evidence is relevant if it tends to make a fact more or less probable), which makes it a proper subject for discovery, *see* Fed. R. Civ. P. 26(b)(1).[7]

Sterne Kessler's assertion that this interrogatory cannot be answered because the meaning of the phrase "class of the underlying assets" available under the options is "indeterminate" is unavailing. This phrase is clear, and, in any event, counsel for Qualcomm explained it to counsel for Sterne Kessler during the March 19 meet and confer. (*See* Greenwald Decl. ¶ 11.) Stock options represent the right to purchase stock in a company. Such stock is thus the option's "underlying asset." Because not all stock is alike, it is common to refer to different types of stock as belonging to different "classes." Thus, in identifying stock options held by Sterne Kessler attorneys, Sterne Kessler should be able to identify the class of stock that those options entitled the attorneys to purchase.

---

[7] Additionally, evidence that Sterne Kessler attorneys had a financial motive to assist ParkerVision in bringing this litigation, in violation of their duties to Qualcomm, is relevant to Qualcomm's claim for breach of fiduciary duty. *See, e.g.*, *Beckman v. Farmer*, 579 A.2d 618, 644-45 (D.C. 1990) (evidence of a partner's motive to breach a fiduciary duty is relevant to the determination of whether such breach occurred).

**Conclusion**

For the foregoing reasons, Qualcomm respectfully requests that this Court order Sterne Kessler to respond fully to Qualcomm's First Set of Interrogatories (Interrogatories Nos. 1-3), and to produce documents responsive to Qualcomm's RFP Nos. 37 and 40.

March 30, 2012

        CRAVATH, SWAINE & MOORE LLP

        By:    s/ Keith R. Hummel
             Keith R. Hummel (admitted pro hac vice) (Trial Counsel)
             khummel@cravath.com
             David Greenwald (admitted pro hac vice)
             dgreenwald@cravath.com
             Worldwide Plaza
             825 Eighth Avenue
             New York, New York  10019
             Telephone:  (212) 474-1000
             Facsimile:  (212) 474-3700

        -and-

        BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.
            John A. DeVault, III
            Florida Bar No. 103979
            jad@bedellfirm.com
            Courtney K. Grimm
            cgrimm@bedellfirm.com
            Florida Bar No. 953740
            The Bedell Building
            101 East Adams Street
            Jacksonville, Florida 32202
            Telephone:  (904) 353-0211
            Facsimile:  (904) 353-9307

        -and-

        CADWALADER, WICKERSHAM & TAFT LLP
            Christopher A. Hughes (admitted pro hac vice)
            Christopher.Hughes@cwt.com
            1 World Financial Center
            New York, New York 10281
            Telephone:  (212) 504-6000
            Facsimile:  (212) 504-6666

                         -and-

GOODWIN PROCTER, LLP
    Steven A. Moore (admitted pro hac vice)
    samoore@goodwinprocter.com
    Richard W. Thill (admitted pro hac vice)
    rthill@goodwinprocter.com
    4365 Executive Drive, Suite 3000
    San Diego, CA 92121
    Telephone:  (858) 202-2700
    Facsimile:  (858) 457-1255

*Counsel for Defendant, Counterclaim Plaintiff Qualcomm Incorporated*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of March, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/ Keith R. Hummel
Keith R. Hummel (admitted pro hac vice)
khummel@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
*Attorney for Defendant,*
*Counterclaim Plaintiff*
