# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

PARKERVISION, INC.,

        Plaintiff,

v.

QUALCOMM INCORPORATED,

        Defendant.

_____

QUALCOMM INCORPORATED,

        Counterclaim Plaintiff,

v.

PARKERVISION, INC., AND STERNE,
KESSLER, GOLDSTEIN, & FOX PLLC,

        Counterclaim Defendants.

_____

Case No. 3:11-cv-719-J-37TEM

### PLAINTIFF PARKERVISION, INC.'S MOTION TO DISMISS AND STRIKE QUALCOMM'S ANSWER TO PARKERVISION'S FIRST AMENDED COMPLAINT

Plaintiff ParkerVision, Inc. ("ParkerVision") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts One through Six (patent unenforceability due to inequitable conduct), Count Ten (aiding and abetting breach of fiduciary duty), and Count Twelve (tortious interference) of Defendant Qualcomm Incorporated's ("Qualcomm") Counterclaims.  Dkt. No. 91 (Qualcomm's "Answer").  ParkerVision also moves to strike ¶¶ 8 through 68 of Qualcomm's Answer and Qualcomm's affirmative defenses of inequitable conduct and unclean hands.

## I.  INTRODUCTION

On July 20, 2011, ParkerVision filed a straightforward complaint seeking relief from Qualcomm's infringement of its patents.  *See* Dkt. No. 1.  On February 28, 2012, ParkerVision filed its First Amended Complaint to drop two patents and add one new patent to this case, but the allegations were otherwise unchanged and still straightforward.  *See* Dkt. No. 88.

On March 16, 2012, Qualcomm filed its Answer to ParkerVision's First Amended Complaint.  *See* Dkt. No. 91.  In this Answer, Qualcomm has launched a number of frivolous counterclaims.  Most notably, Qualcomm sued its own lawyers, Sterne Kessler, for allegedly breaching its fiduciary duty based on nothing than more than speculation.  Qualcomm also accused ParkerVision for aiding and abetting that alleged breach.  *See* id.  Qualcomm even accused ParkerVision of defrauding the United States Patent Office. *See* id.  Although it has now dropped this counterclaim, one of Qualcomm's previous answers alleged that one of its employees was a co-inventor of one of ParkerVision's patents, thereby making Qualcomm a co-owner.  *See* Dkt. No. 60.

Before turning to the legal deficiencies of Qualcomm's Answer, it may help the Court to understand why Qualcomm has responded so aggressively and disproportionately to ParkerVision's straightforward complaint.  The reason is that this case is exceptional, in the

sense that Qualcomm's past dealings with ParkerVision—where ParkerVision taught Qualcomm

about its patented technology and where Qualcomm attempted to license ParkerVision's patents

for **hundreds of millions of dollars**—are exceptionally bad for Qualcomm.  Simply put,

Qualcomm's counterclaims are nothing more than a desperate attempt to do anything it can to

avoid standing accountable for its willful infringement.[1]

## II.  LEGAL STANDARDS

To survive a motion to dismiss, a complaint must "contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *See Ashcroft v. Iqbal*, 129

S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009)).  A

pleading that "tenders naked assertions devoid of further factual enhancement," or offers only

"labels and conclusions" or a "formulaic recitation of a cause of action" fails to meet this

standard and must be dismissed. *See id*. (quoting *Twombly*, 550 U.S. at 555-7).

## III. ARGUMENT

### A.  Qualcomm's Claims of Inequitable Conduct Should Be Dismissed.

Qualcomm's claims for inequitable conduct should be dismissed for the simple reason

that they are not actionable.  Everything that Qualcomm alleges in its Amended Answer could be

true, yet Qualcomm's theories of inequitable conduct would still be legally deficient.

