IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PARKERVISION, INC.,                              CASE NO.: 3:11-CV-719-RBD-TEM
　　　　　Plaintiff,

v.

QUALCOMM INCORPORATED,
　　　　　Defendant.
_____/

QUALCOMM INCORPORATED,
　　　　　Counterclaim Plaintiff,

v.

PARKERVISION, INC, AND
STERNE, KESSLER, GOLDSTEIN & FOX PLLC,
　　　　　Counterclaim Defendants.
_____/

## STERNE, KESSLER, GOLDSTEIN & FOX PLLC'S RESPONSE TO QUALCOMM'S MOTION TO COMPEL

Counterclaim-Defendant, Sterne, Kessler, Goldstein & Fox PLLC ("SKGF"), by and through undersigned counsel, hereby responds to Counterclaim-Plaintiff, Qualcomm, Inc.'s, Motion to Compel Answers to Requests for Production Nos. 37 and 40 and Interrogatories Nos. 1-3 [Doc. No. 94] and states as follows:

## PREAMBLE

SKGF has served as patent and intellectual property counsel for ParkerVision for more than a decade. Through the discovery requests served upon SKGF and ParkerVision, Qualcomm seeks to invade and interfere with this attorney-client relationship to learn the scope and content of services SKGF may have provided ParkerVision prior to the initiation

of this action. But Qualcomm comes nowhere near meeting its substantial burden to demonstrate a right to violate this most sacred of privileges.

## BACKGROUND

In defense of the patent infringement action initiated against it by ParkerVision, Qualcomm, a multi-billion dollar telecommunications giant, is engaging in a deliberate effort to deflect attention away from the substantive issues of the case and, instead, force the Counterclaim-defendants to expend limited resources responding to counterclaims supported by nothing but innuendo and lacking in both factual and legal support. Moreover, under the guise of these same counterclaims, Qualcomm seeks extensive discovery from SKGF and ParkerVision which it would never be entitled to in a patent infringement action, i.e., inquiries into the legal services provided by a patent prosecuting firm (SKGF) to a patentee (ParkerVision), including alleged pre-suit infringement analysis. The scope of legal representation requested by a client and provided by counsel is entitled to the utmost protection from the prying eyes of an opposing party. Qualcomm provides no basis to invade the sanctum of the SKGF-ParkerVision attorney-client relationship.

Qualcomm alleges that SKGF attorneys (i) engaged in inequitable conduct by concealing "Parssinen 1997" from the United States Patent and Trademark Office ("PTO") during the prosecution of the Patents-in-Suit, *see e.g.*, Counterclaim [Doc. No. 91], ¶¶ 9, 17, 25-26, 71-72;[1] (ii) engaged in inequitable conduct by making misrepresentations to the PTO

---

[1] Despite Qualcomm's representation that it is not asserting inequitable conduct claims against SKGF [Doc. No. 75, p. 20 fn. 14], by the allegations of the ninth (breach of fiduciary duty) and eleventh (breach of contract) counterclaims are based, in part, on "affirmative misrepresentations to the PTO by … Sterne Kessler." *See* Counterclaim [Doc. No. 91], ¶¶ 174, 190. Faced with such allegations, SKGF has no choice but to address these allegations since any charge of inequitable conduct can have "ruinous consequences for the reputation of"

about material prior art during the prosecution of the Patents-in-Suit, *see e.g.*, *id.* at ¶¶ 33, 35, 37-39, 42-44, 48-50, 55-56, 58, 63, 71-72, 174, 190; (iii) engaged in inequitable conduct by "burying" relevant material in submissions to the PTO, *see e.g.*, *id.* at ¶¶ 63, 71-72; (iv) breached their duty of loyalty to Qualcomm and the 1999 Letter Agreement by purportedly conducting a pre-suit infringement analysis, *see e.g.*, *id.* at ¶¶ 167, 172, 174, 189-90; and (v) breached their duty of loyalty to Qualcomm and the 1999 Letter Agreement when one of SKGF's partners, Robert Sterne, allegedly failed to recuse himself from ParkerVision board discussions concerning the initiation of the present litigation. *See e.g.*, *id.* at ¶ 173.   Upon closer inspection, however, the duplicitous nature of the counterclaims – and discovery purportedly served in support thereof – becomes evident.

I.     **Qualcomm's Inequitable Conduct Allegations Are Baseless as a Matter of Law and, Therefore, Should Not Constitute a Basis for the Requested Discovery.**

ParkerVision's alleged failure to disclose Parssinen 1997 in furtherance of the Petition to Make Special cannot support an inequitable conduct claim.   Parssinen 1997 was disclosed to the PTO during the prosecution of the Patents-in-Suit, *see, e.g.*, Answer [Doc. No. 91], ¶ 25, and is identified as a cited reference on the face of each of the Patents-in-Suit. In an effort to avoid this fact, Qualcomm complains Parssinen 1997 was not *timely* disclosed. However, the Federal Circuit has made clear that the disclosure of a reference is timely if made at a time when it could be considered by the examiner. *See Young v. Lumenis, Inc.*, 492

---

the attorneys so charged. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011).

