## THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

PARKERVISION, INC.,

        *Plaintiff,*

        v.

QUALCOMM INCORPORATED,

        *Defendant.*

QUALCOMM INCORPORATED,

        *Counterclaim Plaintiff,*

        v.

PARKERVISION, INC., and
STERNE, KESSLER, GOLDSTEIN, & FOX PLLC,

        *Counterclaim Defendants.*

Case No. 3:11-cv-00719-J-37-TEM

## QUALCOMM INCORPORATED'S MEMORANDUM OF LAW IN OPPOSITION TO STERNE, KESSLER, GOLDSTEIN & FOX'S MOTION TO DISMISS, STRIKE OR ABATE PORTIONS OF QUALCOMM'S COUNTERCLAIM AND DEMAND FOR JURY TRIAL

Qualcomm respectfully submits this memorandum of law in opposition to Sterne, Kessler, Goldstein & Fox PLLC's ("SKGF") third motion to dismiss, strike or abate portions of Qualcomm's Counterclaim (Dkt. 99).

### Preliminary Statement

Through this motion, SKGF seeks, yet again, to avoid answering the fundamental question underlying Qualcomm's counterclaims for breach of fiduciary duty and breach of contract—whether SKGF helped ParkerVision, Inc. ("ParkerVision") to bring this lawsuit against its then-client Qualcomm. The law is crystal clear on this point: if SKGF helped ParkerVision bring this lawsuit against Qualcomm while SKGF was representing both companies, SKGF breached its fiduciary duty unless both companies consented to such dual representation. Qualcomm never consented. The question of whether it engaged in such conflicted representation should be easy for SKGF to answer. But rather than being forthcoming, SKGF has repeatedly bobbed, weaved and refused to answer. This should stop.

Since shortly after ParkerVision filed this lawsuit, Qualcomm has diligently sought discovery of exactly what SKGF did to help ParkerVision bring this action against Qualcomm, but to no avail.[1] At every turn, SKGF has thrown up obstacles to avoid telling the truth. Before Qualcomm filed suit, SKGF consistently dodged the question of whether it had assisted in ParkerVision's pre-suit investigation. Once Qualcomm filed its Counterclaim, SKGF refused three times to answer, instead making baseless motions to dismiss. SKGF also refused, through carefully worded argument in response to Qualcomm's motion for a preliminary

---

[1] Before suing for patent infringement, a patent owner must perform some amount of due diligence to make sure it has a Rule 11 basis for accusing the defendant of infringement. *See, e.g., Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1328-29 (Fed. Cir. 2011). That diligence requires the patent owner and/or its lawyers to understand the patent, formulate any necessary claim construction positions and examine a potential defendant's products to determine if all the elements of one or more patent claims are present in the product. *Id.* Only if the patent owner and its lawyers are convinced that there is a good faith basis for believing that infringement of a valid and enforceable claim may exist under its interpretation of the patents, can a lawsuit be properly filed. *Id.*

injunction, to admit or deny that it helped ParkerVision bring this suit.  Most recently, SKGF refused to respond to Qualcomm's discovery requests on this subject by making overbroad assertions of privilege that SKGF must know have no basis in law.  (*See* Dkt. 94.)  SKGF's fervent efforts to avoid the merits of Qualcomm's counterclaims should be seen for what they are:  a concerted attempt to prevent Qualcomm and this Court from learning how and to what extent SKGF violated its fiduciary and contractual duties to Qualcomm.

No reasonable doubt can exist at this point that SKGF did, in fact, violate its fiduciary duty to Qualcomm.  Despite SKGF's heated rhetoric and condemnation of Qualcomm's allegations as "rank speculation," ***not once has SKGF denied that Qualcomm's allegations are true***.  To the contrary, despite having numerous opportunities to deny that it ever helped ParkerVision to bring this lawsuit, SKGF has remained steadfastly silent on that point.  Although SKGF has repeatedly and forcefully denied providing assistance to ParkerVision ***after the filing of the complaint, it has never denied that it assisted ParkerVision in preparing the requisite preliminary assessments***.  That bears repeating—SKGF has never denied it helped ParkerVision in bringing this suit against Qualcomm—not in its previous two motions to dismiss, not in its opposition to Qualcomm's motion for a preliminary injunction and not in its opposition to Qualcomm's motion to compel.  Even when standing before this Court at oral argument on Qualcomm's motion for a preliminary injunction, SKGF refused to deny committing the wrong underpinning Qualcomm's motion, despite Qualcomm's counsel pointing out in rebuttal that neither counsel for SKGF nor counsel for ParkerVision had actually denied that SKGF had provided the prohibited assistance to ParkerVision prior to the filing of the complaint.  (*See* Dkt. 67 at 42:14-43:2.)

Perhaps most notably, in this very motion, despite several forceful denials of other allegations (for example, about Robert Sterne's action as a member of ParkerVision's

board), SKGF still does not deny helping with ParkerVision's pre-suit investigation during the time it represented Qualcomm.  SKGF is silent on this point because it cannot legitimately deny that it acted in breach of its duty of loyalty to Qualcomm.

