THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PARKERVISION, INC.,

               *Plaintiff,*

      v.

QUALCOMM INCORPORATED,

               *Defendant.*

QUALCOMM INCORPORATED,

               *Counterclaim Plaintiff,*

      v.

PARKERVISION, INC., and
STERNE, KESSLER, GOLDSTEIN & FOX PLLC,

               *Counterclaim Defendants.*

Case No.  3:11-cv-719-J-37-TEM

## QUALCOMM'S MEMORANDUM OF LAW IN OPPOSITION TO PARKERVISION'S MOTION TO DISMISS AND STRIKE QUALCOMM'S ANSWER TO PARKERVISION'S FIRST AMENDED COMPLAINT

Qualcomm respectfully submits this memorandum of law in opposition to ParkerVision's Motion to Dismiss and Strike Qualcomm's Answer to ParkerVision's First Amended Complaint (Dkt. 100).

## Preliminary Statement

ParkerVision begins its brief by complaining that Qualcomm has overreacted to what ParkerVision claims is a "straightforward" patent case by filing "frivolous" counterclaims. It then attempts to minimize the impact of those counterclaims by contending that Qualcomm filed them in a "desperate" attempt to avoid what ParkerVision asserts is its "exceptional" case against Qualcomm. These attacks on Qualcomm's counterclaims and affirmative defenses are meant to deflect attention away from serious misconduct by ParkerVision and its counsel and co-defendant, Sterne Kessler ("SKGF"), misconduct that does make this case "exceptional." As Qualcomm has learned, with only limited discovery to date, and as the Court will eventually learn, little is "straightforward" about this case.

First, ParkerVision's history is not at all "straightforward." Perhaps in an effort to support later requests for injunctive relief or lost profits, ParkerVision claims to be a technology innovator and alleges, in the First Amended Complaint, that the patents-in-suit enable it "to differentiate its technology from that of its competitors." (Dkt. 88 ¶ 2.) But, while ParkerVision has raised nearly $200 million from investors over the past two decades with repeated promises of technological development and commercial success, there is no tangible evidence of any commercial success. ParkerVision has never credibly competed for sales of any products embodying its alleged technology. Knowledgeable scientists and investors have devoted significant effort to demonstrating that ParkerVision's claims of profound innovation and commercial success are simply false.

Second, SKGF's relationship with ParkerVision is not at all "straightforward." The firm did not merely represent ParkerVision in its patent prosecution efforts.  SKGF attorneys were heavily invested in ParkerVision stock.  Robert Sterne at one point had accumulated over 200,000 ParkerVision stock options.  At least ten SKGF lawyers were granted many thousands of options in the company's stock.  SKGF was not simply paid to perform legal services; rather, individual lawyers had (and may still have) a direct financial interest in the value of the stock, which, given the company's utter lack of commercial success, is tied principally to the patents at issue and the outcome of this case.  The attorneys at SKGF, therefore, had a powerful motivation not only to assist ParkerVision in fraudulently obtaining the patents-in-suit from the PTO, but also to breach their fiduciary and contractual duties to Qualcomm by helping ParkerVision bring its suit against Qualcomm.  And, to the extent they still hold significant equity in ParkerVision, SKGF attorneys possess a unique self-interest in the outcome of this case.

Third, ParkerVision's dealings with the PTO were not at all "straightforward." ParkerVision and SKGF did not innocently withhold references or perform sloppy prosecution. As described in more detail below, ParkerVision's conduct is inequitable because ParkerVision and SKGF buried the patent examiner in prior art references and then materially mischaracterized the most relevant references in an effort to get the PTO Examiner to pay no attention to those critical references.  In doing so, ParkerVision and SKGF breached another duty—the most basic duty of an applicant to be candid with the PTO.  ParkerVision also violated its duty of candor when it availed itself of the "petition to make special" process to expedite its applications before the PTO and, in so doing, abused that process.  Further, the presentation of information within the patents is designed to obscure the fact that the claimed inventions are simply old technology dressed up in different language and, therefore, not

patentable.  Qualcomm is not the first to point out these shortcomings.  During the examination of the international application corresponding to one of the patents-in-suit, the examiner articulated these same concerns, stating:  "[t]he extreme length of [the] description, the large number of drawings, their poor presentation, the numerous unnecessary repetitions all obscure the main concepts [and attempt] to extend the meaning of the terms in the claims beyond their normal meaning in the art" and that the application "fails to cite any relevant prior art and *misleads* the reader as to the relevance of the preexisting state of the art" (emphasis added).  Through its misleading disclosure, mischaracterization of the prior art, burying of relevant references, and abuse of the petition to make special process, ParkerVision misled the PTO into issuing patents it should never have received.  "Straightforward" is not a description that suits ParkerVision or the history that Qualcomm's counterclaims will expose.

