THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| PARKERVISION, INC.,<br><br>　　　　　　　*Plaintiff*,<br><br>　　v.<br><br>QUALCOMM INCORPORATED,<br><br>　　　　　　　*Defendant*. | Case No. 3:11-cv-719-J-37-TEM |
| QUALCOMM INCORPORATED,<br><br>　　　　　　　*Counterclaim Plaintiff*,<br><br>　　v.<br><br>PARKERVISION, INC., and<br>STERNE, KESSLER, GOLDSTEIN & FOX PLLC<br><br>　　　　　　　*Counterclaim Defendants*. | |

**QUALCOMM'S MOTION TO COMPEL STERNE KESSLER TO ANSWER
REQUESTS FOR ADMISSION NOS. 1-8
AND MEMORANDUM OF LAW IN SUPPORT**

　　　　Pursuant to Federal Rule of Civil Procedure 37, Qualcomm Incorporated ("Qualcomm") moves this Court to compel Sterne, Kessler, Goldstein & Fox PLLC ("Sterne Kessler" or "SKGF") to answer Requests Nos. 1-8 from Qualcomm's First Set of Requests for Admission.

　　　　As the 9th and 11th counts of its Counterclaim, Qualcomm has sued its former counsel, Sterne Kessler, for breach of fiduciary duty and breach of contract (the

"common law counterclaims"). The theory of Qualcomm's common law counterclaims is that by assisting ParkerVision to bring this action against Qualcomm while Qualcomm was Sterne Kessler's client, Sterne Kessler (i) breached the fiduciary duty of loyalty all attorneys owe their clients and (ii) broke an express promise it had made to Qualcomm in 1999 that "no one at [Sterne Kessler] would in any future matter take an adversarial position (*e.g.*, participate in litigation against [Qualcomm] on any matters)" for as long as Qualcomm remained a Sterne Kessler client. (Dkt. 95 Ex. 1.)

On May 9, 2012, Qualcomm served eight Requests for Admission ("RFAs") on Sterne Kessler. (*See* July 6, 2012 Declaration of Joseph Lasher ("Lasher Decl.") Ex. 1.) These RFAs seek information concerning the very existence of the assistance Sterne Kessler provided ParkerVision in preparing to sue Qualcomm. They do not seek any privileged communications or work-product information. They simply seek confirmation that work was done with respect to Qualcomm, but very carefully avoid any invasion of the content of privileged communications or attorney work product. This very basic, non-privileged information goes to the heart of Qualcomm's common law counterclaims, which are based on Sterne Kessler's assistance to ParkerVision against Qualcomm while Qualcomm was a client of Sterne Kessler.

RFA Nos. 1-8 and Sterne Kessler's objections thereto are as follows (*see* Lasher Decl. Exs. 1, 2):

RFA No. 1 states:

> After April 27, 2010, Sterne Kessler assisted ParkerVision in preparing to bring this action against Qualcomm.

2

Sterne Kessler has objected to RFA No. 1 as follows:

> SKGF hereby incorporates by reference, as if fully set forth herein, its General Objection as set forth above. SKGF objects to this Request because it knowingly and improperly seeks to invade upon the attorney-client relationship between SKGF and ParkerVision. Any response would necessarily result in the disclosure of the nature of the attorney-client relationship and substance of attorney-client communications between SKGF and ParkerVision.

RFA No. 2 states:

> After April 27, 2010, Sterne Kessler created claim charts assessing whether at least one Qualcomm product met the limitations of a claim of at least one ParkerVision patent asserted in this action.

Sterne Kessler has objected to RFA No. 2 as follows:

> SKGF hereby incorporates by reference, as if fully set forth herein, its General Objection as set forth above. SKGF objects to the Request because it is vague and ambiguous as to the scope of the Request. SKGF interprets the Request as asking whether SKGF attorneys created claims charts assessing one or more Qualcomm products with one or more claims of the Patents-in-Suit on behalf of ParkerVision in relation to ParkerVision's bringing suit against Qualcomm. In response thereto, SKGF objects to this Request because it knowingly and improperly seeks to invade upon the attorney-client relationship between SKGF and ParkerVision. Any response would necessarily result in the disclosure of the nature of the attorney-client relationship and substance of attorney-client communications between SKGF and ParkerVision.

