IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PARKERVISION, INC.,
  Plaintiff,

CASE NO.: 3:11-CV-719-RBD-TEM

v.

QUALCOMM INCORPORATED,
  Defendant.

_____/

QUALCOMM INCORPORATED,
  Counterclaim Plaintiff,

v.

PARKERVISION, INC, AND
STERNE, KESSLER, GOLDSTEIN & FOX PLLC,
  Counterclaim Defendants.

_____/

**STERNE, KESSLER, GOLDSTEIN & FOX PLLC'S RESPONSE TO
QUALCOMM'S MOTION TO COMPEL RESPONSES TO
REQUESTS FOR ADMISSION NOS. 1 THROUGH 8**

Counterclaim-Defendant, Sterne, Kessler, Goldstein & Fox PLLC ("SKGF"), by and through undersigned counsel, hereby responds to Counterclaim-Plaintiff, Qualcomm, Inc.'s Motion to Compel Answers to Requests for Admission Nos. 1 Through 8 [Doc. No. 117] and states as follows:

**PREAMBLE**

Qualcomm's latest effort to invade the sanctum of the ParkerVision-SKGF attorney-client privilege brings to mind that nonsensical poem by Lewis Carroll, *The Hunting of the Snark.*

"Just the place for a Snark!" the Bellman cried,
    As he landed his crew with care;
Supporting each man on the top of the tide
    By a finger entwined in his hair.

"Just the place for a Snark! I have said it twice:
    That alone should encourage the crew.
Just the place for a Snark! I have said it thrice:
    What i tell you three times is true."

Just as the Bellman in his ill-fated search, Qualcomm is of the belief that by making the same argument three times, this Court will finally believe it to be true.[1]  However, as shown herein, as well as in SKGF's response to Qualcomm's prior motion to compel [D.E. 101] and motion for clarification [D.E. 116], Qualcomm's latest motion suffers from the same defects and erroneous reasoning.

## THE TRILOGY

Qualcomm's pending motion to compel is the third installment of an on-going effort to invade and interfere with the ParkerVision-SKGF attorney-client relationship to learn the scope and content of services provided ParkerVision prior to the initiation of this action under the pretext of baseless counterclaims supported by nothing but innuendo and lacking in both factual and legal support.[2]

ACT I: Qualcomm's Motion to Compel Sterne Kessler to Answer Requests for Production Nos. 37 and 40 and Interrogatories Nos. 1-3

In March 2012, Qualcomm filed its initial motion to compel SKGF to respond to certain requests for production and interrogatories inquiring into the "who," "what," "when,"

---

[1]  *See also Parhat v. Gates*, 532 F.3d 834, 848-49 (D.D.C. 2008) ("Lewis Carroll notwithstanding, the fact that the government has 'said it thrice' does not make an allegation true.")

[2]  For a detailed discussion of the baseless nature of the counterclaims, SKGF directs the Court's attention to the Background section of its response to Qualcomm's initial motion to compel [D.E. 101, pp. 2-11].

and "how long" of SKGF's purported assistance to ParkerVision in suing Qualcomm. *See* D.E. 94. Qualcomm argued that neither the attorney-client privilege nor work product doctrine was applicable because "the attorney-client privilege protects from discovery only the substance of attorney-client communications related to the provision of legal services, not the fact that such communications took place" and "the doctrine of work product immunity protects from disclosure only documents that reveal an attorney's 'mental impressions, conclusions, opinions, or legal theories,'" respectively. *See id.* at 13. Qualcomm further argued such information would generally be required to be provided on a privilege log. *See id.* at 14.

