IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PARKERVISION, INC.,                                 CASE NO.: 3:11-CV-719-RBD-TEM
         Plaintiff,

v.

QUALCOMM INCORPORATED,
         Defendant.
———————————————————/

QUALCOMM INCORPORATED,
         Counterclaim Plaintiff,

v.

PARKERVISION, INC, AND
STERNE, KESSLER, GOLDSTEIN & FOX PLLC,
         Counterclaim Defendants.
———————————————————/

## STERNE, KESSLER, GOLDSTEIN & FOX PLLC'S RESPONSE TO QUALCOMM'S OBJECTIONS TO MAGISTRATE JUDGE MORRIS' DISCOVERY ORDERS

Counterclaim-Defendant, Sterne, Kessler, Goldstein & Fox PLLC ("SKGF"), hereby responds to Counterclaim-Plaintiff, Qualcomm, Inc.'s Objections to Magistrate Judge Morris' June 7, 2012 and July 20, 2012 Orders Respecting Qualcomm's Motion to Compel Discovery From Sterne Kessler [Doc. No. 144] and states as follows:

## PREAMBLE

Qualcomm's pending motion is the fourth installment of an on-going effort to invade the sanctum of the attorney-client relationship between SKGF and ParkerVision to discern the scope and content of services provided ParkerVision by SKGF. Dissatisfied with the Magistrate Judge's rulings, Qualcomm presupposes the basis for his decisions as either (i) a

misunderstanding of the nature of the counterclaims or (ii) a misapplication of the law. Qualcomm's presuppositions, however, are belied by the text of the Magistrate Judge's Orders, the briefs submitted by SKGF, and, more importantly, the briefs submitted by Qualcomm.   As shown below, the Magistrate Judge's Orders suffer from neither misunderstanding nor misapplication.   Rather, Qualcomm has failed to come close to meeting its substantial burden to demonstrate a right to violate this most sacred of privileges.

## BACKGROUND

On or about January 30, 2012, Qualcomm served its First Request for Production and First Set of Interrogatories on SKGF.   Interspersed with legitimate discovery requests, Qualcomm included several requests which sought the disclosure of the scope and nature of services provided ParkerVision by SKGF prior to the initiation of this action.   In response to these inappropriate inquiries, SKGF asserted, *inter alia*, the attorney-client privilege and work product doctrine.

On March 30, 2012, Qualcomm filed its motion to compel SKGF to respond to Requests for Production Nos. 37 and 40 and Interrogatory Nos. 1 through 3 [D.E. 94].   In pertinent part, Qualcomm requested the Court compel SKGF to (i) disclose the "who," "what," when," and "how long" set forth in SKGF's billing/time records pertaining to SKGF's alleged assistance to ParkerVision prior to initiation of this action; (ii) identify any SKGF attorneys who have communicated with ParkerVision counsel about the action; and (iii) describe any work SKGF performed on behalf of ParkerVision in relation to the action.

In its response [D.E. 101], SKGF showed how the complained-of discovery requests inappropriately sought information protected by the attorney-client privilege, i.e., the nature

and scope of the SKGF-ParkerVision attorney-client relationship.  SKGF further showed how the case law cited by Qualcomm in support of its motion was either inapposite or actually supported the assertion of the attorney-client privilege.

On June 7, 2012, the Magistrate Judge issued his Order on Qualcomm's motion to compel [D.E. 113].  Therein, the Magistrate Judge engaged in a reasoned and informed discussion concerning the scope of the attorney-client privilege and work product doctrine while balancing the merits of the parties' respective positions.  Ultimately, the Magistrate Judge held that Qualcomm was entitled to discovery concerning the "who" and "when" for services provided ParkerVision by SKGF during the period SKGF was concurrently representing Qualcomm.  The Magistrate Judge further determined – consistent with the case law - that the requested "what" was protected from disclosure.

On June 13, 2012, feigning uncertainty regarding the scope of relief afforded in the Magistrate Judge's Order, Qualcomm filed its motion for clarification [D.E. 114].  Therein, Qualcomm re-argued the merits of its earlier motion to compel and questioned the disposition of the motion concerning the complained-of interrogatories.

In its response [D.E. 116], SKGF demonstrated how Qualcomm's motion was nothing more than a mere re-hashing of previously rejected arguments, as well as pointed out where in the Order the Magistrate Judge did, in fact, address the complained-of interrogatories.  SKGF further showed how Qualcomm's purported interpretation of the Order was inconsistent with the rest of the Magistrate Judge's decision.

