**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PARKERVISION, INC.,

        Plaintiff,

v.

QUALCOMM INCORPORATED,

        Defendant.

_____

QUALCOMM INCORPORATED,               Case No. 3:11-cv-719-J-37TEM

        Counterclaim Plaintiff,

v.

PARKERVISION, INC., AND STERNE,
KESSLER, GOLDSTEIN, & FOX PLLC,

        Counterclaim Defendants.

_____


**PLAINTIFF PARKERVISION INC.'S MOTION FOR LEAVE**
**TO SERVE SUPPLEMENTAL INFRINGEMENT CONTENTIONS BASED UPON**
**QUALCOMM'S BELATED SUPPLEMENTATION OF ITS INTERROGATORY**
**RESPONSES TO INDENTIFY ADDITIONAL ACCUSED INSTRUMENTALITIES**

Plaintiff ParkerVision, Inc. ("ParkerVision") respectfully seeks leave pursuant to Eastern District of Texas Local Patent Rule 3-6(b)[1] to serve supplemental infringement contentions on Qualcomm, Inc. ("Qualcomm").  ParkerVision has good cause for its proposed supplement based upon Qualcomm's belated identification of additional infringing products in its recently served supplemental Interrogatory responses.   ParkerVision's proposed Supplemental Infringement Contentions are attached hereto as Exhibit A.

## I.      INTRODUCTION

On March 2, 2012, pursuant to the deadline set in the Court's scheduling order, ParkerVision served its Infringement Contentions ("ICs") on Qualcomm.   These ICs accused each of the products identified in Qualcomm's February 21, 2012 response to Interrogatory No. 2 of infringement.  And, per the agreement of the parties, these ICs also contended that each of the accused products contained substantially the same infringing functionality (*i.e.* a receiver that performs direct conversion).   On June 21, 2012, Qualcomm supplemented its response to ParkerVision's Interrogatory No. 2—listing additional products that contain the accused receiver functionality.   Qualcomm had not previously informed ParkerVision that these additional products also included the accused receiver functionality.   Based upon Qualcomm's belated supplemental response to Interrogatory No. 2, ParkerVision believes that it has good cause to supplement its ICs to account for the additional products only recently disclosed by Qualcomm to contain the accused receiver functionality.  Any alleged prejudice Qualcomm claims is a result of its failure to identify the additional products that include the accused receiver functionality earlier.  Moreover, given the stage of the case (no depositions have been taken, discovery closes

---

[1] In its Case Management Order, the Court applied the Eastern District of Texas Rules of Practice for Patent Cases with respect to the disclosure and amendment of the parties' infringement and invalidity contentions. Dkt. 84 at 1-2.

at the end of November and trial is nearly a year away), no Court-imposed deadlines need to be altered, and any alleged prejudice to Qualcomm is *de minimis*.

## II.     STATEMENT OF FACTS

### A.     Case Management Agreements and Deadlines.

In accordance with the Local Rule 3.05(c) for Middle District of Florida, the parties submitted a Joint Case Management Report to the Court on December 30, 2011. Dkt. 69. In the Joint Case Management Report the parties agreed that:

> If the party asserting patent infringement contends that an identical Accused Instrumentality is contained in multiple products, then that Accused Instrumentality is required to be charted only once with an accompanying identification of the products that allegedly contain that Accused Instrumentality;

*Id*. at 15.  The Court's Case Management and Scheduling Order, issued on February 13, 2012, and set March 2, 2012 as the deadline for ParkerVision's ICs. Dkt. 84.

### B.     ParkerVision Diligently Sought Discovery Related to its Infringement Contentions.

In early January 2012, shortly after the discovery period opened, ParkerVision served Qualcomm with its First Set of Interrogatories.[2]  *See* Ex. B.  Interrogatory No. 2 asked:

> Separately for each product disclosed in response to Interrogatory 1, identify which products contain a receiver (or receiver function) that performs direct conversion, i.e., conversion of a signal on a carrier frequency to baseband without conversion to an intermediate frequency, and for each identified product, describe, using the most accurate terms possible, the mechanism or circuitry that performs the direct conversion

*Id*. at 9.  ParkerVision's Interrogatory No. 2 was designed to determine the potential universe of Qualcomm products that contained the accused receiver functionality.   Interrogatory No. 4 asked:

---

[2] Pursuant to Local Rule 3.05(c) for the Middle District of Florida, ParkerVision could not serve discovery on Qualcomm until after the parties had completed their case management meeting, which took place in late December 2011.

> Identify and describe all differences between the products disclosed in response to Interrogatory 2 with respect to the receiver (or receiver function) that performs direct conversion.

*Id*. at 9-10. Reflecting the agreement of the parties in the Joint Case Management Report, Interrogatory No. 4 was designed to test ParkerVision's contention that the accused instrumentality (*i.e.* the receiver) was the same in each of the accused products (*i.e.* those products indentified by Qualcomm in response to Interrogatory No. 2 as containing the accused receiver functionality).

Pursuant to Fed. R. Civ. P. 33(b)(2), Qualcomm had until February 21, 2012 to answer ParkerVision's interrogatories—comfortably in advance of the March 2, 2012 deadline for ParkerVision's ICs as set by the Court in its Case Management Order.  On February 21, 2012, Qualcomm answered ParkerVision's Interrogatory No. 2 by listing some, but not all, of its products that include the accused receiver functionality.[3]  Qualcomm's response referred ParkerVision to a partial list of products that included the accused receiver functionality identified in an exhibit, attached to Qualcomm's response.  This partial disclosure did not fully answer the Interrogatory, which was directed to any "receiver (or receiver function) that performs direct conversion, i.e., conversion of a signal on a carrier frequency to baseband without conversion to an intermediate frequency."  Accordingly, Qualcomm's initial response to Interrogatory No. 2 was deficient.  Moreover, Qualcomm did not respond substantively to ParkerVision's Interrogatory No. 4.   Rather, Qualcomm merely invoked Rule 33(d) and promised to produce documents at some point in the future.[4]

---

[3] Qualcomm's Interrogatory Responses are marked as "confidential."  As such, ParkerVision has not attached them.

[4] Even today, some six months *after* the due date for Qualcomm's response to Interrogatory No. 4, Qualcomm still has not provided a substantive response, nor has Qualcomm produced any

McKool 657959v4

On February 22, 2012, ParkerVision notified Qualcomm of the shortcomings in its responses to Interrogatories Nos. 2 and 4. Ex. C.   Specifically, ParkerVision noted that Qualcomm limited its response to Interrogatory No. 2 to a subset of products that contained the infringing receiver design. *Id*. In order to avoid motions practice, ParkerVision proposed a compromise: Qualcomm would supplement its deficient discovery responses to account for each of Qualcomm's products that contained the accused receiver functionality.  *Id*.  In response to ParkerVision's proposal, Qualcomm made a counter-offer: it would agree to supplement its deficient Interrogatory responses if ParkerVision would agree to limit its ICs to "those Qualcomm products that contain a receiver (or receiver function) that perform direct down-conversion using passive mixers." Ex. D. ParkerVision agreed, but reserved the right to supplement its ICs if Qualcomm's supplemental responses proved deficient. Ex. E.

Qualcomm provided the supplemental Interrogatory responses the evening of March 2, 2012, and ParkerVision timely served its ICs on Qualcomm a few hours later. Ex. F; Ex. G.

Then, on June 21, 2012, some three-and-a-half months following the service of its ICs, Qualcomm supplemented its response to Interrogatory No. 2 to list new, and previously unidentified products, that include the accused receiver functionality. In light of the newly disclosed products, ParkerVision sought Qualcomm's agreement not to oppose this Motion for Leave. Ex. H. Qualcomm refused. Ex. I.

## III.   ARGUMENT

### A.      ParkerVision Has Good Cause To Serve Supplemental ICs.

The Local Patent Rules of the Eastern District of Texas ("Patent Rules"), which the Court has adopted for purposes of this case, permit supplementation of ICs by order of the Court upon

---

documents pursuant to Rule 33(d).  Qualcomm has recently indicated, however, that a subset of responsive documents will be produced on August 31, 2012.

a showing of good cause.  *See* P.R. 3-6(b); Dkt. 84 at 1. The Court has broad discretion to modify its scheduling orders and allow supplementation of ICs. *Arbitron, Inc. v. Int'l Demographics Inc.*, No. 2:06-CV-434, 2009 WL 166555, at *3 (E.D. Tex. Jan. 16, 2009). Courts apply a four factor test to determine whether good cause exists for supplementing ICs. The four factors are: (1) the explanation for the failure to meet the deadline; (2) the importance of the supplementation; (3) potential prejudice in allowing the supplementation; and (4) the availability of a continuance to cure any prejudice. *Id.* at *3-4 (citing *S&W Enters. v. Southtrust Bank of Ala.*, 315 F.2d 533, 536 (5th Cir. 2003)).

Considering these factors, there is good cause to allow ParkerVision to supplement its ICs.  ParkerVision's proposed supplement: (1) is made in response to Qualcomm's belated identification of additional infringing products in its supplemental responses to ParkerVision's Interrogatories; (2) is important because it ensures that this case will resolve PakerVision's infringement claims against Qualcomm without need for further litigation to address the recently added products; (3) will not result in the alteration of any Court-ordered deadlines and will not prejudice Qualcomm (as Qualcomm has long known about the recently-added products, but only recently disclosed them to ParkerVision, no depositions have occurred, discovery does not close until the end of November 2012, and trial is scheduled for August 2013); and (4) will not require a continuance because there is no prejudice, and even if there were, trial is not set until August 2013.

      1.    <u>Factor One: Explanation for Failure to Meet the Deadline.</u>

There was no failure on the part of ParkerVision to meet a deadline. On March 2, 2012, ParkerVision timely served its ICs. Rather, ParkerVision is seeking to supplement its ICs as a direct result of Qualcomm's untimely supplemental response to Interrogatory No. 2 identifying

additional infringing products, and its continued failure to respond substantively to Interrogatory No. 4.

Under Patent Rule 3-6(b), Qualcomm's belated, supplemental response to Interrogatory No. 2 identifying new infringing products, and its continued failure to substantively respond to Interrogatory No. 4, in conjunction with ParkerVision's diligence, constitutes good cause. *See Performance Pricing, Inc. v. Google, Inc.*, No. 2:07-cv-432, 2009 U.S. Dist. LEXIS 84211, at *6-*12 (E.D. Tex. Sept. 15, 2009) (granting leave to supplement ICs where it was not possible for plaintiff to assert the alternative analysis at issue until after the defendants had disclosed its non-infringement theories); *Mass Engineered Design v. Ergotron, Inc.*, No. 2:06-CV-272, 2008 U.S. Dist. LEXIS 35577, at *14-17 (E.D. Tex. Apr. 30, 2008) (granting leave to supplement where defendant was uncooperative as to discovery of products not explicitly listed in the original ICs); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) (finding that "refusing to allow any amendment to contentions based on new information developed in discovery could be contrary to the spirit of the Federal Rules").

Prior to receiving Qualcomm's supplemental response to Interrogatory No. 2, ParkerVision had no reasonable means of learning that the products it seeks leave to add to its ICs also contained the accused functionality (*i.e.* "a receiver (or receiver function) that performs direct conversion, i.e. conversion of a signal on a carrier frequency to baseband without conversion to an intermediate frequency"). *See* Ex. B.  The relevant information regarding the operation of Qualcomm's products (*e.g.*, design documents and schematics) is not publicly available for ParkerVision to analyze, and ParkerVision has diligently sought to obtain the information from Qualcomm through discovery (even though Qualcomm has, of the date of this Motion, not provided any design documents or schematics to ParkerVision related to any of the

accused products).  *See Honeywell Int'l, Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 657-58 (E.D. Tex. 2009) (addressing the lack of public-accessibility of information regarding a defendant's products in evaluating a plaintiff's efforts to obtain discovery regarding potentially-infringing products not yet accused in its ICs).[5]  Accordingly, ParkerVision has good cause to supplement its ICs to add the additional products that Qualcomm only recently identified as including the infringing receiver functionality.

