## THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

PARKERVISION, INC.,

                              *Plaintiff,*

              v.                                    Case No. 3:11-cv-719-J-37-TEM

QUALCOMM INCORPORATED,

                              *Defendant.*

QUALCOMM INCORPORATED,

                              *Counterclaim Plaintiff,*

              v.

PARKERVISION, INC., and
STERNE KESSLER GOLDSTEIN FOX PLLC

                              *Counterclaim Defendants.*

## QUALCOMM'S MOTION TO STRIKE / COMPEL REGARDING PARKERVISION'S INADEQUATE INFRINGEMENT CONTENTIONS, AND SUPPORTING MEMORANDUM OF LAW

Qualcomm hereby moves for an order (i) striking portions of ParkerVision's

infringement contentions because they fail to comply with the requirements of the Court's

February 13, 2012 Case Management and Scheduling Order ("CMO"); and (ii) compelling

ParkerVision to bring its remaining infringement contentions into compliance with the CMO.

### Preliminary Statement

This case has been pending for over a year and, despite this Court's instruction in

the CMO that ParkerVision disclose its complete, binding infringement contentions to

Qualcomm by March 2, 2012, ParkerVision has not done so.  As became clear during the

*Markman* hearing on August 6, 2012, ParkerVision simply has not taken seriously this Court's

order that ParkerVision fully inform Qualcomm of how its products allegedly infringe the patents-in-suit.  Indeed, at the *Markman* hearing, ParkerVision's counsel cavalierly told the Court that it should disregard the definition of "sampling" that ParkerVision used in its infringement contentions because those were only "preliminary" contentions.  (*See* Declaration of James Canning, dated August 27, 2012 ("Canning Decl."), Ex. 1.)  But the Court was clear in the CMO that ParkerVision was to supply Qualcomm with its full and binding infringement contentions and that those infringement contentions could be amended *only* if necessary based on the Court's claim construction ruling.  Despite this clear instruction, ParkerVision apparently believes that it can "hide the ball" from Qualcomm and then spring its real contentions on Qualcomm whenever it chooses.  ParkerVision should not be rewarded for its flouting of the Court's Order that it provide binding infringement contentions to Qualcomm by the long-past deadline of March 2, 2012.

When ParkerVision commenced this action on July 20, 2011, it alleged that Qualcomm infringed seven patents with over 400 claims.  In an attempt to narrow this case to a more  manageable scope, the parties agreed to disclose their infringement and invalidity contentions to each other in the form required by Rules 3-1 and 3-3 of the Eastern District of Texas Local Patent Rules ("Rule 3-1" and "Rule 3-3").  (*See* Dkt. 69 at 6 n.1.)  The parties, however, disagreed about whether those contentions would be final and binding (Qualcomm saying "yes" and ParkerVision "no"), and submitted that dispute to the Court in their Joint Case Management Report ("CMR").  In the CMO, the Court endorsed the parties' plan to exchange contentions and, significantly, ordered that those contentions "shall be deemed to be that party's *final* contentions" subject to amendment only to take into consideration the Court's rulings on claim construction.  (*See* Dkt. 84 at 1-3.)

Qualcomm has filed this motion because ParkerVision did not abide by the CMO.  Under Rule 3-1, ParkerVision was required to provide separate claim charts for each product that ParkerVision accuses of infringing the patents-in-suit.  Those claim charts had to explain in detail how use of each accused product would allegedly infringe each claim asserted against that product.  But ParkerVision provided claim charts for *only one* of the dozens of accused products, and the charts it provided for that one accused product are materially deficient.

ParkerVision's refusal to provide full and complete infringement contentions was particularly surprising to Qualcomm because ParkerVision, which regularly publicizes this case, had confidently boasted about the certainty of infringement based on its supposedly rigorous pre-suit investigation into Qualcomm's alleged infringement.  Jeffrey Parker, the CEO, was unequivocal in telling analysts and investors that:  "when we discovered [Qualcomm's alleged infringement], we took the information to our legal counselors immediately.  They helped walk us through the process of verification and we are absolutely certain of this infringement."  (*See* Canning Decl. Ex. 2.)  ParkerVision's counsel also made representations directly to this Court about the depth of its infringement analysis during the December 17, 2011 hearing on Qualcomm's motion to disqualify Sterne Kessler.  At that hearing, ParkerVision's counsel told the Court that McKool Smith had spent "well in excess of a hundred hours" conducting "an independent evaluation of the patents and of the assertion against Qualcomm."  (Dkt. 67 at 36.)  Since McKool Smith only joined this case after the complaint was filed, its investigation was on top of the *pre-suit* investigation Jeffrey Parker trumpeted to reporters and analysts.

3

Moreover, it was *ParkerVision* that suggested the parties exchange infringement and invalidity contentions at the very outset of the case.  (*See* Canning Decl. Ex. 3.)  Qualcomm assumed that ParkerVision had done its homework, as it has represented to the Court and to the public, and was prepared to move this case forward expeditiously.  On that basis, Qualcomm agreed to provide its invalidity contentions at the beginning of the case even though ParkerVision had had a large head start in preparing its infringement case against Qualcomm.

Rather than living up to its agreement and complying with the Court's CMO, ParkerVision decided to hide-the-ball from Qualcomm.  It is now clear from ParkerVision's counsel's statements at the recent *Markman* hearing that ParkerVision never intended to play fair.  ParkerVision apparently believes it was not required to provide its full and binding infringement contentions to Qualcomm despite the clear language of the CMO.  Instead, ParkerVision believes that it is free to change its constructions of basic terms (such as "sampling") and leave gaping holes in its contentions.  What good are ParkerVision's contentions if Qualcomm cannot rely on them?  What was the purpose of the Court ordering the exchange of final, binding contentions if ParkerVision is free to alter them at will in the course of discovery?  And, what value are Jeffrey Parker's public pronouncements of "certain" infringement if ParkerVision cannot adequately state its infringement position under court order?

