## THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| PARKERVISION, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>QUALCOMM INCORPORATED,<br><br>*Defendant.* | Case No. 3:11-cv-719-J-37-TEM |
| QUALCOMM INCORPORATED,<br><br>*Counterclaim Plaintiff,*<br><br>v.<br><br>PARKERVISION, INC., and<br>STERNE, KESSLER, GOLDSTEIN & FOX PLLC<br><br>*Counterclaim Defendants.* | |

### DECLARATION OF JEREMY D. DUNWORTH

I, Jeremy D. Dunworth, declare pursuant to 28 U.S.C. § 1746 that:

1.      I make this declaration in support of Qualcomm's Motion to Strike ParkerVision's Inadequate Infringement Contentions.

2.      I have been a full-time employee at Qualcomm since May 1999.

3.      My current title is Principal Engineer/Manager.

4.      My current job responsibilities primarily involve research and development of Radio Frequency (RF) integrated circuits (ICs) for future cellular communications standards.

5.     I received a Bachelor of Science in Electrical Engineering from the University of California, San Diego and a Master of Science in Electrical Engineering from Stanford University.

6.     Prior to my current role, I was the IC design lead for several of Qualcomm's transceiver products, including the RTR6500 product (known within Qualcomm by the codename for the design 'Voltron'), and I was the analog design lead for the 'Marimba' design that was incorporated as a component into several of Qualcomm's products.  In addition, I have designed RF transceiver circuits for several other Qualcomm products.

7.     I have reviewed ParkerVision's Infringement Contentions dated March 2, 2012.  I understand that ParkerVision has accused 61 Qualcomm products (the "Accused Products") of infringing various claims in U.S. Patent Nos. 6,061,551 (the "'551 patent"), 6,266,518 (the "'518 patent"), 6,370,371 (the "'371 patent"), 6,963,734 (the "'734 patent"), 7,496,342 (the "'342 patent"), and 7,724,845 (the "'845 patent") (collectively, the "Patents-in-Suit").

8.     I have reviewed the circuit schematics for each of the Accused Products. Additionally, I have discussed the design of the receiver down-conversion circuits in the Accused Products with Qualcomm engineers who designed the circuits.

I.     **Background**

9.     Qualcomm is engaged in the design, marketing, and sale of wireless communication equipment and technology, including cellular, Bluetooth and wireless-LAN (*i.e.*, WiFi) technology.  Each of these wireless communication technologies requires the use of RF receiver circuitry

10.     Many different factors and requirements must be taken into account in the design of the receiver portions of the Accused Products, including market-related requirements, customer-related requirements and requirements imposed by one or more

telecommunications standards (*e.g.*, IS-95 standard for CDMA, 3GPP standard for UMTS, 802.11(n) standard for wireless-LAN technology).  As a result, the receivers in the Accused Products contain very different circuitry designs.  Specifically, the design of the receiver circuitry within the QSC6270 is, in many cases, very different from the design of the receiver circuitry in the other Accused Products.

## II.    The Accused Products Contain Different Receiver Circuit Designs.

11.    In the table below, I have organized the Accused Products according to the RF circuit design—*i.e.*, the portion of the chip that, among other things, performs direct down-conversion—found in each product.  Only two other Accused Products make use of the same RF circuit design as that found in the QSC6270.  The remainder of the Accused Products contain RF circuitry, and more specifically, receiver down-conversion circuitry, that differs from the circuitry found in the QSC6270 in a variety of ways, several of which I have identified in the subsequent sections of this declaration.

