# EXHIBIT C

-1-

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| PARKERVISION, INC., <br><br> Plaintiff, <br><br> v. <br><br> QUALCOMM INCORPORATED, <br><br> Defendant. <br><br> QUALCOMM INCORPORATED, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> PARKERVISION, INC., AND STERNE, KESSLER, GOLDSTEIN, & FOX PLLC, <br><br> Counterclaim Defendants. | Case No. 3:11-cv-719-J-37TEM |

**PLAINTIFF PARKERVISION, INC.'S FIRST SET OF
<u>INTERROGATORIES TO DEFENDANT QUALCOMM INCORPORATED</u>**

-1-

-2-

## DEFINITIONS

The following terms and definitions shall apply to each Interrogatory contained herein:

1. The use of any term in the Definitions section of these Interrogatories should be understood to include any and all variations of that term necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.

2. The term "ParkerVision" is defined as ParkerVision Inc., the Plaintiff in this litigation, and should be understood to include any and all officers, directors, partners, associates, employees, staff members, agents, representatives, attorneys, subsidiaries, parents, affiliates, divisions, successors, predecessors, or other related entities.

3. The terms "Defendant" and "Qualcomm" should be understood to refer to Defendant Qualcomm, Inc. and include any officers, directors, partners, associates, employees, staff members, agents, representatives, attorneys, consultants, subsidiaries foreign or domestic, parents, affiliates, divisions, successors, predecessors, and any others acting on behalf of Defendant or under Defendant's direction and control, and any and all assets or entities that have been acquired by Defendant or to which Defendant has succeeded to rights or obligations.

4. The term "document" is defined as synonymous in meaning and equal in scope to the usage of this term in FED. R. CIV. P. 34(a), and should be understood to include any written, printed, typed, and visually, aurally, or electronically reproduced material of any kind, whether or not privileged, including but not limited to electronic mail, computer files, source code, backup media, and databases; files and file folders; books and their contents, whether printed or recorded or reproduced by hand or any other mechanical process, or written or reproduced by hand or any other mechanical process; and all other tangible manifestations of communications whether or not claimed to be privileged, confidential, or personal; namely, communications,

-3-

including intra-company communications, correspondence, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations; diaries; forecasts; statistical statements; laboratory and engineering reports and notebooks, changes, plans, specifications, data sheets, drawings, schematics, graphs, flow charts, samples, prototypes and tangible things, evaluation boards, developers guidelines; photographs, films, pictures, and videotapes; minutes or records of meetings, including directors' meetings, minutes or records of conferences; expressions of statements or policy; lists of persons attending meetings or conferences; reports and/or summaries of interviews or investigations; opinions or reports of consultants' patent appraisals; opinions of counsel; agreements; records, reports or summaries of negotiations; brochures, pamphlets, advertisements, circulars, trade letters, packing materials and notices, press releases; litigation files and databases; and any drafts or revisions of any document and any notes or comments appearing on any document, whether preliminary or marginal.  A comment or notation appearing on any document, and not a part of the original document, is considered a separate document within the meaning of the term.  A draft or non-identical copy is a separate document within the meaning of the term.

5. The term "communication" should be understood to include all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, facsimiles, notes, telegrams, advertisements, or other forms of verbal exchange, whether oral or written.

6. The term "product" should be understood to include anything sold by Defendant.

7. The term "person" should be understood to include any natural person or any corporate, business, legal, or governmental entity or association.

8. The term "identify," when used with reference to:

a. a natural person, means to state his/her full name, present or last known employer, job title, present or last known residence, address and telephone number, and present or last known business addresses and telephone number, and any other information which would establish his/her relationship to Defendant;

b. a business entity, means to state: (i) the full name and address of the entity, (ii) the identity of all individual(s) in connection with the entity who have knowledge of the information requested, and (iii) the positions held by such individual(s) in relation to the entity;

c. a document, means to state: (i) the type of document (*e.g.*, letter, memorandum, *etc.*), (ii) the date the document was prepared or created, (iii) the identity of the preparer of the document, (iv) the identity of all recipients of the document, (v) the title or heading and the number of pages of the document, (vi) the identity of the custodian or other person last known to have possession of the document, and (vii) the present or last known location of the document;

d. a communication, means to state: (i) the date of the communication, (ii) the form of the communication (*e.g.*, in person meeting or presentation, telephonic communication, *etc.*), (iii) the place where the communications was made, (iv) the identity of each person who was a party to or was present at the time of the communication, and (v) a summary of the communication;

e. a product, means to state: (i) its manufacturer or producer, (ii) its version number, model number or other model designation, (iii) the date(s) of compilation, manufacture or production, and (iv) the identity of any recipient(s).

