# THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| PARKERVISION, INC.,<br><br>    *Plaintiff,*<br><br>  v.<br><br>QUALCOMM INCORPORATED,<br><br>    *Defendant.* | Civil Action No. 3:11-cv-719 |
| QUALCOMM INCORPORATED,<br><br>    *Counterclaim Plaintiff,*<br><br>  v.<br><br>PARKERVISION, INC., and<br>STERNE KESSLER GOLDSTEIN FOX<br><br>    *Counterclaim Defendants.* | |

## QUALCOMM'S OPPOSITION TO PARKERVISION'S MOTION FOR LEAVE TO SERVE SUPPLEMENTAL INFRINGEMENT CONTENTIONS

Qualcomm respectfully submits this memorandum of law in opposition to ParkerVision's Motion To Serve Supplemental Infringement Contentions (Dkt. 152).

## Preliminary Statement

The simple fact is that ParkerVision failed to provide complete and final infringement contentions to Qualcomm by the Court's March 2, 2012 deadline. Indeed, ParkerVision did not even try. Despite boasts to investors that it had undertaken an extensive pre-suit investigation, when the time came to serve its final infringement contentions ParkerVision provided incomplete infringement charts for only one Qualcomm product, cavalierly assuming it could simply amend at its leisure later on. This utter failure to provide infringement contentions in conformance with the Court's February 13, 2012 Case Management Order ("CMO") is described in detail in Qualcomm's pending motion asking the Court to strike the fatally defective portions of ParkerVision's infringement contentions and to compel complete information with regard to the remaining contentions (the "Motion to Strike"). (Dkt. 154.)

Now, six months after its final infringement contentions were due, ParkerVision belatedly moves for leave to amend. It is not by chance that ParkerVision waited until now to file this motion. ParkerVision's plan all along has been to play "hide the ball." ParkerVision essentially admits in its motion that its pre-suit investigation was limited to just a single product, the QSC6270, and it was, therefore, not in possession of the information it needed to provide complete infringement contentions to Qualcomm at the outset of litigation. Yet it was *ParkerVision* that suggested the parties *begin* the case by exchanging their respective infringement and invalidity contentions when it knew it could not and would not provide complete information in the hope that Qualcomm would abide by the CMO. The plan worked: Qualcomm fully complied with the CMO and disclosed its invalidity case to ParkerVision.

1

Only now, after the parties have completed months of discovery and have completed the claim construction process, does ParkerVision seek to amend its contentions.  Such strategic behavior should not be rewarded, and the motion to amend should be denied for this reason alone.

This motion is futile because ParkerVision does not seek permission to fix any of the serious substantive defects in its infringement contentions.  Instead, it asks only to include *more* accused products without providing the information required by Eastern District of Texas Patent Rule 3-1 (as adopted by the parties and the Court in the CMO) for those products.  In its Motion to Strike, Qualcomm moved to strike ParkerVision's contentions with respect to exactly these type of conclusory contentions—where ParkerVision accused a product of infringement but refused to provide the requisite supporting information about how the product allegedly infringes each of the asserted claims.  Thus, these new contentions about new products are "dead on arrival"; even if the amendment is allowed, ParkerVision's infringement case with respect to them should be stricken for the reasons set forth in Qualcomm's Motion to Strike.

This motion should also be denied because ParkerVision has no legitimate excuse for waiting until August 27, 2012—six months after the March 2 deadline—to seek to amend its infringement contentions, and then only in a inadequate manner.  In an attempt to show diligence where none exists, ParkerVision repeatedly misrepresents the record of discovery in this case.  For example, ParkerVision claims that it could not have served discovery requests "until after the parties had completed their case management meeting, which took place *in late December 2011*."  (Dkt. 152 at 2 (emphasis added).)  But the case management conference was held on December 5 (*See* Dkt. 69 at 10), and under Local Rule 3.05(c), ParkerVision could have served discovery requests starting that same day.  It did not, however, serve *any* discovery until January 18, 2012, knowing full well that it would not receive any

response to those requests until over three weeks after the parties had agreed that ParkerVision's infringement contentions would be due (on January 30, 2012).

