**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| |
|---|
| PARKERVISION, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> QUALCOMM INCORPORATED, <br><br> *Defendant.* |
| QUALCOMM INCORPORATED, <br><br> *Counterclaim Plaintiff,* <br><br> v. <br><br> PARKERVISION, INC., and <br> STERNE, KESSLER, GOLDSTEIN & FOX PLLC <br><br> *Counterclaim Defendants.* |

Case No. 3:11-cv-719-J-37-TEM

**QUALCOMM'S MOTION PURSUANT TO FED. R. CIV. P. 26(b)(5)(B) FOR
IN CAMERA REVIEW OF CERTAIN RECALLED DOCUMENTS
AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 26(b)(5)(B), Qualcomm moves for an *in camera* review of certain documents ParkerVision produced, but then subsequently recalled, on the ground that their production had been inadvertent.

**Preliminary Statement**

Qualcomm has pleaded counterclaims against both ParkerVision and Sterne Kessler whose gravamen is that Sterne Kessler breached its duty of loyalty to its then-current client, Qualcomm, by helping ParkerVision prepare its patent infringement lawsuit against Qualcomm. In prior filings, counsel for Sterne Kessler has contended that Qualcomm's counterclaims are "baseless" and "a deliberate effort to deflect attention away from the

substantive issues of the case . . . supported by nothing but innuendo and lacking in both factual and legal support." (Dkt. 132 at 2; Dkt. 101 at 2.)

On September 6, ParkerVision produced approximately 81,000 documents to Qualcomm. In the course of reviewing those documents, reviewers noticed several documents that involved communications with ParkerVision attorneys from Sterne Kessler or on which those attorneys were copied, some of whose subject headings and attachment names suggested that the communications had as their subject the preparation of this lawsuit against Qualcomm, and Sterne Kessler's involvement in that effort.

Qualcomm's counsel promptly notified ParkerVision's counsel of the production of these documents, and identified them specifically in an index so that ParkerVision's counsel could investigate whether counsel had produced them inadvertently. A week later, ParkerVision claimed that each one was privileged in its entirety and asked Qualcomm to destroy the documents, which Qualcomm immediately did.

Qualcomm is very concerned that the blanket claim of privilege with which ParkerVision attempted to justify the recall of the documents Qualcomm identified, as well as others ParkerVision subsequently recalled, is not proper. Many of the recalled documents contain communications not involving any attorney. Others involve communications for which attorneys are only cc'd. And the authors and circumstances of production of the attachments are, to Qualcomm, unknown. Over a month has passed since Qualcomm notified ParkerVision of the existence of these documents. Under the circumstances, Qualcomm is reasonably availing itself of the procedure afforded under Federal Rule of Civil Procedure 26(b)(5)(B), to require ParkerVision to produce a subset of the Recalled Documents to the Court under seal for its *in camera* review. Only *in camera* review can conclusively indicate whether ParkerVision is

withholding critical evidence relevant to Qualcomm's counterclaims through blanket claims of privilege that are improper.

## Factual Background

Qualcomm has pleaded counterclaims against Sterne Kessler and ParkerVision arising out of Sterne Kessler's having assisted ParkerVision in bringing this action against Qualcomm.  (Dkt. 91.)  Shortly after this action was filed, Qualcomm became aware of strong evidence indicating that Sterne Kessler had assisted ParkerVision in bringing this action.  Because Qualcomm was a current Sterne Kessler client when this action was filed, any assistance Sterne Kessler rendered to ParkerVision was a breach of Sterne Kessler's fiduciary duty of loyalty to Qualcomm.  (Dkt. 40-1 at 3; Dkt. 91 ¶ 143.)

### A.     Sterne Kessler's Denials of Prior Assistance.

In response to these counterclaims, Sterne Kessler has stated, under oath and in court submissions signed by counsel for Sterne Kessler, that Sterne Kessler did not in fact advise ParkerVision in connection with the preparation of this action and has vigorously resisted discovery to test that assertion.

- In a November 30, 2011 declaration, Sterne Kessler's Managing Director attested that "[Sterne Kessler] did not draft ParkerVision's complaint, nor did it assist ParkerVision's litigation counsel in drafting the complaint. *[Sterne Kessler] has not been advising ParkerVision or its counsel regarding the [l]itigation.*" (Dkt. 59-6 ¶ 5 (emphasis added).)

