**UNITED STATES DISTRICT COURT**
**THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PARKERVISION, INC.,

                *Plaintiff,*

        v.

QUALCOMM INCORPORATED,

                *Defendant.*

Case No. 3:11-cv-719-J-37-TEM

**QUALCOMM'S MEMORANDUM OF LAW IN OPPOSITION TO
PARKERVISION'S MOTION TO COMPEL QUALCOMM'S RESPONSE TO
INTERROGATORY NOS. 21-25 AND REQUEST FOR ADDITIONAL RELIEF**

**Preliminary Statement**

The question posed by ParkerVision's Motion to Compel is not whether the 25-per-party interrogatory limit set forth in the Court's February 13th Case Management Order ("CMO") is clear.  Qualcomm acknowledges that that limit is clear, and has never contended otherwise.

Rather, the sole question posed by this motion is whether the CMO allowed the parties to give effect to a stipulation further limiting the number of interrogatories that the parties reached in the Joint Case Management Report ("JCMR").  Qualcomm's position is that the CMO explicitly answers that question "yes."

While the CMO prohibits the parties from seeking from one another additional discovery *beyond* the limits imposed by the CMO or to impose longer deadlines than those set forth therein, the CMO, by its express, plain terms, allows the parties to agree to "other limits on discovery within the context of the limits and deadlines established by this Case Management and Scheduling Order."  (Dkt. 84 at 5.)  Thus, the parties were authorized by the Court to agree to further limits on the discovery authorized by the CMO.  As set forth in detail below, that is exactly what they did.  In the JCMR, Qualcomm and ParkerVision agreed to serve a maximum of 20 interrogatories on each other.  Qualcomm has abided by that limit; ParkerVision has not.

The parties' course of conduct after the issuance of the CMO fully demonstrates the parties' shared understandings that the discovery-limiting stipulations set forth in the JCMR (and not just those relating to interrogatories) are binding.  In contentions of infringement ParkerVision served *after* the issuance of the CMO, ParkerVision relied on – and thereby availed itself of the benefit of – an agreement that the parties reached in the JCMR that was *not* adopted in the CMO, and Qualcomm did

not challenge ParkerVision's reliance on that pre-CMO agreement not reflected in the CMO.  And both Qualcomm and ParkerVision have abided by a limit on the number of substantive RFAs that is reflected in the JCMR but *not* adopted by the CMO.

In light of this history, as well as the language and manifest intent of the CMO to give effect to additional, mutually agreeable limitations on discovery, Qualcomm respectfully submits that the parties' limitation on the number of interrogatories qualifies as a "limit on discovery within the context of the limits" established by the CMO and continues to limit both ParkerVision and Qualcomm to 20 interrogatories directed to each other.

## Background

### I.     The Joint Case Management Report

On December 30, 2011, after extensive negotiation, the three parties to this action jointly filed the JCMR.  (Dkt. 69.)

In a section entitled "Agreements between the Parties" (*id.* at 8), the parties to this action – ParkerVision, Qualcomm, and counterclaim-defendant, Sterne Kessler – agreed to certain limitations upon discovery.  Their content – and the ensuing, unbroken history of the parties' adherence thereto – are very relevant to whether the relief sought by ParkerVision through this motion is warranted.

*Interrogatories.*  In the JCMR, the parties agreed that: "(i) ParkerVision and Qualcomm may propound 20 interrogatories on each other; and (ii) Qualcomm and Sterne Kessler may propound 5 interrogatories on each other."  (*Id.* at 13.)  This arrangement was proposed by ParkerVision and Sterne Kessler, *see* December 9, 2011 Letter from Keith Hummel to Douglas Cawley, Exhibit 1 to the December 21, 2012 Declaration of Aaron I. Karp, and its result was that no more than 50 (20+20+5+5)

interrogatories would be served in the action, notwithstanding the default set in the Federal Rules under which *each party* could serve 25. *See* Fed. R. Civ. P. 33(a)(1).

