**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PARKERVISION, INC.,

    Plaintiff,

vs.

QUALCOMM INCORPORATED,

    Defendant.

_____

Case No. 3:11-cv-719-J-37TEM

QUALCOMM INCORPORATED,

    Counterclaim Plaintiff,

vs.

PARKERVISION, INC. and STERNE, KESSLER, GOLDSTEIN & FOX PLLC,

    Counterclaim Defendants.

_____

**ORDER**

This cause is before the Court on the following:

1. Defendant Qualcomm's Answer to ParkerVision's First Amended Complaint and Qualcomm's Counterclaim and Demand for Jury Trial (Doc. No. 91), filed March 16, 2012;

2. Plaintiff ParkerVision, Inc.'s Motion to Dismiss and Strike Qualcomm's Answer to ParkerVision's First Amended Complaint (Doc. No. 100), filed April 9, 2012;

3. Qualcomm's Memorandum of Law in Opposition to ParkerVision's Motion

       to Dismiss and Strike Qualcomm's Answer to ParkerVision's First Amended Complaint (Doc. No. 105), filed April 26, 2012;

4.   Parkervision's Unopposed Motion to Abate Counts Ten and Twelve of Qualcomm's Counterclaim (Doc. No. 204), filed November 20, 2012; and

5.   Qualcomm's Response to ParkerVision's Citation of Supplemental Authority (Doc. No. 236), filed January 17, 2013.

Upon consideration, the Court hereby grants in part and denies in part the motion to dismiss (Doc. No. 100) and grants the motion to abate (Doc. No. 204).

## BACKGROUND

On February 28, 2012, ParkerVision, Inc. ("ParkerVision") filed its First Amended Complaint against Qualcomm Incorporated ("Qualcomm"), alleging that Qualcomm infringed six of its patents. (Doc. No. 88, pp. 2–3.) On March 16, 2012, Qualcomm filed its Answer and asserted a number of counterclaims and affirmative defenses. (Doc. No. 91.) On April 9, 2012, ParkerVision moved to dismiss Qualcomm's (1) claims of inequitable conduct, (2) claim of aiding and abetting a breach of fiduciary duty, and (3) claim of tortious interference with a contractual relationship. (Doc. No. 100.) ParkerVision also moved to strike Qualcomm's affirmative defenses of inequitable conduct and unclean hands, as well as a set of paragraphs setting out the basis for the inequitable conduct claims. (*Id.*) On January 10, 2013, the Court held a hearing on the inequitable conduct counterclaims.

## STANDARDS

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

2

"'[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity' under Rule 9(b)." *Exergen Corp. v. Wal-Mart Stores*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). The U.S. Court of Appeals for the Federal Circuit has explained:

> [T]o plead the "circumstances" of inequitable conduct with "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the [Patent and Trademark Office]. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the [Patent and Trademark Office].

*Id.* at 1328–29.

## DISCUSSION

### I. Counterclaims of Inequitable Conduct

Qualcomm counterclaims that ParkerVision's '551 patent is unenforceable due to ParkerVision's inequitable conduct and that the other five ParkerVision patents—'518, '371, '734, '342, and '845—are also unenforceable because they stem from the '551 patent. (Doc. No. 91, ¶¶ 69–116.) All six of the inequitable conduct counterclaims thus rest on the factual allegations regarding the '551 patent. Specifically, Qualcomm sets forth three theories of inequitable conduct, alleging that Michael Q. Lee, the '551 patent's prosecuting attorney, and David F. Sorrells, an inventor: (1) "buried" the Patent and Trademark Office ("PTO") with references; (2) belatedly disclosed a material reference to the PTO; and (3) materially misrepresented four references to the PTO. Qualcomm urges the Court to consider the alleged inequitable conduct cumulatively, as

a "course of deliberate egregious misconduct." (*Id.* ¶ 35.) The Court finds no authority for this approach, and Qualcomm has not provided any either in its filings or at the hearing held on January 10, 2013.[1] As such, the Court will consider each claim of inequitable conduct separately.

