**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

PARKERVISION, INC.,

    Plaintiff,

v.

QUALCOMM INCORPORATED,

    Defendant.

QUALCOMM INCORPORATED,

    Counterclaim Plaintiff,

v.

PARKERVISION, INC.; and STERNE, KESSLER, GOLDSTEIN & FOX PLLC,

    Counterclaim Defendants.

Case No. 3:11-cv-719-J-37TEM

**ORDER**

This cause is before the Court on the following:

1. Qualcomm's Motion for Partial Summary Judgment (Doc. 270), filed May 22, 2013;

2. Declaration of Mario A. Apreotesi in Support of ParkerVision's Response to Qualcomm's Motion for Partial Summary Judgment (Doc. 276), filed June 24, 2013;

3. ParkerVision's Response to Qualcomm's Motion for Partial Summary Judgment (Doc. 277), filed June 25, 2013;

4. Qualcomm's Reply Memorandum in Support of Its Motion for Partial Summary Judgment (Doc. 294), filed July 11, 2013; and

5. Exhibit 9 to Qualcomm's Reply Memorandum in Support of Its Motion for Partial Summary Judgment (Doc. 294), filed July 11, 2013.

## BACKGROUND

ParkerVision contends that Qualcomm infringes, either directly or indirectly, the claims of U.S. Patent No. 6,061,551 ("the '551 Patent"), U.S. Patent No. 6,266,518 ("the '518 Patent"), U.S. Patent No. 6,370,371 ("the '371 Patent"), U.S. Patent No. 6,963,734 ("the '734 Patent"), U.S. Patent No. 7,496,342 ("the '342 Patent"), and U.S. Patent No. 7,724,845 ("the '845 Patent"). The patents-in-suit relate to methods, systems, and apparatuses used to convert electromagnetic signals from higher frequencies to lower frequencies. Such down-conversion is used, for instance, during the operation of cellular telephones and similar devices.

Qualcomm moves for summary judgment of non-infringement on ParkerVision's claims. (Doc. 270.) ParkerVision opposes the motion (Doc. 277), which is ripe for adjudication.

## STANDARDS

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a motion for summary judgment, the nonmoving party must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320

(11th Cir. 2006). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991).

## DISCUSSION

Qualcomm seeks summary judgment that certain devices it manufactures, the Atheros Products, do not infringe the claims of the asserted patents. Qualcomm also contends that it is entitled to summary judgment on ParkerVision's indirect infringement claims for four of the asserted patents and that its 50% Duty Cycle Products do not infringe ParkerVision's patent claims.

**I. Non-Infringement of the Atheros Products**

First, Qualcomm seeks a declaration that fifteen of its chipsets do not infringe the asserted claims.[1] (Doc. 270, pp. 12–14.) Qualcomm contends that these chipsets were designed and sold by a company called Atheros Communications, Inc., which Qualcomm acquired just before the commencement of this lawsuit. (*Id.* at 10.) Qualcomm offers expert testimony that these chipsets, which it calls the "Atheros Products," do not infringe the patent claims because the products do not perform energy sampling at an aliasing rate and do not contain a storage element coupled to the down-conversion circuit. (*Id.*) ParkerVision "agrees that the summary judgment evidence does not establish infringement of the Atheros Products." (Doc. 277, p. 20.) ParkerVision asserts that the Court should dismiss its claims of infringement rather than enter summary judgment on those claims.

ParkerVision concedes that it can offer no evidence in support of its claims that

---

[1] These chipsets are identified as AR6002, AR6013, AR6014, AR6102, AR6122, AR9220, AR9223, AR9227, AR9271, AR9280, AR9281, AR9282, AR9283, AR9285, and AR9287. (Doc. 270-28.)

3

the Atheros Products infringe the claims of the asserted patents. The Court may therefore grant summary judgment. *See Anderson*, 477 U.S. at 257; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). The Court is not inclined to dismiss these declaratory claims where the parties have expended so much time and effort in litigation. (*See* Doc. 294, p. 10.)

