**UNITED STATES DISTRICT COURT**
**THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PARKERVISION, INC.,

         *Plaintiff*,

        v.

QUALCOMM INCORPORATED,

         *Defendant*.

Case No. 3:11-cv-719-J-37-TEM

**QUALCOMM'S MOTIONS IN LIMINE**

Redacted Version
Publicly Filed

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION. ...................................................................................................... 1

II.    MOTION IN LIMINE #1:  THE COURT SHOULD EXCLUDE ALL
EVIDENCE OF QUALCOMM'S 1998-1999 INTERACTIONS WITH
PARKERVISION. ....................................................................................................... 2

    A.    Facts Surrounding the 1998-1999 Interactions. .................................... 3

    B.    The Court Should Exclude Evidence of the 1998-1999 Interactions. ................... 4

        1.    The Events of 1998 and 1999 Have Limited Relevance or
Probative Value........................................................................................ 4

            a.    The Events of 1998-99 Are Not Probative of Issues of
Infringement.................................................................................. 4

            b.    The 1998-99 Discussions Are Irrelevant to Issues of
Damages........................................................................................ 6

            c.    The 1998-99 Discussions Are Irrelevant to Issues of
Invalidity. ..................................................................................... 7

        2.    The Prejudice Resulting from Introduction of Evidence Regarding
1998 and 1999 Substantially Outweighs Any Probative Value................ 8

    C.    The Court Should At Least Exclude the Financial Modeling and Offers.............. 9

III.    MOTION IN LIMINE #2:  THE COURT SHOULD PRECLUDE
PARKERVISION FROM OFFERING EVIDENCE OF ITS ALLEGED NEW
CHIP OR FROM ASSERTING THAT IT COMPETES WITH QUALCOMM. ............. 9

    A.    ParkerVision Failed to Provide Timely Discovery Regarding the New
Chip........................................................................................................... 9

    B.    The Court Should Exclude Any Evidence or Claim that ParkerVision
Competes with Qualcomm................................................................... 11

IV.    MOTION IN LIMINE #3:  THE COURT SHOULD NOT ALLOW ANY
IRRELEVANT AND CUMULATIVE OPINION TESTIMONY FROM
PARKERVISION'S EXECUTIVES. ........................................................................... 12

V.    MOTION IN LIMINE #4:  PARKERVISION SHOULD NOT BE ALLOWED
TO ASSERT THAT ANY PRODUCTS OTHER THAN THOSE ADDRESSED
IN DR. PRUCNAL'S REPORT INFRINGE THE PATENTS-IN-SUIT. ..................... 13

VI.    MOTION IN LIMINE #5:  PARKERVISION'S ONLY EVIDENCE
REGARDING ITS DOCTRINE OF EQUIVALENTS ARGUMENT IS
INSUFFICIENT......................................................................................................... 15

VII.    MOTION IN LIMINE #6:  PARKERVISION PRESENTED NO DAMAGES
REPORT ON CONTRIBUTORY INFRINGEMENT AND CANNOT PRESENT
EVIDENCE ON IT AT TRIAL................................................................................... 17

## TABLE OF CONTENTS
(continued)

**Page**

VIII.   MOTION IN LIMINE #7:  THE COURT SHOULD PRECLUDE PARKERVISION FROM ARGUING THE PRESUMPTION OF VALIDITY............. 19

IX.   MOTION IN LIMINE #8:  THE COURT SHOULD PRECLUDE EVIDENCE BASED ON "PARKERVISION EMPIRICAL FORMULAS" INSTEAD OF THE ACTUAL FACTS. ............................................................................................ 20

X.   MOTION IN LIMINE #9:  THE COURT SHOULD NOT ALLOW DR. PRUCNAL TO TESTIFY BASED ON DOCUMENTS FROM 3LP ADVISORS, A LITIGATION CONSULTING FIRM RETAINED BY PARKERVISION................ 21

XI.   MOTION IN LIMINE #10:  THE COURT SHOULD EXCLUDE ALL REFERENCES TO DEFICIENT METHODOLOGIES AND OPINIONS BY PARKERVISION'S DAMAGES EXPERT..................................................................... 22

XII.   MOTION IN LIMINE #11:  THE COURT SHOULD NOT ALLOW PARKERVISION TO ACCUSE QUALCOMM OF IMPROPERLY RETAINING THE "EVALUATION BOARD" OR OTHERWISE BREACHING THE PARTIES' NDA................................................................................................ 23

XIII.   MOTION IN LIMINE #12:  THE COURT SHOULD PRECLUDE PARKERVISION FROM COMMENTING ON QUALCOMM'S TOTAL REVENUE OR PROFITS. ........................................................................................ 24

XIV.   CONCLUSION........................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Air Turbine Tech., Inc. v. Atlas Copco AB*,
410 F.3d 701 (Fed. Cir. 2005)........................................................................14, 18

*AquaTex Indus., Inc. v. Techniche Solutions*,
479 F.3d 1320 (Fed. Cir. 2007)..............................................................................14

*Chiron Corp. v. Genentech, Inc.*,
363 F.3d 1247 (Fed. Cir. 2004)..............................................................................19

*Cook ex. Rel. Tessier v. Sheriff of Monroe County*,
402 F.3d 1092 (11th Cir. 2005) .......................................................................22, 23

*CSX Trans., Inc. v. Gilkison*,
No. 5:05CV202, 2012 WL 6082983 (N.D. W.Va. Dec. 6, 2012) ...........................8

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)..................................................................................... passim

*Hendrix v. Evenflo Co., Inc.*,
255 F.R.D. 568 (N.D. Fla. 2009) ...........................................................................20

*Hewlett-Packard Co. v. Mustek Sys.*,
340 F.3d 1314 (Fed. Cir. 2003)........................................................................16, 17

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
523 F.3d 1304 (Fed. Cir. 2008)..............................................................................15

*i4i Ltd. Partnership v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010)................................................................................15

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
392 F.3d 1317 (Fed. Cir. 2004)..............................................................................19

*Lear Siegler, Inc. v. Sealy Mattress Co. of Michigan, Inc.*,
873 F.2d 1422 (Fed. Cir. 1989)........................................................................16, 17

*Lucent Technologies, Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)..............................................................................15

*McRee v. Goldman*,
11-CV-00991-LHK, 2012 WL 3745190 (N.D. Cal. Aug. 28, 2012).......................5

*Omega Patents, LLC v. Fortin Auto Radio, Inc.*,
No. 6:05-cv-1113-Orl-22DAB, 2007 WL 4373110 (M.D. Fla. Feb. 5, 2007) .................14, 18

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Oracle Am., Inc. v. Google Inc.*,
    798 F. Supp. 2d 1111 (N.D. Cal. 2011) ...................................................................6

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    711 F.3d 1348 (Fed. Cir. 2013)..........................................................................21

*Proveris Scientific Corp. v. Innovasystems, Inc.*,
    536 F.3d 1256 (Fed. Cir. 2008)...................................................................13, 14

*Smith and Nephew, Inc. v. Arthrex, Inc.*,
    No. 2:07-cv-335-TJW-CE, 2010 WL 457142 (E.D. Tex. Feb. 5, 2010) ................................17

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996)..................................................................16

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)..........................................................6, 23, 24

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) ..........................................................6, 22, 23

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
    No. C 11-6638 RS, 2012 WL 1831543 (N.D. Cal. May 18, 2012) .........................................5

*Wang Labs v. Toshiba Corp.*,
    993 F.2d 858 (Fed. Cir. 1993)..................................................................14

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)..............................................................................16

**STATUTES**

35 U.S.C.
    § 271(c) .....................................................................................19

**OTHER AUTHORITIES**

Fed. R. Civ. P.
    § 26........................................................................................9, 11
    § 37........................................................................................9, 11

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Fed. R. Evid.

