IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PARKERVISION, INC.,

       Plaintiff,

vs.

QUALCOMM INCORPORATED,

       Defendant.

Civil Action No. 3:11-cv-719-J-37TEM

# PARKERVISION, INC.'S 50(A) MOTION
# FOR JUDGMENT AS A MATTER OF LAW ON INFRINGEMENT

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1

II. ARGUMENT......................................................................................................1

    A. The Standard for Judgment as a Matter Of Law........................................1

    B. As a Matter of Law, Qualcomm Infringes the Patents-in-Suit. ..................1

        1. The '551 Patent...............................................................................2

        2. The '518 Patent...............................................................................5

        3. The '371 Patent...............................................................................8

        4. The '342 Patent...............................................................................9

        5. Qualcomm's Noninfringement Arguments Are Unpersuasive......10

III. CONCLUSION.................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advanced Bodycare Solutions, LLC v. Thione Intern., Inc.*,
  615 F.3d 1352 (11th Cir. 2010) ..................................................................................1

*Amgen Inc. v. F. Hoffmann-La Roche, Ltd.*,
  580 F.3d 1340 (Fed. Cir. 2009)..................................................................................10

*Carella v. Starlight Archery*,
  804 F.2d 135 (Fed. Cir. 1986)....................................................................................10

*Catalina Mktg. Int'l v. Coolsavings.com, Inc.*,
  289 F.3d 801 (Fed. Cir. 2002)......................................................................................2

*DSU Medical Corp. v. JMS Co. Ltd.*,
  471 F.3d 1293 (Fed. Cir. 2006) (en banc)....................................................................2

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)....................................................................................1

*Exxon Research & Eng'g Co. v. United States*,
  265 F.3d 1371 (Fed. Cir. 2001)..................................................................................14

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  131 S. Ct. 2060 (2011)............................................................................................2, 4

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
  607 F.3d 776 (Fed. Cir. 2010)....................................................................................13

*Honeywell Int'l, Inc. v. United States*,
  609 F.3d 1292 (Fed. Cir. 2010)..................................................................................13

*In re Gleave*,
  560 F.3d 1331 (Fed. Cir. 2009)..................................................................................11

*Innovention Toys, LLC v. MGA Entm't, Inc.*,
  637 F.3d 1314 (Fed. Cir. 2011)....................................................................................2

*Penny v. Williams & Fudge, Inc.*,
  840 F. Supp. 2d 1314 (M.D. Fla. 2012).......................................................................1

*Rolls-Royce, PLC v. United Techs. Corp.*,
  603 F.3d 1325 (Fed. Cir. 2010)..................................................................................12

*Schumer v. Lab. Computer Sys., Inc.*,
  308 F.3d 1304 (Fed. Cir. 2002)..................................................................................10

*Seattle Box Co. v. Indus. Crating & Packing, Inc.*,
   731 F.2d 818 (Fed. Cir. 1984)..................................................................................................14

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
   511 F.3d 1186 (Fed. Cir. 2008)................................................................................................11

*Wellman, Inc. v. Eastman Chem. Co.*,
   642 F.3d 1355 (Fed. Cir. 2011)................................................................................................13

*Wyers v. Master Lock Co.*,
   616 F.3d 1231 (Fed. Cir. 2010)................................................................................................12

**STATUTES**

35 U.S.C. § 102...........................................................................................................................10, 11

35 U.S.C. § 103...........................................................................................................................13, 12

35 U.S.C. § 271(b)..............................................................................................................................2

35 U.S.C. § 282.................................................................................................................................10

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure 50(..................................................................................1, 2, 6, 7, 9

U.S. Patent No. 6,061,551............................................................................................................passim

U.S. Patent No. 6,266,518.......................................................................................................6, 7, 14

U.S. Patent No. 6,370,371..........................................................................................................7, 8, 9

U.S. Patent No. 7,496,342.................................................................................................................9

## I. INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 50(a), ParkerVision, Inc. respectfully moves that the Court grant judgment as a matter of law (JMOL) against Qualcomm, and in ParkerVision's favor, on the following issues.

