**UNITED STATES DISTRICT COURT**
**THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ParkerVision, Inc.,

        *Plaintiff*,

    v.

Qualcomm Incorporated,

        *Defendant*.

Case No. 3:11-cv-719-J-37-TEM

**QUALCOMM'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF INVALIDITY AND NO WILLFULNESS**

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II. LEGAL STANDARD ................................................................................... 2

    A. Judgment as a Matter of Law ............................................................ 2

    B. Anticipation ....................................................................................... 2

    C. Willfulness ........................................................................................ 3

III. THE COURT SHOULD GRANT JMOL OF ANTICIPATION. ........................ 3

    A. ParkerVision Again Attempts to Reargue Claim Construction. ................. 3

        1. The Court Correctly Rejected ParkerVision's New "Generating" Requires "Discharge" Argument. ............................... 3

        2. Unable to Argue that "Generating" Requires "Discharge," ParkerVision Abandoned Its Rebuttal Testimony. ........................ 4

    B. ParkerVision's New "High Impedance" Argument Is Another Variation of the "Discharge" Argument and Conflicts with the Markman and SJ Rulings. ............................................................... 5

    C. ParkerVision's Cross-Examination Arguments Are Irrelevant. ................. 7

        1. Attorney Argument Cannot Substitute for Scientific Evidence. ................................................................................. 7

        2. The 1998-99 Discussions Are Irrelevant to Anticipation. ............... 7

        3. A List of Irrelevant "References" Such as Weather Articles and Press Releases Cannot Defeat JMOL. ........................ 7

        4. Dr. Razavi's Article and Textbook Highlights Dr. Razavi's Expertise. .................................................................... 8

        5. Dr. Razavi's Definition of the Level of Skill is Unchallenged and Correct ................................................................. 8

    D. Weisskopf (DX534) Anticipates Every Asserted '551, '518, and '371 Claim. .................................................................... 9

        1. ParkerVision's Reference to Weisskopf's Withdrawn and Irrelevant Report Cannot Defeat JMOL. ...................................... 10

        2. ParkerVision's Argument About "Hold Capacitors" and Discharge Cannot Defeat JMOL. ............................................... 10

        3. ParkerVision's Argument About "Noise" Is Irrelevant. ................. 11

    E. Estabrook (DX369) Anticipates '551 claims 23, 161, 202, '518 claims 27, 82, 90, 91, and '371 claim 2. ............................................... 11

        1. Dr. Razavi Presented Clear, Convincing, and Unchallenged Evidence. ................................................................. 11

        2. ParkerVision's "Goose Gander" Argument is Irrelevant .............. 11

i

# TABLE OF CONTENTS
(Continued)

                                                                    **PAGE**

      F.    DeMaw (DX549) Anticipates Claims '342 Claim 18 .................................. 12

            1.    Dr. Razavi Presented Clear, Convincing, and Unchallenged Evidence ..................................................................................... 12

            2.    Erroneous Attorney Questions are Not Evidence and Cannot Defeat JMOL. ............................................................................... 12

IV.    THE COURT SHOULD GRANT JMOL OF NO WILLFULNESS ..................... 14

V.    CONCLUSION ............................................................................................... 14

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Alexsam, Inc. v. Idt Corp.*,
　Nos. 2012-1063, -1064, 2013 U.S. App. LEXIS 10009 (Fed. Cir. May 20, 2013) ................... 7

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
　682 F.3d 1003 (Fed. Cir. 2012) ................................................................................. 3, 14

*Billups-Rothenberg, Inc. v. Associated Regional & Univ. Pathologists, Inc.*,
　642 F.3d 1031 (Fed. Cir. 2011) ................................................................................. 2, 10

*ClearValue, Inc. v. Pearl River Polymers, Inc.*,
　668 F.3d 1340 (Fed. Cir. 2012) .............................................................................. 2, 8, 10

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
　567 F.3d 1314 (Fed. Cir. 2009) ........................................................................................ 14

*Internet Machines LLC v. Alienware Corp.*,
　2013 WL 4056282 (E.D. Tex. 2013) ................................................................................ 14

