# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | |
|---|---|
| PARKERVISION, INC., | |
| **Plaintiff,** | **Civil Action No. 3:11-cv-719-J-37TEM** |
| **vs.** | |
| QUALCOMM INCORPORATED, | |
| **Defendant.** | |

## PARKERVISION, INC.'S OFFER OF PROOF FOR
## EVIDENCE EXCLUDED BY DAUBERT RULINGS

Plaintiff ParkerVision, Inc. respectfully makes this offer of proof pursuant to Federal Rule of Evidence (1)(a)(2).

The testimony of ParkerVision's damages expert Paul Benoit regarding a reasonable royalty that takes into account the prior negotiations between the parties and 1999 financial analyses prepared by Qualcomm is admissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993) and the Federal Rule of Evidence, including Federal Rule of Evidence 702 because: (1) the witness is qualified as an expert "by knowledge, skill, experience, training, or education"; (2) the experts' reasoning or methodology underlying their opinion testimony is scientifically reliable, and (3) the testimony is relevant-- i.e., it assists the trier of fact to understand the evidence or to determine a fact at issue. Paul Benoit is prepared to testify under oath to each and every fact, opinion, and conclusion found in his report, and ParkerVision incorporates his report by reference into this offer of proof. *See* Ex. A (DX01, DX02).

McKool 936074v5

Jeff Parker is prepared to testify under oath to each and every fact, opinion, and conclusion found in his Rule 26(A)(2)(c) disclosure, in particular regarding the negotiations between ParkerVision and Qualcomm in 1998-1999, a comparison of the circumstances of the 1998-99 negotiation with the circumstances of the 2006 hypothetical negotiation, a normalization of the royalty terms discussed by the parties in 1999 in order to account for events that took place between 1999 and 2006, and the royalty amount that ParkerVision would have reasonably accepted in any actual or contemplated negotiation between ParkerVision and Qualcomm. ParkerVision respectfully incorporates that disclosure by reference into this offer of proof. *See* Ex. B (DX05).

Additionally, ParkerVision incorporates by reference ParkerVision's Response to Qualcomm's Daubert Motion to Preclude Paul Benoit Damages Testimony (Dkt. 305) and the associated exhibits, which ParkerVision incorporates by reference into this offer of proof.

## I.    OFFER OF PROOF FOR PAUL BENOIT

If permitted to do so, Mr. Benoit would testify as follows:

1. Based upon his review of the evidence regarding the prior negotiations between ParkerVision and Qualcomm in 1998-99, the royalty rate structure that the parties were negotiating in 1999 consisted predominantly of a running royalty rate. Mr. Benoit saw no evidence that this mindset of the parties would have been different in 2006.

2. Mr. Benoit also used the 1998-99 negotiations as one source of data to determine the profit directly attributable to the patents-in-suit to be shared between Qualcomm and ParkerVision as ▉▉▉▉

3. In an internal profit sharing analysis prepared by Qualcomm during the 1999 negotiations, Qualcomm shows a willingness to share ███████████████ of a projected ██████ in operating profit for access to ParkerVision's D2D technology.

4. This is a serious business analysis because it was created by Prashant Kantak and sent to Andy Oberst, both of whom were high-level Qualcomm employees. Additionally, there were various proposals and financial models contemplated by Qualcomm during this timeframe and in all the iterations, these calculations remained constant. Mr. Prashant was a Senior Director of Business Development until 2005 and Mr. Oberst is currently a Senior Vice President for Qualcomm's semiconductor business.

5. These financial modeling and analysis, done during the 1998-99 negotiations between ParkerVision and Qualcomm, relates to the hypothetical negotiation in this case. There are at least three reasons that the 1999 analysis is relevant to the 2006 hypothetical negotiation: (1) it shows that in the real world the most relevant type of analysis, and the analysis that the parties were considering, is a quantification of profit and a sharing of that profit between licensor and licensee. The parties didn't just identify a prior license agreement and move forward. Rather, the parties sought to determine the benefit and share of the benefit between the parties; (2) the analysis reflects a percent of profit to be shared, so even if profitability changed between 1999 and 2006, the percentage of that profit that would be shared is still relevant; and (3) the market demand for the benefits of ParkerVision's technology was not fully developed at the time of the 1998-1999 negotiation..

6. Qualcomm's expressed willingness to share ████ of its operating profit with ParkerVision results in the ██████. This is because, utilizing the relative value of the

offered royalty rates being offered at the time between Qualcomm and ParkerVision and coupling that with the ███ of operating profit that Qualcomm was willing to share with ParkerVision yielded an incremental profit attributable to D2D of ███.

