**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ParkerVision, Inc.,

        *Plaintiff*,

    v.

Qualcomm Incorporated,

        *Defendant*.

Case No. 3:11-cv-719-J-37-TEM

# QUALCOMM'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF NO WILLFUL INFRINGEMENT

TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

II. INCORPORATION BY REFERENCE ................................................................. 2

III. LEGAL STANDARD ............................................................................................ 2

IV. ARGUMENT ......................................................................................................... 2

    A. The Court Should Find that ParkerVision Has Failed To Prove the Objective Prong by Clear and Convincing Evidence. ................................ 3

        1. Qualcomm presented strong noninfringement arguments that preclude a finding of willfulness. ....................................................... 3

        2. Qualcomm's compelling invalidity arguments also preclude a finding of willfulness. ....................................................................... 5

        3. No objective observer would have thought that combining a double-balanced mixer with a low-pass filter would create a high likelihood of infringing any valid ParkerVision claim. ................... 5

            a. ParkerVision itself recognized that double-balanced mixers and low-pass filters were old technology ............................. 5

            b. During 1998 to 1999, ParkerVision promised a revolutionary sampling downconverter, not a conventional mixer and filter. ................................................................. 6

            c. After ParkerVision disclosed its sampling architecture, Qualcomm went a different direction with a conventional mixer-based solution. ........................................................ 8

    B. ParkerVision Has Failed To Introduce Substantial Evidence Sufficient To Prove the Subjective Prong by Clear and Convincing Evidence, Requiring JMOL. ........................................................................................................ 9

        1. Qualcomm's design documents establish its belief as to why Qualcomm included the Tx filter. ................................................... 9

        2. ParkerVision failed to connect anything that happened in 1998-1999 to the relevant time period. .................................................. 10

            a. The 2004 Bazarjani email is irrelevant. ............................. 10

            b. ParkerVision's attorney argument contradicts the record .. 11

V. CONCLUSION .................................................................................................... 12

Qualcomm respectfully submits this memorandum in support of its motion for judgment as a matter of law of no willful infringement under Fed. R. Civ. P. 50(a).

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Willfulness requires proof by clear and convincing evidence of both an objective and a subjective prong, neither of which are met in this case. The objective prong asks whether the accused "infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."[1] The object prong presents a question of law the Court decides. Here, Qualcomm's compelling noninfringement and invalidity defenses presented at trial require a finding of no willfulness under the objective prong. In addition, the evidence at trial establishes that no objective observer could conclude that Qualcomm's actions in using a double-balanced mixer and a filter would infringe any valid ParkerVision claim.

The subjective prong asks whether "this objectively-defined risk ... was either known or so obvious that it should have been known to the accused infringer."[2] ParkerVision offers only a speculative and unfounded willfulness theory. ParkerVision contends that Qualcomm learned of ParkerVision's technology in 1999; Qualcomm designed, built, and sold a noninfringing mixer-based design for seven years; and then, in 2006, Qualcomm pulled ParkerVision's technology off the shelf and started willfully infringing. ParkerVision's sole alleged link between the 1999 disclosures and the accused infringement in 2006 is a single email from 2004. That email is remote in time, disconnected from the accused products and the engineers that built them, and lacks any meaningful foundation at all. Accordingly, JMOL is appropriate on the subjective prong as well.

---

[1] *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).

[2] *Id.*

1

## II.   INCORPORATION BY REFERENCE

Qualcomm hereby incorporates by reference, in their entirety, its motions for judgment as a matter of law of noninfringement, invalidity, and no willfulness, argued and filed previously. (*E.g.*, Dkt. 398, 399.)

## III.   LEGAL STANDARD

Under Rule 50(a), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1).

## IV.   ARGUMENT

ParkerVision bears the burden of proving willfulness by clear and convincing evidence. *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). Under governing Federal Circuit law, willfulness requires a two-prong analysis. The first prong is the "threshold objective prong" and presents a question of law for the Court to resolve. *Id.*; *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012). The Court must determine whether the accused "infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate*, 497 F.3d at 1371. Then, "[i]f this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk ... was either known or so obvious that it should have been known to the accused infringer." *Id.* ParkerVision cannot meet either prong, and the Court should grant JMOL.

