**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **PARKERVISION, INC.,** | |
| **Plaintiff,** | **Civil Action No. 3:11-cv-719-J-37JRK** |
| **vs.** | |
| **QUALCOMM INCORPORATED,** | |
| **Defendant.** | |

**<u>PARKERVISION INC.'S PROPOSED FORM OF PERMANENT INJUNCTION</u>**

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................1

II.  LEGAL STANDARD...............................................................................2

III.  ARGUMENT ..........................................................................................3

    A.  Qualcomm's Infringement Has Irreparably Harmed
        ParkerVision. ..............................................................................3

        1.  ParkerVision and Qualcomm are competitors. ............................3

        2.  Qualcomm's infringement has saturated the market
            with ParkerVision's patented technology and
            deprived ParkerVision of a tremendous business
            opportunity.....................................................................7

        3.  ParkerVision's focus on its patented technology
            supports an injunction. ...............................................11

        4.  There is no reason to believe that Qualcomm will
            stop infringing or that the resultant harm will cease.................12

        5.  There is a causal nexus between the harm to
            ParkerVision and Qualcomm's infringement. ..........................13

    B.  Monetary Damages Are Inadequate To Compensate
        ParkerVision. ..............................................................................15

        1.  Monetary damages do not account for the harm
            caused by Qualcomm's infringement and, at a
            minimum, would be difficult to calculate. ................................15

        2.  ParkerVision's licensing does not justify denying
            equitable relief. ..........................................................18

        3.  Qualcomm's ability to pay a judgment is not
            relevant.....................................................................20

    C.  Considering The Balance Of Hardships An Injunction Is
        Warranted....................................................................................20

    D.  An Injunction Promotes The Public Interest........................................24

IV.   CONCLUSION.............................................................................................................25

937336

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*800 Adept, Inc. v. Murex Sec., Ltd.*,
  505 F. Supp 2d. 1327 (M.D. Fla. 2007) .................................................................................9

*Acumed LLC v. Stryker Corp.*,
  551 F.3d 1323 (Fed. Cir. 2008) .............................................................................15, 18, 19

*Apple Inc. v. Samsung Elecs. Co.*,
  No. 2013-1129 (Fed. Cir. Nov. 18, 2013) .......................................................13, 14, 18, 20

*Apple, Inc. v. Samsung Elecs. Corp.*,
  678 F.3d 1314 (Fed. Cir. 2012) ...........................................................................................16

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
  315 F. Supp. 2d 615 (D. Del. 2004) ....................................................................................21

*Broadcom Corp. v. Emulex Corp.*,
  732 F.2d 1325 (Fed. Cir. 2013) ...........................................................................................10

*Broadcom Corp. v. Emulex Corp.*,
  No. 09-1058 JVS, 2012 U.S. Dist. LEXIS 129524 (C.D. Cal. Mar. 16, 2012) ..............5, 6, 15

*Broadcom Corp. v. Qualcomm Inc.*,
  543 F.3d 683 (Fed. Cir. 2008) .......................................................................................15, 23

*Broadcom Corp. v. Qualcomm Inc.*,
  No. 05-467 JVS, 2007 U.S. Dist. LEXIS 97647 (C.D. Cal. Dec. 31, 2007) ................... passim

*Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech., Inc.*,
  492 F. Supp. 2d 600 (E.D. Tex. 2007) .....................................................................17, 18, 24

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013) ......................................................................................4, 14

*eBay v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ...................................................................................................... passim

*Edwards Lifesciences AG v. CoreValve, Inc.*,
  699 F.3d 1305 (Fed. Cir. 2012) .............................................................................................2

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010)..............................................................8, 17, 20, 23

*Lewis v. S. S. Baune*,
    534 F.2d 1115 (5th Cir. 1976) ..............................................................................15

*Mass Engineered Design, Inc. v. Ergotron, Inc.*,
    633 F. Supp. 2d 361 (E.D. Tex. 2009).................................................................24

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    702 F.3d 1351 (Fed. Cir. 2012)..............................................................................3

*Reebok Int'l, Ltd. v. J. Baker, Inc.*,
    32 F.3d 1552 (Fed. Cir. 1994)..............................................................................12

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011)................................................................12, 20, 21

*Smith & Nephew, Inc. v. Synthes (U.S.A.)*,
    466 F. Supp. 2d 978 (W.D. Tenn. 2006).................................................................9

*SynQor, Inc. v. Artesyn Techs., Inc.*,
    No. 2:07-CV-497-TJW-CE, 2011 U.S. Dist. LEXIS 6439 (E.D. Tex. Jan. 24, 2011) .............8

*TiVo Inc. v. EchoStar Commc'ns Corp.*,
    446 F. Supp. 2d 664 (E.D. Tex. 2006).....................................................................9

*Transocean Offshore Deepwater Drilling, Inc. v. Global Santa Fe Corp.*,
    No. 03-CV-2910, 2006 U.S. Dist. LEXIS 93408 (S.D. Tex. Dec. 27, 2006).........18

*TruePosition Inc. v. Andrew Corp.*,
    568 F. Supp. 2d 500 (D. Del. 2008).....................................................................11

*Voda v. Cordis Corp.*,
    536 F.3d 1311 (Fed. Cir. 2008)............................................................................12

*Windsurfing Int'l Inc. v. AMF, Inc.*,
    782 F.2d 995 (Fed. Cir. 1986)..............................................................................23

*z4 Techs., Inc. v. Microsoft Corp.*,
    434 F. Supp. 2d 437 (E.D. Tex. 2006)..............................................................9, 16

### STATUTES

35 U.S.C. § 283....................................................................................................1

35 U.S.C. § 284..................................................................................................16

-iv-

**OTHER AUTHORITIES**

Fed. R. Civ. P. 65(d) ....................................................................................................................1

937336

Pursuant to 35 U.S.C. § 283 and Fed. R. Civ. P. 65(d), ParkerVision, Inc. files this Motion for Permanent Injunction.

## I.   INTRODUCTION

ParkerVision respectfully requests that the Court enter an injunction prohibiting Qualcomm Incorporated from continuing to infringe U.S. Patent Nos. 6,061,551 (the "'551 patent"), 6,266,518 (the "'518 patent"), 6,370,371 (the "'371 patent") and 7,496,342 (the "'342 patent") (collectively, the "patents-in-suit"). On October 17, 2013, the jury found that Qualcomm directly infringed and induced infringement of all eleven asserted claims of the patents-in-suit. The jury also found the patents-in-suit to be valid. On October 24, 2013, the jury awarded over $172 million in damages for Qualcomm's past infringement.

