# EXHIBIT C

UNITED STATES DISTRICT COURT
THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| PARKERVISION, INC.,<br><br>    *Plaintiff,*<br><br>    v.<br><br>QUALCOMM INCORPORATED,<br><br>    *Defendant.* | Case No. 3:11-cv-719-J-37-TEM |

| |
|---|
| QUALCOMM INCORPORATED,<br><br>    *Counterclaim Plaintiff,*<br><br>    v.<br>PARKERVISION, INC., and<br>STERNE, KESSLER, GOLDSTEIN & FOX PLLC<br><br>    *Counterclaim Defendants.* |

### QUALCOMM'S OBJECTIONS AND RESPONSES TO PARKERVISION'S THIRD SET OF INTERROGATORIES (NOS. 15-18)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Local Rules for the Middle District of Florida ("Local Rules"), Qualcomm Incorporated ("Qualcomm") submits the following objections and responses to ParkerVision, Inc.'s ("ParkerVision") Third Set of Interrogatories.

### General Objections

Qualcomm states the following general objections to ParkerVision's Third Set of Interrogatories and incorporates them by reference into Qualcomm's specific objections and responses to ParkerVision's Third Set of Interrogatories, where appropriate.

Qualcomm, through its attorneys, and for its responses to ParkerVision's Third Set of Interrogatories, states as follows:

**INTERROGATORY NO. 15:**

With respect to each of the products identified by you in response to ParkerVision's Interrogatory No. 2, identify and describe any factor that you contend is relevant to whether or not an injunction should issue with respect to the factors outlined by the Supreme Court in *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006). Your answer should include an identification of documents related to your response and the identification of the person most knowledgeable about your response.

**Response to Interrogatory No. 15**:

Qualcomm objects to this interrogatory to the extent it prematurely seeks information that will be the subject of expert discovery.

Subject to these and its general objections, Qualcomm responds as follows:

Qualcomm has not directly or indirectly infringed any claim of the Patents-in-Suit. Even if ParkerVision were able to prove infringement of a valid claim that it has asserted in this case, ParkerVision would not be entitled to injunctive relief for at least the following reasons.

ParkerVision cannot establish that it has suffered an irreparable injury or that it lacks an adequate remedy at law. The fact that ParkerVision does not manufacture or sell any receiver product that competes with the products identified by Qualcomm in its Second Supplemental Exhibit B to its Supplemental Response to Interrogatory No. 2 (the "Exhibit B Products"), together with ParkerVision's past willingness to grant licenses to the technology claimed by the Patents-in-Suit, demonstrate that money damages in the form of a reasonable royalty would be sufficient to remedy any harm to ParkerVision caused by Qualcomm's

4

alleged infringement.  Further, the Accused Instrumentality is but a small component of the Exhibit B Products that, by itself, does not drive demand for Qualcomm's Products.  Thus, a reasonable royalty, and not an injunction, would be the appropriate remedy for any infringement.

ParkerVision also cannot show that Qualcomm's alleged infringement causes it irreparable harm by preventing ParkerVision from competing in the market for RF chips.  There is no evidence that ParkerVision is able to compete with Qualcomm, or to fill the void in the market that would result if Qualcomm were enjoined.

The balance of hardships weighs strongly against an injunction.  Qualcomm has made enormous capital investments in the allegedly infringing chips since 2007, and the costs associated with transitioning to one of the many non-infringing alternatives identified in response to ParkerVision's Interrogatory No. 7 at this time, years after the design of the Exhibit B Products and their incorporation of the Accused Instrumentality, would be significant.  Additionally, an injunction would deprive Qualcomm of the value of its substantial inventory of chips and cause Qualcomm to lose goodwill with its customers.  By contrast, because ParkerVision does not offer products that compete with the Exhibit B Products and could not possibly meet the demand for the allegedly infringing products if an injunction were issued, no significant benefits would inure to ParkerVision from an injunction.  Indeed, ParkerVision's continued failure to produce a commercially viable RF product incorporating the technology claimed in the Patents-in-Suit, and its history of mismanagement and outright fraud, demonstrate that ParkerVision could not possibly hope to compete in the market even if Qualcomm were enjoined.

The public interest also weighs against an injunction in this case because an injunction would cause significant harm to several third parties.  An injunction preventing

5

the importation, sale or use of wireless devices incorporating the Exhibit B Products would cause significant disruption to the market for such devices for a period of at least several months while Qualcomm and its customers made the transition to non-infringing alternatives. This disruption would mean that third party original equipment manufacturers ("OEMs")—*i.e.*, manufacturers of cellphones and other wireless devices— and wireless carriers ("Carriers") could not meet consumer demand for wireless devices, resulting in decreased competition and increased prices for consumers.

Additionally, OEMs and Carriers would be harmed because an injunction would decrease the value of their inventory of wireless devices incorporating the allegedly infringing products. Similarly, third party manufacturers of the Exhibit B Products would be harmed because (i) the value of their inventories would decrease; and (ii) they would incur costs in transitioning their facilities to the manufacture of non-infringing alternatives.

Examples of documents related to this response include ParkerVision's Form 10-K from 1993 until the present and the documents produced by ParkerVision at CONF-PV00262359 and CONF-PV00190777.

**INTERROGATORY NO. 16:**

For each year since 1997, identify the twenty largest importers into the United States of each of the products identified by you in response to ParkerVision's Interrogatory No. 2 (including the volume and dollar-value of each product imported by each importer for each year). Your answer should include an identification of documents related to your response and the identification of the person most knowledgeable about your response.

6