**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE**

| | |
|---|---|
| PARKERVISION, INC., | Civil Action No. 3:11-CV-719-J-37RBD-JRK |
| Plaintiff, | |
| vs. | |
| QUALCOMM INCORPORATED, | |
| Defendant. | |

## PARKERVISION, INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, A NEW TRIAL, ON WILLFULNESS

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   LEGAL STANDARD...........................................................................................2

III.  ARGUMENT .......................................................................................................2

      A.    The Court Should Grant JMOL On Willfulness. ....................................2

            1.    Qualcomm had actual knowledge of each of the patents-in-suit
                  before it began infringing..............................................................4

            2.    Qualcomm knew of ParkerVision's energy transfer sampling
                  technology and possessed prototypes that embody each of the
                  patents-in-suit................................................................................6

            3.    Qualcomm concluded after due diligence that ParkerVision's
                  patents are valid and that use of energy transfer sampling
                  technology without a license would infringe. ...............................6

            4.    Qualcomm revisited the ParkerVision approach shortly before
                  infringement began. .......................................................................8

            5.    Qualcomm's trial defenses lacked any merit. ...............................8

      B.    In the Alternative, The Court Should Grant a New Trial on Willfulness. .............11

            1.    It was substantial error to prevent ParkerVision from discussing
                  Qualcomm's failure to obtain an opinion of counsel................................11

            2.    It was substantial error on the issue of willfulness to exclude
                  PX964 on authenticity grounds..................................................15

            3.    It was substantial error to exclude evidence of the 1998-2000
                  negotiations between ParkerVision and Qualcomm. ................................19

            4.    It was substantial error to deny ParkerVision's request for an
                  instruction on willfulness as to the totality of the circumstances. .............20

            5.    The cumulative effect of evidentiary errors warrants a new trial. .............22

IV.   CONCLUSION...................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps">CASES</span>

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
    682 F.3d 1003 (Fed. Cir. 2012).................................................................................3

*Birchwood Labs., Inc. v. Battenfeld Techs., Inc.*,
    No. 09-3555, 2012 U.S. Dist. LEXIS 80292 (D. Minn. May 21, 2012)..................13

*Broadcom Corp. v. Qualcomm, Inc.*,
    543 F.3d 683 (Fed. Cir. 2008)................................................................................13

*Collins v. Wayne Corp.*,
    621 F.2d 777 (5th Cir. 1980) .................................................................................22

*Creative Internet Adver. Corp. v. Yahoo! Inc.*,
    No. 6:07cv354, 2009 U.S. Dist. LEXIS 65690 (E.D. Tex. July 30, 2009)...........13

*Estes v. Dick Smith Ford, Inc.*,
    856 F.2d 1097 (8th Cir. 1988) ...............................................................................23

*Finjan Software, Ltd. v. Secure Computing Corp.*,
    No. 06-369, 2009 U.S. Dist. LEXIS 72825 (D. Del. Aug. 18, 2009) .....................13

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010), *aff'd* 131 S. Ct. 2238 (2011) ...................................8

*In re Seagate Tech., LLC*,
    497 F.3d 1360 (Fed. Cir. 2007) (en banc).......................................................3, 8, 12

*Johnson v. Clark*,
    484 F. Supp. 2d 1242 (M.D. Fla. 2007).................................................................22

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
    383 F.3d 1337 (Fed. Cir. 2004) (en banc)...........................................................3, 21

*Koninklijke Philips Elecs. N.V. v. Cinram Int'l*,
    No. 08-0515, 2012 U.S. Dist. LEXIS 135839 (S.D.N.Y. Aug. 23, 2012).........13, 14

*Malek v. Federal Ins. Co.*,
    994 F.2d 49 (2d Cir. 1993).....................................................................................22

*McCray v. R.J. Reynolds Tobacco Co.*,
    No. 3:09-cv-11895-J-37JBT, 2012 U.S. Dist. LEXIS 80382 (M.D. Fla. June 11, 2012)2, 11, 12

*Meyer Intellectual Props. Ltd. v. Bodum, Inc.*,
    690 F.3d 1354 (Fed. Cir. 2012)..............................................................................23

*MobileMedia Ideas, LLC v. Apple Inc.*,
No. 10-258-SLR-MPT, 2013 U.S. Dist. LEXIS 126693 (D. Del. Sept. 5, 2013).....................5

*Nobelpharma AB v. Implant Innovations, Inc.*,
141 F.3d 1059 (Fed. Cir. 1998)........................................................................2

*Power Integrations, Inc. v. Fairchild Semiconductor, Int'l, Inc.*,
725 F. Supp. 2d 474 (D. Del. 2010)..................................................................9

*Tyco Healthcare Group, LP v. Applied Med. Res. Corp.*,
No. 9:06-CV-151, 2009 U.S. Dist. LEXIS 125377 (E.D. Tex. Mar. 30, 2009) .....................14

*United States v. Fluker*,
698 F.3d 988 (7th Cir. 2012) .........................................................................17

*United States v. Hoffman-Vaile*,
568 F.3d 1335 (11th Cir. 2009) ......................................................................23

*United States v. Siddiqui*,
235 F.3d 1318 (11th Cir. 2000) ..................................................................17, 18

*WMS Gaming Inc. v. Int'l Game Tech.*,
184 F.3d 1339 (Fed. Cir. 1999)........................................................................3

*z4 Techs., Inc. v. Microsoft Corp.*,
2006 U.S. Dist. LEXIS 58374 (E.D. Tex. Aug. 18, 2006) ...................................14

## OTHER AUTHORITIES

FED. R. CIV. P. 37(c)(1)................................................................................15

FED. R. CIV. P. 50(b) ....................................................................................1

FED. R. CIV. P. 59(a)(1)................................................................................2

FED. R. EV. 901(a)......................................................................................16

FED. R. EV. 901(b)(4)..................................................................................16

# I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure Rule 50(b), ParkerVision files this renewed motion for judgment as a matter of law on willfulness. The Court should grant JMOL that Qualcomm's infringement of the patents-in-suit was willful. In the alternative, the Court should grant a new trial under Rule 59 on the question of Qualcomm's willful infringement.