---

[1]  ParkerVision's First Amended Complaint is "straightforward" in the sense that it reserved and devoid of inflammatory accusations.  Given that Qualcomm offered hundreds of millions of dollars for ParkerVision's patents and then later stole its technology, ParkerVision could have been much less reserved.  Qualcomm seized on ParkerVision's use of the word "straightforward" in previous briefing on this issue and used it as a springboard to launch three pages of unnecessary, inflammatory attacks on ParkerVision.  *See* Dkt. No. 76 at 1-4.  This is ironic. Apparently, Qualcomm did not understand that very reason ParkerVision described its Complaint as "straightforward" was to underscore the unnecessary, inflammatory attacks in Qualcomm's Answer.

1.   <u>Background of the Doctrine of Inequitable Conduct</u>

"To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO."  *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (citing *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008)).  In other words, inequitable conduct is a very serious allegation—it is no less than outright fraud on the Patent Office.

And while inequitable conduct may be useful to correct actual instances of fraud on the Patent Office, the Federal Circuit has recognized that it is over-pleaded and abused by Defendants:

> **[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague.** Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps. They get anywhere with the accusation in but a small percentage of the cases, but such charges are not inconsequential on that account. **They destroy the respect for one another's integrity**, for being fellow members of an honorable profession, that used to make the bar a valuable help to the courts in making a sound disposition of their cases, and to sustain the good name of the bar itself. **A patent litigant should be made to feel, therefore, that an unsupported charge of "inequitable conduct in the Patent Office" is a negative contribution to the rightful administration of justice.** The charge was formerly known as "fraud on the Patent Office," a more pejorative term, but the change of name does not make the thing itself smell any sweeter.

*Burlington Industries, Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) (emphasis added); *see also Multiform Desiccants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1482 (Fed. Cir. 1998) ("[T]the charge of inequitable conduct before the patent office had come to be attached to every patent prosecution, diverting the court from **genuine issues** and simply spawning satellite litigation.") (emphasis added).

In an effort to quarantine this "plague," the Federal Circuit, sitting en banc in *Therasense*, restricted the type of conduct that can even be considered for inequitable conduct. *See Therasense*, 649 F.3d at 1290 ("This court now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public."). Similarly, the Federal Circuit's *Exergen* opinion was explicitly directed to curbing "frivolous" allegations of inequitable conduct. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1331 (Fed. Cir. 2009).

### 2.   Qualcomm's Theories of Inequitable Conduct

Qualcomm has two basic theories of inequitable conduct that it asserts against all patents in suit: (i) that ParkerVision "concealed a reference known to be highly material;" and (ii) that ParkerVision "made repeated false statements to the Examiner concerning the scope and teaching of other relevant prior art." *See* Answer at ¶ 9.  These two theories are the only bases of Qualcomm's inequitable conduct counterclaims for all of the patents-in-suit. *See* Counts 1-6 of Answer at ¶¶ 71-72, 83, 91-92, 99-100, 108, and 115-116.

### 3.   Qualcomm's Own Answer Demonstrates that its "Concealment" Theory is Based on a Reference That Was Actually Disclosed to the USPTO and is Therefore Not Plausible.

#### a)   Qualcomm Acknowledges That the Allegedly Concealed Reference Was Actually Disclosed.

In Qualcomm's inequitable conduct counterclaims, Qualcomm accuses ParkerVision of concealing from the USPTO a reference that it refers to as "Parssinen 1997." *See* Counts 1-6 of Answer at ¶¶ 71-72, 83, 85, 92, 95, 100, 102, 108, 110, 116, and 118.  Qualcomm concedes, however, in its Amended Answer that this reference was disclosed to the Patent Office and was therefore *not* concealed. *See* Answer ¶ 25. (acknowledging that ParkerVision, David Sorrells, and Michael Lee actually disclosed Parssinen 1997 because the Parssinen 1997 reference is listed

on the face of the '551 Patent); see also Dkt. No. 76 at 12 ("Qualcomm is not basing its claim [of

inequitable conduct] on any failure to disclose Parssinen to the PTO.").  Indeed, this reference is

listed on the face of all patents-in-suit.  As Qualcomm's own Answer concedes that ParkerVision

disclosed the Parssinen 1997 reference to the Patent Office, not only is Qualcomm's theory of

inequitable conduct not "plausible on its face," *see Iqbal*, 129 S.Ct. at 1949; it is demonstrably

wrong.[2]  In other words, there is no discovery that Qualcomm could take that could make this

theory a inequitable conduct a valid theory.