F.3d 1336, 1348 (Fed. Cir. 2007). It is indisputable that Parssinen 1997 was considered by the examiner during the prosecution of the Patents-in-Suit. As such, its disclosure is timely.[2]

Similarly, Qualcomm's claim of inequitable conduct based on alleged misrepresentations made before the PTO during the prosecution of the Patents-in-Suit is unsustainable. Where the alleged misconduct consists of a misrepresentation about prior art before the PTO and accessible to the examiner, a finding of inequitable conduct will not lie. *See Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1482 (Fed. Cir. 1986); *see also Gargoyles, Inc. v. United States*, 21 Fed. Cl. 157, 169 (Ct. Fed. Cl. 1994) ("fact that plaintiffs attempted to distinguish the claimed invention from prior art does not constitute a material omission or misrepresentation where the patent examiner was free to reach his own conclusion regarding the claimed invention on the art before him"); *Beckman Instruments, Inc. v. LKB Produkter, AB*, 5 U.S.P.Q.2d 1462, 1464 (D. Md. 1987) ("The patent examiner was capable of independently evaluating the material before him, and [applicant's] representations as to how to interpret that material cannot be the basis for a finding of inequitable conduct."). It is undisputed that the four prior art references which Qualcomm alleges were misrepresented, i.e., Fisher 1981, Williams 1996, Schiltz 1994, and Faulkner 1983, were disclosed for consideration by the examiner. As such, the alleged misrepresentations of prior art cannot support Qualcomm's claim of inequitable conduct.

---

[2]  The examiner did not consider Parssinen 1997 to be the material, invalidating reference Qualcomm would have this Court believe. If it was, the patent would not have issued over this cited reference. *See e.g., Helver v. Novo Indus., Inc.*, 1998 WL 988198 (S.D. Fla. Nov. 16, 1998) ("[t]o rule that the PTO examiner was incorrect without clear and convincing evidence would disregard the deference that is due to the agency and to the examiner, who is presumed to have the level of skill in the art to understand prior art and properly issue patents."). The fact that Qualcomm – an accused infringer - disagrees with the decision of the examiner to issue the Patents-in-Suit in light of Parssinen 1997 cannot form the basis of an inequitable conduct claim.

Qualcomm's claim of inequitable conduct for alleged "burying" of relevant material is likewise unsustainable. The prior art references upon which Qualcomm bases its inequitable conduct claim were considered by the examiner during the prosecution of the Patents-in-Suit.  As such, there can be no claim for inequitable conduct for alleged burying. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1182-84 (Fed. Cir. 1995) (reversing finding of inequitable conduct based on burying where examiner initialed each reference, indicating his consideration of same, and stated that he considered all the cited prior art); *Symbol Technologies, Inc. v. Aruba Networks, Inc.*, 609 F.Supp.2d 353, 358-59 (D. Del. 2009) (counterclaim of inequitable conduct based upon "burying" insufficient as a matter of law where evidence showed reference was considered by the examiner during prosecution).

## II.    **Qualcomm's  Breach of Fiduciary Duty and Contract Allegations Are Facially Deficient and Should Not Constitute a Basis for the Requested Discovery.**

Qualcomm also accuses SKGF - based solely on reckless inferences that ignore the undisputed record - of breaching fiduciary duties owed Qualcomm when one of its partners, Robert Sterne, purportedly failed to recuse himself from ParkerVision board discussions concerning the initiation of this litigation and by allegedly preparing an improper  pre-suit infringement analysis on behalf of ParkerVision. *See* Counterclaim [Doc. No. 91], ¶¶ 172-73. Neither of these asserted bases justify allowing discovery which would entail invading the SKGF-ParkerVision attorney-client privilege since (i) Qualcomm alleges no facts that would plausibly support its claims and, in fact, the record makes clear that (ii) Mr. Sterne did recuse himself and that (ii) Qualcomm expressly consented to the very conduct complained of – conducting an infringement analysis.

A.  <u>Qualcomm Cannot Ignore the Record as a Means to Achieve Its Discovery Goals.</u>

Qualcomm filed its latest iteration of its counterclaims on March 16, 2012. *See* Counterclaim [Doc. No. 91]. Qualcomm continues to assert that SKGF breached fiduciary duties owed Qualcomm "when one of its partners, Robert Sterne, participated in and failed to recuse himself from ParkerVision board discussions concerning the initiation of the present litigation against Qualcomm." *See* Counterclaim [Doc. No. 91], ¶ 173. Qualcomm knew this assertion was false when it filed the counterclaim.