SKGF attempts to excuse its prolonged silence by asserting that disclosure of the basic facts of SGKF's assistance to ParkerVision would reveal client confidences and information allegedly protected by the attorney-client privilege and the work product immunity.  (*See* Dkt. 99 at 10; Dkt. 95 Ex. 6 at 3.)  But, this is not a serious objection because it has absolutely no basis in law.  As explained fully in Qualcomm's motion to compel (Dkt. 94), SKGF's assertions of privilege fail because Qualcomm seeks only *factual information*, not the substance of the advice SKGF provided to ParkerVision.  Indeed, when it suits them, both SKGF and ParkerVision's current counsel at McKool Smith openly discuss the extent of their representation of ParkerVision without concern for client confidences.  SKGF repeatedly emphasizes that it did not assist ParkerVision *after* this suit was filed, and, at oral argument on Qualcomm's disqualification motion, the lead McKool Smith lawyer stated that the firm had performed an independent analysis of ParkerVision's claims before entering its appearance (*see* Dkt. 67 at 36:22-37:4).  If these statements disclose no confidences of ParkerVision, then SKGF certainly could admit or deny performing a pre-suit representation.  Yet, SKGF refuses to speak.

SKGF also makes a technical argument that Qualcomm has not sufficiently alleged that SKGF's misconduct caused Qualcomm any harm.  This argument simply lacks merit.  As set forth in Qualcomm's Answer to ParkerVision's First Amended Complaint and Counterclaim (the "Counterclaim"), and as detailed below, the sources of causally related harm are several, and all are legally cognizable.

The time has come for SKGF to cease its stonewalling and to start engaging Qualcomm on the merits.  Qualcomm's case against SKGF is a simple one—if the firm did

anything to help ParkerVision sue Qualcomm while both companies were clients, then it breached its fiduciary duty. Because the answer to that question is clearly "yes, SKGF helped sue its client," the parties should move on to dealing with the real issues here—the scope of SKGF's breach and the consequences of that breach. SKGF's motion should be denied.

## Factual Background

### A. SKGF's Representation of Qualcomm.

Qualcomm regularly retains outside law firms to assist it in the filing and prosecution of the many patent applications it files every year. Through this "prosecution work," outside attorneys retained by Qualcomm acquire very detailed and highly confidential knowledge of Qualcomm's products. (Dkt. 91 ¶ 129.) Since 1998, SKGF has served as outside counsel to Qualcomm on over 100 matters, including the prosecution of over 50 U.S. patents. (*Id.* ¶ 135.) Many of the patent applications SKGF prosecuted for Qualcomm related to technologies found in RF devices and, significantly, at least one of those applications related to Qualcomm's own direct conversion receiver technology. (*Id.*) Direct conversion receivers are precisely the technology at issue in this litigation. (*See* Dkt. 1 ¶ 11.)

Qualcomm also retains outside law firms to analyze and provide opinions relating to third-party patents that have been, or may be, asserted against Qualcomm. Through this "opinion work," outside attorneys also acquire very detailed knowledge of confidential information relating to Qualcomm's products. (Dkt. 91 ¶ 130.) Based on this information, such "opinion counsel" may provide written opinions about whether Qualcomm products infringe the asserted patents, and whether such patents are valid and enforceable. Preparing such an opinion is only the first step of a multi-step process, and is followed by the delivery of the opinion, updating the opinion and potentially defending the opinion if Qualcomm chooses to rely on it in litigation. (*Id.* ¶ 131.)

From 2010 until the start of this lawsuit, Qualcomm retained SKGF for six "opinion" matters.  (*Id.* ¶ 145.)  For each of those matters, Qualcomm executed an engagement letter prepared by SKGF.  (*Id.* ¶ 146.)  Those letters, while requesting waivers of certain types of conflicts of interest, did *not* include a waiver of the conflict of interest that would arise if SKGF represented another client in litigation against Qualcomm while Qualcomm was a current client of SKGF.  (*Id.*)  To the contrary, in every such letter, SKGF stated, "[w]e understand that this consent does not extend to concurrent representation of clients adverse to Qualcomm in a litigation concurrent with the firm's representation of Qualcomm."  (*Id.*)  Of these six opinion matters, two were still ongoing when ParkerVision filed this lawsuit, and they remain ongoing today.  (*Id.* ¶¶ 148, 153-54.)

In 1999, During SKGF's early representation of Qualcomm, SKGF sought Qualcomm's consent to allow the firm to represent ParkerVision in potential licensing negotiations with Qualcomm.  (*Id.* ¶ 140.)  In response to SKGF's request, ParkerVision and Qualcomm each agreed to waive, with important limitations, the conflict of interest that resulted from SKGF's representation of ParkerVision in negotiations opposite SKGF's other client, Qualcomm.  (*Id.* ¶ 141.)  In soliciting Qualcomm's consent, SKGF committed "that no one at [SKGF] would in any future matter take an adversarial position (*e.g.,* participate in litigation against either QUALCOMM or ParkerVision on any matters), at least as long as we continue to represent such company, even in unrelated matters."  (*Id.* ¶ 143.)  The negotiations were ultimately unsuccessful, but the terms of the agreement remained in force.  (*Id.* ¶ 144.)

**B.**     **SKGF's Involvement in the Present Litigation.**

On July 20, 2011, ParkerVision sued Qualcomm alleging infringement of the patents-in-suit, each of which was prosecuted by members of SKGF.  (*Id.* ¶ 149.)  SKGF did not enter an appearance, but it soon became apparent that SKGF had been involved in the

preparation of this lawsuit.  During a July 21, 2011 conference call with investment analysts,

Jeffrey Parker, ParkerVision's founder and CEO, deflected questions about the pre-suit analysis

underlying the allegations of infringement against Qualcomm, stating only that such

information would "come out in the lawsuit."  (*Id.* ¶ 150.)  Parker did reveal that, when

ParkerVision discovered the alleged infringement, it "took the information to its legal

counselors immediately," who "helped walk [ParkerVision] through the process of [verifying

the alleged infringement]."  (*Id.*)  Parker did not identify the "legal counselors" who had

assisted ParkerVision, but its website identifies SKGF as the company's sole "Patent Counsel."