As demonstrated below, each count of Qualcomm's counterclaim complies with the applicable pleading standard and easily survives ParkerVision's motion to dismiss, which should be denied.  And because Qualcomm's inequitable conduct claim is adequately pleaded, ParkerVision's motion to strike should also be denied.

## Legal Standard

When considering a motion to dismiss pursuant to Rule 12(b)(6) a court must accept as true all factual allegations giving rise to the claim and construe them in a light most favorable to the claimant.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Bumpus v. Watts*, No. 10-14196, 2011 U.S. App. LEXIS 19659, at *1-2 n.1 (11th Cir. Sept. 26, 2011).  To survive a motion to dismiss, a pleading need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3

*Id.* The threshold of sufficiency that a complaint must meet is "exceedingly low." *Collins v. Countrywide Home Loans, Inc.,* 680 F. Supp. 2d 1287, 1292 (M.D. Fla. 2010).

A court is authorized to strike an affirmative defense only if the statement of the defense is insufficient to give "fair notice" of the issue involved. *Tyco Fire Prods. LP v. Victaulic Co.,* 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011); Fed. R. Civ. P. 8. A motion to strike seeks "a drastic remedy to be resorted to only when required for the purposes of justice, and only when the allegations to be stricken have no possible relation to the controversy." *Graphic Packaging International, Inc. v. C.W. Zumbiel Co.,* No. 3:10-cv-891-JBT, 2011 U.S. Dist. Lexis 121070 (M.D. Fla. Sept. 12, 2011).

## Argument

## I.   Qualcomm States a Claim of Inequitable Conduct.

### A.   Qualcomm's Inequitable Conduct Claim Satisfies the *Therasense* Standards.

ParkerVision does not dispute that each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the PTO. *See* 37 C.F.R. § 1.56. This duty applies at all times during the pendency of a patent application and applies to all filings made to the PTO. *See Fox Indus. v. Structural Pres. Sys.,* 922 F.2d 801, 803 (Fed. Cir. 1990). An applicant's breach of its duty of candor and good faith constitutes inequitable conduct. *Id.*

Qualcomm properly alleges that two individuals associated with the prosecution of the '551 Patent—David F. Sorrells, a named inventor, and Michael Q. Lee, a SKGF lawyer who prosecuted the patent—made materially false statements to the PTO concerning the scope and teaching of four references submitted in connection with a request for accelerated examination called a "petition to make special" (the "Petition") (*See* Dkt. 91 ¶¶ 9-11, 30-63.) These misrepresentations were made in clear violation of these individuals' duty of candor and

good faith.  Qualcomm also alleges that the Applicants misrepresented the significance of

another reference from the PTO, which they knew to be highly material, first by failing to

update the Petition to inform the Examiner of the importance of this reference, and then by

hiding the reference by disclosing it to the PTO along with scores of irrelevant references.  (*See*

*id.* ¶ 11, 19-29.)

       Contrary to ParkerVision's suggestion, the recent Federal Circuit decision in

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011), does *not* prohibit these

types of inequitable conduct claims.  In *Therasense*, the Federal Circuit made clear that

affirmative acts of misrepresentation to the PTO continue to be actionable:  "When the patentee

has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably

false affidavit, the misconduct is material" and thus actionable because "a patentee is unlikely

to go to great lengths to deceive the PTO with a falsehood unless it believes that the falsehood

will affect issuance of the patent."  *Id.* at 1292.

       Here, Qualcomm alleges that ParkerVision and SKGF engaged in the very type

of affirmative acts of misrepresentation that the Federal Circuit condemned in *Therasense*.  As

Qualcomm alleges, ParkerVision and SKGF buried the PTO with hundreds of references, many

of which were utterly irrelevant (Dkt. 91 ¶¶ 12, 16-16); asked the PTO to expedite its review of

the patents-in-suit through the Petition (*id.* ¶¶ 9-10, 30); told the PTO in the Petition that 21 of

the hundreds of references it submitted were most relevant to the patentability of the patents at

issue (*id.* ¶¶ 30, 32); and then misrepresented what four of these references actually said to

divert the Examiner's attention from them.  (*Id.* ¶¶ 9-11, 33-63.)  To compound their misconduct,

ParkerVision and SKGF withheld from Examiner the until later in the prosecution the highly

material Parssinen reference.  (*Id.* ¶ 25.)  When they finally did disclose Parssinen to the PTO,

they failed to tell the Examiner, as they were required to, that this reference was *more* relevant

than the references that had been identified in the Petition.  ParkerVision and SKGF therefore *affirmatively misrepresented* the significance of the Parssinen reference to the PTO.  (*Id.* ¶ 26.)