RFA No. 3 states:

> After April 27, 2010, Sterne Kessler billed ParkerVision for work relating to ParkerVision's enforcement of patents against Qualcomm.

Sterne Kessler has objected to RFA No. 3 as follows:

> SKGF hereby incorporates by reference, as if fully set forth herein, its General Objection as set forth above. SKGF objects to this Request because it knowingly and improperly seeks to invade upon the attorney-client relationship between SKGF and ParkerVision. Any response would necessarily result in the disclosure of the nature of the attorney-client relationship and substance of attorney-client communications between SKGF and ParkerVision.

RFA No. 4 states:

> After April 27, 2010, and prior to the filing of the Complaint, Sterne Kessler attorneys viewed materials relating to Qualcomm's QSC6270 product.

Sterne Kessler has objected to RFA No. 4 as follows:

> SKGF hereby incorporates by reference, as if fully set forth herein, its General Objection as set forth above. SKGF objects to this Request because it is vague and ambiguous as to what is meant by "materials relating to" the QSC6270 product. For instance, would materials relating to a third-party end-product utilizing the QSC6270 product constitute "materials relating to" for purposes of the Request? SKGF further objects to the Request because it is vague and ambiguous as to the scope of the Request. SKGF interprets the Request as asking whether SKGF attorneys reviewed materials relating to the QSC6270 product on behalf of ParkerVision in relation to ParkerVision's bringing suit against Qualcomm. In response thereto, SKGF further objects to this Request because it knowingly and improperly seeks to invade upon the attorney-

> client relationship between SKGF and ParkerVision. Any response would necessarily result in the disclosure of the nature of the attorney-client relationship and substance of attorney-client communications between SKGF and ParkerVision.

RFA No. 5 states:

> After April 27, 2010, and prior to the filing of the Complaint, Sterne Kessler attorneys viewed materials relating to Qualcomm's RTR6285 product.

Sterne Kessler has objected to RFA No. 5 as follows:

> SKGF hereby incorporates by reference, as if fully set forth herein, its General Objection as set forth above. SKGF objects to this Request because it is vague and ambiguous as to what is meant by "materials relating to" the RTR6285 product. For instance, would materials relating to a third-party end-product utilizing the RTR6285 product constitute "materials relating to" for purposes of the Request? SKGF further objects to the Request because it is vague and ambiguous as to the scope of the Request. SKGF interprets the Request as asking whether SKGF attorneys reviewed materials relating to the RTR6285 product on behalf of ParkerVision in relation to ParkerVision's bringing suit against Qualcomm. In response thereto, SKGF further objects to this Request because it knowingly and improperly seeks to invade upon the attorney-client relationship between SKGF and ParkerVision. Any response would necessarily result in the disclosure of the nature of the attorney-client relationship and substance of attorney-client communications between SKGF and ParkerVision.

RFA No. 6 states:

> After April 27, 2010, Sterne Kessler rendered advice to ParkerVision relating to litigation with Qualcomm.

Sterne Kessler has objected to RFA No. 6 as follows:

> SKGF hereby incorporates by reference, as if fully set forth herein, its General Objection as set forth above. SKGF objects to this Request because it knowingly and improperly seeks to invade upon the attorney-client relationship between SKGF and ParkerVision. Any response would necessarily result in the disclosure of the nature of the attorney-client relationship and substance of attorney-client communications between SKGF and ParkerVision.

RFA No. 7 states:

> After April 27, 2010, Sterne Kessler conducted, on behalf of ParkerVision, at least one patent analysis relating to Qualcomm's suspected infringement of a ParkerVision patent asserted in this action.