In its response, SKGF showed how each of the complained of discovery requests was a cleverly crafted effort to invade the ParkerVision-SKGF attorney-client privilege by seeking to compel SKGF to disclose the subject matter and nature of its representation of ParkerVision and, if responded to, would require SKGF to violate its duty of confidentiality to ParkerVision. *See* D.E. 101, pp. 11-12. SKGF further showed how the complained of discovery requests were improper due to their inclusion of the "what," i.e., the scope of the SKGF-ParkerVision representation, in the discovery requests. *See id.*

On June 7, 2012, this Court issued its ruling on the initial motion to compel, rejecting Qualcomm's attempted end-run around the SKGF-ParkerVision attorney-client privilege and holding that Qualcomm is only entitled to know the "who" and "when" but not the "what," either directly or indirectly, for services rendered by SKGF on behalf of ParkerVision for the period of January 12, 1999 through March 31, 2008 and April 15, 2010 through July 20, 2011. *See* D.E. 113, pp. 4-5.

ACT II: Qualcomm's Motion to Clarify the Court's June 7, 2012 Order on Qualcomm's Motion to Compel Sterne Kessler

Unsatisfied with the Court's ruling, Qualcomm subsequently feigned uncertainty as to the scope of relief provided and moved for clarification in an effort to avoid the merits of the Court's cogent analysis with arguments previously considered and rejected by the Court, i.e., that the complained of discovery requests did not invade the attorney-client/work product privilege and, in effect, only asked for information that would be contained in a privilege log. *See* D.E. 114, p. 2.

In its response, SKGF showed how the Court's ruling was neither ambiguous nor uncertain concerning the scope of relief provided. *See* D.E. 116. Moreover, SKGF showed how, yet again, Qualcomm was seeking to invade the attorney-client privilege by inappropriately submitting discovery requests which assume, as part of the request, the "what" information which Qualcomm seeks to compel, i.e., the nature of the services provided ParkerVision by SKGF. *See id.* at 2-3.

On July 20, 2012, this Court issued its ruling on the motion for clarification, again rejecting Qualcomm's efforts to delve into the scope of SKGF's representation of ParkerVision and reiterating that Qualcomm is only entitled to know the "who" and "when" but not the "what," either directly or indirectly, for services rendered by SKGF on behalf of ParkerVision. *See* D.E. 130.

ACT III: Qualcomm's Motion to Compel Sterne Kessler to Answer Requests for Admission Nos. 1-8

It is against this backdrop that Qualcomm submits its pending motion to compel which merely raises the exact same legal arguments in support of discovery requests that

suffer from the exact same defects. Qualcomm, once again, argues that the attorney-client privilege and work product doctrine do not apply because it merely seeks "confirmation that work was done" without requiring the disclosure of "the content of privileged communications or attorney work product." *See* D.E. 117, p. 2. Qualcomm further repeats its argument that the requested information is comparable to that which would be provided on a privilege log. *See id.* at 11.

These repetitive arguments are being asserted with respect to discovery requests which, once again, seek to delve into the very nature and scope of the services provided ParkerVision by SKGF. Just as with their predecessors, the complained of discovery requests are cleverly crafted to do an end-run around the attorney-client privilege by including the "what," i.e., the scope of the SKGF-ParkerVision representation, in the discovery requests.

As shown below, the current discovery requests are equally as deficient as Qualcomm's earlier efforts and the arguments asserted in support thereof are equally without merit. As a result, the pending motion to compel should be denied.

## MOTION TO COMPEL

I.   **Scope of SKGF-ParkerVision Representation is Protected from Disclosure Under the Attorney-Client Privilege**

Just as with the discovery requests at issue in its earlier motion to compel and motion for clarification, the requests for admissions at issue are nothing more than a cleverly crafted attempt by Qualcomm to invade the SKGF-ParkerVision attorney-client privilege by compelling the disclosure of the subject matter and scope of SKGF's representations of ParkerVision. Specifically, Qualcomm seeks to discern if ParkerVision ever sought legal

advice from SKGF regarding potential infringement of ParkerVision's patents by Qualcomm. To respond to these discovery requests, however, would necessarily require SKGF to breach its duty of confidentiality to ParkerVision.