On July 2, 2012, the Magistrate Judge issued his Order on Qualcomm's motion for clarification [D.E. 130].  Therein, the Magistrate Judge re-iterated that the prior Order was

"fashioned to permit discovery concerning compliance with the firewall arrangements between these entities *without disclosing the scope of SKGF's representation of ParkerVision*." *See id.* at 2 (emphasis added).  The Magistrate Judge further "confirm[ed], if confirmation is necessary," that "[t]he Motion to Compel is granted to the extent, *and only to the extent*, set forth in the Court's Order on June 7, 2012" and that the "request to compel other information sought by Request for Production No. 37," as well as to compel a response to Interrogatory Nos. 2 and 3, was denied. *See id.* at 2-3 (emphasis added).

**QUALCOMM'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S DISCOVERY ORDERS**

It is against this backdrop that Qualcomm has filed its objections to the Magistrate Judge's discovery Orders.  As shown below, however, the arguments asserted by Qualcomm are without merit and its objections should be denied.

**I.      Qualcomm's Presuppositions as to the Bases for the Magistrate Judge's Rulings are Belied by the Briefs Submitted by the Parties and the Orders Themselves.**

Qualcomm argues the Magistrate Judge's Orders evidence a misunderstanding of the bases of its counterclaims against SKGF.  However, this seems unlikely as Qualcomm clearly articulated the bases for its "common law counterclaims" not only in the introduction of its initial motion to compel - utilizing near verbatim text to that set forth in its pending objections – but also in a declaration submitted in support of said motion. *Compare* D.E. 94, pp.1-2; D.E. 95, ¶ 1; and D.E. 144, pp. 1-2. Moreover, Qualcomm repeated this description of the bases for its counterclaims in a subsequent motion to compel which was before the Magistrate Judge prior to issuance of the Order on Qualcomm's motion for clarification. *See* D.E. 117, pp. 1-2.  As such, Qualcomm had at least thrice before informed the Court, in

4

unequivocal language, of the bases for its counterclaims prior to issuance of the latest Order to which it objects.  It seems incredulous to believe the Magistrate Judge failed to recognize the bases for Qualcomm's counterclaims in light of these disclosures.

The Magistrate Judge's references to the Firewall Provision in the 1999 Letter Agreement does not evidence otherwise. While Qualcomm did not explicitly assert the Firewall Provision as a basis for the requested discovery, it did assert the 1999 Letter Agreement – which includes the Firewall Provision – as a basis for the requested discovery. *See* D.E. 94, p. 2; D.E. 95, ¶ 1; D.E. 117, p. 2.  Moreover, Qualcomm attached the 1999 Letter Agreement as an exhibit in support of its motion to compel. *See* D.E. 95-1.[1]  Since Qualcomm placed the 1999 Letter Agreement at issue, the Magistrate Judge was entitled to consider the whole of the agreement when considering the scope of discovery authorized in this action.

Contrary to Qualcomm's pending objections, the more plausible explanation for the scope of relief afforded in the discovery Orders is that while the Magistrate Judge appreciated the purported bases for Qualcomm's counterclaims, he found that Qualcomm failed to meet its burden to invade the attorney-client relationship between SKGF and ParkerVision.   In its motions to compel and for clarification, Qualcomm requested the Court compel SKGF to disclose the "who," "what," "when," and "how long" pertaining to any alleged assistance to ParkerVision in the initiation of this action.  SKGF countered that it could not respond to the complained-of discovery requests because to do so would necessarily disclose the nature and scope of the attorney-client relationship between SKGF

---

[1]  The Magistrate Judge's reference to a provision in an exhibit attached to the motion to compel further evidences that the Magistrate Judge read all of the materials provided and, therefore, was aware of the bases asserted by Qualcomm for its counterclaims.

and ParkerVision - which is protected by the attorney-client privilege.  Faced with these divergent positions, the Magistrate Judge appears to have considered the applicability of the attorney-client privilege to the complained-of discovery requested and whether full disclosure (advocated by Qualcomm) or no disclosure (advocated by SKGF) was appropriate in light of the purported bases for the counterclaims, i.e., the duty of loyalty under Rule 1.7 and the 1999 Letter Agreement.  The result was a finding somewhere in-between. Specifically, the Magistrate Judge found that some of the requested information fell squarely within the protective scope of the attorney-client privilege, i.e., the requested "what," and, therefore, was exempt from prying eyes.  However, the "who" and "when" information could be relevant only to the extent Qualcomm could assert a claim under the Firewall Provision of the 1999 Letter Agreement and, therefore, should be discoverable at this time.