2.      Factor Two: Importance of Thing to be Excluded.

Were the additional Qualcomm products ParkerVision seeks leave to add not included in this case, ParkerVision would be forced to seek to address these additional Qualcomm products via other litigation.   Judicial economy, conservation of scarce resources and other such considerations counsel in favor of resolving each of ParkerVision's infringement claims with respect to the patents-in-suit against Qualcomm now, as part of this litigation, rather than through serial litigations.  Moreover, it is ParkerVision's understanding (particularly in the absence of a substantive response from Qualcomm to ParkerVision Interrogatory No. 4) that the newly identified products it seeks to add to its ICs contain the same infringing receiver functionality and therefore function in substantially the same way as the products already included in its ICs.  This factor weighs in favor of granting leave.

3.      Factor Three: Potential Prejudice in Allowing the Supplement.

Qualcomm will suffer no prejudice if the Court grants ParkerVision leave to serve supplemental ICs adding the new infringing products only recently disclosed by Qualcomm in its June 21, 2012 supplemental response to Interrogatory No. 2.  Any alleged prejudice Qualcomm

---

[5] The Qualcomm accused products are extraordinarily difficult, expensive and time-consuming to obtain and reverse engineer; undertaking the reverse-engineering effort for each separately accused product would require an enormous, prohibitive expenditure of time and money.  Each such report costs in excess of $100,000.

7

claims is a direct result of its own failure to identify the added products earlier.  Qualcomm—as

the provider of the added products—has long known about them, and cannot justify its failure to

disclose those products to ParkerVision earlier (*i.e.*, in its original response to Interrogatory No.

2).  Given the stage of the case (no depositions have been taken, discovery closes at the end of

November and trial is nearly a year away), any alleged prejudice is *de minimis*.

Moreover, it is ParkerVision's contention, particularly in the absence of a substantive

response to Interrogatory No. 4 from Qualcomm, that the newly identified products that it seeks

to add to its ICs contain substantially the same accused receiver functionality as the current

accused products. Thus, the addition of the new products to ParkerVision's ICs will not result in

the assertion of any new patent claims or infringement theories, and will not result in the need for

additional discovery or modification of any Court-ordered deadlines.  This further shows that any

alleged prejudice to Qualcomm is *de minimis*.

4.      <u>Factor Four: Availability of a Continuance.</u>

The Court need not consider the fourth factor where, as here, there is no prejudice.  *See*

*Arbitron*, 2009 U.S. Dist. LEXIS 3191, at *8.  Moreover, even if there were some prejudice, no

continuance is needed because trial is scheduled for August 2013—nearly one full year away.

**B.     ParkerVision's Infringement Contentions Comply with Patent Rule 3-1.**

The Patent Rules require a plaintiff to serve a "Disclosure of Asserted Claims and

Infringement Contentions." P.R. 3-1. ICs must identify "specifically where each element of each

asserted claim is found within each" accused product or feature. P.R. 3-1(c). ICs must also

identify the claims accused of infringement and the accused products and/or features. *800 Adept,*

*Inc. v. Enter. Rent-A-Car Co.*, No. 2008 U.S. Dist. LEXIS 12492, at *6 (E.D. Tex. Feb. 20,

2008). ICs serve to provide a defendant with *notice* of a plaintiff's theories of infringement.

*Whipstock Servs., Inc. v. Schlumberger Oilfield Servs.*, No. 6:09-CV-113, 2010 U.S. Dist. LEXIS

1395, at *3 (E.D. Tex. Jan. 8, 2010). However, ICs "are not intended to require a party to set forth a prima facie case of infringement and evidence in support thereof." *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-CV-144, 2009 U.S. Dist. LEXIS 73217, at *27 (E.D. Tex. Aug. 18, 2009) (citations omitted).

Qualcomm illogically bases its refusal to agree to ParkerVision's Motion for Leave to serve supplemental ICs on the grounds that ParkerVision's original ICs were deficient and that the supplement ParkerVision proposes will not correct the alleged deficiencies. Qualcomm asserts that ParkerVision's original ICs are deficient because they discuss the receiver functionality in a representative chip (the Qualcomm QSC6270) that ParkerVision contends is representative of the receiver functionality in the other, similar accused products. Ex. I. Qualcomm's objections are unfounded and untimely.

1. <u>ParkerVision's ICs Are Consistent with the Agreement of the Parties and the Eastern District of Texas Patent Rules.</u>

ParkerVision's ICs comply fully with the Patent Rules and the agreement of the parties. The parties expressly agreed "[i]f the party asserting patent infringement contends that an identical Accused Instrumentality is contained in multiple products, then that Accused Instrumentality is required to be charted only once with an accompanying identification of the products that allegedly contain that Accused Instrumentality." Dkt. 69 at 15. ParkerVision contends that the accused receiver functionality in the QSC6270 is contained in each of the other accused products (including those ParkerVision seeks leave to add via this Motion).  Indeed, ParkerVision's ICs state this point explicitly: "[t]he circuitry in the Accused Products that converts a signal on a carrier frequency to baseband without conversion to an intermediate frequency, as identified in claims charts, is the Accused Instrumentality." Ex. G. ParkerVision has thus complied with the parties' agreement.

Moreover, and consistent with Patent Rules, ParkerVision's ICs put Qualcomm on notice of its infringement theories—the ICs specifically chart the receiver functionality in the QSC6270 for each asserted claim of each asserted patent, and, per the agreement of the parties, ParkerVision contends that the charted functionality is substantially the same in each of the other accused products. As courts have recited in numerous cases, "while infringement contentions must be reasonably precise and detailed . . . to provide a defendant with adequate notice of the plaintiff's theories of infringement, they need not meet the level of detail required, for example, on a motion for summary judgment on the issue of infringement . . ." *Realtime Data*, 2009 U.S. Dist. LEXIS 73217, at *5 (quoting *Linex Tech., Inc. v. Belkin Int'l., Inc.*, 628 F. Supp. 2d 703, 713 (E.D. Tex. 2008) (internal quotations omitted)).   As ParkerVision's ICs make clear, ParkerVision contends that Qualcomm uses substantially the same receiver design, found in the QSC6270, in each of the Accused Products.  Ex. G.

> 2. <u>Qualcomm Has Refused to Provide ParkerVision With Discovery Necessary to Provide Greater Detail in Its ICs.</u>

ParkerVision contends that there is no substantial difference in the accused receiver functionality between the QSC6270 and the other accused products (including those ParkerVision seeks leave to add via this Motion), and Qualcomm has offered no evidence to the contrary. ParkerVision served its Interrogatory No. 4 on Qualcomm on January 18, 2012.  This Interrogatory—which Qualcomm has *yet* to respond to—asked Qualcomm to identify any material differences between the accused products.  Qualcomm's response was due on February 21, 2012—before the March 2, 2012 deadline for the ParkerVision ICs.

In other words, prior to the deadline for the ParkerVision ICs that Qualcomm now contends are deficient, Qualcomm was obligated to explain if the functionality identified by ParkerVision with respect to the QSC6270 differed with respect to the other accused products.

Qualcomm identified no such differences.   And, not only has Qualcomm not responded to Interrogatory No. 4, Qualcomm has yet to produce *any* design documents, schematics or other similar documentation related to any of the accused products.[6]   ParkerVision specifically requested these documents in its very first request for documents, served on March 13, 2012. Ex. J at 9.   Absent a substantive response by Qualcomm to Interrogatory no. 4, and absent Qualcomm's compliance with its document production obligations, ParkerVision maintains its contention that there is no material difference between the functionality identified in the QSC6270 and the other accused products.   ParkerVision has thus fully complied with the parties' agreement and the Patent Rules.

3.    Qualcomm's Objections Are Untimely.

Finally, Qualcomm's objections to ParkerVision's ICs ring hollow because over five months have passed since ParkerVision served its ICs on March 2, 2012.   Since that time Qualcomm has never (1) requested that ParkerVision supplement the ICs it served on March 2, 2012,[7] or (2) raised the issue before the Court. *Honeywell*, 655 F. Supp. 2d at 656 (quoting *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 818 (E.D. Tex. 2006) (a "defendant cannot lay behind the log until late in the case and then claim that it lacks notice as to the scope of the case or the infringement contentions"); *Orion*, 407 F. Supp. 2d at 817 ("Toyota could have filed a motion with the Court seeking clarification of Orion's [infringement contentions]. Instead, Toyota opted to wait to clarify the issue until such a time that it could claim prejudice if the [infringement contentions] were not read as narrowly as it wanted.").

---

[6] Qualcomm has recently indicated that it will produce a subset of the requested design documents on August 31, 2012 and will reference those documents, pursuant to Rule 33(d), in a supplemental response to Interrogatory No. 4.  *See also* footnote 4, *supra*.

[7] Indeed, Qualcomm takes the position that "Parker Vision is not allowed to amend its Infringement Contentions to remedy the defects that existed on March 2, 2012." Ex. I.

IV.     **CONCLUSION**

For the foregoing reasons, ParkerVision believes it has shown good cause it support of its request for leave supplement its ICs to include the additional infringing products only recently identified by Qualcomm.  ParkerVision respectfully requests that the Court grant its motion and give ParkerVision leave to serve its the Supplemental ICs attached hereto as Exhibit A.

12

August 27, 2012

Respectfully submitted,
**McKOOL SMITH, P.C.**
*/s/  Douglas A. Cawley*
Douglas A. Cawley, Lead Attorney
Texas State Bar No. 04035500
E-mail: dcawley@mckoolsmith.com
John Austin Curry
Texas State Bar No. 24059636
E-mail: acurry@mckoolsmith.com
McKool Smith P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

T. Gordon White
Texas State Bar No. 21333000
gwhite@mckoolsmith.com
Kevin L. Burgess
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
Josh W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
Leah Buratti
Texas State Bar No. 24064897
lburatti@mckoolsmith.com
McKool Smith P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744
**SMITH HULSEY & BUSEY**
*/s/ James A. Bolling*
Stephen D. Busey
James A. Bolling
Florida Bar Number 117790
Florida Bar Number 901253
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
jbolling@smithhulsey.com
*ATTORNEYS FOR PLAINTIFF*
*PARKERVISION, INC.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this day, August 27, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Josh Budwin*

Josh Budwin

**CERTIFICATE OF COUNSEL**

I HEREBY CERTIFY that, on August 27, 2012, counsel for ParkerVision conferred with counsel for Qualcomm in a good faith effort to resolve the issue raised by the motion. Qualcomm opposes this motion.

*/s/ Josh Budwin*

Josh Budwin

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PARKERVISION, INC.,

      Plaintiff,

v.

QUALCOMM INCORPORATED,

      Defendant.

—————————————————

QUALCOMM INCORPORATED,               Case No. 3:11-cv-719-J-37TEM

      Counterclaim Plaintiff,

v.

PARKERVISION, INC., AND STERNE,
KESSLER, GOLDSTEIN, & FOX PLLC,

      Counterclaim Defendants.

—————————————————

**PLAINTIFF PARKERVISION INC.'S SUPPLEMENTAL DISCLOSURE OF**
**ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS BASED UPON**
**QUALCOMM'S BELATED SUPPLEMENTATION OF ITS INTERROGATORY**
**RESPONSES TO INDENTIFY ADDITIONAL ACCUSED INSTRUMENTALITIES**

Plaintiff ParkerVision, Inc. ("ParkerVision") hereby makes the following disclosure of

asserted claims and infringement contentions under the agreed case management report with respect

to U.S. Patent Nos. U.S. Patent Nos. 6,061,551 (the "'551 patent"), 6,266,518 (the "'518 patent"),

6,370,371 (the "'371 patent"), 6,963,734 (the "'734 patent"), 7,496,342 (the "'342 patent"), and

7,724,845 (the "'845 patent") (collectively, the "patents-in-suit"), to Defendant Qualcomm Inc.