The unfairness of this hide-the-ball strategy is palpable.  ParkerVision's view that it is not bound by its infringement contentions stands in stark contrast to Qualcomm's herculean effort to comply fully with the CMO.  Qualcomm gave ParkerVision detailed disclosure of its invalidity contentions.  Qualcomm's invalidity contentions total 4,675 pages and include 184 detailed charts showing how each asserted claim is rendered invalid by the

prior art.  This massive, and expensive, effort to provide full invalidity contentions was done with the understanding that ParkerVision would play by the same rules.

ParkerVision should not be permitted to benefit from its failure to abide by the CMO.  Qualcomm has already been deprived of the benefit of the bargain it struck with ParkerVision—to obtain early disclosure of ParkerVision's infringement contentions so that its invalidity contentions, claim constructions and discovery could be tailored to the matters truly at issue in this case—while ParkerVision has realized fully the benefit of receiving highly detailed invalidity contentions from Qualcomm.  Fundamental fairness dictates that because ParkerVision has not complied with the CMO, the appropriate remedy at this stage of the litigation is to strike ParkerVision's contentions with respect to the products for which it has not provided any claim charts, limit ParkerVision's claims of infringement to the one product for which it has provided claim charts (and any products that have identical RF circuitry), and order ParkerVision to amend the charts for that one product to bring those charts into compliance with the Rule 3-1 and the CMO.

**Facts**

On December 5, 2011, counsel for all parties held a case management conference pursuant to Local Rule 3.05(c)(2)(B).  Prior to the conference, ParkerVision sent Qualcomm a proposed Case Management Report ("CMR") that provided for early disclosure of the parties' respective infringement and invalidity contentions.  At the conference and afterward, the parties discussed this proposal and ultimately agreed to adopt the Eastern District of Texas Local Patent Rules (the "Patent Rules"), with limited modifications, to govern the content of the contentions.  The parties also agreed that ParkerVision would disclose its infringement contentions on or before January 30, 2012, and that Qualcomm would disclose its invalidity

contentions 45 days later, on March 15, 2012.  The parties' jointly-prepared CMR, which was submitted to the Court by counsel for ParkerVision on December 30, 2011, reflected these agreements.  (*See* Dkt. 69.)

In the CMR, the parties set out the agreed modified text of Rule 3-1, which required ParkerVision to provide, *inter alia*, the following information:

> (a) Each claim of each patent in suit that is allegedly infringed by each opposing party;
>
> (b) *Separately* for each asserted claim, *and for each accused apparatus, product, device, method, act, or other instrumentality* ("Accused Instrumentality") of each opposing party of which [ParkerVision] is aware . . . ;
>
> (c) A chart identifying *specifically* where *each element of each asserted claim* is found within *each Accused Instrumentality* . . . If [ParkerVision] contends that an identical Accused Instrumentality is contained in multiple products, then that Accused Instrumentality is required to be charted only once with an accompanying identification of the products that allegedly contain that Accused Instrumentality; [and]
>
> (d) Whether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents in the Accused Instrumentality.

(Dkt. 69 at 15 (emphasis added).)  Notably, ParkerVision did not serve any discovery about Qualcomm's products until January 18, 2012, just 12 days before its infringement contentions were due.  Thus, ParkerVision had proposed the exchange of contentions and then agreed to provide its detailed infringement contentions by a date well before it would receive any discovery from Qualcomm.[1]

---

[1] The discovery requests ParkerVision served on January 18 were limited to interrogatories, one of which (No. 4) asked Qualcomm to describe in detail the different ways in which its products directly downconvert RF signals to baseband signals.  Because the answer to Interrogatory No. 4 can be ascertained by reference to technical documents that would be produced during discovery, Qualcomm

On January 30, 2012, pursuant to the agreed schedule but prior to the Court's entry of the CMO, ParkerVision served Qualcomm with its infringement contentions (the "January 30 Contentions").  (*See* Canning Decl. Ex. 4.)  In the January 30 Contentions, ParkerVision alleged infringement of six patents, abandoning its claims of infringement with respect to two patents identified in the Complaint and raising for the first time its assertion that Qualcomm infringes U.S. Patent No. 6,963,734.  (*Id*.)  ParkerVision's January 30 Contentions also identified 72 "Accused Products," and alleged that each such Accused Product contains an "Accused Instrumentality" in the form of "circuitry . . . that converts a signal on a carrier frequency to baseband without conversion to an intermediate frequency."  (*Id*.)  ParkerVision did not, however, provide the infringement chart required by Rule 3-1 for 71 of the 72 then-Accused Products.  ParkerVision provided charts only for one Qualcomm Accused Product, the QSC6270.  (*See* Canning Decl. Ex. 10.)

On February 13, 2012, the Court entered the CMO, accepting the parties' stipulation that they would comply with Rule 3-1, but extending the deadline for ParkerVision to serve its infringement contentions to March 2, 2012.  (Dkt. 84.)  The Court, resolving a dispute between the parties, also ruled that "each parties' contentions *shall be deemed to be that party's final contentions* except as follows.  If Plaintiff believes in good faith that the Court's claim construction ruling so requires, Plaintiff may serve, without leave of court, 'Amended Infringement Contentions' that amend its 'Infringement Contentions' on or before October 5, 2012."  (*Id.* at 2 (emphasis added).)