| RF Circuit Design | Product Numbers |
| --- | --- |
| Bahama | WCN2243 |
| Bali | BTS4020, BTS4020BD, BTS4021, BTS4050, BTS4051, BTS4052 |
| Catalina | BTS4054, BTS4055 |
| Clemente | BTS5045 |
| Eagleray | FTR8700 |
| Fiji | BTS4025 |
| GZIF4 | RTR6236, RTR6237, RTR6280, RTR6285, RTR6285A, MXU6219, RGR1000, RGR1100 |
| Hercules | RTR8700 |
| Iceman | RTR9605 |
| Iris | WCN3660 |

| Libra/Gemini | WCN1312 |
|---|---|
| Magellan | MDM6200, MDM6600, QSC6155, QSC6165, QSC6175, QSC6185, QSC6195, QSC6295, QSC6695, QTR8200, QTR8201, QTR8215, QTR8600, QTR8600L, QTR8601, QTR8615, QTR8615L, RTR8201, RTR8600, RTR8601, RTR8605 |
| Marimba | Bluetooth portions of the following products:  QSC6155, QSC6165, QSC6175, QSC6185, QSC6195, QSC6295, QSC6695, QTR8200, QTR8201, QTR8600, QTR8600L, QTR8601 |
| Napoleon | QSC1100, QSC1110 |
| Odyssey | WTR1605, WTR1605L |
| Ramsis | QSC6055, QSC6065, QSC6075, QSC6085, MDM6085 |
| Solo | QSC6270, QSC6240, MDM6270 |
| Volans | WCN1314 |
| Voltron | RTR6500, MXC6369 |
| Ywing | WCN1320 |

**III.     Several Accused Products Contain Many Distinct Circuit Paths That Perform Down-Conversion.**

12.     Many of the Accused Products contain several different circuit paths, each of which performs down-conversion.  For example, the QSC6270 receiver contains five distinct circuit paths that perform down-conversion, each of which is directed to a different mode of communication.  These paths include a GSM high-band path, a GSM low-band path, two WCDMA high-band paths, and a WCDMA low-band path.  Each of these down-conversion paths contains different circuitry to down-convert a received RF signal.

13.     ParkerVision's Infringement Contentions, which are focused on the QSC6270, appear to provide analysis of only one of the five circuit paths.  ParkerVision does not identify which path has been analyzed and the Infringement Contentions lack the details that would allow someone familiar with the chip to deduce which path was being analyzed.  *See*

ParkerVision's March 2, 2012 Infringement Contentions, Exhibit A.1, at pp. 7-8.  Thus, it is unclear from the Infringement Contentions which path or paths ParkerVision has accused of infringing its patents.  Without knowing which path ParkerVision has accused of infringement, it is unclear whether or how ParkerVision's infringement contentions apply to other paths in the other Accused Products.

## IV.   There Are Many Differences in the RF Circuitry in the Accused Products.

### A.   The Down-Conversion Circuitry that Processes the received RF signal in the QSC6270 is Vastly Different than in Many Accused Products.

14.   While most[1] of the Accused Products contain passive mixers as part of the RF circuitry that performs direct down-conversion, the operation of the passive mixers in many Accused Products are fundamentally different from the operation of the passive mixers in the QSC6270.  More specifically, the passive mixers in the QSC6270 operate in "current mode," meaning that the signal input to the mixer is represented by varying the amount of electrical current input into the mixer.  This is accomplished by designing the value of the impedance driving the RF input of the QSC6270's passive mixers to be much higher than the value of the impedance connected to the baseband port of the mixers.   However, many of the Accused Products contain passive mixers operating in "voltage mode," meaning that the signal input to the mixer is represented by varying the voltage input into the mixer.  This is generally accomplished by designing the value of the impedance driving the RF input of the passive mixers to be much lower than the value of the impedance connected to the baseband port of the mixers.

---

[1] The RGR1000 does not enable circuitry that performs direct down-conversion of a received RF signal.

15.     The mixers in at least the following Accused Products, unlike in the QSC6270 product, operate in "voltage mode":  BTS4020, BTS4020BD, BTS4021, BTS4050, BTS4051, BTS4052, BTS4025, BTS4054, and BTS5045.