-5-

9. Whenever Defendant is asked to identify and/or describe an event or chain of events, such identification and description of the event or chain of events should be understood to include: (i) a statement of the date(s) of each occurrence relevant to the event; (ii) identification of all individuals having information about any aspect of the event including, but not limited to, those involved in witnessing, supervising, controlling, supporting, requesting, or otherwise participating in the event and/or those who can corroborate or refute the described circumstances of the event; and (iii) a description of the role and/or contribution of each person so identified.

10. The terms "relate to," "related to," "in relation to" and "relating to" should be understood to include any and all communications or documents that bear upon, constitute, contain, embody, evidence, comprises, reflect, identify, pertain to, state, comment on, respond to, describe, analyze, or are in any way relevant to that subject matter, whether directly or indirectly or in whole or in part, including without limitation documents related to the subject of inquiry or the existence of other documents relating to the subject.

11. The term "including" is defined as "including, without limitation."

12. The term "each" is defined as including "every," and the term "every" is defined as including "each."

13. The term "any" is defined as including "all," and the term "all" is defined as including "every."

14. The terms "infringe" and "infringement" should be understood to include direct infringement, contributory infringement, inducement of infringement, literal infringement, and infringement by the doctrine of equivalents.

15. The disjunctive shall be construed as the conjunctive, and the conjunctive shall be construed as the disjunctive, and the connectives "and" and "or" shall be construed disjunctively

or conjunctively as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.

16. The use of a verb in any tense shall be construed as the use of that verb in all other tenses necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.

17. A plural noun shall be construed as a singular noun, and a singular noun shall be construed as a plural noun as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.

18. The term "infringement contentions" is defined as ParkerVision Inc.'s infringement contentions as ordered by the Court, including any amended or supplemented version(s) of the infringement contentions as of the date that such amended or supplemented version is served upon Defendant.

19. The term "patents-in-suit" is defined as the patent asserted by ParkerVision in its Complaint in this litigation, including U.S. Patent Nos. 6,061,551, 6,266,518, 6,370,371, 7,496,342, 7,515,896, 7,724,845, and 7,822,401. Any additional patent or patents asserted by ParkerVision in any amended version(s) of the Complaint are within the meaning of the term as of the date that such amended version is filed with the Court.

20. The term "asserted claims" is defined as the claims of the patent-in-suit that ParkerVision identified in its infringement contentions. Any additional claims identified by ParkerVision in any amended version(s) of its infringement contentions are within the meaning of the term as of the date that such amended version is served on Defendant.

21. The term "accused instrumentalities" is defined as including any product or component that ParkerVision identified as infringing in its infringement contentions, and any reasonably

-6-

similar products or components. Any additional accused instrumentalities identified by ParkerVision in any amended or supplemented version(s) of its infringement contentions are within the meaning of the term as of the date that such amended version is served on Defendant.

## INSTRUCTIONS

1. For each of the Interrogatories contained herein, the information sought is that which is current to the date of your response. All the Interrogatories contained herein are of a continuing nature and supplemental responses are required in accordance with FED. R. CIV. P. 26(e).