Most egregiously, ParkerVision claims that it has received *no* technical information from Qualcomm. That is false. Qualcomm has, in fact, produced more than 1 million pages of technical information—almost all of it pertinent to the Qualcomm products accused in ParkerVision's proposed infringement contentions. Qualcomm started producing these documents on a rolling basis on April 16, 2012. If ParkerVision had bothered to look at those documents, it would have discovered that the central premise of its infringement contentions is wrong—the Accused Instrumentalities are *not* identical in all the accused products. Yet ParkerVision makes this false assertion in support of its motion to amend while ignoring all of the Qualcomm information in its possession proving otherwise. Nor is it proper for ParkerVision to attempt to shift the burden of doing an infringement analysis to Qualcomm through the use of interrogatories. In short, ParkerVision's attempt to blame Qualcomm for ParkerVision's lack of diligence is a smokescreen for its calculated failure to comply with its obligation to provide its complete and final infringement contentions early in the case. ParkerVision's lack of diligence is fatal to its motion.

For all of these reasons, ParkerVision's motion to amend should be denied.

### Background[1]

**1.     The Parties Negotiated a Schedule for Disclosing Infringement Contentions in the Joint Case Management Report.**

On December 5, 2011, counsel for all parties held a case management conference pursuant to Local Rule 3.05(c)(2)(B). (*See* Dkt. 69 at 10.) Prior to the conference, ParkerVision

---

[1] For a more complete discussion of facts relevant to this motion, Qualcomm directs the Court to its pending Motion to Strike. (*See* Dkt. 154 at 5-10.)

sent Qualcomm a proposed Case Management Report ("CMR") that provided for early disclosure of the parties' respective infringement and invalidity contentions.  At the conference and afterward, the parties discussed this proposal and ultimately agreed to adopt Eastern District of Texas Local Patent Rules 3-1 and 3-2 (the "Patent Rules"), with limited modifications, to govern the content of the contentions.  (*See* Dkt. 69 at 6.)  In relevant part, the parties agreed that ParkerVision would disclose its infringement contentions on or before January 30, 2012, and that such contentions would include *separate claim charts for each accused product*.[2]  (*Id.* at 15.) On February 12, 2012, the Court endorsed the parties' adoption of Local Rule 3-1 in its CMO, resetting ParkerVision's deadline to serve infringement contentions to March 2, 2012, and ruling that the parties' contentions would be final and binding, subject only to amendment if necessary in light of claim construction.  (*See* Dkt. 84 at 3.)

## 2.    ParkerVision Served Belated and Overbroad Discovery Requests.

ParkerVision did not serve any discovery requests seeking information about Qualcomm's products until January 18, 2012, just 12 days before its infringement contentions were due under the party's agreement.  In other words, Qualcomm's response was not due until 22 days *after* ParkerVision was to serve its infringement contentions.  Thus, ParkerVision had proposed the exchange of contentions and then agreed to provide its detailed infringement contentions by a date well before it would receive *any* discovery from Qualcomm.  Indeed, ParkerVision served its initial set of infringement contentions on the January 30, 2012 deadline without the benefit of any discovery.

---

[2] The parties also agreed that if ParkerVision contends that an *identical* Accused Instrumentality is contained in multiple products, then only one chart need be provided for that Accused Instrumentality. (*See* Dkt. 60 at 15.)

The discovery requests ParkerVision served on January 18 were limited to interrogatories that, in many relevant respects, were overbroad, imprecise and attempted to shift the burden of performing an infringement analysis of the accused products from ParkerVision to Qualcomm.  For example, Interrogatory No. 2 sought detailed information concerning every Qualcomm product that contains "a receiver (or receiver function) that performs direct conversion," irrespective of the instrumentality used for down-conversion. (Dkt. 152 Ex. B.)  It was not until February 24, 2012, after Qualcomm provided its objections and responses to Interrogatory No. 2, and after ParkerVision served its January 30 Infringement Contentions, that ParkerVision revealed it would limit its infringement contentions, and therefore its interrogatories, to receivers that used so-called "passive mixers."  (Dkt. 152 Ex. E.) ParkerVision did not at that time, as it falsely claims in its motion, "reserve[] the right to supplement its [infringement contentions] if Qualcomm's supplemental responses proved deficient."  (Dkt. 152 at 4; *c.f.* Dkt. 152 Ex. E.)  ParkerVision simply stated that it did was "not agreeing to any change in the standard for later supplementing infringement contentions or any change in [its] ability to supplement under that standard." (*See* Dkt. 152 Ex. E.)  ParkerVision's misrepresentation is simply another attempt to paper-over its failure to pursue diligently the discovery that it claims to need.