- At the hearing on Qualcomm's motion for a preliminary injunction, counsel for Sterne Kessler stated, "[Sterne Kessler] did *nothing* with respect to preparing the complaint, drafting the complaint, putting the complaint together . . . ."  (Dkt. 67 at 25:22-24 (emphasis added).)

- In its motion to dismiss the counterclaims, Sterne Kessler characterized the counterclaims as a "nuclear arsenal" that were "*based on guesswork, reckless inferences and, in some cases, allegations that [Qualcomm] knows are false,*" and stated that Qualcomm lacked any factual basis for asserting them.  (Dkt. 99 at 2-3 (emphasis added).)

- In opposition to motions to compel, filed in response to Sterne Kessler's refusal to provide its former client, Qualcomm, with any information about the nature of its prior

3

assistance to ParkerVision, counsel has contended that Qualcomm's counterclaims are "baseless" and "a deliberate effort to deflect attention away from the substantive issues of the case . . . *supported by nothing but innuendo and lacking in both factual and legal support*." (Dkt. 132 at 2; Dkt. 101 at 2 (emphasis added).)

To date, Sterne Kessler has not produced any document evidencing the assistance it provided to ParkerVision in connection with the prosecution of this lawsuit, (*see* Declaration of David Greenwald, dated November 8, 2012 ("Greenwald Decl.") ¶ 20), making it impossible for Qualcomm to employ the ordinary tools of civil discovery to gather additional evidence in support of its counterclaims. The only document productions it has made consist of (i) a production on July 2, 2012, in response to this Court's order on one of Qualcomm's motions to compel, of a haystack of billing records spanning a decade and redacted so heavily that they provide no information concerning the nature of the assistance provided, and (ii) a production on October 19 of thousands of documents, none of which bears on whether Sterne Kessler provided assistance to ParkerVision. (Greenwald Decl. ¶¶ 19-20.) Although Sterne Kessler has committed to provide Qualcomm with a privilege log by October 19 (Greenwald Decl. Ex. 15), and then, after failing to meet that deadline, November 5 (Greenwald Decl. Ex. 16), Sterne Kessler has, to date, not served any privilege log (Greenwald Decl. ¶ 21).

    **B.    Qualcomm's Notification of ParkerVision Concerning the Potentially Inadvertently Produced Documents.**

In contrast to Sterne Kessler, ParkerVision *has* produced documents that, based on mere inspection of their dates, titles, senders, addressees, and copyees – the core information of any privilege log – indicate that, contrary to Sterne Kessler's sworn and attorney-sponsored statements to this Court, Sterne Kessler *did* substantially assist ParkerVision in the prosecution of this action. In its September 6, 2012 production, ParkerVision produced 110 documents, 57 of which were email chains comprised of 167 emails, including emails between and among Sterne Kessler attorneys that appeared on their face to be communications relating to this action that

4

preceded its filing (as well as attorney-client communications appearing to relate to other subjects), and 53 of which were attachments to those email chains. (*See* Greenwald Decl. Ex. 1 (the "October 5 Letter.")  As soon as Qualcomm attorneys saw these documents, they recognized that the substance of all/some might – or might not – be privileged.  Qualcomm's counsel notified ParkerVision on October 5 of the production of these documents.  (*Id*.)  To facilitate ParkerVision's review and to provide a clear record of its own compliance with its legal and ethical requirements, Qualcomm's counsel included as an addendum to the October 5 Letter an index of the documents Qualcomm's counsel had identified (the "Identified Documents"), identifying the documents by Bates number, date, sender, recipient, copyees, and subject header, as well as the names of any attachments (the "Index").  *(Id.)*

It was not fully apparent to Qualcomm that the production of the Identified Documents had in fact been inadvertent for the simple reason that many of the documents do not appear to be privileged attorney-client communications.  Although 116 of the 167 emails included in the Identified Documents were attorney-client communications, 30 were not and 21 included attorneys only as copyees.  The authorship and circumstances of authorship of the attachments were not clear either.  Accordingly, when it notified ParkerVision's counsel on October 5, Qualcomm's counsel also asked whether ParkerVision had in fact inadvertently produced the Identified Documents, and, if so, whether it could identify those that Qualcomm (in accordance with Section J of the Confidentiality Agreement) should destroy.