*RFAs.* In the JCMR, the three parties agreed that each could "serve 200 requests for admission for authentication purposes and 50 requests for admission for purposes other than authentication on each other." (Dkt. 69 at 13.) The result of that agreement was that no more than 150 substantive RFAs and 600 authentication RFAs would be served in this action, notwithstanding the absence of any limit on RFAs in the Federal Rules.

*Infringement Contentions.* In the JCMR, the parties agreed to disclose contentions of infringement and validity in accordance with Rules 3.1 and 3.3 of the Local Patent Rules of the Eastern District of Texas (*id.* at 15) with one major exception. In Section IV.G(c), the JCMR provided: "If the party asserting patent infringement contends that an identical Accused Instrumentality is contained in multiple products, then that Accused Instrumentality is required to be charted *only once* with an accompanying identification of the products that allegedly contain that Accused Instrumentality." (*Id.* (emphasis added).) Such a limitation does not appear in the Eastern District of Texas Local Patent Rules. The result of that agreement was significantly to reduce the burden of claim charting that ParkerVision (the only party asserting infringement) would bear in complying with the Eastern District's Local Patent Rules.

## II.     The Case Management Order

The Court entered the CMO on February 13, 2012. (Dkt. 84.) The CMO contained several provisions concerning discovery. For example, and as relevant to this motion:

3

*Interrogatories.*  In the CMO, the Court provided that "Absent leave of Court, the parties may serve no more than twenty-five interrogatories, including sub-parts.  Fed. R. Civ. P. 33(a)."  (*Id.* at 5.)

*RFAs.*  The CMO imposed no limit on the number of RFAs that any party could serve.

*Infringement Contentions.*  The CMO endorsed the parties' agreement to provide contentions of infringement and validity in accordance with Rules 3.1 and 3.3 of the Eastern District of Texas Local Patent Rules.  (*Id.* at 1 ("the Rules of Practice for Patent Cases before the Eastern District of Texas provide a reasoned and reasonable approach to follow with regard to the disclosure and amendment of the parties' infringement and invalidity contentions").)  The Court, however, did *not* adopt the parties' agreement in the JCMR to relax those rules to permit ParkerVision to group together various products that ParkerVision claims have identical allegedly infringing circuitry within a single claim chart.  (*Id.* at 1.)

In addition to the foregoing, the CMO contained a provision expressly permitting the parties to agree to additional limits on discovery:  "The parties may agree by stipulation on other limits on discovery within the context of the limits and deadlines established by this Case Management and Scheduling Order, but the parties may not alter the terms of this Order without leave of Court."  (*Id.* at 5.)  The clear – and undisputed – meaning of this provision is that the parties may stipulate to limitations that are "*within*" the limits and timing of discovery set forth in the CMO without leave of Court.  Conversely, the parties could not agree to expand the amount of discovery or the deadlines associated with discovery unless the Court approved.

## III.   The Parties' Conduct in Discovery

Since the entry of the CMO in February, all three parties have engaged in discovery in accordance with the limits and deadlines set forth in the CMO.  The course of all three parties' dealings over the past ten months is very revealing of how the parties themselves have understood the interplay between the limits on discovery set forth in the CMO and those set forth in the JCMR.  It is also highly probative of Qualcomm's good faith efforts to comply fully with the letter and spirit of the CMO.

*Interrogatories.*  Notwithstanding the plain language of the CMO that authorized each of the three parties to serve 25 interrogatories, Sterne Kessler and Qualcomm (and, until just recently, ParkerVision) followed the JCMR's agreement regarding interrogatory practice by adhering to the further limits on interrogatories stipulated to therein.  Although Sterne Kessler was otherwise not reticent to serve discovery requests upon Qualcomm,[1] Sterne Kessler adhered faithfully to the five interrogatory limit set forth in the JCMR.  At the time the claims against it were abated, Sterne Kessler had served four interrogatories on Qualcomm.  Likewise, throughout the course of this action, Qualcomm served a total of three interrogatories upon Sterne Kessler, and served only 20 upon ParkerVision.  Consistent with the JCMR's stipulation on interrogatories, ParkerVision, during the first fifteen months of this case, served only 19 interrogatories upon Qualcomm.  Then, on October 31, 2012, it served six additional.  Qualcomm answered the 20th interrogatory fully and completely (as it had the preceding 19), but objected that the remaining five were over the previously agreed-upon, previously adhered-to limit.