"To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO. . . . The accused infringer must prove both elements—intent and materiality—by clear and convincing evidence." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (citation omitted). Specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." *Id.* (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). Materiality is but-for materiality. *Id.* at 1291. "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.*

### a. "Burying" the PTO

Qualcomm alleges that ParkerVision, through Lee and Sorrells, "buried" the PTO examiner "with hundreds of references so as to distract his attention from highly relevant references." (Doc. No. 91, ¶ 12.) Qualcomm claims that beneath the numerous references provided to the PTO "were a handful of highly relevant references . . . that, if they had been called to the [e]xaminer's full attention, would have precluded issuance of the pending claims." (*Id.*)

The Federal Circuit has recognized that "[w]ith inequitable conduct casting the

---

[1] Even if the Court did examine the alleged inequitable conduct cumulatively, the bootstrapping of claims that fail as a matter of law (*see infra* Parts I.a.–b.) does not create a pattern of inequitable conduct.

4

shadow of a hangman's noose, it is unsurprising that patent prosecutors regularly bury PTO examiners with a deluge of prior art references, most of which have marginal value." *Therasense*, 649 F.3d at 1289. That is, "constantly confront[ed] [with] the specter of inequitable conduct charges," *id.*, it is likely that a patentee provides copious references to the PTO in order to ensure that he is not subject to inequitable conduct charges for failing to disclose a reference, not as an act of deliberate deception.

While intent may be averred generally under Rule 9(b), the alleged infringer must offer "sufficient allegations of underlying facts from which a court may reasonably infer" that the patentee "withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores*, 575 F.3d 1312, 1328–29 (Fed. Cir. 2009). Qualcomm's assertions that ParkerVision provided voluminous references in order to "distract" the PTO examiner cannot meet this standard. Taking into account the practice of bringing inequitable conduct claims against a patentee for under-disclosing references, an equally if not more reasonable inference is that ParkerVision aimed to insulate itself from such claims by over-disclosing references. *See Therasense*, 649 F.3d at 1287 (noting that specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence" (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008) (internal quotation marks omitted))). Because specific intent to deceive is not the only or single most reasonable inference to be drawn from the disclosure of voluminous references to the PTO, Qualcomm's pleading of the "burying" theory fails as a matter of law.

### b. Belated Disclosure

Qualcomm also alleges that ParkerVision belatedly disclosed a reference, an article by A. Parssinen, to the PTO examiner. (Doc. No. 91, ¶ 25.) Qualcomm alleges

5

that despite having the opportunity to update the Petition to Make Special with the Parssinen reference, Lee and Sorrells elected not to do so until after the Petition was granted. (*Id.*) Qualcomm further alleges that this conduct amounts to a misrepresentation of the reference's significance. (*Id.* ¶ 26.) The reference was ultimately disclosed to the PTO prior to the issuance of the '551 patent, as the reference is listed on the face of the patent. (*Id.* ¶ 25.)

The Federal Circuit has held that a patentee's failure to update the PTO about changed circumstances or new information regarding a Petition to Make Special does not constitute inequitable conduct. *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1235 (Fed. Cir. 2011). In *Powell*, a patentee discovered that a retailer intended to use a different supplier than the patentee but did not update his Petition to Make Special with that information—information that would have diminished the need for expedited review. *Id.* In holding that this behavior did not constitute inequitable conduct, the Federal Circuit reasoned that it failed *Therasense*'s but-for materiality test and did not rise to the level of "affirmative egregious misconduct" excepted under *Therasense*'s but-for materiality test. *Id.*; *see Therasense*, 649 F.3d at 1292–93 (setting out the exception). The same applies here.

Even if the Court were to adopt Qualcomm's narrow reading of *Powell* (Doc. No. 236, pp. 1–3), Qualcomm's allegations nonetheless fail the *Therasense* but-for materiality test, which examines "whether the PTO would have allowed the [patent] claim if it had been aware of the undisclosed reference." 649 F.3d at 1291. Here, the PTO was aware of the Parssinen reference, as evidenced by the reference's citation on the face of the patent, and still issued the patent. One cannot assume that a PTO examiner is an ignorant rube who is easily misled by attorney argument, hyperbole, or

understatement.[2] *See Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007) ("[W]e cannot agree that there was inequitable conduct resulting from the 'failure to disclose material information' when that information was disclosed to the PTO in time for the examiner to consider it. The essence of the duty of disclosure is to get relevant information before an examiner in time for him to act on it, and that did occur here."); *cf. Litton Sys. Inc. v. Honeywell, Inc.*, 87 F.3d 1559, 1571 (Fed. Cir. 1996), *vacated on other grounds*, *Honeywell, Inc. v. Litton Sys., Inc.*, 520 U.S. 1111 (1997) (concluding that no inequitable conduct existed where a patentee had, in fact, intentionally withheld a reference, but that reference was ultimately considered by the PTO examiner). Because the PTO received the Parssinen reference before issuing the patent, the belated disclosure of the reference was not but-for material.[3] Thus, Qualcomm's pleading of the belated disclosure theory fails as a matter of law.