Summary judgment is therefore due to be granted in favor of Qualcomm on ParkerVision's claim of infringement and on Qualcomm's counterclaim of non-infringement as to the Atheros Products.[2]

## II. Indirect Infringement

Qualcomm also moves for summary judgment on ParkerVision's indirect infringement claims. (Doc. 270.) Qualcomm argues that it did not have pre-suit knowledge of four of ParkerVision's patents and as such, ParkerVision cannot prove its contributory or induced infringement claims. (*Id.* at 14–19.) ParkerVision responds that there is circumstantial evidence from which the trier of fact can infer that Qualcomm had pre-suit knowledge of the patents. (Doc. 277, pp. 5–8.) ParkerVision also contends that a jury could conclude from such evidence that Qualcomm was willfully blind to the existence of the patents. (*Id.* at 8–9.)

Both theories of indirect infringement require Qualcomm to know of the existence of the asserted patents prior to the commencement of the suit. *See Commil USA, LLC v. Cisco Sys., Inc.*, No. 2012-1041, 2013 WL 3185535, at *4 (Fed. Cir. June 25, 2013) (holding that inducement requires both pre-suit knowledge of the existence of the patent

---

[2] Qualcomm's counterclaim alleges that it "has not infringed, and currently does not infringe, any valid claim of any of the Patents-in-Suit, directly, indirectly, contributorily, by inducement, or in any other manner, and ParkerVision is entitled to no relief for any claim of alleged infringement." (Doc. 248, p. 8.)

4

and knowledge that the induced acts constitute patent infringement); *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1379 (Fed. Cir. 2013) (holding that contributory infringement requires actual knowledge of the existence of the patent that is infringed). This can be proven by direct or circumstantial evidence. *See Commil USA, LLC*, 2013 WL 3185535, at *3; *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2010).

ParkerVision contends that it and Qualcomm engaged in negotiations regarding its technology from 1998 until 1999. (Doc. 277, pp. 2–3.) These negotiations involved Qualcomm executives and its patent counsel, at least one of whom reviewed ParkerVision's patent applications. (*Id.*) One Qualcomm executive concluded that, while the applications that he reviewed may have "some holes," ParkerVision was "trying to capture every possible version of any use of their basic device." (Doc. 276-9.) The same executive understood that ParkerVision intended to file additional patent applications and thought that it would be "very difficult for anybody to ever use" ParkerVision's methods "without stepping on one or more of their claims." (*Id.*) ParkerVision also contends that Qualcomm's executives communicated with one another about ParkerVision's patents after the issuance of the '551 Patent and the '371 Patent.[3] (*Id.* at 3–4.) ParkerVision also describes a 2004 email exchange between Qualcomm's engineers discussing "disruptive technology" for receivers. (Doc. 276-20.) One engineer

---

[3] The parties dispute the admissibility of this evidence. ParkerVision, however, need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A court may consider evidence in an inadmissible form on summary judgment so long as such evidence can be reduced to admissible evidence at trial. *See Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005); *see also Macuba v. Deboer*, 193 F.3d 1316, 1324–25 (11th Cir. 1999) (holding that otherwise admissible evidence can be submitted in inadmissible form on summary judgment).

thought that it "would be a great idea to explore the idea of RF sampling for a low dynamic range receiver," to which the other responded that he would set up a meeting to "go over [the] parker vision approach" to "see if we can make it work." (*Id.*) This proffer is sufficient to raise a genuine dispute of a material fact as to whether Qualcomm had actual knowledge of ParkerVision's patents and whether it was willfully blind to the existence of those patents.

Accordingly, Qualcomm's motion is due to be denied as to this issue.