§ 401............................................................................................................................24, 20

§ 402........................................................................................................................4, 6, 24, 20

§ 403.................................................................................................................................. passim

§ 702........................................................................................................................16, 21, 22

§ 703...........................................................................................................................................21

## I.   INTRODUCTION.

This case involves six lengthy and dense patents, difficult technology, and complicated issues of proof.  A trial focused on just the "nuts and bolts" of the patent case would fully occupy a jury and this Court's time.  But, based on what Qualcomm has seen, ParkerVision intends to focus the jury's attention elsewhere: on a story filled with irrelevant evidence of interactions between the parties that occurred a full seven years before Qualcomm's first allegedly infringing product was built, and indeed, even before the patent-in-suit issued.  Qualcomm believes that ParkerVision plans to argue a story of intrigue—that it exposed its technology to a big company, which, seven years later, allegedly used it without paying—because it is more likely to prevail on that story than on the questions of whether the patents are actually valid or infringed.  But the only cause of action ParkerVision actually pled in this case is patent infringement, and permitting ParkerVision to focus on the companies' dealings years before the first alleged infringement will derail the core patent trial in favor of a collateral set of issues that would be prejudicial, time consuming to rebut, and ultimately irrelevant to the question of whether or not Qualcomm's accused products fall within the limitations of any valid claims of ParkerVision's patents  The Court should not allow ParkerVision to take the trial down this path.  Instead, Qualcomm requests that the Court exclude the following irrelevant, prejudicial or improper evidence:

- Any evidence of the 1998-99 interactions between the parties.  Such evidence is irrelevant to any issues in the case and is unduly prejudicial.

- Any evidence of ParkerVision's allegedly new chip or assertion that ParkerVision competes with Qualcomm. ParkerVision did not provide timely discovery on this issue and has no evidence to support testimony that ParkerVision is a competitor in receiver chip.

- Any purported expert opinion testimony from ParkerVision's executives.  ParkerVision failed to serve a required expert report and the testimony is entirely duplicative of the expert opinions actually and properly disclosed.

- Any argument for which ParkerVision has submitted no evidence.  This includes argument that any non-accused product infringes the patents, evidence that Qualcomm infringes under the doctrine of equivalents (no opinion offered by ParkerVision's expert), and evidence of damages arising from alleged contributory infringement (no opinion offered by ParkerVision's expert).

- Any argument that the "presumption of validity" is separate from the evidentiary burden for proving invalidity.  Otherwise, ParkerVision may persuade the jury that Qualcomm has to clear an even higher burden to prove validity than it already does.

- Any expert testimony that is not based on facts or reliable documents—such as documents created by unknown individuals at the litigation consulting firm hired by trial counsel.

- Any evidence or expert testimony based on Benoit's inherently flawed damages analysis.

- Any evidence or allegation that Qualcomm breached the parties' NDA or otherwise acted improperly by retaining ParkerVision's "evaluation board."  Such evidence is irrelevant and prejudicial.

- Any evidence regarding Qualcomm's total profits and revenue—much of which is derived from products or businesses not at issue in this case.

Exclusion of this improper, irrelevant and prejudicial evidence will help ensure a fair trial.[1]

## II.   MOTION IN LIMINE #1:  THE COURT SHOULD EXCLUDE ALL EVIDENCE OF QUALCOMM'S 1998-1999 INTERACTIONS WITH PARKERVISION.

Because this is a patent infringement case, the central questions are whether the accused products literally infringe the six patents-in-suit, which issued in 2000, 2001, 2002, 2005, 2009, and 2010, and whether the patents are valid.  Qualcomm began selling the accused products in 2006—the relevant time for any damages calculation.  Thus, any evidence regarding the parties' interactions in 1998 and 1999, which involved discussions about a very different business transaction during a very different time technologically, is a prejudicial distraction.  It should be excluded because its limited probative value is substantially outweighed by the risk that it will cause unfair prejudice and confuse and mislead the jury.

---

[1] Qualcomm certifies that it has met and conferred regarding this motion as required by the local rules.

A.      **Facts Surrounding the 1998-1999 Interactions.**

In 1998 and 1999, Qualcomm was using a superheterodyne (multistage) downconversion architecture. At that time, ParkerVision and Qualcomm discussed a potential business relationship involving ParkerVision's direct downconversion technology, "D2D." (Dkt. 270, Qualcomm's Summary Judgment Motion, at 4-5, Exs. 2-5.) Based on ParkerVision's bold claims about its technology, Qualcomm was intrigued and assigned some engineers to evaluate the technology that ParkerVision claimed to able to provide. (*Id.* at 5-6, Exs. 7-9.)

While evaluating the technical merits of ParkerVision's claims, Qualcomm also did some internal analysis of various possible financial scenarios and discussed potential deal terms with ParkerVision. Eventually, Qualcomm offered royalty rates of ███████████████████ ██████████████████████████████ in exchange for an exclusive, worldwide license to all of ParkerVision's future patents and ParkerVision's know-how—on the condition that ParkerVision could demonstrate that its claims were true and that the technology actually worked in cell phones. (Ex. 1, QCPV001389867-68.) Although the engineering analysis had raised serious questions about the value of ParkerVision's technology, Qualcomm engaged in financial discussions to obtain what amounted to an option on the technology—in case it could be made to work. The parties never reached agreement on the financial terms. (Dkt. 270 at 6-7.)

By the time the financial discussions ended in mid-1999, the RF engineering specialists within Qualcomm had concluded that the ParkerVision technology was not particularly novel, would require substantial effort by Qualcomm to incorporate into any cell phone product—if it even could—and that Qualcomm could independently develop its own direct downconversion technology using a different approach. (Dkt. 270 at 6, Exs. 10-14.) That is exactly what Qualcomm did. (*Id.* at 7-8, Exs. 16-18.) Qualcomm completed a prototype of its own direct downconversion receiver design in November 1999 and introduced the first direct

downconversion receiver called "ZIF" (for "Zero IF").  Qualcomm's initial ZIF direct

downconversion products—which ParkerVision has not accused of infringement—were sold by

the millions for many years starting in the early 2000's.