## II. ARGUMENT

### A. The Standard for Judgment as a Matter Of Law.

The Federal Circuit reviews the grant or denial of JMOL under the law of the regional circuit. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1317 (Fed. Cir. 2009). JMOL is appropriate with regard to a claim upon which the non-movant bears the burden of proof where the Court concludes that no legally sufficient evidentiary basis allows a reasonable jury to find for the nonmoving party on an issue. *Penny v. Williams & Fudge, Inc.*, 840 F. Supp. 2d 1314, 1318 (M.D. Fla. 2012). In evaluating JMOL, the Court draws all reasonable inferences in the light most favorable to the nonmoving party. *Id.*; *see also Advanced Bodycare Solutions, LLC v. Thione Intern., Inc.*, 615 F.3d 1352, 1360 (11th Cir. 2010).

### B. As a Matter of Law, Qualcomm Infringes the Patents-in-Suit.

ParkerVision seeks judgment under Rule 50(a) that ParkerVision has established as a matter of law that Qualcomm directly infringes the Patents-in-Suit, as well as induces others to directly infringe the Patents-in-Suit.

Qualcomm does so by making, using, selling, offering to sell or importing into the United States products built according to the following Qualcomm architectures: Astra, Bahama, Eagleray, GZIF3, GZIF4, Halley, Hercules, Iceman, Iris, Libra/Gemini, Magellan, Marimba, Merlin, Napoleon, Odyssey, Ramsis, Solo, Volans, Voltron, and Ywing ("the Accused Products"). *See* Joint Final Pretrial Statement at 20 (Dkt. 365). As the parties stipulated, "[f]or

purposes of infringement or noninfringement, the design, circuitry, and operation of the accused products created from a particular die is the same. A showing that an accused product created from a particular die infringes an asserted claim is also a showing that the other accused products created from that die also infringe the same claim." Joint Final Pretrial Statement at 20 (Dkt. 365). As set forth below, ParkerVision has established as matter of law that Qualcomm's actions result in direct and induced infringement of the '551, '518, '371, and '342 patents.

An infringement analysis involves construing the claims and comparing the properly construed claims to the infringing device to determine whether the claim limitations are present. *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1318-19 (Fed. Cir. 2011). "To prove infringement, the patentee must show that the accused device [or method] meets each claim limitation either literally or under the doctrine of equivalents." *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002).

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To prove inducement, a patentee must establish proof (1) of direct infringement, (2) that the alleged inducer had knowledge of or was willfully blind to the patents-in-suit and (3) that the accused infringer knew or was willfully blind that its actions would induce actual, direct infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011); *DSU Medical Corp. v. JMS Co. Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc).

1. **The '551 Patent**

   a) **Direct Infringement of the '551 Patent**

ParkerVision seeks judgment under Rule 50(a) that ParkerVision has established as a matter of law that Qualcomm directly infringes claims 23, 25, 161, 193, and 202 of U.S. Patent

No. 6,061,551 (the "'551 patent") by making, using, selling, offering to sell or importing the Accused Products into the United States.

ParkerVision has established as a matter of law that the Accused Products meet each claim of the '551 patent. Specifically, Dr. Prucnal, ParkerVision's technical expert witness, testified that every limitation is literally present or practiced by the Accused Products in the United States. Trial Tr., Oct. 9, 2013 (PM) at 24:1-24:10; Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4; *see e.g.*, PX385. Dr. Prucnal and Mr. Sorrells provided substantial testimony and documentary evidence that Qualcomm's Accused Products literally infringe claims 23, 25, 161, 193, and 202 of the '551 patent. Trial Tr., Oct. 7, 2013 at 193:16-281:17; Trial Tr., Oct. 8, 2013 at 9:12-93:10; Trial Tr., Oct. 8, 2013 at 238:15-256:24; Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4; Trial Tr., Oct. 10, 2013 (AM). Furthermore, Dr. Prucnal and Mr. Sorrells provided testimony establishing that each limitation is met by the Accused Products. Trial Tr., Oct. 7, 2013 at 193:16-281:17; Trial Tr., Oct. 8, 2013 at 9:12-93:10. Trial Tr., Oct. 9, 2013 (PM) at 24:1-24:10; Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4; Trial Tr., Oct. 10, 2013 (AM). In this way, Dr. Prucnal and Mr. Sorrells established—and ParkerVision proved as a matter of law— that claims 23, 25, 161, 193, and 202 of the '551 patent are met by Qualcomm's Accused Products. No reasonable jury could find otherwise.