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
　481 F.3d 1371 (Fed. Cir. 2007) .......................................................................................... 2

*Proveris Sci. Corp. v. Innovasystems, Inc.*,
　536 F.3d 1256 (Fed. Cir. 2008) .......................................................................................... 7

*In re Seagate*,
　497 F.3d 1360 (Fed. Cir. 2007) (en banc) ..................................................................... 3, 14

**STATUTES**

35 U.S.C.
　§ 102 .................................................................................................................................. 2

**OTHER AUTHORITIES**

Court's *Markman* ........................................................................................................... 1

Fed. R. Civ. P.
　§ 50(a) .......................................................................................................................... 1, 2
　§ 50(a)(1) ......................................................................................................................... 2

Qualcomm respectfully submits this memorandum in support of its motion for judgment as a matter of law of invalidity under Fed. R. Civ. P. 50(a).

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Unable to raise any genuine issue of fact regarding the 11 remaining patent claims, ParkerVision pins its hopes on another belated attempt to reargue the Court's *Markman* decision. In particular, ParkerVision showed Dr. Razavi a series of passages from the patent *specifications* regarding "low impedance" and "discharge" and asked Dr. Razavi whether such passages should be taken into account. The asserted claims, as the Court held, do not require those features, and thus, ParkerVision's argument is a red herring with great potential to confuse the jury. The Court should reject ParkerVision's attempt to reargue *Markman* and enter judgment as a matter of law that all asserted claims are invalid as anticipated.

First, Weisskopf (DX534) anticipates every one of the asserted '551, '518, and '371 claims. Dr. Razavi provided an exhaustive, claim-by-claim, and limitation-by-limitation analysis of each of the asserted '551, '518, and '371 claims, indicating where each claim element is found in the references. ParkerVision did not present evidence that *any* claim element is not met. Instead, just as it did at summary judgment, ParkerVision attempted to reargue the Court's construction of the "generating" limitations.

Second, Estabrook (DX369) anticipates '551 claims 23, 161, 202, '518 claims 27, 82, 90, 91, and '371 claim 2. Once again, Dr. Razavi provided an exhaustive, claim-by-claim analysis. ParkerVision did not, and cannot, dispute that Estabrook discloses every claim element. Rather, ParkerVision offered nothing more than a cross that Dr. Razavi should follow the "goose gander" rule, even though he did not opine on Qualcomm's distinctly different products, which are fundamentally different than Estabrook or any of the patents-in-suit.

1

Third, DeMaw (DX549) anticipates '342 Claim 18. Once again, Dr. Razavi provided an exhaustive, limitation-by-limitation analysis in supporting his opinion. ParkerVision did not offer any proof to the contrary, electing to rely solely on attorney questions that misstated the facts and the evidence. Counsel does not testify and cross-examination questions are not evidence – only the witnesses' testimony is evidence. In this case, as Dr. Razavi explained on redirect, counsel's questions were simply misguided and DeMaw does, in fact, anticipate.

Accordingly, Qualcomm moves for judgment as a matter of law that all asserted claims are anticipated.

## II. LEGAL STANDARD

### A. Judgment as a Matter of Law

Under Rule 50(a), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1).

### B. Anticipation

"A determination that a patent is invalid as anticipated under 35 U.S.C. § 102 require that a prior art reference discloses every limitation of the claimed invention, either explicitly or inherently." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1381 (Fed. Cir. 2007). An anticipating reference still invalidates even if it "teaches away" or "disparages" the claimed invention. *E.g., Billups-Rothenberg, Inc. v. Associated Regional & Univ. Pathologists, Inc.*, 642 F.3d 1031, 1038-39 (Fed. Cir. 2011); *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1344 (Fed. Cir. 2012).

### C. Willfulness

"[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). The threshold objective test presents a legal question for the Court. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012).

## III. THE COURT SHOULD GRANT JMOL OF ANTICIPATION.

### A. ParkerVision Again Attempts to Reargue Claim Construction.

#### 1. The Court Correctly Rejected ParkerVision's New "Generating" Requires "Discharge" Argument.

ParkerVision attempts to reargue claim construction, contending that the "generating" limitations in each of the claims requires "discharge" from the storage device. The Court has already rejected ParkerVision's argument in its summary judgment ruling (D.I.318).