7. The ███ allocation to D2D that was contemplated in the 1998-1999 negotiations is useful in a determination of the profit attributable to D2D in 2006 for a number of reasons. First, in 1998 and 1999, none of ParkerVision's patents had yet issued. At the time of the hypothetical negotiation, ParkerVision would have been negotiating a license for three patents issued by the USPTO and three more to issue later. Second, in 1998 and 1999, ParkerVision's technology was new, not yet fully vetted, and Qualcomm would have comprised ParkerVision's first license to the energy sampling technology. ParkerVision viewed Qualcomm, in 1998 and 1999, as its means of entry into the market. In 2006, ParkerVision's technology has been proven through its prototypes, through its WLAN implementations, and through Qualcomm's successful implementation of the technology in the accused products. Third, the market demand for the benefits of ParkerVision's technology was not fully developed at the time of the 1998-1999 negotiation. The parties principally evaluated the benefits of ParkerVision's technology in terms of its cost savings benefits as compared against superheterodyne technology. In 2006, in addition to the cost savings benefits of ParkerVision's technology, the market demanded the additional performance and size benefits enabled by ParkerVision's technology. Fourth, during the prior negotiations between the parties, ParkerVision did not know whether non-infringing alternatives to technology could be developed. In 2006, ParkerVision understands that no non-infringing alternatives exist and that none can be readily developed.

- 4 -

8. PX-37 is an August 11, 1998 document from Prashant Kantak to Jeff Jacobs that provides support regarding the importance of ParkerVision's technology.

9. PX49 is another email to Prashant Kantak dated August 27, 1998 and sent to a number of recipients. This email lays out all the cost savings associated with ParkerVision's technology. In summary, he states that it ███████████████████████████████ ██████████████████████████████████████████████████

10. PX-307 is a February 2, 1999 email from Saed Younis to a number of Qualcomm employees. This is another email that discusses the benefits Qualcomm was seeing in ParkerVision's technology. In summary, Mr. Younis states, "The truth is ParkerVision has stumbled on something revolutionary."

11. PX-91 is a February 24, 1999 email from Don Schrock, who was an Executive Vice President at Qualcomm, to a number of Qualcomm employees. This email describes some of the testing of ParkerVision's technology. In the email, Mr. Schrock stated that ParkerVision is a ██████████████████████████████████████ ██████████████████████████████████████

12. PX-179 is a May 4, 1999 document outlining a potential terms of agreement between Qualcomm and ParkerVision. Page 2 of this document describes all the significant benefits to Qualcomm including providing Qualcomm a ████████████████ ██████████████████████████████████████████████████ ████████████████████

13. To determined the appropriate royalty rate to be paid for the baseband ICs, Mr. Benoit determine the additional benefit from use of the patents-in-suit in baseband integrated products. To do that, Mr. Benoit analyzed the difference in royalty rates proposed by

Qualcomm for integrated baseband products and transceivers during the 1999 negotiations. These royalty rates demonstrate Qualcomm's acknowledgement that ParkerVision's technology contributed more benefit to an integrated transceiver/baseband product than it did to a separate product.

14. Based on Qualcomm's offer to ParkerVision of an average royalty rate of ███ per unit for an integrated baseband chip versus ███ for a discrete unit, Mr. Benoit was able to calculate that this royalty rate differential equates to a ███ gross profit benefit through use of the ParkerVision patents.

15. During the 1999 negotiations, ParkerVision and Qualcomm discussed various possible royalty rates. The royalty negotiated in the hypothetical negotiation would be higher than the rates discussed in 1999. This is because of a number of factors, including: patents assumed valid and infringed; in 1999 Qualcomm had a non-infringing alternative (ZIF); in 1999 the patents were applications, in 2006 the patents had issued; in 2006 the technology was proven and resulted in significant benefits in 2006 besides cost savings.

16. ParkerVision did not have full knowledge of the benefits of the invention to Qualcomm in the 1999 negotiation. As a matter of fact, the record shows that Qualcomm was purposefully not disclosing information to ParkerVision regarding the benefits of the D2D technology.

17. PX-98 is a February 16, 1999 email from Sanjay Jha to a number of Qualcomm employees. This email discusses Qualcomm purposefully holding back information to ParkerVision. In the email it says ████████████████████████████████ ████████████████████████████████

- 6 -

18. PX-156 is an email dated March 29, 1999 from Prashant Kantak to Chuck Wheatley. Mr. Kantak states that he doesn't want Mr. Wheatley to tell ParkerVision how their D2D technology performed because "if we do end up working with them, obviously, we want to make them feel as handicapped as possible to maximize our bargaining position."