      **A.**    **The Court Should Find that ParkerVision Has Failed To Prove the Objective Prong by Clear and Convincing Evidence.**

           **1.**    **Qualcomm presented strong noninfringement arguments that preclude a finding of willfulness.**

As detailed in Qualcomm's motion for JMOL of non-infringement, which is incorporated herein by reference, Qualcomm has presented a compelling noninfringement defense. (*See generally* Dkt. 398.) Under controlling Federal Circuit case law, any substantial liability defense suffices to preclude a willfulness finding as a matter of law. *See, e.g.*, *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1336-37 (Fed. Cir. 2009); *Internet Machines LLC v. Alienware Corp.*, 2013 WL 4056282 (E.D. Tex. 2013).

For example, ParkerVision agreed that the claims require generating the baseband from energy transferred from the carrier signal into the storage device. (Oct. 10 Tr. at 84:23-85:10 ("Q. And in order to have energy transfer as defined in every one of the claims at issue in this case, you need to have current from the carrier signal flow into the storage device, correct? A. Correct. Q. And then the energy -- then the current from the carrier signal, which is flowed into the storage device, is then used to generate the baseband, correct? A. Correct.").[3]) This is the heart of the claimed invention – how it accomplishes down conversion. Yet, the undisputed evidence of the operation of Qualcomm chips shows that the baseband signal is generated by the mixer itself, before any energy can reach the capacitors in the Tx filter: "The mixer downconverts the RF signal to baseband signal." (DX 605 at 9.) This fact was confirmed by Dr. Prucnal, ParkerVision's own expert, who testified that the baseband is created "before the current has reached the capacitor that we're talking about" and confirmed by the schematics:

---

[3] *See also* Oct. 10 Tr. at 85:20-23, 86:10-14, 86:17-19, 86:24-87:10, 88:1-14, 88:21-89:5, 90:25-91:4, 91:11-15, 91:24-92:3, 163:13-20.



(PX 847 at 1999-2000; Oct. 10 Tr. at 133:1-9; *id.* at 137:9-12, 138:9-14 (after mixer and before capacitor, the radio frequency (RF) and local oscillator (LO) frequencies have been eliminated); Oct. 10 Tr. at 177:15-19 ("Q. So at least in Qualcomm's architecture, the double balanced mixture not only is capable of, it does, in fact, create the baseband before it hits the TX filter that you're talking about now, correct? A. Yes."); *id.* at 199:9-200:7; *see also* Oct. 9 Tr. at 215:22-16:7, 229:21-25, 243:15-244:2; Oct. 10 Tr. at 240:11-22.)  This testimony constitutes clear admissions on noninfringement by ParkerVision's expert based on the most direct, reliable evidence – the technical documents that describe how the products are structured and operate.

As detailed in Qualcomm's previous noninfringement JMOL arguments and briefing, Qualcomm presented many additional substantial noninfringement arguments.  Accordingly, the Court should grant JMOL of no willfulness due to Qualcomm's noninfringement defenses.

4

### 2. Qualcomm's compelling invalidity arguments also preclude a finding of willfulness.

Likewise, as detailed in Qualcomm's motion for JMOL of invalidity, which is incorporated herein by reference, Qualcomm has presented a compelling invalidity defense. (*See generally* Dkt. 399.) Qualcomm provided detailed testimony on invalidity from one of the foremost RF integrated circuit engineers in the world, Dr. Behzad Razavi, on three references. Dr. Razavi's testimony was unrebutted by any expert or even fact testimony. Instead, ParkerVision rested on the irrelevant and misleading arguments made by its counsel about the hearsay statements made by one of the prior art authors based on an incorrect claim construction.