To prevent future infringement of the patents-in-suit, ParkerVision requests that the Court enter an injunction as set forth in ParkerVision's Proposed Order attached to this Motion. Each of the *eBay* factors favors entry of an injunction. First, ParkerVision has suffered irreparable harm from Qualcomm's infringement and will suffer ongoing harm from the denial of an injunction. ParkerVision has expended substantial resources in developing leading-edge technology based upon the patents-in-suit. Since 2006, however, Qualcomm has increasingly saturated the market with infringing products, and Qualcomm's infringement, unless enjoined, will continue to prevent ParkerVision from entering the market with product offerings and future joint venture relationships. Additionally, Qualcomm's infringement has dispossessed ParkerVision of incalculable goodwill, credibility, and business relationships. Qualcomm's infringement has also dispossessed ParkerVision of a tremendous business opportunity—the opportunity to have its down-conversion technology licensed in over ████ chips. Because ParkerVision and Qualcomm are competitors, these harms will not cease without an injunction prohibiting future infringement.

937336

Second, monetary damages are inadequate to compensate ParkerVision. While ParkerVision was able to calculate a reasonable royalty for Qualcomm's past infringement, this damages calculation does not account for or quantify the irreparable harm to ParkerVision. Even if money could somehow place ParkerVision in the position it would be in today had Qualcomm licensed ParkerVision's patented technology, it would be extremely difficult to calculate or quantify the loss of ParkerVision's right to exclude, its credibility, or its brand name recognition.

Lastly, unlike the harm to ParkerVision from denial of an injunction, Qualcomm and the public would suffer minimal harm if the Court issues the proposed injunction, as the proposed injunction includes a sunset period that accounts for the time it would take Qualcomm and its customers to comply with the injunction and affords ample time to develop a design around or non-infringing substitute.

For these reasons, the balance of equities favors the entry of a permanent injunction.

## II.   LEGAL STANDARD

"A patentee's right to exclude is a fundamental tenet of patent law. … Absent adverse equitable considerations, the winner of a judgment of validity and infringement may normally expect to regain the exclusivity that was lost with the infringement." *Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305, 1314 (Fed. Cir. 2012) (citations omitted). Courts have "granted injunctive relief upon a finding of infringement in the vast majority of patent cases," which "is not surprising, given the difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to *use* an invention against the patentee's wishes." *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 395 (2006) (Roberts, C.J., concurring) (emphasis in original)).

937336

The decision to grant or deny injunctive relief is within a district court's discretion, which should be exercised consistent with traditional principles of equity. *See id.* at 394. To receive an injunction, ParkerVision must demonstrate that (i) it has suffered an irreparable injury; (ii) money damages are inadequate to compensate for that injury; (iii) considering the balance of hardships between ParkerVision and Qualcomm, an injunction is warranted; and (iv) the public interest would not be disserved by a permanent injunction. *Id.* at 391. Rejecting the application of categorical rules, the Supreme Court in *eBay* noted that even a non-practicing licensing entity "may be able to satisfy the traditional four-factor test" and "[saw] no basis for categorically denying them the opportunity to do so." *Id.* at 393.

## III.   ARGUMENT

### A.   Qualcomm's Infringement Has Irreparably Harmed ParkerVision.

In assessing whether Qualcomm's infringement has irreparably harmed ParkerVision, the Court should consider a number of factors, including whether ParkerVision and Qualcomm are competitors, the past and ongoing harm caused by Qualcomm's infringement, and the nexus between the harm to ParkerVision and Qualcomm's infringement. For the reasons discussed below, Qualcomm's infringement will irreparably harm ParkerVision and an injunction is warranted.

#### 1.   ParkerVision and Qualcomm are competitors.

ParkerVision and Qualcomm are competitors in the wireless receiver/transceiver market. In its own presentations to investors, ParkerVision has recognized Qualcomm as a competitor, at times even its "largest competition." Injunction Hr'g Tr., 10/22 at 10:21-11:18, 12:10-21. "Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude." *Presidio Components, Inc. v. Am.*

-3-

*Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) (citation omitted); *see also Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented invention.").

ParkerVision is developing chips that will compete with Qualcomm's infringing products and this competitive relationship weighs heavily in favor of an injunction. "The significance of competition is that [the patentee] is exploiting, and has the ability to exploit, its intellectual property by bringing products to market which will benefit consumers." *Broadcom Corp. v. Qualcomm Inc.*, No. 05-467 JVS (RNBx), 2007 U.S. Dist. LEXIS 97647, at *9-10 (C.D. Cal. Dec. 31, 2007), *aff'd*, 543 F.3d 683, 702-703 (Fed. Cir. 2008). ParkerVision is actively working to exploit the patents-in-suit by bringing transceiver chips to market. Mr. Parker explained that ParkerVision's current commercialization efforts for the technology covered by the patents-in-suit include "an effort with VIA Telecom to bring CDMA receivers to market." Injunction Hr'g Tr., 10/22 at 17:5-15. The product development includes both single- and dual-band CDMA transceivers with diversity receivers that would interface with VIA's basebands. *Id.* at 18-16-22, 47:5-14; *see also* Ex. A (DX959) at 82 (showing VIA sells CDMA baseband chips). ParkerVision's forthcoming CDMA transceiver will directly compete with the following infringing products that only support CDMA: Merlin (QSC1105), Napoleon (QSC1100 and QSC1110), Ramsis (QSC6055, QSC6065, QSC6075, QSC6086, and MDM6085), and Voltron (RTR6500) (collectively "CDMA-only products").[1] *See* Ex. B (listing of infringing products and

---

[1]     Some of the CDMA-only products also support auxiliary standards such as FM radio, Bluetooth, or GPS. *See* Ex. B. These auxiliary standards can be supported in a wireless device through separate chips. *See* Ex. B.

-4-

supported standards). ParkerVision's CDMA transceiver will also compete with the following infringing products that support several cellular standards, including CDMA: Eagleray (FTR8700), Iceman (RTR9605), Magellan (MDM6600, QSC6155, QSC6175, QSC6185, QSC6695, QTR8600, QTR8600L, QTR8601, QTR8615, QTR8615L, RTR8600, RTR8601, and RTR8605), and Odyssey (WTR1605 and WTR1605L) (collectively "CDMA products"). *See id.* The facts that ParkerVision's patent portfolio "is not a sterile one, which sits idle," and that ParkerVision competes with Qualcomm, favor the grant of an injunction. *See Broadcom v. Qualcomm*, 2007 U.S. Dist. LEXIS 97647, at *10.