The evidence of willfulness is overwhelming and unrebutted: the trial record establishes that Qualcomm knew of ParkerVision's patents; concluded they were likely valid after a careful investigation; but nevertheless decided, when faced with its own failures, to "go over parker vision['s] approach and see if we can make it work." PX322. Qualcomm's knowing intention to make ParkerVision's approach work is classic willful infringement, and no jury could reasonably have concluded otherwise. JMOL is thus appropriate on this record.

That the jury here (unreasonably) did conclude otherwise can likely be traced to the evidentiary and instructional errors at trial touching on willfulness. The jury was not instructed, as it should have been, to consider evidence of copying, of failure to secure advice of counsel, and of the weaknesses in Qualcomm's proffered defenses. And highly probative evidence was excluded from the record—evidence relating to PX964; to the 1998-2000 negotiations between the parties; and to Qualcomm's failure to secure advice of counsel. Should the Court decide not to grant JMOL, therefore, these multiple substantial errors warrant, at the very least, a new trial on willfulness.

## II.     LEGAL STANDARD

A motion for JMOL with regard to a claim or defense upon which the movant bears the burden of proof at trial should be granted where: (1) the movant has established its case by evidence that the jury would not be at liberty to disbelieve, and (2) the only reasonable conclusion is in the movant's favor. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1064 (Fed. Cir. 1998).

A court may order a new trial under Rule 59 on all or some of the issues in the lawsuit. FED. R. CIV. P. 59(a)(1). "The Court may grant a motion for a new trial if the jury's verdict was contrary to the great, not merely the greater, weight of the evidence." *McCray v. R.J. Reynolds Tobacco Co.*, No. 3:09-cv-11895-J-37JBT, 2012 U.S. Dist. LEXIS 80382, at *5-6 (M.D. Fla. June 11, 2012). "The trial judge should independently weigh the evidence, and must view the evidence favoring the jury verdict, as well as the evidence favoring the moving party." *Id.* "The Court also has discretion to grant a motion for a new trial if it finds 'that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.'" *Id.* (quoting *Montgomery Ward & Co.*, 311 U.S. 243, 251 (1940)).

## III.    ARGUMENT

### A.     The Court Should Grant JMOL On Willfulness.

To show willful infringement, the plaintiff must prove by clear and convincing evidence (1) that the accused infringer "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent"; and (2) "this objectively-defined risk . . .

was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). The first prong of *Seagate* is a legal determination to be made by the Court. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012). The second prong presents a question to be decided by the jury. *In re Seagate*, 497 F.3d at 1371. Willful infringement findings are evaluated "in view of the totality" of the circumstances. *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999). Such circumstances include, for example, whether Qualcomm intentionally copied the claimed invention or a product covered by ParkerVision's patents; whether Qualcomm obtained and followed legal advice with regard to infringement; and whether Qualcomm presented a substantial defense to infringement. *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1346-47 (Fed. Cir. 2004) (en banc).

ParkerVision presented overwhelming and unrebutted evidence at trial that Qualcomm's infringement was willful. Following negotiations between the parties in 1998 and 1999, Qualcomm had actual knowledge of ParkerVision's patents. Trial Tr. 10/8 at 39:2-40:24; JX28 at 5. Following detailed investigations into the patents' validity and scope, Qualcomm's most senior engineers concluded that they disclosed novel inventions: "PV is doing something different." PX154. And following Qualcomm's own failed attempts to accomplish what these patents taught, its engineers decided simply to take the route ParkerVision had disclosed: "go over parker vision['s] approach and see if we can make it work." PX322. This is a textbook case of willful infringement, and the jury could not reasonably have concluded otherwise.

### 1. Qualcomm had actual knowledge of each of the patents-in-suit before it began infringing.

In 1999, ParkerVision informed Qualcomm that ParkerVision had patents pending for its down-conversion technology. And the evidence shows that Qualcomm executives, attorneys, and product designers had actual knowledge of the patents-in-suit before Qualcomm's infringement began. David Sorrells, inventor of the patents-in-suit, provided testimony that in 1999, ParkerVision disclosed to Qualcomm's executives, attorneys, and product designers ten pending U.S. patent applications, including the application for what became the '551 Patent. Trial Tr. 10/8 at 38:14-40:24; PX1000. A few days after the disclosure of ParkerVision's patent filings, Charles Wheatley (Qualcomm's Senior Vice President for Technology) described to other Qualcomm executives a conversation he had with Ben Miller (Qualcomm's Senior Vice President, Chief Patent Strategist, and in-house counsel): "Ben Miller and I spent about 6 hours [Wednesday] looking over some of the patent applications prepared by Parker Vision. . . . Bottom line is, I think it is going to be very difficult for anybody to ever use this technique without stepping on one or more of their claims." Trial Tr. 10/8 at 40:25-42:22; PX699.