> b)  There Can Be No Inequitable Conduct where a Reference Was
> Disclosed to the USPTO at a Time when the Reference Could Be
> Considered by the Examiner.

**Parssinen Was Timely Disclosed.**  Qualcomm argues that its claim of inequitable

conduct is actionable because ParkerVision did not disclose the Parssinen reference as part of

ParkerVision' petition to make special.[3]  This is irrelevant.  The Federal Circuit has made clear

that, for purposes of inequitable conduct, the disclosure of a reference is timely it that reference

was disclosed with enough before issuance of a patent for it to be considered by the examiner.

*See Young v. Lumenis, Inc.*, 492 F.3d 1336, 1348 (Fed. Cir. 2007) ("We conclude that there was

---

[2]  Qualcomm's allegations that the reference was "buried" cannot save its claim of inequitable
conduct.  As a matter of law, inequitable conduct cannot be based on references that were
submitted to the Patent Office. *Fiskars, Inc. v. Hunt Mfg.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000)
("An applicant can not be guilty of inequitable conduct if the reference was cited to the
examiner."). As a result, "burying" cannot form a basis for inequitable conduct, because a
"buried" reference by definition is one that was submitted to the PTO.  *See Symbol Techs., Inc. v.
Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 358-59 (D. Del. 2009) (dismissing inequitable
conduct counterclaim, based on alleged burying, as a matter of law).  Qualcomm's argument that
burying can serve as evidence of intent to deceive is beside the point.  Intent to deceive comes
into play only where a patentee has misrepresented or omitted material information, and
Qualcomm cannot demonstrate that either has occurred.

[3]  The parties have previously briefed the issues presented in this Motion.  *See* Dkt. Nos. 71 and
76.  As such, ParkerVision knows of Qualcomm's likely responses to this Motion, including the
several instances where Qualcomm attempted to mislead the Court both on law and fact.

no 'failure to disclose material information' to the PTO because the alleged material information was disclosed to the PTO **at a time when it could be considered by the examiner**.") (emphasis added).  Because there was enough time for the PTO to have rejected ParkerVision's patent application subsequent to ParkerVision's disclosure of the Parssinen reference, the Parssinen reference cannot form the basis of an allegation of inequitable conduct.  Indeed, Qualcomm's answer concedes that the Parssinen reference was submitted in late 1999.  *See* Answer at ¶ 25. This disclosure gave the examiner ample opportunity to consider the Parssinen reference before issuing ParkerVision's patents.[4]  And to remove all doubt that Qualcomm's allegations of inequitable conduct are not actionable, the test of whether a reference was disclosed in a timely manner—that a reference is timely disclosed if it is disclosed to the PTO "at a time when it could be considered by the examiner," *see Young*, 492 F.3d at 1348—is the **only** test of whether a reference has been timely disclosed.

      **Allegedly Late Disclosure Is Not "Misconduct."**  Qualcomm has no authority that even suggests that the timing of disclosure with respect to a petition to make special can be an actionable basis of inequitable conduct.  In fact, such a theory of inequitable conduct would violate the Federal Circuit's opinion in *Therasense*.  In *Therasense*, the Federal Circuit held that, to establish inequitable conduct, a defendant's theory must satisfy a "but-for" test:

> When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art. Hence, in assessing the materiality of a withheld reference, **the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference.**

---

[4]  Moreover, because Parssinen 1997 is a reference cited on the face of the patents-in-suit, it is presumed that the examiner did, in fact, consider it.  *See Molins Plc v. Textron*, 48 F.3d 1172, 1184 (Fed. Cir. 1995) ("Absent proof to the contrary, we assume that the examiner did consider the references.").