On November 30, 2011, Mr. Sterne filed a declaration in this action stating, under the penalty of perjury, that he, in fact, did recuse himself and did not participate in the decision of ParkerVision's board to initiate the present action against Qualcomm. *See* Declaration of Robert Sterne [Doc. No. 57-17], ¶ 5. Qualcomm expressly acknowledged Mr. Sterne's statement one week later in a subsequent pleading. *See* Qualcomm Reply Brief in Support of Motion for Preliminary Injunction [Doc. 63], p.2 fn. 2. Nevertheless, Qualcomm obstinately alleges otherwise in a desperate effort to preserve some form of claim against SKGF as a vehicle for unwarranted discovery in the patent infringement action. Qualcomm's cavalier attitude with respect to the record should be admonished and not allowed to be used as a basis for discovery intended to invade the SKGF –ParkerVision attorney-client privilege.

B.  <u>The 1999 Letter Agreement and 2010 Engagement Letters Show Qualcomm Consented to the Complained of Conduct.</u>

Qualcomm also asserts as part of its counterclaims that SKGF breached its fiduciary duties to Qualcomm "by [improperly] providing legal counsel to ParkerVision in preparing to file this action." *See* Counterclaim [Doc. No. 91], ¶ 172. Specifically, Qualcomm alleges SKGF provided assistance to ParkerVision "in the form of an infringement analysis." *See*

6

Transcript of Motion Hearing, dated December 14, 2011, p. 7, ll. 5-8; p. 11, ll. 15-19, attached hereto as Exhibit A; *see also* Counterclaim [Doc. No. 91], ¶ 167. As shown below, however, even if SKGF engaged in the acts complained of, that conduct could not support a cause of action that would allow the requested discovery because any such infringement analysis was expressly consented to by Qualcomm.

i.      The Background of the SKGF-Qualcomm Relationship.

Between 1995 and 2006, Qualcomm retained SKGF to perform various intellectual property services, including prosecution work and opinion work. According to the 1999 Letter Agreement, which forms the basis for Qualcomm's breach of contract claim, the specific nature of services provided by SKGF to Qualcomm included "patent preparation and prosecution; and infringement, validity and freedom-to-use investigations."[3] *See* 1999 Letter Agreement [Doc. 40-1], p.2.

By 2006, the amount of work SKGF performed for Qualcomm had decreased substantially and SKGF began transferring responsibility for the prosecution of various Qualcomm patent applications to Qualcomm's in-house patent counsel. Given Qualcomm's size and its declining use of SKGF's services, the potential for conflicts that would preclude SKGF from being able to take on other clients outweighed the benefit of keeping Qualcomm as a client in name only. As a result, SKGF and Qualcomm officially terminated their relationship in March 2008. *See* Termination of Representation, dated March 3, 2008 [Doc. No. 59-11].

---

[3] The 1999 Letter Agreement was executed by Russell B. Miller, Vice President, Patent Counsel, for Qualcomm on January 20, 1999.

In March 2010, Qualcomm sought out SKGF to establish a new attorney-client relationship. Given the limited nature of the engagement, SKGF was unwilling to represent Qualcomm absent its consent that SKGF could represent clients adverse to Qualcomm in all patent related matters short of representing another client "in a litigation" concurrent with its representation of Qualcomm. Over the course of the next month, SKGF and Qualcomm negotiated the terms of the representation letter with particular emphasis on the scope of the consent provision. The result was an executed April 26, 2010 engagement letter that was subsequently used an additional five times by the parties for other engagements. *See* 2010 Engagement Letter [Doc. No. 59-13].[4] The 2010 Engagement Letters govern the relationship between Qualcomm and SKGF.

ii.      The Terms of the 2010 Engagement Letters.

The negotiated terms of the 2010 engagement letters expressly provide:

Because [SKGF] represent[s] a broad and diverse client base, there may be times when we represent other clients that are involved in disputes or transactions adverse to Qualcomm or its parents or affiliates that are unrelated to this representation. ***For example, we may represent present or future clients in intellectual property matters such as preparation and prosecution of patent and trademark applications, interferences, reexaminations, oppositions, patent analysis and opinions, and legislative/policy matters that may involve or affect Qualcomm or its parents or affiliates, where we do not represent Qualcomm in the same matter***. We may also represent a present or future client in a future lawsuit, appeal, or other inter parties proceeding against Qualcomm, so long as [SKGF] does not represent Qualcomm in the same matter and [SKGF] is not in possession of confidential information of Qualcomm that would preclude the representation adverse to Qualcomm in violation of an applicable rule of professional conduct. We understand that this consent does not extend to concurrent representation of clients adverse to Qualcomm ***in a litigation concurrent*** with the firm's representation of Qualcomm.