(*Id.* ¶ 151.)  Parker also dodged a question about longtime ParkerVision director and SKGF

partner, Robert Sterne's role in the decision to sue Qualcomm, by saying, "Right. Well, the

Sterne firm started from day one analyzing the core invention. . . . So, they've been very

involved in the . . . prosecution of the patent and they will continue to be."  (*Id.* ¶ 152.)

On August 1, 2011, eleven days after the filing of this lawsuit, Qualcomm's in-

house legal counsel was contacted by the SKGF lawyer handling Qualcomm's opinion work.

(*Id.* ¶ 153.)  The SKGF lawyer advised Qualcomm's in-house lawyers that due to ParkerVision's

lawsuit against Qualcomm, SKGF needed to "wrap up" its work on the matters it was handling

for Qualcomm.  (*Id.*)  Qualcomm's counsel noted that SKGF's work was not complete, and that

Qualcomm did not consent to SKGF's termination of its representation.  (*Id.*)  The SKGF lawyer

noted that Robert Sterne had been an advisor to ParkerVision for a long time, and remarked

that SKGF was now in a "tough spot."  (*Id.*)

On August 16, 2011, Qualcomm sent a letter to SKGF, seeking information about

the extent of SKGF's involvement in the present litigation and reiterating Qualcomm's refusal to

allow SKGF prematurely to withdraw from its ongoing representation of Qualcomm.  On

August 25, 2011, SKGF responded, acknowledging that Qualcomm was a current client of

SKGF, and that it would complete its ongoing projects for Qualcomm.  (*Id.* ¶ 155.)  SKGF made cagey and limited promises about representing ParkerVision, stating that SKGF "will not advise ParkerVision or its litigation counsel regarding the Florida matter or any other litigation with Qualcomm . . . so long as Qualcomm remains a firm client."  (*Id.*)  SKGF's letter was silent on the question of whether SKGF had helped ParkerVision prepare this action against Qualcomm. (*Id.* ¶ 156.)  SKGF's only excuse for refusing to answer these questions was "[its] obligations of confidentiality" under the rules of professional conduct.  (*Id.* ¶ 157.)

On September 2, 2011, Qualcomm sent a letter to SKGF, explaining that SKGF's refusal even to address whether it had provided assistance to ParkerVision compelled the inference that SKGF had provided such assistance.  (*Id.* ¶ 160.)  Qualcomm invited SKGF to rebut that inference by providing the previously requested assurances.  SKGF never has.

### C.  SKGF's Termination of Its Relationship with Qualcomm and Its Continued Refusal To Deny Providing Assistance to ParkerVision.

On September 16, 2011, Qualcomm filed its Answer and Counterclaim, joining SKGF as an additional counterclaim defendant for breaching its fiduciary duty of loyalty to Qualcomm by representing ParkerVision in connection with this litigation.  (*Id.* ¶ 162.) Qualcomm also sued SKGF for breach of its contractual promise never to "take an adversarial position (*e.g.*, participate in litigation[)]" against Qualcomm in any future matter.  (*Id.* ¶ 143.)

Nearly a month later, on October 14, 2011, SKGF wrote to Qualcomm, stating that Qualcomm's counterclaim gave rise to an "ethical obligation" that the firm withdraw immediately from its representation of Qualcomm, leaving its work on the ongoing matters unfinished.  (*Id.* ¶ 163.)  SKGF's letter did not identify the source of that obligation.

On October 18, 2011, Qualcomm responded, inquiring, once again, whether SKGF had assisted ParkerVision in suing Qualcomm.  (*Id.* ¶ 164.)  On October 25, 2011, SKGF

responded, stating only that the firm "*is not* representing ParkerVision . . . with respect to the patent infringement claims against Qualcomm, nor regarding ParkerVision's defense of the counter-claim Qualcomm filed against ParkerVision." (*Id.* ¶ 165.)  SKGF's response was again silent about the extent of its *past* work for ParkerVision.

On October 27, 2011, Qualcomm sent a letter to SKGF, stating that, unless SKGF provided clear and unequivocal answers to the contrary, Qualcomm would have no choice but to assume that SKGF had, in fact, breached its obligations to Qualcomm and would move to enjoin the firm from providing further assistance to ParkerVision in connection with this lawsuit. (*Id.* ¶ 166.)  Instead of responding to that letter, SKGF moved on November 7, 2011, to dismiss the counterclaims against it. (*See* Dkt. 34.)  In that first motion to dismiss, which was rendered moot by Qualcomm's Counterclaim (*see* Dkt. 62), SKGF again failed to deny that it had assisted ParkerVision in preparing this lawsuit.

On November 10, 2011, Qualcomm moved for a preliminary injunction enjoining SKGF from further representation of ParkerVision in this litigation. (Dkt. 38).  At the hearing on Qualcomm's motion, counsel for SKGF vehemently denied "preparing the complaint" or doing anything "*since the lawsuit was filed . . .* to advance the cause of ParkerVision." (Dkt. 67 at 36-37 (emphasis added).)  The various disavowals led this Court to comment that it understood SKGF had disavowed pre-suit investigation, but counsel for Qualcomm quickly corrected that misimpression. (*Id.* at 42:18-22 ("neither [SKGF nor ParkerVision] actually denied that [SKGF] had performed the Rule 11 analysis").)  And, the transcript is clear—not once did SKGF deny it had assisted ParkerVision in conducting the pre-suit assessment it was required to conduct before suing Qualcomm.  Even after Qualcomm's counsel pointed out the lack of a denial of such assistance, SKGF's counsel never stood up to contest the point.