ParkerVision's and SKGF's pattern of misrepresentation and concealment was eventually noticed by the PTO during the prosecution of U.S. Patent No. 6,687,493 (the "'493 Patent"), which issued from an application that was a continuation-in-part of the application for the '551 Patent at issue here.  (*See id.* ¶ 28.)  When ParkerVision and SKGF attempted to bury the Examiner for that application with over 700 largely irrelevant references, and hide the highly material Parssinen reference among them, the Examiner admonished them for "fail[ing] to state that any submitted reference/document is materially relevant to the claims."  (*Id.*)  The Examiner refused to inspect more than "four or five of the references" after determining that "nothing at all materially relevant to the claims of the instant application" was contained in those four or five and, therefore, "the entire set of references need not be individually inspected for relevancy."  (*Id.*)  Despite the Examiner's admonition, ParkerVision and SKGF failed to direct the Examiner's attention to the relevant references in the IDS submission, including Parssinen.  (*Id.*)  In other words, the strategy worked—they succeeded in misleading the PTO.

Qualcomm's detailed allegations of concealment and misrepresentation are more than sufficient to state a claim for inequitable conduct under the *Therasense* standard.[1]

---

[1] ParkerVision's asserts that Qualcomm has failed to meet *Exergen*'s "who, what, when, where, and how" requirement (Dkt. 100 at 10 n.6 (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1324-31 (Fed. Cir. 2009)), but the Counterclaim includes a detailed description of the misconduct before the PTO, naming the individuals responsible for the misconduct, identifying specific misrepresentations and omissions and describing their materiality.  (*See* Dkt. 91 ¶¶ 9, 30-63.)  These allegations are sufficient to state a claim of inequitable conduct.

B.      Material Misrepresentations of Prior Art Constitute Inequitable Conduct.

ParkerVision attempts to excuse its material misrepresentation of four references identified in the Petition by claiming those statements were merely non-actionable "attorney argument" about disclosed prior art.  (Dkt. 100 at 8.)  However, "if a person of skill in the art would understand a disclosed piece of prior art to teach a certain fact relevant to the prosecution of the patent in suit, and an applicant's statement distorts or otherwise misrepresents that fact, that statement can serve as the basis for inequitable conduct charges." *McKechnie Vehicle Components USA, Inc. v. Lacks Indus., Inc.*, No. 09-cv-11594, 2010 U.S. Dist. LEXIS 119073, at *20-21 (E.D. Mich. Nov. 9, 2010) (denying motion to dismiss claim of inequitable conduct premised on an applicant's mischaracterization of prior art that was before the PTO).

This rule does not, as ParkerVision contends, convert "every characterization of prior art" made to the PTO into a possible basis for inequitable conduct.  (*See* Dkt. 100 at 11-12.) It requires only that patent applicants satisfy their duty of candor before the PTO by honestly characterizing prior art submitted in connection with a patent application.  *McKechnie*, 2010 U.S. Dist. LEXIS 119073, at *20-21.  By contrast, under the rule advocated by ParkerVision, a patent applicant would have license intentionally to mischaracterize the substance of any reference submitted to the PTO.

While the boundary between legal argument and factual misrepresentation can be difficult to ascertain in some cases, the Federal Circuit's recent decision in *Ring Plus, Inc. v. Cingular Wireless Corp.* makes clear that ParkerVision's and SKGF's misrepresentations of the art identified in the Petition are actionable.  614 F.3d 1354 (Fed. Cir. 2010).  During prosecution of the patent asserted in *Ring Plus*, the applicants represented to the examiner that a certain prior art reference did not disclose "software" to implement the claimed telephone system.  *See* 614

F.3d at 1360.  While the Federal Circuit noted that the reference did not "explicitly" disclose the software element, it affirmed the trial court's determination that the applicant had materially misrepresented the reference because the reference "describe[d] components that are generally understood by persons of skill in the art to be associated with computers and software."  *Id.*  In particular, the Federal Circuit held that, because "a person of skill in the art would have understood the reference to disclose software-based algorithms," representations to the contrary were material misrepresentations of fact.  *Id.*  In so holding, the court rejected the argument that such statements were innocuous "attorney argument," finding the false statements "outside the bounds of permissible attorney argument."  *Id.* at 1361.