Sterne Kessler has objected to RFA No. 7 as follows:

> SKGF hereby incorporates by reference, as if fully set forth herein, its General Objection as set forth above. SKGF objects to this Request because it knowingly and improperly seeks to invade upon the attorney-client relationship between SKGF and ParkerVision. Any response would necessarily result in the disclosure of the nature of the attorney-client relationship and substance of attorney-client communications between SKGF and ParkerVision.

RFA No. 8 states:

> After April 27, 2010, Sterne Kessler provided to ParkerVision at least one patent opinion concerning whether Qualcomm infringed a ParkerVision patent asserted in this action.

Sterne Kessler has objected to RFA No. 8 as follows:

> SKGF hereby incorporates by reference, as if fully set forth herein, its General Objection as set forth above. SKGF objects to this Request because it

> knowingly and improperly seeks to invade upon the attorney-client relationship between SKGF and ParkerVision. Any response would necessarily result in the disclosure of the nature of the attorney-client relationship and substance of attorney-client communications between SKGF and ParkerVision.

Because Sterne Kessler's objections render it effectively impossible for Qualcomm to obtain discovery concerning its common law counterclaims, Qualcomm brings this motion to compel Sterne Kessler to answer RFA Nos. 1-8.

**Federal Rule of Civil Procedure 37(a)(1) and Local Rule 3.01(g) Certification**

On July 5, 2012, counsel for Qualcomm spoke with counsel for Sterne Kessler concerning its objections, and particularly noting the impropriety of its assertion of the attorney-client and work-product privileges to shield from discovery subjects that fall outside the scope of those privileges. (Lasher Decl. ¶ 5.) Counsel for both parties met and conferred in a good faith effort to resolve the issues raised by the present motion, but were unable to agree on a resolution. (*Id.*)

**Argument**

**I. Sterne Kessler Should Be Compelled to Answer Requests for Admission Pertaining to Its Assistance of ParkerVision in Suing Qualcomm (RFA Nos. 1-8).**

Qualcomm's RFA Nos. 1-8 seek basic information about the existence or nonexistence of Sterne Kessler's assistance to ParkerVision in this action. Sterne Kessler objects to each of the RFAs for the reasons that they (i) "knowingly and improperly seek[] to invade upon the attorney-client relationship between SKGF and ParkerVision" and because (ii) "[a]ny response would necessarily result in the disclosure of the nature of the attorney-client relationship and substance of attorney-client communications

7

between SKGF and ParkerVision." (*See* Lasher Decl. Ex. 2.) Neither objection asserts a recognized privilege,[1] and on that basis alone the requested discovery should proceed.

If construed, instead, as attempts to invoke the attorney-client or work-product privileges, the Court should also order Sterne Kessler to answer the RFAs, because neither recognized privilege impedes the requested discovery.

"The attorney-client privilege applies to confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Miccosukee Tribe of Indians of Fla. v. U.S.*, 516 F.3d 1235, 1262 (11th Cir. 2008) (citation and internal quotation marks omitted); *see also Vision I Homeowners Ass'n v. Aspen Specialty Ins. Co.*, No. 08-81211-Civ, 2009 WL 2477519, at *1 (S.D. Fla. July 17, 2009). However, the privilege is not absolute and generalized, and blanket assertions of a privilege will not suffice to establish that such a privilege exists. *See S.E.C. v. Dowdell*, No. 8:02-mc-94-T-17TBM, 2006 WL 3876294, at *4 (M.D. Fla. May 15, 2006). Qualcomm's RFAs are limited to the *fact* of Sterne Kessler's assistance to ParkerVision; none of them seeks admissions that would disclose the *substance* of confidential communications between Sterne Kessler and ParkerVision. As a result, the attorney-client privilege cannot form the basis of an objection to any of Qualcomm's RFAs.

---

[1] By contrast, in Sterne Kessler's Responses and Objections to Qualcomm's First Request for the Production of Documents, ESI and Things, Sterne Kessler explicitly invoked the recognized attorney-client and work-product privileges: "SKGF objects to this Request because it seeks information protected by the Attorney-Client privilege and/or Work Product immunity doctrine." (Dkt. 94 at 3.)