In each of the complained of discovery requests, Qualcomm makes the assumption that ParkerVision retained SKGF to assist it in bringing suit against Qualcomm, including the provision of pre-suit investigation or analysis services. Qualcomm chose this ploy because it knows that it could not ask directly the question that it really wants answered, i.e., what was the nature and scope of the SKGF-ParkerVision representation. The fallacy of Qualcomm's approach, however, is that any inquiry into the motive of ParkerVision or the nature of any SKGF-ParkerVision representation is improper and objectionable.[3] *See e.g., Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 1995 WL 598971 (S.D.N.Y. 1995) (attorney-client privilege applicable to discovery which would "reveal the motive of the client in seeking representation, litigation strategy, [ ] the specific nature of the services provided … [or] the precise nature of representation"). Qualcomm may not seek to evade this restriction by merely predicating its discovery request with an assumption that SKGF has been retained to provide such services. *See e.g., Banks v. Office of the Sergeant-at-Arms*, 241 F.R.D. 376, 382 (D.D.C. 2007) (deposition questions objectionable under attorney-client privilege where, if answered in affirmative, answer would disclose that attorney and client discussed such topic). Each of the complained of discovery requests is improper and objectionable because any

---

[3]  Ironically, Qualcomm has taken the position that SKGF must <u>not</u> disclose the subject matter of the SKGF-Qualcomm representation because this information is a "protected client confidence," *see* Qualcomm Motion for Preliminary Injunction [Doc. No. 38], p. 7 fn. 2, yet continues to seek to compel SKGF to provide this very same information regarding the SKGF-ParkerVision relationship.

response would necessarily require SKGF to disclose the nature and scope of the SKGF-ParkerVision relationship.

Moreover, none of the case law cited by Qualcomm compels a different result. The cited cases address the issue of production or disclosure of "facts" obtained during the course of a representation, not the "existence or nonexistence" of services performed by counsel on behalf of a client. *Compare Vision I Homeowner's Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 2009 WL 2477519 (S.D. Fla. Jul. 17, 2009) (cited approvingly by Defendant) (denying motion to compel seeking to discern "subject matter of the legal research, subjects of internal legal memoranda, and *legal services undertaken on the client's behalf*") (emphasis added). The lack of citation to case law addressing the latter is self-evident – there is none. While "facts" are discoverable, what Qualcomm is seeking, i.e., the scope and nature of an attorney-client relationship, is not.

## II.   Requests for Admission Merely Rehash Prior Efforts to Obtain Disallowed Discovery

The complained of discovery requests are repetitive of earlier discovery requests considered and rejected by the Court. For instance, Request for Admission Nos. 1-2 and 4-8 improperly seek to inquire into the scope of any pre-suit investigation by ParkerVision prior to its bringing suit against Qualcomm. Specifically, these requests seeks to compel information from SKGF regarding whether the nature of its representation of ParkerVision included assisting ParkerVision in bringing this action, as well as the creation of pre-suit claims charts, review of materials relating to accused devices, and/or rendering of infringement analyses or opinions, prior to ParkerVision filing suit against Qualcomm. These discovery requests merely reiterate in different form Interrogatory No. 3 which sought

7

to delve into whether SKGF was retained to "assist ParkerVision in analyzing Qualcomm's products or preparing to enforce the Patents-in-Suit against Qualcomm," and which has already been considered and expressly rejected by the Court. As clarified in the Court's most recent ruling, Qualcomm is not entitled to delve into the scope of SKGF's representation of ParkerVision. Qualcomm should not be allowed to evade the Court's prior rulings merely by repeating the same objectionable requests via a different discovery vehicle.

Similarly, Request for Admission No. 3 seeks to explore whether SKGF "billed ParkerVision for work relating to ParkerVision's enforcement of patents against Qualcomm." This discovery request merely reiterates in different form Request for Production Nos. 37 and 40 which sought to explore "billing records … for work related to … enforcement of the Patents-in-Suit" and "billing charge number … relating to … enforcement of the Patents-in-Suit," respectively, and which, again, have already been considered and expressly rejected by the Court. As clarified in the Court's most recent ruling, Qualcomm is entitled to explore the "who" and "when" of SKGF's representation of ParkerVision during a prescribed period of time. It is not, however, entitled to restrict such discovery to SKGF's alleged assistance to ParkerVision in enforcement of the Patents-in-Suit because such discovery would improperly delve into the scope of SKGF's representation of ParkerVision. Again, Qualcomm should not be allowed to evade the Court's prior rulings merely by repeating the same objectionable request via a different discovery vehicle.