Nothing in the Magistrate Judge's Orders evidences a misunderstanding of Qualcomm's purported bases for the counterclaims.  Rather, the Orders evidence a thoughtful consideration of all the issues which have been and could be asserted in relation to Rule 1.7 and the 1999 Letter Agreement and provide a scope of relief in accordance therewith.

## II.  The Magistrate Judge Correctly Held That the Scope of the SKGF-ParkerVision Representation is Protected from Disclosure Under the Attorney-Client Privilege

Qualcomm merely re-hashes old arguments and inapposite case law to argue the Magistrate Judge erroneously held that the scope and nature of the work provided by SKGF for ParkerVision is protected by the attorney-client privilege.  Moreover, Qualcomm, yet again, fails to distinguish - or even address – the applicable case law cited by SKGF in its responses to Qualcomm's discovery motions.  As shown below, the limited scope of relief

6

afforded in the Magistrate Judge's Orders comports with the applicable law concerning discovery into the scope and nature of an attorney-client relationship.

Through cleverly crafted requests for production and interrogatories, Qualcomm seeks to invade the SKGF-ParkerVision attorney-client privilege by compelling the disclosure of the subject matter of SKGF's representations of ParkerVision.  Specifically, Qualcomm seeks to discern if ParkerVision ever sought legal advice from SKGF regarding potential infringement of ParkerVision's patents by Qualcomm. *See* Requests for Production No. 37; Interrogatory Nos. 2 and 3.  As the Magistrate Judge properly found, however, to respond to these discovery requests would necessarily require SKGF to breach its duty of confidentiality to ParkerVision.  Therefore, only a more limited response is warranted.

In each of the complained of discovery requests, Qualcomm makes the assumption that ParkerVision retained SKGF "for work related to this action or enforcement of the Patents-in-Suit." Qualcomm seeks responses to the discovery requests not because it is interested in any substantive response but, rather, because it seeks confirmation that its assumption is correct. Qualcomm chose this ploy because it knows that it could not ask directly the question that it really wants answered, i.e., what was the nature of the SKGF-ParkerVision representation. This is because any inquiry into the motive of ParkerVision or the nature of any SKGF-ParkerVision representation is clearly improper and objectionable.[2]

---

[2]  Moreover, Qualcomm appears to have forgotten the old adages that "[a]ctions speak louder than words" and "[w]hat is good for the goose is good for the gander."  In this very same action, during discussions surrounding the attachment of a 2010 SKGF-Qualcomm engagement letter as an exhibit to a pleading, Qualcomm took the contrary position that SKGF must not disclose the subject matter of the SKGF-Qualcomm representation because this information is a "protected client confidence." *See* D.E. 38, p. 7 fn. 2.  Qualcomm cannot have it both ways and now demand that this same information be made available with respect to the SKGF-ParkerVision relationship.

*See e.g.*, *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 1995 WL 598971 (S.D.N.Y. 1995) (attorney-client privilege applicable to discovery which would "reveal the motive of the client in seeking representation, litigation strategy, [ ] *the specific nature of the services provided* … [or] *the precise nature of representation*"). Qualcomm may not seek to evade this restriction by merely predicating its discovery request with an assumption that SKGF has been retained to provide such services. *See e.g.*, *Banks v. Office of the Sergeant-at-Arms*, 241 F.R.D. 376, 382 (D.D.C. 2007) (deposition questions objectionable under attorney-client privilege where, if answered in affirmative, answer would disclose that attorney and client discussed such topic). Qualcomm's improper motive in the complained-of discovery requests is self-evident and warranted a finding that no response was warranted.

None of the case law cited in Qualcomm's motions – and re-cited herein - compel a different result. Qualcomm argues billing/time records are not subject to the attorney-client privilege and therefore should be produced. However, under Florida law, the attorney-client privilege <u>does</u> protect billing records from discovery by an adversarial party unless some exception applies, such as the crime-fraud exception or in attorney's fee cases. *See e.g.*, *Jacob v. Barton*, 877 So.2d 935, 936 (Fla. 2nd DCA 2004); *Progressive Am. Ins. Co. v. Lanier*, 800 So.2d 689, 690 (Fla. 1st DCA 2001). No such exception, however, applies here.