("Qualcomm" or "Defendant").

ParkerVision's investigation is ongoing, and discovery is in its early stages.  Accordingly,

1

these disclosures are based on information available to ParkerVision at this time.  ParkerVision reserves the right to supplement this disclosure after further discovery from Qualcomm, particularly documents and other discovery regarding Qualcomm's accused instrumentalities.

ParkerVision also reserves the right to assert additional claims of the patents-in-suit, accuse different instrumentalities, or assert alternative literal and/or equivalent infringing elements in Qualcomm's accused instrumentalities.

# I. INFRINGEMENT CONTENTIONS

## A. Asserted Claims

ParkerVision contends that Qualcomm has infringed and continues to infringe claims 1, 2, 3, 8, 9, 12, 16, 20, 23, 24, 25, 26, 31, 32, 39, 41, 50, 54, 55, 57, 92, 93, 108, 113, 126, 135, 149, 150, 161, 192, 193, 195, 196, 198, 202, and 203 of the '551 patent; claims 1, 2, 3, 12, 17, 24, 27, 77, 81, 82, 90 91 of the '518 patent; claims 1, 2, 22, 23, 25, 31 of the '371 patent; claims 1, 4, 5, 6, 9, 12, 13, 14, 15 of the '734 patent; claims 18, 19, 20, 21, 22, 23 of the '342 patent; and claims 1, 3, 4, 5, 6, 7, 8, 9, 12, 13, 17, 18, 19, 20, 22, 23, 24 of the '845 patent (collectively, the "asserted claims").

ParkerVision reserves the right to seek leave of the Court to add, delete, substitute, or otherwise amend this list of asserted claims should further discovery, the Court's claim construction, or other circumstances so merit.

## B. Accused Instrumentalities and Accused Products

ParkerVision identifies Qualcomm's chipsets that include any one the products identified in Qualcomm's response to ParkeVision's Interrogatory No. 2.  Specifically, ParkerVision identifies the AR6002, AR6013, AR6014, AR6102, AR6122, AR9220, AR9223, AR9227, AR9271, AR9280, AR9281, AR9282, AR9283, AR9285, AR9287, BTS4020, BTS4020BD, BTS4021, BTS4025, BTS4050, BTS4051, BTS4052, BTS4054, BTS4055, BTS5045, ESC6240, ESC6270, FTR8700, MBP1600, MBP1610, MBP2600, MBP2700, MDM6085, MDM6200, MDM6270, MDM6600,

2

MXC6369, MXU6219, QSC1100, QSC1105, QSC1110, QSC6055, QSC6065, QSC6075, QSC6085, QSC6155, QSC6165, QSC6175, QSC6185, QSC6195, QSC6240, QSC6270, QSC6295, QSC6695, QTR8200, QTR8201, QTR8215, QTR8600, QTR8600L, QTR8601, QTR8615, QTR8615L, QTR9215, RGR6240, RGR1000, RGR1100, RTR8201, RTR6236, RTR6237, RTR6280, RTR6285, RTR6285A, RTR6500, RTR8600, RTR8601, RTR8605, RTR8700, RTR9605, WCN1312, WCN1314, WCN1320, WCN2243, WCN3660, WTR1605, and WTR1605L chips as "Accused Products."  Of the Accused Products, ParkerVision identifies Qualcomm's chipsets that include any one of the QSC6055, QSC6065, QSC6075, QSC6085, QSC6155, QSC6165, QSC6175, QSC6185, QSC6195, QSC6240, RGR6240, RTR6285, RTR6285A, RTR6500, WCN1312, WCN1314, WCN1320, WCN2243, and WCN3660 chips as "Fifty Percent Duty Cycle Accused Products."  As discovery is ongoing, ParkerVision reserves the right to update or modify its list of Accused Products and Fifty Percent Duty Cycle Accused Products.

The circuitry in the Accused Products that converts a signal on a carrier frequency to baseband without conversion to an intermediate frequency, as identified in claims charts, is the Accused Instrumentality.

C. Claim Charts

Claim charts showing infringement of the asserted claims by the Accused Products are set forth as Attachments A.1 through A.6, served on January 30, 2012.

D. Literal Infringement and Doctrine of Equivalents

Except as stated otherwise in the claim charts, ParkerVision asserts that, under the proper construction of the asserted claims, every limitation of the Asserted Claims of the Patents-in-Suit is literally present in Qualcomm's Accused Products.  The claim charts further indicate where ParkerVision contends that a claim limitation is met under the doctrine of equivalents in addition to and as an alternative to literal infringement.  ParkerVision reserves its right to amend its infringement

3

contentions to specifically assert infringement under the doctrine of equivalents to account for Qualcomm's proposed claim constructions.

E. <u>Priority Dates</u>

ParkerVision contends that the asserted claims of the patents in suit are entitled to a priority date of no later than the dates specified in the following chart:

| Patent | Priority Date |
|--------|---------------|
| 6,061,551 | October 21, 1998 |
| 6,266,518 | October 21, 1998 |
| 6,370,371 | claim 1: March 3, 1999 all other asserted claims: October 21, 1998 |
| 6,963,734 | March 14, 2000 |
| 7,496,342 | May 16, 2001 |
| 7,724,845 | March 9, 2000 |

F. <u>ParkerVision's Products that Practice the Asserted Claims</u>

ParkerVision's Ellis product practices all asserted claims.  ParkerVision's PV20xx series integrated circuits practice all asserted claims.

## II. DOCUMENT PRODUCTION

ParkerVision intends to produce all relevant, non-privileged documents at this time. However, the search for documents is ongoing, and ParkerVision reserves the right to supplement its production and disclosures as deemed appropriate and necessary in the future.

Documents sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, the claimed invention prior to the dates of applications for the patents-in-suit are located at PV00028373-PV00028427.

The file histories of the patents in suit are located at PV00000214-PV00008384, PV00008592-PV00010418, PV00010518-PV00012433, PV00012577-PV00013566,

4

PV00013971-PV00015654, and PV00015843-PV00028372.

5

August 27, 2012

Respectfully submitted,
**McKOOL SMITH, P.C.**
*/s/ Douglas A. Cawley*
Douglas A. Cawley, Lead Attorney
Texas State Bar No. 04035500
E-mail: dcawley@mckoolsmith.com
John Austin Curry
Texas State Bar No. 24059636
E-mail: acurry@mckoolsmith.com
McKool Smith P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

T. Gordon White
Texas State Bar No. 21333000
gwhite@mckoolsmith.com
Kevin L. Burgess
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
Josh W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
Leah Buratti
Texas State Bar No. 24064897
lburatti@mckoolsmith.com
McKool Smith P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744
**SMITH HULSEY & BUSEY**
*/s/ James A. Bolling*
Stephen D. Busey
James A. Bolling
Florida Bar Number 117790
Florida Bar Number 901253
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
jbolling@smithhulsey.com
*ATTORNEYS FOR PLAINTIFF*
*PARKERVISION, INC.*

6

McKool 718087v2

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this day, August 27, 2012, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to all counsel of record.

                                    */s/ Josh Budwin*

                                    Josh Budwin

McKool 718087v2

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PARKERVISION, INC.,

               Plaintiff,

v.

QUALCOMM INCORPORATED,

               Defendant.

_____

QUALCOMM INCORPORATED,

               Counterclaim Plaintiff,

v.

PARKERVISION, INC., AND STERNE,
KESSLER, GOLDSTEIN, & FOX PLLC,

               Counterclaim Defendants.

_____

Case No. 3:11-cv-719-J-37TEM

**PLAINTIFF PARKERVISION, INC.'S FIRST SET OF**
**INTERROGATORIES TO DEFENDANT QUALCOMM INCORPORATED**

McKool 406899v1

## **DEFINITIONS**

The following terms and definitions shall apply to each Interrogatory contained herein:

1.      The use of any term in the Definitions section of these Interrogatories should be understood to include any and all variations of that term necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.

2.      The term "ParkerVision" is defined as ParkerVision Inc., the Plaintiff in this litigation, and should be understood to include any and all officers, directors, partners, associates, employees, staff members, agents, representatives, attorneys, subsidiaries, parents, affiliates, divisions, successors, predecessors, or other related entities.

3.      The terms "Defendant" and "Qualcomm" should be understood to refer to Defendant Qualcomm, Inc. and include any officers, directors, partners, associates, employees, staff members, agents, representatives, attorneys, consultants, subsidiaries foreign or domestic, parents, affiliates, divisions, successors, predecessors, and any others acting on behalf of Defendant or under Defendant's direction and control, and any and all assets or entities that have been acquired by Defendant or to which Defendant has succeeded to rights or obligations.

4.      The term "document" is defined as synonymous in meaning and equal in scope to the usage of this term in FED. R. CIV. P. 34(a), and should be understood to include any written, printed, typed, and visually, aurally, or electronically reproduced material of any kind, whether or not privileged, including but not limited to electronic mail, computer files, source code, backup media, and databases; files and file folders; books and their contents, whether printed or recorded or reproduced by hand or any other mechanical process, or written or reproduced by hand or any other mechanical process; and all other tangible manifestations of communications whether or not claimed to be privileged, confidential, or personal; namely, communications,

-2-

including intra-company communications, correspondence, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations; diaries; forecasts; statistical statements; laboratory and engineering reports and notebooks, changes, plans, specifications, data sheets, drawings, schematics, graphs, flow charts, samples, prototypes and tangible things, evaluation boards, developers guidelines; photographs, films, pictures, and videotapes; minutes or records of meetings, including directors' meetings, minutes or records of conferences; expressions of statements or policy; lists of persons attending meetings or conferences; reports and/or summaries of interviews or investigations; opinions or reports of consultants' patent appraisals; opinions of counsel; agreements; records, reports or summaries of negotiations; brochures, pamphlets, advertisements, circulars, trade letters, packing materials and notices, press releases; litigation files and databases; and any drafts or revisions of any document and any notes or comments appearing on any document, whether preliminary or marginal.  A comment or notation appearing on any document, and not a part of the original document, is considered a separate document within the meaning of the term.  A draft or non-identical copy is a separate document within the meaning of the term.

5.      The term "communication" should be understood to include all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, facsimiles, notes, telegrams, advertisements, or other forms of verbal exchange, whether oral or written.

6.      The term "product" should be understood to include anything sold by Defendant.

7.      The term "person" should be understood to include any natural person or any corporate, business, legal, or governmental entity or association.

8.      The term "identify," when used with reference to:

a.      a natural person, means to state his/her full name, present or last known employer, job title, present or last known residence, address and telephone number, and present or last known business addresses and telephone number, and any other information which would establish his/her relationship to Defendant;

b.      a business entity, means to state: (i) the full name and address of the entity, (ii) the identity of all individual(s) in connection with the entity who have knowledge of the information requested, and (iii) the positions held by such individual(s) in relation to the entity;

c.      a document, means to state: (i) the type of document (*e.g.*, letter, memorandum, *etc.*), (ii) the date the document was prepared or created, (iii) the identity of the preparer of the document, (iv) the identity of all recipients of the document, (v) the title or heading and the number of pages of the document, (vi) the identity of the custodian or other person last known to have possession of the document, and (vii) the present or last known location of the document;

d.      a communication, means to state: (i) the date of the communication, (ii) the form of the communication (*e.g.*, in person meeting or presentation, telephonic communication, *etc.*), (iii) the place where the communications was made, (iv) the identity of each person who was a party to or was present at the time of the communication, and (v) a summary of the communication;

e.      a product, means to state: (i) its manufacturer or producer, (ii) its version number, model number or other model designation, (iii) the date(s) of compilation, manufacture or production, and (iv) the identity of any recipient(s).