---

properly responded under Rule 33(d) by directing ParkerVision to those documents, which would be produced during the litigation.  ParkerVision did not take issue with Qualcomm's response to Interrogatory No. 4 until August 14, 2012, well after its Infringement Contentions were due.

The same day as the entry of the CMO, Qualcomm notified ParkerVision of the many serious deficiencies in the January 30 Contentions.  (*See* Canning Decl. Ex. 5.)  In particular, Qualcomm noted that the January 30 Contentions were inadequate because ParkerVision failed to provide detailed infringement charts for each Accused Instrumentality and, for many claims, failed even to identify specifically where each claim element allegedly could be found within the QSC6270.  (*Id.*)  Qualcomm asked ParkerVision to cure the many defects in its January 30 Contentions by the CMO's March 2, 2012 deadline for ParkerVision to serve its infringement contentions.  (*Id.*)

ParkerVision responded on February 17, 2012, refusing to amend its contentions and instead arguing that the January 30 Contentions were adequate.  (*See* Canning Decl. Ex. 6.) ParkerVision attempted to excuse its failure to provide detailed contentions for 71 of the 72 then-Accused Products by suggesting, without basis in fact, that each Accused Product contains an identical Accused Instrumentality.  (*Id.*)  Further, ParkerVision refused to provide additional details, as required by Patent Rule 3-1, identifying specifically where each element is found within the Accused Instrumentalities.  (*Id.*)  On February 24, 2012, Qualcomm reiterated its objections, and stated that if ParkerVision did not correct the identified deficiencies, it would hold ParkerVision to its deficient contentions.  (*See* Canning Decl. Ex. 7.)

On March 2, 2012, ParkerVision served revised infringement contentions (the "Infringement Contentions").  (*See* Canning Decl. Ex. 8.)  Completely disregarding the deficiencies identified in Qualcomm's letters, ParkerVision served Infringement Contentions that were, in all relevant respects, identical to its January 30 Contentions.  The only material change ParkerVision made to its contentions was to amend the list of Accused Products. Although ParkerVision listed 61 Accused Products in the March 2 Infringement Contentions, it

again failed to provide charts for any product other than the QSC6270.  And ParkerVision did

not amend the materially deficient charts provided for the QSC6270.  In fact, ParkerVision did

not even bother to serve Qualcomm with copies of those charts, relying on the originally served

charts.

On March 13, 2012 — 10 days *after* serving its Court-ordered "final" infringement

contentions and after receiving Qualcomm's response to Interrogatory No. 4 — ParkerVision

served its First Request for the Production of Documents, ESI and Things (the "Document

Requests"), seeking, among other things, technical documents relating to the Accused Products.

(*See* Canning Decl. Ex. 9.)  In response, beginning on April 16, 2012, Qualcomm produced to

ParkerVision on a rolling basis more than 16,000 technical documents and product

specifications relating to the Accused Products, collectively spanning over 1 million pages.

From these documents ParkerVision could have learned what it should have determined during

its preliminary infringement analysis:  the QSC6270 is not representative of a vast majority of

the Accused Products.  Despite having these documents for months, ParkerVision did not seek

leave to provide complete claim charts for the remainder of the Accused Products.[2]

During the *Markman* hearing conducted on August 6, 2012, counsel for

ParkerVision took the position that ParkerVision's January 30 Contentions were merely

"preliminary contentions."  (*See, e.g.,* Canning Decl. Ex. 1 at 24:3-8 ("Now let's talk about

Qualcomm's construction.  Qualcomm's construction, Your Honor, is based on extrinsic

---

[2] ParkerVision has asked Qualcomm to consent to ParkerVision seeking leave to amend its
Infringement Contentions to add additional products to its list of Accused Products.  Qualcomm told
ParkerVision that it was willing to permit ParkerVision conditionally to amend its contentions only to
include additional products in the list of Accused Products, with the amended contentions being subject
to the outcome of this motion.  ParkerVision did not accept that proposal.

evidence; and the real gravamen of their argument as to why extrinsic evidence is appropriate is based upon a statement that ParkerVision made in it's preliminary infringement contentions. "), 24:20-24 ("As you know, Your Honor, your scheduling order has a number of dates that you've set forth that the parties have to comply with, and one of those was for ParkerVision to provide Qualcomm with its preliminary infringement [contentions], which it did so. ") Counsel even suggested that the Court should disregard the construction of "sampling" that ParkerVision used in its Infringement Contentions because of its view that such contentions were "preliminary." (*Id*. at 25:9-19.)

### Request for Oral Argument

Pursuant to Rule 3.01(j) Qualcomm requests oral argument on its Motion so that the parties may present their respective positions. Qualcomm estimates that a hearing time of one (1) hour will be sufficient.

### Rule 37(a)(1) and Local Rule 3.01(g) Certification

Pursuant to Rule 37(a)(1) and Local Rule 3.01(g), counsel for Qualcomm has conferred with counsel for ParkerVision in a good faith attempt to resolve the matters raised by this motion, and have been unable to do so.