16.     I understand that the distinction between products with passive mixers operating in voltage mode and passive mixers operating in current mode is relevant to ParkerVision's infringement contentions because ParkerVision states that (i) the "amount of energy transferred [in the down-conversion process]. . . is directly related to the noise figure (NF) of the device," and (ii) the "minimum NF and insertion loss (energy transfer) are related" through an equation that depends on the relative values of an input impedance labeled Zin and an output impedance labeled Zout.  *See* ParkerVision's Infringement Contentions, Exhibit A.1, at p. 14.  It therefore follows that, according to ParkerVision, the amount of "energy transfer" is dependent on whether the mixer is a "current mode" mixer or a "voltage mode" mixer.  I further understand this allegation to be relevant to at least all asserted claims of the '551 Patent (*i.e.*, independent Claims 1 and 23 and their asserted dependent claims), all asserted claims of the '518 Patent (*i.e.*, independent Claims 1, 77, 82, 90 and their asserted dependent claims), all asserted claims of the '371 Patent (*i.e.*, independent Claims 1 and 2, and their asserted dependent claims), and Claims 5 and 6 of the '845 Patent.  *See e.g.*, ParkerVision's Infringement Contentions, Exhibit A.1, at pp. 11-18 and 37-46.

**B.     The Capacitor at the Output Node of the Mixers in the QSC6270 is Not Present in Many Accused Products.**

17.     All receive paths in the QSC6270 include at least one capacitor connected between the output node of the passive mixer and ground.  However, many of the Accused Products—including the BTS4020, BTS4020BD, BTS4021, BTS4050, BTS4051, BTS4052,

BTS4025, BTS4054 and BTS5045—do not include a capacitor connected between the output node of the passive mixer and ground.

18.    I understand this distinction is relevant to ParkerVision's infringement contentions because, among other things, ParkerVision asserts that independent Claim 23 of the '551 Patent and its asserted dependent claims require that a "switch module" be coupled to a "storage module."  *See, e.g.*, ParkerVision's Infringement Contentions, Exhibit A.1, at p. 50.  ParkerVision identifies the capacitor connected between ground and the output node of a mixer in the QSC6270 as the "integration capacitor," which I believe ParkerVision intends to equate with the "storage module" term.  *Id.*

19.    I also understand this distinction to be relevant to ParkerVision infringement contentions because Claims 19-21 of the '342 Patent require that "the first capacitor discharges between six percent to fifty percent of the total charge stored therein during a period of time that the first switching device is open, and wherein the second capacitor discharges between six percent to fifty percent of the total charge stored therein during a period of time that the second switching device is open" or some variation of that language.  *See* ParkerVision's Infringement Contentions, Exhibit A.5 ('342 Patent), pp. 32-35.  ParkerVision identifies a network of capacitors and resistors as satisfying this claim element, including the capacitor in the QSC6270 that is connected between the output node of the mixer and ground.  *Id.*

20.    ParkerVision's Infringement Contentions with respect to the QSC6270 do not shed any light on how Accused Products lacking a capacitor connected between the output node of the passive mixer and ground could possibly infringe the above-referenced claims.

**C.** **The Differential Capacitor at the Output of the Mixers in the QSC6270 Is Not Present in Many Accused Products.**

21.     One way in which many Accused Products differ from the QSC6270 concerns whether there is a capacitor connected between the differential outputs of the passive mixer. In the QSC6270, a capacitor is connected between the two differential signal outputs from each passive mixer—the positive-polarity signal (+) and the inverted signal (-). However, the following Accused Products do not contain such a capacitor:  RTR6500, MXC6369, BTS4020, BTS4020BD, BTS4021, BTS4050, BTS4051, BTS4052, BTS4025, BTS4054, and BTS5045. Additionally, one receiver path—called the "diversity" path— in each of the following Accused Products does not contain a capacitor in such a configuration:  QSC6055, QSC6065, QSC6075, QSC6085, and MDM6085.  The "diversity" paths and some of the "primary" receiver paths in each of the following accused products do not contain a capacitor in such a configuration: RTR6236, RTR6237, RTR6280, RTR6285, RTR6285A, MXU6219.