2. If Defendant does not answer any Interrogatory in full, state the precise reason for failing to do so. If a legal objection is made, set forth the specific nature of the grounds for that objection. If only a portion of any Interrogatory cannot or will not be answered, (i) provide a full answer to the remaining portion, and (ii) specifically set forth (a) the fact that the answer is incomplete and (b) the reasons or grounds for any omission or for Defendant's inability or refusal to complete the answer. If an Interrogatory can be answered only in part on the basis of information available at the time of the response, (i) provide an answer on the basis of that information, (ii) indicate that Defendant's answer is so limited, and (iii) provide a further response, in accordance with paragraph 1 of these Instructions, when further information becomes available. If any information is withheld on the basis of a claim of privilege or work product, then the answer shall: (i) generally identify the information withheld by subject matter, author, addressees, and carbon copy recipient(s); (ii) state the basis for withholding the information; and (iii) identify the person(s) knowledgeable about the subject matter of the withheld information.

3. If any document referred to in Defendant's response to these Interrogatories was, but is not longer in Defendant's possession, custody, or control, state what disposition was made with each document and when such disposition was made. If any document referred to in response to

-7-

-8-

these Interrogatories has been lost or destroyed, describe in detail the circumstances of such loss or destruction and Identify each lost or destroyed document, including all files that contained such document.

4.     If no document exists which is responsive to a particular Interrogatory, state that no such document exists.

5.     All Interrogatories must be answered fully and in writing in accordance with FED. R. CIV. P. 11 and 33.

6.     Each Interrogatory shall be set forth immediately prior to the response thereto.

7.     If the procedure for answering Interrogatories as authorized by FED. R. CIV. P. 33(d) is used, for each Interrogatory and subpart thereof, specify the production (i.e., Bates) numbers of the specific document or group of documents.

**INTERROGATORY NO. 1**

Identify all Qualcomm products sold within the United States or imported (regardless of whether by Qualcomm or by others) into the United States since 1997. Your identification should include each product's name, product number, and all internal names and designations.

**INTERROGATORY NO. 2**

Separately for each product disclosed in response to Interrogatory 1, identify which products contain a receiver (or receiver function) that performs direct conversion, i.e., conversion of a signal on a carrier frequency to baseband without conversion to an intermediate frequency, and for each identified product, describe, using the most accurate terms possible, the mechanism or circuitry that performs the direct conversion.[1]

**INTERROGATORY NO. 3**

Separately for each product disclosed in response to Interrogatory 1, state the date on which a prototype for that product was first made, the date on which a prototype for that product was first tested, the date on which the product was released for production, the date on which the product was first produced, and the date on which the product was last produced.

**INTERROGATORY NO. 4**

Identify and describe all differences between the products disclosed in response to Interrogatory 2 with respect to the receiver (or receiver function) that performs direct conversion.

---

[1] To guide you in your response, Qualcomm should articulate a characterization of the mechanism that performs the direct conversion in a way that distinguishes that mechanism from other direct conversion mechanisms with meaningfully different design. Examples of such characterizations could be: "mixers with linear bias," "active configuration switching mixers," "continuous-time input / continuous time output passive mixers," "continuous-time input / continuous time output active mixers," "Gilbert cells," "integration capacitors," "local oscillator signal timing," "passive sample circuitry," "mixers without linear bias," "passive configuration switching mixers with power splitters," or "passive configuration switching mixers without power splitters."

**INTERROGATORY NO. 5**

Disclose all facts and circumstances regarding the location of Qualcomm's sales of products identified in response to Interrogatory 1.[2]

**INTERROGATORY NO. 6**

Describe all criteria and proxies that Qualcomm has actually used in differentiating between or accounting for U.S. sales from foreign sales.[3]

---

[2] To guide you in your response, your disclosure should include at least the following information: (i) all location of Qualcomm's offices that include one or more salespeople; (ii) all locations where Qualcomm receives or has received purchase orders for products identified in response to Interrogatory 1; (iii) all locations where Qualcomm's employees have offered to sell any product identified in response to Interrogatory 1; (iv) all locations where Qualcomm's employees have negotiated sales contracts for any product identified in response to Interrogatory 1; (v) all locations where Qualcomm's employees have executed sales contracts for any product identified in response to Interrogatory 1; (vi) all locations where Qualcomm's customers have negotiated sales contracts for any product identified in response to Interrogatory 1; (vii) all locations where Qualcomm's customers have executed sales contracts for any product identified in response to Interrogatory 1; (viii) all locations of manufacture of all products identified in response to Interrogatory 1; (ix) all locations to where Qualcomm has delivered any product in response to Interrogatory 1; (x) all locations of the passage of legal title from Qualcomm to its customers for any product identified in response to Interrogatory 1; (xi) the location where Qualcomm's products are used by end-consumers; (xii) the location of all bank accounts where Qualcomm receives payment in exchange for any product identified in response to Interrogatory 1; and (xiii) the laws that govern Qualcomm's sales contract for any product identified in response to Interrogatory 1.