      **3.**      **Qualcomm Objected to the Many Inadequacies in ParkerVision's January 30, 2012 Infringement Contentions.**

On January 30, 2012, pursuant to the agreed schedule but prior to the Court's entry of the CMO, ParkerVision served Qualcomm with its infringement contentions (the "January 30 Contentions").  (*See* Dkt. 156 Ex. 4.)  In the January 30 Contentions, ParkerVision failed to provide the infringement charts required by Rule 3-1 for *all but one* of the Accused Products, the QSC6270.  (*See* Dkt. 156 Ex. 10.)

On February 13, 2012, the Court entered the CMO, accepting the parties' stipulation that they would comply with Rule 3-1, but extending the deadline for ParkerVision to serve its infringement contentions to March 2, 2012.  (Dkt. 84.)  The same day as the entry of the CMO, Qualcomm notified ParkerVision of the many serious deficiencies in the January 30 Contentions.  (*See* Dkt. 156 Ex. 5.)  In particular, Qualcomm noted that the January 30 Contentions were inadequate because ParkerVision failed to provide detailed infringement charts for each Accused Instrumentality and, for many claims, failed even to identify specifically where each claim element allegedly could be found within the QSC6270.  (*Id.*) Qualcomm asked ParkerVision to cure the many defects in its January 30 Contentions by the CMO's March 2, 2012 deadline for ParkerVision to serve its infringement contentions.  (*Id.*)  On February 24, 2012, in response to a letter from ParkerVision, Qualcomm reiterated its objections, and stated that if ParkerVision did not correct the identified deficiencies, it would hold ParkerVision to its deficient contentions.  (*See* Dkt. 156 Ex. 7.)

### 4.    ParkerVision Refused to Correct the Deficiencies Identified by Qualcomm When It Served its March 2, 2012 Infringement Contentions.

On March 2, 2012, ParkerVision served revised infringement contentions (the "Infringement Contentions").  (*See* Dkt. 156 Ex. 8.)  Completely disregarding the deficiencies identified in Qualcomm's letters, ParkerVision served Infringement Contentions that were, in all relevant respects, identical to its January 30 Contentions.  The only material change ParkerVision made to its contentions was to amend the list of Accused Products in its cover pleading.  ParkerVision did not even bother to serve Qualcomm with new copies of its claim charts, relying only on the charts it served on January 30, 2012.

## Argument

**I.     ParkerVision's Claim of "Good Cause" Is Not a Basis for Seeking Leave to Amend.**

Seeking to greatly expand the scope of its infringement contentions months after its deadline came and went, ParkerVision now recites that it has "good cause" to be relieved of the Court's schedule.  (Dkt. 152 at 1, 4-5.)  But the parties have already litigated the finality of their respective infringement and invalidity contentions, and the Court rejected ParkerVision's argument that it should be permitted to amend its infringement contentions at any time upon showing of good cause.  (*See* Dkt. 69 at 6-7; Dkt. 84 at 1-3.)  In the CMO, the Court ruled that "each parties' contentions shall be deemed to be that party's final contentions" except that if a party believes in good faith that the Court's claim construction ruling so requires, that party may amend its contentions by certain dates.  (*See* Dkt. 84 at 1-3.)  This ruling was consistent with Qualcomm's position, as set forth in the CMR, that "contentions should cease to be moving targets."  (*See* Dkt. 69 at 5-6.)  Nowhere does the CMO allow a party to amend contentions to provide information that should have been included in the first place.  Allowing ParkerVision to do so here would give ParkerVision an ability that it argued for and lost, and would defeat the purpose of the CMO to provide needed finality.

It is particularly unfair to permit ParkerVision to amend when Qualcomm, at a time when it did not have discovery from ParkerVision, provided at considerable expense its detailed invalidity contentions, consisting of 4,675 pages of claim charts showing element by element how prior art references invalidate ParkerVision's asserted claims.  Both sides knew that they would not have meaningful discovery at the time when they had to provide their contentions but agreed nevertheless to such an early exchange to move this case along quickly.  Simply put, Qualcomm did what it was required to do under the CMO and ParkerVision did

not.  Accordingly, ParkerVision should not be given leave to file supplemental infringement contentions.