Immediately upon receipt of this letter, ParkerVision's counsel asked Qualcomm to "set aside the documents . . . for the time being.  And, do not use them for any purpose." (Greenwald Decl. Ex. 2.)  Qualcomm's counsel immediately complied with that request, and further confirmed that they "ha[d] not used [the documents] for any purpose." (Greenwald Decl. Ex. 3.)

5

Six days later, on October 11, 2012, ParkerVision counsel notified Qualcomm that the documents Qualcomm's counsel had identified (the "Identified Documents") plus an additional 25 documents (not previously identified by Qualcomm) had been "inadvertently produced." (Greenwald Decl. Ex. 4.) And on October 12, ParkerVision identified an additional 11 documents (not previously identified by Qualcomm) (collectively with the Identified Documents and the 25 documents identified on October 11, the 146 "Recalled Documents") falling into that category. (Greenwald Decl. Ex. 5.) Qualcomm immediately destroyed all copies of such documents that had been previously sequestered pending instructions from ParkerVision. (Greenwald Decl. Ex. 6.)

### C. ParkerVision's Failure to Produce a Privilege Log.

While complying with its obligation to destroy the Recalled Documents, Qualcomm's counsel also immediately asked ParkerVision to furnish a privilege log for those documents (and only those) so that Qualcomm could consider whether to challenge the blanket claim of privilege. Specifically, on October 12, Qualcomm requested that ParkerVision provide it with:

> "a privilege log identifying each document that complies with the Middle District Discovery Handbook, Art. VA.1 ['describ[ing] the nature of the documents, communications, or things not produced . . . such that . . . the description will enable other parties to assess the applicability of the privilege'] and Fed. R. Civ. P. 26(b)(5)(A). While we assess whether to seek a determination of any claim of privilege you may assert in the log you will provide, please preserve the Identified Documents so that they may be presented to the Court under seal if necessary." (Greenwald Decl. Ex. 5.)

ParkerVision's counsel responded that it was "in the process of preparing a privilege log . . ." (Greenwald Decl. Ex. 6.) Because it had taken Qualcomm counsel's paralegals (not involved in the litigation of this case) less than a day to prepare the Index of the Identified Documents (see

6

Greenwald Decl. Ex. 13), Qualcomm expected that the promised log would be forthcoming within a matter of days.

Despite ParkerVision's October 12 assurance that its log would include the 146 Recalled Documents, ParkerVision has still not supplied Qualcomm with a log for those documents.  (Greenwald Decl. ¶ 22.)

On October 22, ParkerVision advised Qualcomm that it "hope[d]" to provide a privilege log "by the end of the month."  (Greenwald Decl. Ex. 10.)

On November 2, after the "end of the month" had passed, and only after Qualcomm informed ParkerVision that it would not wait past November 6 for its privilege log for the Recalled Documents, but would instead proceed to request *in camera* inspection of the documents by the Court pursuant to Fed. R. Civ. P. 26(b)(5)(B), ParkerVision stated that its log would be ready by Friday, November 9. (Greenwald Decl. Ex. 13.)[1]  During the meet-and-confer on this motion today, ParkerVision indicated that its log would include less information (*i.e.*, "to," "from," "cc," "date," and "privilege description") than the Index (Greenwald Decl. ¶ 23), so the future production of this log (whenever it may occur) will not provide Qualcomm with any additional information concerning the propriety of the claims of privilege ParkerVision has already asserted.

---

[1] Nonetheless, ParkerVision declined to commit to produce the log by that date – more than a month after Qualcomm had notified ParkerVision of the existence of the Identified Documents – unless Qualcomm's counsel first explained why it had decided to retain the Index and how its retention of that Index was consistent with a prior ruling on a motion to compel.  (Greenwald Decl. Ex. 14.)  ParkerVision did not explain why Qualcomm's retention of the Index afforded an excuse for ParkerVision's failure to produce its log.  Nor does it have any bearing on the *in camera* inspection Qualcomm is requesting through this motion.  Nonetheless, Qualcomm addresses the (irrelevant) question in the final section of this motion.