---

[1] Before the counterclaims against it were abated, Sterne Kessler had served 35 Rule 34 requests on Qualcomm and had taken three depositions.

*RFAs.* Notwithstanding the absence of any limit on RFAs in the CMO, ParkerVision served exactly 50 RFAs directed to issues other than authenticity, the maximum number allowed by the JCMR, and only two directed to authenticity. Qualcomm served 49 RFAs directed to issues other than authenticity, and only six directed to authenticity. Qualcomm served 8 RFAs upon Sterne Kessler, and Sterne Kessler served none.

*Infringement Contentions.* In the infringement contentions ParkerVision served on March 2, 2012, ParkerVision identified 61 "Accused Products," but provided detailed infringement charts only for Qualcomm's QSC6270 product. Qualcomm moved to strike ParkerVision's infringement contentions with respect to all products other than the QSC6270 and the two other Accused Products (the QSC6240 and MDM6270) that have RF circuitry that is identical to the QSC6270. (Dkt. 154 at 14-16.)

One argument ParkerVision made in opposition to the motion to strike is that ParkerVision was not required to provide infringement contentions for each of the Accused Products because the parties had stipulated in the JCMR that, "[i]f the party asserting patent infringement contends that an identical Accused Instrumentality is contained in multiple products, then that Accused Instrumentality is required to be charted only once with an accompanying identification of the products that allegedly contain that Accused Instrumentality." (Dkt. 165 at 10 (quoting JCMR, Dkt. 69 at 15).) This stipulation was not adopted in the CMO. Despite the absence of the stipulation from the CMO, ParkerVision has been emphatic concerning its right to rely upon that stipulation. *See* Dkt. 165-2 at 1 (letter from ParkerVision counsel to Qualcomm counsel) ("*As you know, the parties specifically negotiated for the right to provide one set of infringement contentions for identical Accused Instrumentalities*" (emphasis added).) Moreover,

Qualcomm has never disputed ParkerVision's reliance on this JCMR provision, which

benefits only ParkerVision, as the sole party having an obligation to provide

infringement contentions.  Instead, and reflecting its acknowledgment that this limit on

discovery present only in the JCMR and not the CMO is binding, Qualcomm merely

argued in its motion to strike that many of the Accused Products do *not* have identical

allegedly infringing circuitry and for *that* reason must be separately charted.  (Dkt. 154.)[2]

Qualcomm has never contended that the absence of the relevant JCMR stipulation from

the CMO denies ParkerVision the benefit of that stipulation.

**Argument**

**I.      The Parties' Stipulated Interrogatory Limits Fall "Within the Context of the
Limits" on Discovery Established by the Case Management Order.**

Qualcomm does not dispute that the CMO permitted each party –

ParkerVision, Qualcomm, and Sterne Kessler – to serve 25 interrogatories.  Qualcomm

has objected to ParkerVision's Interrogatories Nos. 21-25 based on its view that they

were served in plain violation of a binding agreement of the type that the CMO

expressly permitted and to which all parties had adhered throughout the course of

discovery in this action.  Accordingly, the issue raised by this motion is not what the

CMO's interrogatory limit (taken in isolation) means.  The issues are rather (i) whether

the parties reached an agreement concerning interrogatory number that was "within the

context of the limits and deadlines established by the [CMO]," and (ii) whether such an

---

[2] Before ParkerVision filed its motion to compel, Qualcomm informed ParkerVision that
ParkerVision had conducted itself in a manner supportive of the view that agreements in the
JCMR that did not expand the limits in the CMO are binding on both parties.  (Dkt. 206-9 at 2.)
Qualcomm specifically referred to ParkerVision's adherence to the JCMR's RFA limits and its
reliance upon the JCMR's limitation on infringement charts as well as Sterne Kessler's acceptance
of the interrogatory limits at issue here.  (*Id.*)  Notably, ParkerVision did not inform the Court of
these facts in its motion to compel, thereby painting an unfairly lopsided portrait of this dispute.

agreement is enforceable if reached prior to the entry of the CMO.  Qualcomm submits

that the answer to both questions is "yes," and that the parties' – *all* parties' – prior

course of dealing only makes those affirmative answers all the more clear.