### c. Material Misrepresentation

Qualcomm alleges that ParkerVision mischaracterized four references of prior art listed in its application—Fisher, Williams, Schlitz, and Faulkner—by distinguishing them from its patent claim. (Doc. No. 91 ¶¶ 32–33.) Qualcomm submits that those references actually teach the same elements that ParkerVision maintains are unique to its patent claim. (*Id.* ¶ 33.) Qualcomm avers that these statements were "material misrepresentations, outside the bounds of permissible attorney argument, made with specific intent to mislead and deceive the PTO." (*Id.* ¶ 63.)

---

[2] For the same reason, Qualcomm's argument that ParkerVision "affirmatively misrepresented" that the Parssinen reference was less significant by disclosing the reference later (Doc. No. 91, ¶ 26) is an inference that strains the meaning of inequitable conduct beyond *Therasense*'s framework.

[3] Nor does the belated disclosure amount to the kind of "affirmative egregious misconduct" that creates an exception to the requirement of but-for materiality. *See Therasense*, 649 F.3d at 1292–93.

7

The Court is concerned about the potential chilling effect that a determination of inequitable conduct arising out of distinctions between patent claims and prior art would have on practitioners appearing before the PTO. Nevertheless, while Qualcomm's allegations certainly skirt the line between fraud and zealous attorney argument regarding the scope or extent of the teachings of disclosed prior art, they are sufficient to meet the pleading standards of Rule 9(b), as they state with particularity the circumstances constituting the alleged fraud. That is, Qualcomm has specifically pled the who, what, when, where, and how of the representations that it alleges were false.

At the motion to dismiss stage, the Court will not decide on the pleadings whether ParkerVision's representations to the PTO constituted intentional falsehoods or permissible attorney argument. Indeed, even if ParkerVision's representations to the PTO were attorney argument, they could still "exceed[] the bounds of acceptable argument" if they were "based on distorted facts" or were "contrary to what a person of skill in the art would understand a reference to disclose." *Schwendimann v. Arkwright Advanced Coating, Inc.*, No. 11-820ADM/JSM, 2011 WL 4007334, at *5 (D. Minn. Sept. 8, 2011) (citing *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co.* 204 F.3d 1368, 1376 (Fed. Cir. 2000) (upholding inequitable conduct charges where a patent applicant willfully misrepresented a prior art reference); *Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354, 1360–61 (Fed. Cir. 2010) (upholding a district court's finding that a statement to the PTO was a misrepresentation "outside the bounds of permissible attorney argument" where patent applicants argued that the statement was "merely attorney argument")). Whether Qualcomm can marshal sufficient evidence to establish that ParkerVision made demonstrably false misrepresentations to the PTO will remain to be tested at the summary judgment stage. In light of the very technical nature

of the patents-in-suit, development of the record will be necessary to make that determination, with a focus on the standard that differentiates intentional misrepresentation from acceptable attorney argument.

As noted at the January 10, 2013 hearing, the Court is troubled by the serious nature of the allegations that Lee and Sorrells, a practitioner before the PTO and a private citizen, respectively, materially misrepresented with specific intent to deceive the scope of the four references. A charge of inequitable conduct "cast[s] a dark cloud over the patent's validity and paint[s] the patentee as a bad actor. Because the doctrine focuses on the moral turpitude of the patentee with ruinous consequences for the reputation of his patent attorney, it discourages settlement and deflects attention from the merits of validity and infringement issues." *Therasense*, 649 F.3d at 1288. Such a charge also increases "the complexity, duration and cost of patent infringement litigation that is already notorious for its complexity and high cost." *Id.* (citation omitted). While the Court has concluded that Qualcomm has pled the material misrepresentation theory with the requisite specificity, Qualcomm should also understand that the Court will supervise carefully the material misrepresentation theory going forward, and if it ultimately proves to be specious, the Court may impose sanctions.