### III. Non-Infringement of the 50% Duty Cycle Products

Finally, Qualcomm seeks summary judgment on its claims that some of its products, which it calls the "50% Duty Cycle Products," do not infringe the claims of ParkerVision's patents. (Doc. 270, pp. 20–25.) Qualcomm argues that its 50% Duty Cycle Products, which consist of two switches connected to a capacitor, work in such a way that the capacitor is always charging. (*Id.* at 22–25.) This occurs because when one of the switches is closed, the other switch is open. (*Id.*) Each switch provides charge to the capacitor only when it is closed. (*Id.*) Each switch is closed about half of the time and therefore provides charge to the capacitor only about half of the time. (*Id.*) The capacitor, however, is being charged the whole time because one of the switches is always closed. (*Id.*)

Qualcomm argues that the opinions of ParkerVision's expert Dr. Prucnal concerning "energy sampling" require the discharging of energy that has been transferred and accumulated in a storage device such as a capacitor. (*Id.* at 20–21.) Qualcomm states that Dr. Prucnal also opines that a storage device discharges when the switch connected to it is open—that is, when it is not charging. (*Id.*) Because its 50% Duty Cycle Products are always charging, Qualcomm argues that its products do not

6

discharge and therefore do not infringe the claims of ParkerVision's patents. (*Id.*) Qualcomm contends that Dr. Prucnal admitted that this is the case. (*Id.* at 22–23.)

In response, ParkerVision argues that Qualcomm overlooks several important aspects of Dr. Prucnal's testimony. (Doc. 277, pp. 12–14.) ParkerVision contends that Dr. Prucnal was discussing a hypothetical "ideal" 50% duty cycle product when he made the statement that Qualcomm argues is an admission. (*Id.*) ParkerVision disputes Qualcomm's characterization of Dr. Prucnal's testimony and disputes whether Qualcomm's products actually operate at a 50% duty cycle. (*Id.*)

Dr. Prucnal was asked at his deposition if the capacitors in Qualcomm's products had a discharge cycle in view of the fact that the capacitor was always charging. He testified as follows:

> Q:  Right. So neither of those to [sic] capacitors ever has a discharge cycle because it is always receiving input current, correct?
>
> A:  I don't—I don't think that is necessarily correct. It is charging alternately from two different signals and it has a discharge path from there.

(Doc. 276-23, Prucnal Dep. 222:10–15.) The testimony continues:

> Q:  Okay. And there being one of the two of them is always being directed to each of those two capacitors, right?
>
> A:  You're saying that one of the two of them is always being directed to one of the two capacitors.
>
> Q:  Yeah.
>
> A:  I believe that's correct.
>
> Q:  So there is no discharge cycle on either of those capacitors, right?
>
>   [Objection]
>
> A:  As I said, I don't agree with that because it's going to depend upon the impedance scene looking forward in this circuit where charging

7

> the capacitor and then energy is being transferred into it from one or the other of these two LOI+—I am sorry—ILNA+ or ILNA- but then that has the opportunity to discharge as well.

(*Id.* at 223:8–24.) This testimony, as well as Dr. Prucnal's other testimony, make clear that he does not agree with Qualcomm's theory of how the 50% Duty Cycle Products operate and how they satisfy the elements of the claims. Qualcomm focuses on the presence and absence of discrete charging and discharging cycles. Dr. Prucnal's theory, on the other hand, requires the accumulated energy to be discharged but does not necessarily require discrete charging and discharging cycles.[4]

Given this disagreement among the parties' experts, ParkerVision has put forth sufficient evidence to raise a genuine dispute of material fact regarding the infringement of Qualcomm's 50% Duty Cycle Products.[5] Qualcomm's motion for summary judgment as to this issue is therefore due be denied.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Qualcomm's Motion for Partial Summary Judgment (Doc. 270) is **GRANTED IN PART** and **DENIED IN PART**, as set forth in this Order.

2. Summary judgment is **GRANTED** in favor of Qualcomm and against ParkerVision on Qualcomm's counterclaims that the Atheros Products do not infringe any claim of U.S. Patent Nos. 6,061,551; 6,266,518; 6,370,371; 6,963,734; 7,496,342; and 7,724,845. ParkerVision shall take

---

[4] The parties made similar arguments during the construction of the claim limitations.

[5] Qualcomm's remaining arguments concern points that relate more to the weight that should be given to Dr. Prucnal's opinions by the trier of fact than an absence of opinion regarding infringement, especially in view of Dr. Prucnal's expert report which expressly notes how Qualcomm's products satisfy the limitations of the asserted claims.

nothing on its claim of infringement as to the Atheros Products.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on August 26, 2013.

_____
ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record