**B.      The Court Should Exclude Evidence of the 1998-1999 Interactions.**

**1.      The Events of 1998 and 1999 Have Limited Relevance or Probative Value.**

The events of 1998 and 1999 have limited relevance to the issues in this case.  If

admitted, evidence of the 1998-99 discussions will only serve to confuse the jury, unfairly

prejudice the jury against Qualcomm, and create the risk that the jury will decide the complex

patent issues that arose years later simply because Qualcomm looked at the technology in 1999

and made an offer to license it.  Accordingly, evidence of the 1998-99 events should be

excluded.  Fed. R. Evid. 402, 403.

**a.      The Events of 1998-99 Are Not Probative of Issues of Infringement.**

The discussions that occurred in 1998 and 1999 cannot be relevant or probative on the

issue of direct infringement.  The patents-in-suit issued in 2000 ('551 patent), 2001 ('518 patent),

2002 ('371 patent), 2005 ('734 patent), 2009 ('342 patent), and 2010 ('845 patent).  Qualcomm

did not introduce the first allegedly infringing product until 2006.  Evidence of interactions in

1998-99 does not relate to whether products released seven years later practice the claims of

patents that had not yet even issued.

Similarly, the discussions that occurred in 1998 and 1999  have limited probative value to

Qualcomm's alleged knowledge of the patents for ParkerVision's indirect infringement or

willfulness case.  (*See* Dkt. 270.)  While the Court relied on certain Qualcomm communications

about the patent applications that ParkerVision disclosed (only one of which resulted in a patent-

in-suit) in ruling on Qualcomm's summary judgment motion regarding knowledge, other

evidence of the interactions in 1998-99 are not probative to the issue of inducement.[2]  For example, review of ParkerVision's prototype "evaluation board" or offers made to license the technology are irrelevant to whether Qualcomm had knowledge of later issued patents.  Accordingly, the Court should at least preclude ParkerVision from relying on evidence from the 1998-99 interactions other than those communications showing that Qualcomm may have had knowledge of ParkerVision's patent applications.

   And even one piece of that evidence should be excluded under 403.  In the summary judgment order, the Court cited an e-mail in which Qualcomm stated it would be "very difficult for anybody to ever use" ParkerVision's methods "without stepping on one or more of their claims."  (Dkt.  320, at 3).  For inducement, ParkerVision must establish that Qualcomm had knowledge of the patent-in-suit, believed that it was infringing that patent, and believed that it was valid.  A general statement about a group of applications—only one of which resulted in a patent-in-suit—is not particularly probative of whether Qualcomm knew about later issued patents or believed it infringed unidentified claims that had not issued or, in most instances, had not even been drafted yet.  On the other hand, admission of the statement has a high risk of confusing and unfairly prejudicing the jury against Qualcomm.  Specifically, the jury may rely on that statement to conclude that Qualcomm actually infringes one of the limited number of claims at issue—without requiring actual proof of such infringement.  That is not proper and the statement should be excluded.  Fed. R. Evid. 403.

---

[2] In order to preserve the issue for any appeal that might be necessary, Qualcomm reasserts its argument that, as a matter of law, knowledge of pending patent applications are not relevant to the knowledge requirement for induced infringement or willfulness.  *See McRee v. Goldman*, 11-CV-00991-LHK, 2012 WL 3745190, at *3 (N.D. Cal. Aug. 28, 2012); *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-6638 RS, 2012 WL 1831543, at *2 (N.D. Cal. May 18, 2012) ("knowledge of the [asserted patent's] existence was quite impossible before it issued, and there is no indication . . . how [the accused infringer] may have later discovered it.").

**b.      The 1998-99 Discussions Are Irrelevant to Issues of Damages.**

Qualcomm has challenged ParkerVision's entire damages theory, which is based on the

events of 1999, in its *Daubert* motion.  Regardless of the outcome of that motion, the evidence of

the negotiations in 1998-99 is not relevant or probative of ParkerVision's damages case and

should be excluded under Rule 402 and 403.  *See, e.g., United States v. Frazier*, 387 F.3d 1244,

1263 (11th Cir. 2004) ("Because of the powerful and potentially misleading effect of expert

evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still

be excluded by applying Rule 403 . . ."); *see also Oracle Am., Inc. v. Google Inc.*, 798 F. Supp.

2d 1111, 1120 (N.D. Cal. 2011) (excluding damages expert's opinion applying Nash Bargaining

Solution under Rule 403).  Without repeating its prior arguments, the negotiations of the terms of

a deal in 1998-1999 are too different to provide any insight into what the parties would have

agreed to in a hypothetical negotiation in 2006.

ParkerVision's evidence of the negotiations in 1998-99 is irrelevant because of the

changes in technology in general, and in Qualcomm's products in particular, that occurred during

those seven years.  *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1318 (Fed. Cir. 2011)

(stating that any damages analysis must account for the facts as they exist *at the relevant time*.).[3]

By 2000, Qualcomm had developed its own successful, non-infringing direct downconversion

solution, which it then went on to sell for the next six years before developing the products that

---

[3] ParkerVision, in opposition to Qualcomm's *Daubert* motion, remarkably asserts that the financial modeling that Qualcomm did in 1998-99 is not subject to the Federal Circuit's comparability requirement because (1) those discussions are not licenses, and (2) Benoit is using them to measure the benefit to Qualcomm—not determine the royalty rate.  First, the Federal Circuit has said that actual license agreements must be comparable.  (Dkt. 305, ParkerVision's Daubert Opposition, at 7-8.)  To think that offers that were rejected and financial modeling that was never even shared with ParkerVision—both far more dubious than an actual license agreement—is subject to a lesser standard is not plausible.  Second, the argument that Benoit is using the discussions to measure the benefit to Qualcomm does not alter the requirement that he consider the market differences that might impact that value.  (*Id.*)  ParkerVision cannot dispute that the alleged benefit to Qualcomm is relevant to a reasonable royalty calculation.  Indeed, that benefit is a critical piece of the *Georgia-Pacific* factors.  The Federal Circuit has stated that an analysis of *all Georgia-Pacific* factors must account for the facts as they existed *"at the relevant time." Uniloc,* 632 F.3d at 1318.  A simple example makes this point:  the value of a patent on a basic television set would have been much different in 1925 than in 2013.