### b) Induced Infringement of the '551 Patent

In order to prevail on a claim of induced infringement, the patentee must establish (1) direct infringement, (2) that the alleged inducer had knowledge of or was willfully blind to the patents-in-suit and (3) that the accused infringer knew or was willfully blind that its actions would induce actual, direct infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011). As explained below, the evidence presented at trial demonstrated that

Qualcomm not only knew of ParkerVision's patents, but also knew that its Accused Products were designed for use in an infringing manner and would be used in an infringing manner.

ParkerVision presented substantial evidence at trial establishing that Qualcomm's customers use and/or import the Accused Products containing energy transfer sampling circuitry in the United States, which constitutes direct infringement of the Patents-in-Suit. *See infra* II.B.1.A.; *See, e.g.*, JX29; JX38; PX738.

The evidence at trial also supports a finding that Qualcomm knew of or was willfully blind to each of ParkerVision's patents. That is, the jury was presented with substantial evidence that Qualcomm not only knew about and possessed copies of ParkerVision's patents, but also met with ParkerVision to discuss its patented technology, viewed demonstrations of that patented technology, and retained demonstration prototypes that embodied the ParkerVision down-conversion technology protected by the patents-in-suit. Trial Tr., Oct. 7, 2013 at 193:16-281:17; Trial Tr., Oct. 8, 2013 at 9:12-93:10; Trial Tr., Oct. 8, 2013 (Wheatley); Trial Tr., Oct. 8, 2013 (Kantak Direct); Trial Tr., Oct. 9, 2013 (AM) at 3:23-60:21. *see, e.g.*, PX86; PX177; PX37; PX45; PX64; PX307; PX091; PX092; PX097; PX114; PX115; PX154; PX164; JX28; PX133; PX162; PX699; PX322; PX92; PX307; PX833; PX834; PX177; PX322; PX97.

The testimony of Dr. Prucnal and Mr. Sorrells established that this evidence applies equally to all the Patents-in-Suit. Trial Tr., Oct. 7, 2013 at 193:16-281:17; Trial Tr., Oct. 8, 2013 at 9:12-93:10; Trial Tr., Oct. 8, 2013 at 238:15-256:24; Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4. And the evidence at trial established conclusively—and Qualcomm did not dispute—that Qualcomm had pre-suit knowledge of the '551 Patent. Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4; *see, e.g.*, JX28.

Dr. Prucnal also presented evidence that Qualcomm encouraged or instructed others to perform the acts that infringed and that Qualcomm knew or was willfully blinded that its actions would cause infringement. Trial Tr., Oct. 9, 2013 at 24:1-126:4. Dr. Prucnal and Mr. Sorrells testified that are no non-infringing uses for the receiver functionality in the Accused Products. Trial Tr., Oct. 8, 2013 at 11:11-11:13; Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4. Through Dr. Prucnal's testimony, ParkerVision established that every accused product infringes, as does each act of using each accused product to receive any cellular communication. Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4; Trial Tr., Oct. 10, 2013 (AM). Qualcomm purposefully designs the Accused Products to comply with cellular communication standards in the United State. Trial Tr., Oct. 9, 2013 at 24:1-126:4; Trial Tr., Oct. 10, 2013 (AM); *see e.g.*, JX29; JX38. Dr. Prucnal testified regarding User Guides and Device Specifications of the Accused Products that he studied— guides and specifications all printed in English. Trial Tr., Oct. 9, 2013 at 24:1-126:4; Trial Tr., Oct. 10, 2013 (AM). In that way, Qualcomm advertises, promotes, and gives instructions for infringing use of the Accused Products in the United States. Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4; Trial Tr., Oct. 10, 2013 (AM); s*ee, e.g.*, PX738. And ParkerVision presented substantial evidence that Qualcomm sells its products overseas knowing full well that a large number of its customers import the Accused Products into the United States. Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4; Trial Tr., Oct. 10, 2013 (AM); *see e.g.*, JX38; PX4027.