Moving for summary judgment of no anticipation, ParkerVision argued that the "generating" limitation required "discharge" from the storage device/capacitors, and pointed to some of the preferred embodiments in the patents. The Court noted that ParkerVision had not raised any such argument at *Markman*, and informed ParkerVision that it could no longer seek to reargue claim construction:

> [T]he Court adopted ParkerVision's claim construction position that the generating limitation was clear enough that it need not be defined. ParkerVision cannot adopt a new position now. If, as ParkerVision now contends, the generating limitation is restricted to those devices and

3

> methods that discharge the transferred energy from a storage device, then it is not apparent to the Court why ParkerVision opposed the majority of Qualcomm's proposed claim constructions, which attempted to limited the scope of the claims to methods and devices that used storage devices such as capacitors.

(D.I. 318 at 5.)

Moreover, the Court noted that ParkerVision's new claim construction position–that "generating" required "discharge"—was incorrect. As Dr. Razavi stated in his expert report, the baseband could be measured simply by the voltage across the capacitor. The Court stated:

> Likewise, the generating limitation does not describe the generating step as being performed by the discharge of a storage device. ***To be sure, the scope of the generating limitation embraces ParkerVision's discharge theory, which is described in detail in the patent specifications, but the language used is not so restricted.*** It claims simply "generating ... from the transferred energy." It is apparent from the briefing and patent specifications that a signal could be "generated" from a charge held in a capacitor either directly, by discharging the capacitor, or indirectly, by *measuring the voltage across the capacitor*. The language used in the generating claim limitation does not distinguish between these two techniques. One skilled in the art who reads the disclosure may conclude that the various elements of the claims combine to restrict the claimed invention to the former rather than the latter. ParkerVision's motion, however, rests on the satisfaction of the generating limitation. The parties' experts disagree if the generating limitation is disclosed in the prior art, which is all that is required to deny the motion.

(D.I. 318 at 6 (emphasis added).)

### 2. Unable to Argue that "Generating" Requires "Discharge," ParkerVision Abandoned Its Rebuttal Testimony.

In support of its motion for summary judgment, ParkerVision submitted statements from the inventor, Mr. Sorrells, and the prior art author, Mr. Weisskopf. (D.I.269-10, Ex. I.) Neither submission applied the Court's claim construction. To the contrary, the submissions disobeyed it. ParkerVision submitted the deposition testimony of Mr. Sorrells that "generating" requires discharge or transfer *away from* the capacitor. (D.I. 269 at 11 n.5; D.I.269-9, Ex. H.) Mr. Sorrells' applied the wrong claim construction and thus his opinion was irrelevant. Similarly,

4

Mr. Weisskopf distinguished his paper from the asserted claims only on the grounds that his paper allegedly taught away from "generating" by "discharge," after having been retained by ParkerVision. (D.I.269-10, Ex. I at 14.) As the Court's summary judgment opinion made clear, Mr. Weisskopf's proposed testimony conflicts with the claim construction. Thus, ParkerVision abandoned it, and neither Mr. Sorrells nor Mr. Weisskopf appeared at trial to contest invalidity.

Similarly, ParkerVision's invalidity expert, Dr. Prucnal, attempted to distinguish Weisskopf *only* on the grounds that Weisskopf allegedly failed to teach "discharge." In the wake of the Court's claim construction, Dr. Prucnal had nothing to say on rebuttal at trial, and ParkerVision did not call him. At trial, ParkerVision relied solely on cross-examination on legally irrelevant and tangential matters, none of which are substantial evidence. As set forth below, JMOL of invalidity is required.

### B. ParkerVision's New "High Impedance" Argument Is Another Variation of the "Discharge" Argument and Conflicts with the Markman and SJ Rulings.

Unable to raise any genuine dispute about what the prior art discloses, ParkerVision resorted to another variation of its failed "discharge" claim construction argument. ParkerVision cited several passages of the patents-in-suit, arguing that the patent specifications described a "high impedance" load that would prevent discharge from the capacitor. (Oct. 11 Tr. at 173-177.)