19. PX-191 is a May 1999 email from Prashant Kantak to a number of Qualcomm employees discussing a potential royalty offer to ParkerVision. This email analyzes a potential royalty rate of roughly ▮ to ParkerVision. On page 2 of the email, Mr. Kantak states, ███████████████████████████████████████████████████████████ ████████████████ This indicates that Qualcomm was not fully disclosing the full potential benefits of the D2D technology to ParkerVision.

20. PX147 is an internal Qualcomm analysis from March 1999 which attempted to model various potential agreements with ParkerVision. Looking at page 7, which is the summary of the model that would have provided a ▮ royalty to ParkerVision, shows that Qualcomm anticipated an incremental Net Present Value of ██████ from its deal with ParkerVision. It means that after Qualcomm paid all its costs, including the royalty rate to ParkerVision and adjusted the profit due to the risk associated with the project, it anticipated making ██████ on the deal.

21. On October 12, 1999 ParkerVision entered in to a Wireless Technology Pool License Agreement with Symbol Technologies, Inc. Under the terms of the agreement, Symbol agreed to pay a pre-paid royalty fee of ██████ and also agreed to pay royalties of at between ██████ per royalty bearing unit Symbol agreed to pay a royalty rate based on the Average Selling Price of each unit. The royalty bearing units were defined as a ████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████

22. Factors that tend to overstate the royalty rate under this agreement relative to the rate that would have been negotiated between ParkerVision and Qualcomm for use of the patents in suit are (1) the agreement licensed ParkerVision's transmitter technology; (2) the agreement contemplates that █████████████████████████████

██████████████████████████████████████████████████████

██████████████████; (3) ██████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████

23. Factors that tend to understate the royalty rate under this agreement relative to the rate that would have been negotiated between ParkerVision and Qualcomm for use of the patents in suit are (1) ███████████████████████████████████████████

████████████████████████████████████; (2) two patent applications were licensed under this agreement, whereas the hypothetical negotiation between ParkerVision and Qualcomm would have been for four issued patents; (3) the smaller size of a WLAN device, which at that time was not intended to be used in cellular telephones, did not impart the same benefits as the smaller size of a component of a cellular telephone; (4) ParkerVision's motivations in entering into this license were predominantly to introduce its D2D technology to the market, prove the D2D functionality, and demonstrate its benefits to the market, not simply to generate revenue; (5) the agreement was entered into prior to the date on which the '551 patent issued; (6) the agreement was licensed on a

- 8 -

worldwide basis, although ParkerVision had not filed any foreign patent applications prior to execution of the agreement, and Symbol's profit margins on products sold inside of the United States were anticipated to have been greater than its profit margins on products sold outside of the United States.

24. Appling the licensing terms from the Symbol Agreement to the royalty base at issue in this case ███████████████████████████████████████████

## II.    OFFER OF PROOF FOR JEFF PARKER

If permitted to do so, Mr. Parker would testify as follows:

1. Between 1998 and 1999, Mr. Parker participated in negotiations with Qualcomm for Qualcomm to enter into a licensing agreement to ParkerVision's energy transfer sampling direct downconversion technology covered by the Patents-in-Suit.

2. In an email dated February 3, 1999, just the day after Qualcomm tested ParkerVision's Eddie-2, Prashant Kantak asked to set up a meeting with Mr. Parker with the goal of furthering the parties' business discussions.  On March 2, 1999, Mr. Parker met with Prashant Kantak and Johan Lodenius to discuss the terms of a business agreement between ParkerVision and Qualcomm.

3. Mr. Parker had a follow up meeting with Prashant and Johan about business terms in Jacksonville on March 2, 1999.

4. Qualcomm told Mr. Parker that it didn't want ParkerVision to build its chips. Qualcomm wanted to use ParkerVision's technology and build its own chips. Mr. Parker told Prashant that he needed more context regarding Qualcomm's costs and products in order

to fairly assess the benefits that D2D would provide to Qualcomm in order to come up with a fair and principled royalty.

5. Mr. Parker met with Prashant Kantak and Johan Lodenius on May 20, 1999 for Qualcomm to discuss its proposal of a royalty rate as shown in PX-198. This term sheet reflects royalty rates of ███████████████████████████ for integrated transceiver and baseband products. The term sheet also reflects cap rates of ████████ ████████ for receivers, transceivers, and integrated basebands, respectively. This analysis prepared by Qualcomm projects between ███████████████████ in royalties paid to ParkerVision for 2005 alone.