Accordingly, in addition to requiring JMOL of invalidity, the evidence presented by Qualcomm further precludes any finding that Qualcomm's actions met the objective prong of the willfulness standard. *DePuy Spine*, 567 F.3d at 1336-37; *Internet Machines LLC*, 2013 WL 4056282.

### 3. No objective observer would have thought that combining a double-balanced mixer with a low-pass filter would create a high likelihood of infringing any valid ParkerVision claim.

As detailed below, the undisputed evidence establishes that the combination of a double-balanced mixer and a filter was old in the art, that ParkerVision itself professed to have created a device different from that old combination, and that the Qualcomm engineers who designed the accused products intended to use the conventional mixer-filter architecture. Under those facts, no objective observer could conclude that Qualcomm had acted despite a high likelihood of infringing a valid claim.

#### a. ParkerVision itself recognized that double-balanced mixers and low-pass filters were old technology.

Before this litigation, ParkerVision repeatedly distinguished itself from mixers. The file histories related to the patents-in-suit never mention a double-balanced mixer and expressly

5

disparage mixers and filters as being the "antiquities" of communications. (Oct. 8 Tr. at 110:9-12, 161:15-162:2, 162:18-20; Oct. 10 Tr. at 99:2-18, 100:14-17; DX 466; DX 469.) In presentations provided to Qualcomm and others, ParkerVision described its invention as making a "clean break" from conventional mixers, allowing the energy sampler to downconvert without balanced transistor pairs. (PX 308; DX 734; DX 421; DX 1729; DX 1235; DX 91; Oct. 8 Tr. at 129:13-21, 131:17-132:6, 133:16-24, 133:6-9, 135:22-136:9, 156:16-20, 157:5-9, 158:4-8, 158:13-16, 158:20-23; Oct. 9 Tr. at 126:4-7, 126:17-21, 127:8-17, 127:22-128:1, 129:23-130:3, 130:22-131:1, 131:19-25, 132:4-12; Oct. 10 Tr. at 104:5-20.) Indeed, ParkerVision employees chided each other if anyone referred to energy sampling using the "'m' word" ("mixer"). (DX 1198; Oct. 9 Tr. at 135:8-20; *see also* Dkt. 398; *e.g.*, *id.*, § IV.B.2.b.)

        **b.**    **During 1998 to 1999, ParkerVision promised a revolutionary sampling downconverter, not a conventional mixer and filter.**

In February 1998, ParkerVision's CEO, Jeff Parker, first reached out to Jeff Jacobs at Qualcomm, claiming that ParkerVision had invented a "Universal Direct Conversion Receiver" that would "replace today's two- or three-stage receiver chains" and "embodies a breakthrough circuit architecture." (DX 1636; DX 422 (promising "major breakthrough" with the "potential to revolutionize wireless electronics"); *see* DX 1639; DX 1638; DX 1645.) In August 1998, Parker again reached out to Jacobs, repeating his claims that ParkerVision had created a "revolutionary RF receiver circuit architecture." (DX 1640.) Parker asserted that he had waited several months so that he could "finish[] his homework" about how Qualcomm could use ParkerVision's technology. (DX 1640 (claiming that ParkerVision "can now definitely demonstrate how

6

Direct2Data, specifically in CDMA applications, will reduce significant cost, power, and be the bridge to enabling the next generation."); DX 1642; DX 756; PX 46; DX 730.[4])

On March 16, 1999, more than a year after Parker first approached Qualcomm, ParkerVision provided a technical disclosure to a limited number of Qualcomm employees in which they made clear that ParkerVision thought it had invented a new form of sampling, not a conventional mixer and filter. (*E.g.*, Oct. 8 Tr. at 28:16-24.) ParkerVision and Qualcomm had another disclosure meeting in April 1999, where Qualcomm engineers expressed strong skepticism about the workability of ParkerVision's sampling technique and whether it was any different from the long-known prior art track-and-hold techniques.[5] (*E.g.*, DX 1752.) Looking at the entire history of the 1998-1999 interactions, no substantial evidence supports any argument that Qualcomm acted despite an objectively high likelihood of infringement.[6]