The mere fact that ParkerVision will not offer a product-for-product replacement for each infringing product does not lessen the ongoing harm to ParkerVision if an injunction is denied. The notion that a patent holder suffers irreparable harm only if "it offers a precise product-for-product replacement is too narrow and ignores the true scope of competition in the market place." *Broadcom Corp. v. Emulex Corp.*, No. 09-1058 JVS (ANx), 2012 U.S. Dist. LEXIS 129524, at *12 (C.D. Cal. Mar. 16, 2012).[2] The lack of a product-for-product replacement may affect the *degree* of competition, but it does not change the fact of competition between two firms. *Broadcom v. Qualcomm*, 2007 U.S. Dist. LEXIS 97647, at *9. As discussed, ParkerVision's new transceiver will be a CDMA solution, which could replace sales of Qualcomm's CDMA-only and CDMA products.[3] However, an injunction need not be limited to these chips because ParkerVision's ability to compete in the CDMA market would also be

---

[2]     The Supreme Court has cautioned that "traditional equitable principles do not permit such broad classifications" as presuming that a patentee cannot establish irreparable harm based on "its lack of commercial activity in practicing the patents." *eBay*, 547 U.S. at 393.

[3]     Both ParkerVision and Qualcomm are "fabless" semiconductor chip companies. *See, e.g.*, Trial Tr., 10/18 at 114:11-12 (Qualcomm is fabless); Injunction Hr'g Tr., 10/22 at 21:11-19 (ParkerVision is fabless). It would be just as easy for ParkerVision, or a future joint venture partner, to contract with a fabrication foundry to fill chip demand as it would be for Qualcomm.

937336

affected if Qualcomm is allowed to offer ParkerVision's patented technology in other markets. *See id.* at *23-24 (finding irreparable harm to Broadcom in CDMA market despite fact that it did not offer CDMA baseband chips because "Broadcom's ability to compete with product offerings in the WCDMA market would be affected if Qualcomm is allowed to offer Boadcom's patented features which would be significant in choosing between WCDMA solutions and CDMA solutions"). ParkerVision's lack of "precise product-for-product" replacements for the infringing products affects the *degree* of competition, but it does not negate the fact of competition between ParkerVision and Qualcomm and does not diminish the past and ongoing harm to ParkerVision.

Neither is ParkerVision's harm lessened or negated merely because ParkerVision does not currently offer a transceiver practicing the patents-in-suit. Because competition in the transceiver market is based on "design wins," where original equipment manufacturer (OEM) customers "typically solicit bids by way of design competitions to meet the needs of each new product line and each new generation,"[4] a successful firm not only wins a sale, but also a blocking position against other firms for a period of time. *See Broadcom v. Emulex*, 2012 U.S. Dist. LEXIS 129524, at *6-8 (further describing episodic[5] nature of sales in such a market and a prevailing firm's temporary immunization that gives it "a blocking position" against competing firms). Accordingly, the Court should account for the exclusionary effect on future competition inherent in the transceiver market. *See Broadcom v. Qualcomm*, 2007 U.S. Dist. LEXIS 97647,

---

[4]    Such a market "is unlike the typical market for consumer goods where competitors compete for each consumer sale, and the competition is instantaneous and on-going." *Broadcom v. Qualcomm*, 2007 U.S. Dist. LEXIS 97647, at *10 (characterizing market for cellular baseband chips as one based on "design wins"). Mr. Jeff Parker explained that "OEMs design wireless devices based upon particular chips from particular chipmakers." Injunction Hr'g Tr., 10/22 at 40:22-24.

[5]    Episodic sales are in contrast to the typical consumer market where firms compete for instantaneous, on-going sales. *Cf. Broadcom v. Qualcomm*, 2007 U.S. Dist. LEXIS 97647, at *10 (explaining cellular baseband chip competition is episodic rather than "granular" with unit-by-unit competition).

at *16. When the patentee does not offer a product capable of practicing the infringed patent at the time of judgment, the harm factor favors the infringer in the short run, but favors the patentee in the long run, especially where it has plans to bring a product to market. *Id.* For example, Qualcomm's U.S. receiver/transceiver market share increased from ▮ in 2006 (when infringement began) to ▮ in 2012. Trial Tr., 10/17 at 163:5-13. This significant and increasing market share during the years of Qualcomm's infringement successfully blocked ParkerVision from the market. Mr. Parker explained that Qualcomm's saturation of the market with the infringing products "didn't give us room in the market to compete" and "really reduce[d] the available customers." Injunction Hr'g Tr., 10/22 at 14:3-6. ParkerVision now plans to enter the transceiver market, expecting its transceiver chips to be available for shipment by the middle of 2014. *Id.* at 18:23-25, 27:24-28:3. Denial of an injunction merely because ParkerVision currently lacks a transceiver would effectively continue to block ParkerVision's entry in the market. *Id.* at 22:18-23:8 (explaining that an injunction "would allow ParkerVision to get a toehold" in the market and give it "a much better opportunity to form joint ventures and licensing relationships"). Injunctive relief is required to ameliorate the ongoing exclusionary effect of Qualcomm's use of the patents-in-suit, to mitigate Qualcomm's incumbency advantage over ParkerVision, and to avoid irreparable harm to ParkerVision.

2.  <u>Qualcomm's infringement has saturated the market with ParkerVision's patented technology and deprived ParkerVision of a tremendous business opportunity.</u>

Qualcomm's infringement has saturated the market with ParkerVision's patented technology and irreparably harmed ParkerVision's business. By the time of trial, Qualcomm had sold about ▮ infringing receivers and ▮ infringing transceivers. *See* Trial Tr., 10/18 at 13:11-19. In 2012, Qualcomm also had an ▮ share of the U.S. receiver/transceiver

market. Trial Tr., 10/17 at 163:5-13. Qualcomm's saturation of the market irreparably harmed ParkerVision in several respects.

First, ParkerVision lost the opportunity to sell or license its down-conversion technology in these ██████ devices. "Past harm to a patentee's market share, revenues, and brand recognition is relevant for determining whether the patentee has suffered an irreparable injury." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861-(Fed. Cir. 2010) (quotation marks and citations omitted). Filling this market demand would have given ParkerVision a decisive market share with concomitant brand recognition and goodwill. *See* Injunction Hr'g Tr., 10/22 at 15:23-16:16. Not only would ParkerVision have had a venue for its technology and seen it incorporated into a significant portion of the market, but it would have bolstered the credibility of ParkerVision and its technology. Mr. Parker explained that Qualcomm's infringement "cost [ParkerVision] a lot of our credibility. We had made certain predictions on what the technology could bring to the market place. And when I think Qualcomm appeared to beat us to the punch, it took a lot of wind out of our sails and cost us a lot of our credibility." Injunction Hr'g Tr., 10/22 at 16:10-17:1. Moreover, if Qualcomm had licensed ParkerVision's technology, ParkerVision would have had the ability to enlarge its infrastructure and hire more engineers to further its technology and business development. *See id.* at 7:2-11 (explaining that during period of infringement ParkerVision had to continue to sell stock shares in order to fund and sustain further development and commercialization of the patents-in-suit); *see also SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497-TJW-CE, 2011 U.S. Dist. LEXIS 6439, at *11-12 (E.D. Tex. Jan. 24, 2011) (finding patentee demonstrated irreparable harm from loss of ability to expand its business without injunctive relief).