Qualcomm has admitted to pre-suit knowledge of the '551 Patent. Press releases concerning the issuance of the '551 Patent were found in the files of Qualcomm attorney Adam Tachner. Trial Tr. 10/9 at 183:1-185:2; JX28. A copy of the '551 Patent was found in the custodial files of Paul Peterzell. Trial Tr. 10/9 at 183:1-185:2; JX28. Qualcomm attorney Ray Hom ordered a copy of the '551 Patent and its file history in January 2001. JX28. Qualcomm attorneys Sean English and Ray Hom, and Qualcomm's Monique Hatch, Victoria Pacey, and Stephanie Young were aware of the '551 Patent in or before February 2001. *Id.*

Qualcomm attorneys Phil Wadsworth, Sean English, and Charles Brown received emails and documents protected by attorney-client privilege and the work product doctrine relating to the '551 Patent. JX28. A copy of the prosecution history of the '551 Patent was also found in the custodial files of Qualcomm attorney Charles Brown. *Id.*

Additionally, Qualcomm admitted to pre-suit knowledge of the '371 Patent. Trial Tr. 10/9 at 183:22-185:4; *see, e.g.*, JX28. ParkerVision produced evidence through the testimony of Dr. Prucnal, Mr. Sorrells, Mr. Kantak, and Dr. Wheatley that Qualcomm was aware of the '371 Patent. Trial Tr. 10/8 at 41:18-42:22, 256:7-8; Ex. A (Wheatley Testimony) at 148:24-150:1; Trial Tr. 10/9 at 184:23-185:24, 159:10; Ex. B (Kantak Testimony) at 82:9-82:17. Qualcomm admitted that its most senior executives were aware of the '371 Patent. JX28. In May 2002, Qualcomm co-founder Franklin Antonio received a ParkerVision press release concerning the issuance of the '371 Patent. Trial Tr. 10/9 at 183:1-185:2; JX28; PX584. Shortly thereafter, Franklin Antonio forwarded this press release to other Qualcomm executives, including at least Klein Gilhousen (co-founder and Senior Vice President of Technology), Roberto Padovani (Executive Vice President and Chief Technical Officer), and Charles Wheatley. JX28. Also in May 2002, Franklin Antonio and Qualcomm attorney Sean English had email communications protected by attorney-client privilege regarding a ParkerVision patent. *Id.*

The evidence at trial thus established conclusively—and Qualcomm did not dispute—that Qualcomm had pre-suit knowledge of the '551 and '371 Patents.[1] Trial Tr. 10/9 at

---

[1] While ParkerVision believes that JMOL is appropriate on all of the patents-in-suit, at the very least JMOL on willfulness is warranted as to the '551 and '371 Patents. *See MobileMedia Ideas, LLC v. Apple Inc.*, No. 10-258-SLR-MPT, 2013 U.S. Dist. LEXIS

160:7-263:11; *see* JX28. Qualcomm's undisputed knowledge of the '551 and '371 Patents also establishes that Qualcomm either knew of, or was willfully blind to, the other patents-in-suit. The '518 Patent is a continuation of the '551 Patent. PX2. The '371 Patent is related to the '551 Patent as well as the '518 Patent. PX3. And Qualcomm was well aware that ParkerVision had patents pending on its downconversion technology during the 1998-1999 negotiations, as ParkerVision consistently informed Qualcomm about its patent filings. PX37; PX64; PX307; PX98; PX959; PX156; PX700; PX584; PX322; PX154. Thus, Qualcomm knew, or at the very least should have known, about each of the patents-in-suit. PX37; PX64; PX307; PX98; PX959; PX156; PX700; PX584; PX322; PX154.

> ### 2. Qualcomm knew of ParkerVision's energy transfer sampling technology and possessed prototypes that embody each of the patents-in-suit.

ParkerVision presented unrefuted evidence that Qualcomm met with ParkerVision to discuss its patented technology, viewed demonstrations of that patented technology, and retained demonstration prototypes that embodied the ParkerVision technology covered by each of the patents-in-suit. Trial Tr. 10/7 at 193:16-281:17; Trial Tr. 10/8 at 9:12-93:10; Trial Tr. 10/8 at 256:6-8; Trial Tr. 10/9 at 158:21-23; Trial Tr. 10/9 at 5:22-62:25. *See, e.g.*, PX86; PX177; PX37; PX45; PX64; PX307; PX091; PX097; PX114; PX115; PX154; PX164; JX28; PX133; PX162; PX699; PX322; PX92; PX307; PX833; PX834; PX177; PX322; PX97.

> ### 3. Qualcomm concluded after due diligence that ParkerVision's patents are valid and that use of energy transfer sampling technology without a license would infringe.

---

126693, at *62 (D. Del. Sept. 5, 2013) (granting JMOL as to some, but not all, of the patents in the case).

During its negotiations with ParkerVision, Qualcomm investigated the scope and validity of ParkerVision's patents—and concluded that ParkerVision was doing something different from the prior art. In evaluating ParkerVision's technology, Qualcomm conducted tests on ParkerVision's prototype boards embodying the patents-in-suit for more than a year, ultimately concluding: "We are very impressed with the performance! . . . The truth is Parker Vision have stumbled on something revolutionary . . . ." PX307.

Qualcomm employees Chuck Wheatley (Senior Vice President for Technology) and Ben Miller (Senior Vice President, Chief Patent Strategist, and in-house counsel) reviewed ParkerVision's patent applications. Trial Tr. 10/8 at 41:24-42:16; PX699. The jury heard evidence that Dr. Wheatley understood the scope of ParkerVision's patents—writing that ParkerVision is "trying to capture every possible version of any use" of their technology; he also wrote that any holes "are being covered in newer applications." *Id.*

Qualcomm continued investigating ParkerVision's patents; Dr. Wheatley wrote internally that "[a]fter reading all the [prior art] references provided by Seyfi, I think PV is doing something different." PX154. Dr. Wheatley concluded that use of energy transfer sampling without a license would infringe. "Bottom line is"—he warned others at Qualcomm—"I think it is going to be very difficult for anybody to ever use this technique without stepping on one or more of their claims." Trial Tr. 10/8 at 41:24-42:16; PX699. But in the face of these conclusions from its own senior engineers, Qualcomm continued with its efforts to develop products that would infringe and give it the benefits of ParkerVision's technology. This evidence shows that Qualcomm knew its actions would result in infringement of the patents-in-suit.