*Therasense*, 649 F.3d at 1291 (emphasis added).  Even if Qualcomm's allegations were accepted as true, ParkerVision's alleged failure to disclose the Parssinen reference during the petition to make special still could not satisfy *Therasense*'s "but-for" test since the examiner at the USPTO indisputably had ample time to consider the reference before issuing the claims.  As a tacit admission that it cannot meet the "but-for" test, Qualcomm casts its theories as pertaining to "affirmative acts of egregious misconduct," which are not subject to the "but-for" test.  *See* Dkt. No. 76 at 6.  The Federal Circuit in *Therasense*, however, made clear that nondisclosure of prior art references cannot constitute misconduct.  *See Therasense*, 649 F.3d at 1292-1293 ("[N]either mere nondisclosure of prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious misconduct[.]").  If *nondisclosure* of a prior art reference cannot constitute misconduct, then certainly there can be no misconduct for a prior art reference that was actually disclosed—even if allegedly untimely.  As such, ParkerVision's disclosure of the Parssinen reference cannot constitute misconduct, and Qualcomm's theories of inequitable conduct with respect to the Parssinen reference are entirely, legally defective.

**There Was No "Misrepresentation."**  Qualcomm also attempts to cast its theory of inequitable conduct based on the Parssinen reference as a theory that is not based on concealment but rather is based on ParkerVision's allegedly "misrepresenting to the PTO the relevance of . . . Parssinen."  *See* Dkt. No. 76 at 10-11.  This, too, is not an actionable theory of inequitable conduct as statements regarding the significance or relevance of prior art are not actionable.  *See*, *e.g.*, *Innogenics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1378-1379 (Fed. Cir. 2008); *see also* Dkt. No. 76 at 10 n.2 (Qualcomm's recognition of the Federal Circuit's holding in *Innogenics* that an attorney's assessment of relevance was not an actionable ground for inequitable conduct.).

McKool 406595v2

**There Are No Special Rules for Petitions to Make Special.**  Finally, Qualcomm attempts to conflate the rules governing the prosecution of a patent with the requirements of inequitable conduct.  *See* Dkt. No. 11.  The rules governing patent prosecution do not create reciprocal bases for inequitable conduct.  Rather, the Federal Circuit has applied the doctrine of inequitable conduct in the very rare instance where an applicant either misrepresented or omitted material information with the specific intent to deceive the PTO.  *See Therasense*, 649 F.3d at 1287.  Qualcomm's allegations regarding ParkerVision's alleged violations of the USPTO rules governing petitions to make special are beside the point unless Qualcomm can establish that the alleged violation of the rules resulted in either a misrepresentation or omission of material information from the PTO.  But as discussed above, Qualcomm cannot demonstrate that any alleged violation of the USPTO's rules for petitions to make special amounted to an omission or a misrepresentation.

In sum, because ParkerVision timely disclosed the Parssinen reference to the USPTO, the Parssinen reference cannot form an actionable basis of inequitable conduct.

### 4.   Qualcomm's "Mischaracterization" Theory Is Not Actionable.

#### a)   ParkerVision Was Free to Present Argument in Favor of Patentability.

Qualcomm accuses ParkerVision of making material misrepresentations to the Patent Office.  *See* Counts 1-6 of Answer at ¶¶ 71, 82, 91, 99, 107, and 115.  But every alleged "misrepresentation" that Qualcomm cites in support of this allegation is merely attorney argument regarding the scope of (i.e., what is taught by) the prior art.  This attorney argument, however, is not an actionable basis for inequitable conduct.