---

[4]   The 2010 Engagement Letter was executed on April 26, 2010 by Alex Rogers, Senior Vice President, Legal Counsel, for Qualcomm.

*See* 2010 Engagement Letter [Doc. No. 59-13] (emphasis added). The consent provision permits SKGF to perform "patent analysis and opinion" work for clients adverse to Qualcomm.[5]

> iii.    Qualcomm's Assertion of No Consent Rings Hollow.

When faced with the foregoing language, Qualcomm asserts that it did not consent because an "infringement analysis," as alleged here, constitutes representation "in a litigation." *See* Reply Brief in Support of Motion for Preliminary Injunction [Doc. No. 63], pp. 1, 5; Declaration of Alex Rogers [Doc. No. 64], ¶ 8. Qualcomm further conclusorily asserts that it understood "patent analysis and opinion" work to be defensive in nature only. *See* Reply Brief in Support of Motion for Preliminary Injunction [Doc. No. 63], p. 6; Declaration of Alex Rogers [Doc. No. 64], ¶ 8; Transcript of Motion Hearing, dated December 14, 2011, p. 18, ll. 17-19.

These positions are meritless in light of the 1999 Letter Agreement which Qualcomm asserts also governs the relationship between the parties. The 1999 Letter Agreement clearly differentiates between (i) "transaction work," (ii) "patent preparation and prosecution," *(iii) "litigation work," and (iv) "infringement, patentability, and freedom-to-use investigations."* *See* 1999 Letter Agreement [Doc. No. 40-1], p. 2.

Qualcomm cannot have it both ways, i.e., the 1999 Letter Agreement should be relied upon when it suits Qualcomm's purposes but should be ignored when it does not. Qualcomm

---

[5]   There is no, nor can there be any, assertion that the consent provided was not informed.  Each of the 2010 Engagement Letters was executed by Qualcomm well before ParkerVision even knew there was potential infringement by Qualcomm. *See* ParkerVision Objections and Responses to Qualcomm Interrogatories, attached hereto as Exhibit B (stating first awareness of potential infringement by Qualcomm was after February 2011).

clearly knew from the past relationship between the parties as acknowledged and expressly stated in the 1999 Letter Agreement that an "infringement analysis" does not constitute representation "in a litigation" in the context of the express consent provision entered into by the parties. *See also* Declaration of Prof. David Hricik [Doc. 59-16], ¶¶ 44-48 (opining that alleged infringement analysis fell with scope of consent provision).[6]

Qualcomm's position that the "patent analysis and opinion" language in the 2010 Engagement Letters was intended to be defensive in nature only is similarly flawed. The plain reading of the 1999 Letter Agreement clearly describes both offensive and defensive opinion work, i.e., identifying both "infringement" (which may be both offensive and defensive in nature) and "freedom-to-use" (which are generally defensive in nature) investigations. *See* 1999 Letter Agreement [Doc. No. 40-1], p. 2; *see also* Declaration of Prof. David Hricik [Doc. 59-16], ¶¶ 33-42, 46 (opining that patent counsel would understand "patent analysis and opinion" to encompass both offensive and defensive patent analysis and opinions).[7] Similarly the 2010 letters permit direct adversity, including challenging a Qualcomm patent in a reexamination, a contested matter intended solely to challenge the validity of an existing patent, and preclude only the representation of an adversary "in a litigation" and then only concurrent with SKGF's representation of Qualcomm. Qualcomm thus cannot be heard to complain about SKGF allegedly performing an adverse infringement

---

[6]  The opinion by Prof. Hricik that the alleged "infringement analysis" would fall within the scope of the consent provision set forth in the 2010 Engagement Letters was not refuted by Qualcomm's expert.  In fact, the expert for Qualcomm did not even review the 2010 Engagement Letters when forming his opinions. *See* Declaration of Culver Smith III [Doc. No. 41], ¶ 7.

[7]   Again, the opinion by Prof. Hricik that patent counsel would understand the conflict waiver to entail both offensive and defensive patent analysis and opinions was not refuted by Qualcomm's expert.

analysis since both the 2010 engagement letters and 1999 Letter Agreement contemplated such a scenario. As such, Qualcomm's effort to "change the rules of the game" as a litigation tactic in order to invade the SKGF-ParkerVision attorney-client privilege should be rejected.

      C.   <u>Qualcomm's Breach of Contract Claim Suffers From the Same Defects.</u>

      Qualcomm's breach of contract claim is also based upon the alleged improper "infringement analysis" performed by SKGF. Because any such alleged infringement analysis is allowed under the consent provision entered into by Qualcomm, no such claim can lie and Qualcomm should not be allowed to use it as a vehicle to invade the SKGF-ParkerVision attorney-client privilege.