# Argument

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all material allegations giving rise to the claim. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). The court must also draw all reasonable inferences in the light most favorable to the claimant. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (citations omitted). Claims "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "The threshold of sufficiency that [a] complaint must meet to survive a motion to dismiss is exceedingly low." *Collins v. Countrywide Home Loans, Inc.,* 680 F. Supp. 2d 1287, 1292 (M.D. Fla. 2010) (citing *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)).

## I.      Qualcomm Has Properly Pleaded A Claim For Breach Of Fiduciary Duty.

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Patten v. Winderman*, 965 So. 2d 1222, 1224 (Fla. Dist. Ct. App. 2007) (quoting *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).)[2] A lawyer breaches his or her duty of loyalty by simultaneously working for and against the same client. *See* Fla. R. P.C. 4-1.7(a) ("A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the lawyer's responsibilities to and relationship with the other client; and

---

[2] Qualcomm agrees that while there may ultimately be a choice-of-law issue in this case, the Court does not have to make a choice-of-law determination now because the legal ethical principles of Florida and Washington, D.C., the two potential sources of ethical regulation, do not relevantly differ.

(2) each client consents after consultation.")  Under Rule 4-1.7, SKGF could not have assisted

ParkerVision in its action against Qualcomm while Qualcomm was also a SKGF client because

Qualcomm never consented to allowing SKGF to so assist ParkerVision.[3]

### A.    Qualcomm's Factual Allegations Are Sufficient To State a Claim for Breach of Fiduciary Duty.

SKGF contends that Qualcomm's factual allegations "do not plausibly support"

its claim for breach of fiduciary duty.  (Dkt. 99 at 5.)  Yet, tellingly, SKGF does not contend that

the inference that it assisted ParkerVision in preparing this litigation is incorrect; only that

Qualcomm's factual allegations fail adequately to support such an inference.  (Dkt. 99 at 5-14.)

This highly technical argument sits very uncomfortably with the facts Qualcomm has pleaded

and the common sense inference that cries out from those factual allegations.

As the Counterclaim recounts, when SKGF asked Qualcomm whether it could

withdraw from representing Qualcomm in light of the filing of this lawsuit, Qualcomm asked

SKGF whether it had assisted ParkerVision in bringing this lawsuit.  SKGF refused to answer

that question when first posed, and has consistently refused to answer it ever since:

On August 16, Qualcomm's in-house counsel asked in a letter whether SKGF had

assisted ParkerVision or its counsel "in any way in connection with the analysis, preparation,

filing, or litigation" of this action.  Sterne Kessler's August 25 response stated only that "Sterne

Kessler *will* not enter its appearance or otherwise act as counsel for ParkerVision" in this action.

On September 2, Qualcomm's in-house counsel asked the same question (and

---

[3] Even if SKGF is not the attorney of record for ParkerVision in the litigation, any legal assistance that SKGF provides to ParkerVision is considered to be "representation" governed by the Rules of Professional Conduct.  *See Hilton v. Barnett Banks, Inc.*, No. 94-cv-1036, 1994 WL 776971, at *3 (M.D. Fla. Dec. 30, 1994) (a law firm is per se ineligible to represent plaintiff where the firm had not clearly terminated its representation of defendant by the time "preparations for litigation commenced on plaintiff's behalf"); David Hricik, *Patent Ethics – Litigation* 37-38 (2010) ("A firm that cannot represent a party opposing a current client in litigation also cannot help some other firm do the same thing, trying to avoid adversity solely by not making an appearance in court.").

others) again.  SKGF then retained legal counsel who undertook on September 9 to respond "on behalf of Sterne Kessler as promptly as possible."  Instead of providing a substantive answer to Qualcomm's questions, including whether SKGF had assisted ParkerVision pre-suit, on October 14, SKGF's counsel told Qualcomm that SKGF was withdrawing from representing Qualcomm.

SKGF continued to decline to deny the fact of its prior assistance of ParkerVision when Qualcomm filed its motion for a preliminary injunction.  Even though SKGF was permitted and strongly incented to submit factual material contradicting Qualcomm's allegations in connection with that motion (on which Qualcomm's likelihood of the success on the merits was a core consideration), SKGF's submissions were silent about whether SKGF had in fact helped ParkerVision.  To the contrary, SKGF's opposition to Qualcomm's motion for a preliminary injunction even hinted at the existence of pre-suit "patent analyses"(in the course of arguing that such "analyses" would have been covered by an earlier blanket waiver).  (*See* Dkt. 59 at 4-8.)  And at oral argument, while SKGF's counsel forcefully denied that SKGF had represented ParkerVision since this lawsuit was filed, one scours the transcript of that hearing in vain to find any denial by SKGF's counsel (or by ParkerVision's) that SKGF helped ParkerVision sue Qualcomm.  (*See* Dkt. 67 25:13-19.)  There simply is no such denial to be found.

If SKGF had not in fact provided any pre-suit assistance to ParkerVision, it would have been very easy and advantageous for SKGF simply to have said so from the outset, and to keep saying that loudly and clearly at every opportunity.  Although SKGF contends that its ethical duty of confidentiality to ParkerVision bars it from responding to Qualcomm's questions (*see* Dkt. 91 ¶ 156-57), that contention is merely pretextual.  If SKGF had not in fact done anything to help ParkerVision to file this lawsuit, then a simple "no" does not reveal client confidences.  To the contrary, one would have expected ParkerVision to have urged its longstanding "patent counsel" to clear the air with a denial of the prohibited representation.

There is only one reasonable—and utterly plausible—inference to be drawn from the fact that SKGF did not do so:  SKGF helped ParkerVision bring this action against Qualcomm.