As Qualcomm's counterclaim sets forth in detail, ParkerVision's mischaracterizations are precisely the type of statements found actionable in *Ring Plus.*  That they concern highly technical subject matter should not mislead the Court into concluding that they constitute mere "attorney argument."  (*See* Dkt. 91 ¶¶ 30-63.)  In particular, Qualcomm alleges that Sorrells and Lee misrepresented the contents of four references (the "Subharmonic Sampling Exemplars") by stating that each reference failed to disclose the following combination of elements of a claim then under consideration by the Examiner ("Pending Claim 8"):

> the combination of receiving a modulated carrier signal and transferring non-negligible amounts of energy from the modulated carrier signal, at a rate that is substantially equal to a sub-harmonic of the modulated carrier signal, whereby the transferred non-negligible amounts of energy forms the demodulated baseband signal.

(*See id.* ¶¶ 34, 40, 45, 51.)  Qualcomm alleges that this statement was demonstrably false, and outside the bounds of permissible attorney argument, because a person of ordinary skill in the art would have understood each of the Subharmonic Sampling Exemplars to disclose each of the claimed elements of Pending Claim 8, which later issued in amended form as Claim 1 of the

'551 Patent.  (*Id.* ¶¶ 57-62.)  This misrepresentation was material because it relates to patentability of the claims of the '551 Patent, including Claim 1.  (*Id.* ¶ 63.)  Indeed, the counterclaim alleges that, but for the Applicants' materially false characterizations of the Subharmonic Sampling Exemplars, Claim 1 of the '551 Patent would not have issued.  (*Id.* ¶ 71.)  Qualcomm's allegations about the misrepresentations made during prosecution of the '551 Patent are, therefore, sufficient to state a claim of inequitable conduct.

ParkerVision's reliance on *Rothman v. Target Corp.* 556 F.3d 1310, 1328-29 (Fed. Cir. 2009), is misplaced.  In *Rothman*, the applicants argued during prosecution that in determining whether a claimed nursing garment was obvious it was improper to combine prior art from the general field of garment design with art from the specialized field of nursing garments.  *Id.* at 1328.  The Federal Circuit held that this purely legal argument over whether certain references may be combined as part of an obviousness analysis "d[id] not even approach an effort to deceive the PTO or abuse the prosecution process."  *Id.* at 1329.  Indeed, the challenged statement did not contain any *factual* assertions about the contents of the prior art; it was merely a legal argument about the scope of prior art available for an obviousness analysis.  Here, by contrast, ParkerVision expressly mischaracterized the disclosure of the cited references.

The other cases cited by ParkerVision are similarly inapposite.  Unlike ParkerVision's factually misleading characterization of the disclosures of the Subharmonic Sampling Exemplars, the statements at issue in those cases were either purely legal arguments about the proper application of a legal standard, *see Innogenics, N.V. v. Abbott Labs*, 512 F.3d 1363, 1378-79 (Fed. Cir. 2008) (holding that a patent attorney's general assessment of relevance—that the identified prior art "d[id] not relate to the invention"—was merely a legal argument that did not contain any factual assertions); *Life Technologies v. Clontech Laboratories*,

9

224 F.3d 1320, 1325-26 (Fed. Cir. 2000) (finding the challenged statements to be legal argument concerning the level of skill in the art that "did not contain any factual assertions that could give rise to a finding of misrepresentation"), or were factual allegations that were not demonstrably false and, therefore, were not mischaracterizations, *see Young v. Lumenis*, *Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007) (holding that alleged misrepresentations were not "demonstrably false" and therefore did not constitute affirmative misrepresentations of material fact).

     C.     <u>Qualcomm's Allegations Concerning the Misrepresentation of the Significance of the Parssinen Reference State a Claim for Inequitable Conduct.</u>

While Qualcomm's allegations concerning the Applicants' material misstatements to the PTO are, by themselves, sufficient to state a claim for inequitable conduct, the additional allegation that the Applicants misrepresented the significance of the highly material Parssinen reference provides further support for that claim.  (*See* Dkt. 91 ¶¶ 19-29.)