Alongside the attorney-client privilege, the work-product privilege exists to protect the work of an attorney from being encroached upon by opposing counsel. *See Hickman v. Taylor*, 329 U.S. 495, 500 (1947). At its base, the work-product privilege exists to protect the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Palmer v. Westfield Ins. Co.*, No. 5:05-CV-10GRJ, 2006 WL 2612168, at *3 (M.D. Fla. Jun. 30, 2006) (quoting Fed. R. Civ. P. 26(b)(3)); *see also Hickman*, 329 U.S. at 509-12. Again, Qualcomm's RFAs seek only basic information about the existence or nonexistence of Sterne Kessler's assistance to ParkerVision; none of them seeks admissions that would disclose Sterne Kessler's mental impressions, conclusions, opinions, or legal theories concerning its legal representation of ParkerVision. As a result, the work-product privilege cannot form the basis of an objection to any of Qualcomm's RFAs.

### A. Sterne Kessler Should Be Compelled to Answer RFA Nos. 1 and 6 Because Answering These RFAs Would Not Cause Sterne Kessler to Violate Either the Attorney-Client Privilege or the Work-Product Privilege.

RFA No. 1 states, "After April 27, 2010, Sterne Kessler assisted ParkerVision in preparing to bring this action against Qualcomm." RFA No. 6 states, "After April 27, 2010, Sterne Kessler rendered advice to ParkerVision relating to litigation with Qualcomm." In other words, these RFAs seek to uncover information about the fact most central to Qualcomm's common law counterclaims: whether Sterne Kessler helped ParkerVision sue Qualcomm while Qualcomm was a Sterne Kessler client. Notably, these RFAs seek information about the mere existence or nonexistence—and not the contents—of such assistance or advice.

Sterne Kessler's objection based on the attorney-client privilege lacks merit because the attorney-client privilege simply does not apply to the mere factual circumstances of an attorney's representation. *See, e.g.*, *Herrera v. Herrera*, 895 So. 2d 1171, 1175 (Fla. Dist. Ct. App. 2005) (holding that the attorney-client privilege was *not* violated where counsel who previously represented one of the party's in negotiations testified to "how she was retained, identification of 'working drafts' of the agreement, and the process of the negotiations"); *see also U.S. v. Ellis*, 90 F.3d 447, 450 (11th Cir. 1996) ("[t]he identity of a client and the receipt of attorney's fees normally are not privileged matters"). Indeed, the attorney-client privilege protects from discovery only the substance of attorney-client communications related to the provision of legal advice, not the fact that such communications took place or the parties to the communications." *See Thompson v. Cincinnati Ins. Co.*, No. 3:10-CV-318, 2010 WL 4667100, at *3 (N.D. Fla. Nov. 9, 2010) ("[t]he attorney-client privilege protects the confidentiality of communications within the attorney-client relationship, not the external trappings of the relationship"). Answering RFA Nos. 1 and 6 would disclose only the existence or nonexistence and not the *substance* of any assistance or advice that Sterne Kessler may have provided ParkerVision. Because this disclosure does not reveal confidential communications, such disclosure would not violate the attorney-client privilege.

Similarly, Sterne Kessler's objection based on the work-product privilege lacks merit here because the work-product privilege does not protect the fact that an attorney represented a client on a particular matter. *Cf. Allstate Ins. Co. v. Levesque*, No. 8:08-CV-2253-T-33EAJ, 2010 WL 668181, at *2 (M.D. Fla. Feb. 5, 2010) (holding that the