SKGF believes the Court's well-reasoned guidance is clear and unequivocal. Qualcomm is not entitled to invade the SKGF-ParkerVision attorney-client privilege to discern the scope and nature of services provided. The relief sought by Qualcomm herein

8

would essentially eviscerate the Court's prior rulings, i.e., it would require the disclosure of the "what" which the Court has already denied, by merely re-asking the same questions in a different form.  Such gamesmanship should neither be condoned nor rewarded.

### III.   The Purported "Existence or Nonexistence" Information Sought Would Invade the Attorney-Client Privilege and/or Work Product Doctrine

Contrary to Qualcomm's assertion otherwise, the "existence or nonexistence" of the assistance or advice offered ParkerVision by SKGF would necessarily result in the disclosure of information protected by the attorney-client privilege and/or work product doctrine, including whether or not ParkerVision utilized SKGF to conduct a pre-suit analysis or investigation prior to its filing suit against Qualcomm.  Moreover, for many of the discovery requests at issue, the mere providing of a response would necessarily result in the disclosure of legal conclusions or opinions reached (to the extent such services were even provided).

For instance, in Request for Admission Nos. 1 and 6, Qualcomm seeks to inquire into whether SKGF "assisted ParkerVision in preparing to bring this action" and/or "rendered advice to ParkerVision relating to litigation with Qualcomm."  As noted earlier, the inquiries of whether SKGF is required to disclose if it performed "work related to this action or enforcement of the Patents-in-Suit" or assisted ParkerVision in "preparing to enforce the Patents-in-Suit against Qualcomm" have already been answered in the negative.  This is because any such response would necessarily require SKGF to divulge the nature and scope, i.e., the "what," of its representation of ParkerVision.

Similarly, in Request for Admission Nos. 2, 7 and 8, Qualcomm seeks to inquire into whether SKGF "created claims charts," "conducted … at least one patent analysis," and/or "provided … at least one patent opinion" to ParkerVision concerning whether Qualcomm

infringed one or more claims of the Patents-in-Suit.  As noted earlier, the inquiry of whether SKGF is required to disclose if it "assist[ed] ParkerVision in analyzing Qualcomm products or preparing to enforce the Patents-in-Suit against Qualcomm" have already been answered in the negative.  Again, this is because any such response would necessarily require SKGF to divulge the nature and scope, i.e., the "what," of its representation of ParkerVision. Moreover, to the extent SKGF did provide any such patent analysis or opinion work for ParkerVision, such a response would necessarily signal the conclusions or opinions reached by counsel since it would be unreasonable to believe that ParkerVision would have initiated suit against Qualcomm if it had received a patent analysis or opinion indicating that Qualcomm did not infringe one or more claims of the Patents-in-Suit.

Likewise, in Request for Admission No. 3, Qualcomm seeks to inquire into whether SKGF "billed ParkerVision for work relating to ParkerVision's enforcement of patents against Qualcomm."  As noted earlier, the inquiries of whether SKGF is required to disclose if it billed "for work related to ... enforcement of the Patents-in-Suit" or provide evidence of a "billing charge number ... relating to ... enforcement of the Patents-in-Suit" have already been answered in the negative.  Again, this is because any such response would necessarily require SKGF to divulge the nature and scope, i.e., the "what," of its representation of ParkerVision.