Moreover, the cases cited by Qualcomm are largely inapposite or, in fact, support a finding of privilege. The majority do not even address the issue of billing records and the attorney-client privilege, while others fall squarely into one of the exceptions  - inapplicable here - to the general rule that billing records are privileged. Meanwhile, in *Fed. Trade Comm'n v. Cambridge Exch., Ltd.*, 845 F.Supp. 872, 874 (S.D. Fla. 1993), cited with

approval by Qualcomm, the court actually held that the production of billing records would be privileged if "its disclosure would reveal *other privileged information, such as … the nature of legal services performed*."  That is the very issue presented here.  The production of the requested billing records would necessarily result in the disclosure of the "nature of legal services performed."  As such, the attorney-client privilege applies.

Qualcomm's arguments with respect to the interrogatories are similarly unavailing. Qualcomm asserts Interrogatory No. 2 merely seeks discovery of the identities of certain SKGF attorneys – not the substance of their communications. *See* D.E. 144, p. 14.  However, this is a misleading characterization of the discovery request.  Interrogatory No. 2 requests SKGF "[i]dentify every [SKGF] attorney who has communicated orally or in writing with any attorney [representing ParkerVision in this action] *concerning this action and/or the Patents-in-Suit*."  The discovery request itself dictates the "what" of the purported communications, i.e., "concerning this action and/or the Patents-in-Suit," and, as such, any response would necessarily result in the unwarranted disclosure of the nature and/or scope of the SKGF-ParkerVision relationship - which is privileged.  The Magistrate Judge properly rejected Qualcomm's attempt to do an end-run around the attorney-client privilege by including the scope of representation in the discovery request.

Qualcomm asserts Interrogatory No. 3 merely seeks a "general description/identification" of "all analysis, presentations, draft pleadings, or other documents prepared for the benefit of ParkerVision," as opposed to their actual production. *See* D.E. 144, p. 15.  This, however, is another gross mischaracterization of the discovery request. Interrogatory No. 3, in pertinent part, requests SKGF "[d]escribe all steps you took to assist

ParkerVision in analyzing Qualcomm's products or preparing to enforce the Patents-in-Suit against Qualcomm, including by … (ii) identifying all analysis, presentations, draft pleadings, or other documents prepared for the benefit of ParkerVision or its attorneys …" Again, the cleverly-crafted discovery request dictates the "what" information Qualcomm seeks to compel, i.e., "to assist ParkerVision in analyzing Qualcomm's products or preparing to enforce the Patents-in-Suit," and, as such, any response would necessarily result in the unwarranted disclosure of the nature and/or scope of the SKGF-ParkerVision relationship - which is privileged. The Magistrate Judge properly rejected this further attempt to invade the attorney-client privilege by including the scope of representation in the discovery request.

Qualcomm's argument that a privilege log would essentially require disclosure of the same information requested is also unavailing. Where submittal of a traditional privilege log may itself result in the disclosure of protected information, alternative means may be utilized to substantiate a privilege objection. *See e.g., Nevin v. Palm Beach County School Board*, 958 So.2d 1003, 1008 (Fla. 1st DCA 2007) (finding no need to identify specific documents on a privilege log where categorical claim of privilege asserted and category itself is plainly protected); *Republic Serv.'s Inc. v. American Int'l Specialty Lines Ins. Co.*, 2008 WL 4691836, at *3 (S.D. Fla. Oct. 21, 2008) (permitting party to provide a "categorical log" as to certain enumerated classes of documents that would clearly be privileged); *S.E.C. v. Thrasher*, 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996) (acknowledging discretion of trial courts to permit less detailed disclosure in cases where a detailed disclosure would, in effect, reveal the very information that may be privileged). Because a traditional privilege

log would necessarily require the disclosure of privileged information, a categorical claim of privilege, as asserted by SKGF, should suffice.

Finally, Qualcomm's blanket assertion that SKGF's assertion of the attorney-client privilege necessarily means it "did in fact assist ParkerVision to bring this action against Qualcomm" misses – or more likely, intentionally ignores – the point. The mere allegation of a breach of fiduciary duty and/or contract claim does not eviscerate the attorney-client privilege.[3] Moreover, Qualcomm expressly authorized SKGF to engage in some acts contrary to Qualcomm's interests, i.e., patent analysis and opinion work. Nothing can, nor should, be made of SKGF's assertion of the attorney-client privilege in response to Qualcomm's improper discovery requests.