9.      Whenever Defendant is asked to identify and/or describe an event or chain of events, such identification and description of the event or chain of events should be understood to include: (i) a statement of the date(s) of each occurrence relevant to the event; (ii) identification of all individuals having information about any aspect of the event including, but not limited to, those involved in witnessing, supervising, controlling, supporting, requesting, or otherwise participating in the event and/or those who can corroborate or refute the described circumstances of the event; and (iii) a description of the role and/or contribution of each person so identified.

10.      The terms "relate to," "related to," "in relation to" and "relating to" should be understood to include any and all communications or documents that bear upon, constitute, contain, embody, evidence, comprises, reflect, identify, pertain to, state, comment on, respond to, describe, analyze, or are in any way relevant to that subject matter, whether directly or indirectly or in whole or in part, including without limitation documents related to the subject of inquiry or the existence of other documents relating to the subject.

11.      The term "including" is defined as "including, without limitation."

12.      The term "each" is defined as including "every," and the term "every" is defined as including "each."

13.      The term "any" is defined as including "all," and the term "all" is defined as including "every."

14.      The terms "infringe" and "infringement" should be understood to include direct infringement, contributory infringement, inducement of infringement, literal infringement, and infringement by the doctrine of equivalents.

15.      The disjunctive shall be construed as the conjunctive, and the conjunctive shall be construed as the disjunctive, and the connectives "and" and "or" shall be construed disjunctively

or conjunctively as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.

16.     The use of a verb in any tense shall be construed as the use of that verb in all other tenses necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.

17.     A plural noun shall be construed as a singular noun, and a singular noun shall be construed as a plural noun as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.

18.     The term "infringement contentions" is defined as ParkerVision Inc.'s infringement contentions as ordered by the Court, including any amended or supplemented version(s) of the infringement contentions as of the date that such amended or supplemented version is served upon Defendant.

19.     The term "patents-in-suit" is defined as the patent asserted by ParkerVision in its Complaint in this litigation, including U.S. Patent Nos. 6,061,551, 6,266,518, 6,370,371, 7,496,342, 7,515,896, 7,724,845, and 7,822,401.  Any additional patent or patents asserted by ParkerVision in any amended version(s) of the Complaint are within the meaning of the term as of the date that such amended version is filed with the Court.

20.     The term "asserted claims" is defined as the claims of the patent-in-suit that ParkerVision identified in its infringement contentions.  Any additional claims identified by ParkerVision in any amended version(s) of its infringement contentions are within the meaning of the term as of the date that such amended version is served on Defendant.

21.     The term "accused instrumentalities" is defined as including any product or component that ParkerVision identified as infringing in its infringement contentions, and any reasonably

similar products or components.   Any additional accused instrumentalities identified by ParkerVision in any amended or supplemented version(s) of its infringement contentions are within the meaning of the term as of the date that such amended version is served on Defendant.

## **INSTRUCTIONS**

1.     For each of the Interrogatories contained herein, the information sought is that which is current to the date of your response.  All the Interrogatories contained herein are of a continuing nature and supplemental responses are required in accordance with FED. R. CIV. P. 26(e).

2.     If Defendant does not answer any Interrogatory in full, state the precise reason for failing to do so.  If a legal objection is made, set forth the specific nature of the grounds for that objection. If only a portion of any Interrogatory cannot or will not be answered, (i) provide a full answer to the remaining portion, and (ii) specifically set forth (a) the fact that the answer is incomplete and (b) the reasons or grounds for any omission or for Defendant's inability or refusal to complete the answer.  If an Interrogatory can be answered only in part on the basis of information available at the time of the response, (i) provide an answer on the basis of that information, (ii) indicate that Defendant's answer is so limited, and (iii) provide a further response, in accordance with paragraph 1 of these Instructions, when further information becomes available.  If any information is withheld on the basis of a claim of privilege or work product, then the answer shall:  (i) generally identify the information withheld by subject matter, author, addressees, and carbon copy recipient(s); (ii) state the basis for withholding the information; and (iii) identify the person(s) knowledgeable about the subject matter of the withheld information.

3.     If any document referred to in Defendant's response to these Interrogatories was, but is not longer in Defendant's possession, custody, or control, state what disposition was made with each document and when such disposition was made.  If any document referred to in response to

-7-

these Interrogatories has been lost or destroyed, describe in detail the circumstances of such loss or destruction and Identify each lost or destroyed document, including all files that contained such document.

4.      If no document exists which is responsive to a particular Interrogatory, state that no such document exists.

5.      All Interrogatories must be answered fully and in writing in accordance with FED. R. CIV. P. 11 and 33.

6.      Each Interrogatory shall be set forth immediately prior to the response thereto.

7.      If the procedure for answering Interrogatories as authorized by FED. R. CIV. P. 33(d) is used, for each Interrogatory and subpart thereof, specify the production (i.e., Bates) numbers of the specific document or group of documents.

## INTERROGATORY NO. 1

Identify all Qualcomm products sold within the United States or imported (regardless of whether by Qualcomm or by others) into the United States since 1997. Your identification should include each product's name, product number, and all internal names and designations.

## INTERROGATORY NO. 2

Separately for each product disclosed in response to Interrogatory 1, identify which products contain a receiver (or receiver function) that performs direct conversion, i.e., conversion of a signal on a carrier frequency to baseband without conversion to an intermediate frequency, and for each identified product, describe, using the most accurate terms possible, the mechanism or circuitry that performs the direct conversion.[1]

## INTERROGATORY NO. 3

Separately for each product disclosed in response to Interrogatory 1, state the date on which a prototype for that product was first made, the date on which a prototype for that product was first tested, the date on which the product was released for production, the date on which the product was first produced, and the date on which the product was last produced.

## INTERROGATORY NO. 4

Identify and describe all differences between the products disclosed in response to Interrogatory 2 with respect to the receiver (or receiver function) that performs direct conversion.

---

[1] To guide you in your response, Qualcomm should articulate a characterization of the mechanism that performs the direct conversion in a way that distinguishes that mechanism from other direct conversion mechanisms with meaningfully different design. Examples of such characterizations could be: "mixers with linear bias," "active configuration switching mixers," "continuous-time input / continuous time output passive mixers," "continuous-time input / continuous time output active mixers," "Gilbert cells," "integration capacitors," "local oscillator signal timing," "passive sample circuitry," "mixers without linear bias," "passive configuration switching mixers with power splitters," or "passive configuration switching mixers without power splitters."

# EXHIBIT C

# McKool Smith

Austin Curry
Direct Dial:  (214) 978-4207
acurry@mckoolsmith.com

300 Crescent Court
Suite 1500
Dallas, Texas  75201

Telephone: (214) 978-4000
Facsimile: (214) 978-4044

February 22, 2012

**VIA EMAIL (jcanning@cravath.com)**
James Canning
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019-7475

RE:     *ParkerVision Inc. v. Qualcomm Inc.* (Civil Action No. 3:11-cv-719)

Mr. Canning:

I write regarding Qualcomm's responses to ParkerVision's first set of interrogatories.

Please note that we're still in the process of reviewing Qualcomm's responses, but given our looming deadline to serve infringement contentions, I'm raising these specific issues now. This is, of course, without prejudice from later raising any other issues with Qualcomm's responses for any other deficiencies (to the extent that any exist).

Interrogatories Nos. 1-4.  Qualcomm limited its responses to Interrogatories 1-4 to the Accused Products.  These interrogatories, however, are not limited in this way.  As a compromise, we propose that Qualcomm supplement these interrogatories by providing the information given in Exhibits A and B for Qualcomm's products that contain a receiver (or a receiver function) that performs direct conversion via passive mixers.

Interrogatory No. 7.  Qualcomm responds to this interrogatory by identifying its Accused Products as non-infringing alternatives. We understand that Qualcomm contends that its products not infringing (and we disagree); however, this dispute does not allow Qualcomm to avoid discovery on its contentions as to any non-infringing alternatives it may have.  If Qualcomm knows of a non-infringing alternative (*e.g.*, a hypothetical change in its receiver design), it is required to disclose that contention now.  Alternatively, if Qualcomm currently has no non-infringing alternative contention, then it should just state as much.

Interrogatory No. 9.  In its responses, Qualcomm has promised to supplement its response to disclose the requested financial information.  When does Qualcomm intend to make this supplement?  And similar to Interrogatories Nos. 1-4, Qualcomm limited its response to just the

Accused Products although the interrogatory was not so limited.  Financial information for Qualcomm's products that are not accused of infringement can be vey probative of the reasonable royalty for its Accused Products.  Additionally, Qualcomm and ParkerVision engaged in an actual negotiation.  Financial information for Qualcomm's products at that time are relevant when considering the hypothetical negotiation in light of the actual negotiation.  All this said, we're willing to consider a compromise where Qualcomm provides us with the requested financial information for the Accused Products and cumulative financial information for non-accused products in the other timeframes, so long as all disclosed financial information is calculated by a consistent methodology so that we could establish and measure various trends and various impacts on the trends.  If this sounds acceptable, please let us know what Qualcomm is willing to do.

Please let me know whether Qualcomm is willing to supplement its responses to address the issues raised in this letter.  And again, I'm raising these issues now with the hope that Qualcomm will disclose the requested information quickly and with enough time for ParkerVision to account for or incorporate any supplemental information into its infringement contention deadline of March 2nd.

As always, please feel free to call me about any of these issues.

Regards,

John Austin Curry

# EXHIBIT D

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER
DAVID MERCADO

ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
SARKIS JEBEJIAN
DAVID R. MARRIOTT

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1070

MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI

TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA

SPECIAL COUNSEL

SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL

PAUL C. SAUNDERS

February 23, 2012

<u>ParkerVision, Inc. v. Qualcomm Incorporated / Qualcomm
Incorporated v. ParkerVision, Inc. and SKGF P.L.L.C.</u>
Civil Action No. 3:11-cv-719-J-37-TEM

Dear Mr. Curry:

I write seeking clarification of one aspect of your February 22, 2012 letter concerning Qualcomm's Objections and Responses to ParkerVision's First Set of Interrogatories Nos. 1-9 ("the Response"). I will provide a more detailed response to your letter shortly.

You have proposed that Qualcomm supplement its response to ParkerVision's Interrogatories Nos. 1-4 "by providing the information given in Exhibits A and B for Qualcomm's products that contain a receiver (or a receiver function) that performs direct conversion via passive mixers." If Qualcomm agrees to provide this information, is ParkerVision willing to limit its infringement allegations in this case to those Qualcomm products that contain a receiver (or receiver function) that perform direct down-conversion using passive mixers?

Very truly yours,

James Canning

J. Austin Curry
    McKool Smith, P.C.
        Suite 1500
            300 Crescent Ct
                Dallas, TX 75201

BY ELECTRONIC MAIL

Copy To:

Counsel of Record

BY ELECTRONIC MAIL

# EXHIBIT E

| From: | Austin Curry |
|---|---|
| To: | James Canning |
| Cc: | adoppelt@addmg.com; bgilchrist@addmg.com; busey@smithhulsey.com; cgrimm@bedellfirm.com; christopher.hughes@cwt.com; datkinson@gunster.com; David Greenwald; dwells@gunster.com; jad@bedellfirm.com; jbolling@smithhulsey.com; jboyles@addmg.com; john.moehringer@cwt.com; Keith Hummel; Joseph Lasher; kunderwood@gunster.com; ParkerVision; Peter Emmi; robert.pollaro@cwt.com |
| Subject: | RE: ParkerVision, Inc. v. Qualcomm Incorporated |
| Date: | Friday, February 24, 2012 5:22:14 PM |

Mr. Canning,

We are going to amend our infringement contentions to accuse all chipsets that include Qualcomm's products that contain a receiver (or a receiver function) that performs direct conversion via passive mixers (as Qualcomm has used that term in response to ParkerVision's interrogatories/instructions). We are also going to remove from the set of Accused Products chips for which Qualcomm identified "active mixer" as the mechanism that performs direct conversion as well as chips that Qualcomm identified as not performing direct conversion.