### Argument

ParkerVision's infringement contentions do not provide Qualcomm with sufficient detail to allow it to defend against ParkerVision's claims of infringement. Indeed, ParkerVision's materially incomplete contentions defeat the very purpose of the parties' agreement to exchange full infringement and invalidity contentions—to put each side fully on notice of the other party's contentions, thereby setting the scope of this case, and to allow Qualcomm to make fully informed decisions about its invalidity contentions, claim construction

10

and the appropriate scope of discovery.  It would be fundamentally unfair to reward ParkerVision's hide-the-ball strategy when Qualcomm has fully complied with its obligations to provide its invalidity contentions.  In light of ParkerVision's refusal to abide by the CMO and the fact that Qualcomm has been deprived of the benefit of its agreement to exchange contentions early in the case, Qualcomm moves for an order striking ParkerVision's inadequate infringement contentions and requiring ParkerVision to bring its charts for the QSC6270 into compliance with Rule 3-1 and the CMO.

> A.      Standards Applicable to Infringement Contentions.

The Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007) (granting motion to strike portion of infringement contentions that failed to comply with local patent rules). Accordingly, the rules require plaintiffs to "formulate, test, and crystallize their infringement theories" before providing their infringement contentions.  *ConnecTel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (local patent rules are "designed specifically to require parties to crystallize their theories of the case early in the litigation") (internal quotation marks omitted). By requiring plaintiffs to set forth specific theories of infringement early in the case, the Patent Rules create a "specific trajectory for the case," leading to more focused discovery and "narrowing issues for *Markman*, summary judgment, trial and beyond."  *ConnecTel*, 391 F. Supp. 2d at 527.

Patent Rule 3-1 requires the plaintiff to serve infringement contentions that identify (i) each asserted claim; (ii) each product accused of infringement; and (iii) where each

element of each asserted claim is found *within each of the accused products*.  *See* E.D. Tex. P. R. 3-1 (2005) (amended 2007).  In particular, Patent Rule 3-1 requires the plaintiff to provide claim charts "identifying specifically where each element of each asserted claim is found within each Accused Instrumentality."

To comply with Patent Rule 3-1, the plaintiff must "rigorously analyze" available information and provide infringement contentions that "explain with great detail [its] theories of infringement," setting forth "particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent [claims] themselves."  *ConnecTel*, 391 F. Supp. 2d at 528 (alteration in original) (internal quotation marks omitted); *see also Computer Acceleration*, 503 F. Supp. 2d at 823 ("contentions must be specific enough to give a defendant notice of plaintiff's infringement claims and must go beyond that provided by the mere language of the patent").

The level of detail that a plaintiff must provide in its infringement contentions is *not* conditioned upon discovery from the accused infringer; plaintiffs are required to undertake a rigorous pre-suit investigation, requiring reverse engineering or the equivalent.  *See ConnecTel*, 391 F. Supp. 2d at 528; *Intertrust Techs. Corp. v. Microsoft Corp.*, No. C 01-1640 SBA, 2003 WL 23120174, at *2 (N.D. Cal. Dec. 1, 2003) ("At the Patent Local Rule 3-1 Disclosure stage, a plaintiff must put forth information so specific that either reverse engineering or its equivalent is required."); *Bender v. Maxim Integrated Prods., Inc.*, No. C 09-01152 SI, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010) ("While the Court is sensitive to plaintiff's concerns about the expense of reverse engineering over 200 products, it is also sensitive to the desire of defendant not to be forced to produce proprietary schematics unnecessarily.").

Infringement contentions fail to provide the breadth of disclosure required by Patent Rule 3-1 if they do not include element-by-element contentions for *each* Accused Instrumentality.[3]  "Although representative claim charts may be used in the appropriate case, [the p]laintiff has the burden of establishing that the products in the claim charts are representative of all of the accused products."  *Vigilos LLC v. Sling Media Inc.*, No. C-11-04117 SBA (EDL), Slip Op. at 8 (N.D. Cal. July 12, 2012) (citation omitted); *Bender*, 2010 WL 1135762, at *3 (finding inadequate infringement contentions where plaintiff had not "provided an adequate explanation of why the claim charts are representative of all of the accused products.").

Further, infringement contentions fail to provide the depth of disclosure required by Patent Rule 3-1 if they do not identify for each asserted claim specifically *where* each claim element is found within the Accused Instrumentality.  *See Computer Acceleration*, 503 F. Supp. 2d at 823-25 (striking infringement contentions and dismissing claims with respect to one accused product because the patentee failed to identify where each element of each asserted claim could be found within that accused product).[4]

This Court has the inherent power to "impose any 'just' sanction for the failure to obey a scheduling order, including 'refusing to allow the disobedient party to support or

---

[3] *See Computer Acceleration*, 503 F. Supp. 2d at 824 ("the requirement [of Patent Rule 3-1] to provide a claim chart for each accused product is crystal clear"); *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09-cv-116, 2010 WL 346218, at *3 (E.D. Tex. Jan. 21, 2010) (finding deficient infringement contentions that failed to provide detailed claim charts for each accused instrumentality); *Vigilos LLC v. Sling Media Inc.*, No. C-11-04117 SBA (EDL), Slip Op. at 8 (N.D. Cal. July 12, 2012) (infringement contentions providing claim charts for a single product failed to satisfy local patent rule 3-1 where the accused products "appear[ed] to differ from each other or fall into two or more different categories.").

[4] *See also Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, Civil Action No. 6:07-CV-559, 2009 WL 81874, at *6 (E.D. Tex. Jan. 12, 2009) (finding inadequate plaintiff's claim charts that did "little more than parrot the claim language" and ordering patentee to "clearly and unambiguously" identify each claim element in each of the accused products); *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 707-09 (E.D. Tex. 2008) (same).

oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence.'" *O2 Micro Int'l*, 467 F.3d at 1363 (quoting Fed. R. Civ. P. 16(f), 37(b)(2)(B)). Accordingly, the Court has the authority to strike portions of ParkerVision's Infringement Contentions for failure to comply with the requirements of Rule 3-1.[5]

> B.   ParkerVision's Infringement Contentions Are Inadequate Because They Do Not Include Element-By-Element Allegations For 60 of the Accused Products.