22.     I understand that this distinction is relevant because, among other things, all asserted claims of the '734 Patent (*i.e.*, independent claims 1 and 12 and their asserted dependent claims) require a "storage element coupled between said first and second switches."  *See e.g.*, ParkerVision's Infringement Contentions, Exhibit A.4 ('734 Patent), at p. 15.  ParkerVision identifies "a capacitor coupled between first and second switches of the in-phase (I) passive switching mixer circuitry" as satisfying this claim element.  *Id.* at 17. ParkerVision's Infringement Contentions with respect to the QSC6270 do not shed any light on how Accused Products lacking a capacitor connected between the differential outputs of the passive mixer could possibly infringe the Asserted Claims.

**D.**    **Many Accused Products Do Not Use the Same Duty Cycle as the QSC6270**

23.    One difference among the many Accused Products concerns the duty cycle of the local oscillator ("LO") generation circuitry. Specifically, while many of the Accused Products (including the QSC6270) operate at a 25% duty cycle, several Accused Products operate at a 50% duty cycle. For example, at least the following Accused Products use a 50% duty cycle: QSC6055, QSC6065, QSC6075, QSC6085, MDM6085, RTR6500, MXC6369, WCN1312, WCN1314, WCN1320, WCN2243, WCN3660, BTS4020, BTS4020BD, BTS4021, BTS4050, BTS4051, BTS4052, BTS4025, BTS4054, BTS5045, FTR8700, RTR6236, RTR6237, RTR6280, RTR6285, RTR6285A, MXU6219, RGR1000, RGR1100. The following Accused Products contain at least one receiver path which uses a 50% duty cycle: QSC6155, QSC6165, QSC6175, QSC6185, QSC6195, QSC6295, QSC6695, QTR8200, QTR8600, QTR8600L, and QTR8601.

24.    I understand that this distinction is relevant because, among other things, Claims 39 and 161 of the '551 Patent, and Claims 3-7 and 12 of the '845 Patent require a "half cycle" signal be used for "transferring . . . energy." *See, e.g.,* ParkerVision's Infringement Contentions, Exhibit A.6, p. 26. ParkerVision's Infringement Contentions concerning the QSC6270, which is a 25% duty cycle product, do not provide any insight as to ParkerVision's contention with respect to how this limitation is met by 50% duty cycle products.

**E.**    **The Bluetooth Products Are Very Different from the QSC6270**

25.    From the above analysis, it is clear that the following Bluetooth products differs from the QSC6270 in each way that I have outlined above: the BTS4020, BTS4020BD, BTS4021, BTS4050, BTS4051, BTS4052, BTS4025, BTS4054, and BTS5045. That is, none of these Bluetooth-only products have the relationship between the impendences on the input and output ports of the mixer as implied by the Infringement Contentions; none have a capacitor connected between the output node of the mixer and ground; and none have a capacitor

connected between the differential outputs of the mixer.  Additionally, each of the Bluetooth products has LO generation circuitry that, unlike the circuitry within the QSC6270, operates at a 50% duty cycle.

F.   **One Accused Product Does Not Perform Direct Down-Conversion**

26.   Unlike the QSC6270, the RGR1000 does not enable circuitry that performs direct down-conversion of a received RF signal.  Instead, the RGR1000 down-converts a received RF signal by first converting it to an intermediate frequency (IF), before converting it to baseband.

27.   I understand this difference is significant because, among other things, ParkerVision, in its Infringement Contentions, identifies the "Accused Instrumentality" within the Accused Products as "[t]he circuitry in the Accused Products that converts a signal on a carrier frequency to baseband without conversion to an intermediate frequency." *See* Infringement Contentions, pg. 3.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 27, 2012

By: _____

JEREMY D. DUNWORTH

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this August 27, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/ Keith R. Hummel
Keith R. Hummel (admitted pro hac vice)
khummel@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
*Attorney for Defendant,*
*Counterclaim Plaintiff*