[3] To guide you in your response, your description should identify any criteria used by Qualcomm in: (i) Qualcomm's internal accounting; (ii) Qualcomm's accounting to the Internal Revenue Service; (iii) Qualcomm's accounting to its investors and/or the Securities and Exchange Commission; (iv) Qualcomm's outbound licensing of its patents; (v) Qualcomm's inbound licensing of others' patents. Further, your description should describe how the disclosed criteria are used in determining whether a sale is a U.S. sale versus a foreign sale. If Qualcomm does not account for U.S. sales in its outbound or inbound patent licensing, describe whether any license contemplates the territorial scope of a U.S. patent (*e.g.*, by decreasing the royalty rate by a certain amount) and if so, how that contemplation affected the terms of the license. Finally, the word "proxy" refers to the use of any substitute for differentiating or accounting for U.S. sales from foreign sales.

McKool 406899v1

**INTERROGATORY NO. 7**

Separately for each patent-in-suit, identify and describe your best noninfringing alternative. Your identification must include any actual or proposed modifications that you contend creates or would create a noninfringing alternative.[4]

**INTERROGATORY NO. 8**

Describe all business decisions made by you in response to your knowledge of the patents-in-suit, your investigation of the scope of the patents-in-suit, and/or the filing of this litigation.

**INTERROGATORY NO. 9**

Separately for each product identified in response to Interrogatory 1, disclose on a quarter-by-quarter basis to the present the following financial data: (a) revenues net of any returns, allowances, or credits for the product itself; (b) revenues for maintenance, upgrades, support, etc. associated with the product net of any returns, allowances, or credits; (c) costs, (d) all other expenses, with the data segregated by whatever classifications made in the normal course of business; (e) profits before taxes net of any returns, allowances, or credits; (f) the identity of documents sufficient to show financial data requested by (a) through (e); and (g) the

---

[4] To guide you in your response, your description should disclose: (a) the costs required to develop each such modification or alternative; (b) the time required to develop each such modification or alternative; (c) the time required to implement each such modification or alternative; (d) the actual or potential compatibility issues raised by each such modification or alternative; (e) how any actual or potential compatibility issues of each such modification or alternative were or would be addressed; (f) any impact (however measured) of each such modification or alternative on the performance of your products; (g) the costs that each such modification or alternative added or would add to your products, including licensing; (h) the factual basis for your contention, if any, that each such modification or alternative is or would be noninfringing, available, and acceptable; (i) the identity of documents relating to each such modification or alternative, including information requested in (a) through (h); and (j) the identity of all persons who have knowledge related to the information requested in this interrogatory.

-12-

identity of all persons who have knowledge related to the information requested in this interrogatory.

January 18, 2012

Respectfully submitted,

**McKOOL SMITH, P.C.**
*/s/ Douglas A. Cawley*
Douglas A. Cawley, Lead Attorney
Texas State Bar No. 04035500
E-mail: dcawley@mckoolsmith.com
John Austin Curry
Texas State Bar No. 24059636
E-mail: acurry@mckoolsmith.com
McKool Smith P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

T. Gordon White
Texas State Bar No. 21333000
gwhite@mckoolsmith.com
McKool Smith P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

**SMITH HULSEY & BUSEY**

*/s/ James A. Bolling*
Stephen D. Busey
James A. Bolling
Florida Bar Number 117790
Florida Bar Number 901253
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
jbolling@smithhulsey.com

*ATTORNEYS FOR PLAINTIFF
PARKERVISION, INC.*

-14-

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2012, I served the foregoing document on opposing counsel via email.

       */s/ Austin Curry*

       John Austin Curry

McKool 406899v1