## II.    ParkerVision's Proposed Amendment Would Be Futile.

Denial of leave to amend a pleading is justified when the pleading as amended is subject to dismissal.  *See Burger King Corp. v. Weaver*, 169 F. 3d 1310, 1320 (11th Cir. 1999) (affirming denial of leave to amend a complaint where the amended complaint would be subject to dismissal); *Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F. 2d 441, 444 (11th Cir. 1985) (same).

ParkerVision's proposed Supplemental Infringement Contentions (Dkt. 152 Ex. A) are entirely deficient and, if allowed, would be subject to a motion to strike.  *See Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 823-25 (E.D. Tex 2007) (striking infringement contentions and dismissing claims with respect to one accused product because the patentee failed to identify where each element of each asserted claim could be found within that accused product).[3]  In particular, the proposed Supplemental Infringement Contentions add 24 products to the list of Accused Products but do not contain the requisite claim charts for any of the newly identified products.  As demonstrated in Qualcomm's pending Motion to Strike (Dkt. 154), this is a clear violation of the CMO and Patent Rule 3-1, which require ParkerVision to identify (i) each asserted claim; (ii) each product accused of infringement; and (iii) where each element of each asserted claim is found *within each of the accused products*.  *See* E.D. Tex. P. R. 3-1 (2005) (amended 2006).  This requires ParkerVision to provide claim charts

---

[3] *See also Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, Civil Action No. 6:07-CV-559, 2009 WL 81874, at *6 (E.D. Tex. Jan. 12, 2009) (finding inadequate plaintiff's claim charts that did "little more than parrot the claim language" and ordering patentee to "clearly and unambiguously" identify each claim element in each of the accused products); *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 707-09 (E.D. Tex. 2008) (same).

"identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." *Id.* ParkerVision's failure to provide such claim charts renders its proposed amended contentions fatally deficient.

### III. Even if ParkerVision Could Seek Leave to Amend, It Has Failed to Show Good Cause.

Even if the good cause standard were applicable in this case, ParkerVision cannot meet it. In determining whether good cause exists to permit an untimely amendment of a parties' infringement contentions, courts that allow for good cause amendment consider the following factors: (i) the explanation for the failure to meet the deadline, (ii) the importance of the amendments, (iii) potential prejudice in allowing the amendments; and (iv) the availability of a continuance to cure such prejudices. *See Realtime Data, LLC v. Packeteer, Inc.*, 2009 WL 2590101, at *2 (E.D. Tex Aug. 18, 2009) (denying motion for leave to file amended infringement contentions where plaintiff failed to show good cause to amend). Although the existence and degree of prejudice to the non-moving party may supply additional reasons to deny a motion, the focus of the inquiry is on the diligence of the moving party. *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) (upholding denial of O2 Micro's motion for leave to file amended infringement contentions where the district court's finding that a three month delay showed a lack of diligence by O2 Micro).

The critical issue is not *when* the movant came to possess the information underlying the amendment, but whether it *could have* learned it earlier if it acted with the requisite diligence. *See Google, Inc. v. Netlist, Inc.*, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010) (denying plaintiff's motion to amend infringement contentions to account for information learned late in discovery).

The burden is on the party seeking to amend its infringement contentions to establish diligence, rather than on the opposing party to establish a lack of diligence. *Id.*

9

ParkerVision has failed to establish good cause to amend its infringement contentions because it was not diligent in complying with the Court's schedule. The CMO required ParkerVision to supply Qualcomm with its final, complete infringement contentions on March 2, 2012. To meet that obligation, ParkerVision was required to undertake a rigorous pre-suit investigation, requiring reverse engineering or the equivalent. *See ConnecTel LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005); *Bender v. Maxim Integrated Prods., Inc.*, No. C 09-01152 SI, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010). Through this pre-suit investigation, ParkerVision should have discovered the products that it alleges infringe one or more claims of the Patents-in-Suit. While ParkerVision appears to have commissioned a tear-down analysis of a single Qualcomm product (QSC6270), it failed to obtain such an analysis for any other Accused Product.[4]