**Rule 37(a)(1) and Local Rule 3.01(g) Certification**

Pursuant to Rule 37(a)(1) and Local Rule 3.01(g), counsel for Qualcomm has conferred with counsel for ParkerVision, as well as counsel for Sterne Kessler, in a good faith attempt to resolve the matters raised by this motion, but was unable to do so.

**Argument**

**I.     ParkerVision Should Submit Certain of the Recalled Documents to the Court Under Seal for a Determination of Its Claims of Privilege.**

Documents produced by a party and then later clawed-back under a claim of privilege are subject to review by the Court to determine whether those documents are, indeed, privileged. Federal Rule of Civil Procedure 26(b)(5)(B) provides:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; *and may promptly present the information to the court under seal for a determination of the claim.* The producing party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B) (emphasis added).

Qualcomm respectfully requests that ParkerVision present 122 of the 146 Recalled Documents (those set forth in the addendum to this application (the "Addendum") and which Qualcomm destroyed at ParkerVision's request) to the Court under seal for its review. As review of the Addendum indicates, many (21) of the emails contained within the Recalled Documents are communications to which no attorney is a party[2] and many (10) are communications to which attorneys are only carbon copied.[3] Whether either class of

---

[2] *See, e.g.*, CONF-PV00265867.
[3] *See, e.g.*, CONF-PV00253636.

8

communications is privileged will turn upon review of the substance of those communications to assess whether they are in fact confidential communications "between lawyer and client" under Fla. Evid. Code 90.502. The first class of communications – non-lawyer communications – are not on their face, "communication[s] between lawyer and client," Fla. Evid. Code 90.502, and therefore require further review to assess whether privileged communications with attorneys were discussed. The second class – communications on which attorneys are only copied – also do not necessarily constitute "communication[s] between lawyer and client" as it is well-established that merely copying an attorney on an otherwise non-privileged communication cannot make that communication a privileged communication "between" a lawyer and a client.[4]

Indeed, even as to those communications directly involving ParkerVision employees and their counsel, *in camera* review is necessary to assess whether the communications are privileged, for it is well-established that the privilege does not extend to all attorney-client communications.[5] Only attorney-client communications that are for the

---

[4] *See, e.g., Tyne v. Time Warner Entertainment Co., L.P.*, 212 F.R.D. 596, 600 n.4 (M.D. Fla. 2002) ("distributing carbon copies to attorneys or 'legal files' does not prove the existence of a privilege"); *Infinite Energy, Inc. v. Econnergy Energy Co.*, No. 1:06CV124-SPM/AK, 2008 WL 2856719, at *3-4 (N.D. Fla. July 23, 2008) (ordering *in camera* review of documents carbon copied to defendant's attorneys because the inadequate privilege log did not permit the court to determine whether the documents contained or discussed legal advice that could make them privileged); *Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441, 448 (D. Minn. 2011) (noting that "[i]t is well established that a party cannot make a communication privileged simply by including an attorney in the communication," and holding that the issue of whether communications in which an attorney was only a carbon-copy recipient were privileged was "best resolved by an in-camera review of the communications at issue"); *Iowa Pac. Holdings, LLC v. Nat'l R.R. Passenger Corp.*, No. 09-CV-02977-REB-KLM, 2011 WL 1527599, at *5 (D. Colo. Apr. 21, 2011) ("where an attorney is merely carbon copied on an email, and there is no further proof that an attorney was included for the purpose of seeking legal advice, an *in camera* inspection is necessary").

[5] *See, e.g., Developers Sur. & Indem. Co. v. Harding Vill., Ltd.*, 06-21267CIV-BROWN, 2007 WL 2021939, at *5 (S.D. Fla. July 11, 2007) (ordering plaintiff to file a new privilege log because "[t]he attorney-client privilege does not cover any and all communications between attorney

purpose of rendering legal services and that are intended to be confidential qualify for protection.[6] In addition, the Florida Supreme Court has held that the standard for asserting attorney-client privilege is more stringent for corporations than it is for individuals. A corporation seeking to assert attorney-client privilege must demonstrate, among other things, that "the communication would not have been made but for the contemplation of legal services; . . . the content of the communication relates to the legal services being rendered;" and "the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents." *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684, 689, 699 (S.D. Fla. 2009) (citing *Southern Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1383 (Fla. 1994)) (an email from employee to in-house counsel was not privileged because defendant failed to satisfy its burden of proving that the predominant intent of the communication was to seek legal advice).