A.     The JCMR's Limitations on Interrogatories Are "Within" the 25-Per-Party
       Limit of the CMO.

There is no question that the JCMR's provision concerning the number of

interrogatories did not increase the number of interrogatories beyond the limits set by

the Court.  (Dkt. 84 at 5.)  Under the CMO, each party could serve 25 interrogatories, for

a potential total of 75.  Under the JCMR, the total number of allowed interrogatories was

not only reduced to 50, but the 50 were allocated among the three parties in a way that

seemed fair to the parties at the time.  Put differently, the Court set only a maximum

number of interrogatories, in conformity with Federal Rule of Civil Procedure 33(a), and

then explicitly allowed for further stipulated limits.  (*Id.*)  The parties' limitation on

interrogatories is an example of just such a stipulated limit.[3]

B.     The CMO Did Not Provide that Only Discovery Limits Entered Into After
       Entry of the CMO Would Have Effect, and the Parties' Consistent Course
       of Conduct Rejects Any Such Understanding.

ParkerVision does not contest that the substance of the JCMR's limit on

interrogatories was permissible or that the limit could be implemented without leave of

court.  ParkerVision concedes that if the parties had entered into such an agreement *after*

entry of the CMO, rather than before, the agreement would have taken effect. (*See* Dkt.

206, at 11 ("If, on the other hand, the parties reached an agreement after the issuance of

the Court's Order to further limit the scope of discovery beyond that authorized by the

---

[3] By contrast, the JCMR's proposed 360-hour limit on depositions was plainly *not* "within"
the limits set forth in the CMO, as it would have authorized taking well more than the twenty 7-
hour depositions to which the CMO limited the parties.  (*See* Dkt. 84 at 5.)

Court, Qualcomm's argument would have merit.").)  ParkerVision's arbitrary "date cutoff" governing which discovery-limiting agreements are effective has no mooring in the CMO, is not consistent with the self-evident purpose of the CMO's authorization of other, discovery-limiting agreements, and, above all, is squarely rejected by the parties' prior course of dealing.[4]

   The CMO does *not* provide that only discovery-limiting stipulations reached after entry of the CMO have effect.  ParkerVision does not offer (nor can it) any logical reason as to why the timing of an otherwise proper discovery-limiting stipulation should dictate its effectiveness.  To the contrary, the manifest intent of the CMO's authorization of discovery-limiting stipulations is to reduce the overall cost of litigation, and it is hardly consistent with such an intent to suggest that it erases all prior, discovery-limiting agreements and thus forces the parties to re-negotiate them anew.

   More important, the parties' repeated and unbroken adherence to at least three limits in the JCMR that predate but are not embodied in the CMO, demonstrates that the parties have understood throughout this case that pre-CMO stipulations consistent with the CMO have effect.  ParkerVision has plainly benefited from all three such pre-CMO stipulations, making it unjust for it now, as discovery is coming to a close, to disclaim them altogether.

   *Interrogatory Limits.*  Sterne Kessler and Qualcomm understood the JCMR's interrogatory limit to be binding upon them, and ParkerVision plainly benefited from the shared understanding.  Had Sterne Kessler understood the CMO to authorize

---

[4] This alone disproves ParkerVision's strident contention that Qualcomm, by merely lodging its objections to the interrogatories, failed to adhere to the Middle District's *Ideals and Goals of Professionalism*.  Nor is it "intransigen[t]" (Dkt. 206-8 at 1) to lodge an objection to a discovery request for which one has a good faith basis, which Qualcomm plainly does here.

the service of more than five interrogatories, surely it would have served more on

Qualcomm.  And had Qualcomm understood the service of additional interrogatories

upon both ParkerVision and Sterne Kessler to be authorized, it certainly would have

served more.