## II. Counterclaims of Aiding and Abetting a Breach of Fiduciary Duty and Tortious Interference with Contractual Relationship

Qualcomm's counterclaim of aiding and abetting a breach of fiduciary duty alleges that ParkerVision utilized the law firm Sterne, Kessler, Goldstein & Fox ("SKGF") to file its patent infringement action with the knowledge that Qualcomm was a longtime SKGF client, and thus participated in and encouraged SKGF's alleged breach of fiduciary duty. (*Id.* ¶¶ 178–81.) Qualcomm's counterclaim of tortious interference alleges

9

that ParkerVision "intentionally and without justification interfered with the contractual relationship between Qualcomm and [SKGF]," specifically a contract provision that provided that no one at SKGF would participate in litigation against Qualcomm while SKGF represented Qualcomm in other matters. (*Id.* ¶¶ 201–02.)

ParkerVision filed a motion to abate these counts of the counterclaim. (Doc. No. 204.) The Court has dismissed without prejudice Qualcomm's counterclaims against SKGF for breach of fiduciary duty and breach of contract. (Doc. No. 197.) The instant aiding and abetting and tortious interference counterclaims are derivative of those counterclaims and are thus due to be dismissed. If and when this Court lifts the abatement as to the claims against SKGF (*see* Doc. No. 197), Qualcomm will have leave to file amended counterclaims against ParkerVision.

### III. Affirmative Defenses

Qualcomm's affirmative defense of inequitable conduct relies on the allegations made in the counterclaims of inequitable conduct (Doc. No. 91, ¶¶ 8–68), discussed *supra*, and avers that such conduct renders the subject patents unenforceable. (*Id.* at 8.) Qualcomm's affirmative defense of unclean hands relies on the same allegations. (*Id.* at 9.)

These affirmative defenses are simply recitations of Qualcomm's inequitable conduct counterclaim. In order to avoid the uncertainty that would be produced by counterclaims and affirmative defenses based on the same allegations simultaneously going forward, the Court construes them as counterclaims pursuant to Federal Rule of Procedure 8(c)(2) and strikes them as redundant pursuant to Federal Rule of Civil Procedure 12(f)(1).

IV. **Paragraphs 8 Through 68**

Paragraphs 8 through 68 of Qualcomm's Answer set out the factual basis for its inequitable conduct counterclaims. (Doc. No. 91.) ParkerVision claims that these paragraphs are not authorized by the Federal Rules of Civil Procedure. (Doc. No. 100, p. 15.) The Court disagrees; these paragraphs are part of the inequitable conduct counterclaims even if they do not fall under the heading of a specific Count, as they set up the factual context for the counterclaims. The Court will not strike these paragraphs.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiff ParkerVision, Inc.'s Motion to Dismiss and Strike Qualcomm's Answer to ParkerVision's First Amended Complaint (Doc. No. 100) is **GRANTED IN PART** (as to the "burying" and belated disclosure theories of the inequitable conduct counterclaims; the aiding and abetting breach of fiduciary duty and tortious interference with contractual relations counterclaims; and the affirmative defenses) and **DENIED IN PART** (as to the material misrepresentation theory of the inequitable conduct counterclaims and paragraphs 8 through 68).

2. Qualcomm's "burying" theory of the inequitable conduct counterclaims is **DISMISSED WITH PREJUDICE**.

3. Qualcomm's belated disclosure theory of the inequitable conduct counterclaims is **DISMISSED WITH PREJUDICE**.

4. Parkervision's Unopposed Motion to Abate Counts Ten and Twelve of Qualcomm's Counterclaim (Doc. No. 204) is **GRANTED**.

5. Qualcomm's aiding and abetting breach of fiduciary duty counterclaim is

11

       **DISMISSED WITHOUT PREJUDICE**.

6. Qualcomm's tortious interference with contractual relations counterclaim is **DISMISSED WITHOUT PREJUDICE**.

7. If and when this Court lifts the abatement as to claims against Sterne, Kessler, Goldstein & Fox PLLC, Qualcomm will have leave to file amended counterclaims against ParkerVision for the claims of aiding and abetting breach of fiduciary duty and tortious interference with contractual relations.

8. Qualcomm's affirmative defenses of inequitable conduct and unclean hands are **STRICKEN**.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on January 22, 2013.

_____
ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record