ParkerVision now accuses of infringement.  (Dkt. 270 at 7-8, Exs. 16-18.)  Thus, any potential benefit that Qualcomm was allegedly calculating from a technology and know-how transfer in 1998-99 was completely different from the benefit that Qualcomm would have realized from the hypothetical patent license in 2006.  In 1999, Qualcomm was considering the benefits of moving from a superheterodyne to a direct downconversion architecture.  But by the time of the hypothetical negotiation, Qualcomm had already made that move with products that ParkerVision does not accuse of infringing the patent-in-suit.  Any evidence regarding the alleged benefit to Qualcomm in 1999 is irrelevant and not probative.

        c.      **The 1998-99 Discussions Are Irrelevant to Issues of Invalidity.**

ParkerVision might also attempt to rely on statements made by Qualcomm business people about the supposedly "revolutionary" nature of the technology to support its validity case. But those statements are not relevant and should be excluded.  At the time most of Qualcomm's statements were made, the patents-in-suit had not issued and most had not even been applied for. Qualcomm's statements about ParkerVision's technology were made on the basis of what ParkerVision was saying it had.  And, in 1998 and 1999, ParkerVision was claiming to have far more than what was later claimed in the patents and allowed by the patent office.  For example, ParkerVision claimed to have a "universal downconverter," which was something far more revolutionary than a direct downconverter.[4]  Thus, any comments by Qualcomm about the "revolutionary" nature of as-yet unknown and different technology are irrelevant to the validity of specific claims from the patents-in-suit.  Indeed, immediately after the March 1999 meeting, Qualcomm sent a memo indicating that it believed that ParkerVision's technology was not novel. (Ex. 2, PV00184880-86.)

---

[4] ParkerVision's use of the term "universal frequency downconverter" then is different than the manner in which the Court construed it.  At the time, ParkerVision used that term to mean one downconverter that could universally convert every frequency—something that has never been done and a claim that ParkerVision has abandoned.

### 2. The Prejudice Resulting from Introduction of Evidence Regarding 1998 and 1999 Substantially Outweighs Any Probative Value.

Any probative value of the 1998-99 discussions is extremely limited and is substantially outweighed by the prejudice resulting from their admission. *See* Fed. R. Evid. 403. The central issue in this case is whether the Qualcomm products practice each and every element of the asserted claims and what are the damages appropriate for any infringement of those specific claims. Faced with complex technology and difficult legal concepts, in considering issues of liability, admission of the 1998-99 negotiations creates the risk that the jury will confuse ParkerVision's generic statements from the 1998-99 era about an energy sampling prototype with the specific scope of the asserted claims, which this Court has carefully construed. Similarly, when considering damages, the jury may also confuse Qualcomm's willingness to make an offer for a risk-free option to an exclusive, worldwide technology agreement with what it would have agreed to in a hypothetical negotiation in 2006 for a non-exclusive, U.S.-only bare patent license. The risk of unfair prejudice and jury confusion far outweigh the probative value of this evidence.

In addition, evidence regarding the internal modeling or financial offers may be confusing and unfairly prejudicial. The numbers used in the 1998-99 financial modeling are large because they are estimates of Qualcomm's worldwide sales—numbers far greater than the U.S. sales figures that are the basis for damages in this case. Showing jurors the vast revenue that Qualcomm recognizes worldwide could improperly inflate any damages award in this case. *See, e.g.*, *CSX Trans., Inc. v. Gilkison*, No. 5:05CV202, 2012 WL 6082983, at *8 (N.D. W.Va. Dec. 6, 2012) (granting in part and deferring in part motion in limine to preclude evidence under Rule 403 where party argued "that inclusion of such fees in documentation submitted to the jury

could easily confuse and mislead the jury, which would then prejudice [party] by opening the door to an inflated damages award").

### C. The Court Should At Least Exclude the Financial Modeling and Offers.

Even if the Court does not exclude all communications from the 1998-99 period, the Court should exclude the financial information or licensing offers.  For the reasons stated above, *internal* modeling to evaluate a potential transaction or actual offers for a completely different agreement at a very different time technology is irrelevant and prejudicial.

### III. MOTION IN LIMINE #2:  THE COURT SHOULD PRECLUDE PARKERVISION FROM OFFERING EVIDENCE OF ITS ALLEGED NEW CHIP OR FROM ASSERTING THAT IT COMPETES WITH QUALCOMM.

On July 2, 2013, ParkerVision issued a press release announcing the availability of a receiver chip that supposedly incorporates D2D, the PVD2510R.  Three weeks later, on July 23, 2013, ParkerVision notified Qualcomm that it was making schematics and a sample of the new chip available for inspection.  (Ex. 3, Email from Buratti to Canning.)  In response to inquiries by Qualcomm, ParkerVision stated that it intended to have its fact witnesses testify that it was now selling a receiver chip that incorporates D2D.  The Court should not allow ParkerVision to offer any such evidence or assert that it competes with Qualcomm.

### A. ParkerVision Failed to Provide Timely Discovery Regarding the New Chip.

The Court should exclude evidence of the new chip because ParkerVision improperly delayed providing discovery.  Fed. R. Civ. P. 26, 37.  It is undisputed that Qualcomm served several requests seeking production of documents relating to any ParkerVision chip that practices D2D.  (Ex. 4, Letter Canning to Budwin, at 1-3.)  But ParkerVision failed to produce such documents until July 23, 2013.

ParkerVision may assert that its production was timely because the new chip was just announced in July 2013.  But a party does not design and manufacture a new integrated circuit in

a matter of weeks.  A real chip, that has real commercial potential, takes planning and development a year or two or more in advance.  ParkerVision must have had designs of this product and product plans long before the close of discovery in November 2012, and certainly before July 23, 2013.  ParkerVision's witnesses have admitted as much.  At his deposition on November 13, 2012, Jeffrey Leach, ParkerVision's Director of Sales, testified:

> Q.      What product plans is this referring to?
>
> A.      Well, it could be twofold. We do have plans to do our own receiver on the CDMA product line, so that would be one. And then the LGIT, let me read this again. If LGIT finds a baseband partner, that is something that we would do with them as well. But I would really move this towards, primarily, doing a CDMA receiver, that would be replacement for that FCI part.
>
> Q.      And do your plans relating to a receiver on the CDMA product line -- strike that.  Are your plans relating to a receiver on the CDMA product line described in any documents?
>
> A.      I believe they are.

(Ex. 5, Leach Dep. Tr. at 225:13-226:9.)  ParkerVision has also now released a datasheet regarding the PVD2510R.  That datasheet contains ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████.  (Ex. 6, PVD2510R datasheet, at 10.)  Finally, on July 31, 2013, ParkerVision produced additional documents to Qualcomm regarding the PVD2510R.  (Ex. 7, Letter from Mendez to Canning.)  One of the documents contains data from ████████████████████████████████.  (Ex. 8, PV00469409-31 at '14.)  ParkerVision's failure to produce these documents earlier is inexcusable and does not appear to be the result of inadvertence.  ParkerVision apparently made the deliberate decision not to produce such documents until it was too late for Qualcomm to meaningfully use them.

Finally, Qualcomm has suffered prejudice as a result of ParkerVision's failure to produce these documents.  Information regarding this chip would have been important to rebut certain assertions made by ParkerVision.  For example, ParkerVision asserts that its technology results in power and area savings.  ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████  ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

Unfortunately, the belated production deprives Qualcomm of the opportunity to make such showing, or rebut ParkerVision's claims of commercial viability, through expert testimony or otherwise.  Accordingly, the only appropriate remedy is to preclude ParkerVision from relying on this chip at trial.  Fed. R. Civ. P. 26, 37.