Thus, ParkerVision is entitled to judgment as a matter of law that Qualcomm induced others to directly infringe the '551 patent.

### 2. The '518 Patent

#### a) Direct Infringement of the '518 Patent

ParkerVision seeks judgment as a matter of law under Rule 50 that ParkerVision has established as a matter of law that Qualcomm directly infringes claims 1, 27, 82, 90, and 91 of

**PARKERVISION, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

5

the U.S. Patent No. 6,266,518 (the "'518 patent"). Specifically, ParkerVision adduced evidence through the testimony of Dr. Prucnal that every limitation is literally present or practiced by the Accused Products. Trial Tr., Oct. 9, 2013 (PM) at 24:1-24:10; Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4 *see e.g.*, PX385. Dr. Prucnal testified as to the basis of his conclusion, which included reviewing the schematics and design documents of each of the Accused Circuit Designs. Trial Tr., Oct. 9, 2013 (PM) at 69:15-69:24; Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4. Dr. Prucnal further established through his expert testimony that that each of the Accused Circuit Designs infringe in substantially the same way.

Dr. Prucnal conducted a detailed analysis of each element of claim 82 the '518 patent and presented the jury with substantial evidence that all of the elements are found in Qualcomm's accused products. Tr. Tran., Oct. 9, 2013 at 208:11-263:11. Dr. Prucnal explained to the jury that "all of the elements [of claim 82] have been found in the accused products, and, therefore, they infringe on this claim." *Id.* at 263:9-263:11. In conducting his infringement analysis, Dr. Prucnal testified in detail about the Qualcomm's Magellan architecture. Tr. Tran., Oct. 9, 2013 at 208:11-263:11.

Dr. Prucnal also explained that the infringement analysis he performed on the Magellan architecture "applies to each of the accused products." Tr. Tran., Oct. 9, 2013 at 212:14- 212:16. While infringement must be proven for each product, proof of infringement through a representative product is permitted. The Federal Circuit has clearly spoken that "there is nothing improper about an expert testifying in detail about a particular device and then stating that the same analysis applies to other allegedly infringing devices that operate similarly, without discussing each type of device in detail." *TiVo, Inc. v. Echostar Communs. Corp.*, 516 F.3d 1290, 1308 (Fed. Cir. 2008). In *TiVo*, the plaintiff's expert's witness addressed a claim limitation in

detail with respect to only one model of the defendant's accused devices. *Id.* He then testified that "the same analysis applies to other allegedly infringing devices that operate similarly," but without providing detailed testimony on each device. *Id.* Instead, the plaintiff's expert testified that other accused devices "operate similarly" but did not discuss "each type of device detail." *Id.* The Federal Circuit rejected defendant's argument that this method of proof was improper. *Id.* at 1310.

Dr. Prucnal and Mr. Sorrells provided substantial testimony and documentary evidence that Qualcomm's Accused Products literally infringe claims 1, 27, 82, 90, and 91 of the '518 patent. Furthermore, Dr. Prucnal and Mr. Sorrells provided testimony establishing that each limitation is met by the Accused Products. Trial Tr., Oct. 7, 2013 at 193:16-281:17; Trial Tr., Oct. 8, 2013 at 9:12-93:10; Trial Tr., Oct. 8, 2013 at 238:15-256:24; Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4; Trial Tr., Oct. 10, 2013 (AM).