ParkerVision's new argument is merely another variation of its failed "discharge" claim construction position. The claims at issue do *not* require a low impedance. To the contrary, the patents describe embodiments of the claimed invention that have *high impedance* and *prevent* discharge. For example, Figure 101 of the '518 patent shown below, shows a *high impedance output amp*, just like in Weisskopf's preferred embodiment.

5



The '551 and '518 patents explain that—just like in Weisskopf's preferred embodiment—ParkerVision has a "high impedance" embodiment that creates "*a high impedance node* and allows the Integrator *to hold the last RF signal sample 10206 until the next cycle of the Waveform Generator 10108 output*." ('518 col. 112:23-30 (emphasis added).) Thus, at ParkerVision's request, the Court expressly incorporated the "high impedance" embodiment into the claim construction for the '518 patent's "means for generating the baseband signal." In particular, in the Court held:

> Accordingly, the Court adopts ParkerVision's proposed claim construction for these terms. The function associated with the means-plus-function limitation "means for generating the baseband signal from the integrated energy" is "generating the baseband signal from the integrated energy." The structure that corresponds to that function is "any arrangement of (i) one or more of the switch circuitry controlled by any one of pulse generators and (ii) one or more of the energy storage circuitry disclosed or described in *Figures* 63, 64A, 64B, 65, 67A, 68G, 69, 74, 76A–E, 77A–C, 82A, 82B, 86, 88, 90, 92, 94A, 95, *101*, 110, 111, or equivalents thereof."

(D.I. 243 at 46 (emphasis added).)

      **C.**    **ParkerVision's Cross-Examination Arguments Are Irrelevant.**

            **1.**    **Attorney Argument Cannot Substitute for Scientific Evidence.**

In response to Qualcomm's detailed invalidity showing presented by one of the world's leading experts in RF integrated circuits, ParkerVision has provided notice that it intends to rest without putting on either of the two experts it had identified as invalidity rebuttal experts. As with the infringement issues in this case, invalidity analysis requires a detailed technical analysis that cannot simply be supported by attorney argument, surmise, or throwing the technical documents to the jury unanalyzed. *See, e.g.*, *Alexsam, Inc. v. Idt Corp.*, Nos. 2012-1063, -1064, 2013 U.S. App. LEXIS 10009, at *28-29 (Fed. Cir. May 20, 2013); *Proveris Sci. Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008).

            **2.**    **The 1998-99 Discussions Are Irrelevant to Anticipation.**

ParkerVision opened its cross with a lengthy and irrelevant argument that Dr. Razavi did not know about the discussions between Qualcomm and ParkerVision in the 1998-99 timeframe. ParkerVision showed Dr. Razavi the nondisclosure agreement in 1998, signed before ParkerVision had the claims in suit, and before ParkerVision disclosed its technology to Qualcomm, and then attempted to use the examination of Dr. Razavi to show the 1998-99 documents to the jury. (Oct. 11 Tr. at 177-188.) ParkerVision's argument is not evidence, let alone substantial evidence to defeat JMOL.

            **3.**    **A List of Irrelevant "References" Such as Weather Articles and Press Releases Cannot Defeat JMOL.**

Next, ParkerVision paged through the lists of "references" that ParkerVision submitted to the Patent Office during prosecution of the patents-in-suit. (Oct. 11 Tr. at 189-194.) ParkerVision never told the jury what those references were, and made no attempt whatsoever to show that any of the references were similar to Weisskopf, Estabrook, or DeMaw. Moreover, the record shows that ParkerVision buried the PTO with pages of irrelevant patents from the

7

1960s, 1970s, and 1980s, numerous articles relating to weather and rainfall, and even ParkerVision's own press releases. (PX 1.000006, 1.000010-11.) Lists of reference titles, none of which have been shown to be relevant, is not evidence, let alone substantial evidence to defeat JMOL.