6. Qualcomm's sales exceeded these projections from 1999.

7. Mr. Parker presented Qualcomm's proposed royalty rates to the ParkerVision Board of Directors in early June 1999. Mr. Parker and ParkerVision's Board of Directors had concerns with Qualcomm's proposal. ParkerVision described these concerns in the letter and counterproposal that Mr. Parker sent to Qualcomm.

8. PX-231 shows that one of the concerns regarding the proposal was that Qualcomm included caps on royalty rates. It was ParkerVision's position that there should not be a cap on the royalty payments.

9. Another concern was that the royalty rates Qualcomm offered would be appropriate for a non-exclusive deal, but Qualcomm was asking for an exclusive deal. Mr. Parker and the Board were concerned about an exclusive deal. Mr. Parker and ParkerVision's board were also worried about setting precedent with the royalty rates that Qualcomm was offering for a non-exclusive license. They were worried about the possibility that Qualcomm would enter into an exclusive agreement and then shelve or delay the

- 10 -

technology.  ParkerVision wanted to get its technology out on the market and see wide-spread adoption and royalties are paid based on use.

10. ParkerVision asked for an access fee to address these concerns.  An up front access fee would put "skin in the game" for Qualcomm.  ParkerVision asked for these provisions to ensure that Qualcomm had to bring the technology to market or else it would lose exclusivity or have to pay a penalty.

11. ParkerVision was also concerned about the fairness of Qualcomm's offer.  ParkerVision and Qualcomm agreed on the categories of products that Qualcomm would pay royalties for.  ParkerVision and Qualcomm agreed that the royalty structure would be according to the type of product.  There would be different royalty rates paid for a receiver, a transceiver, or an integrated transceiver and baseband product.

12. The royalty rates and terms that ParkerVision proposed to Qualcomm for an exclusive partnership were: ███████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████

13. If Qualcomm preferred a non-exclusive license then ParkerVision would accept Qualcomm's terms from May 26, 1999, which included royalty rates of ███████████
██████  Mr. Parker based the rates on ParkerVision's best estimates of the cost savings and benefits of the patents in suit that Qualcomm would realize through implementing ParkerVision's technology.

14. Qualcomm's response is shown in documents PX-242 and PX-241.  This response basically just repeated the original offer Qualcomm had made.  Mr. Parker and the

ParkerVision Board of Directors had the same concerns with Qualcomm's counter proposal that it had about Qualcomm's opening proposal.

15. ParkerVision responded by saying that it would not provide a counter-proposal against itself. ParkerVision and Qualcomm ultimately went their separate ways.

16. Mr. Parker does not regret not taking Qualcomm's offer. Mr. Parker does regret that ParkerVision and Qualcomm were not able to find common ground. Mr. Parker believes today that it was the right decision to walk away from the deal that Qualcomm was offering.

17. ParkerVision conducted a reasonable and good faith negotiation with Qualcomm in 1998-99 regarding the licensing of its technology.

## III.  EXHIBITS TO BE OFFERED IN CONNECTION WITH THE OFFER OF PROOF

| | | |
|---|---|---|
| PX86 | Admitted. | Email from P. Kantak to J. Parker re Next meeting time dated 2/6/1999, with attached Qualcomm CDMA Technologies Strategic Outlook, dated 1/31/1999 (PV00184699 - PV00184727) |
| PX96 | Admitted. | Handwritten notes from Qualcomm meeting, dated 2/16/1999 (PV00184748) |
| PX111 | Submitted as Court exhibit for purposes of offer of proof. | Handwritten notes re Meeting with Johan and Prashant in JAX dated 3/2/1999 (PV00184771 - PV00184782) |
| PX198 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to J. Parker and attachment entitled PV Excel 5.xls, dated 5/21/1999 (QCPV001556329 - QCPV001556337) |
| PX231 | Submitted as Court exhibit for purposes of offer of proof. | Draft letter from J. Parker to P. Kantak re term sheet, dated 6/5/1999 (QCPV001389872 – QCPV001389876) |