---

[4] Despite being unable to demonstrate a prototype that met its claimed performance, ParkerVision consistently pressed to do a deal. (*E.g.*, DX 740; DX 1649; DX 1651; PX 56; DX 1652; DX 1653; DX 1655; DX 709; DX 1656; DX 1659.) In February 1999, ParkerVision sent a fourth prototype for Qualcomm to test. Qualcomm's test results showed improvements, so a meeting was set up where ParkerVision could disclose its technology. (*See, e.g.*, DX 1667.) Qualcomm's internal testing showed that some parameters had improved but that many issues remained: "The D2D, as measured, has a noise figure requiring substantial gain in the front end, putting a burden on the BB chip"; "[t]he D2D, as implemented in figure 3, will achieve parity with the present architecture only with great pains in the baseband chip"; "[t]he high dynamic range baseband ... is risky"; "[t]he D2D is not a panacea solution; there is a great deal of research to be done to integrate the D2D technology into a phone; and "[u]ntil we know the inner working of [what] the D2D is, this is pure speculation." (DX 1667.)

[5] Shortly after the meeting, the enthusiasm for ParkerVision's sampling technique waned at Qualcomm. (DX 1673 ("Current status is less hot than before .... Sanjay is more excited than ever about direct down-conversion, but probably less so on these guys in particular."); PX 18; DX 1671; DX 1672.)

[6] For example, from 1998 to 1999, ParkerVision made "very bold" claims about its technology. (DX 422; DX 1636; PX 34; DX 1639; DX 1640; DX 1642.) Over the course of nearly a year, ParkerVision pressed for a business deal despite sending prototypes that were "way off" from the claimed performance. (DX 1645; DX 1638; DX 708; PX 46; DX 730; DX 1649; DX 1650; DX 1651; DX 740; PX 56; DX 1652; DX 1653; DX 1655; DX 709; DX 1656; DX 1659; PX 69; PX 73.) ParkerVision's early 1999 CMOS prototype created short-lived hopes

      **c.    After ParkerVision disclosed its sampling architecture, Qualcomm went a different direction with a conventional mixer-based solution.**

Following the disclosure meeting, Qualcomm investigated "every technique for doing [direct downconversion], not just the PV one." (DX 1694 (direct downconversion itself is "such a big win" that it was worth investigating to see whether Qualcomm could "solve this problem ... using any technique at all").[7]) Specifically, "Rob [Gilmore]/Paul Peterzell [were] pursuing the *mixer* solution," and Chuck Wheatley and others were working on "an implementation based either on PV or impulse *sampling*." (DX 1694 (emphasis added); DX 712 ("1. Paul should pursue *mixer* based solution" with Gilmore and "2. Bruce should look at *sampled* approach" with Wheatley) (emphasis added); DX 737.) Gilmore, a product engineer involved in the mixer-based investigation, concluded: "We do not need Parkervision IPR to proceed," because "[w]e can obtain an approximate 6 dB noise figure *using a double balanced mixer*." (DX 1692 (emphasis added); *see also* DX 713; DX 741; DX 1674.) As a result, after the interactions finally broke down entirely in late 1999 (DX 1702; DX 1703; DX 1704), Qualcomm continued pursuing its mixer-based approach. (*E.g.*, DX 22; DX 945; DX 946; DX 949; DX 950.)

Years later, in 2006, Qualcomm moved from an active-mixer double-balanced mixer design to a passive-mixer double-balanced mixer design. (*See, e.g.*, Dkt. 398, §§ III.B.1,

---

at Qualcomm that ParkerVision's device might live up to ParkerVision's claims. (DX 1667.) After ParkerVision made its technical disclosure in March 1999, Qualcomm became "extremely cautious" about ParkerVision's technology. (PX 133; DX 1673; DX 993; DX 1752; DX 1671; DX 1672; DX 722; DX 1702; DX 1703; DX 1704.) During the summer of 1999, Qualcomm was simultaneously investigating both a "mixer based solution" and a "sampled approach." (DX 1694; DX 712; DX 737; DX 1694; DX 1695; DX 714; DX 1674; DX 1692; DX 741; DX 713.)