-8-

Second, ParkerVision will experience ongoing harm because it has lost incalculable goodwill and brand recognition and cannot compete against Qualcomm's use of the patents-in-suit. "[W]hen an infringer saturates the market for a patented invention with an infringing product or damages the patent holder's good will or brand name recognition by selling infringing products that infringer violates the patent holder's exclusionary right in a manner that cannot be compensated through monetary damages." *z4 Techs., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437, 441 (E.D. Tex. 2006). The patentee suffers irreparable harm "because it is impossible to determine the portions of the market the patent owner would have secured but for the infringer or how much damage was done to the patent owner's brand recognition or good will due to the infringement." *Id.*[6] ParkerVision has suffered and will continue to suffer similar harm. Mr. Parker explained that OEMs "are going to buy from more established players certainly before they are going to buy from a new [entrant]." Injunction Hr'g Tr., 10/22 at 13:5-14. Mr. Parker further testified that Qualcomm's saturation of the market with ParkerVision's technology "didn't give [ParkerVision] room in the market to compete" and "really reduce[d] the available customers." *Id.* at 14:3-16. Without injunctive relief to provide ParkerVision room in the market to commercialize the patents-in-suit, these harms will continue and ParkerVision will not have the opportunity to develop the market share, brand recognition, and goodwill Qualcomm usurped

---

[6]     Other courts have reached similar conclusions that loss of market share and goodwill are often irreparable and incalculable. *See Smith & Nephew, Inc. v. Synthes (U.S.A.)*, 466 F. Supp. 2d 978, 984 (W.D. Tenn. 2006) ("The loss of market share and the resulting lost profits and loss of brand name recognition which [plaintiff] suffered because of [defendant's] continued sale of the infringing products constitute injuries that are both incalculable and irreparable."); *TiVo Inc. v. EchoStar Commc'ns Corp.*, 446 F. Supp. 2d 664, 669 (E.D. Tex. 2006) (finding that the first two *eBay* factors were satisfied in part because "availability of the infringing products leads to a loss of market share for Plaintiff's products"); *800 Adept, Inc. v. Murex Sec., Ltd.*, 505 F. Supp 2d. 1327, 1337 (M.D. Fla. 2007), *vacated on other grounds*, 539 F.3d 1354 (Fed. Cir. 2008) ("[W]here a company pioneers an invention in the marketplace, irreparable harm flows from a competitor's attempts to usurp the pioneering company's market position and goodwill.").

through its infringement. *See id.* at 22:8-17 (testifying that denial of an injunction would be "devastating" to ParkerVision because it would impair business relationships due to the difficulty of "build[ing] a competitive advantage when Qualcomm has already saturated the market").

Furthermore, ParkerVision's ongoing harm caused by Qualcomm's continued infringement is compounded by the nature of the transceiver market. The Federal Circuit has explained that in a design-win market the winner of a design competition "enjoys an 'incumbency effect' making [it] more likely to win subsequent design competitions because the OEM's familiarity with the winning supplier creates goodwill." *Broadcom Corp. v. Qualcomm Inc.*, 732 F.3d 1325, 1336 (Fed. Cir. 2013). The "ramifications" from lost market share and the harm suffered by the patentee is "compounded" by the incumbency effect. *Id.* at 1337. From its infringing use of the patents-in-suit, Qualcomm obtained numerous design wins with the infringing products since infringement began in 2006. *See* Trial Tr., 10/17 at 163:5-13 (Qualcomm's U.S. transceiver market share increased from ███ in 2006 to ███ in 2012); Trial Tr., 10/18 at 13:11-19 (over ████████ infringing sales). Qualcomm also has not changed its business practices during the two-year pendency of this case and has continued to obtain design wins for infringing products. *Cf.* Ex. D (JX17) at 12. With the infringing sales, Qualcomm enjoyed goodwill and brand recognition, which makes it more likely it will continue to prevail in subsequent design competitions. *See* Injunction Hr'g Tr., 10/22 at 89:9-16 (noting that Qualcomm's generations of cellular chipsets have won it the "confidence and business of the carriers over the years"). As a result, ParkerVision will find it even more difficult to enter the market.

Third, Qualcomm's past and future infringement causes ongoing irreparable harm to ParkerVision's ability to deploy technologies that are complementary to the patents-in-suit.

-10-

ParkerVision has developed transmitter technology, trade-named "D2P", to complement its down-conversion technology. *See, e.g.*, Trial Tr., 10/9 at 102:11-14; Trial Tr., 10/17 at 136:6-18. As Mr. Parker explained, "it would have made it easier for [ParkerVision] to introduce [its] follow-on technology," namely the D2P technology, had Qualcomm licensed ParkerVision's down-conversion technology. Injunction Hr'g Tr., 10/22 at 15:23-16:9. This harm is linked to Qualcomm's infringement of ParkerVision's patent rights because today receive and transmit functionalities are generally combined in a single transceiver chip.[7] Harm to ParkerVision's ability to commercialize the patents-in-suit will unavoidably harm its ability to commercialize its patented transmitter technology.

3.    ParkerVision's focus on its patented technology supports an injunction.

ParkerVision's efforts to commercialize the patents-in-suit by developing a transceiver that practices the patents-in-suit and by seeking joint ventures support a finding of irreparable harm. A patentee is injured when "its exclusionary right to manage its patent portfolio in accordance with its chosen strategy" is removed by the denial of injunctive relief. *See Broadcom v. Qualcomm*, 2007 U.S. Dist. LEXIS 97647, at *16; *see also TruePosition Inc. v. Andrew Corp.*, 568 F. Supp. 2d 500, 531 (D. Del. 2008) (discussing the irreparable injury factor and noting that "[p]laintiffs are also frequently successful [in obtaining an injunction] when their patented technology is at the core of its business"). ParkerVision organized its business to develop and commercialize the patents-in-suit. *See, e.g.*, Injunction Hr'g Tr., 10/22 at 17:5-15. ParkerVision has dedicated approximately $100 million to the development and commercialization of its

---

[7]  ██████████████████████████████████████████████████████████████████

*see also* Ex. E (JX99) at 2 ("A transceiver combines a receiver with a transmitter on a single chip or in a single package.").

patented down-conversion technology. *Id.* at 5:25-6:4. And its model for commercializing the patents-in-suit includes: (i) bringing products to market, (ii) seeking joint ventures, and (iii) pursuing licensing agreements.[8] *Id.* at 8:18-22; *see also id.* at 17:2-15. ParkerVision has dedicated significant portions of its resources to developing and managing its patented technology and a compulsory license to Qualcomm would irreparably harm its right to manage and dictate the commercialization of the patents-in-suit.