### 4. Qualcomm revisited the ParkerVision approach shortly before infringement began.

ParkerVision presented the jury with conclusive evidence that shortly before Qualcomm began infringing it intentionally revisited the ParkerVision approach. In May 2004, Qualcomm product designers Steven Ciccarelli and Seyfi Bazarjani—two engineers who received disclosures of ParkerVision's patented technology under the parties' non-disclosure agreement (PX129)—revisited "the idea of RF sampling" for receivers using ParkerVision's approach in Qualcomm's "next generation radio transceiver." PX322. Bazarjani stated he would "set up a meeting with Chuck [Wheatley] to go over parker vision [sic] approach and see if we can make it work." *Id.* Yet the jury heard evidence that Qualcomm did not reopen negotiations with ParkerVision, did not license the patents, and did not pay ParkerVision a dime. Trial Tr. 10/8 at 43:11-13, Trial Tr. 10/9 at 54:19-20. Qualcomm thus proceeded with the knowledge that its conduct almost certainly infringed ParkerVision's valid patents. That is necessarily willful infringement, and no reasonable jury could find otherwise.

### 5. Qualcomm's trial defenses lacked any merit.

Moreover, the mere fact that Qualcomm "presented several defenses at trial, including noninfringement and invalidity," does not preclude a finding of willful infringement, especially where those defenses were expressly rejected by the jury. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010), *aff'd* 131 S. Ct. 2238 (2011). Furthermore, the objective prong of willfulness assesses potential defenses at the time of infringement, not defenses generated for litigation purposes only. *See In re Seagate Tech.*, 497 F.3d at 1374 ("[I]n ordinary circumstances, willfulness will depend on an

infringer's prelitigation conduct."); *Power Integrations, Inc. v. Fairchild Semiconductor, Int'l, Inc.*, 725 F. Supp. 2d 474, 476-78 (D. Del. 2010) (concluding certain post-litigation opinions "are insufficient to overcome the overwhelming evidence of willful infringement presented" and that it "finds them to be of marginal value both because of their post-litigation timing and because the content of each opinion is deficient"). Qualcomm presented no pre-suit evidence that it had a good faith belief in non-infringement or invalidity of the patents. Rather, the evidence summarized above shows conclusively that Qualcomm believed the patents-in-suit were valid and understood that if it "revisited the ParkerVision approach" it was likely to infringe ParkerVision's patents-in-suit.

Further, the only defense to willful infringement that Qualcomm offered was in the form of testimony from Jim Jaffee, now a member of Qualcomm's legal department, who argued that he independently developed the products the jury found to be infringing. Trial Tr. 10/21 at 266:3-267:1, 269:23-270:4. Qualcomm carefully selected Mr. Jaffee as a trial witness because of his alleged lack of knowledge of ParkerVision's patents, while ignoring all evidence as to those Qualcomm employees who knew of ParkerVision's patents and knew that Qualcomm's actions in designing the infringing products were likely to result in infringement. Mr. Jaffee pointed to his work on the development of the Magellan and Solo products, stating that he designed those products but was not aware of the ParkerVision patents. Trial Tr. 10/21 at 266:3-267:1, 269:23-270:4. However, Mr. Jaffee was not the only person working on the Magellan and Solo products, and Mr. Jaffee did not testify as to the mental state of any Qualcomm employee other than himself. *See* Trial Tr. 10/22 at 33:16-33:21. And, as to those the Magellan and Solo products, Mr. Jaffee admitted that he was not

working at a schematic level. Trial Tr. 10/22 at 32:18-33:15. Moreover, those are only two of the nineteen Qualcomm products that the jury found infringed, and Mr. Jaffee did not work on the other seventeen infringing products. Trial Tr. 10/22 at 32:12-32:17.

Mr. Jaffee's suggestion that he personally did not know of or intend to infringe the ParkerVision patents does not rebut the fact that many other individuals who were involved in the development of those products did know about ParkerVision's patents. For example, Charles Persico (who only testified outside the presence of the jury) worked on the design review for the Solo product. Trial Tr. 10/22 at 34:10-34:15. Steve Ciccarelli, a Qualcomm engineer, took over responsibility for the overall design of the ZIF products at Qualcomm in 2000, before Qualcomm introduced its infringing ZIF products. Trial Tr. 10/22 at 35:18-36:25. Both Mr. Persico and Mr. Ciccarelli met with ParkerVision in 1999-2000, were intimately involved in evaluating ParkerVision's D2D technology, and were aware of its patents. *See* Trial Tr. 10/9 at 45:18-47:11; 199:16-204:20; PX307. Both are high level executives at Qualcomm: Mr. Persico is "in charge of the whole RF analog IC design group," Trial Tr. 10/22 at 34:16-34:25; and Mr. Ciccarelli was in charge of the overall design for ZIF products.

As such, the story Qualcomm told at trial through Mr. Jaffee cannot support a conclusion that Qualcomm developed its products independently without anyone involved who had knowledge of ParkerVision's patents. Mr. Jaffee was just one of many individuals involved and several of those in charge of designing the infringing products had actually been involved in the evaluation of ParkerVision's patents just a few years before.