A patentee's legal or interpretive arguments in favor of patentability are not actionable. *See Rothman v. Target Corp.*, 556 F.3d 1310, 1328-29 (Fed. Cir. 2009) ("While the law prohibits genuine misrepresentations of material fact, a prosecuting attorney is free to present argument in

favor of patentability without fear of committing inequitable conduct."). The question then

becomes: What is a "genuine misrepresentations of material fact" and what is "attorney

argument?" Courts have consistently made clear that arguments and statements about the scope

of prior art are merely attorney argument, whereas facts that can be demonstrated to be wrong

are misrepresentations. *See Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007) ("We

therefore fail to see how the statements . . . which consist of attorney argument and an

interpretation of what the prior art discloses, constitute affirmative misrepresentations of material

fact."); *see also id*. ("[T]hat [challenged] statement does not appear to be demonstrably false and,

instead, represents Young's interpretation of what the [prior art] teaches."); *Innogenetics, N.V. v.*

*Abbott Labs.*, 512 F.3d 1363, 1379 (Fed. Cir. 2008) ("[A]n applicant is free to advocate its

interpretation of its claims and the teachings of prior art."); *Life Techs., Inc. v. Clontech Lab.,*

*Inc.*, 224 F.3d 1320, 1326 (Fed. Cir. 2000) ("an applicant is free to advocate its interpretation of

its claims and the teachings of prior art."); *McKechnie Vehicle Components USA, Inc. v. Lacks*

*Indus., Inc.*, No. 09-cv-11594, 2010 U.S. Dist. LEXIS 119073, at *5 (E.D. Mich. Nov. 9, 2010)

("[M]isrepresentation of a disclosed prior art reference must be distinguished from instances

when an attorney takes a legal position on a particular patent that parties in litigation disagree

upon, or that a court deems erroneous at a later date."). If this were not the case, then a

defendant could ***always*** articulate a theory of inequitable conduct for ***any*** statement made during

prosecution of a patent.

     As alluded to above, every alleged fact that Qualcomm cites in support of this allegation

is merely attorney argument advocating for patentability:

- "Messrs. Sorrells and Lee concealed and misrepresented the relevance of a highly material prior art reference (Parssinen 1997) and made **several false statements concerning the scope and content** of the Subharmonic Sampling Exemplars with the specific intent to mislead and deceive the PTO." Answer at ¶ 71 (emphasis added); *see*

*also* Answer at ¶¶ 78, 90, 99, 100, 107, 115, and 127 (referring to alleged "material misrepresentations made to the PTO **in connection with the prosecution** of the '551 patent") (emphasis added).

- "In the Notice of Allowance of the '518 Patent, one of the reasons for allowance given by the examiner was that the limitation "of sampling the carrier signal over aperture periods to transfer energy from the carrier signal and integrating the energy over the aperture periods" **was not taught by the prior art**. But for the Applicants' misrepresentations of [the alleged prior art], Applicants would not have been successful in making this **argument to overcome prior art**." Answer at ¶ 82 (emphasis added).

- "In the Notice of Allowance of the '371 Patent, one of the reasons for allowance given by the examiner was that **the prior art did not disclose** either a switch coupled to a pulse generator "wherein energy is transferred from the carrier signal and integrated" or "a switch opening and/or closing at an aliasing/sampling rate that is determined according to (a frequency of a carrier signal +/- a frequency of a lower frequency signal)/N, where N is interpreted from the applicant's specification as representing a harmonic or sub-harmonic frequencies." (emphasis added). But for the Applicants' misrepresentations of [the alleged prior art], Applicants would not have been successful in making this **argument to overcome prior art**." Amended Answer at ¶ 91.[5]

For the reasons stated above, Qualcomm's counterclaims of inequitable conduct, counts 1-6, do not satisfy *Iqbal* and should be dismissed.[6]

> b) Qualcomm's Attempts to Blur the Rule Established by the Federal Circuit Protecting Attorney Argument Should Be Rejected.