<b><u>QUALCOMM'S MOTION TO COMPEL</u></b>

      It is against this backdrop of defective and baseless counterclaims that Qualcomm served upon SKGF its First Set of Interrogatories and First Requests for Production. The irony is not lost that while Qualcomm complains that SKGF has purportedly breached its duty of loyalty to Qualcomm, it asks this Court to compel SKGF to breach its duty of confidentiality to ParkerVision. As shown below, the arguments asserted by Qualcomm are without merit and the motion to compel should be denied.

**I.**     <u>**Scope of SKGF-ParkerVision Representation is Protected from Disclosure Under the Attorney-Client Privilege**</u>

      Through cleverly crafted requests for production and interrogatories, Qualcomm seeks to invade the SKGF-ParkerVision attorney-client privilege by compelling the disclosure of the subject matter of SKGF's representations of ParkerVision. Specifically, Qualcomm seeks to discern if ParkerVision ever sought legal advice from SKGF regarding potential infringement of ParkerVision's patents by Qualcomm. *See* Requests for Production

11

Nos. 37 and 40; Interrogatories Nos. 2 and 3.   To respond to these discovery requests, however, would necessarily require SKGF to breach its duty of confidentiality to ParkerVision.

In each of the complained of discovery requests, Qualcomm makes the assumption that ParkerVision retained SKGF "for work related to this action or enforcement of the Patents-in-Suit." Qualcomm seeks responses to the discovery requests not because it is interested in any substantive response but, rather, because it seeks confirmation that its assumption is correct. Qualcomm chose this ploy because it knows that it could not ask directly the question that it really wants answered, i.e., what was the nature of the SKGF-ParkerVision representation. This is because any inquiry into the motive of ParkerVision or the nature of any SKGF-ParkerVision representation is clearly improper and objectionable. *See e.g.*, *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 1995 WL 598971 (S.D.N.Y. 1995) (attorney-client privilege applicable to discovery which would "reveal the motive of the client in seeking representation, litigation strategy, [ ] the specific nature of the services provided … [or] the precise nature of representation").   Qualcomm may not seek to evade this restriction by merely predicating its discovery request with an assumption that SKGF has been retained to provide such services. *See e.g.*, *Banks v. Office of the Sergeant-at-Arms*, 241 F.R.D. 376, 382 (D.D.C. 2007) (deposition questions objectionable under attorney-client privilege where, if answered in affirmative, answer would disclose that attorney and client discussed such topic).   Qualcomm's improper motive in propounding the complained of discovery requests is self-evident and warrants a finding that no response is warranted.

12

Moreover, Qualcomm appears to have forgotten the old adages that "[a]ctions speak louder than words" and "[w]hat is good for the goose is good for the gander." In this very same action, during discussions surrounding the attachment of a 2010 SKGF-Qualcomm engagement letter as an exhibit to a pleading, Qualcomm took the contrary position that SKGF must <u>not</u> disclose the subject matter of the SKGF-Qualcomm representation because this information is a "protected client confidence." *See* Qualcomm Motion for Preliminary Injunction [Doc. No. 38], p. 7 fn. 2. As a result of this request by Qualcomm, SKGF redacted any reference to the nature of the representation in the exhibit prior to filing. Qualcomm cannot have it both ways and now demand that this same information be made available with respect to the SKGF-ParkerVision relationship.

Furthermore, none of the case law cited in its motion compels a different result. Qualcomm argues billing/time records are not subject to the attorney-client privilege and therefore should be produced. However, under Florida law, the attorney-client privilege does protect billing records from discovery by an adversarial party unless some exception applies, such as the crime-fraud exception or in attorney's fee cases. *See e.g.*, *Jacob v. Barton*, 877 So.2d 935, 936 (Fla. 2nd DCA 2004); *Progressive Am. Ins. Co. v. Lanier*, 800 So.2d 689, 690 (Fla. 1st DCA 2001).

The cases cited by Qualcomm in support of its motion are largely inapposite or, in fact, support a finding of privilege. The majority do not even address the issue of billing records and the attorney-client privilege, while others fall squarely into one of the exceptions - inapplicable here - to the general rule that billing records are privileged. Conversely, in *Fed. Trade Comm'n v. Cambridge Exch., Ltd.*, 845 F.Supp. 872, 874 (S.D. Fla. 1993), cited

with approval by Qualcomm, the court actually held that the production of billing records would be protected by the attorney-client privilege if "its disclosure would reveal *other privileged information, such as ... the nature of legal services performed*." This is the very issue presented here. The production of the requested billing records would necessarily result in the disclosure of the "nature of legal services performed." As such, the attorney-client privilege applies.

Qualcomm's interrogatories requesting the identity of SKGF attorneys engaged on behalf of ParkerVision in work related to the action or enforcement of the Patents-in-Suit suffers from the same defects. Again, they are cleverly tailored not to seek the literal information set forth in the interrogatory but, rather, an answer to the unwritten question of the nature of services performed by SKGF on behalf of ParkerVision – in other words, information to which Qualcomm is not entitled.