Nor does SKGF's invocation of attorney-client confidentiality hold up when measured against the disclosures its own counsel and those of ParkerVision have made in this lawsuit.  If SKGF and its counsel truly believed that their duty of confidentiality to ParkerVision bars them from disclosing whether they helped ParkerVision, why did that same duty not bar SKGF's counsel from stating in open court and in prior correspondence that "[SKGF] is not representing ParkerVision" after the filing of the lawsuit?  (Dkt. 67 25:13-14.)  Surely under SKGF's (incorrect) view of its ethical obligations, a denial of current assistance should be no less "confidential" than a denial of former.  And if the duty of confidentiality barred disclosure of merely whether a lawyer helped a client analyze a case before it was filed, why did ParkerVision's successor counsel, McKool Smith, freely state in open court that its own lawyers had devoted "in excess of a hundred hours" to analyzing the claims before entering its appearance?  (Dkt. 67 at 36:20-25.)  Why is McKool Smith's statement of what it did for ParkerVision before entering its appearance in this lawsuit less confidential than SKGF's statement of what it did for ParkerVision before ParkerVision filed its case?

And even if the inference that Sterne Kessler helped ParkerVision were not "plausible" in light of its past silence, *cf. Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (a party's invocation of the privilege against self-incrimination permits an inference of guilt in a civil action), it would certainly become so when coupled with the other facts detailed in Qualcomm's Counterclaim, such as SKGF partner Michael Ray's statement to counsel for Qualcomm days after ParkerVision sued, that SKGF wanted to withdraw from its ongoing representation of Qualcomm because it was "in a tough spot" due to its concurrent representation of ParkerVision (*See* Dkt. 91 ¶ 153), and Jeff Parker's cagey responses during the July 21, 2011

public investor call to inquiries about who had helped ParkerVision bring this lawsuit (Dkt. 91 ¶ 150.) Taken altogether, these allegations "raise a reasonable expectation that discovery will reveal evidence" corroborating Qualcomm's claim. *Twombly*, 550 U.S. at 556; *see also Prokopenko v. Royal Caribbean Cruise Ltd.*, No. 10-cv-20068, 2010 WL 1524546 (S.D. Fla. Apr. 15, 2010) (denying in part motion to dismiss a complaint alleging only that a cruise passenger slipped on water on board a ship, requiring the court to infer the facts of the defendant's misconduct).[4]

SKGF also contends that Qualcomm is required to allege in its counterclaim facts to contradict an affirmative defense that SKGF *has not yet pleaded*—*i.e.*, that SKGF's representation of ParkerVision in connection with this action is permitted by certain engagement letters executed in 2010. (*See* Dkt. 99 at 12-13.) The Rules of Civil Procedure do not impose such a heightened pleading standard, and certainly do not require Qualcomm to anticipate and respond in its Counterclaim to every affirmative defense that SKGF might assert. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("We see no basis for imposing on the plaintiff an obligation to anticipate [an affirmative defense] by stating in his complaint that the defendant [failed to satisfy the requirements of the defense].")  It is sufficient to state a claim for Qualcomm to allege that SKGF breached its fiduciary duty by wrongfully undertaking a conflicting representation of ParkerVision adverse to Qualcomm. *Id.*

As shown in Qualcomm's reply in support of its motion for a preliminary injunction, SKGF's lawyers' recently devised, litigation-driven[5] interpretation of the 2010 Engagement Letters is simply wrong; nothing in the letters authorized SKGF's breaches of fiduciary duty. (*See* Dkt. 63 at 5-6.) Further, contrary to SKGF's contention, Qualcomm alleges

---

[4] As Qualcomm's pending motion to compel indicates, SKGF's discovery strategy is also to avoid answering the question whether it helped ParkerVision to bring this suit. (*See* Dkt. 94 at 1-6.)

[5] Notably, in none of the pre-suit correspondence between Qualcomm and SKGF lawyer, Michael Ray, the author of the engagement letters containing the cited waiver, did Mr. Ray assert that SKGF's work for ParkerVision in this action was permissible under that waiver.

explicitly that the waiver in the 2010 Engagement Letters does not extend to SKGF's representation of ParkerVision at issue in connection with this action.[6]  (*See* Dkt. 91 ¶ 146-48.) And in a supplemental declaration Qualcomm submitted as soon as SKGF raised its "waiver defense" for the first time, the very lawyer who purportedly granted the waiver explained why it does not cover SKGF's assistance to ParkerVision in connection with this action or any action against Qualcomm for that matter.  (*See* Dkt. 64.)  Thus, even if the Court could consider SKGF's affirmative defense of consent in connection with SKGF's motion,[7] it could not resolve on a motion to dismiss the disputed questions of fact relating to the scope of the alleged waiver.[8]

**B.     Qualcomm's Allegation That It Paid Fees to SKGF While SKGF Was Simultaneously Assisting ParkerVision in This Lawsuit Is Sufficient To State a Claim for Breach of Fiduciary Duty.**

To state a claim for breach of fiduciary duty, Qualcomm need not show damages but only that SKGF received Qualcomm's payments for legal fees during the period of improper concurrent representation.  In its Counterclaim, Qualcomm alleges explicitly that Qualcomm

---

[6] SKGF contends on the one hand that Qualcomm's allegations concerning the scope of the waiver in the engagement letters is "conclusory" and need not be considered on a motion to dismiss, and on the other hand that because the letters are so "integral" to Qualcomm's claim,  SKGF's affirmative defense of waiver can be considered on this motion to dismiss.  (*See* Dkt. 99 at 6, n.3.)  SKGF cannot have it both ways and, in any event, is plainly incorrect.  Qualcomm need not plead the absence of waiver to state a claim for breach of fiduciary duty, and the parties' dispute concerning the scope of the waiver clause is clearly not amenable to resolution on a motion to dismiss.