An applicant receives a significant benefit in taking advantage of the petition to make special process—*i.e.*, accelerated prosecution of the patent application.  To protect the integrity of this accelerated process, certain rules govern an applicant's filing of such a petition. ParkerVision violated those rules.  Specifically, an applicant who submits a petition to make special to obtain accelerated prosecution is required to perform a pre-examination search for prior art and submit to the PTO copies of each reference deemed most closely related to the claimed subject matter along with a "a detailed discussion" of how the claims are patentable over each reference.  *See* MPEP § 708.02[VIII] (7th Ed., July 1998); *see also* MPEP § 708.02[VIII] (8th Ed., July 2010).  When, after filing a petition to make special, an applicant discovers additional prior art that is closer to the claimed subject matter of the application than the references provided in the petition to make special, the duty of candor and good faith requires that the applicant supplement the petition to account for the newly discovered art.  *See* 37 C.F.R.

§ 1.56; Accelerated Examination FAQs, http://www.uspto.gov/patents/process/file/accelerated/ae_faq_091207.pdf (last visited Apr. 26, 2012).

Qualcomm alleges that the Applicants, having learned of Parssinen and its materiality to the pending application for the '551 Patent shortly after filing their Petition, violated their duty of candor by failing to update the Petition to include Parssinen. Instead of supplementing the Petition to include Parssinen, ParkerVision and SKGF buried Parssinen in a later disclosure to the PTO along with scores of irrelevant references. (Dkt. 91 ¶¶ 25-29.) And instead of properly characterizing Parssinen as a highly material piece of prior art as they were required to do by the PTO rules, ParkerVision simply listed it in the subsequent disclosure. ParkerVision and SKGF therefore mischaracterized the significance of the Parssinen reference to the PTO. This case is thus very different from *Young v. Lumenis*, 492 F.3d at 1348, on which ParkerVision relies for the proposition that a late disclosure cures an earlier failure to disclose because the examiner has the opportunity to review the belatedly disclosed material before the patent issues. (*See* Dkt. 100 at 5-6.) Although it may have been theoretically possible for the examiner to review Parsinnen when it was disclosed, the manner in which Parssinen was disclosed, in violation of the PTO rules, was an intentional misrepresentation of Parssinen's significance. Because the Applicants learned of the highly material, non-cumulative Parssinen reference shortly after they filed their Petition, and long before the PTO acted on the Petition, their duty of candor required them to update the Petition to include the newly discovered reference. By instead including Parssinen only in a later-filed IDS, the Applicants effectively misrepresented to the PTO that it was *less* material than the references that had been submitted with the earlier Petition. (*See* Dkt. 91 ¶ 26.)

Even if the Applicants were not compelled by their duty of candor to update the Petition to discuss Parssinen, the fact that they intentionally buried it among scores of irrelevant

11

references also supports a claim of inequitable conduct.  *See, e.g., Golden Valley Microwave Foods Inc. v. Weaver Popcorn Co. Inc.*, 837 F. Supp. 1444, 1447 (N.D. Ind. 1992), *aff'd.*, 11 F.3d 1072 (Fed Cir. 1993) ("it is . . . a violation of the duty of candor" for an applicant to disclose a highly material prior art reference in such a way as to "bury" it among less relevant prior art); *Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., LLC*, No. 06-4693, 2007 U.S. Dist. LEXIS 37665, at *20-21 (N.D. Cal. May 10, 2007) (noting that allegations of "burying" may be sufficient to support a claim of inequitable conduct); *Penn Yan Boats, Inc. v. Sea Lark Boats, Inc.*, 359 F. Supp. 948, 965 (S.D. Fla. 1972) ("the purpose of this misrepresentation was to bury [the reference] in a long list of allegedly old prior art patents in the hope that the examiner . . . would ignore the list and permit the [patent] to issue.").

        Neither *Fiskars, Inc. v. Hunt Mfg., Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000), nor *Therasense* foreclose inequitable conduct claims based on burying.  In *Fiskars*, the patentee was *not* accused of burying a highly material reference among a voluminous amount of irrelevant prior art.  *Id.*  Rather, the defendant in that case argued that the plaintiff was required to direct the examiner's attention to an already submitted reference that the examiner had affirmatively chosen not to consider.  *Id.*  The Federal Circuit rejected this argument, holding that the patentee had no obligation to tell the PTO about the same reference twice.  *Id.; see also Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 749 F. Supp. 2d 892, 903 (W.D. Wis. 2010) (noting that *Fiskars* does not foreclose burying claims).  In *Therasense*, the Federal Circuit merely clarified the materiality standard, holding that, "as a general matter, the materiality required to establish inequitable conduct is but-for materiality."  Under that standard, a prior art reference is "but-for material if the PTO would not have allowed a claim had it been aware of the [buried] prior art." *See Therasense*, 649 F.3d at 1291.  Thus, it is sufficient to state a claim for Qualcomm to allege that the applicants buried Parssinen with the intent to deceive the PTO (Dkt. 91 ¶ 72), and that but

for that act of concealment, one or more claims of the Patents-in-Suit would not have issued (Dkt. 91 ¶ 71).