10

work-product privilege does not protect the identity of the person involved in settlement negotiations of the underlying claim and whose responsibility it was to decide whether to extend a settlement offer). Indeed, the work-product privilege "does not apply to information sought as to whether there was such work product but only to the information, if any, contained therein." *Smith v. Ins. Co. of N. Am.*, 30 F.R.D. 534, 538 (M.D. Tenn. 1962) (citations and internal quotation marks omitted); *see also Monroe's Estate v. Bottle Rock Power Corp.*, No. 03–2682, 2004 WL 737463, at *11 (E.D. La. April 2, 2004) (holding that retainer agreements, the identity of clients, and *the purposes for which attorneys are retained* generally do not fall within the work-product privilege). Again, answering RFA Nos. 1 and 6 would not disclose the *substance* of any assistance or advice, only its existence or nonexistence. The analogy to privilege logs is useful here: Such logs are required to contain "general subject matter descriptions" of what the attorney worked on during a particular time period. *E.g.*, *Hernandez v. Wilsonart Int'l, Inc.*, No. 2:09-cv-747, 2010 WL 2653223, at *3-4 (M.D. Fla. July 2, 2010) ("a proper privilege log should contain the . . . subject matter addressed in the document [and] . . . the purpose(s) for which it was prepared or communicated"); *see also Roger Kennedy Const., Inc. v. Amerisure Ins. Co.*, No. 6:06-cv-1075-Orl-19KRS, 2007 WL 1362746, at *1 (M.D. Fla. May 7, 2007) (same). Since the production of privilege logs does not violate the work-product privilege, neither can admission or denial of a fact that would be included in a privilege log—namely, that an attorney worked generally on a certain matter for a client. Because admission or denial of that fact would not reveal mental

11

impressions, conclusions, opinions, or legal theories, such admission or denial would not violate the work-product privilege.

     **B.**    **Sterne Kessler Should Be Compelled to Answer RFA Nos. 2, 7, and 8 Because Answering These RFAs Would Not Cause Sterne Kessler to Violate Either the Attorney-Client Privilege or the Work-Product Privilege.**

RFA No. 2 states, "After April 27, 2010, Sterne Kessler created claim charts assessing whether at least one Qualcomm product met the limitations of a claim of at least one ParkerVision patent asserted in this action." RFA No. 7 states, "After April 27, 2010, Sterne Kessler conducted, on behalf of ParkerVision, at least one patent analysis relating to Qualcomm's suspected infringement of a ParkerVision patent asserted in this action." RFA No. 8 states, "After April 27, 2010, Sterne Kessler provided to ParkerVision at least one patent opinion concerning whether Qualcomm infringed a ParkerVision patent asserted in this action." In other words, these RFAs ask Sterne Kessler to admit or deny that it created work product (in the form of claim charts, patent analyses, or patent opinions) in relation to assessing whether Qualcomm infringed a ParkerVision patent asserted in this action. Notably, these RFAs seek information about the mere existence or nonexistence of such work product; they do not seek information about its contents.

Sterne Kessler's invocation of the attorney-client privilege in response to these RFAs is misguided because the attorney-client privilege protects from discovery only the substance of attorney-client communications related to the provision of legal advice, not the fact that such communications took place or the parties to the communications. *Thompson*, No. 3:10-CV-318, 2010 WL 4667100, at *3. Qualcomm does

12

not seek disclosure of the *substance* of any claim charts, patent analyses, or patent opinions that Sterne Kessler may have produced; rather, Qualcomm seeks admission or denial of the mere *existence* of such work product. Answering RFA Nos. 2, 7, and 8 would not reveal any confidential communications and thus would not cause Sterne Kessler to violate the attorney-client privilege.

Similarly, Sterne Kessler's invocation of the work-product privilege in response to these RFAs is misguided because the work-product privilege "cannot be used as a shield against discovery of . . . the existence or non-existence of documents, even though the documents themselves may not be subject to discovery." *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 688 (S.D. Fla. 2010); *see also Smith*, 30 F.R.D. at 538 ("The [work-product privilege] does not apply to information sought as to whether there was such work product but only to the information, if any, contained therein. Nor does it prevent inquiry as to the existence, if any, of the reports or other memoranda . . . and of their location . . . ." (citations and internal quotation marks omitted)). Again, Qualcomm does not seek disclosure of the *contents* of any claim charts, patent analyses, or patent opinions that Sterne Kessler may have produced. Responding to RFA Nos. 2, 7, and 8 may reveal that Sterne Kessler *assessed* whether Qualcomm infringed a ParkerVision patent asserted in this action, but would not reveal the *conclusion* of that assessment any more than a privilege log disclosing a document's subject matter would reveal the contents of that document. *Cf. Hernandez*, 2010 WL 2653223, at *3-4 ("a proper privilege log should contain the . . . subject matter addressed in the document"). Answering RFA Nos. 2, 7, and 8 would not reveal any mental impressions, conclusions,

13

opinions, or legal theories, and thus would not cause Sterne Kessler to violate the work-product privilege.