Furthermore, despite Qualcomm's assertion otherwise, the Court's earlier ruling does not "support the position that answering RFA No. 3 would not violate either privilege" because the "order compelled Sterne Kessler to produce billing information for ParkerVision that identifies the attorney who conducted the work and the date upon which  it was

conducted." *See* D.E. 117, p. 15.  Such an assertion is outright disingenuous and a blatant mischaracterization of this Court's earlier ruling.  In its June 7, 2012 Order, this Court compelled SKGF to produce the "who" and "when" information contained in all ParkerVision billing records for the period of January 12, 1999 through March 31, 2008 and April 15, 2010 through July 20, 2011, *see* D.E. 113, p. 4, which records were produced to Qualcomm on July 2, 2012.  It did not, as Qualcomm indicates, require SKGF to disclose the "who" and "when" specifically relating to "work relating to ParkerVision's enforcement of patents against Qualcomm."[4]

With respect to Request for Admission Nos. 4 and 5, Qualcomm seeks to inquire into whether SKGF "viewed materials relating to Qualcomm's QSC6270 [and RTR6285] product[s]."  In its motion, Qualcomm asserts - for the first time - that these requests are not limited to whether SKGF viewed any such materials on behalf of ParkerVision and, thus, would not require "revealing anything about its relationship with ParkerVision." *See* D.E. 117, p. 16.  This position is belied, however, by the full text of the requests.  Request for Admission Nos. 4 and 5 read in full:

> Request No. 4: After April 27, 2010, *and prior to the filing of the Complaint*, Sterne Kessler attorneys viewed materials relating to Qualcomm's QSC6270 product.
>
> Request No. 5: After April 27, 2010, *and prior to the filing of the Complaint*, Sterne Kessler attorneys viewed materials relating to Qualcomm's RTR 6285 product.

---

[4] On July 20, 2012, the Court issued its Order on Qualcomm's motion for clarification rejecting Qualcomm's position that SKGF should be required to only disclose the "who" and "when" information for work associated with alleged assistance to ParkerVision in enforcing its patents against Qualcomm.

Under the circumstances, the only reasonable interpretation of these requests is that Qualcomm is inquiring whether SKGF reviewed any such materials on behalf of ParkerVision in preparation for ParkerVision's enforcement of the Patents-in-Suit. As noted earlier, the inquiry of whether SKGF is required to disclose if it "assist[ed] ParkerVision in analyzing Qualcomm products or preparing to enforce the Patents-in-Suit against Qualcomm" have already been answered in the negative. Again, this is because any such response would necessarily require SKGF to divulge the nature and scope, i.e., the "what," of its representation of ParkerVision.

Conversely, under the interpretation now proffered by Qualcomm, i.e., that the requests are not limited to viewing the materials on behalf of ParkerVision, renders the requests objectionable as irrelevant and not likely to lead to the discovery of admissible evidence. To the extent SKGF viewed materials relating to the accused products for someone other than ParkerVision, such information would not be relevant to the current proceeding.

In conclusion, because the discovery requests at issue merely seek to re-raise discovery inquiries previously considered and rejected by the Court, Qualcomm's motion to compel should be denied.

## IV.   Discovery Should Be Stayed and the Fiduciary Duty and Contract Claims Bifurcated Until Resolution of the Patent Action

Over the years, courts have routinely justified forestalling the potential disclosure of attorney-client privileged materials relating to a supplemental cause of action until after the

principal action has been resolved.[5]  For instance, the Federal Circuit has advised trial courts that bifurcation may be a useful mechanism to alleviate concerns about the unnecessary impingement upon the attorney-client privilege in patent infringement cases. *See Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991) (discussing bifurcation in the context of a willful infringement analysis).   Similarly, courts have stayed discovery and bifurcated trials on bad faith claims pending resolution of the underlying contract or product liability actions to avoid possible attorney-client dilemmas. *See generally Gatewood v. Universal Underwriters Life Ins. Co.*, 2007 WL 496375 (W.D. Ky. Feb. 7, 2007) (staying discovery and bifurcating trial on bad faith claims pending resolution of underlying contract claim in order to avoid production of privileged documents irrelevant to contract action); *Ferro Corp. v. Continental Cas. Co.*, 2008 WL 5705575 (N.D. Ohio Jan. 7, 2008) (staying discovery and bifurcating insured's bad faith claim against insurer from products liability suits in light of privilege concerns).