## BIFURCATION AND STAY

*If the camel once gets his nose in the tent, his body will soon follow.*
Arabian proverb

Once the attorney-client privilege is allowed to be invaded, it is impossible to remedy the breach. Therefore, in the event this Court believes there may be some circumstance whereby a response to the complained-of discovery requests may be necessary, utmost protection should be made to ensure such privileged disclosures are only made in the unlikely event that a cause of action can actually be sustained by Qualcomm. Since the issues that would need to be decided to prevent the unnecessary disclosure of attorney-client privileged materials is narrow, SKGF contends this protection may be afforded by either staying the

---

[3]   The irony is not lost that that while Qualcomm complains that SKGF has purportedly breached its duty of loyalty to Qualcomm, it asks this Court to compel SKGF to breach its duty of confidentiality to ParkerVision.

requested discovery and bifurcating the fiduciary duty and contract claims until the completion of the underlying patent action or, at a minimum, having the Court determine the scope of the consent provided SKGF in the 2010 Engagement Letters.

## I.    Discovery Should Be Stayed and the Fiduciary Duty and Contract Claims Bifurcated Until Resolution of the Patent Action[4]

Over the years, courts have routinely justified forestalling the potential disclosure of attorney-client privileged materials relating to a supplemental cause of action until after the principal action has been resolved.  For instance, the Federal Circuit has advised trial courts that bifurcation may be a useful mechanism to alleviate concerns about the unnecessary impingement upon the attorney-client privilege in patent infringement cases. *See Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991) (discussing bifurcation in the context of a willful infringement analysis). Similarly, courts have stayed discovery and bifurcated trials on bad faith claims pending resolution of the underlying contract or product liability actions to avoid possible attorney-client dilemmas. *See Gatewood v. Universal Underwriters Life Ins. Co.*, 2007 WL 496375 (W.D. Ky. Feb. 7, 2007) (staying discovery and bifurcating trial pending resolution of underlying contract claim in order to avoid production of privileged documents irrelevant to contract action); *Ferro Corp. v. Continental Cas. Co.*,

---

[4]  In the Joint Case Management Report [Doc. No. 69], ParkerVision and SKGF proposed bifurcation of the fiduciary duty and contract claims due to the unrelated nature of these claims from the underlying patent infringement action, as well as the possibility that these claims could confuse the jury when addressing the complex patent infringement claims and defenses.  In the Case Management and Scheduling Order (D.E. 84), the Court declined to decide the issue of bifurcation on the grounds that any such consideration was premature.

The Joint Case Management Report and Case Management and Scheduling Order were submitted and entered, respectively, prior to Qualcomm's service of the pending discovery which has pushed the SKGF-ParkerVision attorney-client privilege to the forefront.  As a result of the potential for the complained-of discovery to unnecessarily invade the SKGF-ParkerVision attorney-client privilege, SKGF contends the issue of bifurcation is ripe for further consideration.

2008 WL 5705575 (N.D. Ohio Jan. 7, 2008) (staying discovery and bifurcating insured's bad faith claim against insurer from products liability suits in light of privilege concerns).

In the present action, the discovery requests seeking to impinge upon the SKGF-ParkerVision attorney-client relationship have no relevance to the underlying patent infringement action.  They solely relate to the facially suspect and inherently baseless breach of fiduciary duty and contract claims.  These claims are refuted by the 1999 Letter Agreement and 2010 Engagement Letters.  Furthermore, the claims will only accrue if Qualcomm can show it has incurred damages at the conclusion of the underlying patent action. *See* D.E. 99, pp. 24-25 *citing Blumberg v. USAA Cas. Ins. Co.,* 790 So. 2d 1061, 1065 (Fla. 2001); *Hold v. Manzini,* 736 So. 2d 138, 142 (Fla. 3rd DCA 1999). Until that time, the claims are merely "hypothetical and damages are speculative." *Id.*

Qualcomm's allegation that it is incurring attorney's fees or other expenses in defending the infringement claims is not sufficient to establish redressable harm for purposes of its breach of fiduciary duty and contract claims against SKGF. *See Bierman v. Miller,* 639 So. 2d 627, 628 (Fla. 3d DCA 1994). Moreover, Qualcomm's claim that it has lost the value of SKGF's opinion work because it "will need" to retain replacement counsel to finish, or "possibly restart," the opinion work is also a premature, speculative claim for potential future damages. *See Hold,* 736 So.2d at 142. Thus, Qualcomm's claims are premature and should be abated or stayed until the underlying infringement suit is concluded or Qualcomm can otherwise demonstrate actual redressable harm caused by SKGF.