To be very clear, I'm not agreeing to any change in the standard for later supplementing infringement contentions or any change in our ability to supplement under that standard. I also want to avoid any potential, collateral dispute over what is meant by "passive mixer."

Let me know if we're on the same page.

Regards,

Austin Curry

**From:** Joseph Lasher [mailto:JLasher@cravath.com]
**Sent:** Thursday, February 23, 2012 8:38 PM
**To:** Austin Curry
**Cc:** adoppelt@addmg.com; bgilchrist@addmg.com; busey@smithhulsey.com; cgrimm@bedellfirm.com; christopher.hughes@cwt.com; datkinson@gunster.com; David Greenwald; dwells@gunster.com; jad@bedellfirm.com; jbolling@smithhulsey.com; jboyles@addmg.com; James Canning; john.moehringer@cwt.com; Keith Hummel; kunderwood@gunster.com; ParkerVision; Peter Emmi; robert.pollaro@cwt.com
**Subject:** RE: ParkerVision, Inc. v. Qualcomm Incorporated

Counsel,

Please see the attached letter from Jim Canning.

Regards,

Joseph E. Lasher
Cravath, Swaine & Moore LLP

825 Eighth Avenue
New York, NY 10019
(212) 474-1592


From:     Austin Curry <acurry@McKoolSmith.com>
To:       James Canning <JCanning@cravath.com>, Joseph Lasher <JLasher@cravath.com>, Keith Hummel
<KHummel@cravath.com>, David Greenwald <DGreenwald@cravath.com>, Peter Emmi <PEmmi@cravath.com>,
"jad@bedellfirm.com" <jad@bedellfirm.com>, "cgrimm@bedellfirm.com" <cgrimm@bedellfirm.com>, "christopher.hughes@cwt.com"
<christopher.hughes@cwt.com>, "john.moehringer@cwt.com" <john.moehringer@cwt.com>, "robert.pollaro@cwt.com"

<robert.pollaro@cwt.com>
Cc:       ParkerVision <ParkerVision@McKoolSmith.com>, "busey@smithhulsey.com" <busey@smithhulsey.com>,
"jbolling@smithhulsey.com" <jbolling@smithhulsey.com>, "dwells@gunster.com" <dwells@gunster.com>, "datkinson@gunster.com"
<datkinson@gunster.com>, "kunderwood@gunster.com" <kunderwood@gunster.com>, "adoppelt@addmg.com"

<adoppelt@addmg.com>, "bgilchrist@addmg.com" <bgilchrist@addmg.com>, "jboyles@addmg.com" <jboyles@addmg.com>

Date.     02/22/2012 03:49 PM

Subject:  RE: ParkerVision, Inc. v. Qualcomm Incorporated


Counsel,

Please see the attached correspondence.

Regards,

Austin Curry

---

**From:** Joseph Lasher [mailto:JLasher@cravath.com]
**Sent:** Tuesday, February 21, 2012 7:29 PM
**To:** Douglas A. Cawley; Austin Curry; ParkerVision; busey@smithhulsey.com; jbolling@smithhulsey.com;
dwells@gunster.com; datkinson@gunster.com; kunderwood@gunster.com; adoppelt@addmg.com;
bgilchrist@addmg.com; jboyles@addmg.com; Gordon White
**Cc:** Keith Hummel; David Greenwald; James Canning; Peter Emmi; jad@bedellfirm.com;
cgrimm@bedellfirm.com; christopher.hughes@cwt.com; john.moehringer@cwt.com;
robert.pollaro@cwt.com
**Subject:** ParkerVision, Inc. v. Qualcomm Incorporated

Counsel,

Please find attached Qualcomm's Objections and Responses to ParkerVision's First Set of
Interrogatories.

Regards,

Joseph E. Lasher
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1592

This e-mail is confidential and may be privileged. Use or disclosure of it

# EXHIBIT F

| From: | Joseph Lasher |
|---|---|
| To: | Douglas A. Cawley; Austin Curry; ParkerVision; busey@smithhulsey.com; jbolling@smithhulsey.com; dwells@gunster.com; datkinson@gunster.com; kunderwood@gunster.com; adoppelt@addmg.com; bgilchrist@addmg.com; jboyles@addmg.com; Gordon White |
| Cc: | Keith Hummel; David Greenwald; James Canning; Peter Emmi; jad@bedellfirm.com; cgrimm@bedellfirm.com; christopher.hughes@cwt.com; john.moehringer@cwt.com; robert.pollaro@cwt.com |
| Subject: | ParkerVision, Inc. v. Qualcomm Incorporated |
| Date: | Friday, March 02, 2012 5:38:55 PM |
| Attachments: | 3.2.2012 Letter.pdf |
| | Supplemental Exhibit B.pdf |

Counsel,

Please see the attached letter.

Regards,

Joseph E. Lasher
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1592


This e-mail is confidential and may be privileged. Use or disclosure of it
by anyone other than a designated addressee is unauthorized. If you are not
an intended recipient, please delete this e-mail from the computer on which
you received it.

# CRAVATH, SWAINE & MOORE LLP

STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER
DAVID MERCADO

ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
SARKIS JEBEJIAN
DAVID R. MARRIOTT

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

————

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1592

MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI

TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA

————

SPECIAL COUNSEL

SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

————

OF COUNSEL

PAUL C. SAUNDERS

March 2, 2012

_ParkerVision, Inc. v. Qualcomm Incorporated / Qualcomm_
_Incorporated v. ParkerVision, Inc. and SKGF P.L.L.C._
Civil Action No. 3:11-cv-719-J-37-TEM

Dear Mr. Curry:

   Enclosed please find a Supplemental Exhibit B to Qualcomm's Objections and Responses to ParkerVision's First Set of Interrogatories.  Qualcomm has revised this exhibit in light of your representation that ParkerVision will limit the list of Accused Products to those Qualcomm Products containing a receiver (or receiver function) that performs direct conversion via passive mixers ("Passive Mixer Products").  Supplemental Exhibit B includes a list of all Passive Mixer Products that Qualcomm has identified to date.  However, Qualcomm's investigation is still ongoing and it will further supplement Exhibit B as required.

           Very truly yours,

           Joseph E. Lasher

J. Austin Curry
  McKool Smith, P.C.
    Suite 1500
      300 Crescent Ct
        Dallas, TX 75201

BY ELECTRONIC MAIL

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PARKERVISION, INC.,

        Plaintiff,

v.

QUALCOMM INCORPORATED,

        Defendant.

_____

QUALCOMM INCORPORATED,

        Counterclaim Plaintiff,

v.

PARKERVISION, INC., AND STERNE,
KESSLER, GOLDSTEIN, & FOX PLLC,

        Counterclaim Defendants.

_____

Case No. 3:11-cv-719-J-37TEM

**PLAINTIFF PARKERVISION INC.'S DISCLOSURE OF**
**ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS**

Plaintiff ParkerVision, Inc. ("ParkerVision") hereby makes the following disclosure of asserted claims and infringement contentions under the agreed case management report with respect to U.S. Patent Nos. U.S. Patent Nos. 6,061,551 (the "'551 patent"), 6,266,518 (the "'518 patent"), 6,370,371 (the "'371 patent"), 6,963,734 (the "'734 patent"), 7,496,342 (the "'342 patent"), and 7,724,845 (the "'845 patent") (collectively, the "patents-in-suit"), to Defendant Qualcomm Inc. ("Qualcomm" or "Defendant").

ParkerVision's investigation is ongoing, and discovery is in its early stages. Accordingly, these disclosures are based on information available to ParkerVision at this time. ParkerVision reserves the right to supplement this disclosure after further discovery from Qualcomm,

particularly documents and other discovery regarding Qualcomm's accused instrumentalities. ParkerVision also reserves the right to assert additional claims of the patents-in-suit, accuse different instrumentalities, or assert alternative literal and/or equivalent infringing elements in Qualcomm's accused instrumentalities.

## I. INFRINGEMENT CONTENTIONS

### A. Asserted Claims

ParkerVision contends that Qualcomm has infringed and continues to infringe claims 1, 2, 3, 8, 9, 12, 16, 20, 23, 24, 25, 26, 31, 32, 39, 41, 50, 54, 55, 57, 92, 93, 108, 113, 126, 135, 149, 150, 161, 192, 193, 195, 196, 198, 202, and 203 of the '551 patent; claims 1, 2, 3, 12, 17, 24, 27, 77, 81, 82, 90 91 of the '518 patent; claims 1, 2, 22, 23, 25, 31 of the '371 patent; claims 1, 4, 5, 6, 9, 12, 13, 14, 15 of the '734 patent; claims 18, 19, 20, 21, 22, 23 of the '342 patent; and claims 1, 3, 4, 5, 6, 7, 8, 9, 12, 13, 17, 18, 19, 20, 22, 23, 24 of the '845 patent (collectively, the "asserted claims").

ParkerVision reserves the right to seek leave of the Court to add, delete, substitute, or otherwise amend this list of asserted claims should further discovery, the Court's claim construction, or other circumstances so merit.

### B. Accused Instrumentalities and Accused Products

ParkerVision identifies Qualcomm's chipsets that include any one of the BTS4020, BTS4020BD, BTS4021, BTS4025, BTS4050, BTS4051, BTS4052, BTS4054, BTS4055, BTS5045, FTR8700, MDM6085, MDM6200, MDM6270, MDM6600, MXC6369, MXU6219, QSC1100, QSC1110, QSC6055, QSC6065, QSC6075, QSC6085, QSC6155, QSC6165, QSC6175, QSC6185, QSC6195, QSC6240, QSC6270, QSC6295, QSC6695, QTR8200, QTR8201, QTR8215, QTR8600, QTR8600L, QTR8601, QTR8615, QTR8615L, RGR1000, RGR1100, RTR8201, RTR6236, RTR6237, RTR6280, RTR6285, RTR6285A, RTR6500,

RTR8600, RTR8601, RTR8605, RTR8700, RTR9605, WCN1312, WCN1314, WCN1320, WCN2243, WCN3660, WTR1605, and WTR1605L chips as "Accused Products."   Of the Accused Products, ParkerVision identifies Qualcomm's chipsets that include any one of the QSC6055, QSC6065, QSC6075, QSC6085, QSC6155, QSC6165, QSC6175, QSC6185, QSC6195, QSC6240, RTR6285, RTR6285A, RTR6500, WCN1312, WCN1314, WCN1320, WCN2243, and WCN3660 chips as "Fifty Percent Duty Cycle Accused Products."   As discovery is ongoing, ParkerVision reserves the right to update or modify its list of Accused Products and Fifty Percent Duty Cycle Accused Products.

The circuitry in the Accused Products that converts a signal on a carrier frequency to baseband without conversion to an intermediate frequency, as identified in claims charts, is the Accused Instrumentality.

C.   Claim Charts

Claim charts showing infringement of the asserted claims by the Accused Products are set forth as Attachments A.1 through A.6, served on January 30, 2012.

D.   Literal Infringement and Doctrine of Equivalents

Except as stated otherwise in the claim charts, ParkerVision asserts that, under the proper construction of the asserted claims, every limitation of the Asserted Claims of the Patents-in-Suit is literally present in Qualcomm's Accused Products.   The claim charts further indicate where ParkerVision contends that a claim limitation is met under the doctrine of equivalents in addition to and as an alternative to literal infringement.   ParkerVision reserves its right to amend its infringement contentions to specifically assert infringement under the doctrine of equivalents to account for Qualcomm's proposed claim constructions.