ParkerVision's Infringement Contentions list 61 Qualcomm part numbers as "Accused Products", and identifies "circuitry in the Accused Products that converts a signal on a carrier frequency to baseband without conversion to an intermediate frequency" as the "Accused Instrumentality" within each product.  (*See* Canning Decl. Ex. 8.)  However, ParkerVision supplied Qualcomm with alleged infringement charts only for Qualcomm's QSC6270 product.  ParkerVision did not provide the claim charts required by Rule 3-1 for any other Accused Product.  *See Computer Acceleration*, 503 F. Supp. 2d at 824 (noting that a claim chart is required for each accused product); *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09-cv-116, 2010 WL 346218, at *3 (E.D. Tex. Jan. 21, 2010) (same).[6]  Indeed, the Infringement

---

[5] *See, e.g., Computer Acceleration,* 503 F. Supp. 2d at 824 (striking inadequate infringement contentions); *Williams Wireless Techs., Inc. v. Research in Motion Corp.*, No. 4:06-cv-305, 2007 WL 1932806, at *1-2 (E.D. Tex. May 31, 2007) (striking inadequate infringement contentions relating to those of defendant's products for which plaintiff failed to provide revised claim charts); *Shared Memory Graphics LLC v. Apple Inc.*, No. C-10-02475 MMC (JSC), 2011 WL 3878388, at *4-8 (N.D. Cal. Sept. 2, 2011) (striking infringement contentions with respect to certain asserted claim limitations).

[6] Notably, the parties have not reached any agreement that would allow ParkerVision to provide Infringement Contentions with regard to only a single representative product.  Even if such an agreement had been reached, ParkerVision bears the burden of showing that the QSC6270 is representative of the other Accused Products.  *See Bender v. Advanced Micro Devices, Inc.*, No. C-09-1149, 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010) (holding, under a local patent rule analogous to Rule 3-1, that the use of representative claim charts is improper where the patentee "has not shown that any of the accused products for which [it] has provided claim charts are in fact representative of any other product").  ParkerVision has not even attempted to meet that burden.

Contentions do not provide *any* analysis of how the other 60 Accused Products allegedly infringe the patents-in-suit.[7]

This failure is critical because the RF circuitry within many of the Accused Products is very different from the RF circuitry found in the QSC6270.  (*See* Dunworth Decl. ¶¶ 11-27.)  The Accused Products comprise 20 different RF circuit designs, and only two Accused Products—QSC6240 and MDM6270—share the same RF circuit design as the QSC6270.  (*Id.*)  The distinct RF circuits found within the Accused Products differ in a number of ways relevant to ParkerVision's Infringement Contentions with respect to one or more asserted claims.  Some of the relevant ways in which the RF circuits differ are set forth below, and in greater detail in the Declaration of Jeremy D. Dunworth, which is submitted simultaneously herewith:

- While the QSC6270 down-converts signals using passive mixers that operate in "current mode," many of the Accused Products down-convert signals using passive mixers that operate in "voltage mode."  (*Id.* ¶¶ 14-16.)

- While the QSC6270 has capacitors connected between the output node of the down-converting passive mixers and ground, many of the Accused Products do not include such a capacitor.  (*Id.* ¶¶ 17-20.)

- While the QSC6270 has a capacitor connected between the two differential output notes of the down-converting passive mixer, many of the Accused Products do not include such a capacitor.  (*Id.* ¶¶ 21-22.)

- While the local oscillator signal on the QSC6270 operates at a 25% duty cycle, the local oscillator signal on many of the Accused Products operates at a 50% duty cycle.  (*Id* ¶¶ 23-24.)

- While the RF circuitry in the QSC6270 directly down-converts a received RF signal to baseband, one of the Accused Products does not directly

---

[7] ParkerVision's claim charts for the '551 and '845 Patents do include passing references to three additional Qualcomm products, the RTR6285, RTR6500 and QSC6085.  However, these  claim charts contain no specific allegations concerning these three products.  Rather, ParkerVision provides only the name of an article and/or a die photo of a chip that ParkerVision labels as one of these Accused Products. (*See* Canning Decl. Ex. 10 A1:53, A6:24-26, A6:33, A6:36.)

down-convert the carrier signal, but instead makes use of a low intermediate frequency.  (*Id.* ¶¶ 26-27.)

Each of these differences is relevant to ParkerVision's Infringement Contentions with respect to one or more asserted claims.  (*Id.* ¶¶ 11-27.)  Accordingly, ParkerVision's failure to provide specific contentions with respect to the many different RF circuit designs within the Accused Products makes it impossible for Qualcomm to ascertain ParkerVision's contentions with respect to products incorporating those circuit designs.