ParkerVision attempts to excuse this failure by citing the allegedly high cost of these reverse engineering analyses. (*See* Dkt. 152 n. 5.) But this simply shows that ParkerVision *knew* that it had investigated only a single product, and the cost and alleged difficulty of obtaining analyses of additional products, when it proposed that the parties exchange their final infringement contentions early in the case, before any discovery would be received by ParkerVision. Indeed, ParkerVision did not serve any discovery requests until January 18, 2012—12 days before its contentions were due under the CMR—and did not serve a document request until March 13, 2012. Despite knowing that its preliminary infringement investigation was woefully deficient, ParkerVision failed to seek diligently the information that it needed to

---

[4] Further, it appears that the CircuitVision report on the QSC6270 was not finalized until August 2011, *after* ParkerVision's complaint was filed. (*See* September 13, 2012 Declaration of Joseph E. Lasher ("Lasher Decl.") Ex. 1 at 2.) Thus, ParkerVision's pre-suit investigation may have consisted only of its review of certain conference papers and other publicly available materials. (*See id.*) ParkerVision offers no explanation for why it did not review such public materials relating to other products, for which it provided no detailed contentions.

complete its infringement contentions.  Thus, it appears that ParkerVision entered its agreement with Qualcomm for the early exchange of final contentions with no intention of keeping its promise.  ParkerVision should not be rewarded for this gamesmanship by being given leave to amend its contentions at this late date.

ParkerVision also contends—without basis and contrary to fact—that the lone product for which it provided claim charts (QSC6270) is "representative" of the other 85 products identified in ParkerVision's proposed Supplemental Infringement Contentions.  (*See* Dkt. 152 at 7, 10.)  As an initial matter, ParkerVision improperly attempts to rewrite the rules and the parties' agreement regarding the use of representative products in infringement contentions.  While ParkerVision correctly recites the parties' agreement that "[i]f the party asserting patent infringement contends that an *identical* Accused Instrumentality is contained in multiple products, then that Accused Instrumentality is required to be charted only once…," (Dkt. 152 at 9 (emphasis added)), in the very next sentence, ParkerVision grants to itself the much more lenient standard that its sole charted product can stand in for any others that may have the same "accused receiver functionality."  (*Id*.)  Elsewhere in its brief seeking leave to amend, ParkerVision characterizes the allegedly "infringing functionality" as simply "a receiver that performs direct conversion."  (*See* Dkt. 152 at 1.)  But having the "identical Accused Instrumentality"—*i.e.*, the identical circuit design—in multiple products is not the same thing as merely sharing the same "functionality," particularly when ParkerVision wishes to define that functionality as any direct conversion receiver regardless of its design or operation.  The former is a legitimate basis for contending that a given charted product is representative of other, uncharted products.  The latter is an impermissible and prejudicial attempt for ParkerVision to evade its obligations as plaintiff.

11

ParkerVision has not even attempted to meet its burden of establishing that the QSC6270 is representative of all of the Proposed Accused Products. *See Vigilos LLC v. Sling Media Inc.*, No. C-11-04117 SBA (EDL), Slip Op. at 8 (N.D. Cal. July 12, 2012) (citation omitted) ("[a]lthough representative claim charts may be used in the appropriate case, Plaintiff has the burden of establishing that the products in the claim charts are representative of all of the accused products"). Rather, ParkerVision improperly attempts to shift to Qualcomm the burden of demonstrating that the QSC6270 is *not* representative product.[5]  (*See* Dkt. 152 at 10.) Contrary to the implications of ParkerVision's motion, however, Qualcomm has repeatedly informed ParkerVision of the fact that the QSC6270 is not representative of the remaining Accused Products.  (*See, e.g.*, Dkt. 156 Exs. 5, 7, 13.)

Indeed, the relevant circuitry in the QSC6270 is identical to only two other Accused Products.  If ParkerVision had done more than *one* teardown analysis, it would have learned that the Accused Instrumentalities are *not* identical to the one in the QSC6270.[6] ParkerVision, therefore, would have known that it could *not* rely on the argument it makes now to justify its inadequate infringement contentions—that each Accused Product has the same Accused Instrumentality.