Similarly, *in camera* review is appropriate for the several attachments to the Recalled Documents. Even if a Recalled Document contains privileged communications that were properly withheld, it does not necessarily follow that the attachments to those emails would be privileged as well. The attachments themselves must satisfy the requirements of privilege. In particular, if the attachments were not authored by attorneys and were not prepared in specific response to a request from attorneys for information helpful to them in

---

and client, and the description 'subcontractor claim' is too sweeping for this Court to determine whether the privilege covers that specific communication"); *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 458 (Fla. Dist. Ct. App. 1999) ("The privilege does not extend to every statement made to a lawyer.").

[6] *See, e.g., Nwabake v. Torso Tiger, Inc.*, 6:04-CV-410-ORL-18KRS, 2007 WL 1222517, at *3 (M.D. Fla. Apr. 24, 2007) (plaintiff presented no evidence that the communications were for the purpose of rendering legal advice or that they were intended to be confidential and therefore failed to establish communications were privileged); *In re Denture Cream Prods. Liab. Litig.*, 09-2051-MD, 2012 WL 5057844, at *6 (S.D. Fla. Oct. 18, 2012) ("There is general agreement that the protection of the privilege applies only if the primary or predominant purpose of the attorney-client consultations is to seek legal advice or assistance.").

formulating legal advice, it is unlikely that the attachments would be privileged.[7] The Addendum identifies 49 attachments, concerning, for example, "ParkerVision Claim Analysis," whose authorship and the circumstances of whose authorship is not apparent to Qualcomm. *In camera* review to assess the legality of ParkerVision's withholding of these attachments is also warranted.

## II.     Retention of the Index by Qualcomm Is Proper.

Qualcomm had previously refrained from seeking *in camera* inspection to allow for the possibility that a privilege log for the Recalled Documents from ParkerVision would make clearer the bases for its assertions of privilege. That did not happen. Despite undertaking to produce a log before the end of October (Greenwald Decl. Ex. 10), ParkerVision did not do so (*id.* ¶ 22). And even if ParkerVision does produce a privilege log after Qualcomm files this motion, ParkerVision's counsel indicated on the meet-and-confer preceding the filing of this motion that its log would contain *less* information about the Recalled Documents than appears in the Index (*id.* ¶ 23), so it appears that Qualcomm's receipt of a log, if that in fact occurs, will not in any way moot the basis for this request for *in camera* inspection.

Instead of producing a log, ParkerVision has badgered Qualcomm with repeated, almost frantic requests that Qualcomm destroy the Index it prepared. (*See* Greenwald Decl. Exs. 4, 7, 9, 12, 13.) As Qualcomm's counsel explained to ParkerVision's counsel on October 16 (*id.* Ex. 8), the Index (*id.* Ex. 1) consists of nothing other than information that appears in privilege

---

[7] *See, e.g., Spiniello Cos. v. Hartford Fire Ins. Co.*, Civ. A. No. 07-cv-2689 (DMC), 2008 WL 2775643, at *2 (D.N.J. July 14, 2008) ("[I]f a communication (such as an email) is privileged but contains attachments, each attachment must individually satisfy the criteria for establishing the privilege. Merely attaching something to a privileged document will not, by itself, make the attachment privileged.") (internal quotation marks omitted); *Diversified Control, Inc. v. Corning Cable Systems, LLC*, No. 05-CV-0277(A)(M), 2010 WL 1371662, at *1 (W.D.N.Y. Apr. 6, 2010) (ordering production of email attachments, because "whether or not the e-mails themselves are privileged . . . nothing in the attachments (consisting of photographs) is remotely privileged").

logs (sender, recipient, date, and subject matter), so ParkerVision is suffering no prejudice from its retention even with respect to the entries for legitimately privileged communications. Had Qualcomm in fact destroyed the Index, it would have been asking this Court to perform a more burdensome *in camera* inspection of all the Recalled Documents rather than just of the identified subset (122 out of the 146 Recalled Documents), because it would not have had any basis upon which to ascertain that some, whether or not privileged, had little, if any, relevance to this action.