   *RFA Limits*.  ParkerVision and Qualcomm have adhered to the agreement

in the JCMR that "ParkerVision and Qualcomm may serve 200 requests for admission

for authentication purposes and 50 requests for admission for purposes other than

authentication on each other." If ParkerVision truly believed that all stipulations in the

JCMR not explicitly adopted in the CMO lost their effectiveness upon entry of the CMO,

surely ParkerVision would have served more RFAs on Qualcomm.  (Dkt. 206 at 11.)

And even if that were not the litigation reality, the service by ParkerVision of only 50

RFAs directed to issues other than authenticity is not a coincidence:  it reflects the plain

understanding that 50 was the limit.

   *Infringement Contention Limit*s.  If stipulations in the JCMR are not

binding, as ParkerVision now argues, then ParkerVision was required to serve separate

infringement charts for each of the scores of products that it intends to accuse.  That is

what Eastern District of Texas Local Patent Rule 3.1 provides.  But ParkerVision has

availed itself of the benefit of that pre-CMO, discovery-limiting agreement, and has not

even attempted such an undertaking.  Instead, ParkerVision has relied on the JCMR

provision limiting claim charts, a limitation that the Court did not adopt in the CMO.

And Qualcomm, while sharply challenging the adequacy of ParkerVision's infringement

contentions based on the requirements of the JCMR, has never challenged the propriety

of its reliance on that specific provision.

ParkerVision cannot have it both ways.  If the JCMR's limitations on RFAs (which all parties have followed to a tee) and restrictions on charting infringement contentions continue to bind parties after the issuance of the CMO, then the JCMR's limitation on interrogatories is binding as well.

## II.   The Additional Relief ParkerVision Requests Is Not Warranted, Even if Service of the Additional Interrogatories Was Authorized.

ParkerVision argues that if the Court grants its motion to compel, ParkerVision should be entitled to the additional relief of retaking any impacted depositions and supplementing its expert reports.  (Dkt. 206 at 13.)  But ParkerVision has not met its burden of showing how any depositions were impacted and expert reports have not yet been served.

## Conclusion

For the foregoing reasons, Qualcomm respectfully requests that this Court deny ParkerVision's Motion to Compel.

December 21, 2012

CRAVATH, SWAINE & MOORE LLP


By:   <u>  s/ Keith R. Hummel</u>
      Keith R. Hummel (admitted pro hac vice) (Trial Counsel)
      khummel@cravath.com
      David Greenwald (admitted pro hac vice)
      dgreenwald@cravath.com
      Worldwide Plaza
      825 Eighth Avenue
      New York, New York  10019
      Telephone:  (212) 474-1000
      Facsimile:  (212) 474-3700


            -and-


BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.
      John A. DeVault, III
      Florida Bar No. 103979
      jad@bedellfirm.com
      Courtney K. Grimm
      Florida Bar No. 953740
      cgrimm@bedellfirm.com
      The Bedell Building
      101 East Adams Street
      Jacksonville, Florida 32202
      Telephone:  (904) 353-0211
      Facsimile:  (904) 353-9307


            -and-


CADWALADER, WICKERSHAM & TAFT LLP
      Christopher A. Hughes (admitted pro hac vice)
      christopher.hughes@cwt.com
      1 World Financial Center
      New York, New York 10281
      Telephone:  (212) 504-6000
      Facsimile:  (212) 504-6666


            -and-

GOODWIN PROCTER, LLP
    Steven A. Moore (admitted pro hac vice)
    samoore@goodwinprocter.com
    Richard W. Thill (admitted pro hac vice)
    rthill@goodwinprocter.com
    4365 Executive Drive, Suite 3000
    San Diego, CA 92121
    Telephone:  (858) 202-2700
    Facsimile:  (858) 457-1255

*Counsel for Defendant Qualcomm Incorporated*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of December, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/ Keith R. Hummel
Keith R. Hummel (admitted pro hac vice)
khummel@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
*Attorney for Defendant Qualcomm Incorporated*