### B.     The Court Should Exclude Any Evidence or Claim that ParkerVision Competes with Qualcomm.

Qualcomm also believes that ParkerVision will assert that it competes with Qualcomm. First, the Court should preclude such testimony because of ParkerVision's belated production of documents regarding the new chip—its only receiver chip.  Second, based on the initial review of documents regarding the PVD2510R, Qualcomm does not believe that it is a viable commercial product.  █████████████████████████████████  (Ex. 6, PVD2510R datasheet, at 1.)  ███████████████████████████████████████

██████████████████████████████████  As ParkerVision's own experts have admitted, ████████████████████████████████  In addition, when asked for 10 samples of the new chip for testing, ParkerVision refused.  Instead,

ParkerVision provided 1 sample and indicated that it was not manufacturing the chip and could not supply more. (Ex. 9, Letter from Canning to Budwin, at 4.) Any company that cannot even supply 10 samples of a supposedly available chip cannot claim to be a commercially viable competitor in an industry where volumes are in the many, sometimes hundreds, millions of units a year. Evidence that ParkerVision is allegedly competing with Qualcomm is also prejudicial. Allowing ParkerVision to claim that it is a competitor of Qualcomm—when it is not—will require Qualcomm to disprove that fact. This will be an unnecessary sideshow that distracts from the relevant issues in the case.

IV. **MOTION IN LIMINE #3: THE COURT SHOULD NOT ALLOW ANY IRRELEVANT AND CUMULATIVE OPINION TESTIMONY FROM PARKERVISION'S EXECUTIVES.**

ParkerVision apparently intends to submit opinion testimony from its executives, Mr. Parker and Mr. Sorrells, on the ultimate issues in this case. For example, Sorrells states that he intends to testify on "his understanding of Qualcomm's infringement of the asserted claims of the patents-in-suit of which Mr. Sorrells is a named inventor." (Ex. 10, Disclosure of Testimony By Jeffrey Parker and David Sorrells, at 14.) Sorrells states that his opinions will be based on, among other things, ParkerVision's January 30, 2012, March 2, 2012 and August 27, 2012 infringement contentions, "his attendance of the depositions of various Qualcomm witnesses," and "his review and analysis of the UBM TechInsights report discussed in ParkerVision's infringement contentions." (*Id.* at 14-29.) Similarly, Parker intends to testify "regarding the amount of damages that Qualcomm should be required to pay ParkerVision as a result of this case, including but not limited to, the amount of a royalty that ParkerVision would have reasonably accepted in any actual or contemplated negotiation between ParkerVision and Qualcomm." (*Id.* at 2.) Mr. Parker's anticipated testimony is allegedly based on, among other things, "his attendance of the depositions of various Qualcomm witnesses," and "his experience

12.

in business, including licensing negotiations over the past thirty years." (*Id.* at 2-11.)  The Court should exclude any such opinions.

Neither Parker nor Sorrells are qualified to offer expert opinions on liability or damages. Also, the testimony from Parker and Sorrells is cumulative of the testimony that ParkerVision's retained experts will provide.  Dr. Prucnal is ParkerVision's retained expert witness on issues of alleged infringement and validity.  ParkerVision also plans to present the alleged expert testimony of Paul Benoit on issues of damages.  The Court should not allow ParkerVision to submit two purported experts on the exact same subject matter at trial.

Indeed, Parker and Sorrell's proposed testimony offers nothing more to any issues in this case.  Whether Parker and Sorrells subjectively believed that Qualcomm's products infringe the patents, that the patents are valid, or how much Qualcomm should have to pay has no bearing on those ultimate issues at trial.  Parker and Sorrells' state of mind is simply irrelevant.

Not only does Parker and Sorrells' testimony have no probative value, it is unfairly prejudicial.  As the Supreme Court noted in *Daubert,* "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993).  If Parker and Sorrells are qualified as "experts," the jury may accord their fact testimony greater weight.  The Court should not risk such prejudice and should preclude this irrelevant and unfairly prejudicial testimony.

## V.    MOTION IN LIMINE #4:  PARKERVISION SHOULD NOT BE ALLOWED TO ASSERT THAT ANY PRODUCTS OTHER THAN THOSE ADDRESSED IN DR. PRUCNAL'S REPORT INFRINGE THE PATENTS-IN-SUIT.

As both parties have agreed, when a case involves complex technology, expert testimony is required to establish infringement.  *Proveris Scientific Corp. v. Innovasystems, Inc.*, 536 F.3d

1256, 1267 (Fed. Cir. 2008); *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1329 n.7 (Fed. Cir. 2007). Here, one of the issues relevant to damages is whether any non-infringing alternatives existed at the time of the hypothetical negotiation. Qualcomm's expert, Dr. Fox, analyzed not just the accused products, but also the schematics for other products on sale in 2006 and opined that none of Qualcomm's products infringe the patents-in-suit. (Ex. 11, Fox Rep. at 254-55 (opining that Qualcomm's RTR6000 design does not infringe the patents-in-suit)). Dr. Prucnal fails to offer any opinion of infringement on certain of the products discussed by Dr. Fox. Accordingly, the Court should preclude ParkerVision from disputing that such products are non-infringing alternatives. *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 713 (Fed. Cir. 2005) (upholding Southern District of Florida decision excluding expert testimony "insofar as his testimony exceeded the material disclosed in his expert report"); *Omega Patents, LLC v. Fortin Auto Radio, Inc.*, No. 6:05-cv-1113-Orl-22DAB, 2007 WL 4373110, at *3 (M.D. Fla. Feb. 5, 2007) (precluding party from soliciting on direct examination "any opinion in which [the expert] includes an analysis or basis that was not disclosed in one of [his] reports").

The Court should preclude ParkerVision from asserting that any products sold by Qualcomm before 2006 infringe for a second reason—because ParkerVision has essentially admitted it. In calculating a reasonably royalty, ParkerVision was required to present evidence of what royalty the parties would have agreed to in a hypothetical negotiation *at the time of the first infringement. See Wang Labs v. Toshiba Corp.,* 993 F.2d 858, 869-70 (Fed. Cir. 1993). By agreeing that the proper date for the hypothetical negotiation is 2006, ParkerVision has admitted that the first infringement occurred on that date. (Ex. 12, Benoit Rep. ¶ 137.) ParkerVision cannot, having agreed that the first infringement occurred in 2006, argue at trial that Qualcomm's earlier products utilizing direct downconversion infringe.