In this way, Dr. Prucnal and Mr. Sorrells established—and ParkerVision established as a matter of law—that claims 1, 27, 82, 90, and 91 of the '518 patent are met by Qualcomm's Accused Products. No reasonable jury could find otherwise.

### b) Induced Infringement of the '518 Patent

ParkerVision is entitled to judgment as a matter of law that Qualcomm induced others to directly infringe the '518 Patent. The evidence and testimony presented by Dr. Prucnal and Mr. Sorrells regarding Qualcomm's induced infringement of the '551 Patent applies equally to the '518 Patent. Trial Tr., Oct. 7, 2013 at 193:16-281:17; Trial Tr., Oct. 8, 2013 at 9:12-93:10; Trial Tr., Oct. 8, 2013 at 238:15-256:24; Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4; Trial Tr., Oct. 10, 2013 (AM); *see* Joint Final Pretrial Statement at 20 (Dkt. 365). Specifically, Dr. Prucnal and Mr. Sorrells testified that (1) Qualcomm was aware of, or at the very least, willfully blind to the '518 Patent, (2) third parties have directly infringed '518 Patent, (3) the Qualcomm encouraged or

**PARKERVISION, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

7

McKool 935690v2

instructed others to perform the acts that infringed and that Qualcomm knew or was willfully blinded that its actions would cause infringement. Trial Tr., Oct. 7, 2013 at 193:16-281:17; Trial Tr., Oct. 8, 2013 at 9:12-93:10; Trial Tr., Oct. 8, 2013 (Wheatley); Trial Tr., Oct. 8, 2013 (Kantak Direct); Trial Tr., Oct. 9, 2013 (AM) at 3:23-60:21. *see, e.g.*, PX86; PX177; PX37; PX45; PX64; PX307; PX091; PX092; PX097; PX114; PX115; PX154; PX164; JX28; PX133; PX162; PX699; PX322; PX92; PX307; PX833; PX834; PX177; PX322; PX97.

### 3. The '371 Patent

#### a) Direct Infringement of the '371 Patent

ParkerVision seeks judgment as a matter of law under Rule 50 that ParkerVision has established as a matter of law that Qualcomm directly infringes claim 2 of the U.S. Patent No. 6,370,371 (the "'371 patent"). Dr. Prucnal and Mr. Sorrells testified that the accused products literally infringe claim 2 of the '371 patent. Trial Tr., Oct. 7, 2013 at 193:16-281:17; Trial Tr., Oct. 8, 2013 at 9:12-93:10; Trial Tr., Oct. 8, 2013 at 238:15-256:24; Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4; Trial Tr., Oct. 10, 2013 (AM); *see also* PX847. Additionally, Dr. Prucnal and Mr. Sorrells provided testimony establishing that every limitation is met by the Accused Products. Trial Tr., Oct. 7, 2013 at 193:16-281:17; Trial Tr., Oct. 8, 2013 at 9:12-93:10; Trial Tr., Oct. 8, 2013 at 238:15-256:24; Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4; Trial Tr., Oct. 10, 2013 (AM). In this way, Dr. Prucnal and Mr. Sorrells established—and ParkerVision proved as a matter of law—that claim 2 of the '371 patent is met by Qualcomm's Accused Products. No reasonable jury could find otherwise.

#### b) Induced Infringement of the '371 Patent

ParkerVision is entitled to judgment as a matter of law that Qualcomm induced others to directly infringe the '371 Patent.