### 4. Dr. Razavi's Article and Textbook Highlights Dr. Razavi's Expertise.

ParkerVision examined Dr. Razavi on his 1997 article and textbook. (Oct. 11 Tr. at 196-200.) ParkerVision attempted to argue that the article showed that others had "failed" at direct conversion, a proposition that even if true, is irrelevant to anticipation. (*Id.* at 198.) *See ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1344 (Fed. Cir. 2012). ParkerVision examined Dr. Razavi on his textbook, arguing that RF technology was a "bottleneck" and complex. Whether RF technology was a "bottleneck" is irrelevant to anticipation. (10-11-13 Tr. at 200)

### 5. Dr. Razavi's Definition of the Level of Skill is Unchallenged and Correct.

ParkerVision argued that Dr. Razavi should have crafted a "person of ordinary skill" definition that would have included Mr. Sorrells, who does not have a college degree. (Oct. 11 Tr. at 201-205.) Although the level of skill of the inventor can be relevant in some cases, the goal is to determine the level of *ordinary* skill, and Mr. Sorrells' career path is ordinary in no respect. ParkerVision did not present any evidence whatsoever to rebut Dr. Razavi's definition of the level of ordinary skill in the art, and did not present any evidence of the level of skill of workers in the field. Dr. Razavi's work with the IEEE, ISSCC, and other organizations more than qualified him to opine about the level of "ordinary" skill in the field.

### D. Weisskopf (DX534) Anticipates Every Asserted '551, '518, and '371 Claim.

ParkerVision does not dispute that Weisskopf (DX534) was published in 1992, long before the critical date for all of the patents-in-suit. ParkerVision concedes that Weisskopf was not considered by the PTO in the prosecution of *any* of the patents-in-suit. As Dr. Razavi demonstrated, Weisskopf and the ParkerVision patents have the same structure, and on cross, ParkerVision conceded and highlighted the point, displaying the following demonstrative:



Dr. Razavi presented an exhaustive, claim-by-claim analysis comparing each element of the asserted '551, '518, and '371 claims to the Weisskopf reference. (Oct. 11 Tr. at 41-99.) ParkerVision did not, and cannot, dispute the depth and thoroughness of Dr. Razavi's analysis and testimony. To the contrary, ParkerVision's counsel opined to the jury that "you've been talking for a long time" and asked Dr. Razavi "how is your voice holding up," as though Dr. Razavi had spent too *much* time explaining his analysis. (Oct. 11 Tr. at 165.) ParkerVision then plunged into a series of red herrings.

### 1. ParkerVision's Reference to Weisskopf's Withdrawn and Irrelevant Report Cannot Defeat JMOL.

ParkerVision also informed the jury that Weisskopf submitted a report that alleged no anticipation. (Oct. 11 Tr. at 212-214.) But ParkerVision did not tell the jury that Weisskopf relied on ParkerVision's erroneous "generating requires discharge" theory and defied the Court's claim construction, Weisskopf's report is not evidence, ParkerVision had hired a fact witness as a paid consultant, and ParkerVision, for obvious reasons, could not bring him to trial. Weisskopf's opinion, not in evidence and based on an erroneous claim construction, cannot defeat JMOL.

### 2. ParkerVision's Argument About "Hold Capacitors" and Discharge Cannot Defeat JMOL.

In another effort to reargue claim construction, ParkerVision questioned Dr. Razavi about whether Weisskopf shows a "hold capacitor" rather than a "storage capacitor"—even though the difference is not reflected in the claims. When Dr. Razavi did not agree with ParkerVision, ParkerVision editorialized that "Well, we can agree to disagree about that." (Oct. 11 Tr. at 222-230.) ParkerVision's argument—another variation of its "discharge" claim construction theory—is irrelevant. Even if the claims require "discharge," Weisskopf shows it regardless of whether he preferred the high impedance variation. An anticipating reference still invalidates even if it "teaches away" or "disparages" the claimed invention. *E.g., Billups-Rothenberg, Inc. v. Associated Regional & Univ. Pathologists, Inc.*, 642 F.3d 1031, 1038-39 (Fed. Cir. 2011) ("A reference is no less anticipatory if, after disclosing the invention, the reference then disparages it.") (internal quotation omitted); *see also ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1344 (Fed. Cir. 2012) ("[W]hether a reference 'teaches away' from [an] invention is inapplicable to an anticipation analysis.") (internal quotation omitted).