| | | |
|---|---|---|
| PX241 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to J. Parker re PV/QC Proposed Agreement, dated 6/10/1999 (QCPV001389880 – QCPV001389881) |
| PX242 | Submitted as Court exhibit for purposes of offer of proof. | Letter from P. Kantak to J. Parker, dated 6/10/1999 (QCPV001389883 – QCPV001389894) |
| PX274 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from P. Kantak to S. Bazarjani re Test Chip (MIST), dated 7/30/1999 (QCPV001547499) |
| PX582 | Submitted as Court exhibit for purposes of offer of proof. | Email from A. Oberst to J. King and P. Kantak regarding PV modeling 6 and attachment entitled ParkerVision WW Digital Terminal Sales Forecast dated 04/23/1999 (QCPV001565041 - QCPV001565057) |
| DX01, DX02 | Submitted as Court exhibit for purposes of offer of proof. | Expert Report of Paul C. Benoit; Exhibits to Expert Report of Paul C. Benoit |
| DX05 | Submitted as Court exhibit for purposes of offer of proof. | ParkerVision's Rule 26(a)(2)(C) Disclosure of Testimony by Jeffrey Parker and David Sorrells |
| PX0102 | Submitted as Court exhibit for purposes of offer of proof. | Email from A. Oberst to P. Kantak re PV modeling, with attached spreadsheet - WW Digital Terminal Sales Forecast, dated 2/23/1999 (QCPV001564900 - QCPV001564909) |
| PX0111 | Submitted as Court exhibit for purposes of offer of proof. | Handwritten notes re Meeting with Johann and Prashant in Jax, dated 3/2/1999 (12/13/2012 Parker Deposition Ex. 13, PV00184771 - PV00184782) |

| PX0147 | Submitted as Court exhibit for purposes of offer of proof. | Draft of ParkerVision Valuation Analysis, dated 3/19/1999 (QCPV005574605 – QCPV005574620) |
|--------|---------------------------|---------------------------|
| PX0176 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from D. Sorrells to J. Parker re QC and Term Sheet for Qualcomm/ParkerVision Agreement, dated 5/10/1999 (PV00184905 – PV00184908) |
| PX0179 | Submitted as Court exhibit for purposes of offer of proof. | PV/QC Terms of Agreement Strategic Alliance, dated 5/4/1999 (QCPV00544431A – QCPV00544446A, REDACTED) |
| PX0180 | Submitted as Court exhibit for purposes of offer of proof. | ParkerVision Info., Qualcomm presentation, dated 5/4/1999 (QCPV005445206A – QCPV005445214A, REDACTED) |
| PX0189 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from J. Jacobs and P. Kantak re ParkerVision Approval Meeting, dated 5/14/1999 (QCPV001547448 – QCPV001547449) |
| PX0191 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to J. Jacobs, et al. re PV -- Royalty, dated 5/15/1999 (QCPV001547450 – QCPV001547451) |
| PX0193 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to jjacobs re PV meeting with Tony, dated 5/18/1999 (10/25/2012 Jacobs Deposition Ex. 11, QCPV001389850) |
| PX0195 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from P. Kantak to jjacobs, et al. re meeting with J. Parker to negotiate royalty issue, dated 5/21/1999 (10/25/2012 Jacobs Deposition Ex. 12, QCPV001389860) |

| PX0196 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to J. Lodenius re PV, dated 5/21/1999 (QCPV001547459) |
|---|---|---|
| PX0198 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to J. Parker re Docs, and attachment entitled PV Excel 5.xls, dated 5/21/1999 (QCPV001556329 - QCPV001556337) |
| PX0203 | Submitted as Court exhibit for purposes of offer of proof. | ParkerVision, Excess D2D Value Add Market Analysis, dated 5/24/1999 (5/8/2013 Benoit Deposition Ex. 3, PV00184917 – PV00184923) |
| PX0213 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to C. Wheatley re D2D, dated 5/28/1999 (QCPV005443604A – QCPV005443605A, REDACTED) |
| PX0215 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to C. Wheatley, et al. re D2D, dated 5/28/1999 (QCPV005443939A – QCPV005443940A) |
| PX0231 | Submitted as Court exhibit for purposes of offer of proof. | Draft letter from J. Parker to P. Kantak re term sheet, dated 6/5/1999 (QCPV001389872 – QCPV001389876) |
| PX0238 | Submitted as Court exhibit for purposes of offer of proof. | Qualcomm Nonexclusive License Outline, dated 6/10/1999 (PV00184938) |
| PX0239 | Submitted as Court exhibit for purposes of offer of proof. | Letter from P. Kantak to J. Parker (with handwritten notes), dated 6/10/1999 (PV00184948 – PV00184963) |