[7] DX 722 ("PV approach is not enabling zero IF, unless we solve the isolation problem and wide dynamic. Then in that case, we could use other types of mixer instead of D2D."); DX 722 ("We should be extremely cautious in not over-committing to PV in light of all the technical information regarding the value of their technology to us.").

8

IV.B.2.a.)  Qualcomm's design documents uniformly describe those products as using the accused components for their conventional mixing and low-pass filtering capabilities.  Nothing in those documents would suggest to an objective observer that Qualcomm's actions in using those standard components created "an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate*, 497 F.3d at 1371. (*See, e.g.*, Dkt. 398, §§ III.B.1, IV.B.2.a.)

* * * * *

In short, Qualcomm's strong noninfringement and invalidity defenses preclude a finding of willful infringement under the objective prong.  In addition, nobody, and certainly not an objective observer, would have concluded that Qualcomm's inclusion of a double-balanced mixer and a low-pass filter in its products in 2006 would have infringed any valid ParkerVision claim.

> **B.  ParkerVision Has Failed To Introduce Substantial Evidence Sufficient To Prove the Subjective Prong by Clear and Convincing Evidence, Requiring JMOL.**
>
> > **1.  Qualcomm's design documents establish its belief as to why Qualcomm included the Tx filter.**

In Qualcomm's motion for JMOL of noninfringement, it walked through in detail how the relevant design documents show Qualcomm's state of mind with respect to the accused products.  Those documents show that Qualcomm intended to use the double-balanced mixers as downconverters and to use the low-pass filters for removing the Tx jammer. (*See generally* Dkt. 398.)

### 2. ParkerVision failed to connect anything that happened in 1998-1999 to the relevant time period.

ParkerVision did not attempt to connect the supposed admissions in 1999 with anyone who was actually working on the accused designs in 2006 and later. Instead, ParkerVision relied on an isolated 2004 email unrelated to any project that made its way into any accused product.

#### a. The 2004 Bazarjani email is irrelevant.

Calling it the "dripping umbrella," ParkerVision has tried to base its state-of-mind case on a single email from 2004 (PX 322).[8] ParkerVision argues that this email shows that Qualcomm changed its approach from a noninfringing mixer design to an infringing energy-sampler design in 2006.[9]

The 2004 email is irrelevant, providing no evidentiary support for a willfulness finding. The 2004 email does not relate to the accused products, is remote in time from the accused infringement, and does not involve the engineers who designed the products accused of infringement. (*Compare* PX 322 (Seyfi Bazarjani and Steve Ciccarelli), *with* DX 835 (23

---

[8] In addition, no relevant testimony supports a finding of subjective intent. First, ParkerVision's willfulness case is based on internal Qualcomm emails about which Parker and Sorrells have no foundation to testify. Second, the Court properly precluded ParkerVision's engineering, technical expert from offering opinions regarding Qualcomm's mental state. Third, the Wheatley and Kantak depositions affirmatively show Qualcomm's subjective beliefs that it did not infringe.

[9] In the email, Ciccarelli stated that he wanted "to explore the idea of RF sampling for a **low dynamic range** receiver" located in a "dual receiver structure where one path was IS-98 compliant and the other was super low current using RF sampling." (PX 322 (emphasis in original).) Bazarjani responded: "I am interested in Rx path and have been looking at it (literally!) very part time.... I will set up a meeting with Chuck to go over parker vision approach and see if we can make it work.... There are other published approaches and we need to study them all." (*Id.*)

10

engineers who designed the Solo die).)  Moreover, the email itself has no foundational basis in the record; no other document refers to PX 322 and no witness gave testimony about it.[10]