4.  There is no reason to believe that Qualcomm will stop infringing or that the resultant harm will cease.

There is no reason to believe that Qualcomm will stop infringing, or that the irreparable harm resulting from its infringement will otherwise cease, absent an injunction. Because "future infringement … may have market effects never fully compensable in money," *Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994), "[t]here is no reason to believe … that the irreparable harms resulting from the [infringer's] infringement will otherwise cease, absent an injunction." *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011) (noting that irreparable harms of lost market share, lost business opportunities, and price erosion will be ongoing, absent an injunction). Despite the fact that ParkerVision filed this case in July 2011, Qualcomm has made no effort to design around ParkerVision's patents. *See, e.g.*, JX17 at 12. In addition, in testimony provided only to the Court during the jury's deliberations, ███

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[8]    ParkerVision's past and current willingness to license its patents, including the patents-in-suit to certain third-parties in certain specific business situations, does not establish a per se rule preventing the entry of an injunction. *See infra* at Part III.B.2. In fact, the Federal Circuit has noted that "patent owners that license their patents rather than practice them *may* be able to satisfy the traditional four-factor test for a permanent injunction." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1329 (Fed. Cir. 2008) (emphasis in original) (quotation marks and citation omitted).

████████████ *Compare* Trial Tr., 10/21 at 55:3-56:11 (testifying that Mr. Benoit was "simply incorrect" to conclude that there were no non-infringing alternatives to the patents-in-suit), 96:26-97:7 (same), 120:12-15 (testifying that ZIF is an acceptable non-infringing alternative), *with* Injunction Hr'g Tr., 10/22 at 94:19-25, 100:21-101:20, 104:8-24. Because Qualcomm has no available non-infringing alternative, only an injunction will stop Qualcomm's infringement and the resultant harm to ParkerVision.

5.      There is a causal nexus between the harm to ParkerVision and Qualcomm's infringement.

The past and ongoing harm to ParkerVision is directly connected to Qualcomm's infringement of the patents-in-suit. To satisfy the irreparable harm factor, a patentee must show a causal nexus relating the harm to the infringement. *See Apple Inc. v. Samsung Elecs. Co.*, No. 2013-1129, slip op. at 10-18 (Fed. Cir. Nov. 18, 2013) (confirming that some causal nexus between infringement and the patentee's alleged harm must be shown). In other words, "the causal nexus requirement is simply a way of distinguishing between irreparable harm caused by patent infringement and irreparable harm caused by otherwise lawful competition." *Id.* at 14. "The former type of harm may weigh in favor of an injunction, whereas the latter does not." *Id.*

There is a direct causal relationship between ParkerVision's past and ongoing harm and Qualcomm's infringement. As described above, Qualcomm's infringement has saturated the market, effectively denying ParkerVision's entry and discouraging other firms from entering into joint venture relationships with ParkerVision to develop transceivers employing the patents-in-suit. Qualcomm's infringement further deprived ParkerVision of the opportunity to have its down-conversion technology licensed in over ████████ receiver and transceiver products. Both the saturation of the market and the lost business opportunity have eroded ParkerVision's credibility and brand recognition, which harms are direct results of Qualcomm's infringement.

-13-

*See Apple*, No. 2013-1129, slip op. at 15-16 (noting that "suffer[ing] irreparable erosion in reputation and brand distinction" is directly linked to a defendant's infringement and satisfies the nexus requirement (citing *Douglas Dynamics*, 717 F.3d at 1344)).

Furthermore, the benefits of the patents-in-suit drove consumer demand for the infringing products, establishing a causal nexus. ParkerVision need not show that the patented down-conversion technology is the sole or exclusive reason for consumer demand; it need only "show *some* connection between the patented feature and demand for [Qualcomm's] products." *See Apple*, No. 2013-1129, slip op. at 18-20 (emphasis added). The Federal Circuit has explained:

> There might be a variety of ways to make this required showing, for example, with evidence that a patented feature is one of several features that cause consumers to make their purchasing decisions. It might also be shown with evidence that the inclusion of a patented feature makes a product significantly more desirable. Conversely, it might be shown with evidence that the absence of a patented feature would make a product significantly less desirable.

*Id.* at 19-20. The benefits of the patents-in-suit drove demand for Qualcomm's infringing products. *See* Trial Tr. 10/17 at 160:1-12, 160:23-161:20. As Mr. Benoit and Mr. Parker explained at trial, the demand for the features enabled by ParkerVision's patents-in-suit (such as multimode operation, smaller size, and better power consumption) has increased dramatically, and continues to climb, in conjunction with the increase in popularity of smartphones that require features such as "additional receiver inputs which would provide faster data rates." Trial Tr. 10/17 at 160:11-12, 138:2-20; *see* ███████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████ During the injunction hearing, ██████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

-14-

 Injunction Hr'g Tr., 10/22 at 60:20-61:6, 95:16-96:11.

*Id.* at 85:18-86:10. The benefits of ParkerVision's technology drive consumer demand for the infringing products and establish a direct relationship between Qualcomm's infringement and ParkerVision's harm.[9]

### B.    Monetary Damages Are Inadequate To Compensate ParkerVision.

1.    <u>Monetary damages do not account for the harm caused by Qualcomm's infringement and, at a minimum, would be difficult to calculate.</u>

Irreparable harm factors also apply to determining the adequacy of monetary damages. *See, e.g.*, *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1327-29 (Fed. Cir. 2008) (considering the first two *eBay* factors simultaneously); *Lewis v. S. S. Baune*, 534 F.2d 1115, 1124 (5th Cir. 1976) ("Often times the concept of 'irreparable injury' and 'no adequate remedy at law' are indistinguishable."). In addition to the irreparable harm discussed above, additional factors establish that monetary damages will not adequately compensate ParkerVision.

The nature of the transceiver market suggests monetary damages are inadequate. "[T]he structural nature of a 'design win' market favors a finding that monetary damages are inadequate." *Broadcom v. Qualcomm*, 543 F.3d at 703; *see also Broadcom v. Emulex*, 2012 U.S. Dist. LEXIS 129524, at *16. Qualcomm has saturated the market with its infringing products and will continue to do so absent injunctive relief. Despite the pioneering nature of ParkerVision's technology, Qualcomm would likely continue procuring design wins due to Qualcomm's

---

[9]    Qualcomm may argue that its baseband chips (or other functionality in the receiver/transceiver chips) are the sole driver of demand for the infringing products. *See, e.g.*, Trial Tr. 10/18 at 69:18-19. The jury's damages award presumably accounts for its consideration of this evidence and implicitly rejects this argument.