**B. In the Alternative, The Court Should Grant a New Trial on Willfulness.**

As shown above, JMOL is appropriate on this record. But should the Court conclude otherwise, it should grant a new trial solely on the question of willfulness. In considering whether to order a new trial on an issue, the Court may review not only the evidence submitted to the jury, but may also consider errors in the admission or rejection of evidence and in the instructions to the jury. *McCray*, 2012 U.S. Dist. LEXIS 80382, at *5-6.

ParkerVision respectfully submits that there were substantial errors in the rejection of evidence and instructions to the jury that warrant a new trial on the issue of willfulness— particularly given that the jurors were deadlocked for some time on this specific issue, and it is thus highly likely that such errors affected the outcome. ParkerVision was precluded from presenting crucial evidence showing that Qualcomm's infringement was willful—evidence that likely would have broken the deadlock in ParkerVision's favor on the issue of willfulness. This is particularly true given that there are multiple different areas in which ParkerVision's presentation was restricted in error on the issue of willfulness.

**1. It was substantial error to prevent ParkerVision from discussing Qualcomm's failure to obtain an opinion of counsel.**

Just before closing arguments, the Court considered a motion by Qualcomm to prevent ParkerVision from using Qualcomm's failure to obtain advice of counsel to prove willfulness. Qualcomm argued that "under *Seagate*… failure to obtain or even discuss the advice of counsel defense shouldn't even be a factor at all, shouldn't even be argued by counsel or by the parties in closing argument…. *Seagate* says you can't use that to prove willfulness." Trial Tr. 10/22 at 9:8-10:2. Counsel for Qualcomm argued that "*Seagate* just

said that failure to obtain advice of counsel cannot support a willfulness finding," but was unable to provide a pinpoint citation when it was requested by the Court. *Id.* at 10:5-11:3.

Initially, the Court correctly disagreed with Qualcomm, stating: "I didn't read *Seagate* as indicating that advice of counsel was not a factor. I read it actually the opposite. It was one of and continued to be a factor for the jury to consider in the totality of the circumstances in the appropriate case." *Id.* at 11:16-11:20. But ultimately, the Court concluded: "I've taken a look at this defense advice of counsel. And as far as I can tell, it's not an issue in the case. I've been back through my notes. I don't think there's been any evidence about lawyers or talking to lawyers or advice of lawyers. And in view of that fact, I think it would be inappropriate to argue it. So I'm going to grant the Qualcomm motion with respect to advice of counsel and direct ParkerVision's counsel not to discuss that in their closing argument." *Id.* at 66:22-67:6.

Qualcomm's argument was that *Seagate* held, at some unidentified place in the opinion, that "failure to obtain advice of counsel cannot support a willfulness finding." *Id.* at 10:5-11:3. But such a holding does not appear anywhere in *Seagate*. In fact, *Seagate* states the opposite: "Although an infringer's reliance on favorable advice of counsel, or conversely his failure to proffer any favorable advice, is not dispositive of the willfulness inquiry, it is crucial to the analysis." *In re Seagate Tech.,* 497 F.3d 1360, at 1369. As *Seagate* makes clear, it was Qualcomm's burden to come forward with opinion of counsel evidence. Thus, the Court's observation that Qualcomm presented no evidence regarding the advice of counsel was right, but the Court's exclusion was incorrect because Qualcomm's failure to present such evidence to the jury was "crucial" to the willfulness analysis. *Id.* And Qualcomm itself

should have known that ParkerVision's understanding of the law was correct because Qualcomm raised this precise issue with the Federal Circuit post-*Seagate* and lost. *See Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008) ("It would be manifestly unfair to allow opinion-of-counsel evidence to serve an exculpatory function… and yet not permit patentees to identify failures to procure such advice as circumstantial evidence of intent to infringe.").

Numerous other courts agree that post-*Seagate*, the failure to seek advice of counsel is relevant to both prongs of the willfulness defense and should be considered by the jury. *See Koninklijke Philips Elecs. N.V. v. Cinram Int'l*, No. 08-0515, 2012 U.S. Dist. LEXIS 135839, at *25 n.6 (S.D.N.Y. Aug. 23, 2012) (holding that under *Seagate*, "[b]ecause the issue here is the *absence* of such advice, it would seem that both prongs of the test are implicated—in the first instance, the lack of any reliance on counsel's assurance of noninfringement; in the second, the subjective decision of defendants to forego such an assurance."); *Birchwood Labs., Inc. v. Battenfeld Techs., Inc.*, No. 09-3555, 2012 U.S. Dist. LEXIS 80292, at *62 (D. Minn. May 21, 2012) (citing *Seagate* and concluding that "Whether or not an alleged infringer sought the advice of counsel is 'crucial to the [willfulness] analysis") (brackets in original); *Finjan Software, Ltd. v. Secure Computing Corp.*, No. 06-369, 2009 U.S. Dist. LEXIS 72825, at *49 (D. Del. Aug. 18, 2009) ("While there is no longer an affirmative duty of care that requires an accused infringer to obtain an opinion of counsel, the fact that Secure did not seek any such opinion may be considered in the totality of circumstances surrounding willful infringement."); *Creative Internet Adver. Corp. v. Yahoo! Inc.*, No. 6:07cv354, 2009 U.S. Dist. LEXIS 65690, at *13 (E.D. Tex. July 30, 2009)

(holding that "the lack of opinion of counsel is one factor of many that the jury could have taken into account in determining whether Defendant willfully infringed"); *Tyco Healthcare Group, LP v. Applied Med. Res. Corp.*, No. 9:06-CV-151, 2009 U.S. Dist. LEXIS 125377, at *8-10 n.3 (E.D. Tex. Mar. 30, 2009) (holding that a jury should be able to consider failure to obtain advice of counsel and concluding that "[i]n short, *Seagate* does not foreclose the possibility that the trier of fact could consider the failure to seek an opinion of counsel when determining whether the second prong of the willfulness test is satisfied, so long as it does not automatically draw an adverse inference from such a failure").