Qualcomm claims that "the boundary between legal argument and factual misrepresentation can be difficult to ascertain in some cases." *See* Dkt. No. 76 at 8. Not so. As

---

[5]   For the sake of completeness, Qualcomm's allegations in ¶¶ 30-63 are simply Qualcomm's characterizations of what the alleged prior art taught, coupled with accusations that ParkerVision's interpretations were misrepresentations. But again, ParkerVision "is free to advocate its interpretation of its claims and the teachings of prior art." *See Innogenetics*, 512 F.3d at 1379.

[6]   Qualcomm's complaint also fails to meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1324-31 (Fed. Cir. 2009) ("the pleading [of inequitable conduct] must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."). For the sake of brevity and also because Qualcomm cannot cure the deficiencies of its pleadings by providing more specific facts (as its theories are not legally cognizable and/or demonstrably wrong), ParkerVision will not brief this point.

discussed above, the Federal Circuit has consistently stated that arguments and statements about the scope of prior art are merely attorney argument and cannot form the basis of an allegation of inequitable conduct.  Qualcomm discusses *Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354 (Fed. Cir. 2010) to attempt to blur the line between protected argument and actionable misrepresentation.  *See* Dkt. No. 76 at 8.  In that case, a patentee represented to the USPTO that a certain prior art reference did not describe the invention via exemplary software.  *See Ring Plus*, 614 F.3d at 1360.  (As background, patents can described the claimed inventions by a variety of methods.  Examples of methods of disclosure are: (i) narrative, prose descriptions; (ii) figures; (iii) source code; (iv) pseudocode; (v) flow charts; (vi) and network call sequences.  This list is non-exhaustive.).  In this way, the representation in *Ring Plus* that a patent did not contain exemplary software was demonstrably wrong.  In other words, the representation in question in *Ring Plus* did ***not*** involve any argument related to the contents or scope of the software; rather, the representation pertained to whether the prior art disclosed *anything* as software.

Qualcomm's improper attempt to blur the line between protected attorney argument and actionable misrepresentation is clearest from Qualcomm's previous brief, in which Qualcomm argued:

> [T]he challenged statement [in *Rothman*] did not contain any factual assertions about the contents of the prior art; it was merely a legal argument about the scope of prior art available for an obvious analysis.  Here, by contract, ParkerVision expressly mischaracterized the disclosure of the cited references.

*See* Dkt. No. 76 at 10.  But ***every*** characterization of prior art is an argument about the scope of the prior art.  If the Federal Circuit did not protect argument regarding the scope and content of prior art, then a defendant could ***always*** claim that an argument about the scope and content of prior art was a mischaracterization of those references—which is exactly what Qualcomm is doing here.  Indeed, all of Qualcomm's theories of inequitable conduct are based

on allegations of misrepresentation that exclusively pertain to the scope and content of prior art. These theories are not actionable and should be dismissed.

### B.  Qualcomm's Claim of Aiding and Abetting Breach of Fiduciary Duty Should Be Dismissed.

Qualcomm's claim of aiding and abetting Sterne Kessler's alleged breach of fiduciary duty, Count 10, should be dismissed.

As an initial matter, this claim should be dismissed because there can be no "aiding and abetting" a breach of fiduciary duty where there is no underlying claim for breach of fiduciary duty.  And as Sterne Kessler has demonstrated in its motion to dismiss, Qualcomm's claim that Sterne Kessler breached its fiduciary duty is not plausible and should be dismissed.  *See* Dkt. No. 99.

In any event, Qualcomm's allegations fail to state a claim because Qualcomm fails to plausibly allege causation and injury.  Specifically, allegations are facially defective in that they fail to allege proximate causation of damages. As one Florida Court explained:

> The Florida courts, in accord with most other jurisdictions, have historically followed the so-called "but for" causation-in-fact test, that is, to constitute proximate cause there must be such natural, direct, and continuous sequence between the negligence act or omission and the plaintiff's injury that is can reasonably be said that *but for* the negligent act or omission the injury would not have occurred.