Qualcomm's argument that a privilege log would essentially require disclosure of the same information requested is also unavailing.[8] Where submittal of a traditional privilege log may itself result in the disclosure of protected information, alternative means may be utilized to substantiate a privilege objection. *See e.g., Nevin v. Palm Beach County School Board*, 958 So.2d 1003, 1008 (Fla. 1st DCA 2007) (finding no need to identify specific documents on a privilege log where categorical claim of privilege asserted and category itself is plainly protected); *see also Republic Serv.'s Inc. v. American Int'l Specialty Lines Ins. Co.*, 2008 WL 4691836, at *3 (S.D. Fla. Oct. 21, 2008) (permitting party to provide a "categorical

---

[8] The rules set forth in the Middle District Discovery (2001) handbook do not expressly require the preparation of a document-by-document privilege log as petitioned by Qualcomm but, rather, leave room for courts to permit alternative means for identifying privileged documents to be withheld.

log" as to certain enumerated classes of documents that would clearly be privileged); *S.E.C. v. Thrasher*, 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996) (acknowledging discretion of trial courts to permit less detailed disclosure in cases where a detailed disclosure would, in effect, reveal the very information that may be privileged).  Because a traditional privilege log would necessarily require the disclosure of privileged information, a categorical claim of privilege, as asserted by SKGF, should suffice.

Because Requests for Production Nos. 37 and 40 and Interrogatories Nos. 2 and 3 are an improper effort by Qualcomm to invade the SKGF-ParkerVision attorney-client privilege by compelling the disclosure of the subject matter of SKGF's representations of ParkerVision, the motion to compel should be denied with respect thereto.

## II.     Purported Stock Grants and Options Are Not Relevant

Qualcomm's Interrogatory No. 1 seeks information concerning every SKGF attorney who, from January 1997 through the present, has ever owned ParkerVision stock or stock options.  Qualcomm asserts the requested information is relevant to establish that certain SKGF attorneys had motive to engage in a concerted effort to perpetrate a fraud upon the PTO during the prosecution of the Patents-in-Suit.

Despite having been asked to do so, Qualcomm is still unable to cite a single case where a patent attorney's financial interest in a patentee has been considered relevant to support the intent prong of an inequitable conduct claim.  The reason for this failure is simple - such a result would essentially render the intent prong moot in any inequitable conduct case as a patentee and prosecuting attorney almost always have some financial interest in the issuance of a patent.

Neither of the cases cited by Qualcomm support its position that a SKGF attorney's purported financial interest in ParkerVision could be used to show motive in support of the intent prong in an inequitable conduct claim. *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F.Supp.2d 924 (N.D. Ill. 2008) does not even address the issue of one having a financial interest with the patentee. *Ferring B.V. v. Barr Labs, Inc.*, 437 F.3d 1181 (Fed. Cir. 2006), relates to a separate issue, i.e., an affiant's financial interest in an assignee may be relevant in an inequitable conduct analysis where the PTO requested affidavits from "disinterested" parties. With respect to the Patents-in-Suit, however, the PTO has neither requested nor envisioned that the patentees or SKGF attorneys would be "disinterested."

Because there is no support for the proposition that a prosecuting attorney's financial interest in a patentee can constitute motive to support the intent prong of an inequitable conduct claim, Qualcomm's motion should be denied with respect to Interrogatory No. 1. [9]

## BIFURCATION AND STAY

*If the camel once gets his nose in the tent, his body will soon follow.*
Arabian proverb

Once the attorney-client privilege is allowed to be invaded, it is impossible to remedy the breach. Therefore, in the event this Court believes there may be some circumstance

---

[9]   Moreover, even if it were relevant (which it is not), the Interrogatory is overbroad in that it requests information concerning any SKGF attorney with a purported financial interest in ParkerVision. Only the SKGF attorneys involved in the prosecution of the Patents-in-Suit could conceivably breach the duty of candor to the PTO and give rise to a finding of inequitable conduct. *See e.g., Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009); Manual of Patent Examining Procedures, § 2001.01. As such, any purported financial interest in ParkerVision held by a SKGF attorney not involved in the prosecution of the Patents-in-Suit would be irrelevant.

Furthermore, the Interrogatory's temporal scope is overbroad since a finding of inequitable conduct cannot be based on events that occurred after the patent has issued. *See e.g., Star Scientific, Inc., v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1370 n. 10 (Fed. Cir. 2008). As such, any purported financial interest in ParkerVision obtained after issuance of the respective Patents-in-Suit would also be irrelevant.

whereby a response to Requests for Production Nos. 37 and 40 and/or Interrogatories 2 and 3, may ultimately be necessary, utmost protection should be made to ensure such privileged disclosures are only made in the unlikely event that a cause of action can actually be sustained by Qualcomm.  Since the issues that would need to be decided to prevent the unnecessary disclosure of attorney-client privileged materials is narrow, SKGF contends this protection may be afforded by either staying the requested discovery and bifurcating the fiduciary duty and contract claims until the completion of the underlying patent action or, at a minimum, having the parties brief, and the Court rule upon, the scope of the consent provided SKGF in the 2010 Engagement Letters.