[7] SKGF's reliance on *Haddad v. Dudek*, 784 F. Supp. 2d 1308, 1324-25 (M.D. Fla. 2011) is misplaced. That case merely holds that court may consider on a motion to dismiss certain affirmative defenses, such as collateral estoppel, "that can be judged on the face of the complaint." *Id.* at 1324.  It does not require Qualcomm to plead facts contradicting affirmative defenses that SKGF has yet to assert in a pleading. Further, *Haddad* has no application in this case because SKGF's affirmative defense of consent cannot be judged on the face of the complaint.  *See id.*

[8] Qualcomm's allegation that Robert Sterne, the managing Partner of SKGF and a member of the ParkerVision board, "participated in and failed to recuse himself from ParkerVision board *discussions* concerning the initiation of the present litigation" (Dkt. 91 ¶ 173), is not defeated or made implausible by Sterne's limited denial that he "participate[d] in *the decision* of ParkerVision's board to initiate [the lawsuit]." (Dkt. 59-17 ¶5.)  It is entirely reasonable to assume Sterne's partial denial is, consistent with SKGF's many limited denials in this case, carefully crafted to avoid a harmful admission that he engaged in precisely the impermissible conduct alleged in Qualcomm's pleading.  Qualcomm has alleged that Sterne's refusal to recuse himself was a proximate cause of Qualcomm's injury (*See* Dkt. 91 ¶ 173-76), and is entitled to probe Sterne's denial, which merely creates a disputed issue of fact, through discovery.

paid SKGF substantial fees from legal work that SKGF performed at the same time it was

assisting ParkerVision against Qualcomm.  (Dkt. 91 ¶¶ 169.)  Qualcomm has also pleaded that it

has been injured as a proximate result of SKGF's improper representation of ParkerVision

because it paid fees to SKGF during the period when SKGF was assisting ParkerVision and

seeks disgorgement of the fees paid to SKGF during this period.[9]  (*Id.* ¶¶ 176.)

   Courts in Florida and elsewhere have long recognized that a client is entitled to

the return of fees paid to an attorney who has breached his or her fiduciary duties through a

conflict of interest.[10]  Thus, when a party claiming breach of fiduciary duty has pleaded

payment of fees to the breaching attorney, there is no requirement to plead further injury.[11]

Accordingly, because Qualcomm has pleaded payment of fees to SKGF for services rendered

while SKGF was simultaneously working both for and against Qualcomm, Qualcomm has

properly pleaded a claim for breach of fiduciary duty against SKGF.

---

[9] Despite Qualcomm's many allegations that its injuries were "proximately" caused by SKGF's misconduct (Dkt. 91 ¶¶ 174-75, 190-92), SKGF contends that Qualcomm has not alleged "but-for" causation.  (*See* Dkt. 99 at 15.)  This disregards the fundamental principle of tort that "proximate cause" is shorthand for the concept that "[i]njuries have countless causes, and not all should give rise to legal liability."  *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2637 (2011).  In other words "proximate" causation refers to the subset of "but-for" causation that may give rise to legal liability.  *Id.*

[10] *See White v. Roundtree Transport, Inc.*, 386 So. 2d 1287,1289 (Fla. Dist. Ct. App. 1980) (attorney who simultaneously represented two clients with conflicting interest was not entitled to receive fee for representation of second client); *Hamilton v. Whip*, Nos. 02-24-CA, 02-25-CA, 2004 WL 6004471, at *1 (Fla. 4th Cir. Ct. Oct. 22, 2004) ("an attorney's right to a fee terminates when he realizes or should realize that he can not ethically represent his client's interests"); *see also Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1285 (1992) ("Courts throughout the country have ordered the disgorgement of fees paid or the forfeiture of fees owed to attorneys who have breached their fiduciary duties to their clients by engaging in impermissible conflicts of interest.").

[11] *See Hendry v. Pelland*, 73 F.3d 397, 402 (D.C. Cir. 1996) (finding that to the extent a client is entitled to disgorgement of fees, it need only prove that the attorney breached his duty of loyalty, not that the breach proximately caused an injury); Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 1.5:108 (2d ed. Supp. 1998) ("Generally speaking, where the claim rests on the disloyalty of the lawyer, and the remedy sought is forfeiture or disgorgement of fees already paid, rather than compensatory damages for poor service, the breach of the duty of loyalty is the harm, and *the client is not required to prove causation or specific injury.*"(emphasis added)).

SKGF contends that it is improper to seek disgorgement as a remedy for breach of fiduciary duty because claims seeking compensatory damages and those seeking equitable relief "require different elements of proof." (Dkt. 99 at 20-21.) The authority SKGF cites not only fails to support this argument, but also it stands for the opposite proposition: regardless of the type of relief sought, the elements of a claim for breach of fiduciary duty are the same. *See Bode & Grenier, L.L.P. v. Knight*, No. 08-cv-01323, 2011 WL 5114829, at *6 (D.D.C. Sept. 20, 2011). The type of relief sought makes a difference only to the extent that, where a plaintiff seeks disgorgement of fees, the element of causation is presumed.[12] *Id.* Thus, Qualcomm's Counterclaim does not, as SKGF contends, "improperly commingle" claims requiring different elements of proof. (*See* Dkt. 99 at 20.)

### C.   Qualcomm's Allegation That It Has Lost the Value of the Work SKGF Incompletely Performed Provides a Sufficient Causal Nexus to State a Claim for Breach of Fiduciary Duty.