Finally, even if the allegations of burying the Parssinen reference were insufficient to support Qualcomm's claim for inequitable conduct, they are, at a minimum, probative of the applicants' bad faith in prosecuting the '551 Patent. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995) (noting that "burying a particularly material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith").

D.   Qualcomm's Amended Counterclaims for a Declaration of Unenforceability of the Related Patents Due to Inequitable Conduct Should Not Be Dismissed.

Counts 1 through 6 of Qualcomm's Amended Counterclaim sufficiently allege the unenforceability of all six Patents-in-Suit, including the '551 Patent and each of the Related Patents. Under the doctrine of infectious unenforceability, inequitable conduct occurring early in the prosecution of an application may render unenforceable all claims that eventually issue from the same or a related application. *Agfa Corp. v. Creo Prods.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006). Infectious enforceability applies where the inequitable conduct committed during the prosecution of an earlier patent is "related to the targeted claims of the ultimately-issued patent or patents sought to be enforced." *eSpeed Inc. v. Brokertec USA, LLC*, 417 F. Supp. 2d 580, 595 (D. Del. 2006). Accordingly, the inequitable conduct that occurred during the prosecution of the '551 Patent may—and, as alleged in the Amended Counterclaim, does—render unenforceable each of the Related Patents. *See id.*

ParkerVision does not challenge the sufficiency of the pleadings with respect to Counts 2-6 of the Amended Counterclaim except to argue that those claims fail because the underlying claim of inequitable conduct during prosecution of the '551 Patent is defective. (*See* Dkt. 100 at 4-12.) But, as shown above, Count 1 of the counterclaim states a claim for

13

unenforceability of the '551 Patent, and therefore ParkerVision's motion to dismiss Counts 2-6 should be denied.

## II.       Qualcomm States a Claim for Aiding and Abetting Breach of Fiduciary Duty.

To state a claim for aiding and abetting breach of fiduciary duty, a plaintiff must allege: "(1) a fiduciary duty on the part of the primary wrongdoer, (2) a breach of this fiduciary duty, (3) knowledge of the breach by the alleged aider and abettor and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *Amerifirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991).

ParkerVision does not contest that Qualcomm has sufficiently pleaded that SKGF owed a fiduciary duty of loyalty to Qualcomm; that such duty was breached by SKGF's assisting ParkerVision in this litigation; and that ParkerVision both knew of and provided substantial assistance or encouragement of that breach. (*See* Dkt. 100 at 7-8.) Indeed, it is clear Qualcomm's breach of fiduciary duty claim is based on far more than "speculation," as ParkerVision erroneously claims. (*Id.* at 1.)

Despite numerous opportunities to do so, neither SKGF nor ParkerVision has denied that SKGF, while Qualcomm was its client, helped to bring this action against Qualcomm. That act was a clear-cut breach of SKGF's fiduciary duty to Qualcomm.

Instead, ParkerVision merely contends that Qualcomm's claim for aiding and abetting breach of fiduciary duty is defective because Qualcomm fails to allege an injury to it that was proximately caused by SKGF's breach. (*Id.* at 12.) Specifically, ParkerVision contends that the three harms identified in Qualcomm's counterclaim are not sufficiently connected to the alleged misconduct to satisfy the proximate cause requirement. (*Id.* at 12-13) As set forth, however, in greater detail in Qualcomm's opposition to SKGF's motion to dismiss (Dkt. 104), the sources of causally related harm are several, and all are legally cognizable.

14

For example, Qualcomm alleges that it paid SKGF substantial fees for legal work performed during the period of improper concurrent representation. (*See* Dkt. 91 ¶ 185.) This allegation alone is sufficient to support claims for both SKGF's breach of fiduciary duty and ParkerVision's aiding and abetting thereof because SKGF was not entitled to payment of those fees. *See White v. Roundtree Transp., Inc.*, 386 So. 2d 1287, 1289 (Fla. Dist. Ct. App. 1980) ("[a]n attorney's right to a fee terminates when the attorney realizes or should realize that he cannot ethically represent his client's interests"); *Hendry v. Pelland*, 73 F.3d 397, 401-02 (D.C. Cir. 1996). ParkerVision contends that Qualcomm "cannot plausibly allege that it . . . would not have paid fees to [SKGF] but for [SKGF's] alleged breach of fiduciary duty." (Dkt. 100 at 13.) This argument is fallacious at best. But for SKGF's breach of its fiduciary duties owed to Qualcomm, the legal fees Qualcomm paid during the period of SKGF's conflicting representations would not have constituted a harm to Qualcomm. The harm to Qualcomm in paying such fees is necessarily a proximate result of SKGF's breach.