    C.    **Sterne Kessler Should Be Compelled to Answer RFA No. 3 Because Answering RFA No. 3 Would Not Cause Sterne Kessler to Violate Either the Attorney-Client Privilege or the Work-Product Privilege.**

RFA No. 3 states, "After April 27, 2010, Sterne Kessler billed ParkerVision for work relating to ParkerVision's enforcement of patents against Qualcomm." Sterne Kessler objects based on the attorney-client and work-product privileges.

Sterne Kessler's objection based on the attorney-client privilege fails here because courts have consistently "held that billing records . . . which do not reveal client communications are not protected by the attorney-client privilege." *See Fed. Trade Comm'n v. Cambridge Exch., Ltd.*, 845 F.Supp 872, 874 (S.D. Fla. 1993); *see also Ellis*, 90 F.3d at 450 ("the identity of a client and the receipt of attorney's fees normally are not privileged matters"). This is in keeping with the general rule that the receipt of fees from a client or the identity of a client is not within the attorney-client privilege. *See United States v. Leventhal*, 961 F.2d 936, 940 (11th Cir. 1992). And even under "peculiar" circumstances where billing records contain privileged information, trial courts have ordered the immediate furnishing of redacted copies. *Old Holdings, Ltd. v. Taplin, Howard, Shaw & Miller, P.A.*, 584 So. 2d 1128, 1129 (Fla. Dist. Ct. App. 1991); *see also Jacob v. Barton*, 877 So. 2d 935, 938 (Fla. Dist. Ct. App. 2004) (requiring redaction of privileged information from billing records before production). If such information were privileged, then privilege logs, which are required to include the names of participants

14

in communications and the dates on which those communications occurred, *see, e.g.*, *Hernandez*, 2010 WL 2653223, at *3 (listing the requirements of a privilege log), would themselves reveal privileged information. And here, Qualcomm is not even seeking production of privilege logs or billing records, redacted or otherwise; rather, Qualcomm seeks only admission or denial of a fact that would be included in a billing record or privilege log—namely, that Sterne Kessler billed a particular client for work on a particular matter. Since billing records themselves are generally not protected by the attorney-client privilege, this mere fact cannot be protected either.

Similarly, Sterne Kessler's objection based on the work-product privilege fails here because the work-product privilege does not protect routine billing information. *See Monroe's Estate*, 2004 WL 737463, at *11 (holding retainer agreements, information relating to billing or fee arrangements, hours spent by attorneys working on the litigation, and payment of attorney's fees, generally do not fall within the work-product privilege). Admission or denial of the fact that Sterne Kessler billed a particular client for work on a particular matter would not reveal mental impressions, conclusions, opinions, or legal theories, and thus would not violate the work-product privilege. Indeed, this Court's order dated June 7, 2012 supports the position that answering RFA No. 3 would not violate either privilege. That order compelled Sterne Kessler to produce billing information for ParkerVision that identifies the attorney who conducted the work and the date upon which it was conducted. (Dkt. 113 at 4-5.)

>   D.  **Sterne Kessler Should Be Compelled to Answer RFA Nos. 4 and 5 Because Answering RFA Nos. 4 and 5 Would Not Cause Sterne Kessler to Violate Either the Attorney-Client Privilege or the Work-Product Privilege.**

RFA Nos. 4 and 5 state, "After April 27, 2010, and prior to the filing of the Complaint, Sterne Kessler attorneys viewed materials relating to Qualcomm's QSC6270 [and RTR6285] product[s]." Sterne Kessler objects based on the attorney-client and work-product privileges.