In the present action, the discovery requests seeking to impinge upon the SKGF-ParkerVision attorney-client relationship have no relevance to the underlying patent infringement action.  They solely relate to the facially suspect and inherently baseless breach

---

[5]  In the Joint Case Management Report [Doc. No. 69], ParkerVision and SKGF proposed bifurcation of the fiduciary duty and contract claims due to the unrelated nature of these claims from the underlying patent infringement action, as well as the possibility that these claims could confuse the jury when addressing the complex patent infringement claims and defenses.  In the Case Management and Scheduling Order [Doc. No. 84], the Court declined to decide the issue of bifurcation on the grounds that any such consideration was premature.

The Joint Case Management Report and Case Management and Scheduling Order were submitted and entered, respectively, prior to Qualcomm's service of the pending discovery which has pushed the SKGF-ParkerVision attorney-client privilege to the forefront.  As a result of the potential for the complained of discovery to unnecessarily invade the SKGF-ParkerVision attorney-client privilege, SKGF contends the issue of bifurcation is ripe for further consideration.

of fiduciary duty and contract claims which are refuted by the 1999 Letter Agreement and 2010 Engagement Letters. Furthermore, the claims will only accrue if Qualcomm can show it has incurred damages at the conclusion of the underlying patent action. *See* SKGF Motion to Dismiss [Doc. No. 99]; *see also Blumberg v. USAA Cas. Ins. Co.,* 790 So. 2d 1061, 1065 (Fla. 2001); *Hold v. Manzini,* 736 So. 2d 138, 142 (Fla. 3rd DCA 1999). Until that time, the claims are merely "hypothetical and damages are speculative." *Id.*

Qualcomm's allegation that it is incurring attorney's fees or other expenses in defending the infringement claims is not sufficient to establish redressable harm for purposes of its breach of fiduciary duty and contract claims against SKGF. *See Bierman v. Miller,* 639 So. 2d 627, 628 (Fla. 3d DCA 1994). Moreover, Qualcomm's claim that it has lost the value of SKGF's opinion work because it "will need" to retain replacement counsel to finish, or "possibly restart," the opinion work is also a premature, speculative claim for potential future damages. *See Hold,* 736 So.2d at 142. Thus, Qualcomm's claims are premature and should be abated or stayed until the underlying infringement suit is concluded or Qualcomm can otherwise demonstrate actual redressable harm caused by SKGF.

Similarly, in toxic tort cases, courts routinely require plaintiffs to produce basic prima facie evidence of causation before discovery can even begin. *See generally Lore v. Lone Pine Corp.,* 1986 WL 637507 (N.J. Super. Law. Div. Nov. 18, 1986) and its progeny; *see also Tatum v. Pactiv Corp.,* 2007 WL 60931 (M.D. Ala. Jan. 8, 2007). Qualcomm's claims against SKGF are based upon nothing more than smoke and mirrors and, in fact, are belied by the very references it cites in support of its claims. In light thereof, Qualcomm should be required to come forward with a plausible - as opposed to the speculative - basis for its

14

claims than it has presently provided before any invasion into the SKGF-ParkerVision attorney-client relationship should be allowed.

**V.     Alternatively, the Consent Issue Should Be Decided Before Discovery is Allowed**

As discussed in full in its response to Qualcomm's earlier motion to compel, the 1999 Letter Agreement and 2010 Engagement Letters clearly contemplate SKGF being allowed to conduct "infringement, validity and freedom-to-use investigations" on behalf of ParkerVision, even against Qualcomm. Therefore, even if SKGF engaged in the alleged conduct complained of, i.e., conducting a pre-suit infringement analysis, the complained of actions would have been authorized under the parties' agreements. Qualcomm's only defense to the facial applicability of the consent contained in the 2010 engagement letters to the alleged pre-suit work by SKGF is Mr. Rogers' conclusory affidavit that he did not intend what the plain words appear to mean. Limited discovery and briefing on that issue may well obviate any possible unnecessary disclosure of SKGF-ParkerVision attorney-client privileged communications. Accordingly, SKGF alternatively submits that this issue should be briefed and argued before any arguably privileged materials should be compelled to be disclosed.