## II.   <u>Alternatively, the Consent Issue Should Be Decided Before Discovery is Allowed</u>

As discussed above, the 1999 Letter Agreement and 2010 Engagement Letters clearly contemplate SKGF being allowed to conduct "infringement, validity and freedom-to-use

investigations" on behalf of ParkerVision, even against Qualcomm.  Therefore, even if SKGF engaged in the alleged conduct complained of, i.e., conducting a pre-suit infringement analysis, the complained of actions would have been authorized under the parties' agreements.  Qualcomm's only defense to the facial applicability of the consent contained in the 2010 engagement letters to the alleged pre-suit work by SKGF is Mr. Roger's conclusory affidavit that he did not intend what the plain words appear to mean. Limited discovery and briefing on that issue may well obviate any possible unnecessary disclosure of SKGF-ParkerVision attorney-client privileged communications. Accordingly, SKGF alternatively submits that this issue should be briefed and argued before any arguably privileged materials should be compelled to be disclosed.

## CONCLUSION

In conclusion, SKGF respectfully submits that because the requested information is either privileged or irrelevant, Qualcomm's motion to compel was properly ruled upon by the Magistrate Judge.  In the event the Court believes further consideration is necessary, SKGF respectfully submits that any such action should be delayed until the close of the underlying patent infringement actions, or at least until after the consent issue has been resolved.

Dated: August 24, 2012          By:     /s/ David M. Wells_____
                                        David M. Wells – Trial Counsel
                                        Florida Bar #309291
                                        David R. Atkinson
                                        Florida Bar #767239
                                        Scott W. Dangler
                                        Florida Bar #429007
                                        *Counsel for Sterne, Kessler, Goldstein*
                                        *& Fox PLLC*
                                        GUNSTER, YOAKLEY & STEWART, P.A.
                                        225 Water Street, Suite 1750
                                        Jacksonville, FL 32202

Telephone: 904-354-1980
Facsimile: 904-354-2170
dwells@gunster.com
datkinson@gunster.com
sdangler@gunster.com

.

## CERTIFICATE OF SERVICE (Documents filed via CM/ECF)

I hereby certify that on the 24th day of August, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.


/s/ David M. Wells
David M. Wells

**ELECTRONIC MAIL SERVICE LIST**
**CASE NO.: 3:11-cv-719-J-37-TEM**

***Counsel for Defendant, Counterclaim Plaintiff Qualcomm Incorporated***

John A. DeVault, III
jad@bedellfirm.com
Courtney Kneece Grimm
cgrimm@bedellfirm.com
Bedell, Dittman, DeVault, Pillans & Coxe, P.A.
The Bedell Building
101 East Adams Street
Jacksonville, FL  32202
Phone:  904-353-0211
Facsimile:  904-353-9307
FLABAR#103979

Keith R. Hummel
khummel@cravath.com
David Greenwald
dgreenwald@cravath.com
Joseph Everett Lasher
jlasher@cravath.com
Peter A. Emmi
pemmi@cravath.com
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019-7475
Phone:  212-474-1000
Fax:  212-474-3700

Christopher A. Hughes
Christopher.Hughes@cwt.com
John Moehringer
John.moehringer@cwt.com
Robert Pollaro
Robert.pollaro@cwt.com
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Phone:212-504-6000
Fax:  212-504-6666

16

***Counsel for Plaintiff, Counterclaim Defendant, ParkerVision***
Ava K. Doppelt
adoppelt@addmg.com
Brian R. Gilchrist
bgilchrist@addmg.com
Jeffrey Scott Boyles
jboyles@addmg.com
Allen, Dyer, Doppelt, Milbrath & Gilchrist, PA
255 S Orange Ave – Ste 1401
PO BOX 3791
Orlando, FL  32801
Phone:  407-841-2330
Fax:  407-841-2343

Stephen D. Busey
busey@smithhulsey.com
James Arthur Bolling
jbolling@smithhulsey.com
Smith, Hulsey & Busey
225 Water St – Ste 1800
PO BOX 53315
Jacksonville, FL  32202-3315
Phone:  904-359-7700
Fax:  904-359-7708

T. Gordon White
gwhite@mckoolsmith.com
McKool Smith P.C.
300 West 6th Street, Suite 1700
Austin, TX 78701
Phone:  512-692-8700

J. Austin Curry
acurry@mckoolsmith.com
Douglas Cawley
dcawley@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court
Suite 1500
Dallas, TX 75201
Phone:  214-978-4000
Fax: 214-978-4044

JAX_ACTIVE 3210979.3