E.  <u>Priority Dates</u>

ParkerVision contends that the asserted claims of the patents in suit are entitled to a priority date of no later than the dates specified in the following chart:

| Patent | Priority Date |
|--------|---------------|
| 6,061,551 | October 21, 1998 |
| 6,266,518 | October 21, 1998 |
| 6,370,371 | claim 1: March 3, 1999<br>all other asserted claims: October 21, 1998 |
| 6,963,734 | March 14, 2000 |
| 7,496,342 | May 16, 2001 |
| 7,724,845 | March 9, 2000 |

F.  <u>ParkerVision's Products that Practice the Asserted Claims</u>

ParkerVision's Ellis product practices all asserted claims.  ParkerVision's PV20xx series integrated circuits practice all asserted claims.

## II.      DOCUMENT PRODUCTION

ParkerVision intends to produce all relevant, non-privileged documents at this time. However, the search for documents is ongoing, and ParkerVision reserves the right to supplement its production and disclosures as deemed appropriate and necessary in the future.

Documents sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, the claimed invention prior to the dates of applications for the patents-in-suit are located at PV00028373-PV00028427.

The file histories of the patents in suit are located at PV00000214-PV00008384,

PV00008592-PV00010418, PV00010518-PV00012433, PV00012577-PV00013566,

PV00013971-PV00015654, and PV00015843-PV00028372.

March 2, 2012                          Respectfully submitted,

                                       **McKOOL SMITH, P.C.**
                                       */s/  Douglas A. Cawley*
                                       Douglas A. Cawley, Lead Attorney
                                       Texas State Bar No. 04035500
                                       E-mail: dcawley@mckoolsmith.com
                                       John Austin Curry
                                       Texas State Bar No. 24059636
                                       E-mail: acurry@mckoolsmith.com
                                       McKool Smith P.C.
                                       300 Crescent Court, Suite 1500
                                       Dallas, Texas 75201
                                       Telephone: (214) 978-4000
                                       Telecopier: (214) 978-4044

                                       T. Gordon White
                                       Texas State Bar No. 21333000
                                       gwhite@mckoolsmith.com
                                       McKool Smith P.C.
                                       300 West Sixth Street, Suite 1700
                                       Austin, Texas 78701
                                       Telephone: (512) 692-8700
                                       Telecopier: (512) 692-8744

                                       **SMITH HULSEY & BUSEY**

                                       */s/ James A. Bolling*
                                       Stephen D. Busey
                                       James A. Bolling
                                       Florida Bar Number 117790
                                       Florida Bar Number 901253
                                       225 Water Street, Suite 1800
                                       Jacksonville, Florida  32202
                                       (904) 359-7700
                                       (904) 359-7708 (facsimile)
                                       jbolling@smithhulsey.com

                                       *ATTORNEYS FOR PLAINTIFF*
                                       *PARKERVISION, INC.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this day, March 2, 2012, the foregoing document was

electronically served via email on counsel of record per the parties' agreement.

*/s/ Austin Curry*

John Austin Curry

# EXHIBIT H

# MCKOOL SMITH

Leah B. Buratti
Direct Dial: (512) 692-8733
lburatti@mckoolsmith.com

300 West 6th Street
Suite 1700
Austin, Texas 78701

Telephone: (512) 692-8700
Telecopier: (512) 692-8744

August 14, 2012

James E. Canning
Cravath, Swain & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

      RE:    *ParkerVision, Inc. v. Qualcomm Inc.*, Case No. 3:11-cv-719-J-37-TEM

Dear Jim:

    I write to memorialize ParkerVision's understanding of our August 13, 2012 meet-and-confer addressing the issues identified in: Josh Budwin's letter to you dated August 8, 2012; your letter to Austin Curry dated August 10, 2012; and Josh Budwin's August 13, 2012 email to you.

## I.    Budwin to Canning Letter Dated August 8, 2012

    (1) ParkerVision requested that Qualcomm agree not to oppose ParkerVision's motion for leave to supplement its infringement contentions to account for chipsets added by Qualcomm in its supplemental response to ParkerVision's Interrogatory No. 2. Qualcomm stated its position that its supplemental response to Interrogatory No. 2 on June 21, 2012—after the expiration of the period for ParkerVision to amend its infringement contentions—does not provide a reasonable basis for ParkerVision's request to amend its infringement contentions. Qualcomm maintains that the Court's scheduling order precludes ParkerVision from seeking leave to amend its infringement contentions, despite Qualcomm's recent supplementation of its discovery responses.

    Qualcomm's position is untenable. ParkerVision is diligently seeking to amend its infringement contentions as a direct result of Qualcomm's supplemental factual disclosures. Under E.D. Tex. Patent Rule 3-6(b), Qualcomm's supplemental discovery responses in conjunction with ParkerVision's diligence constitutes good cause for filing amended infringement contentions. *See Performance Pricing, Inc. v. Google, Inc.*, No. 2:07-cv-432, 2009 U.S. Dist. LEXIS 84211, at *6-*12 (E.D. Tex. Sept. 15, 2009); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). Please inform us of

**McKool Smith**
**A Professional Corporation • Attorneys**
**Austin | Dallas | Houston | Los Angeles | Marshall | New York | Silicon Valley | Washington, DC**

McKool 586559v2

August 14, 2012
Page 2

Qualcomm's final decision regarding ParkerVision's request to file an unopposed motion for leave to amend its infringement contentions by this Friday, August 17, 2012.

(2) By August 31, 2012 Qualcomm will make available for inspection the schematics and/or design diagrams for those products identified in ParkerVision's infringement contentions. Qualcomm will not produce schematics and/or design diagrams for those products added by Qualcomm in its supplemental response to ParkerVision's Interrogatory No. 2 (*i.e.* those products that are subject to issue (1) above). Please inform us of Qualcomm's final decision regarding ParkerVision's request that Qualcomm make available for inspection the additionally-requested schematics and/or design diagrams by this Friday, August 17, 2012.

(3) Qualcomm does not intend to supplement its response to Interrogatory No. 4, and instead intends to rely on Rule 33(d). A Rule 33(d) response to Interrogatory No. 4 is unacceptable to ParkerVision.

Qualcomm has taken the position that the burden of identifying the differences between the products identified by Qualcomm in its responses to Interrogatory No. 2 would be the same for Qualcomm or ParkerVision. Qualcomm's position is baseless; it fails to acknowledge that Qualcomm and its technical staff designed the products at issue and already possess an understanding of the differences between the various products. ParkerVision lacks this level of familiarity with Qualcomm's technology. Thus, the burden of deriving or ascertaining the answer to Interrogatory No. 4 would not be substantially the same for either party. Again, and in order to ease any alleged burden in responding to this Interrogatory, we are amenable to working with Qualcomm to identify a small number of representative products.

Please inform us of Qualcomm's final decision regarding whether Qualcomm intends to provide a substantive response to Interrogatory No. 4 by this Friday, August 17, 2012. If Qualcomm will agree to provide a substantive response, please provide ParkerVision with an estimated date by which Qualcomm expects to provide that response.

(4) Qualcomm has agreed to provide a substantive and meaningful response to ParkerVision's Interrogatory No. 7 regarding non-infringing alternatives by Friday, August 24, 2012. This substantive and meaningful response should account for any alleged non-infringing alternatives for each of the products identified by Qualcomm in its responses to Interrogatory No. 2. Again, and in order to ease any alleged burden in responding to this Interrogatory, we are amenable to working with Qualcomm to identify a small number of representative products.

(5) In response to ParkerVision's inquiry, Qualcomm clarified that its current response to ParkerVision's Interrogatory No. 9 includes revenue only for one chip (the receiver or the transceiver). ParkerVision therefore requested that Qualcomm additionally provide revenue information on a "chipset" basis (*i.e.* on the basis of the largest saleable unit), and do so for each of the products identified by Qualcomm in its responses to Interrogatory No. 2. Receiver and/or transceiver chips are not ordinarily sold by themselves; rather, they are sold as components within chipsets. Revenue information relating to the chipsets and the largest saleable unit is relevant not only to a reasonable royalty damages calculation, but also to a convoyed sales damages model.

Qualcomm also informed ParkerVision that it learned a few days ago that due to a database error, the information in its current response to Interrogatory No. 9 is incorrect. Please

August 14, 2012
Page 3

promptly replace the erroneous data and inform ParkerVision by Friday, August 17, 2012, whether Qualcomm intends to supplement its response to Interrogatory No. 9 to provide revenue information for chipsets and for the largest saleable unit that includes each accused product.

(6) To date Qualcomm has not provided a substantive response to Interrogatory No. 10, only a list of objections. During the meet and confer, Qualcomm refused to provide ParkerVision with any assurance that it intends to produce the requested licenses or that it intends to supplement its response to Interrogatory No. 10. Instead, Qualcomm stated that it is still in the process of "assessing" what licenses it may decide to produce at an unidentified date in the future.

At this stage of the litigation, and with discovery deadlines looming, Qualcomm's response is wholly inadequate. Please provide ParkerVision with a date certain for the supplementation of Qualcomm's response to Interrogatory No. 10 and for the production of Qualcomm's license agreements by Friday, August 17, 2012.

In response to ParkerVision, Qualcomm stated that ParkerVision has failed to provide it with the Symbol license. Although this is the first time that Qualcomm has raised this concern with ParkerVision, we have been following up on this request expeditiously and we intend to produce the Symbol agreements (and other agreements) this week. Additionally, we understand that Qualcomm has already obtained a copy of this license directly from Symbol.

(7) Qualcomm's current response to Interrogatory No. 11 regarding Qualcomm's laches defense refers only to "ZIF technology" (*i.e.* direct downconversion using analog mixing). As you are aware, the patents-in-suit do not relate to direct down conversion using analog mixing. ParkerVision therefore requested that Qualcomm provide an explanation of how the non-accused "ZIF technology" relates to the infringement allegations in this case or when and how ParkerVision "knew or should have known" of Qualcomm's infringement with respect the products that are accused of infringement.

In response, Qualcomm expressed its understanding ParkerVision has equated "ZIF technology" to infringement of the patent. Qualcomm pointed ParkerVision to page 12 of Ex. 1A of ParkerVision's infringement contentions, in which ParkerVision stated: "As per both of Qualcomm's patent disclosures, although the IF naming convention is used, the IF naming convention is inclusive of Zero IF or direct conversion." "ZIF technology" is Qualcomm's marketing name for direct downconversion chips that use analog mixing. ParkerVision does not accuse any "ZIF" chips of infringement. In contrast, "Zero IF" refers to chips where the carrier signal is converted directly to baseband without first downconverting to an intermediate frequency. "ZIF" does not equate to "Zero IF" as Qualcomm apparently contends. Rather, Qualcomm is attempting to avoid its discovery obligations through word games.

Qualcomm's current response to Interrogatory No. 11 has no bearing on the technology at issue in this case. Please provide ParkerVision with a date certain by which Qualcomm intends to provide a supplemental and meaningful response to Interrogatory No. 11 by Friday, August 17, 2012.

(8) While not discussed on the call, the following items were raised in the Budwin letter to Canning dated August 10, 2012. We request that Qualcomm provide us with its position on these issues by Friday, August 17, 2012: (i) Qualcomm to limit the number of asserted prior

art references/combinations to a reasonable number of no more than five per asserted patent claim; and (ii) Qualcomm to produce all documents within its possession, custody or control related to the prior licensing discussions between Qualcomm and ParkerVision.

## II.   Budwin to Canning Email Dated August 13, 2012

(1) Since at least April 4, 2012, ParkerVision has been requesting that Qualcomm produce its correspondence with the third-parties/non parties on whom it has served subpoenas, as well as the responses that it has received to those subpoenas. ParkerVision renewed its request, and Qualcomm responded that it will provide ParkerVision with the discovery that it has received from the third-parties and non-parties that it has served with subpoenas, including Symbol, IBM, Samsung, and Excelus. Qualcomm has objected, however, to producing any correspondence or communications between it and the third-parties/non-parties on which it served the subpoenas. Qualcomm's only stated basis for its objection is that this discovery request is unduly burdensome. This objection lacks any basis. The requested correspondence was authored by Qualcomm's attorneys or agents, and is readily accessible in the sent items folder of the email systems of Qualcomm's attorneys or agents.  Moreover, had Qualcomm merely cc'd ParkerVision on its communications with the third-parties and non-parties as is customary, the need to propound this discovery request would never have arisen.