ParkerVision has argued that its failure to provide detailed infringement contentions for each Accused Product is excused by the parties' agreement, set forth in the CMR, that, "[i]f the party asserting patent infringement contends that an *identical* Accused Instrumentality is contained in multiple products, then that Accused Instrumentality is required to be charted only once with an accompanying identification of the products that allegedly contain that Accused Instrumentality."  (Dkt. 69 at 15 (emphasis added); Canning Decl. Ex. 11.) However, nowhere in its Infringement Contentions does ParkerVision state or provide support for the position that the Accused Instrumentality—*i.e.*, the portion of the RF circuitry "that converts a signal on a carrier frequency to baseband without conversion to an intermediate frequency"— is *identical* from product to product for each element of each asserted claim.  Nor could it, because in many of the Accused Products, the Accused Instrumentality is quite different from that found in the QSC6270.  (*See* Dunworth Decl. ¶¶ 11-27.)  Had ParkerVision conducted the kind of pre-suit investigation that it has repeatedly claimed—and was required—

to have conducted, it would have realized that it has accused many *different* chip designs of infringing its claims.[8]

In correspondence prior to this motion, ParkerVision has now attempted to excuse its refusal to provide detailed claim charts for any Accused Product other than the QSC6270 by claiming that Qualcomm's discovery responses to date are deficient.  (*See* Canning Decl. Ex. 13.)  But the state of discovery in this case is irrelevant to whether ParkerVision should be held to account for its deficient contentions:  ParkerVision is required to have conducted a detailed investigation of Qualcomm's products, including reverse engineering or the equivalent.  *See Intertrust Techs.*, 2003 WL 23120174, at *2; *Bender*, 2010 WL 1135762, at *2. Indeed, ParkerVision clearly understood that its obligation to provide detailed infringement contentions was independent of Qualcomm's discovery obligations because it did not even serve any discovery requests on Qualcomm until January 18, 2012, just 12 days before its infringement contentions were due.  Thus, ParkerVision agreed to provide detailed infringement contentions by a date well before it received any written discovery from Qualcomm.[9]

---

[8] ParkerVision's apparent failure to conduct an adequate investigation of Qualcomm's products prior to bringing suit does not justify its failure to provide infringement charts for *each* chip within the Accused Products that it alleges infringes the asserted claims.  To the contrary, ParkerVision's apparent lack of diligence in investigating its claims of infringement warrants striking its inadequate contentions. *See Computer Acceleration*, 503 F. Supp. 2d at 824 (lack of diligence weighed in favor of striking infringement contentions where plaintiff had submitted same deficient chart for both its preliminary and final contentions, despite having had notice of the deficiency and the opportunity to amend).

[9] ParkerVision based much of its contentions about the QSC6270 on a "tear-down" report (essentially a reverse-engineering of the product) by CircuitVision.  ParkerVision has not offered any excuse for its apparent failure to obtain similar tear-down reports for any other Accused Product. Qualcomm has not even had access to the CircuitVision report.  ParkerVision has refused to provide Qualcomm with a copy and only today consented to allow Qualcomm to view the report at ParkerVision's offices.

Further, starting on April 16, 2012, Qualcomm produced to ParkerVision technical documents and product specifications in excess of 16,000 documents, spanning over 1 million pages.  From these documents ParkerVision could have determined that it had accused several very different products of infringement.  ParkerVision has had a substantial portion of these documents for several months, but has neither acknowledged the deficiencies in its Infringement Contentions nor sought leave to correct them.  ParkerVision has no excuse for this lack of diligence.[10]

    C.    <u>The Appropriate Remedy Is to Strike ParkerVision's Inadequate Infringement Contentions.</u>

In determining whether to strike inadequate infringement contentions, courts often consider the following factors:  (i) the danger of unfair prejudice; (ii) the length of the delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the party responsible for the delay; (iv) the importance of the particular matter, and if vital to the case, whether a lesser sanction would adequately address the other factors to be considered; and (v) the diligence of the offending party.  *See, e.g.*, *Computer Acceleration*, 503 F. Supp. 2d at 822.

At this developed stage in the case, Qualcomm still has no idea what ParkerVision's infringement contentions are with respect to 58 of the 61 Accused Products—*i.e.*, those that do not have RF circuitry identical to that of the QSC6270—and, as discussed below,

---

[10] Nor is Qualcomm required to do ParkerVision's homework for it.  ParkerVision has recently complained that Qualcomms's response to Interrogatory No. 4 is inadequate.  But ParkerVision and its experts can discern the differences between Qualcomm's products just as easily as Qualcomm from the technical documents Qualcomm has produced.  Notably, ParkerVision did not start complaining about the adequacy of Qualcomm's answer to Interrogatory No. 4 until recently, when Qualcomm refused to agree to permit ParkerVision to amend its contentions.

an inadequate disclosure of the alleged infringement by the QSC6270.  Despite ParkerVision's

repeated touting of its pre-suit infringement investigation, ParkerVision has done nothing to

focus its infringement case by, for example reducing the number of asserted claims.[11]

ParkerVision appears to want Qualcomm to remain in the dark with respect to the real issues in

this case.  But Qualcomm should not have to guess at the substance of ParkerVision's

contentions with respect to virtually all of the Accused Products or try to deduce them from

what has been disclosed about the QSC6270.  Indeed, it is beyond dispute that at this late date,

after the *Markman* hearing and just before the approaching fact-discovery cut-off, Qualcomm

has and will continue to suffer material prejudice if ParkerVision's claims of infringement with

respect to those products for which it has refused to provide detailed infringement contentions

are allowed to remain in the case.  *See Computer Acceleration*, 503 F. Supp. 2d at 824 (striking

infringement contentions as against an accused product for which no detailed contentions were

provided, noting that the resulting prejudice to the defendant "weigh[ed] heavily in favor of

striking the infringement contentions" concerning that accused product).