---

[5] Indeed, as shown in the Declaration of Jeremy Dunworth in Support of Qualcomm's Motion to Strike, the relevant circuitry in the QSC6270 differs from the circuitry in over 95% of the presently Accused Products.  (*See* Dkt. 155 at 2-8.)  And only 2 of the 24 newly identified products that ParkerVision seeks to add to its infringement contentions uses the same RF circuit design as the QSC6270.  (*See* Dunworth Decl. at 11.)

[6] ParkerVision attempts to defend its failure to provide claim charts for any product other than the QSC6270 by claiming that the Accused Instrumentality within each product is "substantially the same." (Dkt. 152 at 1.)  But Rule 3-1 and the parties agreement in the CMR allow ParkerVision to provide charts for representative products that contain *identical* Accused Instrumentalities.  (*See, e.g.*, Dkt. 69 at 15.) Thus, even if each Accused Product contained substantially similar Accused Instrumentalities—and they do not—it would still not be sufficient for ParkerVision to provide claim charts for only a single product.

It is no mystery in the industry that Qualcomm sells many different types of RF chips. ParkerVision could have easily consulted with any number of industry experts—or reviewed conference papers or other publicly available materials—before filing suit to devise an effective scheme to determine which of Qualcomm's chips allegedly infringe the patents in suit. It chose not do so. ParkerVision's lack of diligence in bringing this suit without adequate investigation is simply inexcusable, and itself warrants denial of its motion.

Equally inexcusable is ParkerVision's inexplicable failure to conduct any examination of the technical documents provided to it by Qualcomm. In a sanctionable misstatement to the Court, ParkerVision repeatedly misrepresents to the Court that Qualcomm has not produced "*any* design documents, schematics or other similar documentation related to any of the accused products." (Dkt. 152 at 12 (emphasis in original).) That is just wrong. By the time ParkerVision's motion was filed, Qualcomm had already produced over 16,000 technical documents comprising over 1 million pages to ParkerVision. Qualcomm started producing those documents to ParkerVision on a rolling basis on April 16, 2012—a little over a month after ParkerVision served Qualcomm with its first document request. Apparently, ParkerVision did not bother even to look at those documents.[7]

---

[7] Indeed, by comparing the CircuitVision report or the device specification for the QSC6270 (QCPV000001914) with the produced device specifications for other products, ParkerVision could have verified long ago what Qualcomm has stated repeatedly: the relevant circuitry within the QSC6270 is *not* the same as that found in most other Accused Products. Between April 16 and May 26, Qualcomm produced dozens of such product specifications. *See, e.g.*, QCPV000493465 (QSC6155, QSC6165, QSC6175, QSC6185, QSC6195, QSC6295); QCPV000475425 (QSC1110, QSC1100); QCPV000473131 (QSC6055, QSC6065, QSC6075, QSC6085); QCPV000004190 (RTR6285, RTR6280); QCPV000111854 (RTR6500); QCPV000005848 (RTR6285A); QCPV000189327 (RTR6273, RTR6236); QCPV000190181 (RGR6240); QCPV000190662 (QTR9215); QCPV000191135 (QTR8615, QTR8615L); QCPV000203243 (QTR8200, QTR8600, QTR8601); QCPV000197483 (RTR8600, RTR8601); QCPV000162777 (QTR8600L); QCPV000163110 (RTR8605). Because these documents are both voluminous and highly confidential, Qualcomm has not submitted these documents to the Court, but will provide them for in camera review at the Court's request.

Having failed to perform an adequate investigation prior to filing suit, ParkerVision cannot shift to Qualcomm the burden of performing its due diligence by insisting on complete discovery before providing adequate infringement contentions. This very argument has been soundly rejected by other courts. *See, e.g., Avocent Redmond Corp. v. Rose Elecs.*, 2012 U.S. Dist. LEXIS 102386, at *8-9 (W.D. Wa. Jul. 6, 2012) (rejecting plaintiff's argument that it could not finalize its infringement contentions until defendants provided engineering schematics for all accused products and supplemented its interrogatory responses to identify which schematics went with each product); *Google, Inc. v. Netlist, Inc.*, 2010 WL 1838693, at *5.