The sole reason ParkerVision has given for why Qualcomm's counsel should destroy the Index is that it contains information that this Court's June 7, 2012 order (Dkt. 113) precludes Qualcomm from possessing. The June 7 Order does not say this or lend itself to the interpretation ParkerVision gives to it. The question of which documents Sterne Kessler should be compelled to produce in this case is distinct from the question of what information belongs in a privilege log concerning the documents that it does *not* produce. Nothing in the Court's June 7 Order indicated that Sterne Kessler (or ParkerVision) would be relieved of the obligation to prepare a privilege log satisfying Fed. R. Civ. P. 26(b)(5)(A) for those documents it chose to withhold on the ground of privilege, or that the Court should not conduct under Fed. R. Civ. P. 26(b)(5)(B) an *in camera* inspection of documents withheld but for which a claim of privilege cannot be assessed. To the contrary, and as the Court noted in the June 7 Order, "generalized, blanket assertions of a privilege will not suffice to establish that such a privilege exists" (Dkt. 113) and, at the moment, such "generalized, blanket assertions" are all that ParkerVision has put forth.

Even if ParkerVision correctly reads the Court's Order, the reading presupposes that the underlying communications/attachments at issue are in fact privileged. That is the precise issue Qualcomm seeks to have resolved conclusively through this Request and until

12

such resolution, the question of the appropriate disposition of the Index is, at best, premature. Qualcomm would observe, however, that Qualcomm's retention of the Index, contrary to ParkerVision's urgings, has assisted the Court, by allowing Qualcomm to pinpoint more precisely those communications/attachments for which it requests *in camera* review, and has not prejudiced ParkerVision in any way.  By contrast, ParkerVision's delay in producing a privilege log and its refusal to do so based on tactically contrived pretexts (*see* Greenwald Decl. Ex. 14 ("We will be able to serve the log on you by Friday the 9th . . .  assuming you have complied with my request above.")), has impaired the presentation of this Request to the Court, and with it, Qualcomm's prosecution of its meritorious counterclaims.

### Conclusion

For the foregoing reasons, Qualcomm respectfully requests that this Court order ParkerVision to submit the documents listed in the addendum to this Court under seal for an *in camera* review of its claims of privilege.

November 8, 2012

       Respectfully submitted,

       CRAVATH, SWAINE & MOORE LLP

       By:    s/ Keith R. Hummel
           Keith R. Hummel (admitted pro hac vice) (Trial Counsel)
           khummel@cravath.com
           David Greenwald (admitted pro hac vice)
           dgreenwald@cravath.com
           Worldwide Plaza
           825 Eighth Avenue
           New York, New York  10019
           Telephone:  (212) 474-1000
           Facsimile:  (212) 474-3700

       -and-

       BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.

      John A. DeVault, III
      Florida Bar No. 103979
      jad@bedellfirm.com
      Courtney K. Grimm
      cgrimm@bedellfirm.com
      Florida Bar No. 953740
      The Bedell Building
      101 East Adams Street
      Jacksonville, Florida 32202
      Telephone: (904) 353-0211
      Facsimile: (904) 353-9307

      -and-

CADWALADER, WICKERSHAM & TAFT LLP
   Christopher A. Hughes (admitted pro hac vice)
   Christopher.Hughes@cwt.com
   1 World Financial Center
   New York, New York 10281
   Telephone: (212) 504-6000
   Facsimile: (212) 504-6666

      -and-

GOODWIN PROCTER, LLP
   Steven A. Moore (admitted pro hac vice)
   samoore@goodwinprocter.com
   Richard W. Thill (admitted pro hac vice)
   rthill@goodwinprocter.com
   4365 Executive Drive, Suite 3000
   San Diego, CA 92121
   Telephone: (858) 202-2700
   Facsimile: (858) 457-1255

*Counsel for Defendant, Counterclaim Plaintiff Qualcomm Incorporated*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 8th day of November, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                          s/ Keith R. Hummel
                                          Keith R. Hummel (admitted pro hac vice)
                                          khummel@cravath.com
                                          Worldwide Plaza
                                          825 Eighth Avenue
                                          New York, New York  10019
                                          Telephone:  (212) 474-1000
                                          Facsimile:  (212) 474-3700
                                          *Attorney for Defendant,*
                                          *Counterclaim Plaintiff*