In response, ParkerVision may assert that Qualcomm bears the burden of proof on non-

infringing alternatives and it was not required to submit expert testimony on this issue. First,

ParkerVision is simply wrong. Qualcomm does not bear the burden on this issue. The patentee

bears the burden of proving a reasonable royalty. *Lucent Technologies, Inc. v. Gateway, Inc.,*

580 F.3d 1301, 1324 (Fed. Cir. 2009). The availability of non-infringing alternatives is one of

the *Georgia-Pacific* factors that must be considered. *See i4i Ltd. Partnership v. Microsoft Corp.,*

598 F.3d 831, 854 (Fed. Cir. 2010). Second, regardless of who bears the initial burden,

Qualcomm submitted expert testimony that certain non-accused products did not infringe. (*See,*

*e.g.,* Ex. 11 Fox Rep. at 254-58.) If ParkerVision wanted to argue otherwise, it was obligated to

present expert testimony. ParkerVision never offered an expert opinion on the RTR6000 or

other designs addressed by Dr. Fox and it should not be allowed to offer any evidence or opinion

at trial contesting Qualcomm's well-established position that such products are non-infringing

alternatives.[5]

## VI. MOTION IN LIMINE #5: PARKERVISION'S ONLY EVIDENCE REGARDING ITS DOCTRINE OF EQUIVALENTS ARGUMENT IS INSUFFICIENT.

Under the doctrine of equivalents, "a product or process that does not literally infringe

upon the express terms of a patent claim may nonetheless be found to infringe if there is

'equivalence' between the elements of the accused product or process and the claimed elements

of the patented invention." *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.,* 523 F.3d 1304,

1312 (Fed. Cir. 2008) (citing *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S.

17, 21 (1997)). In applying the doctrine of equivalents, courts apply the "function-way-result"

test—the allegedly infringing device and claimed limitation must perform "substantially the

---

[5] ParkerVision may assert that it could not prove infringement by other products because Qualcomm refused to produce documents regarding non-accused products. But as is clear from Dr. Fox's report, Qualcomm produced technical documentation that shows how the RTR6000 (among others) works. (*See* Ex. 11, Fox Rep. at 254). If ParkerVision wanted to claim that they infringed the patents, it had the design documents necessary to do so.

same function in substantially the same way to obtain substantially the same result." *Warner-Jenkinson,* 520 U.S. at 38.  Any testimony that does so, including from an expert, must be particularized and link each of the function, means, and result of the claimed invention to those of the accused product on a limitation-by-limitation basis.  *Lear Siegler, Inc. v. Sealy Mattress Co. of Michigan, Inc.,* 873 F.2d 1422, 1425-26 (Fed. Cir. 1989); *Hewlett-Packard Co. v. Mustek Sys.,* 340 F.3d 1314, 1323 (Fed. Cir. 2003); *Texas Instruments Inc. v. Cypress Semiconductor Corp.,* 90 F.3d 1558, 1567 (Fed. Cir. 1996) ("Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.").

Here, ParkerVision's only evidence on the doctrine of equivalents is the boilerplate testimony of its technical expert that does nothing more than restate the doctrine of equivalents standard.  Such evidence is incompetent opinion testimony.  *See* Fed. R. Evid. 702(c) (stating that expert opinion testimony must apply reliable methods "to the facts of the case.").  Dr. Prucnal never provides the particularized testimony linking the function, means or result of the claimed invention with that of the accused product.  Indeed, in a case involving limitations in over 80 claims asserted against more than 70 different products, Dr. Prucnal's doctrine of equivalents analysis spans a mere 11 lines in his expert report.[6]  In total, his analysis states:

> In my opinion, the claim elements of the Patents-in-Suit are met literally as explained in the Appendices; however, to the extent they are not met literally, they are met under the doctrine of equivalents, as discussed above in section 2.2.2.  Each of the Accused Products contains elements or performs steps corresponding to each and every requirement of the claim that is equivalent to, if not literally met by, the Accused Products.  A person having ordinary skill in the art would have considered any differences between the invention taught in the Patents-in-Suit and the Accused Products to be insubstantial or would have found

---

[6] Dr. Prucnal's claim charts contain only one mention of the doctrine of equivalents.  In the claim chart for claim 13 of the '845 patent, Dr. Prucnal provides additional boilerplate equivalence language for one of several claim elements.  (Ex. 13, Prucnal Rep. Appendix C at 140-41.) This is insufficient for three reasons.  First, it lacks any particularized testimony or linking argument for each of the function, way and result elements of the applicable test.  Second, Dr. Prucnal provides no equivalents analysis for the remainder of the limitations in claim 13.  Third, Dr. Prucnal's two sentences purport to establish the equivalence between the claimed invention and more than 70 accused products.

that the structure or action:  (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim.  A person having ordinary skill in the art at the time of Qualcomm's infringement would have known of these differences in structure.

(Ex. 13, Prucnal Rep. at 118.)[7]  This is exactly the type of boilerplate language that cannot support a claim for infringement under the doctrine of equivalents and that should not be allowed before a jury.  *Hewlett Packard Co.,* 340 F.3d at 1322-23; *Smith and Nephew, Inc. v. Arthrex, Inc.,* No. 2:07-cv-335-TJW-CE, 2010 WL 457142, *8-9 (E.D. Tex. Feb. 5, 2010) (precluding expert from testifying as to the equivalence of certain elements because "he provided only boilerplate assertions of infringement under the doctrine of equivalents" and the opinion "lacks any 'particularized testimony and linking argument' for the doctrine of equivalents analysis.").

The fact that Dr. Prucnal offered opinions regarding literal infringement does not make his boilerplate testimony on the doctrine of equivalents any more sufficient.  As the Federal Circuit has said, "[t]he evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement."  *Lear Siegler, Inc.,* 873, F.2d at 1425; *Smith and Nephew, Inc.,* 2010 WL 457142 at *9.  Thus, ParkerVision's only evidence regarding the doctrine of equivalents is incompetent and irrelevant and should not be allowed before the jury.

## VII.   MOTION IN LIMINE #6:  PARKERVISION PRESENTED NO DAMAGES REPORT ON CONTRIBUTORY INFRINGEMENT AND CANNOT PRESENT EVIDENCE ON IT AT TRIAL.

In support of its damages case, ParkerVision submitted the expert report of Paul Benoit.  Benoit never provided an opinion on damages arising from Qualcomm's alleged contributory infringement.  Accordingly, as Qualcomm argued in its *Daubert* motion, Benoit should not be allowed to offer any opinion on contributory infringement damages at trial, or any other testimony or evidence on damages arising from alleged contributory infringement.

---

[7] Section 2.2.2 of Prucnal's report contains no analysis.  Instead, it merely recites the requirements for infringement under the doctrine of equivalents.

As it did in response to Qualcomm's *Daubert* challenge, ParkerVision may assert that Benoit offered an opinion on contributory infringement because: (1) he offered an opinion "indirect infringement," of which contributory infringement is one type; and (2) *"in most cases,"* the measure of damages for inducement and contributory infringement are the same. (*See* Dkt. 305 at 20.) ParkerVision is incorrect.