The evidence and testimony presented by Dr. Prucnal and Mr. Sorrells regarding Qualcomm's induced infringement of the '551 Patent applies equally to the '371 Patent. *See infra* II.B.1.C. ParkerVision presented evidence through the testimony of Dr. Prucnal, Mr. Sorrells, Mr. Kantak, and Mr. Wheatley that (1) Qualcomm was aware of, or at the very least, willfully blind to the '371 Patent, (2) third parties have directly infringed '371 Patent, (3) the Qualcomm encouraged or instructed others to perform the acts that infringed and that Qualcomm knew or was willfully blinded that its actions would cause infringement. Trial Tr., Oct. 7, 2013 at 193:16-281:17; Trial Tr., Oct. 8, 2013 at 9:12-93:10; Trial Tr., Oct. 8, 2013 (Wheatley); Trial Tr., Oct. 8, 2013 (Kantak Direct); Trial Tr., Oct. 9, 2013 (AM) at 3:23-60:21. *see, e.g.*, PX86; PX177; PX37; PX45; PX64; PX307; PX091; PX092; PX097; PX114; PX115; PX154; PX164; JX28; PX133; PX162; PX699; PX322; PX92; PX307; PX833; PX834; PX177.

### 4. The '342 Patent

#### a) Direct Infringement of the '342 Patent

ParkerVision seeks judgment as a matter of law under Rule 50 that ParkerVision has established as a matter of law that Qualcomm directly infringes claim 18 of the U.S. Patent No. 7,496,342 (the "'342 patent"). With respect to claim 18 of the '342 patent, Dr. Prucnal and Mr. Sorrells provided testimony establishing that every limitation is met by the Accused Products. Trial Tr., Oct. 7, 2013 at 193:16-281:17; Trial Tr., Oct. 8, 2013 at 9:12-93:10; Trial Tr., Oct. 8, 2013 at 238:15-256:24; Trial Tr., Oct. 9, 2013 (PM) at 24:1-126:4; Trial Tr., Oct. 10, 2013 (AM); *see, e.g.*, PX847; JX62. In this way, Dr. Prucnal and Mr. Sorrells established—and ParkerVision established as a matter of law—that claim 18 of the '342 patent is met by Qualcomm's Accused Products. No reasonable jury could find otherwise.

### b) Induced Infringement of the '342 Patent

The evidence and testimony presented by Dr. Prucnal and Mr. Sorrells regarding Qualcomm's induced infringement of the '551 Patent applies equally to the '342 Patent. *See infra* II.B.1.C. ParkerVision presented evidence through the testimony of Dr. Prucnal, Mr. Sorrells, Mr. Kantak, and Mr. Wheatley that (1) Qualcomm was aware of, or at the very least, willfully blind to the '371 Patent, (2) third parties have directly infringed '371 Patent, (3) the Qualcomm encouraged or instructed others to perform the acts that infringed and that Qualcomm knew or was willfully blinded that its actions would cause infringement. Trial Tr., Oct. 7, 2013 at 193:16-281:17; Trial Tr., Oct. 8, 2013 at 9:12-93:10; Trial Tr., Oct. 8, 2013 (Wheatley); Trial Tr., Oct. 8, 2013 (Kantak Direct); Trial Tr., Oct. 9, 2013 (AM) at 3:23-60:21. *see, e.g.*, PX86; PX177; PX37; PX45; PX64; PX307; PX091; PX092; PX097; PX114; PX115; PX154; PX164; JX28; PX133; PX162; PX699; PX322; PX92; PX307; PX833; PX834; PX177.

### 5. Qualcomm's Noninfringement Arguments Fails as a Matter of Law

Qualcomm first argues that the Accused Products do not transfer energy from the carrier signal as required by the asserted claims. Both Dr. Prucnal and Mr. Sorrells testified that energy is transferred from the carrier signal to storage elements in the Accused Products as required by the asserted claims. *See* Sorrells Testimony at Tr. Tran. Oct. 7, 2013; Prucnal Testimony at Tr. Tran. Oct. 9, 2013 (PM) and Oct. 10, 2013. Each of the Accused Products incorporates transistors with local oscillator ("LO") signals controlling their respective gates to turn them on and off. These transistors operate as switches: they are on—or conduct current—during the aperture periods when the LO signal is high. The switches are off—or do not conduct current—during the non-aperture period when the LO signal is low. These on and off cycles occur each carrier signal period. When a switch is closed, current flows from the carrier signal to a storage element at the output of the switch. As the switches have different LO signals, the switches open