10

### 3. ParkerVision's Argument About "Noise" Is Irrelevant.

ParkerVision also noted that Dr. Razavi did not add noise to his Weisskopf simulations. (Tr. 231.) However, in contrast to Qualcomm's products, which are designed such that carrier energy does *not* go into the capacitors, Weisskopf designed his device such that carrier energy *would go* into the capacitors. Because the Weisskopf capacitors are designed to receive, store, and use carrier energy to make the baseband (in contrast to Qualcomm's products), ParkerVision cannot raise any genuine dispute regarding whether they receive non-negligible amounts of carrier energy, as the claims require.

### E. Estabrook (DX369) Anticipates '551 claims 23, 161, 202, '518 claims 27, 82, 90, 91, and '371 claim 2.

#### 1. Dr. Razavi Presented Clear, Convincing, and Unchallenged Evidence.

ParkerVision does not dispute that Estabrook (DX369) was published in 1988, long before the critical date for all of the patents-in-suit. ParkerVision concedes that Estabrook was not considered by the PTO in the prosecution of *any* of the patents-in-suit. Dr. Razavi provided exhaustive, claim-by-claim analysis showing that Estabrook (DX369) anticipates '551 claims 23, 161, 202, '518 claims 27, 82, 90, 91, and '371 claim 2. (Oct. 11 Tr. at 99-133.)

#### 2. ParkerVision's "Goose Gander" Argument is Irrelevant.

ParkerVision did not offer any contrary evidence and did not attempt to undermine Dr. Razavi's testimony about Estabrook. Instead, ParkerVision crossed Dr. Razavi about the "goose-gander" rule, in an apparent attempt to undermine Qualcomm's *noninfringement* position. (Oct. 11 Tr. 207, 239-247.)

ParkerVision's effort to create implications about infringement missed the mark by a wide margin and did not raise any genuine issue about any of Qualcomm's invalidity defenses. ParkerVision's examination merely established that Estabrook, which has a *fundamentally different* topology and design than Qualcomm's double-balanced mixers, anticipates the claims.

11

Focused solely on the fruitless task of trying to imply an infringement argument through a comparison to a completely different physical topology, ParkerVision elicited no testimony whatsoever—and did not try—that Estabrook does not anticipate. Having presented no evidence, no argument, and no testimony (even on cross) to attempt to rebut invalidity, ParkerVision has nothing to say to a jury. JMOL of anticipation is appropriate.

### F. DeMaw (DX549) Anticipates Claims '342 Claim 18.

#### 1. Dr. Razavi Presented Clear, Convincing, and Unchallenged Evidence.

ParkerVision does not dispute that DeMaw (DX549) was published in 1982, long before the critical date for all of the patents-in-suit. ParkerVision concedes that DeMaw was not considered by the PTO in the prosecution of *any* of the patents-in-suit. Dr. Razavi provided exhaustive analysis showing that DeMaw anticipates '342 claim 18. (Oct. 11 Tr. at 140-64.)

#### 2. Erroneous Attorney Questions are Not Evidence and Cannot Defeat JMOL.

ParkerVision offered no substantive response to DeMaw. Instead, ParkerVision offered erroneous attorney questions, which Dr. Razavi rejected. For example, ParkerVision's questions erroneously equated a "dual FET" mixer with a "dual balanced" mixer, an erroneous statement that Dr. Razavi rejected:

> Q This is the circuit you discussed with the jury for the '342 patent, correct?
>
> A That's correct, yes.
>
> Q Now, do you see what this figure is called? Do you see the name?
>
> A Dual FET balanced mixer using a Siliconix U430 device.
>
> Q So what we see here in DeMaw is a dual balanced mixer?
>
> A No, that is not correct.
>
> Q So when he says dual FET balanced mixer, he's wrong?

> A You need a hyphen between the word dual and the word FET. That would mean 2 FET, that there are 2 FET.
>
> Q So you interpret this as a 2 FET balanced mixer?
>
> A That is correct.