| | | |
|---|---|---|
| PX0241 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to J. Parker re PV/QC Proposed Agreement, dated 6/10/1999 (QCPV001389880 – QCPV001389881) |
| PX0242 | Submitted as Court exhibit for purposes of offer of proof. | Letter from P. Kantak to J. Parker, dated 6/10/1999 (QCPV001389883 – QCPV001389894) |
| PX0245 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from S. Jha to B. Judson, et al. re Direct Conversion, dated 6/17/1999 (11/7/2012 Wheatley Deposition Ex. 21, QCPV001555036 – QCPV001555038) |
| PX0253 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from P. Kantak to T. Thornley re ParkerVision -- Current Status and New Developments, dated 6/23/1999 (QCPV001413516 – QCPV001413517) |
| PX0267 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from P. Kantak to T. Thornley re ParkerVision -- Current Status and New Developments, dated 6/30/1999 (QCPV001390431 – QCPV001390433) |
| PX0274 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from M. Blecker to J. Parker re ParkerVision Update, dated 8/12/1999 (PV00184993 – PV00184996) |
| PX0285 | Submitted as Court exhibit for purposes of offer of proof. | Wireless Technology Pool License Agreement between ParkerVision and Symbol Technologies, dated 10/12/1999 (5/8/2013 Benoit Deposition Ex. 5, PV00185210 – PV00185283) |
| PX0009 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from R. Gilmore to M. Blecker re ParkerVision Update, dated 10/4/1999 (QCPV001389395 – QCPV001389396) |

| PX0013 | Submitted as Court exhibit for purposes of offer of proof. | Email chain between J. Parker and P. Kantak re Update, dated 10/9/1998 (PV00184667) |
|--------|-----------------------------------------------------------|------------------------------------------------------------------------------------|
| PX0053 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to K. Montalvo, et al. re ParkerVision, dated 9/8/1998 (12/6/2012 Younis Deposition Ex. 1, QCPV001389583 QCAPV001549401) |
| PX0119 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from D. Schrock to S. Jha re pistachio, dated 3/6/1999 (10/25/2012 Jacobs Deposition Ex. 8, QCPV001621654) |
| PX0126 | Submitted as Court exhibit for purposes of offer of proof. | Email from A. Oberst to P. Kantak re PV modeling, and attachment entitled PV modeling2.xls, dated 02/27/1999 (QCPV001564920 - QCPV001564930) |
| PX0146 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to J. Lodenius re Parker, dated 3/19/1999 (QCPV001547438) |
| PX0155 | Submitted as Court exhibit for purposes of offer of proof. | Email from S. Younis to C. Wheatley re Oops! Re:  PV, dated 3/27/1999 (12/6/2012 Younis Deposition Ex. 9, QCPV005518496) |
| PX0166 | Submitted as Court exhibit for purposes of offer of proof. | ParkerVision Valuation Analysis, dated 03/26/1999 (QCPV001564974 – QCPV001564995) |
| PX0174 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to A. Oberst re PV royalty model, dated 4/26/1999 (QCPV001389835) |
| PX0175 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to J. Parker re Term Sheet, dated 4/30/1999 (QCPV001413450) |

| | | |
|---|---|---|
| PX0178 | Submitted as Court exhibit for purposes of offer of proof. | Email from K. Prashant to dcianflone re template, and attachment entitled PV/QC Terms of Agreement, Strategic Alliance (QCPV001575987 – QCPV001576003) |
| PX0181 | Submitted as Court exhibit for purposes of offer of proof. | PV/QC Terms of Agreement Strategic Alliance, dated 5/4/1999 (QCPV005530079A – QCPV005530103A, REDACTED) |
| PX0182 | Submitted as Court exhibit for purposes of offer of proof. | PV/QC Terms of Agreement Strategic Alliance, dated 5/4/1999 (QCPV005530168A – QCPV005530182A, REDACTED) |
| PX0183 | Submitted as Court exhibit for purposes of offer of proof. | Document/Table "ParkerVision Summary Market Analysis", dated 5/4/1999 (QCPV005530183 – QCPV005530192) |
| PX0184 | Submitted as Court exhibit for purposes of offer of proof. | PV/QC Terms of Agreement Strategic Alliance, dated 5/4/1999 (QCPV005530457A – QCPV005530471A, REDACTED) |
| PX0185 | Submitted as Court exhibit for purposes of offer of proof. | PV/QC Terms of Agreement Strategic Alliance, dated 5/4/1999 (QCPV005574508A – QCPV005574532A, REDACTED) |
| PX0186 | Submitted as Court exhibit for purposes of offer of proof. | PV/QC Terms of Agreement Strategic Alliance, dated 5/4/1999 (QCPV005574672A – QCPV005574686A, REDACTED) |