### b. ParkerVision's attorney argument contradicts the record.

Qualcomm's design documents show their clear subjective intent to use a double-balanced mixer and a low-pass filter according to their long-established functions.  (*See generally* Dkt. 398; *e.g.*, *id.*, §§ III.B.1, IV.B.2.a.)  Moreover, easily overlooked is the fact that the entire record of the 1998-1999 interactions shows that Qualcomm acted without any subject intent to infringe.  ParkerVision hinges its entire argument on a change in intent on the one 2004 email.  Yet numerous documents contradict any inference that the Qualcomm participants in the 1999 disclosure meeting ever subjectively believed that Qualcomm was infringing any valid ParkerVision claim.  For example:

- **Saed Younis**: "In this memo I have attempted first to examine the possible solutions that ParkerVision's D2D technology may offer toward solving some of the traditional obstacles that are associated with zero-IF radio architectures. From the above discussion, it should be evident that ParkerVision's D2D technology offers little novel remedy, if any, to the known problem of zero-IF."  (DX 993 (Mar. 25, 1999).)

- **Rob Gilmore**: "We are proceeding with an investigation of direct up and down conversion for use in phone design. We do not need Parkervision IPR to proceed. We can obtain an approximate 6 dB noise figure using a double balanced mixer ...."  (DX 1695 (June 15, 1999).)

- **Chuck Wheatley**: "[W]e gave up on them" (DX 1706 (June 6, 2000)); "[w]e are NOT using their technique" (DX 951 (Dec. 21, 2000)); ParkerVision engineers "are the same guys who were here a few years ago, and could not explain how they worked ... [s]o we told them to go away, and started our own design" (JX 98 (Oct. 18, 2001).)

---

[10] The email references a potential meeting with Chuck Wheatley.  The only evidence in the record, however, shows that Wheatley had no knowledge of how the later accused Qualcomm products operate.  (Wheatley Tr. 67:10-12 ("Q. Now, are you familiar with the ... receivers used in Qualcomm's CDMA designs today? A. I'm not.").)

11

- **Charlie Persico**: "We have looked at them and they have nothing of value. They file patents left and right but nothing of strong value."  (DX 1710 (Aug. 21, 2008).)

In contrast to this clear, undisputed, and compelling evidence, ParkerVision's 2004 email does not amount to substantial evidence, and JMOL should be granted.

## V. CONCLUSION

For the foregoing reasons, Qualcomm moves for judgment as a matter of law of no willfulness.

October 21, 2013

Respectfully submitted,

COOLEY LLP

By:  /s/ Timothy S. Teter
Stephen C. Neal (admitted pro hac vice)
nealsc@cooley.com
Timothy S. Teter (admitted pro hac vice)
teterts@cooley.com
Jeffrey S. Karr (admitted pro hac vice)
Ben Damstedt
bdamstedt@cooley.com
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone:  (650) 843-5182
Facsimile:  (650) 849-7400


CRAVATH, SWAINE & MOORE LLP
Keith R. Hummel (admitted pro hac vice)
khummel@cravath.com
David Greenwald (admitted pro hac vice)
dgreenwald@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

-and-

                BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.
                        John A. DeVault, III
                        Florida Bar No. 103979
                        jad@bedellfirm.com
                        Courtney K. Grimm
                        Florida Bar No. 953740
                        cgrimm@bedellfirm.com
                        The Bedell Building
                        101 East Adams Street
                        Jacksonville, Florida 32202
                        Telephone:  (904) 353-0211
                        Facsimile:  (904) 353-9307

*Counsel for Defendant Qualcomm Incorporated*

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on this 21st day of October, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

            /s/ Timothy S. Teter
            Timothy S. Teter (admitted pro hac vice)
            teterts@cooley.com
            Five Palo Alto Square
            3000 El Camino Real
            Palo Alto, CA 94306-2155
            Telephone:  (650) 843-5182
            Facsimile:  (650) 849-7400

            *Attorney for Defendant Qualcomm Incorporated*

1184205/HN