-15-

ubiquitous market presence and its incumbency advantages. *See* Injunction Hr'g Tr., 10/22 at 22:8-18. As Mr. Parker testified, ParkerVision would not be able to form ventures and relationships with other firms because they will not want to "compete against [Qualcomm] who has already captured the lion's share of the market by using this very technology" and who has "an unfair competitive head start on them." *Id.* at 22:21-24:18. Should the Court impose an ongoing, compulsory royalty in lieu of an injunction, ParkerVision's ability to enter the market with its patented technology would be compromised or precluded altogether. *See id.* It is impossible to value the opportunity created by Qualcomm's cessation of infringement, and the concomitant value of ParkerVision's opportunity to gain a toehold in the market.[10] *See Apple, Inc. v. Samsung Elecs. Corp.*, 678 F.3d 1314, 1337 (Fed. Cir. 2012) ("Because the loss of customers and the loss of future downstream purchases are difficult to quantify, these considerations support a finding that monetary damages would be insufficient to compensate [the patentee].") ; *z4 Techs.*, 434 F.Supp. 2d at 441 (discussed *supra* in Part III.A.2).[11]

Qualcomm's infringement and subsequent market saturation have caused ParkerVision incalculable harms. A patentee's right to exclude is difficult to value. *Broadcom v. Qualcomm*, 2007 U.S. Dist. LEXIS 97647, at *26. One court explained:

> When an infringer saturates the market for a patented invention with an infringing product or damages the patent holder's goodwill or brand name recognition by selling infringing products that infringer violates the patent holder's exclusionary right in a manner that cannot be compensated through monetary damages. This is because it is impossible to determine the portions of the market the patent owner would have secured but for the

---

[10]      While ParkerVision was able to calculate past damages owed by Qualcomm, this past damages calculation was a royalty "for the use made of the invention by [Qualcomm]." *See* 35 U.S.C. § 284 ¶ 1. ParkerVision's past damages calculation did not attempt to account for or quantify the irreparable harm to ParkerVision described above.

[11]      *See also supra* n.6.

infringer or how much damage was done to the patent owner's brand recognition or goodwill due to the infringement.

*Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech., Inc.*, 492 F. Supp. 2d 600, 605 (E.D. Tex. 2007).[12] If Qualcomm had licensed ParkerVision's down-conversion technology instead of infringing, today ParkerVision would have a significant market share. *See* Trial Tr., 10/18 at 13:11-19 (showing sale of over ███████ infringing products). Such a market share in the industry would have: (i) given ParkerVision brand recognition and customer goodwill as a result of the foothold in the industry; (ii) given ParkerVision the opportunity to joint venture with other companies before Qualcomm saturated the market with infringing products; (iii) allowed ParkerVision to further refine its down-conversion technology; and (iv) offered ParkerVision the chance to integrate, sell, or license its transmitter and other complimentary technology along with the down-conversion technology. All of these harms will be ongoing if Qualcomm's infringement continues. There is no remedy at law adequate to compensate ParkerVision for these harms.[13]

Not only is the calculation of ParkerVision's ongoing harm difficult, but an ongoing royalty fails to account for other contractual terms that ParkerVision could otherwise negotiate with Qualcomm. Monetary damages may be inadequate because a compulsory license through

---

[12]    *See also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010) ("It was not an abuse of discretion for the district court to conclude that monetary damages would be inadequate. In this case, a small company was practicing its patent, only to suffer a loss of market share, brand recognition, and customer goodwill as the result of the defendant's infringing acts. Such losses may frequently defy attempts at valuation, particularly when the infringing acts significantly change the relevant market, as occurred here. . . . The loss associated with these effects is particularly difficult to quantify. Difficulty in estimating monetary damages is evidence that remedies at law are inadequate.").

[13]    Even if money could somehow compensate ParkerVision for this harm and the loss of exclusion, it would be difficult to calculate or quantify that amount of money. *See i4i*, 598 F.3d at 862 (noting that harms associated with small company's loss of market share, brand recognition, and goodwill "may frequently defy attempts at valuation" and "is particularly difficult to quantify").

-17-

an ongoing royalty may not "include other non-monetary license terms that are as important as monetary terms." *See C.S.I.R.O.*, 492 F. Supp. 2d at 606; *see also Transocean Offshore Deepwater Drilling, Inc. v. Global Santa Fe Corp.*, No. 03-CV-2910, 2006 U.S. Dist. LEXIS 93408, at *19 (S.D. Tex. Dec. 27, 2006) ("[T]he court is persuaded that if it does not enter a permanent injunction, it will force a compulsory license on Transocean that will not contain any of the commercial business terms typically used by a patent holder to control its technology or limit encroachment on its market share."). An ongoing royalty would deprive ParkerVision of the ability to bargain for terms, such as (i) a cross-license to Qualcomm's patents; (ii) a public acknowledgement of the validity of ParkerVision's patents; (iii) a limited license covering only a particular application or feature; and (iv) venue and choice of law provisions. No monetary remedy can account for this injury.

### 2.     ParkerVision's licensing does not justify denying equitable relief.

ParkerVision's licensing does not justify denying equitable relief. Although a patentee's willingness to license its patents can weigh against a finding of irreparable harm or inadequacy of monetary damages, past licensing is not dispositive. *See Acumed*, 551 F.3d at 1328 ("While the fact that a patentee has previously chosen to license the patent may indicate that a reasonable royalty does compensate for an infringement, that is but one factor for the district court to consider."). Indeed, in *eBay* the Supreme Court expressly rejected such a categorical rule. *See eBay*, 547 U.S. at 393 (rejecting the district court's conclusion that "a plaintiff's willingness to license its patents . . . would be sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue"). Instead, the court must determine whether there are "relevant differences" between the past licenses and the current situation. *See Apple v.*

-18-

*Samsung*, No. 2013-1129, slip op. at 31-32 (criticizing the district court's focus on the patentee's past licensing practices without "exploring any relevant differences from the current situation").