The Court's ruling suggests that the Court agreed with Qualcomm but on a different basis, granting Qualcomm's requested relief by holding that advice of counsel was not an issue in the case because no evidence related to advice of counsel was presented at trial. But as *Seagate* and the other post-*Seagate* cases make clear, "the issue here is the *absence* of such advice." *Koninklijke Philips Elecs.*, 2012 U.S. Dist. LEXIS 135839, at *25. Moreover, with respect to whether there was evidence of Qualcomm obtaining advice of counsel, it is appropriate on the issue of willfulness to ask a jury to draw an inference from the absence of evidence that Qualcomm has not sought advice of counsel, even where there is no direct evidence to that effect. *z4 Techs., Inc. v. Microsoft Corp.*, 2006 U.S. Dist. LEXIS 58374, at *25-26 (E.D. Tex. Aug. 18, 2006). Indeed, Qualcomm failed to provide any evidence that it received an opinion of counsel, and ParkerVision should have been permitted to point that failure out to the jury, for the jury's consideration in their deliberations. Further, ParkerVision presented the Court with significant evidence that Qualcomm failed to seek advice of counsel, despite its knowledge of the patents-in-suit. ParkerVision made an offer of

proof that "there was no evidence brought forth about an opinion of counsel from Qualcomm," which is a fact the jury should have been able to consider under controlling caselaw. Trial Tr. 10/22 at 67:14-67:17.

ParkerVision further introduced into evidence a copy of Qualcomm's interrogatory response identifying all of the factual and legal bases for Qualcomm's contentions that it had not willfully infringed. JX28. In response to this interrogatory, Qualcomm identified individuals who were aware of ParkerVision's patents, but never pointed to any advice of counsel. Under Rule 37, Qualcomm was barred at trial from contending that it sought advice of counsel because it did not disclose it in response to an interrogatory that properly called for that information. FED. R. CIV. P. 37(c)(1).

In short, the Court appeared to assume that, because Qualcomm presented no evidence regarding any advice of counsel, such advice was not an issue in the case. But the lack of evidence was precisely ParkerVision's point—this is an instance where silence speaks volumes, and Qualcomm's silence confirmed that they never bothered to seek the advice of counsel. That fact—improperly excluded from the jury's consideration—was highly probative to the willfulness inquiry.

### 2. It was substantial error on the issue of willfulness to exclude PX964 on authenticity grounds.

ParkerVision moved for the introduction into evidence of PX964, a Qualcomm e-mail chain that described Qualcomm's evaluation of ParkerVision's D2D technology as having "led to our development of ZIF architecture by Paul Peterzell." *See* PX964; Trial Tr. 10/21 at 172:4-175:5. Qualcomm objected that this exhibit was prejudicial, and the Court sustained

Qualcomm's objection to the document, stating that "I don't find it's been properly authenticated, and I'm going to sustain the objection." *Id.* at 174:15-175:5.

Later, ParkerVision again attempted to question Qualcomm's corporate representative about PX964 at trial, and was allowed to do so but was prohibited from showing the document to the jury: "Well, I'm going to allow you to cross-examine the witness based on this document. But I don't want the entirety of the document displayed." Trial Tr. 10/22 at 37:23-39:16. The Court reiterated its view that "this document was not properly authenticated with the witness that [ParkerVision] was trying to use it with, that it included a lot of additional, extraneous information that was not relevant to the point that the witness was being examined about." *Id.*

ParkerVision respectfully submits that the Court's ruling as to this exhibit's authenticity was incorrect. Rule 901 states that the requirement of authentication can be satisfied by "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Ev. 901(a). Testimony by a witness with knowledge of a document is one way that a document can be authenticated. *Id.* at 901(b)(1). However, such testimony is not a requirement for authentication. The text of Rule 901(b) demonstrates this by describing such testimony as an "example" that satisfies the requirement, by listing nine other means of authenticating a document, and stating that "[t]he following are examples only—not a complete list—of evidence that satisfies the requirement." *Id.*

One of the other means of authenticating a document is by "distinctive characteristics and the like," including "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Ev.

901(b)(4). PX964 was an internal Qualcomm e-mail, produced by Qualcomm in this case, and Qualcomm did not dispute its authenticity. Indeed, in response to ParkerVision's Requests for Admission, Qualcomm conceded that it was unaware of any document that it produced (including PX964) that was not authentic. JX97 (Qualcomm admitting that "it is unaware of any document produced by Qualcomm in this case with a 'QCPV' prefix that is not authentic"). In fact, Qualcomm stipulated that it was unaware of any documents with a "QCPV" prefix that were not authentic. Dkt. 336 at ¶ 92. Rather than objecting on authenticity grounds, Qualcomm's arguments for excluding PX964 were directed at prejudice. Trial Tr. 10/22 at 37:23-39:16.

Other courts have confirmed that e-mails can be authenticated without the testimony of one of the senders or recipients. For example, in *United States v. Fluker*, 698 F.3d 988, 998-1001 (7th Cir. 2012), the Seventh Circuit held that e-mails could be authenticated using circumstantial evidence such as the listed e-mail addresses and whether their contents are likely to be known to the person listed as their author. The court further noted that to authenticate a document, "[o]nly a prima facie showing of genuineness is required; the task of decoding the evidence's true authenticity and probative value is left to the jury." *Id.* at 999. The Eleventh Circuit has used the same approach in determining whether an e-mail was authentic in the absence of testimony from the author, relying on a combination of the e-mail addresses, the context of the e-mail and its contents, and the likelihood that someone other than the purported author could have known of the e-mail's contents. *See United States v. Siddiqui*, 235 F.3d 1318, 1322-23 (11th Cir. 2000).