*Stahl v. Metropolitan Dade County*, 438 So. 2d 14, 17 (Fla. 3d DCA 1983) (emphasis in original).  Qualcomm's claims of causation and injury fail to meet this "but for" test and therefore fail to state a claim in the following ways:

**¶¶ 182-183.**  Qualcomm claims that it has suffered injury by "defend[ing] against a lawsuit alleging the infringement" and by "incurring legal fees to defend a lawsuit."  *See* Answer at ¶¶ 182-183.  Yet Qualcomm cannot allege the requisite injury because it cannot plausibly

allege that it would not have to defend this action but for Sterne Kessler's alleged breach of fiduciary duty. ParkerVision could have brought this action without Sterne Kessler breaching any duty to Qualcomm; indeed, it did.

**¶¶ 184-185.** Qualcomm claims that it has suffered injury by "losing the value of the opinion work that Sterne Kessler has performed on the two matters that were still ongoing at the time the Complaint was filed." *See* Amended Answer at ¶ 184. Similarly, Qualcomm claims that it has suffered injury "because it paid fees to Sterne Kessler during the period when Sterne Kessler was assisting ParkerVision in its action against Qualcomm." *See* Amended Answer at ¶ 185. Yet Qualcomm cannot allege the requisite injury because it cannot plausibly allege that it would not have lost the value of the opinion work or would not have paid fees to Sterne Kessler but for Sterne Kessler's alleged breach of fiduciary duty. Indeed, Sterne Kessler could have continued working for Qualcomm despite a breach of fiduciary duty. It was Qualcomm's decision to sue Sterne Kessler that caused Sterne Kessler to withdraw from that engagement.

For the reasons stated above, Qualcomm's counterclaim of aiding and abetting Sterne Kessler's alleged breach of fiduciary duty, Count 10, does not satisfy *Iqbal* and should be dismissed.

### C. Qualcomm's Claim of Tortious Interference Should Be Dismissed.

Qualcomm's claim of tortious interference, Count 12, should be dismissed for the simple reason that there can be no claim of tortious interference of a contractual relationship brought against a party to that contract. Because ParkerVision is a party to the agreement underlying Qualcomm's claim for tortious interference, ParkerVision cannot, as a matter of law, be liable for interfering with that contract. *See United of Omaha Life Insurance v. Nob Hill, Association*, 450 So. 2d 536, 539 (Fla. 3d DCA 1984). In *Nob Hill*, the court reversed a finding of tortious interference, noting that, "[u]nder Florida law, a cause of action for tortious interference does not

-13-

exist against one who is himself a party to the contract allegedly interfered with." *Id.*; *see also*

*Ethyl Corporation v. Balter*, 386 So. 2d 1220, 1224 (Fla. 3d DCA 1980) (finding "a cause of

action for interference does not exist against one who is himself a party to the contract allegedly

interfered with."); *Salit v. Ruden, McClosky*, 742 So.2d 381, 386 (Fla. 4th DCA 1999) ("For the

interference to be unjustified [a necessary element of tortious interference], the interfering

defendant must be a third party, a stranger to the business relationship.").  As such, Qualcomm's

claim for tortious interference fails to state a claim upon which relief can be granted and should

be dismissed.

### D.  Paragraphs 8 through 68 and Qualcomm's Affirmative Defenses of Inequitable Conduct and Unclean Hands Should Be Stricken.

#### 1.  Paragraphs 8 through 68 Should Be Stricken.

Paragraphs 8 through 69 of Qualcomm's Amended Answer include an introductory

section on ParkerVision's alleged inequitable conduct titled, "ParkerVision's Pattern of

Inequitable Conduct."  This commentary is not authorized by the Federal Rules of Civil

Procedure.  Rather, the Rules authorize only certain pleadings, *e.g.*, a complaint, answer, and

reply to counterclaims, *see* Rule 7(a); require a party to admit or deny allegations against it, and

set forth its defenses, *see* Rule 8(b); and to make all such averments of claims or defenses in

numbered paragraphs, *see* Rule 10.  Rule 12(f) specifically authorizes a court to strike any

"redundant, immaterial, impertinent, or scandalous matter."  The Court should exercise its

authority under Rule 12(f) by striking Paragraphs 8-69 in conjunction with dismissal of

Qualcomm's inequitable conduct counterclaims, discussed in § A *supra*.