**I.** **Discovery Should Be Stayed and the Fiduciary Duty and Contract Claims Bifurcated Until Resolution of the Patent Action**[10]

Over the years, courts have routinely justified forestalling the potential disclosure of attorney-client privileged materials relating to a supplemental cause of action until after the principal action has been resolved.  For instance, the Federal Circuit has advised trial courts that bifurcation may be a useful mechanism to alleviate concerns about the unnecessary impingement upon the attorney-client privilege in patent infringement cases.  *See Quantum*

---

[10]  In the Joint Case Management Report [Doc. No. 69], ParkerVision and SKGF proposed bifurcation of the fiduciary duty and contract claims due to the unrelated nature of these claims from the underlying patent infringement action, as well as the possibility that these claims could confuse the jury when addressing the complex patent infringement claims and defenses.  In the Case Management and Scheduling Order [Doc. No. 84], the Court declined to decide the issue of bifurcation on the grounds that any such consideration was premature.

The Joint Case Management Report and Case Management and Scheduling Order were submitted and entered, respectively, prior to Qualcomm's service of the pending discovery which has pushed the SKGF-ParkerVision attorney-client privilege to the forefront.  As a result of the potential for the complained of discovery to unnecessarily invade the SKGF-ParkerVision attorney-client privilege, SKGF contends the issue of bifurcation is ripe for further consideration.

*Corp. v. Tandon Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991) (discussing bifurcation in the context of a willful infringement analysis).   Similarly, courts have stayed discovery and bifurcated trials on bad faith claims pending resolution of the underlying contract or product liability actions to avoid possible attorney-client dilemmas. *See generally Gatewood v. Universal Underwriters Life Ins. Co.*, 2007 WL 496375 (W.D. Ky. Feb. 7, 2007) (staying discovery and bifurcating trial on bad faith claims pending resolution of underlying contract claim in order to avoid production of privileged documents irrelevant to contract action); *Ferro Corp. v. Continental Cas. Co.*, 2008 WL 5705575 (N.D. Ohio Jan. 7, 2008) (staying discovery and bifurcating insured's bad faith claim against insurer from products liability suits in light of privilege concerns).

In the present action, the discovery requests seeking to impinge upon the SKGF-ParkerVision attorney-client relationship have no relevance to the underlying patent infringement action.  They solely relate to the facially suspect and inherently baseless breach of fiduciary duty and contract claims.   These claims are refuted by the 1999 Letter Agreement and 2010 Engagement Letters.   Furthermore, the claims will only accrue if Qualcomm can show it has incurred damages at the conclusion of the underlying patent action. *See* SKGF Motion to Dismiss [Doc. No. 99]; *see also Blumberg v. USAA Cas. Ins. Co.,* 790 So. 2d 1061, 1065 (Fla. 2001); *Hold v. Manzini,* 736 So. 2d 138, 142 (Fla. 3rd DCA 1999). Until that time, the claims are merely "hypothetical and damages are speculative." *Id.*

Qualcomm's allegation that it is incurring attorney's fees or other expenses in defending the infringement claims is not sufficient to establish redressable harm for purposes of its breach of fiduciary duty and contract claims against SKGF. *See Bierman v. Miller,* 639 So. 2d 627, 628

(Fla. 3d DCA 1994). Moreover, Qualcomm's claim that it has lost the value of SKGF's opinion work because it "will need" to retain replacement counsel to finish, or "possibly restart," the opinion work is also a premature, speculative claim for potential future damages. *See Hold,* 736 So.2d at 142. Thus, Qualcomm's claims are premature and should be abated or stayed until the underlying infringement suit is concluded or Qualcomm can otherwise demonstrate actual redressable harm caused by SKGF.

Similarly, in toxic tort cases, courts routinely require plaintiffs to produce basic prima facie evidence of causation before discovery can even begin. *See generally Lore v. Lone Pine Corp.*, 1986 WL 637507 (N.J. Super. Law. Div. Nov. 18, 1986) and its progeny; *see also Tatum v. Pactiv Corp.*, 2007 WL 60931 (M.D. Ala. Jan. 8, 2007). Qualcomm's claims against SKGF are based upon nothing more than smoke and mirrors and, in fact, are belied by the very references it cites in support of its claims. In light thereof, Qualcomm should be required to come forward with a plausible - as opposed to the speculative - basis for its claims than it has presently provided before any invasion into the SKGF -ParkerVision attorney-client relationship should be allowed.