Qualcomm alleges that it has been further injured as a proximate result of SKGF's breach of its fiduciary duty of loyalty because it has lost the value of the opinion work that SKGF has performed on the two matters that were still ongoing at the time of SKGF's withdrawal, and that it will need to retain replacement counsel to complete, or possibly restart, that work.[13] (Dkt. 91 ¶ 175.) SKGF's withdrawal was directly related to its breach of fiduciary duty because, but for that breach and SKGF's ensuing refusal to acknowledge and make

---

[12] SKGF's cited case, *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller*, 629 So. 2d 947 (Fla. Dist. Ct. App. 1993) is inapposite because it merely stands for the proposition that complete forfeiture of attorneys' fees is inappropriate where it would result in an enormous windfall to the client. *Id.* at 955.

[13] SKGF contends that Qualcomm has not alleged facts sufficient to show that SKGF's withdrawal necessarily destroyed the value of the opinion work that it had performed. (Dkt. 99 at 18-19.) This is simply incorrect. Qualcomm alleges that it retains opinion counsel with the expectation that it will not only render a written opinion, but also be available to defend that opinion in court. (Dkt. 91 ¶ 131.) Because SKGF's withdrawal has rendered it unavailable to defend in litigation any work that it has already performed, Qualcomm has clearly alleged that it has been harmed by SKGF's withdrawal.

amends for it, Qualcomm would never have been forced to bring suit against SKGF, thereby affording SKGF a pretext for its withdrawal.

SKGF contends that Qualcomm's injury was not proximately caused by SKGF's breach of fiduciary duty because the firm would have been *required* to withdraw after Qualcomm filed its Answer alleging that SKGF attorneys had committed inequitable conduct. (Dkt. 99 at 17-18.)  However, the Rules of Professional Conduct *require* a lawyer to withdraw from an ongoing representation only in narrowly-defined circumstances, *see* R. Reg. Fla. Bar 4-.1.16(a), none of which even SKGF claims was triggered by Qualcomm's allegations of inequitable conduct.  SKGF's withdrawal would have been *permissible* only if it could have been accomplished without "material adverse effect" on Qualcomm's interests.  R. Reg. Fla. Bar 4-.1.16(b).  Because SKGF's withdrawal did inflict material injury on Qualcomm—the lost value of SKGF's unfinished opinion work—SKGF should be held to account for the harm that it caused.

### D.     Qualcomm's Allegation That It Has Incurred Legal Fees to Defend Against a Lawsuit Brought With the Assistance of SKGF Is Sufficient to Allege a Claim for Breach of Fiduciary Duty.

Qualcomm alleges that it has been injured as a proximate result of SKGF's breach of its fiduciary duty by incurring legal fees to defend against a lawsuit brought with the assistance of Qualcomm's own lawyers, in violation of their duty of loyalty to Qualcomm.  (Dkt. 91 ¶ 174.)  Qualcomm further alleges that SKGF attorneys, while prosecuting patents for Qualcomm, gained access to significant amounts of highly confidential information about the Qualcomm technology at issue *in this litigation*.  (Dkt. 91 ¶ 135.)  Through its access to Qualcomm information as well as its deep knowledge of the patents-in-suit (which it prosecuted), SKGF could assist ParkerVision in preparing this lawsuit to a degree that no other law firm could.  Accordingly, it is certainly "plausible" that ParkerVision could not have brought this lawsuit, and Qualcomm would not have been forced to incur fees defending it,

without the assistance provided by SKGF.  *See Twombly*, 550 U.S. at 556.  Qualcomm's

allegations of damages are, therefore, sufficient to state a claim of breach of fiduciary duty.  *Id.*

SKGF's assertion that other law firms representing ParkerVision determined that

ParkerVision had a good faith basis for bringing its claims, thereby purportedly showing that

the lawsuit could have been brought without SKGF's assistance (Dkt. 99 at 15-16), does not

compel a different result.  The fact remains that ParkerVision's current counsel did not enter an

appearance in this litigation until well after this lawsuit was filed.  Moreover, it is not

Qualcomm's burden to plead with precision how damages would have been different had

SKGF not breached its fiduciary duty in assisting ParkerVision.  *See Amato v. KPMG LLP*, 433 F.

Supp. 2d 460, 471 (M.D. Pa. 2006) ("Plaintiffs need not specifically plead how the alleged

damages at issue would have been avoided had [law firm not breached its fiduciary duty]"),

*vacated in part on other grounds*, No. 06-cv-39, 2006 WL 2376245 (M.D. Pa. Aug. 14, 2006)).  It is

enough to survive a motion to dismiss for Qualcomm to allege that it would not have incurred

fees to defend the lawsuit had SKGF not assisted ParkerVision.[14]

## II.    Qualcomm Has Properly Pleaded a Claim for Breach of Contract.

Qualcomm's breach of contract claim is based upon certain promises SKGF made

in a January 12, 1999 letter agreement.  SKGF stated in the agreement that "if this negotiation

were unsuccessful and hypothetically resulted in some dispute between the parties, [SKGF]

would not represent either party in connection with such a dispute."  (Dkt. 91 ¶ 142.)  In the

same letter agreement, SKGF committed, "as a condition for this waiver of any potential

conflict, that no one at [SKGF] would in any future matter take an adversarial position (*e.g.,*

---

[14] SKGF moves in the alternative, with no unique support, to strike Qualcomm's allegations of
damages due to SKGF's breach of fiduciary duty.  (Dkt. 99 at 23-24.)  Because, as set forth in sections I.A –
I.D herein, Qualcomm has stated a claim for breach of fiduciary duty against SKGF, this motion in the
alternative should be denied.

participate in litigation against either QUALCOMM or ParkerVision on any matters), at least as long as we continue to represent such company, even in unrelated matters." (*Id.* at 143.) SKGF's assistance to ParkerVision in its litigation against Qualcomm clearly violates this agreement. The very outcome SKGF promised would not happen—its participation in litigation against Qualcomm while it was Qualcomm's counsel—is the outcome that has occurred.