Qualcomm further alleges that it was injured because it has lost the value of the opinion work that SKGF had performed on the two matters that were still ongoing when ParkerVision filed this lawsuit, and will need to retain replacement counsel to perform that opinion work. (*See* Dkt. 91 ¶ 184.) ParkerVision contends that this injury was not proximately caused by SKGF's breach of fiduciary duty, but was instead precipitated by the filing of Qualcomm's counterclaim against SKGF. In other words, ParkerVision asserts that any harm to Qualcomm occurred as a consequence of its own conduct in seeking redress for SKGF's misconduct, since "SKGF could have continued working for Qualcomm despite [its] breach of fiduciary duty." (Dkt. 100 at 13.) This argument fails, however, because had Qualcomm not sued SKGF, it would nevertheless have been entitled to discharge the law firm for its misconduct and to seek recovery for the lost value of the opinion work.

15

Finally, Qualcomm alleges that it has been harmed by SKGF's breach of fiduciary duty, and ParkerVision's participation therein, because it has been required to defend itself in this litigation. (*See* Dkt. 91 ¶ 183.)  As set forth in Qualcomm's opposition to SKGF's motion to dismiss (Dkt. 104 at 17-18), this allegation is also sufficient to state a claim for breach of fiduciary duty because, due to SKGF's familiarity with the patents-in-suit and access to Qualcomm's confidential information, it is certainly plausible that ParkerVision would not have brought this lawsuit, and Qualcomm would not have been forced to incur fees defending it, without the assistance provided by SKGF.[2]  *See Twombly*, 550 U.S. at 556.  Accordingly, Claim 11 of Qualcomm's Amended Answer and Counterclaims contains sufficient factual allegations to state a claim for ParkerVision's aiding and abetting SKGF's breach of its fiduciary duty.

## III.    Qualcomm States a Claim for Tortious Interference with a Contractual Relationship.

ParkerVision contends that it cannot, as a matter of law, be liable for interfering with SKGF's commitment that "no one at [SKGF] would in any future matter take an adversarial position" against Qualcomm for as long as Qualcomm remained a client.  (*See* Dkt. 100 at 9.)  This argument fails because it is premised on a fundamental misunderstanding of the law.

While it is generally true that a party who breaches a contract cannot be sued for tortious interference with that contract—"for that would make every breach of contract a tort"—this rule does not bar tortious interference claims where the breaching party's rights and obligations with respect to the claimant are *independent* of the interfering party.  *Sufrin v. Hosier*, 128 F.3d 594, 598 (7th Cir. 1997) (Posner, J.); *see also Montgomery & Larmoyeux v. Philip Morris,*

---

[2] It is certainly plausible that ParkerVision's choice of another SKGF client, among all RF chip suppliers, as the first target for enforcing the Patents-in-Suit is more than mere coincidence.

*Inc.*, 992 F. Supp. 1372, 1377 (S.D. Fla. 1998) (finding a tortious interference claim against a party to the same contract sufficient to state a cause of action under Florida law); *Nautica Int'l., Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1346 (S.D. Fla. 1998) (denying a motion to dismiss a claim for tortious interference against a party to the same contract).  A claim for tortious interference may be brought where the interfering party has no right under the contract to affect the rights and obligations of the claimant.  *See Nautica Int'l*, 5 F. Supp. 2d at 1346.

Qualcomm alleges that, under the January 12, 1999 Agreement, SKGF had independent contractual obligations to Qualcomm and to ParkerVision (Dkt. 91 ¶ 200)—SKGF promised both ParkerVision and Qualcomm that it would not be adverse to either in litigation while either was a client—and those promises could have as easily, and perhaps more naturally, been set forth in separate contracts (*i.e.*, one between SKGF and ParkerVision, and the other SKGF and Qualcomm) as in one.  It is awkward to conclude that ParkerVision has a greater right under the agreement to interfere with SKGF's obligations to Qualcomm simply because Robert Sterne chose, for whatever reason (*e.g.*, convenience?) to set forth his firm's separate agreements with Qualcomm and ParkerVision in a single instrument.  *See Sufrin*, 128 F.3d at 598 (holding that "[defendant] had no greater right to interfere with the [the breaching party's] obligation to [plaintiff] than he would have had if that obligation had been set forth on a separate piece of paper"); *Montgomery & Larmoyeux*, 992 F. Supp. at 1377.