Sterne Kessler's resort to the attorney-client privilege here is futile because courts have held that discovery devices generally "may confirm the existence, though not the contents, of information gathered in preparation for trial," and that the party receiving the discovery request "must identify with specificity the nature, but not contents, of the . . . communications sought to be protected from discovery." *Moses v. State Farm Mut. Auto. Ins. Co.*, 104 F.R.D. 55, 58 (N.D. Ga. 1984); *see also Cedolia v. C. S. Hill Saw Mills, Inc.*, 41 F.R.D. 524, 527 (M.D.N.C. 1967). RFA Nos. 4 and 5 ask simply whether anyone at Sterne Kessler viewed particular materials during a particular period of time; these RFAs do not even ask Sterne Kessler whether it billed ParkerVision for time spent viewing the materials in question. Sterne Kessler can admit or deny these RFAs without revealing anything about its relationship with ParkerVision. Thus, answering RFA Nos. 4 and 5 would not violate the attorney-client privilege.

Similarly, Sterne Kessler's resort to the work-product privilege here is futile because the work-product privilege protects, as its name implies, work *product*, not the fact of its existence or nonexistence and correspondingly not its common identity. *See, e.g.*, *Henderson*, 269 F.R.D. at 688; *Smith*, 30 F.R.D. at 538. Again, courts have held

16

that discovery devices generally "may confirm the existence, though not the contents, of information gathered in preparation for trial," and that the party receiving the discovery request "must identify with specificity the nature, but not contents, of the documents . . . sought to be protected from discovery." *Moses*, 104 F.R.D. at 58.  Qualcomm does not seek the contents of the materials that Sterne Kessler may have viewed prior to the filing of the Complaint; nor does Qualcomm seek analyses that Sterne Kessler may have performed on such materials.  Thus, answering RFA Nos. 4 and 5 would not violate the work-product privilege.

### Conclusion

For the foregoing reasons, Qualcomm respectfully requests that this Court order Sterne Kessler to respond fully to Qualcomm's First Set of Requests for Admission (RFA Nos. 1-8).

July 6, 2012

CRAVATH, SWAINE & MOORE LLP

By:   s/ Keith R. Hummel
    Keith R. Hummel (admitted pro hac vice) (Trial Counsel)
    khummel@cravath.com
    David Greenwald (admitted pro hac vice)
    dgreenwald@cravath.com
    Worldwide Plaza
    825 Eighth Avenue
    New York, New York  10019
    Telephone:  (212) 474-1000
    Facsimile:  (212) 474-3700

-and-

BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.
    John A. DeVault, III
    Florida Bar No. 103979
    jad@bedellfirm.com
    Courtney K. Grimm
    cgrimm@bedellfirm.com
    Florida Bar No. 953740
    The Bedell Building
    101 East Adams Street
    Jacksonville, Florida 32202
    Telephone: (904) 353-0211
    Facsimile: (904) 353-9307

    -and-

CADWALADER, WICKERSHAM & TAFT LLP
    Christopher A. Hughes (admitted pro hac vice)
    Christopher.Hughes@cwt.com
    1 World Financial Center
    New York, New York 10281
    Telephone: (212) 504-6000
    Facsimile: (212) 504-6666

    -and-

GOODWIN PROCTER, LLP
    Steven A. Moore (admitted pro hac vice)
    samoore@goodwinprocter.com
    Richard W. Thill (admitted pro hac vice)
    rthill@goodwinprocter.com
    4365 Executive Drive, Suite 3000
    San Diego, CA 92121
    Telephone: (858) 202-2700
    Facsimile: (858) 457-1255

*Counsel for Defendant, Counterclaim Plaintiff Qualcomm Incorporated*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 6th day of July, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/ Keith R. Hummel
Keith R. Hummel (admitted pro hac vice)
khummel@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
*Attorney for Defendant,
Counterclaim Plaintiff*