## CONCLUSION

In conclusion, SKGF respectfully submits that because the requested information is either privileged or irrelevant, Qualcomm's motion to compel should be denied in its entirety. Conversely, in the event the Court believes further consideration is necessary concerning the potential production of attorney-client privileged materials, SKGF respectfully submits that any such action should be delayed until the close of the underlying patent infringement actions, or at least until after the consent issue has been resolved.

Dated: July 23, 2012            By:     /s/ David M. Wells
                                        David M. Wells – Trial Counsel
                                        Florida Bar #309291
                                        David R. Atkinson
                                        Florida Bar #767239
                                        *Counsel for Sterne, Kessler, Goldstein*
                                        *& Fox PLLC*
                                        GUNSTER, YOAKLEY & STEWART, P.A.
                                        225 Water Street, Suite 1750
                                        Jacksonville, FL 32202
                                        Telephone: 904-354-1980
                                        Facsimile: 904-354-2170
                                        dwells@gunster.com
                                        datkinson@gunster.com
                                        kunderwood@gunster.com

## **CERTIFICATE OF SERVICE (Documents filed via CM/ECF)**

I hereby certify that on the 23rd day of July, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                        /s/ David M. Wells
                                        David M. Wells

<u>ELECTRONIC MAIL SERVICE LIST</u>
<u>CASE NO.: 3:11-cv-719-J-37-TEM</u>

### <u>*Counsel for Defendant, Counterclaim Plaintiff Qualcomm Incorporated*</u>

John A. DeVault, III
jad@bedellfirm.com
Courtney Kneece Grimm
cgrimm@bedellfirm.com
Bedell, Dittman, DeVault, Pillans & Coxe, P.A.
The Bedell Building
101 East Adams Street
Jacksonville, FL 32202
Phone: 904-353-0211
Facsimile: 904-353-9307
FLABAR#103979

Keith R. Hummel
khummel@cravath.com
David Greenwald
dgreenwald@cravath.com
Joseph Everett Lasher
jlasher@cravath.com
Peter A. Emmi
pemmi@cravath.com
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019-7475
Phone: 212-474-1000
Fax: 212-474-3700

Christopher A. Hughes
Christopher.Hughes@cwt.com
John Moehringer
John.moehringer@cwt.com
Robert Pollaro
Robert.pollaro@cwt.com
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Phone:212-504-6000
Fax: 212-504-6666

17

***Counsel for Plaintiff, Counterclaim Defendant, ParkerVision***

Ava K. Doppelt
adoppelt@addmg.com
Brian R. Gilchrist
bgilchrist@addmg.com
Jeffrey Scott Boyles
jboyles@addmg.com
Allen, Dyer, Doppelt, Milbrath & Gilchrist, PA
255 S Orange Ave – Ste 1401
PO BOX 3791
Orlando, FL  32801
Phone:  407-841-2330
Fax:  407-841-2343

Stephen D. Busey
busey@smithhulsey.com
James Arthur Bolling
jbolling@smithhulsey.com
Smith, Hulsey & Busey
225 Water St – Ste 1800
PO BOX 53315
Jacksonville, FL  32202-3315
Phone:  904-359-7700
Fax:  904-359-7708

T. Gordon White
gwhite@mckoolsmith.com
McKool Smith P.C.
300 West 6th Street, Suite 1700
Austin, TX 78701
Phone:  512-692-8700

J. Austin Curry
acurry@mckoolsmith.com
Douglas Cawley
dcawley@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court
Suite 1500
Dallas, TX 75201
Phone:  214-978-4000
Fax: 214-978-4044

JAX_ACTIVE 3204372.4