Qualcomm's reluctance to produce these materials has prompted ParkerVision to question the content of the correspondence between Qualcomm and the third-parties and non-parties on which it has served discovery. ParkerVision reiterates its request that Qualcomm produce all communications and correspondence—including but not limited to memos, e-mails, and letters—between Qualcomm and the third-parties/non-parties on which it has served subpoenas in this case.  Please let us know by Friday, August 17, 2012 whether Qualcomm intends to produce this correspondence.

(2) ParkerVision also requested that Qualcomm produce documents and materials from the *Qualcomm, Inc. v. Broadcom, Inc.* litigation. Qualcomm stated that it would need to receive a Request for Production of documents from ParkerVision and that it would then consider this request. ParkerVision has now served Qualcomm with an RFP.  These documents and materials should be readily accessible to you. Accordingly, please promptly collect and provide these materials to us.

## III.   Canning to Curry Letter Dated August 10, 2012

(1) In response to Qualcomm's inability to open or review a number of files produced by ParkerVision with file extensions CD-, CDB, CLASS, GDS, MIF, MRK, OLB and XX, we are working to promptly address this issue. We are presently investigating whether we can provide Qualcomm with a computer from which it would be able to open and review these documents, should we determine that such documents contain information responsive to Qualcomm's discovery requests.

(2) We are working diligently with our client to understand the reason for the corruption of certain files in our document production and to identify a solution. We explained that upon investigating this issue, we learned that the documents were corrupted at the time that we collected the documents from ParkerVision.  Additionally, it is possible that such documents may be wholly corrupt and unrecoverable. We are now working with our client in order to

August 14, 2012
Page 5

further understand and remedy the corruption of these documents to the extent practicable. We estimate that it will take approximately four weeks to resolve these technical issues. We invite you to check with us periodically with respect to our progress.

(3) ParkerVision is collecting and will promptly provide Qualcomm with the available custodial information and metadata for documents that we have produced to date, to the extent that such information is available. We also agree to provide such information to Qualcomm for document productions going forward, to the extent that such information is available. Qualcomm has agreed to likewise provide ParkerVision with custodial information and metadata for its document productions to date and going forward. ParkerVision will provide this information in the format of an Excel spreadsheet or database load files.

(4) ParkerVision agrees to make a good faith effort to obtain an unredacted copy of the transcript of Mr. Parker's sworn testimony before the SEC by requesting that transcript from the SEC.  ParkerVision's SEC counsel has reached out to the SEC.  We invite you to check with us periodically on the status of this request.

(5) ParkerVision agrees to supplement its responses to Interrogatories Nos. 6, 7, and 8 to provide the same level of detail as Qualcomm did in response to ParkerVision's Interrogatory 12.

(6) ParkerVision reconfirmed that it is not withholding any non-privileged documents based on relevance in response to Qualcomm's Second Set of Requests for Production of Documents.

(7) ParkerVision agreed to promptly provide Qualcomm with the requested information and materials relating to the simulation of ParkerVision's receiver technology that was presented by ParkerVision at the July 24, 2012 tutorial. Qualcomm stated it does not need ParkerVision to provide it with a copy of or access to the ADS application.

Please inform us should you have a different understanding of any of the issues set forth herein.  As I am sure you will appreciate from this response and our meet and confer, we are working diligently to promptly address each of Qualcomm's discovery concerns.  We would appreciate Qualcomm extending a similar courtesy by agreeing to promptly address each of the discovery shortcomings set forth herein.

Please let us know should you wish to discuss any of these issues further.  It is our goal to avoid burdening the Court with needless discovery disputes.  However, should Qualcomm fail to promptly address each of the discovery shortcomings set forth herein, ParkerVision will be left with no choice but to seek relief from the Court.

Sincerely,

Leah B. Buratti

# EXHIBIT I

# Cravath, Swaine & Moore llp

STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER
DAVID MERCADO

ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
SARKIS JEBEJIAN
DAVID R. MARRIOTT

MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI

TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL
PAUL C. SAUNDERS

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1070

August 17, 2012

<u>ParkerVision, Inc. v. Qualcomm Incorporated / Qualcomm
Incorporated v. ParkerVision, Inc. and SKGF P.L.L.C.</u>
Civil Action No. 3:11-cv-719-J-37-TEM

Dear Mr. Budwin:

I write in response to Ms. Buratti's letter dated August 14, 2012 concerning issues raised during the August 13, 2012 meet and confer.

I.    **Budwin to Canning Letter Dated August 8, 2012**

(1) You appear to misunderstand the basis for Qualcomm's opposition to ParkerVision's request for leave to amend its final infringement contentions (the "Infringement Contentions").

As we stated in our letters dated February 13 and February 24, ParkerVision's Infringement Contentions are wholly inadequate because they include claim charts for only *one* out of the dozens of Accused Products—the QSC6270—and because the charts provided for the QSC6270 are, for many asserted claims, materially deficient. After receiving an extension of time until March 2, 2012, in which to serve its Infringement Contentions, ParkerVision refused to remedy the defects identified by Qualcomm. The only change ParkerVision made was to amend its list of "Accused Products" to track the list of products that perform direct down-conversion of RF signals using passive mixers that was included in Qualcomm's response to ParkerVision's Interrogatory No. 2.

Now, five months later, ParkerVision seeks to amend its Infringement Contentions simply to add to the list of Accused Products certain additional Qualcomm products that perform direct down-conversion using passive mixers which Qualcomm identified in an amended response to Interrogatory No. 2. Such an amendment to the Infringement Contentions is inappropriate and irrelevant because it would not correct the fatal deficiencies in ParkerVision's Infringement Contentions. The Court's February

13, 2012 Case Management and Scheduling Order ("CMO") required ParkerVision to supply Qualcomm with its final, complete infringement contentions on March 2, 2012. ParkerVision failed to comply with the CMO. Accordingly, Qualcomm intends to move to strike ParkerVision's Infringement Contentions for all Accused Products other than the QSC6270 and for all claims asserted against the QSC6270 where the claim charts were materially deficient, unless ParkerVision agrees to withdraw its defective contentions. To be clear, our position is that ParkerVision is not allowed to amend its Infringement Contentions to remedy the defects that existed on March 2, 2012. We assume you will oppose this motion. If we are mistaken or you wish to discuss this further, we are available on Monday at your convenience.

(2) Qualcomm will make available for inspection the requested schematics and/or design diagrams corresponding to the additional products identified in Qualcomm's second supplemental response to ParkerVision's Interrogatory No. 2. The schematics and/or design diagrams corresponding to the products identified in ParkerVision's infringement contentions will be available for review by August 31, 2012. The schematics and/or design diagrams corresponding to the additional products identified by Qualcomm will be available for review by mid-September. We are providing these documents without prejudice to our position concerning the inadequacy of ParkerVision's Infringement Contentions.

(3) Qualcomm disagrees with ParkerVision's position about the relative burden of the parties in answering this interrogatory and rejects ParkerVision's attempt to shift the burden of proving its case to Qualcomm. The production of the relevant schematics and/or design diagrams pursuant to Fed. R. Civ. P. 33(d) is sufficient to provide an adequate answer to ParkerVision's Interrogatory No. 4.

(4) Qualcomm will supplement its response to ParkerVision's Interrogatory No. 7. If ParkerVision would like to suggest representative products, we will consider any such proposal.

(5) Qualcomm is working diligently to provide ParkerVision with correct information responsive to Interrogatory No. 9. However, as ParkerVision agreed to narrow its interrogatories to cover only products that include passive mixers, Qualcomm does not understand that interrogatory to seek information concerning revenue derived from chipsets. Further, such information is plainly irrelevant to the determination of a reasonable royalty in this case. Accordingly, Qualcomm will produce the revenue information described in its response to Interrogatory No. 9 relating only to sales of the products identified in response to Interrogatory No. 2.

(6) By September 7, 2012, Qualcomm will produce licenses to which it is a party that (i) pertain predominantly to technology similar to that claimed in the Patents-in-Suit; (ii) pertain to the Accused Instrumentalities; (iii) Qualcomm contends are comparable to a license that Qualcomm would have taken in a hypothetical negotiation in this case; or (iv) are otherwise relevant to the determination of a reasonable royalty. Qualcomm will also supplement its response to Interrogatory No. 10.

(7) Qualcomm does not agree with your characterization of Qualcomm's position with respect to whether it is required to supplement its response to ParkerVision's Interrogatory No. 11 or to ParkerVision's criticism of Qualcomm's existing response. However, Qualcomm will supplement its response to Interrogatory No. 11.

(8)(i) Once ParkerVision has reduced the number of claims asserted in this case to a manageable number, Qualcomm will consider ParkerVision's request to reduce the number of prior art references/combinations it asserts invalidate ParkerVision's claims. We have been asking ParkerVision to narrow the Asserted Claims to a reasonable number from the beginning of the case. We hope that ParkerVision is now prepared to do so. Please let us know if that is the case.

(8)(ii) Qualcomm will produce all non-privileged documents in its possession, custody or control that are located through a reasonable search and are responsive to ParkerVision's Request for Production No. 14, which seeks "all documents relating to Qualcomm's licensing negotiations with ParkerVision."

## II.     Budwin to Canning Email Dated August 13, 2012

(1) Qualcomm will produce all documents that have been produced by third parties in response to its third party subpoenas. We note that Jeff Parker has publicly said, as recently as this past Wednesday, that ParkerVision is working with an OEM of VIA. Please confirm that ParkerVision will promptly produce its communications with such third parties on a periodic basis, pursuant to Qualcomm's Second Request to ParkerVision for the Production of Documents, ESI and Things, Request No. 3.

(2) Qualcomm has received ParkerVision's document request and will provide ParkerVision with its objections and responses in due course. However, ParkerVision's request is exceedingly broad and does not provide Qualcomm with any indication of the relevance of the requested materials from the Broadcom litigation. Please tell us why you think any of this material is relevant to any claim or defense in this action.

## III.    Canning to Curry Letter Dated August 10, 2012

(1) In your letter, you state that ParkerVision is investigating whether it can provide Qualcomm with access to a computer from which it would be able to open and review the files produced by ParkerVision with file extensions CD-, CDB, CLASS, GDS, MIF, MRK, OLB and XX. At our meet and confer, you also committed to provide an answer by early next week. We object to the statement in your letter that such documents will be loaded onto the computer only if you determine that they contain information responsive to Qualcomm's discovery requests. ParkerVision has already produced these documents (although in a manner in which they could not be reviewed).

(2) Four weeks is a long time to resolve the technical issues that led ParkerVision to produce thousands of corrupted documents.  Please report back to us in two weeks as to the status of the effort.

(5) While ParkerVision has agreed to supplement its responses to Interrogatories Nos. 6, 7 and 8 to provide the same level of detail as Qualcomm did in response to ParkerVision's Interrogatory 12, you do not state when that supplementation will take place.  Please confirm that you will complete that supplementation by September 14.

The parties previously disagreed whether ParkerVision would be required to produce documents responsive to Qualcomm's Request for Production No. 77, which asked for documents sufficient to show the usernames used by Jeffrey Parker, his family members or other ParkerVision employees to post on the Yahoo message boards.  In a recent decision, Judge Alsup ordered the parties to identify "all authors, journalists, commentators or bloggers who have reported or commented on any issues in this case and who have received money (other than normal subscription fees) from the party or its counsel during the pendency of this action." *Oracle America, Inc., v. Google, Inc.*, No. C 10-03561 WHA (N.D. Cal. Aug. 7, 2012) (Dkt. 1229).  Any ParkerVision employee commenting on the Yahoo message board about this case (which is a frequent topic of discussion) is, of course, receiving money from ParkerVision.  In light of Judge Alsup's decision, we ask whether ParkerVision will reconsider its refusal to produce documents responsive to RFP No. 77.