By contrast, any prejudice that ParkerVision will suffer if its inadequate

infringement contentions are stricken will be entirely of its own making.  ParkerVision has

repeatedly touted the extent of its pre-suit investigation (*see, e.g.*, Dkt. 69 at 36) and was the

party to suggest the early exchange of infringement contentions.  But when the time came for

ParkerVision to put its cards on the table, it utterly failed to do so, instead serving deficient

contentions that provided claim charts (albeit materially deficient charts) for only one of the

---

[11] Since this action was filed, Qualcomm has repeatedly asked ParkerVision to narrow the number of Asserted Claims in this case to a manageable number. (*See, e.g.*, Canning Decl. Exs. 12, 13.)  ParkerVision cannot reasonably expect to litigate the 86 claims that it currently asserts.  But, rather than reveal to Qualcomm the precise claims that it intends to raise at trial, ParkerVision continues to play hide-the-ball.

Accused Products.  Qualcomm put ParkerVision on notice of the many defects in its

Infringement Contentions, but ParkerVision chose not to cure them when given a chance to do

so when the Court extended its time to serve its Infringement Contentions.

It would be fundamentally unfair not to hold ParkerVision to its bargain with

Qualcomm and the instructions in the CMO.  Qualcomm complied fully with its obligation to

provide complete invalidity contentions by the deadline provided by the Court.  Qualcomm

fully disclosed its invalidity contentions, preparing 4,675 pages of claim charts showing,

element by element, how prior art references—alone or in combination—invalidate

ParkerVision's asserted claims.[12]  Qualcomm's invalidity contentions are so numerous because

ParkerVision has refused to reduce the number of asserted claims (86), and because there is a

wealth of prior art that invalidates ParkerVision's patents.  Qualcomm's legal team spent

literally hundreds, if not thousands, of hours preparing Qualcomm's invalidity contentions on

the schedule agreed to by the parties and ordered by the Court.  As a result, ParkerVision, the

plaintiff here, has full knowledge of Qualcomm's invalidity case while Qualcomm has

materially deficient knowledge about ParkerVision's infringement allegations.  Qualcomm

agreed to an early exchange of contentions based on the belief that ParkerVision would play fair

and fully disclose its contentions rather than play hide the ball.  Even after Qualcomm and the

Court gave ParkerVision a second chance to provide compliant infringement contentions, it

made a conscious decision to refuse.  Under these circumstances, ParkerVision should not be

permitted to amend its infringement contentions, other than to bring the contentions for the

QSC6270 into compliance with Rule 3-1 (as discussed below).

---

[12] Given the volume of the invalidity contentions, Qualcomm has refrained from submitting them to the Court, but will submit them or relevant excerpts to the Court to the extent it wishes to examine them.

Moreover, in the CMR, ParkerVision argued that there should not be a deadline for serving final contentions and that the parties should be able to amend their contentions at any time for good cause.  (*See* Dkt. 69 at 6-7.)  The Court *rejected* ParkerVision's position and ordered in the CMO that "each parties' contentions shall be deemed to be that party's *final* contentions" except that if a party believes in good faith that the Court's claim construction ruling so requires, that party may amend its contentions by certain dates.  (*See* Dkt. 84 at 1-3 (emphasis added).)  This ruling was consistent with Qualcomm's position, as set forth in the CMR, that "contentions should cease to be moving targets."  (*See* Dkt. 69 at 5-6.)  Nowhere does the CMO allow a party to amend contentions to provide information that should have been included in the first place.  Allowing ParkerVision to do so here would give ParkerVision an ability that it argued for, and lost, and would defeat the purpose of the CMO to provide needed finality.

Accordingly, because there is no risk of unfair prejudice to ParkerVision in striking its inadequate contentions and because Qualcomm will necessarily be prejudiced by allowing ParkerVision to shirk its duties of disclosure under Rule 3-1 and the CMO, it is entirely appropriate for the Court to strike ParkerVision's inadequate infringement contentions.

## II.     ParkerVision Should Be Compelled To Supplement Its Infringement Contentions With Respect to the QSC6270.

With respect to the single Accused Product—the QSC6270—for which ParkerVision has provided claim charts, ParkerVision's Infringement Contentions are materially incomplete because they fail to provide the full disclosure required by Rule 3-1. ParkerVision should be compelled to amend its contentions with respect to this product to bring them into compliance with Rule 3-1.

ParkerVision's Infringement Contentions with respect to the QSC6270 do not identify where in the Accused Instrumentality each element of each Asserted Claim is found. The Infringement Contentions fail entirely to account for the fact that the QSC6270 contains five distinct circuit paths that perform direct down-conversion, each of which is directed to a different mode of communication. (Dunworth Decl. ¶¶ 12-13.) These paths include a GSM high-band path, a GSM low-band path, two WCDMA high-band paths, and a WCDMA low-band path. (*Id.*) Although each of these paths contains different circuitry to down-convert a carrier signal, ParkerVision's Infringement Contentions provide (incomplete) analysis of only a single path, which is not even identified. (*Id.*) Thus, it is unclear from the Infringement Contentions which path or paths ParkerVision has accused of infringing its claims. (*Id.*) This frustrates not only Qualcomm's ability to understand ParkerVision's contentions with respect to the QSC6270, but also its ability to extrapolate ParkerVision's contentions to other products that may contain paths similar to those found in the QSC6270.