Had ParkerVision conducted the kind of pre-suit investigation that it claimed to have performed (Dkt. 67 at 36), and that is required of plaintiffs in a patent suit, it would have developed a complete list of Accused Products prior to the date that its infringement contentions were due, without discovery from Qualcomm. Indeed, the CMO entered in this case—like the standard case management order for patent cases in the Eastern District of Texas—assumes that discovery is not necessary before infringement contentions are served. *See* Dkt. 84; *Fenner Invs., Ltd. v. Hewlett-Packard Co.*, 2010 U.S. Dist LEXIS 17536, at *6 (E.D. Tex. Feb. 26, 2010) (the Patent Rules "require plaintiffs to disclose their infringement contentions before discovery has even begun"); *see also Avocent.*, 2012 U.S. Dist. LEXIS 102386, at *8-9 ("Contrary to plaintiff's argument in reply, it is plaintiff's unilateral decision to require responses to all outstanding discovery before it would deign to amend its contentions that turns the normal case management paradigm on its head.").

If ParkerVision believed it required discovery from Qualcomm before it could provide adequate infringement contentions, it should not have proposed the early exchange of contentions. It is not Qualcomm's fault that ParkerVision conducted what we now know to have been a fatally defective pre-suit analysis. Nor is it Qualcomm's fault that ParkerVision

14

agreed to—even suggested—the early exchange of contentions.  Contrary to the misrepresentation in ParkerVision's brief, discovery in this case opened on December 5, 2011, not "late December," and yet ParkerVision served *no* discovery on Qualcomm until January 12, 2012.  Thus, knowing full well that it lacked the information that it required to provide complete infringement contentions, ParkerVision waited more than six weeks before serving interrogatories, and over three months before serving any document requests.  These requests came far too late to allow for Qualcomm to respond in time for ParkerVision to use the information for its infringement contentions.

Further, to the extent that ParkerVision legitimately believed Qualcomm's discovery responses were deficient or untimely, it failed to raise the issue diligently with the Court.  *See Global Sessions LP v. Travelocity.com LP*, Case No. 6:10-cv-671, 2012 U.S. Dist. LEXIS 73153, at *16-17 (E.D. Tex. May 25, 2012) (denying motion for leave to serve amended infringement contentions where plaintiff was not diligent in moving to compel discovery it claimed was required to provide amended infringement contentions); *Davis-Lynch*, 2009 U.S. Dist. LEXIS 1644, at *4 (E.D. Tex. 2009) (plaintiff's failure to seek timely discovery relief from the court weighed heavily against permitting plaintiff to file amended infringement contentions).  Qualcomm has repeatedly informed ParkerVision of the many deficiencies in its infringement contentions and, since April, has provided ParkerVision with detailed product specifications for the Accused Products.  (*See* Dkt. 156 Exs. 5, 7, 13.)  Despite knowing since February that its infringement contentions were deficient, ParkerVision waited until September 6, 2012—more than a week *after* the filing of Qualcomm's Motion to Strike (Dkt. 154)—before moving to compel the discovery that ParkerVision claims it requires before it can serve appropriately detailed infringement contentions.  This extreme lack of diligence weighs strongly against

allowing ParkerVision to amend its infringement contentions.  *See Davis-Lynch*, 2009 U.S. Dist. LEXIS 1644, at *4.

In an attempt to paint Qualcomm as similarly delinquent in raising disputes, ParkerVision misleadingly contends that Qualcomm's objections to its deficient infringement contentions are untimely, claiming that "Qualcomm has never (1) requested that ParkerVision supplement the [infringement contentions] it served on March 2, 2012, or (2) raised the issue before the Court."  (*See* Dkt. 152 at 11.)  These assertions are highly disingenuous.  Qualcomm repeatedly asked ParkerVision to correct the many deficiencies in ParkerVision's January 30 Infringement Contentions prior to the service of its March 2 Infringement Contentions, and expressly warned ParkerVision that Qualcomm would "hold ParkerVision to its deficient contentions" if it failed to do so.  (*See* Dkt. 156 Exs. 5, 7.)  Yet ParkerVision refused to correct the identified deficiencies and, in fact, did not make a single change to its claim charts when it served its final infringement contentions on March 2.  Additionally, Qualcomm has frequently noted in its correspondence and in objections to ParkerVision's discovery requests that it considered ParkerVision's infringement contentions to be deficient.  (Dkt. 156 Exs. 5, 7, 13.)  Given ParkerVision's disregard of the Court's admonition that its contentions would be final, refusal to correct the problem when it first had the opportunity to amend its infringement contentions in March, and failure to seek leave to amend its contentions until this late date, Qualcomm has sought the only relief appropriate at this time, by moving to strike ParkerVision's infringement contentions.