First, in his report, Benoit expressly limited his indirect infringement analysis to inducement. (Ex. 12, Benoit Rep. ¶ 31.) Benoit never mentions "contributory infringement" in his report, meaning any later reference to "indirect infringement" damages is limited to inducement damages. Indeed, Benoit confirmed that his report was so limited during his deposition. When asked whether his report included an opinion on damages for contributory infringement, Benoit replied "[w]ell, so answering your other question and . . . -- obviously, it states in the report that this is a calculation for induced infringement, right." (Ex. 14, Benoit Dep. Tr. 223:18-225:7.) Benoit has not provided any report on contributory infringement, and he cannot offer any such opinion at trial. *Air Turbine Tech.*, 410 F.3d at 713 (excluding portions of expert testimony that exceeded material disclosed in expert report); *Omega Patents*, 2007 WL 4373110, at *3 (precluding party from soliciting new opinions based on any analysis or basis that was not disclosed in expert's reports).

Second, ParkerVision is incorrect that the damages for induced infringement and contributory infringement are the same. Unlike damages for induced infringement, which might reach extraterritorial sales, damages for contributory infringement are expressly limited to sales that occur in the United States. 35 U.S.C. § 271(c). Thus, the royalty base applicable to the different indirect infringement theories may be different and a separate analysis of both is required.

## VIII.   MOTION IN LIMINE #7:  THE COURT SHOULD PRECLUDE PARKERVISION FROM ARGUING THE PRESUMPTION OF VALIDITY.

The Federal Circuit has held that "[t]he presumption of validity is one of law, not fact, and does not constitute 'evidence' to be weighed against the challenger's evidence." *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004).  Instead, "the presumption of validity and heightened burden of proving invalidity are . . . different expressions of the same thing—a single hurdle to be cleared." *Id.* at 1259; *see also Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1323 (Fed. Cir. 2004) ("[T]he grant of a patent does not create a presumption of validity beyond the requirement that the party seeking to invalidate a patent must prove invalidity by clear and convincing evidence.").

The Court should preclude ParkerVision from arguing the presumption of validity to the jury and otherwise implying that it is separate and distinct from the clear and convincing evidence standard.[8]  Qualcomm's concern about ParkerVision's intent is not speculation. ParkerVision's expert treated the two separately in his expert report.  (*See* Ex. 15, Prucnal Rebuttal Rep. at 7-8 (discussing "presumption of validity" in one section of report and "burden of proving invalidity" in another).  If ParkerVision is allowed to argue the presumption of validity to the jury separate from the clear and convincing evidence standard, the jury may well believe that the presumption of validity and the heightened burden of proof are distinct requirements—both of which must be overcome to find a patent invalid.  That is not the law and the Court should not risk the jury applying an even higher burden of proof to Qualcomm's

---

[8] Qualcomm is aware of and acknowledges this Court's decision in the *Graphic Packaging* case on a similar motion in limine, but respectfully submits that the Court must, at a minimum, preclude ParkerVision from implying that the presumption is separate and distinct from the burden of proof.  The most clear way of doing so is to preclude reference to the presumption of validity at all.  But at a minimum, ParkerVision should not be allowed, as its expert has done in his report, to treat the presumption as a separate issue from the burden of proof.  That is not the law.

invalidity defenses than already exists—especially not for a presumption that is not even evidence.

## IX.    MOTION IN LIMINE #8:  THE COURT SHOULD PRECLUDE EVIDENCE BASED ON "PARKERVISION EMPIRICAL FORMULAS" INSTEAD OF THE ACTUAL FACTS.

Three of ParkerVision's asserted claims, claims 19-21 of the '342 Patent, require a capacitor to discharge a specific range of the total charge stored when a corresponding switch is open.  ('342 Patent:  52:58 – 54:2 (claim 19: 6%-50%; claim 20: 10%-25%; claim 21: 15%-30%).)  The only "evidence" that Dr. Prucnal cites as allegedly supporting these discharge ranges is simulations submitted in his opening report.  (Ex. 13, Prucnal Rep. Appendix D at 186-89.)  These simulations, however, are misleading and should be excluded under Federal Rules of Evidence 401, 402, and 403 because they are irrelevant and can only confuse the jury. *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 583-84 (N.D. Fla. 2009) (excluding one opinion that was "not based on sufficiently reliable methodology and would create a risk of unfair prejudice" and another set of "utterly baseless and unreliable" opinions "based on the prejudice likely to result to [other side] were the court to admit [expert's] inconsistent and factually unsupported opinions").

The capacitor discharge in all of these simulations is dependent upon the value of the load resistance (R1), which Prucnal selected according to "ParkerVision empirical formulas" and not based on actual parameter values available from Qualcomm's schematics.  (Ex. 16, Prucnal Dep. Tr. at 101:9-13.)  Indeed, Prucnal set the RC time constant in his simulations to be the same for all accused products, effectively fixing the discharge percentage to have a value that falls within the ranges of all three of these claims.  (*Id.* at 102:6-8.)  Dr. Prucnal only performed one simulation – two days before his deposition – in which he used a load resistance value purportedly taken from Qualcomm's schematics.  (*Id.* at 95:12-22; 119:4-12; 123:17-23.)  That

new simulation showed a discharge percentage of ███████ (Ex. 17, Prucnal Dep. Ex. 7 at 5-6) – which is outside all three claimed ranges.  While Dr. Prucnal's new simulation contain additional errors, it demonstrates the misleading nature of his original simulations.  Accordingly, any evidence of these simulations—based on "empirical formulas—instead of facts, are inadmissible.  Fed. R. Evid. 702, 703.

X.     **MOTION IN LIMINE #9:  THE COURT SHOULD NOT ALLOW DR. PRUCNAL TO TESTIFY BASED ON DOCUMENTS FROM** ████████████████████ ████████ ██████████████.

In his expert report, Dr. Prucnal repeats, as if they are fact, various statements made about ParkerVision's alleged invention and how it differs from the prior art.  The document on which he relies for a large number of these alleged facts is a document generated by ████████ ████████████████████████████████████████████████ ████.  (Ex. 18, Parker Dep. Tr. Vol. 1 at 81:24-84:3.)

When asked about the document, Dr. Prucnal admitted that the document had not been peer reviewed, admitted that he did not know who ████████ was, and admitted that he did not even know who drafted the document.  (Ex. 16, Prucnal Dep. Tr. at 43:3-52:4.)  The document contains no citations to any reference (other than a press release announcing an award for ParkerVision).  A reliable and scientific opinion on complex technology may not be based on alleged facts found in a document created by an unknown consultant retained by trial counsel.  *See* Fed. R. Evid. 703; *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1372-74 (Fed. Cir. 2013) (district court abused its discretion by admitting an expert testimony that was based on data from an unreliable source and made multiple speculative leaps in its methodology).  Accordingly, Dr. Prucnal should not be allowed to testify to, or provide opinions based on, alleged facts contained in the ████████ document.

21.

XI.   **MOTION IN LIMINE #10:  THE COURT SHOULD EXCLUDE ALL REFERENCES TO DEFICIENT METHODOLOGIES AND OPINIONS BY PARKERVISION'S DAMAGES EXPERT.**

On July 8, 2013, Qualcomm submitted a *Daubert* Motion to preclude the testimony of ParkerVision's damages expert, Paul Benoit.  (Dkt. 288, Qualcomm's Daubert Motion.) Qualcomm seeks to exclude Benoit's testimony on the grounds that: (1) Benoit's opinion was not the result of a reliable methodology applied to reliable data; and (2) Benoit is not qualified to provide economic and mathematical opinions about market demand and Nash Bargaining.  (*Id.*) Qualcomm maintains that Benoit's flawed methodologies should render his testimony inadmissible under *Daubert*.  Fed. R. Evid. 702 and 703.