**PARKERVISION, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW**
McKool 935690v2

and close during different parts of the carrier signal's period. Thus, energy is transferred from the carrier signal through different switches to different storage elements during each carrier signal period. Mr. Sorrells and Dr. Prucnal both explained this operation of the Accused Products during the trial testimony. *See* Sorrells Testimony at Tr. Tran. Oct. 7, 2013; Prucnal Testimony at Tr. Tran. Oct. 9, 2013 (PM) and Oct. 10, 2013. Thus, the Accused Products practice this claim element.

Qualcomm also argues that the lower frequency or baseband signal is not generated from the energy transferred from the carrier signal. Both Dr. Prucnal and Mr. Sorrells testified that the energy transferred from the carrier signal to the storage element is then discharged from the storage element to generate the lower frequency or baseband signal in the Accused Products as required by the asserted claims. *See* Sorrells Testimony at Tr. Tran. Oct. 7, 2013; Prucnal Testimony at Tr. Tran. Oct. 9, 2013 (PM) and Oct. 10, 2013. Each of the Accused Products includes both a storage element at the output of each switch and a low impedance load in the form of a transimpedance amplifier ("TIA"). When a switch turns on and conducts current, energy from the carrier signal is transferred to the storage element after the switch. When that switch then turns off and current is not flowing, the energy that is stored in the storage element is then discharged through the low impedance TIA load. The system has both a charge and discharge cycle because of the two distinct operating phases of each switch: (1) when the switch is closed, energy from the carrier signal is transferred to the storage element after the switch and (2) when the switch is open, energy that was transferred from the carrier signal into the switch is now discharged out through the low impedance TIA load.

Whether a capacitor is labeled a TX Jammer is irrelevant to whether it issues to generate the low frequency signal for two reasons: (a) a circuit can have multiple purposes and (b) the

claims are still met by the Accused Products. Dr. Prucnal cited to DX605 which shows that 0.11 uA of current flows out of the mixer and 0.11 uA of current flows out of the "TX Filter." DX605. Dr. Prucnal also testified that each baseband path (*i.e.*, BBI_+, BBI_-, BBQ_+, and BBQ_-) contains a separate switch which is turning on and off during each carrier signal period. Dr. Prucnal testified that these two pieces of evidence coupled together show that energy is transferred through the switch into the storage element when the switch is on, and then energy is discharged out of the storage element to generate the lower frequency or baseband signal when the switch is off. Mr. Sorrells and Dr. Prucnal both explained this operation of the Accused Products during the trial testimony. *See* Sorrells Testimony at Tr. Tran. Oct. 7, 2013; Prucnal Testimony at Tr. Tran. Oct. 9, 2013 (PM) and Oct. 10, 2013. Thus, the Accused Products meet this claim element.

The Accused Products also transfer energy into the storage devices in amounts that are distinguishable from noise. Dr. Prucnal testified that noise is a statistically random signal and does not include jammers or interferes. *See* Prucnal Testimony at Tr. Tran. Oct. 9, 2013 (PM) and Oct. 10, 2013. Unlike noise, jammers or interferers are not random and consist of electromagnetic signals other than the carrier signal of interest. The claims require transferring energy in amounts that are distinguishable from noise, not transferring energy in amounts that are distinguishable from interferers and jammers. *Id.* One of ordinary skill in the art would understand the difference between noise, interferes, and jammers. Dr. Prucnal testified that the Accused Products transfer energy in amounts that are distinguishable from noise because the Accused Products function and because they are able to drive the low impedance TIA loads. Prucnal Testimony at Tr. Tran. Oct. 9, 2013 (PM) and Oct. 10, 2013.