(Oct. 11 Tr. at 248:9-21.)

Similarly, ParkerVision's questions erroneously stated that the switches in DeMaw could not both be off—another point on which Dr. Razavi disagreed:

> Q Now, these switches are controlled to open and close by the flow of energy or current from this LO through the transformer?
>
> A That is correct, yes.
>
> Q And so what that means is either this switch is on, or this switch is on?
>
> A That is not correct. I do not believe so.

(Oct. 11 Tr. 251:18-24.)

ParkerVision's questions implied that Dr. Razavi performed an erroneous simulation of DeMaw, but ParkerVision offered no evidence whatsoever to support that argument. Implications in the questions of an attorney that are directly rebutted by the expert are meaningless. It is the testimony that counts. As Dr. Razavi explained:

> Can you put up figure 6.7, was it? So Mr. Budwin asked if the figure shows some of the values. And I said no, it does not show, for example, the value of the capacitors and the inductors, and et cetera. And then he said that you pick these values yourself, and you claim that these have no bearing on your opinion. And that is correct. Because if you look at the claim language, we can match up everything that we see in DeMaw with everything we see in the claim language. There's not a single element that is missing from DeMaw when we compare these two. So regardless of what I have chosen for my simulation purposes to illustrate one or two effects, not the entire behavior of the circuit, DeMaw exactly matches the claim language.

(Oct. 11 Tr. at 271:18-272:7.)

## IV. THE COURT SHOULD GRANT JMOL OF NO WILLFULNESS.

ParkerVision has alleged that Qualcomm has willfully infringed the asserted claims. ParkerVision must show willfulness by clear and convincing evidence. *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). "[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.* The threshold objective test presents a legal question for the Court. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012).

In this case, Qualcomm has presented compelling noninfringement invalidity and noninfringement defenses. These defenses are discussed, *inter alia*, in the above motion seeking JMOL of invalidity and Qualcomm's motion for JMOL of noninfringement (Dkt. 398). Qualcomm's substantial, good faith liability defenses preclude a finding of willfulness. *See, e.g.*, *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1336-37 (Fed. Cir. 2009); *Internet Machines LLC v. Alienware Corp.*, 2013 WL 4056282 (E.D. Tex. 2013).

## V. CONCLUSION

For the foregoing reasons, Qualcomm moves for judgment as a matter of law of anticipation of all asserted claims and for non-willfulness.

October 15, 2013

Respectfully submitted,

COOLEY LLP

By: <u>/s/ Timothy S. Teter</u>
    Stephen C. Neal (admitted pro hac vice)
    nealsc@cooley.com
    Timothy S. Teter (admitted pro hac vice)
    teterts@cooley.com
    Jeffrey S. Karr (admitted pro hac vice)
    bdamstedt@cooley.com
    Five Palo Alto Square
    3000 El Camino Real
    Palo Alto, CA 94306-2155
    Telephone:  (650) 843-5182
    Facsimile:  (650) 849-7400

CRAVATH, SWAINE & MOORE LLP
    Keith R. Hummel (admitted pro hac vice)
    khummel@cravath.com
    David Greenwald (admitted pro hac vice)
    dgreenwald@cravath.com
    Worldwide Plaza
    825 Eighth Avenue
    New York, New York 10019
    Telephone:  (212) 474-1000
    Facsimile:  (212) 474-3700

-and-

BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.
    John A. DeVault, III
    Florida Bar No. 103979
    jad@bedellfirm.com
    Courtney K. Grimm
    Florida Bar No. 953740
    cgrimm@bedellfirm.com
    The Bedell Building
    101 East Adams Street
    Jacksonville, Florida 32202
    Telephone:  (904) 353-0211
    Facsimile:  (904) 353-9307

*Counsel for Defendant Qualcomm Incorporated*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of October, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Timothy S. Teter
Timothy S. Teter (admitted pro hac vice)
teterts@cooley.com
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5182
Facsimile: (650) 849-7400

*Attorney for Defendant Qualcomm Incorporated*

1182219/HN