| PX0187 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to A. Oberst re PV attachment, and attachment entitled PV royaltymodeling.xls, dated 5/5/1999 (QCPV001576086 - QCPV001576155) |
|---|---|---|
| PX0188 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to vbeaton re ParkerVision Approval Meeting, dated 5/12/1999 (10/25/2012 Jacobs Deposition Ex. 10, QCPV001389847) |
| PX0190 | Submitted as Court exhibit for purposes of offer of proof. | Email from J. Jacobs to P. Kantak re ParkerVision Approval Meeting, dated 5/14/1999 (QCPV001547725 – QCPV001547726) |
| PX0194 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to J. Parker re More Information?, dated 5/18/1999 (QCPV001547452) |
| PX0197 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to J. Lodenius re Spreadsheet, dated 5/21/1999 (QCPV001547460) |
| PX0200 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from J. Jacobs to P. Kantak re "Symbol announcement", dated 5/22/1999 (10/25/2012 Jacobs Deposition Ex. 13, QCPV001390341) |
| PX0201 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from P. Kantak to L. Lupin, et al. re PV Unit Forecast, dated 5/22/1999 (QCPV001547463 – QCPV001547464) |
| PX0202 | Submitted as Court exhibit for purposes of offer of proof. | Email chain between P. Kantak and L. Lupin, dated 5/22/1999 (QCPV001556349 – QCPV001556350) |

| PX0205 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to J. Parker re Meeting Tuesday, dated 5/26/1999, with attached Term Sheet for Qualcomm/ParkVision Agreement (12/13/2012 Parker Deposition Ex. 21, PV00184912 – PV00184916) |
|---|---|---|
| PX0206 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to A. Oberst re pistachio: where do we go from here?, dated 5/26/1999 (QCPV001389865) |
| PX0208 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from P. Kantak to A. Oberst re pistachio: where do we go from here?, dated 5/26/1999 (QCPV010430997A – QCPV010430998A) |
| PX0209 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from P. Kantak to A. Oberst re pistachio: where do we go from here?, dated 5/26/1999 (QCPV010430999A) |
| PX0210 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from P. Kantak to C. Wheatley, et al. re pistachio: where do we go from here?, dated 5/26/1999 (QCPV010431103A) |
| PX0212 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to J. Jacobs, et al. re ParkerVision update, dated 5/28/1999 (QCPV001389867 – QCPV001389868) |
| PX0230 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to L. Lupin, et al. re PV meeting, Friday 11am, dated 6/4/1999 (QCPV001389869) |

| PX0232 | Submitted as Court exhibit for purposes of offer of proof. | Draft Term Sheet for Qualcomm/ParkerVision Agreement, dated 6/7/1999 (PV00184934 – PV00184937) |
|---|---|---|
| PX0237 | Submitted as Court exhibit for purposes of offer of proof. | Qualcomm Table Analyzing Royalty to ParkerVision, dated 6/9/1999 (QCPV005530166 – QCPV005530167) |
| PX0240 | Submitted as Court exhibit for purposes of offer of proof. | Letter from P. Kantak to J. Parker (with handwritten notes), dated 6/10/1999 (12/13/2012 Parker Deposition Ex. 23, PV00184964 – PV00184975) |
| PX0247 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from D. Schrock to S. Jha re Direct Conversion, dated 6/17/1999 (QCPV001558808 – QCPV001558810) |
| PX0250 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from P. Kantak to J. Parker, et al. re Latest Licensing T&C's and Discussion, dated 6/22/1999 (QCPV011507720) |
| PX0259 | Submitted as Court exhibit for purposes of offer of proof. | Email chain between J. Parker and P. Kantak re D2D, dated 6/29/1999 (PV00184989 – PV00184990) |
| PX0268 | Submitted as Court exhibit for purposes of offer of proof. | Parkervision Valuation Analysis, dated 6/30/1999 (QCPV005530128A – QCPV005530144A) |