Here, the relevant differences between ParkerVision's previous licenses to certain third-parties for certain specific business reasons does not justify denying equitable relief, especially considering that ParkerVision's past licenses were to market partners, not direct competitors.[14] *See Accumed*, 551 F.3d at 1328 (finding no clear error in district court's distinguishing of a prior license based on the fact that the licensee was not a direct competitor). ParkerVision has licensed the patents-in-suit to two companies: Symbol Technologies and VIA Telecom. Trial Tr., 10/8 at 198:11-19. With respect to the Symbol license, ParkerVision licensed its patented technology to a WLAN company for use in development of WLAN products. *See id.* at 101:14-21. The Symbol license provided ParkerVision a partnership opportunity to bring its down-conversion technology to market in combination with Symbol-provided WLAN baseband or media access controller chips. *See id.* at 198:7-10. With respect to the VIA license, ParkerVision licensed its receive and transmit technologies because VIA provided ParkerVision with the opportunity to combine its receive and transmit technologies with VIA's baseband chip. Trial Tr., 10/17 at 75:16-76:23. Both Symbol and VIA did not have receiver/transceiver chips at the time of the respective licenses and both licenses provided ParkerVision a partnership opportunity to bring its patented receiver technology to market. *See* Trial Tr., 10/9 at 101:14-18 (Symbol), 152:20-153:9 (VIA).

In contrast to Symbol and VIA, Qualcomm is a direct competitor of ParkerVision's commercialization efforts, especially its forthcoming CDMA transceiver chips. *See id.* at 75:16-

---

[14]     In fact, Qualcomm and ParkerVision had extensive negotiations discussions from 1998 to 1999, during which Qualcomm offered ParkerVision significant monetary value that ParkerVision rejected and declined to grant Qualcomm a license. *See, e.g.*, Trial Tr., 10/9 at 54:15-55:2 (Mr. Parker testifying he walked away from the Qualcomm negotiations).

19. Accordingly, ParkerVision's licensing of the patents-in-suit to market partners in an effort to commercialize the technology is a *stark contrast* to granting Qualcomm (a dominant competitor with whom ParkerVision terminated negotiations over the same patents) a compulsory license that will only serve to improve Qualcomm's position. *See Broadcom v. Qualcomm*, 2007 U.S. Dist. LEXIS 97647, at *18.

3.    <u>Qualcomm's ability to pay a judgment is not relevant.</u>

Qualcomm's ability to pay a monetary judgment does not tip this factor in Qualcomm's favor. While an infringer's *inability* to pay a judgment may demonstrate the inadequacy of monetary damages, *see Robert Bosch*, 659 F.3d at 1155-56, a defendant's *ability* to pay a judgment does not indicate that monetary damages are an adequate remedy. *Apple v. Samsung*, No. 2013-1129, slip op. at 29. "Rather, a defendant's ability to pay merely indicates that a court should look to other considerations to determine whether a damages award will adequately compensate the patentee for the harm caused by continuing infringement." *Id.*

**C.    Considering The Balance Of Hardships An Injunction Is Warranted.**

The "balance of hardships" factor assesses the relative effect of granting or denying an injunction on the parties. This analysis may include the parties' sizes, products, and revenue sources. *i4i*, 598 F.3d at 862. ParkerVision is a relatively small company with just over 50 employees. Injunction Hr'g Tr., 10/22 at 4:7-8. In contrast, Qualcomm is one of the most successful wireless communications companies in the world with thousands of employees and █████

███████████████████████████████████████████████████████████████

███ *See id.* at 80:24-25, 88:25-89:8. ██████████████████████████████████

█████████████████████████████ Trial Tr., 10/17 at 147:13-21. ParkerVision's patents-in-suit are part of ParkerVision's key intellectual property and technology offerings. Qualcomm,

-20-

on the other hand, claims that the infringed technology "is but a small component of the [infringing products] that, by itself, does not drive demand for Qualcomm's Products." Ex. C (JX27) at 5. The far greater importance of the patented technology to ParkerVision and its current development plans for the patents-in-suit, combined with the past irreparable harm that Qualcomm's infringement has caused ParkerVision, favors issuance of a permanent injunction. *See Robert Bosch*, 659 F.3d at1156 ("[R]equiring [patentee] to compete against its own patented invention, with the resultant harms described above, places a substantial hardship on [the patentee]. This factor, therefore, favors entry of an injunction in this case.").

In contrast to the irreparable harm that ParkerVision continues to suffer because of Qualcomm's infringement, Qualcomm would bear a lesser hardship in complying with an injunction. Given that ParkerVision's proposed injunction has an effective date of April 24, 2015 (18 months from the jury's verdict), Qualcomm's burden in complying with an injunction is greatly reduced.[15] This is especially true given that any difficulty in complying with an injunction in 18 months would be largely attributable to Qualcomm's failure to take action to prepare for the possibility of an injunction once suit was filed and after the jury returned its verdict. *See Arthrocare Corp. v. Smith & Nephew, Inc.*, 315 F. Supp. 2d 615, 622 (D. Del. 2004) (noting that the defendant "could have utilized the time between the jury verdict and present to implement the transition it now requests.").

ParkerVision's proposed 18-month sunset provision appropriately balances ParkerVision's rights and the hardship to Qualcomm (and its customers). ████████████

---

[15]    If the Court adopts a sunset provision in its permanent injunction order, ParkerVision requests that the Court order Qualcomm to pay ongoing royalties during such period. ParkerVision further requests that the amount of ongoing royalties be treble the effective royalty rate found by the jury. *See* ParkerVision's Motion for Ongoing Royalties, dkt. __ (filed Dec. 2, 2013).



[16] Injunction Hr'g Tr. 10/22 at 70:24-71:8.

[17]

*see id.* at 104:13-19,

In

addition, Qualcomm should not be heard to complain about undue hardship in the RFR6000

redesign effort after arguing before the jury that the availability of the RFR6000 as a non-

infringing alternative reduced the reasonable royalty that ParkerVision was due for Qualcomm's

past infringement. *See* Trial Tr., 10/21 at 82:4-83:3 (arguing that in the hypothetical negotiations

Qualcomm was in a better position than VIA because Qualcomm had non-infringing alternatives

so "VIA would have been willing to pay a little bit more than Qualcomm would have been

willing to pay"). In fact, Dr. Leonard testified on Qualcomm's behalf that Mr. Benoit's

assumption of no non-infringing alternatives was "just not correct" because the "really smart

people" at Qualcomm "would have gone out and figured out a way to get ZIF to work and other

products would have achieved the same benefits." *Id.* at 96:26-97:7. And, in any event, including

the time since suit was filed with the 18-month sunset provision

ParkerVision should not be punished, nor

---

[16]      In *Broadcom v. Qualcomm*, Qualcomm proposed an 18-month sunset period for its infringing baseband chips. 2007 U.S. Dist. LEXIS 97647, at *28.