PX964 is an e-mail that was produced by Qualcomm from its own computer systems. *See* PX964. The document bears a Qualcomm bates number (QCPV001576335-336). *Id.* It is from Seyfi Bazarjani to Mehdi Sani, both Qualcomm employees. The author of the e-mail at issue had knowledge of detailed facts about Qualcomm's internal operations that were confirmed by other witnesses, including the names of the members of the Qualcomm team that evaluated ParkerVision's technology and various internal codenames for Qualcomm products such as "Jupiter" and "Neptune." Qualcomm itself did not dispute the authenticity of this document at trial and did not object on this basis, and Qualcomm did not provide any explanation of how this document would have been in Qualcomm's own e-mail archives if it was something other than what it purported to be on its face (an internal Qualcomm e-mail). Moreover, Qualcomm never made an authenticity objection to PX964 when exhibit objections were exchanged, and instead only objected that its introduction would be "prejudicial." Dkt. 336-1; Ex. C. The Court had previously ruled that any objections to exhibits which were not made before trial would be waived. Dkt. 84 at 10.

The Court's decision to exclude PX964 was based on a view of authentication that assumed that a knowledgeable witness was required to authenticate the document, which is incorrect. The contents of the document state that Qualcomm had developed its ZIF products based on evaluating ParkerVision's technology. Several of the ZIF products were found by the jury to infringe. Trial Tr. 10/21 at 120:22-25. As such, there was no possible basis for Qualcomm to claim prejudice in introducing this e-mail to the jury for use in assessing willfulness. Willfulness is itself an accusation that Qualcomm's infringement was intentional, and PX964's admission that Qualcomm intentionally developed the infringing ZIF products

based on ParkerVision's technology is the very issue the jury was there to decide. By excluding PX964 from evidence, the jury was prevented from ever seeing it—allowing Qualcomm to base its closing argument on urging the jury to evaluate a series of e-mails that had not been discussed at trial but that "are in the jury room." Trial Tr. 10/22 at 77:3-6. PX964 is one of the best pieces of evidence demonstrating Qualcomm's willful infringement—a Qualcomm engineer admitting that the infringing ZIF products were based on the evaluation of ParkerVision's patented technology. However, because of the Court's evidentiary ruling PX964 was not available in the jury room (or ever available to the jurors to see), despite Qualcomm's suggestion that the jury review other, less relevant emails, during their deliberations.

### 3. It was substantial error to exclude evidence of the 1998-2000 negotiations between ParkerVision and Qualcomm.

During the damages and willfulness phase of trial, the Court precluded ParkerVision from presenting evidence about the financial terms in the 1998-2000 negotiations between ParkerVision and Qualcomm. Dkt. 395 at 7-10; Trial Tr. 10/17 at 44:8-15. ParkerVision has made an offer of proof of the materials it would have presented had it been allowed to do so. Dkt. 418.

A number of the excluded exhibits relate to willfulness[2] and should have been allowed before the jury. For example, ParkerVision would have presented evidence that

---

[2] Exhibits highly probative of Qualcomm's willful infringement excluded by the Court include: (1) Ex. D (PX310) (warning from Mike Whitfield at First Union Securities to Don Schrock that Qualcomm's products could "require a license agreement between QCOM and ParkerVision" as Whitfield himself had "read [ParkerVision's] specific patent . . . and it appears to be very broad."; (2) Ex. E (PX305) (noting risk to Qualcomm if it decided "to go with [ParkerVision's] direct conversion technique."); (3) Ex. F (PX146) ("If we can achieve

Qualcomm was willing to share ████████, or ████, of its projected profit in exchange for access to ParkerVision's patented technology. Dkt. 418 at 3. The sheer size of the figures that were being contemplated suggests that Qualcomm was highly interested in ParkerVision's patented technology in 1999, that Qualcomm believed in the likelihood that the patents would be valid, and it supports an inference that Qualcomm later intentionally infringed that technology to obtain the substantial value that Qualcomm subjectively believed the technology provided, without ever having to pay ParkerVision a dime. Documents relating to the financial negotiations further suggest that in coming up with terms, Qualcomm attempted to avoid disclosing to ParkerVision all of the facts in an attempt to obtain the technology for less than it was worth. Dkt. 418 at 6-7 (citing PX191). This suggests a subjective willingness on the part of Qualcomm to avoid paying royalties to ParkerVision, and supports an inference that Qualcomm's later decision to infringe was intentional and was motivated by a desire to minimize the amount of royalties Qualcomm would have to pay to ParkerVision on its infringing products.

      **4.**      **It was substantial error to deny ParkerVision's request for an instruction on willfulness as to the totality of the circumstances.**

To avoid juror confusion, ParkerVision proposed an instruction that enumerated the factors that the jury could consider when evaluating the totality of the circumstances. Trial Tr. 10/22 at 7:2-10. ParkerVision's proposed instruction read as follows: "The totality of the

---

the same without PV, why give PV free money."); (4) Ex. G (PX179) (internal Qualcomm presentation noting that a deal with ParkerVision would "mitigate . . . legal risk"); (5) Ex. H (PX195) (confirming that Ben Miller and Dr. Chuck Wheatley received presentations relating to ParkerVision's patent filings).

circumstances comprises a number of factors, which include, but are not limited to, whether Qualcomm intentionally copied the claimed invention or a product covered by ParkerVision's patents, whether or not Qualcomm obtained and followed the advice of a competent lawyer with regard to infringement, and whether Qualcomm presented a substantial defense to infringement." Dkt. 372 at 63-64.