#### 2.  Qualcomm's Affirmative Defenses of Inequitable Conduct and Unclean Hands Should Be Stricken.

Under authority of Fed.R.Civ.P. 12(f), a Court may strike affirmative defenses.  "[T]he

pleading requirements for complaints and affirmative defenses . . . are essentially the same."

-14-

*United Fixtures Co. v. Base Mfg.*, 2008 U.S. Dist. LEXIS 114766 (M.D. Fla. Sept. 12, 2008). As such, Qualcomm's affirmative defense of inequitable conduct should be stricken for the reasons given in § A, above. Similarly, Qualcomm's affirmative defense of unclean hands should be stricken. For this affirmative defense, Qualcomm merely incorporates by reference paragraphs 8-69, which pertain exclusively to Qualcomm's allegations of inequitable conduct. As such, Qualcomm's affirmative defense of unclean hands should be stricken for the reasons given in § A *supra*.

## IV. CONCLUSION

For the foregoing reasons, ParkerVision respectfully requests that the Court dismiss Counts One through Six, Eleven, Ten and Twelve of Qualcomm's Answer. ParkerVision also requests that the Court strike Paragraphs 8 through 68 of Qualcomm's Answer and Qualcomm's affirmative defenses of inequitable conduct and unclean hands.

April 9, 2012                          Respectfully submitted,

                                       **McKOOL SMITH, P.C.**
                                       */s/  Douglas A. Cawley*
                                       Douglas A. Cawley, Lead Attorney
                                       Texas State Bar No. 04035500
                                       E-mail: dcawley@mckoolsmith.com
                                       John Austin Curry
                                       Texas State Bar No. 24059636
                                       E-mail: acurry@mckoolsmith.com
                                       McKool Smith P.C.
                                       300 Crescent Court, Suite 1500
                                       Dallas, Texas 75201
                                       Telephone: (214) 978-4000
                                       Telecopier: (214) 978-4044

                                       T. Gordon White
                                       Texas State Bar No. 21333000
                                       gwhite@mckoolsmith.com
                                       McKool Smith P.C.
                                       300 West Sixth Street, Suite 1700
                                       Austin, Texas 78701
                                       Telephone: (512) 692-8700
                                       Telecopier: (512) 692-8744

                                       **SMITH HULSEY & BUSEY**

                                       */s/ James A. Bolling*
                                       Stephen D. Busey
                                       James A. Bolling
                                       Florida Bar Number 117790
                                       Florida Bar Number 901253
                                       225 Water Street, Suite 1800
                                       Jacksonville, Florida  32202
                                       (904) 359-7700
                                       (904) 359-7708 (facsimile)
                                       jbolling@smithhulsey.com

                                       *ATTORNEYS FOR PLAINTIFF*
                                       *PARKERVISION, INC.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, April 9, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Austin Curry*

John Austin Curry

## CERTIFICATE OF COUNSEL

I HEREBY CERTIFY that, on April 5, 2012, counsel for ParkerVision conferred with counsel for Qualcomm in a good faith effort to resolve the issue raised by the motion. Qualcomm stated that it was standing by its positions in its previous briefing and would file any curative pleading.  Pursuant to Local Rule 3.01(g), counsel for ParkerVision will continue to engage counsel for Qualcomm in an effort to resolve this motion.  Sterne Kessler Goldstein & Fox PLLC does not oppose this motion.

*/s/ Austin Curry*

John Austin Curry