## II.     Alternatively, the Consent Issue Should Be Decided Before Discovery is Allowed

As discussed above, the 1999 Letter Agreement and 2010 Engagement Letters clearly contemplate SKGF being allowed to conduct "infringement, validity and freedom-to-use investigations" on behalf of ParkerVision, even against Qualcomm. Therefore, even if SKGF engaged in the alleged conduct complained of, i.e., conducting a pre-suit infringement analysis, the complained of actions would have been authorized under the parties' agreements. Qualcomm's only defense to the facial applicability of the consent contained in

19

the 2010 engagement letters to the alleged pre-suit work by SKGF is Mr. Roger's conclusory affidavit that he did not intend what the plain words appear to mean. Limited discovery and briefing on that issue may well obviate any possible unnecessary disclosure of SKGF-ParkerVision attorney-client privileged communications. Accordingly, and as noted in the declaration of Mr. Greenwald submitted by Qualcomm, SKGF alternatively submits that this issue should be briefed and argued before any arguably privileged materials should be compelled to be disclosed.

## <u>CONCLUSION</u>

In conclusion, SKGF respectfully submits that because the requested information is either privileged or irrelevant, Qualcomm's motion to compel should be denied in its entirety.  Conversely, in the event the Court believes further consideration is necessary concerning the potential production of attorney-client privileged materials, SKGF respectfully submits that any such action should be delayed until the close of the underlying patent infringement actions, or at least until after the consent issue has been resolved.

Dated: April 16, 2012         By:    /s/ David M. Wells_____
                                      David M. Wells – Trial Counsel
                                      Florida Bar #309291
                                      David R. Atkinson
                                      Florida Bar #767239
                                      Katherine H. Underwood
                                      Florida Bar #0058995
                                      *Counsel for Sterne, Kessler, Goldstein*
                                      *& Fox PLLC*
                                      GUNSTER, YOAKLEY & STEWART, P.A.
                                      225 Water Street, Suite 1750
                                      Jacksonville, FL 32202
                                      Telephone: 904-354-1980
                                      Facsimile: 904-354-2170
                                      dwells@gunster.com
                                      datkinson@gunster.com

kunderwood@gunster.com

.

## CERTIFICATE OF SERVICE (Documents filed via CM/ECF)

I hereby certify that on the 16th day of April, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/ s/ David M. Wells
David M. Wells

### ELECTRONIC MAIL SERVICE LIST
### CASE NO.: 3:11-cv-719-J-37-TEM

***Counsel for Defendant, Counterclaim Plaintiff Qualcomm Incorporated***

John A. DeVault, III
jad@bedellfirm.com
Courtney Kneece Grimm
cgrimm@bedellfirm.com
Bedell, Dittman, DeVault, Pillans & Coxe, P.A.
The Bedell Building
101 East Adams Street
Jacksonville, FL  32202
Phone:  904-353-0211
Facsimile:  904-353-9307
FLABAR#103979

Keith R. Hummel
khummel@cravath.com
David Greenwald
dgreenwald@cravath.com
Joseph Everett Lasher

21

jlasher@cravath.com
Peter A. Emmi
pemmi@cravath.com
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019-7475
Phone:  212-474-1000
Fax:  212-474-3700

Christopher A. Hughes
Christopher.Hughes@cwt.com
John Moehringer
John.moehringer@cwt.com
Robert Pollaro
Robert.pollaro@cwt.com
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Phone:212-504-6000
Fax:  212-504-6666

***Counsel for Plaintiff, Counterclaim Defendant, ParkerVision***
Ava K. Doppelt
adoppelt@addmg.com
Brian R. Gilchrist
bgilchrist@addmg.com
Jeffrey Scott Boyles
jboyles@addmg.com
Allen, Dyer, Doppelt, Milbrath & Gilchrist, PA
255 S Orange Ave – Ste 1401
PO BOX 3791
Orlando, FL  32801
Phone:  407-841-2330
Fax:  407-841-2343

Stephen D. Busey
busey@smithhulsey.com
James Arthur Bolling
jbolling@smithhulsey.com
Smith, Hulsey & Busey
225 Water St – Ste 1800
PO BOX 53315
Jacksonville, FL  32202-3315

Phone:  904-359-7700
Fax:  904-359-7708

T. Gordon White
gwhite@mckoolsmith.com
McKool Smith P.C.
300 West 6th Street, Suite 1700
Austin, TX 78701
Phone:  512-692-8700

J. Austin Curry
acurry@mckoolsmith.com
Douglas Cawley
dcawley@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court
Suite 1500
Dallas, TX 75201
Phone:  214-978-4000
Fax: 214-978-4044

JAX_ACTIVE 3180928.5