To support its attack on Qualcomm's breach of contract claim, SKGF relies principally upon the same argument it made with regard to Qualcomm's breach of fiduciary duty claim: that Qualcomm has not alleged causation and resulting damages.[15] (Dkt. 99 at 21-23.) But Qualcomm has properly pleaded a claim for breach of contract for the same reasons it has properly pleaded a claim for breach of fiduciary duty. Indeed, the causal nexus between SKGF's breach of contract and the damages claimed is particularly tight: SKGF broke its promise that it would not participate in litigation against Qualcomm. A proximate result of that breach is that Qualcomm must bear the cost of defending itself. The lost value of SKGF's opinion work is also a foreseeable consequence of SKGF's breach and, therefore, a harm proximately caused by its breach. *See Fla. E. Coast Ry. Co. v. Beaver St. Fisheries, Inc.*, 537 So. 2d 1065, 1068 (Fla. Dist. Ct. App. 1989). Also, contrary to SKGF's contention, it is appropriate for Qualcomm to seek a remedy that includes "a sum of money to prevent unjust enrichment"—*i.e.*, the fees it has paid to SKGF. *See* Restatement (Second) of Contracts § 345(d). These allegations are sufficient to state a claim for breach of contract.[16]

---

[15] SKGF also contends that Qualcomm's complaint fails to make sufficient factual allegations to support its claim for breach of contract, on the theory that Qualcomm has drawn unwarranted inferences about whether SKGF has represented ParkerVision in connection with this action. (Dkt. 99 at 22.) As shown in section I.A., *supra*, Qualcomm's allegation is plausible on its face and, accordingly, is sufficient to withstand a motion to dismiss. *See Twombly*, 550 U.S. at 556.

[16] SKGF moves in the alternative, with no unique support, to strike Qualcomm's allegations of damages due to SKGF's breach of contract. (Dkt. 99 at 23-24.) Because, as set forth in section II herein, Qualcomm has stated a claim for breach of contract against SKGF, this motion should be denied.

III.     **SKGF's Alternative Request For An Abatement or Stay Should be Denied.**

SKGF's alternative request for an abatement or stay of the claims against it is predicated on SKGF's argument that Qualcomm will lack redressable damages on its claims of breach of fiduciary duty and breach of contract until the action brought by ParkerVision is resolved.  (Dkt. 99 at 24-25.)  But the propriety of awarding the damages Qualcomm seeks is not dependent on the resolution of ParkerVision's lawsuit or upon its underlying merit.  The basis for Qualcomm's claims is not that the lawsuit lacks merit (as it does), but rather that SKGF had duties under contract and tort law not to participate in its institution and prosecution.  As such, SKGF has acted wrongly even if ParkerVision's claims ultimately prove successful.

In this way, this claim differs from a more typical legal malpractice claim, in which there may be a lack of causally related damages if the conduct allegedly giving rise to the malpractice does not, in fact, result in a future adverse outcome for the affected client.  That is the situation described in the cases SKGF cites.[17]  This case is different.  Here, the wrongful conduct caused injury to Qualcomm as soon as it was perpetrated, and the injury it has caused will persist regardless of how this patent infringement lawsuit is ultimately resolved.

### Conclusion

For the foregoing reasons, Qualcomm respectfully requests that this Court deny SKGF's motion.

---

[17] *See Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061, 1065 (Fla. 2001) (malpractice claim against insurance agent for negligent failure to procure insurance accrued only after client's action against the insurer was resolved); *Hold v. Manzini*, 736 So. 2d 138, 142 (Fla. Dist. Ct. App. 1999) (legal malpractice claim based upon negligent legal advice did not accrue until underlying suit was resolved); *Bierman v. Miller*, 639 So. 2d 627, 628 (Fla. Dist. Ct. App. 1994) (legal malpractice cause based upon negligent drafting of severance agreement was premature while suit disputing the validity of the agreement was pending).

April 23, 2012

CRAVATH, SWAINE & MOORE LLP

By:     s/ Keith R. Hummel

Keith R. Hummel (admitted pro hac vice) (Trial Counsel)
khummel@cravath.com
David Greenwald (admitted pro hac vice)
dgreenwald@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

-and-

BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.

John A. DeVault, III
Florida Bar No. 103979
jad@bedellfirm.com
Courtney K. Grimm
Florida Bar No. 953740
cgrimm@bedellfirm.com
The Bedell Building
101 East Adams Street
Jacksonville, Florida 32202
Telephone:  (904) 353-0211
Facsimile:  (904) 353-9307

-and-

CADWALADER, WICKERSHAM & TAFT LLP

Christopher A. Hughes (admitted pro hac vice)
christopher.hughes@cwt.com
1 World Financial Center
New York, New York 10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666

-and-

21

GOODWIN PROCTER, LLP
    Steven A. Moore (admitted pro hac vice)
    samoore@goodwinprocter.com
    Richard W. Thill (admitted pro hac vice)
    rthill@goodwinprocter.com
    4365 Executive Drive, Suite 3000
    San Diego, CA 92121
    Telephone:  (858) 202-2700
    Facsimile:  (858) 457-1255

*Counsel for Defendant, Counterclaim Plaintiff Qualcomm Incorporated*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 23rd day of April, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

<u>s/ Keith R. Hummel</u>
Keith R. Hummel (admitted pro hac vice)
khummel@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
*Counsel for Defendant, Counterclaim Plaintiff*
*Qualcomm Incorporated*