The cases cited by ParkerVision are inapposite.  In *United of Omaha Life Insurance v. Nob Hill Associates*, 450 So. 2d 536, 539 (Fla. Dist. Ct. App. 1984), the plaintiff's tortious interference claim was barred because the plaintiff's agreement with the breaching party was subject to the defendant's approval and parallel commitment.  Similarly, the claim in *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1224 (Fla. Dist. Ct. App. 1980), was defective because the defendant was, among other things, the guarantor of the breached loan agreement.  Finally, *Salit v. Ruden,*

17

*McClosky*, 742 So.2d 381, 386 (Fla. Dist. Ct. App. 1999), merely stands for the proposition that a claim for tortious interference cannot be brought against a party having the "privilege to interfere" with the contract.  ParkerVision would have a point if Qualcomm were to contend that ParkerVision interfered with its own obligations to Qualcomm under the agreement.  But that is not the allegation here.  The allegation addresses *only* SKGF's obligations to Qualcomm—in fact, the agreement contains *no* obligations running from ParkerVision to Qualcomm. ParkerVision cannot credibly contend, nor does it appear to, that it had a right under the January 12, 1999 Agreement to interfere with SKGF's commitment to Qualcomm that it would not become adverse to Qualcomm.

Because ParkerVision had no right under the contract to affect Qualcomm's rights and SKGF's obligations to Qualcomm, Claim 12 of the counterclaim states a viable claim for tortious interference.

## IV.     ParkerVision's Motion to Strike Should Be Denied.

ParkerVision moves to strike Qualcomm's affirmative defenses of inequitable conduct and unclean hands, as well as certain paragraphs from Qualcomm's pleading setting forth the factual allegations in support of those defenses and the related counterclaims for inequitable conduct.  (*See* Dkt. 100 at 14-15.)  The paragraphs ParkerVision moves to strike are numbered as FRCP 10 requires, and set forth narrative context for the ensuing allegations in a manner that satisfies the modern requirement that pleadings set forth claims for relief that are "plausible."  Because, as shown above, the Amended Counterclaim states a claim for inequitable conduct, the factual allegations in support of the inequitable conduct claims and the related affirmative defenses should not be stricken from the pleading.

**Conclusion**

For the foregoing reasons, Qualcomm respectfully requests this Court deny

ParkerVision's Motion to Dismiss and Strike Portions of Qualcomm's Answer to ParkerVision's

First Amended Complaint.

April 26, 2012

CRAVATH, SWAINE & MOORE LLP

By:    s/ Keith R. Hummel
        Keith R. Hummel (admitted pro hac vice) (Trial Counsel)
        khummel@cravath.com
        David Greenwald (admitted pro hac vice)
        dgreenwald@cravath.com
        Worldwide Plaza
        825 Eighth Avenue
        New York, New York  10019
        Telephone:  (212) 474-1000
        Facsimile:  (212) 474-3700

        -and-

BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.
        John A. DeVault, III
        Florida Bar No. 103979
        jad@bedellfirm.com
        Courtney K. Grimm
        Florida Bar No. 953740
        cgrimm@bedellfirm.com
        The Bedell Building
        101 East Adams Street
        Jacksonville, Florida 32202
        Telephone:  (904) 353-0211
        Facsimile:  (904) 353-9307

        -and-

CADWALADER, WICKERSHAM & TAFT LLP
     Christopher A. Hughes (admitted pro hac vice)
     christopher.hughes@cwt.com
     1 World Financial Center
     New York, New York 10281
     Telephone:  (212) 504-6000
     Facsimile:  (212) 504-6666

       -and-

GOODWIN PROCTER, LLP
     Steven A. Moore (admitted pro hac vice)
     samoore@goodwinprocter.com
     Richard W. Thill (admitted pro hac vice)
     rthill@goodwinprocter.com
     4365 Executive Drive, Suite 3000
     San Diego, CA 92121
     Telephone:  (858) 202-2700
     Facsimile:  (858) 457-1255

*Counsel for Defendant, Counterclaim Plaintiff Qualcomm Incorporated*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of April, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

<u>s/ Keith R. Hummel</u>
Keith R. Hummel (admitted pro hac vice)
khummel@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
*Counsel for Defendant, Counterclaim Plaintiff*
*Qualcomm Incorporated*