Finally, during our meet and confer, you suggested that ParkerVision's production might be substantially complete.  Can you please confirm that this is correct? Based on our review of the readable parts of ParkerVision's production, we simply do not see how ParkerVision's production could possibly be "substantially complete."

Very truly yours,

James E. Canning

Joshua Budwin
    McKool Smith, P.C.
        Suite 1700
            300 W. 6th Street
                Austin, TX 78701

BY ELECTRONIC MAIL

Copy To:  Counsel of Record

BY ELECTRONIC MAIL

# EXHIBIT J

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

PARKERVISION, INC.,

       Plaintiff,

v.

QUALCOMM INCORPORATED,

       Defendant.

_____

QUALCOMM INCORPORATED,

       Counterclaim Plaintiff,

v.

PARKERVISION, INC., AND STERNE,
KESSLER, GOLDSTEIN, & FOX PLLC,

       Counterclaim Defendants.

_____

Case No. 3:11-cv-719-J-37TEM

## PLAINTIFF PARKERVISION, INC.'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS, ESI, AND THINGS TO DEFENDANT QUALCOMM INCORPORATED

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Rule 3.03(d) of the U.S. District Court for the Middle District of Florida, ParkerVision, Inc. ("ParkerVision") requests that Qualcomm Inc. ("Qualcomm") produce for inspection and copying the documents, electronically stored information and things within its possession, custody or control that are described below.  Qualcomm must serve written responses to these request and produce the requested documents, electronically stored information and things to the undersigned counsel for ParkerVision at the offices of McKool Smith PC, 300 Crescent Court, Suite 1500, Dallas, Texas 75201 within 30 days from the date of service of these requests or at a time and place to which the parties otherwise agree.

## DEFINITIONS

The following terms and definitions shall apply to each Interrogatory contained herein:

1.      The use of any term in the Definitions section of these Interrogatories should be understood to include any and all variations of that term necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.

2.      The term "ParkerVision" is defined as ParkerVision Inc., the Plaintiff in this litigation, and should be understood to include any and all officers, directors, partners, associates, employees, staff members, agents, representatives, attorneys, subsidiaries, parents, affiliates, divisions, successors, predecessors, or other related entities.

3.      The terms "Defendant" and "Qualcomm" should be understood to refer to Defendant Qualcomm, Inc. and include any officers, directors, partners, associates, employees, staff members, agents, representatives, attorneys, consultants, subsidiaries foreign or domestic, parents, affiliates, divisions, successors, predecessors, and any others acting on behalf of

Defendant or under Defendant's direction and control, and any and all assets or entities that have been acquired by Defendant or to which Defendant has succeeded to rights or obligations.

4.      The term "document" is defined as synonymous in meaning and equal in scope to the usage of this term in FED. R. CIV. P. 34(a), and should be understood to include any written, printed, typed, and visually, aurally, or electronically reproduced material of any kind, whether or not privileged, including but not limited to electronic mail, computer files, source code, backup media, and databases; files and file folders; books and their contents, whether printed or recorded or reproduced by hand or any other mechanical process, or written or reproduced by hand or any other mechanical process; and all other tangible manifestations of communications whether or not claimed to be privileged, confidential, or personal; namely, communications, including intra-company communications, correspondence, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations; diaries; forecasts; statistical statements; laboratory and engineering reports and notebooks, changes, plans, specifications, data sheets, drawings, schematics, graphs, flow charts, samples, prototypes and tangible things, evaluation boards, developers guidelines; photographs, films, pictures, and videotapes; minutes or records of meetings, including directors' meetings, minutes or records of conferences; expressions of statements or policy; lists of persons attending meetings or conferences; reports and/or summaries of interviews or investigations; opinions or reports of consultants' patent appraisals; opinions of counsel; agreements; records, reports or summaries of negotiations; brochures, pamphlets, advertisements, circulars, trade letters, packing materials and notices, press releases; litigation files and databases; and any drafts or revisions of any document and any notes or comments appearing on any document, whether preliminary or marginal.  A comment or notation appearing on any document, and not a part of the original document, is

considered a separate document within the meaning of the term.  A draft or non-identical copy is a separate document within the meaning of the term.

5.      The term "communication" should be understood to include all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, facsimiles, notes, telegrams, advertisements, or other forms of verbal exchange, whether oral or written.

6.      The term "product" should be understood to include anything sold by Defendant.

7.      The term "person" should be understood to include any natural person or any corporate, business, legal, or governmental entity or association.

8.      The term "identify," when used with reference to:

a.      a natural person, means to state his/her full name, present or last known employer, job title, present or last known residence, address and telephone number, and present or last known business addresses and telephone number, and any other information which would establish his/her relationship to Defendant;

b.      a business entity, means to state: (i) the full name and address of the entity, (ii) the identity of all individual(s) in connection with the entity who have knowledge of the information requested, and (iii) the positions held by such individual(s) in relation to the entity;

c.      a document, means to state: (i) the type of document (*e.g.*, letter, memorandum, *etc.*), (ii) the date the document was prepared or created, (iii) the identity of the preparer of the document, (iv) the identity of all recipients of the document, (v) the title or heading and the number of pages of the document, (vi) the identity of the custodian or other

person last known to have possession of the document, and (vii) the present or last known location of the document;

d.      a communication, means to state: (i) the date of the communication, (ii) the form of the communication (*e.g.*, in person meeting or presentation, telephonic communication, *etc.*), (iii) the place where the communicaions was made, (iv) the identity of each person who was a party to or was present at the time of the communication, and (v) a summary of the communication;

e.      a product, means to state: (i) its manufacturer or producer, (ii) its version number, model number or other model designation, (iii) the date(s) of compilation, manufacture or production, and (iv) the identity of any recipient(s).

9.      Whenever Defendant is asked to identify and/or describe an event or chain of events, such identification and description of the event or chain of events should be understood to include: (i) a statement of the date(s) of each occurrence relevant to the event; (ii) identification of all individuals having information about any aspect of the event including, but not limited to, those involved in witnessing, supervising, controlling, supporting, requesting, or otherwise participating in the event and/or those who can corroborate or refute the described circumstances of the event; and (iii) a description of the role and/or contribution of each person so identified.

10.     The terms "relate to," "related to," "in relation to" and "relating to" should be understood to include any and all communications or documents that bear upon, constitute, contain, embody, evidence, comprises, reflect, identify, pertain to, state, comment on, respond to, describe, analyze, or are in any way relevant to that subject matter, whether directly or indirectly or in whole or in part, including without limitation documents related to the subject of inquiry or the existence of other documents relating to the subject.

11.     The term "including" is defined as "including, without limitation."

12.     The term "each" is defined as including "every," and the term "every" is defined as including "each."

13.     The term "any" is defined as including "all," and the term "all" is defined as including "every."

14.     The terms "infringe" and "infringement" should be understood to include direct infringement, contributory infringement, inducement of infringement, literal infringement, and infringement by the doctrine of equivalents.

15.     The disjunctive shall be construed as the conjunctive, and the conjunctive shall be construed as the disjunctive, and the connectives "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.

16.     The use of a verb in any tense shall be construed as the use of that verb in all other tenses necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.

17.     A plural noun shall be construed as a singular noun, and a singular noun shall be construed as a plural noun as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.

18.     The term "infringement contentions" is defined as ParkerVision Inc.'s infringement contentions as ordered by the Court, including any amended or supplemented version(s) of the infringement contentions as of the date that such amended or supplemented version is served upon Defendant.

McKool 438514v1

19.     The term "patents-in-suit" is defined as the patent asserted by ParkerVision in its Complaint in this litigation, including U.S. Patent Nos. 6,061,551, 6,266,518, 6,370,371, 7,496,342, 7,515,896, 7,724,845, and 7,822,401.  Any additional patent or patents asserted by ParkerVision in any amended version(s) of the Complaint are within the meaning of the term as of the date that such amended version is filed with the Court.

20.     The term "asserted claims" is defined as the claims of the patent-in-suit that ParkerVision identified in its infringement contentions.  Any additional claims identified by ParkerVision in any amended version(s) of its infringement contentions are within the meaning of the term as of the date that such amended version is served on Defendant.

21.     The term "accused instrumentalities" is defined as including any product or component that ParkerVision identified as infringing in its infringement contentions, and any reasonably similar products or components.   Any additional accused instrumentalities identified by ParkerVision in any amended or supplemented version(s) of its infringement contentions are within the meaning of the term as of the date that such amended version is served on Defendant.

## **<u>INSTRUCTIONS</u>**

1.     These requests are continuing to the extent permitted under the Federal Rules of Civil Procedure and require you, consistent with your obligations under Fed. R. Civ. P. 26(e)(1), promptly to produce for inspection and copying any documents or things that you reasonably may acquire, obtain, locate or identify.

2.     You shall produce paper documents as they are kept in the usual course of business or shall organize and label them to correspond to the categories in this request. You shall produce electronically stored information in a form in which it is ordinarily maintained or in a reasonably usable form.

3.      If no documents or things are responsive to a particular request, state that no responsive

materials exist.

4.      Each requested document or thing shall be produced in its entirety and with all

attachments, without deletions or excisions, regardless of whether you consider the entire

document or any attachment thereto to be relevant to this case or responsive to these requests. If

any document or thing cannot be produced in full, it shall be produced to the extent possible and

accompanied by an explanation that states why production of the remainder is not possible.

5.      If you object or otherwise refuse to respond or produce documents or things in response

to any portion of a document request, you shall (1) state the objection or reason for such refusal,

and (2) provide all documents or things called for by that portion of the request for production to

which you do not object and/or refuse to respond.

6.      If any document is withheld from production on the basis of privilege, immunity or any

similar claim, produce a log within a reasonable time as agreed by the parties or as ordered by

the Court that includes: (i) the date of the document; (ii) the identity of all persons who prepared

or signed the document; (iii) the identity of all persons designated as addressees or copyees; (iv)

the subject matter of the document; (v) the type of document (memorandum, pamphlet, report,

etc.); (vi) the type or nature of the privilege asserted (e.g., attorney-client privilege, work product

doctrine, etc.); (vii) an explanation of the basis for withholding the document; and (viii) any

other information required by Federal Rule of Civil Procedure 26(b)(5) or the local rules for the

District Court for the Middle District of Florida.

7.      Unless otherwise stated, these requests require the production of documents or things that

were prepared, created, written, sent, dated or received at any time.

8.      The geographic scope of these requests is worldwide, to the extent that there is a reasonable basis to believe that locations outside of the United States may contain responsive documents that cannot be found inside the United States.

9.      ParkerVision reserves the right to propound additional requests.

## DOCUMENT REQUESTS

1.      Chip-level schematics of Qualcomm's Accused Products.

2.      All documents that document the design process and operation of the Accused Products including, but not limited to, design notes, plans, pseudocode, process flow charts, and data flow diagrams.

3.      All source code for Qualcomm's Accused Products.

4.      Chip-level schematics of all Qualcomm's products that contain a receiver or receiver function that directly converts a signal via passive mixers.

5.      Chip-level schematics for one or more representative chipset products that Qualcomm currently sells that contains a receiver or receiver function that does not directly convert a signal via passive mixers.

6.      Chip-level schematics of one or more representative Qualcomm products that contain a receiver or receiver function that directly converts a signal via active mixers.

7.      Chip-level schematics of one or more representative Qualcomm products that contain a receiver or receiver function that does not directly convert a signal.

8.      Chip-level schematics of one or more representative Qualcomm products sold by Qualcomm during the time that ParkerVision and Qualcomm were discussing licensing ParkerVision's patents (including pending patent applications).