For many Asserted Claims, ParkerVision fails to identify where in the QSC6270 each of the requisite claim elements can be found. For example, with respect to at least 31 of the claims asserted against the QSC6270, ParkerVision fails to identify *any* link between the claim language and the disclosed information and/or alleged diagrams of Qualcomm's product.[13] Rather, in nearly every case, ParkerVision includes a purported diagram of Qualcomm's QSC6270 product that is labeled using vague language that differs from the claim terms. For example, for its infringement contentions with respect to '551 Patent Claim 12, ParkerVision

---

[13] These claims include claims 12, 16, 20, 25, 39, 41, 54, 55, 57, 92, 93, 113, 126, 135, 192, 193, 195, and 196 of the '551 Patent; claims 12, 27, 81, and 91 of the '518 Patent; claims 19, 20, 21 and 23 of the '342 Patent; and claims 3, 4, 5, 7, and 12 of the '845 Patent. (*See* Canning Decl. Ex. 10.)

merely circles a large portion of a circuit diagram and labels it as "mixer input matching elements"—a term that is neither found in the claims nor descriptive of why ParkerVision contends a claim element is satisfied by the circuitry depicted in the diagram. (*See, e.g.*, Canning Decl. Ex. 10 at A1:24-25.) Such unlabeled or mislabeled diagrams do not inform Qualcomm of the bases for ParkerVision's allegations of infringement, and therefore fail to satisfy Rule 3-1. *See ConnectTel*, 391 F. Supp. 2d at 527-28 (the Patent Rules require that a plaintiff's infringement contentions "set for particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent [claims] themselves") (alteration in original) (internal quotation marks omitted). Accordingly, ParkerVision's contentions with respect to these 31 claims are deficient for this additional reason. *Id.*

With respect to several asserted claims, ParkerVision's infringement contentions fail to disclose a critical claim element. For example, ParkerVision's allegations with respect to Claim 1 of the '551 Patent do not identify the value for "n," which is used to determine the allegedly aliasing rate used by the QSC6270 according to the phrase, "at an aliasing rate that is substantially equal to a frequency of the carrier signal plus or minus [the] frequency of the lower frequency of the lower frequency signal, divided by n, where n represents a harmonic or sub-harmonic of the carrier signal." (*See* Canning Decl. Ex. 10 at A1:11-18.) As discussed at the *Markman* hearing, this information is important to ParkerVision's allegations of infringement. (*See* Canning Decl. Ex. 1 at 93:20-94:3.) Without an understanding of ParkerVision's contentions on this point, Qualcomm is prejudiced in its ability to develop and articulate its non-infringement position.

Additional examples of ParkerVision's failure to identify necessary claim limitations within the QSC6270 are set forth in the following table.  In each case, ParkerVision's Infringement Contentions fail to identify anything as satisfying the "missing claim limitation."

| Asserted Claim | Missing Claim Limitation(s) |
|---|---|
| '551 Patent Claim 1 | "receiving a carrier signal" |
| '551 Patent Claim 12 | "substantially impedance matched input path" |
| '551 Patent Claim 16 | "reactive storage device" |
| '551 Patent Claim 57 | "demodulated baseband signal" |
| '551 Patent Claim 92 | "a frequency relationship between the pulses and the carrier signal" |
| '518 Patent Claim 12 | "impedance matched input path" |
| '371 Patent Claim 22 | "storage module" |
| '371 Patent Claim 31 | "asynchronous energy transfer signal" |

(*See* Canning Decl. Ex. 10 at A1:11, A1:24-26, A1:58-60, A2:23-24, A3:62-67, A3:76-79.)  In light of these many failures, ParkerVision's contentions with respect to the claims identified in Table 1 are plainly deficient and should be stricken.  *See Computer Acceleration*, 503 F. Supp. 2d at 823-25 (striking infringement contentions that failed to identify where each asserted element of each asserted claim was found in one of the accused products).

### Conclusion

For the foregoing reasons, Qualcomm respectfully requests this Court grant Qualcomm's motion and (i) strike the portions of ParkerVision's  infringement contentions that fail to comply with the requirements of the CMO, *i.e.,* to strike ParkerVision's contentions with respect to all products other than the QSC6270 and products with identical RF circuitry; and (ii)

compelling ParkerVision to bring its infringement contentions for the QSC6270 into compliance with the CMO.

August 27, 2012

CRAVATH, SWAINE & MOORE LLP

By:     s/ Keith R. Hummel
  Keith R. Hummel (admitted pro hac vice) (Trial Counsel)
  khummel@cravath.com
  David Greenwald (admitted pro hac vice)
  dgreenwald@cravath.com
  Worldwide Plaza
  825 Eighth Avenue
  New York, New York  10019
  Telephone:  (212) 474-1000
  Facsimile:  (212) 474-3700

    -and-

BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.
  John A. DeVault, III
  Florida Bar No. 103979
  jad@bedellfirm.com
  Courtney K. Grimm
  cgrimm@bedellfirm.com
  Florida Bar No. 953740
  The Bedell Building
  101 East Adams Street
  Jacksonville, Florida 32202
  Telephone:  (904) 353-0211
  Facsimile:  (904) 353-9307

    -and-

CADWALADER, WICKERSHAM & TAFT LLP
> Christopher A. Hughes (admitted pro hac vice)
> Christopher.Hughes@cwt.com
> 1 World Financial Center
> New York, New York 10281
> Telephone:  (212) 504-6000
> Facsimile:  (212) 504-6666

> -and-

GOODWIN PROCTER, LLP
> Steven A. Moore (admitted pro hac vice)
> samoore@goodwinprocter.com
> Richard W. Thill (admitted pro hac vice)
> rthill@goodwinprocter.com
> 4365 Executive Drive, Suite 3000
> San Diego, CA 92121
> Telephone:  (858) 202-2700
> Facsimile:  (858) 457-1255

*Counsel for Defendant, Counterclaim Plaintiff Qualcomm Incorporated*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this August 27, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

<u>s/ Keith R. Hummel</u>
Keith R. Hummel (admitted pro hac vice)
khummel@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
*Attorney for Defendant,*
*Counterclaim Plaintiff*

27