Considerations of judicial economy and efficiency do not weigh in favor of allowing the amendment.  Contrary to ParkerVision's baseless assertion that "the newly identified products it seeks to add to its [infringement contentions] contain the same [allegedly] infringing receiver functionality" as the products already included in its Infringement

Contentions (Dkt. 152 at 7), the receiver circuitry designs incorporated in all but two of the newly identified products is *different* from that of the presently Accused Product including, most significantly, the QSC6270.  (September 13, 2012 Declaration of Jeremy Dunworth ("Dunworth Decl.") ¶ 11.)  Thus, the addition of 22 dissimilar products to a case that already includes an unmanageable number of products and asserted claims—more than could possibly tried efficiently—would be counterproductive.

Finally, it is beyond dispute that at this late date, after the *Markman* hearing and just before the approaching fact-discovery cut-off, Qualcomm will suffer material prejudice if ParkerVision is allowed to add an 24 additional, only two of which use the same receiver circuitry as the QSC6270.  *See Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, Case No. C05-03117, 2007 WL 2221029, at *3 (N.D. Cal July 30, 2007) (denying motion to amend infringement contentions made two months prior to the close of fact discovery because "the addition of new products would likely derail the case management schedule, require additional claim construction and delay trial").  In reliance on ParkerVision's inadequate infringement contentions, Qualcomm complied fully with its obligation to provide complete invalidity contentions by the deadline provided by the Court showing, element by element, how prior art references—alone or in combination—invalidate ParkerVision's asserted claims.  Thus ParkerVision has obtained the benefit of its bargain with Qualcomm without ever complying with its own obligations.  It would be fundamentally unfair not to hold ParkerVision to its bargain with Qualcomm and the instructions in the CMO.  Accordingly, ParkerVision should not be permitted to amend its infringement contentions, other than to bring the contentions for the QSC6270 into compliance with Rule 3-1, as discussed in Qualcomm's Motion to Strike.  (*See* Dkt. 154 at 21-24.)

17

**Conclusion**

For the foregoing reasons, Qualcomm respectfully requests this Court deny

ParkerVision's Motion to Serve Amended Infringement Contentions.

September 13, 2012

CRAVATH, SWAINE & MOORE LLP

By:     s/ Keith R. Hummel
               Keith R. Hummel (admitted pro hac vice) (Trial Counsel)
               khummel@cravath.com
               David Greenwald (admitted pro hac vice)
               dgreenwald@cravath.com
               Worldwide Plaza
               825 Eighth Avenue
               New York, New York  10019
               Telephone:  (212) 474-1000
               Facsimile:  (212) 474-3700

-and-

BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.
               John A. DeVault, III
               Florida Bar No. 103979
               jad@bedellfirm.com
               Courtney K. Grimm
               cgrimm@bedellfirm.com
               Florida Bar No. 953740
               The Bedell Building
               101 East Adams Street
               Jacksonville, Florida 32202
               Telephone:  (904) 353-0211
               Facsimile:  (904) 353-9307

-and-

CADWALADER, WICKERSHAM & TAFT LLP
               Christopher A. Hughes (admitted pro hac vice)
               Christopher.Hughes @cwt.com
               1 World Financial Center
               New York, New York 10281
               Telephone:  (212) 504-6000
               Facsimile:  (212) 504-6666
                    -and-

GOODWIN PROCTER, LLP
     Steven A. Moore (admitted pro hac vice)
     samoore@goodwinprocter.com
     Richard W. Thill (admitted pro hac vice)
     rthill@goodwinprocter.com
     4365 Executive Drive, Suite 3000
     San Diego, CA 92121
     Telephone:  (858) 202-2700
     Facsimile:  (858) 457-1255

*Counsel for Defendant, Counterclaim Plaintiff Qualcomm Incorporated*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this September 13, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/ Keith R. Hummel
Keith R. Hummel (admitted pro hac vice)
khummel@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
*Attorney for Defendant,*
*Counterclaim Plaintiff*