The evidence that Benoit plans to present is so inherently flawed that it should also be excluded for its prejudicial nature.  Fed. R. Evid. 403.  The Eleventh Circuit has made clear that even expert testimony that passes Rule 702 muster can be excluded under Rule 403:

> Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403.  . . .  Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse.

*Frazier*, 387 F.3d at 1266 (citation omitted); *accord Cook ex. Rel. Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1111 (11th Cir. 2005).  *See also Daubert,* 509 U.S. at 595 (because "[e]xpert evidence can be both powerful and quite misleading," a judge "exercises more control over experts than over lay witnesses" under 403).

Because any probative value is substantially outweighed by the risk of unfair prejudice and the potential to confuse or mislead the jury, the Court should exclude the following aspects of Benoit's expert testimony under Rule 403:

- Any reference to revenues and profits from standalone baseband products.

- Any argument or assertion that the asserted claims account for any specific percentage of Qualcomm's profits, including 81%.

- Any argument or assertion regarding a proposed 50/50 profit split, including reliance on the Nash Bargaining Solution.

- Any argument or assertion that the Symbol-ParkerVision agreement may be used to calculate damages.

- Any argument or assertion regarding Benoit's "intangible assets" testimony.

Qualcomm has explained why Benoit's opinions on each of these issues are flawed and irrelevant in its *Daubert* motion. (Dkt. 288.) The Court should not allow such inherently unreliable and flawed evidence before a jury—especially from a purported expert. *See Cook ex rel. Tessier*, 402 F.3d at 1111; *Frazier*, 387 F.3d at 1266 *see also See Uniloc,* 632 F.3d at 1320 ("the disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue.").

## XII. MOTION IN LIMINE #11: THE COURT SHOULD NOT ALLOW PARKERVISION TO ACCUSE QUALCOMM OF IMPROPERLY RETAINING THE "EVALUATION BOARD" OR OTHERWISE BREACHING THE PARTIES' NDA.

ParkerVision has no claim that Qualcomm violated the Non Disclosure Agreement ("NDA") between the parties. Indeed, ParkerVision could not because the evidence does not support such a claim. Similarly, ParkerVision has presented no evidence that Qualcomm used the evaluation board and presentations provided by ParkerVision in 1998-99 for any improper reason. Accordingly, the fact that Qualcomm retained the board or presentations has no evidentiary value to ParkerVision's infringement claims.

Moreover, any discussion of these issues will only serve to unfairly prejudice Qualcomm and confuse and distract the jury from the real issues in the case. Qualcomm will undoubtedly be prejudiced if the jury wrongly infers that Qualcomm did something impermissible with

ParkerVision's evaluation board and presentations—despite no evidence that it did—or somehow violated the NDA between the parties.  Thus, in the unlikely event that the Court finds Qualcomm's retention of the ParkerVision evaluation board and presentations to be relevant to Plaintiffs' infringement claims, this Court should exercise its inherent discretion under Rule 403 to exclude any evidence of these issues.  Fed. R. Evid. 403.

ParkerVision's only explanation for why this evidence is necessary is that the retention of the evaluation board is necessary to establish the "chain of custody."  But Qualcomm will not dispute "chain of custody."  Qualcomm's witness will admit that the board sat in a file drawer, disregarded and unused, from 1999 until after this case was filed and Qualcomm located it while searching for responsive documents and materials in discovery.  As a result, any evidence of these issues is irrelevant and thus inadmissible.  Fed. R. Evid. 401 and 402.

## XIII.   MOTION IN LIMINE #12:  THE COURT SHOULD PRECLUDE PARKERVISION FROM COMMENTING ON QUALCOMM'S TOTAL REVENUE OR PROFITS.

Qualcomm sells many products and generates revenue from many sources that have nothing to do with the patents-in-suit.  ParkerVision should not be allowed to disclose Qualcomm's overall profits and revenues to the jury.[9]  Such evidence has no probative value to ParkerVision's damages.  As the Federal Circuit has acknowledged "the disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue."  *See Uniloc,* 632 F.3d at 1320.  Here, the revenue is not just the total revenue from accused products—it is total revenue and profits from all sources.  If the Federal Circuit

---

[9] During the meet and confer, ParkerVision stated that it would agree to this motion if Qualcomm agreed to make it mutual.  Qualcomm could not agree.  ParkerVision and Qualcomm are in different positions in this lawsuit and the prejudice that Qualcomm might suffer from admission of its total revenue or profits does not apply to ParkerVision.

found it improper to admit evidence of the total revenue from alleging infringing sales, admission of total revenue and profit from all sources is certainly improper.

## XIV. CONCLUSION.

The issues of liability and damages and the technology in this case are already complicated.  The jury should only hear facts necessary to decide the complex technical and damages issues—without more.  Accordingly, for the reasons stated above, the Court should grant Qualcomm's motions in limine.

August 29, 2013

Respectfully submitted,

COOLEY LLP

By:     /s/ Timothy S. Teter
        Stephen C. Neal (admitted pro hac vice)
        nealsc@cooley.com
        Timothy S. Teter (admitted pro hac vice)
        teterts@cooley.com
        Five Palo Alto Square
        3000 El Camino Real
        Palo Alto, CA 94306-2155
        Telephone:  (650) 843-5182
        Facsimile:  (650) 849-7400

-and-

CRAVATH, SWAINE & MOORE LLP
        Keith R. Hummel (admitted pro hac vice)
        khummel@cravath.com
        David Greenwald (admitted pro hac vice)
        dgreenwald@cravath.com
        Worldwide Plaza
        825 Eighth Avenue
        New York, New York 10019
        Telephone:  (212) 474-1000
        Facsimile:  (212) 474-3700

-and-

BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.
John A. DeVault, III
Florida Bar No. 103979
jad@bedellfirm.com
Courtney K. Grimm
Florida Bar No. 953740
cgrimm@bedellfirm.com
The Bedell Building
101 East Adams Street
Jacksonville, Florida 32202
Telephone:  (904) 353-0211
Facsimile:  (904) 353-9307

*Counsel for Defendant Qualcomm Incorporated*

## <u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY that on this 29th day of August, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record for all publicly filed documents.  All documents covered by the concurrently filed motion to seal have been served via email on ParkerVision's counsel.

        /s/ Timothy S. Teter
        Timothy S. Teter (admitted pro hac vice)
        teterts@cooley.com
        Five Palo Alto Square
        3000 El Camino Real
        Palo Alto, CA 94306-2155
        Telephone:  (650) 843-5182
        Facsimile:  (650) 849-7400

        *Attorney for Defendant Qualcomm Incorporated*