Qualcomm argues that the Accused Products are not samplers. The Court defined sampling as "reducing a continuous time signal to a discrete time signal." As Dr. Prucnal testified, the operation of the switches in each of the Accused Products reduces the continuous time carrier signal to discrete time lower frequency signals. Prucnal Testimony at Tr. Tran. Oct. 9, 2013 (PM) and Oct. 10, 2013 (AM). When each switch is on, it allows the carrier signal to flow from the switch's input to its output. When each switch is off, no signal flows through the switch. Therefore, each switch only allows current to flow, or a signal to pass, during discrete times of each carrier signal period. Like a light switch being turned on and off repeatedly, the switch is sometimes on and sometimes off. Further, CDMA and other cellular communication standards modulate multiple signals onto a single carrier signal by combining both an In-phase ("I") and a Quadrature ("Q") signal onto the carrier signal. To get both pieces of information off of the carrier signal, both the I and Q downconverters in the Accused Products have separate outputs that do not recombine with each other after downconversion. Additionally, because the Accused Products operate in a double balanced configuration, two separate outputs are created by each downconverter, namely the plus ("P") output and the minus or negative ("M" or "N") output. Thus, as Dr. Prucnal testified, each Accused Product actually creates four separate outputs during the downconversion process from the four discrete time signals created by the switching operation. *See* Prucnal Testimony at Tr. Tran. Oct. 9, 2013 (PM) and Oct. 10, 2013. Because each of these four outputs are never combined together after the sampling occurs, there is not a single output path that contains 100% of the carrier signal's energy. Thus, the output signals are not continuous time signals. Qualcomm argues that physics dictates that there is no reducing a continuous time signal to a discrete time signal, but this is contrary to both engineering principles of discrete time systems and, more importantly, the Court's claim

constructions. Thus, the Accused Products are samplers as defined by the Court. Dr. Prucnal explained this operation of the Accused Products during the trial testimony. Prucnal Testimony at Tr. Tran. Oct. 9, 2013 (PM) and Oct. 10, 2013 (AM).

## III. CONCLUSION

For all the reasons discussed above, ParkerVision is entitled to Judgment as a Matter of Law.

October 11, 2013

Respectfully submitted,

| **McKOOL SMITH, P.C.** | **SMITH HULSEY & BUSEY** |
|---|---|
| /s/ *Douglas A. Cawley* | /s/ *James A. Bolling* |
| Douglas A. Cawley, Lead Attorney | Stephen D. Busey |
| Texas State Bar No. 04035500 | James A. Bolling |
| E-mail: dcawley@mckoolsmith.com | Florida Bar Number 117790 |
| Richard A. Kamprath | Florida Bar Number 901253 |
| Texas State Bar No.: 24078767 | 225 Water Street, Suite 1800 |
| rkamprath@mckoolsmith.com | Jacksonville, Florida 32202 |
| Ivan Wang | (904) 359-7700 |
| Texas State Bar No.: 24042679 | (904) 359-7708 (facsimile) |
| E-mail: iwang@mckoolsmith.com | jbolling@smithhulsey.com |
| McKool Smith P.C. | |
| 300 Crescent Court, Suite 1500 | **ATTORNEYS FOR PLAINTIFF** |
| Dallas, Texas 75201 | **PARKERVISION, INC.** |
| Telephone: (214) 978-4000 | |
| Telecopier: (214) 978-4044 | |

T. Gordon White
Texas State Bar No. 21333000
gwhite@mckoolsmith.com
Kevin L. Burgess
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
Josh W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
Leah Buratti
Texas State Bar No. 24064897
lburatti@mckoolsmith.com
Mario A. Apreotesi
Texas State Bar No. 24080772
mapreotesi@mckoolsmith.com
Kevin Kneupper
Texas State Bar No. 24050885
kkneupper@mckoolsmith.com
James Quigley
Texas State Bar No. 24075810
jquigley@mckoolsmith.com
McKool Smith P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on October 11, 2013.

>   */s/ Richard A. Kamprath*
>   Richard A. Kamprath