| | | |
|---|---|---|
| PX0270 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from S. Jha to P. Kantak, et al. re ParkerVision Update, dated 7/14/1999 (QCPV001391406) |
| PX0277 | Submitted as Court exhibit for purposes of offer of proof. | ParkerVision Board Meeting, dated 8/16/1999 (PV00430770 – PV00430857) |
| PX0563 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from C. Wheatley to P. Kantak, et al. re ParkerVision Meeting dated 06/29/1999 (QCPV001392374 - QCPV001392375) |
| PX0573 | Submitted as Court exhibit for purposes of offer of proof. | Email chain between L. Lupin and P. Kantak, et al. re ParkerVision Royalty dated 05/21/1999 (QCPV001562166 - QCPV001562167) |
| PX0574 | Submitted as Court exhibit for purposes of offer of proof. | Email from D. Cianfione to A. Oberst attaching the Latest PV Model dated 03/19/1999 (QCPV001563556 - QCPV001563598) |
| PX0579 | Submitted as Court exhibit for purposes of offer of proof. | Email from A. Oberst to pkantak regarding PV model and attaching spreadsheet entitled ParkerVision WW Digital Terminal Sales Forecast dated 02/24/1999 (QCPV001564910 - QCPV001564919) |
| PX0582 | Submitted as Court exhibit for purposes of offer of proof. | Email from A.Oberst to jking and pkantak regarding PV modeling 6 and attachment entitled ParkerVision WW Digital Terminal Sales Forecast dated 04/23/1999 (Exhibit N, QCPV001565041 - QCPV001565057) |

| PX0585 | Submitted as Court exhibit for purposes of offer of proof. | Email from P. Kantak to aoberst attaching ParkerVision Summary Control Variables/Assumption dated 05/05/1999 (QCPV001576086 - QCPV001576155) |
|---|---|---|
| PX0756 | Submitted as Court exhibit for purposes of offer of proof. | Email from A. Oberst to D. Cianflo, P. Kantak re PV Modeling, dated 03/11/1999 (QCPV001564933 - QCPV001564934) |
| PX0758 | Submitted as Court exhibit for purposes of offer of proof. | Email from A. Oberst to P. Kantak re PV Model New, dated 04/22/1999 (QCPV001565007 - QCPV001565023) |
| PX0760 | Submitted as Court exhibit for purposes of offer of proof. | Qualcomm Presentation:  ParkerVision Issues in Potential Acquisition, dated 06/30/1999 (QCPV005530153 - QCPV005530160) |
| PX0875 | Submitted as Court exhibit for purposes of offer of proof. | Letter from P. Kantak to J. Parker, Qualcomm Proprietary, re counter proposal dated 06/10/1999 (PV00370156 - PV00370171) |
| PX0939 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from C. Wheatley to R. Gilmore, M. Blecker re ParkerVision Update, dated 10/5/1999 (11/07/2012 Wheatley Deposition Ex. 27, QCPV001555062 – QCPV001555064) |
| PX0953 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from P. Kantak to J. Jacobs regarding Symbol Announcement, dated 05/22/1999 (QCPV001390342 - QCPV001390343) |
| PX0954 | Submitted as Court exhibit for purposes of offer of proof. | Email chain from L. Lupin to P. Kantak regarding Royalty Issue Negotiations with Parker, dated 05/21/1999 (QCPV001391522) |

| PX0285 | Submitted as Court exhibit for purposes of offer of proof. | Wireless Technology Pool License Agreement between ParkerVision and Symbol Technologies, dated 10/12/1999 (5/8/2013, PV00185210 – PV00185283) |
|---|---|---|

October 18, 2013

Respectfully submitted,

**McKOOL SMITH, P.C.**

/s/ *Douglas A. Cawley*
Douglas A. Cawley, Lead Attorney
Texas State Bar No. 04035500
E-mail: dcawley@mckoolsmith.com
Richard A. Kamprath
Texas State Bar No.: 24078767
rkamprath@mckoolsmith.com
Ivan Wang
Texas State Bar No.: 24042679
E-mail: iwang@mckoolsmith.com
McKool Smith P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Kevin L. Burgess
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
Josh W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
Leah Buratti
Texas State Bar No. 24064897
lburatti@mckoolsmith.com
Mario A. Apreotesi
Texas State Bar No. 24080772
mapreotesi@mckoolsmith.com
Kevin Kneupper
Texas State Bar No. 24050885
kkneupper@mckoolsmith.com
James Quigley
Texas State Bar No. 24075810
jquigley@mckoolsmith.com
McKool Smith P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701

**SMITH HULSEY & BUSEY**

/s/ *James A. Bolling*
Stephen D. Busey
James A. Bolling
Florida Bar Number 117790
Florida Bar Number 901253
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
jbolling@smithhulsey.com

**ATTORNEYS FOR PLAINTIFF
PARKERVISION, INC.**

McKool 936074v5

Telephone: (512) 692-8700
Telecopier: (512) 692-8744

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on October 18, 2013.

*/s/ Leah Buratti*
Leah Buratti

McKool 936074v5