[17]      *See Broadcom v. Qualcomm*, 2007 U.S. Dist. LEXIS 97647, at *17 (giving little credit to Qualcomm's assertion that the prospects for "design arounds" for an infringed patent were uncertain "in light of the technical talent which Qualcomm possesses and the obvious advantage to Qualcomm in the present context of doubting its own capabilities").

Qualcomm rewarded, for Qualcomm's failure to start re-design work earlier. *See Broadcom v. Qualcomm*, 543 F.3d at 704 (finding district could did not abuse its discretion in setting 20-month sunset period in light of time to bring product to market was found to be 18 months and "in light of the fact that Qualcomm could have … begun design-around efforts upon receipt of the complaint, which Broadcom filed more than two years prior to the jury verdict").

Finally, Qualcomm cannot now argue that it should be excused from an injunction due to the commercial success and development costs associated with the infringing products.[18] "[An infringer] should not be permitted to prevail on a theory that successful exploitation of infringing technology shields a party from injunctive relief." *Broadcom v. Qualcomm*, 543 F.3d at 704. "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986). Nor can Qualcomm argue that a permanent injunction would cause a great hardship on its baseband product line. ████

███████████████████████████████████████████████████

███████████████████████████████████████ Injunction Hr'g Tr., 10/22 at 96:22-97:16; *see also* ███████████████████████████

███████████████████████████████████████ This choice was a strategic and voluntary business decision that Qualcomm made and greatly profited

---

[18]    *See i4i*, 598 F.3d at 863 ("The district court's analysis properly ignored the expenses Microsoft incurred in creating the infringing products. Similarly irrelevant are the consequences to Microsoft of its infringement, such as the cost of redesigning the infringing products. [N]either commercial success, nor sunk development costs, shield an infringer from injunctive relief. Microsoft is not entitled to continue infringing simply because it successfully exploited its infringement." (citing *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008))).

937336

from during its time of infringement.[19] Regardless, the sunset provision in ParkerVision's proposed injunction provides Qualcomm ample time to ameliorate the harm to its baseband chips. For example, Qualcomm may develop a non-infringing receiver/transceiver substitute or it may open up or license its transceiver/baseband interface to a competitor. Consequently, the proposed injunction would only affect a portion of Qualcomm's product line—and one must keep in mind that any harm or loss to Qualcomm stems from the fact of infringement, which harm it has neglected to lessen despite ParkerVision filing suit over two years ago.

### D.     An Injunction Promotes The Public Interest.

The public interest is served by issuing an injunction that protects ParkerVision's patent rights. "Generally, public policy favors the enforcement of patent rights." *C.S.I.R.O.*, 492 F. Supp. 2d at 607; *see also id.* ("The public has an interest in a strong patent system. ... Permanent injunctions serve that interest.") (citations omitted). "Where products do not relate to a significant compelling public interest, such as health or safety, this factor weighs in favor of an injunction." *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 394 (E.D. Tex. 2009). Qualcomm's infringing products are not essential for the public health or welfare, and this factor therefore weighs in favor of an injunction. Nor was there any testimony regarding public health or welfare harm by any witness.[20]

---

[19]     By combining the sale of infringing chips to its baseband chips, Qualcomm's infringement has enabled convoyed sales and profits from Qualcomm's transmit and baseband technologies. Injunction Hr'g Tr., 10/22 at 80:16-20 ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

[20]     ParkerVision does not address the injunction opinions of Qualcomm witnesses, *e.g.*, Mr. Hanna and Dr. Williams, that are not in evidence. Although the Court indicated evidence relating to an injunction should be produced at the conclusion of trial, Qualcomm chose not to present these witnesses. Injunction Hr'g Tr., 10/22 at 106:18-108:2.

The sunset period of the proposed injunction ameliorates any harm of an injunction upon Qualcomm's customers. Courts may exercise their discretion in crafting an injunction in order to "balance[] the policy of protecting the patentee's rights against the desirability of avoiding immediate market disruptions." *See Broadcom v. Qualcomm*, 2007 U.S. Dist. LEXIS 97647, at *27, *aff'd*, 543 F.3d at 704. ParkerVision concedes that network carriers and handset OEMs that currently employ Qualcomm's infringing chips in their wireless products could be disrupted by an immediate injunction. However, this adverse impact is ameliorated by the sunset provision in the proposed injunction. Specifically, the 18-month sunset provision balances ParkerVision's exclusionary rights against an immediate injunction's disruptive effect on OEMs and network carriers. An 18-month sunset period should be sufficient time to allow Qualcomm time to develop non-infringing substitutes[21] and for its customers to make the necessary accommodations. Similarly, an 18-month sunset period would allow Qualcomm's competitors to provide substitute products. Accordingly, the public interest is served by the issuance of an injunction with a sunset provision.

## IV.   CONCLUSION

As discussed above, each of the *eBay* factors favors entry of an injunction. Accordingly, ParkerVision respectfully requests that the Court enter a permanent injunction preventing Qualcomm from continuing its infringement of ParkerVision's patents.[22]

---

[21]      *See supra* n.17.

[22]      If the Court determines that ParkerVision is not entitled to an injunction, ParkerVision requests that the Court order ongoing royalties that adequately compensate ParkerVision not only for Qualcomm's use of the patents-in-suit, but also for ParkerVision's ongoing harm from lost brand name recognition, harmed credibility, impaired market entry, and lost good will. *See* ParkerVision's Motion for Ongoing Royalties, dkt. __ (filed Dec. 2, 2013).

937336

Dated: December 2, 2013.

Respectfully submitted,

**McKOOL SMITH, P.C.**

/s/ *Douglas A. Cawley*
Douglas A. Cawley, Lead Attorney
Texas State Bar No. 04035500
E-mail: dcawley@mckoolsmith.com
Richard A. Kamprath
Texas State Bar No.: 24078767
rkamprath@mckoolsmith.com
Ivan Wang
Texas State Bar No.: 24042679
E-mail: iwang@mckoolsmith.com
McKool Smith P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

T. Gordon White
Texas State Bar No. 21333000
gwhite@mckoolsmith.com
Kevin L. Burgess
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
Josh W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
Leah Buratti
Texas State Bar No. 24064897
lburatti@mckoolsmith.com
Mario A. Apreotesi
Texas State Bar No. 24080772
mapreotesi@mckoolsmith.com
McKool Smith P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

**SMITH HULSEY & BUSEY**

/s/ *James A. Bolling*
Stephen D. Busey
James A. Bolling
Florida Bar Number 117790
Florida Bar Number 901253
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
jbolling@smithhulsey.com

**ATTORNEYS FOR PLAINTIFF
PARKERVISION, INC.**

937336

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, December 2, 2013, I served the foregoing on all counsel of record via ECF.

/s/ Mario Apreotesi
Mario Apreotesi