Qualcomm objected by incorrectly telling the Court that one of the enumerated factors, failure to obtain an opinion of counsel, was no longer good law. Trial Tr. 10/22 at 9:8-12. While recognizing that Qualcomm's counsel was incorrect ("advice of counsel . . . continue[s] to be a factor for the jury to consider in the totality of the circumstances in the appropriate case"), the Court ultimately rejected ParkerVision's instruction. Trial Tr. 10/22 at 11:16-20, 9:2-6.

But by failing to instruct the jury as to what factors to consider in the "totality of the circumstances," there is a strong likelihood that the jury was confused about what it should consider—a fact confirmed by its long deliberation and indication that it was deadlocked on the willful infringement question. Trial Tr. 10/22 at 6:11-13. It is not intuitive to a layperson what the "totality of the circumstances" that they can consider would be. In particular, a lay juror would not assume that "whether the infringer presented a substantial defense to infringement" and "lack of opinion of counsel" are factors to consider under a totality of the circumstances analysis—or even necessarily think to consider them. *See Knorr-Bremse Systeme*, 383 F.3d at 1346-47 (noting that "substantial defense to infringement" and "failure to obtain an exculpatory opinion of counsel" are factors to be evaluated under a totality of the circumstances analysis).

Aware of this, Qualcomm's counsel successfully urged the Court not to enumerate the factors underlying the determination. Trial Tr. 10/22 at 6:11-13. And in the absence of the requested instruction, the jury's analysis turned to a deadlock on the issue of willfulness that lasted for three days. *See* Trial Tr. 10/22 at 5:24-6:1 (jury note stating that the jury is unable to come to a unanimous verdict on willfulness). Because the jury was not given guidance as to the specific circumstances it could consider, it did not know to deliberate as to those issues. The jury likely would have come to a different verdict on willfulness had it known that it should consider the issues that ParkerVision identified in its proposed instruction as part of the totality of the circumstances. *See Johnson v. Clark*, 484 F. Supp. 2d 1242, 1252 (M.D. Fla. 2007) (noting that new trial may be proper where an error in instruction "was probably responsible for an incorrect verdict leading to substantial injustice").

### 5. The cumulative effect of evidentiary errors warrants a new trial.

While each of the evidentiary errors discussed above may have had a dispositive impact on the trial in light of the jury's indecision on willfulness, the cumulative effect of the errors deprived ParkerVision of a fair trial on willful infringement. When multiple errors taken together prevent a litigant from presenting the substance of its case on a given issue, reversal is required. *Collins v. Wayne Corp.*, 621 F.2d 777, 786 n.6 (5th Cir. 1980) (prior to 11th circuit split) ("This Court recognizes that the combination of several errors may require reversal even though each error by itself would have been harmless."); *Malek v. Federal Ins. Co.*, 994 F.2d 49, 55 (2d Cir. 1993) ("Although each of the erroneous evidentiary rulings discussed above, standing alone, may be insufficient to justify reversal, we cannot say that the cumulative effect is harmless."). The Eleventh Circuit reviews the cumulative effect of

multiple evidentiary errors de novo. *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1340 (11th Cir. 2009).

The Court's exclusion of items highly probative of Qualcomm's willful infringement—PX964, evidence of the 1998-2000 negotiations, and Qualcomm's undisputed failure to obtain an opinion of counsel—deprived the jury of crucial evidence. *See Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1377 (Fed. Cir. 2012) ("[T]he district court's evidentiary errors . . . had cumulative effect of preventing Bodum from presenting the substance of its obviousness defense. The district court's exclusion of Bodum's primary exhibits and related testimony resulted in a one-sided trial and we find that the court's errors were not harmless."). This, taken cumulatively with the rejection of ParkerVision's proposed jury instruction, made a significant difference to ParkerVision's chances of persuading the jury of Qualcomm's willful infringement. *See Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1105 (8th Cir. 1988) (in finding reversible error, court of appeals stated that taken in isolation, any single exclusion might not have been prejudicial enough to justify reversing judgment, but taken cumulatively exclusions did make significant difference to plaintiff's chances of persuading jury).

## IV.     CONCLUSION

For the foregoing reasons, ParkerVision requests that the Court grant JMOL on the issue of willfulness or, in the alternative, grant a new trial on the issue of willfulness.

December 20, 2013

Respectfully submitted,

**McKOOL SMITH, P.C.**

/s/ *Douglas A. Cawley*
Douglas A. Cawley, Lead Attorney
Texas State Bar No. 04035500
E-mail: dcawley@mckoolsmith.com
Richard A. Kamprath
Texas State Bar No.: 24078767
rkamprath@mckoolsmith.com
Ivan Wang
Texas State Bar No.: 24042679
E-mail: iwang@mckoolsmith.com
McKool Smith P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Kevin L. Burgess
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
Josh W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
Leah Buratti
Texas State Bar No. 24064897
lburatti@mckoolsmith.com
Mario A. Apreotesi
Texas State Bar No. 24080772
mapreotesi@mckoolsmith.com
Kevin Kneupper
Texas State Bar No. 24050885
kkneupper@mckoolsmith.com
James Quigley
Texas State Bar No. 24075810
jquigley@mckoolsmith.com
McKool Smith P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

**SMITH HULSEY & BUSEY**

/s/ *James A. Bolling*
Stephen D. Busey
James A. Bolling
Florida Bar Number 117790
Florida Bar Number 901253
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
jbolling@smithhulsey.com

**ATTORNEYS FOR PLAINTIFF
PARKERVISION, INC.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, December 20, 2013, I served the foregoing on all counsel of record via ECF.

/s/ Kevin Kneupper
Kevin Kneupper