**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PARKERVISION, INC.,

            *Plaintiff*,

    v.

QUALCOMM INCORPORATED,

            *Defendant*.

Case No. 3:11-cv-719-J-37-JRK

**QUALCOMM'S OPPOSITION TO PARKERVISION'S MOTION FOR**
**POST-VERDICT ROYALTIES TO THE TIME OF JUDGMENT,**
**PREJUDGMENT INTEREST, POST-JUDGMENT INTEREST, AND COSTS (DKT. 490)**

**REDACTED VERSION**

# TABLE OF CONTENTS

**PAGE**

I.    BACKGROUND AND SUMMARY OF ARGUMENT ................................................. 1

II.    ARGUMENT ................................................................................................................. 3

    A.    ParkerVision's Supplemental Damages Motion Rests on an Overreaching Royalty Rate and Speculative Royalty Base........................................................ 3

    B.    ParkerVision's Prejudgment Interest Request Contradicts the Trial Record......... 4

        1.    Prejudgment interest should be calculated quarterly, using the prime rate for that quarter. ......................................................................... 6

        2.    Prejudgment interest should be calculated based on a running royalty, not a lump sum. ....................................................................... 10

            a.    The jury's award was based on a running royalty. ...................... 11

            b.    Under governing precedent, damages accrue over time for a running royalty.......................................................................... 13

            c.    ParkerVision's back-up position—averaging sales over the entire damages period—would still distort the prejudgment interest analysis.......................................................................... 15

III.    CONCLUSION............................................................................................................ 18

TABLE OF AUTHORITIES

PAGE(S)

CASES

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  926 F. Supp. 2d 1100 (N.D. Cal. 2013) ..................................................................4

*Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead*,
  162 F.3d 1101 (11th Cir. 1998) ...........................................................................10

*Bio-Rad Labs., Inc. v. Nicolet Instr. Corp.*,
  807 F.2d 964 (Fed. Cir. 1986)................................................................................6

*Boeing Co. v. United States*,
  86 Fed. Cl. 303 (Fed. Cl. Ct. 2009) .....................................................................14

*Energy Transp. Group, Inc. v. Sonic Innov., Inc.*,
  No. 05-422, 2011 U.S. Dist. LEXIS 60716 (D. Del. June 7, 2011).......................16

*General Motors Corp. v. Devex Corp.*,
  461 U.S. 648 (1983).......................................................................6, 13, 14, 18

*Golden Voice Tech. & Training, LLC v. Rockwell Elec. Commerce Corp.*,
  No. 6:01-cv-1036, 2004 U.S. Dist. LEXIS 22064 (M.D. Fla. Jan. 30, 2004) ..........8

*H.B. Fuller v. Nat'l Starch & Chemical Corp.*,
  689 F. Supp. 923 (D. Minn. 1988)....................................................................9, 14

*Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*,
  No. 8:06-cv-1790, 2009 U.S. Dist. LEXIS 92712 (M.D. Fla. Sept. 22, 2009)..........6, 8, 14, 15

*IMX, Inc. v. LendingTree, LLC*,
  469 F. Supp. 2d 203 (D. Del. 2007).......................................................................8

*Itron, Inc. v. Benghiat*,
  No. 99-501, 2003 U.S. Dist. LEXIS 15039 (D. Minn. Aug. 29, 2003) ...................4

*Laitram Corp. v. NEC Corp.*,
  115 F.3d 947 (Fed. Cir. 1997)...............................................................................9

*Lam, Inc. v. Johns-Manville Corp.*,
  718 F.2d 1056 (Fed. Cir. 1983).........................................................................9, 10

*Lemelson v. Mattel, Inc.*,
  No. 77 C-4558, 1990 U.S. Dist. LEXIS 1267 (N.D. Ill. Feb. 6, 1990)...................14

TABLE OF AUTHORITIES
(CONTINUED)

PAGE(S)

*Lewis v. Haskell Co.*,
    304 F. Supp. 2d 1347 (M.D. Ala. 2004) ...............................................................10

*Mars, Inc. v. Coin Acceptors*,
    513 F. Supp. 2d 128 (D. N.J. 2007) .......................................................................9

*Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.*,
    833 F. Supp. 2d 333 (E.D.N.Y. 2011) ..................................................................8

*Mondis Tech. LTD v. LG Elecs., Inc.*,
    No. 2:07-cv-565, ECF No. 666 (E.D. Tex. Aug. 30, 2011)....................................14

*Moxness Prods., Inc. v. Xomed, Inc.*,
    No. 86-100-CIV-J-14, 1988 U.S. Dist. LEXIS 16062 (M.D. Fla. July 21, 1988),
    *rev'd in part on other grounds by* 891 F.2d 890 (Fed Cir. 1989).........................8, 9

*Nickson Indus., Inc. v. Rol Mfg. Co.*
    847 F.2d 795 (Fed. Cir. 1988................................................................................14

*Oiness v. Walgreen, Co.*,
    88 F.3d 1025 (Fed. Cir. 1996)................................................................................6

*Powell v. Home Depot U.S.A., Inc.*,
    715 F. Supp. 2d 1285 (S.D. Fla. 2010), *aff'd* Nos. 2010-1409, 2010-1416, 2011
    U.S. App. LEXIS 22838 (Fed. Cir. 2011) ..................................................10, 14, 15

*SSL Services, LLC v. Citrix Sys., Inc.*,
    2:08-CV-158, 2012 WL 4092449 (E.D. Tex. Sept. 17, 2012).................................8

*Univ. of Pittsburgh v. Varian Med. Sys.*,
    2012 U.S. Dist. LEXIS 58156 (W.D. Pa. April 25, 2012)......................................14

STATUTES

28 U.S.C. § 1961.....................................................................................................3

OTHER AUTHORITIES

http://www.federalreserve.gov/releases/h15/data.htm..............................................7

*Pat. L. Fundamentals* § 18:63 (2d ed.) ...................................................................8

# I.     BACKGROUND AND SUMMARY OF ARGUMENT

ParkerVision's motion for supplemental damages and prejudgment interest seeks an enormous windfall that is punitive in nature and much greater than any adequate compensation allowed by the law.

For so-called "supplemental damages" resulting from sales between the verdict and judgment, ParkerVision asks the Court to impose a rate three times higher than the jury's award, as if the jury had found willful infringement when it did not.  ParkerVision then asks the Court to multiply that rate by ██████████████ units per day, a speculative projection so high it assumes that Qualcomm will sell an accused product for essentially every man, woman, and child in the United States next year alone.   Instead of using ParkerVision's guesswork, to the extent the Court orders an ongoing royalty, it should set the rate at the rate Dr. Leonard derived from the VIA license ████████ and provide that an accounting be made of the actual devices sold by Qualcomm at an appropriate time.

ParkerVision's request for prejudgment interest likewise ignores the facts in two key ways.   First, interest rates have decreased dramatically over the damages period.   For example, the prime rate has decreased from around 8% in 2006 to 3.25% at present. Rewriting the economic history of the past seven years, ParkerVision asks the Court to use the high rate prevailing at the date of first infringement in 2006 for all interest calculations rather than use the actual rates that existed as interest accrued over time.  In its most extreme calculation ParkerVision asks this Court to use an even higher Florida statutory interest rate, which, as discussed below, has been rejected as "too high."   Instead of adopting these

overreaching approaches, the Court should award any prejudgment interest using the federal prime rate.

Second, at trial, both sides agreed that the appropriate damages structure was a running royalty.  Qualcomm supplied ParkerVision with its quarterly unit sales data, and ParkerVision's own damages expert based his royalty calculations on Qualcomm's quarterly unit sales data.  But now ParkerVision asks the Court to shift all damages backward in time to the date of first infringement and treat the $173 million damages award as a lump-sum principal amount set and in hand as of January 1, 2006.  ParkerVision's approach conflicts with a running royalty damages award, which requires accruing damages over time as products are made and sold.  The effect of ParkerVision's tactic would be to dramatically increase interest by falsely assuming that the entire principal amount existed at once, over seven years ago on the very first day of the damages period.  ParkerVision's improper manipulations contradict governing law and result in an absurd, punitive calculation of nearly ████████ in prejudgment interest—an amount that would ████████ the total damages award.[1]  Instead, the Court should employ a rolling quarterly royalty payment method of calculating interest that awards prejudgment interest on infringing sales when those sales were actually made.

ParkerVision's requests for supplemental damages and prejudgment interest seek an excessive, punitive, and unfair windfall contrary to governing law, and should be rejected.[2]

---

[1] As noted below, ParkerVision offers back-up positions for its prejudgment interest calculations.  Like its primary argument, however, ParkerVision's back-up positions distort the facts to seek an award much higher than adequate compensation.

[2] ParkerVision's motion also seeks an award of post-judgment interest and costs.  To the extent the jury's verdicts are upheld, Qualcomm agrees that the appropriate post-judgment interest rate is prescribed by 28

## II.   ARGUMENT

### A.   ParkerVision's Supplemental Damages Motion Rests on an Overreaching Royalty Rate and Speculative Royalty Base.

Even assuming that the jury verdicts withstand post-trial review, which they should not, ParkerVision's request for supplementary damages grossly exaggerates any proper, compensatory damages amount.

ParkerVision's request has two pieces: a per-unit royalty rate and projected numbers of sales.  For the rate, ParkerVision points only to its separate motion for an ongoing royalty. (Dkt. 490 at 4.)  As detailed in Qualcomm's concurrently filed opposition to that motion, ParkerVision's requested rate overstates any possible reasonable royalty for post-verdict sales.  Instead, an ongoing royalty rate should be no more than the ███████ VIA rate derived by Dr. Leonard.

ParkerVision's motion also fails to justify its unduly speculative royalty base.  Rather than guessing at the number of accused products that might be sold between the verdict and judgment, Qualcomm proposes that it provide an accounting of the actual number of sales of each accused product in the same quarterly format that the parties relied upon to arrive at the pre-verdict unit numbers.[3]  That procedure would remove unnecessary speculation from the process.

---

U.S.C. § 1961 and that ParkerVision would be entitled to relevant, proven statutory costs as the prevailing party with respect to the issues tried.  In such a situation, Qualcomm would post a supersedeas bond in an amount sufficient to cover post-judgment interest and would seek to reach agreement on the amount for any bill of costs filed by ParkerVision.

[3] Following that accounting, the parties can work together to estimate the number of units incorporated into downstream products imported into the United States.

To avoid the unnecessary expenditure of party and judicial resources, Qualcomm also proposes that such an accounting take place, if necessary, after the post-trial and appeal processes in this case. *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 926 F. Supp. 2d 1100, 1106-07 (N.D. Cal. 2013) (rejecting an "elaborate method of estimating the appropriate number of sales ... because the parties can present evidence of the actual number of sales" and delaying calculation of supplemental damages pending resolution of appeals to avoid "caus[ing] unnecessary expenditures of time and resources"); *Itron, Inc. v. Benghiat*, No. 99-501, 2003 U.S. Dist. LEXIS 15039, at *50 (D. Minn. Aug. 29, 2003) ("To avoid potentially unnecessary expenditures of time and money in preparing such an accounting, however, the Court will stay this order pending resolution of all appeals in this case.").

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████

Accordingly, if the jury's verdicts of infringement and no invalidity are sustained, the Court should reject ParkerVision's proposed ongoing royalty rate and base, using the VIA rate and the actual sales figures from the post-verdict / prejudgment period.

**B.     ParkerVision's Prejudgment Interest Request Contradicts the Trial Record.**

As detailed below, ParkerVision's massive prejudgment interest request results from (1) using unwarranted and unprecedented interest rates and (2) assuming contrary to fact and

the trial record that 100% of the awarded running royalty damages from 2006 to 2013 were incurred in January 2006. As a result of these two fundamental errors, the interest ParkerVision requests far exceeds the actual damages in the earlier years of alleged infringement and ultimately exceeds the total amount of damages awarded.

The Court should reject ParkerVision's approach and instead award prejudgment interest using the federal prime rate and a rolling quarterly royalty payment method of calculating interest. The Court should also reject ParkerVision's counterfactual lump-sum scenario as well as its alternative linear distribution model—both of which artificially inflate the principal on which interest would be due—and instead award prejudgment interest on infringing sales when those sales were actually made. As shown below, ParkerVision's approach is so skewed that, in every year, the accrued interest to date under ParkerVision's 9% proposal is even higher than the principal, the accrued damages to date:



Awarding interest at the prime rate on a rolling quarterly basis provides a prejudgment interest award that is fully compensatory but not punitive, as required by governing precedent. Although courts are afforded broad discretion in assessing prejudgment interest, they seek to place the patent owner "in as good a position as [it] would have been had the infringer entered into a reasonable royalty agreement.'" *Bio-Rad Labs., Inc. v. Nicolet Instr. Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) (quoting *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983)). "In selecting the appropriate interest rate ... the Court must be mindful that 'prejudgment interest has no punitive, but only compensatory, purposes.'" *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, No. 8:06-cv-1790, 2009 U.S. Dist. LEXIS 92712, at *38 (M.D. Fla. Sept. 22, 2009) (quoting *Oiness v. Walgreen, Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996)).

> **1.    Prejudgment interest should be calculated quarterly, using the prime rate for that quarter.**

The parties' disputes about the prejudgment interest rate fall into two categories. *First*, the parties agree that interest should be calculated quarterly but dispute whether and how to account for changes in interest rates over time. Qualcomm proposes that the interest calculated for each quarter should be based on the historical interest rate for that quarter. For example, interest calculated for the first quarter of 2007 would use the prime rate from the first quarter of 2007, interest calculated for the second quarter of 2007 would use the prime rate from the second quarter of 2007, and so on. The rates are a matter of public record and easily located.[4] In contrast, ParkerVision argues that all interest calculations should be based

---

[4]   The Federal Reserve publishes the current and historical prime rates on its website: http://www.federalreserve.gov/releases/h15/data.htm.

on either the rate existing at the date of first infringement or an average rate over the entire damages period.  (Dkt 490 at 10 & n.13.)

ParkerVision's requested approach seeks an improper windfall, not adequate compensation, because interest rates dropped substantially early in the damages period.  For example, the federal prime rate dropped from more than 8% in January 2007 to 3.25% in January 2009 and has remained at the same low rate to the present.  (Dkt. 490 at 10 n.13.) ParkerVision's request to use a single high rate from the start of the damages period fails to account for the subsequent drop in interest rates in the real world.  Even ParkerVision's proposal to use the average rate would substantially overstate any proper award, because unit volumes and accrued damages (as well as the rate of damages accrual) increased significantly over time as the interest rates decreased.  (*See* Declaration of Greg Leonard ("Leonard Decl."), Ex. 1.)

In short, ParkerVision contends that while the rest of the world has been living under historically low interest rates for the past five years—affecting everything from the cost of borrowing to the rate of return that real-world individuals and companies have been able to obtain—Qualcomm should be punished with a rate that is either fixed at an artificial high point or is weighted in ParkerVision's favor.  The Court should reject ParkerVision's overreaching approach and apply historical rates to the reasonable royalty damages as they accrued.

***Second***, the parties dispute whether the prime rate should apply, as Qualcomm proposes, or whether the Florida statutory *post-judgment* interest rate should apply, as ParkerVision primarily argues.

This District typically applies the federal prime rate, which it has acknowledged is "'the most common indicia used in calculating prejudgment interest.'" *Golden Voice Tech. & Training, LLC v. Rockwell Elec. Commerce Corp.*, No. 6:01-cv-1036, 2004 U.S. Dist. LEXIS 22064, at *22-23 (M.D. Fla. Jan. 30, 2004) (applying the prime rate to calculate prejudgment interest in patent infringement case) (quoting *Pat. L. Fundamentals* § 18:63 (2d ed.)); *Hako-Med*, 2009 U.S. Dist. LEXIS 92712, at *37; *Moxness Prods., Inc. v. Xomed, Inc.*, No. 86-100-CIV-J-14, 1988 U.S. Dist. LEXIS 16062, at *64-65 (M.D. Fla. July 21, 1988), *rev'd in part on other grounds by* 891 F.2d 890 (Fed Cir. 1989).[5]

ParkerVision has provided no evidence "affirmatively demonstrat[ing] that a higher rate should be used." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983). ParkerVision's motion asserts that the Florida statutory rate is "in-line" with a Capital Asset Pricing Model ("CAPM") calculation made by ParkerVision's CFO in a new declaration prepared after the verdict. (Dkt. 490 at 9 n.10.) This estimate was not the subject of any discovery or cross-examination and is too speculative to support an award, and ParkerVision has cited to no case law that supports using this sort of CAPM to determine prejudgment interest rates in this circumstance. Moreover, the fact that ParkerVision financed itself by selling stock and further diluting its existing shareholders rather than

---

[5] Other district courts also apply the prime rate. *SSL Services, LLC v. Citrix Sys., Inc.*, 2:08-CV-158, 2012 WL 4092449, at *7 (E.D. Tex. Sept. 17, 2012) (using the prime rate is "the fairest way to achieve the compensatory purpose of pre-judgment interest"); *Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.*, 833 F. Supp. 2d 333, 343 (E.D.N.Y. 2011) (applying prime rate); *IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203, 227 (D. Del. 2007) (using the prime rate "best compensate[s] a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money"); *H.B. Fuller v. Nat'l Starch & Chemical Corp.*, 689 F. Supp. 923, 954 (D. Minn. 1988) ("[T]he prime rate applicable at the end of the month in which the shipment was made shall be the proper rate from which to determine prejudgment interest").

borrowing money at historically low rates is not an excuse to punish Qualcomm with a high interest rate.  (Dkt. 490 at 9 n.10; *see* Leonard Decl., ¶ 12 (CAPM inappropriate measure).)

ParkerVision has also not shown any causal connection between its issuance of equity and its loss of the use of the royalties awarded by the jury.  *See Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (affirming use of T-bill rate where "there was no evidence . . . that there was a causal connection between any borrowing and the loss of the use of the money awarded as a result of [the] infringement"); *Moxness*, 1988 U.S. Dist. LEXIS 16062, at *65 (applying prime rate because "[t]he plaintiff has not shown that it has been forced to borrow money because of [defendant's] infringement"); *Mars, Inc. v. Coin Acceptors*, 513 F. Supp. 2d 128, 135 (D. N.J. 2007) (rejecting plaintiff's proposed interest rate where there was no "evidence that the plaintiff would have been spared from borrowing money . . . during the infringement period had the infringer been paying royalties").

As the court held in *Powell*, in a patent case like this, the Florida statutory rate is simply "too high."[6]  *Powell v. Home Depot U.S.A., Inc.*, 715 F. Supp. 2d 1285, 1300 (S.D. Fla. 2010), *aff'd* Nos. 2010-1409, 2010-1416, 2011 U.S. App. LEXIS 22838 (Fed. Cir. 2011).  The Court should award prejudgment interest at the prime rate.  *Lam*, 718 F.2d at 1066 (affirming prejudgment interest at the prime rate even where the patentee "borrowed money at *or above* the prime rate in order to continue its operations") (emphasis added).

---

[6] ParkerVision cites the *Bel-Bel* case, which applied the Florida statutory rate but did so only in a diversity case, not a federal question case, let alone a patent case.  *Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead*, 162 F.3d 1101, 1109 (11th Cir. 1998); *see also Lewis v. Haskell Co.*, 304 F. Supp. 2d 1347, 1351 (M.D. Ala. 2004) (stating that "[i]n diversity-jurisdiction actions, the interest rate should be set by state law").  In a footnote, ParkerVision also cites several cases applying rates from other states, not Florida.

Accordingly, as set forth in the Leonard Declaration, the Court should apply the then-existing prime rate to the balance of the reasonable royalty damages awarded by the jury on a rolling quarterly basis.[7]   (Leonard Decl., Ex. 1.)   This approach fairly and accurately computes a compensatory prejudgment interest award using historical rates and known facts, not assumptions that serve only to unfairly inflate the result.

> **2.** **Prejudgment interest should be calculated based on a running royalty, not a lump sum.**

ParkerVision also grossly inflates its prejudgment interest calculations based on the false notion that it would have received the entire running royalty awarded by the jury as a lump sum at the time of first infringement.  (Dkt. 490 at 13.)  By backing up the damages accumulated over seven years to a lump-sum amount "in hand" as of the date of first infringement, ParkerVision creates a fiction that $173 million in damages, as a principal amount on which interest would be compounded, existed not after seven years of manufacturing and sales but on the first day and every day thereafter.  Applying an interest rate in this fictional world results in an accumulation of money far exceeding any reasonable return.  What monthly saver wouldn't want the principal in his savings account treated as if it had all been paid into the account on the first day rather than on a monthly basis over time?  But interest does not work that way and no bank offers such a savings account.  The dramatic difference between ParkerVision's lump sum approach and the proper running royalty approach is shown in the two demonstratives below:

---

[7] Qualcomm's prejudgment interest calculations use the average prime rate for each quarter in which royalties would have been paid.  Leonard Decl., ¶ 3.



ParkerVision's approach is fundamentally incorrect and inconsistent with the methodologies used by the experts as reflected in the trial record, ParkerVision's post-trial requests, and legal precedent.

a.      **The jury's award was based on a running royalty.**

A necessary premise for ParkerVision's argument that the entire $173 million verdict should begin bearing interest as of January 1, 2006 is the notion that the jury's award *may* have been a lump sum royalty—and thus may have been due in its entirety at the moment of first infringement—rather than a running royalty. The premise finds no support in the record whatsoever. At trial, both sides presented only running royalty calculations to the jury. ParkerVision's damages expert, Mr. Benoit, testified that a hypothetical negotiation in this case *would have* resulted in a running royalty rather than a lump-sum payment:

> Q.      And have you reached a conclusion about which type of royalty you think would have been appropriate to the hypothetical negotiation in this case?
>
> A.      Yes, I have.

> Q.      What type?
>
> A.      ***It's my opinion that it would be a running royalty.*** And the reason for that is anytime you consider a royalty payment, you consider the relative risks between the parties. ***That's very important in any analysis.*** A running royalty effectively shares that risk between both parties. A lump sum burdens the licensee with that risk. So unless I see instances that would warrant that shifting of risk, I split the risk between the parties. And that would be a running royalty.

(10/17 Tr. 154-55 (emphasis added).)  Qualcomm's damages expert, Dr. Leonard, likewise testified that the appropriate damages award would be calculated based on a running royalty. (10/21 Tr. 65:1-13, 73:12-21, 75:25-76:18.)  The jury also awarded direct infringement damages of $795,874 and inducement damages of $171,908,726, figures that provide no basis to infer a lump-sum damages award.  (Dkt. 468.)

ParkerVision's lump-sum theory is also internally inconsistent with its own post-trial motions.  In the same brief in which ParkerVision suggests that the jury's verdict be treated as a lump sum for purposes of generating a huge interest-bearing principal amount in 2006, ParkerVision also admits, in arguing for quarterly compounding, that: "In light of ParkerVision's past royalty practice and in accordance with industry standards, ParkerVision's hypothetical 2006 negotiations with Qualcomm ***would have required a quarterly payment of the reasonable royalty***."  (Dkt. 490 at 12 (emphasis added).)  The new Benoit declaration submitted in support of ParkerVision's prejudgment interest request likewise opines that "[t]he Jury's damage award on October 24, 2013 ***reflects a running royalty rate*** of ███ per receiver and ███ per transceiver."  (Benoit Decl., ¶ 2 (emphasis added).)  Similarly, ParkerVision's lump-sum theory is inconsistent with its request for supplemental damages and an ongoing royalty.  If the jury had based its award on a lump-

sum license payment, Qualcomm would have no future obligations whatsoever. ParkerVision cannot be heard to argue that the jury's verdict should be treated as a lump sum for purposes of generating a mammoth interest award while at the same time arguing that the verdict represents a running royalty such that ParkerVision is also entitled to ongoing, running equitable royalty payments.

> **b.    Under governing precedent, damages accrue over time for a running royalty.**

Case law establishes that prejudgment interest for a running royalty award must account for the fact that damages for a running royalty accrue over time.  As held by the Supreme Court, "prejudgment interest on a reasonably royalty should be calculated from 'the time that royalty payments would have been received.'"  *General Motors*, 461 U.S. at 655-56, *quoted in H.B. Fuller*, 689 F. Supp. at 954.  As a result, the Court should "determine[] what the . . . royalty payments would have been, and calculate[] prejudgment interest on each payment from the time it would have become due."  *General Motors*, 461 U.S. at 651.

Where the damages award is based on a running royalty—and in this case both parties argued that any damages award should be on a running royalty basis—courts calculate prejudgment interest as the sales occur over time.  *Univ. of Pittsburgh v. Varian Med. Sys.*, 2012 U.S. Dist. LEXIS 58156, at *32 (W.D. Pa. April 25, 2012) ("[S]ales of the infringing products shall be aggregated by quarter and interest shall be compounded quarterly"); *Boeing Co. v. United States*, 86 Fed. Cl. 303, 321-24 (Fed. Cl. Ct. 2009) (applying the prime rate to semiannual royalty payments as they would have been received); *Lemelson v. Mattel, Inc.*, No. 77 C-4558, 1990 U.S. Dist. LEXIS 1267, at *17 (N.D. Ill. Feb. 6, 1990) (calculating prejudgment interest "based on actual sales (goods shipped) on the first day following each

calendar quarter"); *H.B. Fuller*, 689 F. Supp. at 954 (calculating interest "from the last day of the month of each shipment").[8]

ParkerVision's cited cases do not support treating the damage award in this case as a lump-sum royalty.  In *Mondis*, for example, the court calculated prejudgment interest using a lump sum because the parties presented evidence supporting finding a lump-sum royalty. *Mondis Tech. LTD v. LG Elecs., Inc.*, No. 2:07-cv-565, ECF No. 666 (E.D. Tex. Aug. 30, 2011), *available at* Dkt. 490-4; *Hako-Med*, 2009 U.S. Dist. LEXIS 92712, at 37; *Powell*, 715 F. Supp. 2d at 1300, *aff'd*, 2011 U.S. App. LEXIS 22838 (whole number damages amounts suggestive of a lump-sum award).  In contrast, both sides in this case based their damages analysis on a running royalty analysis, which is consistent with "ParkerVision's past royalty practice and in accordance with industry standards."  (Dkt. 490 at 12.)  No evidence or argument would support a conclusion that the jury intended the damages awarded to be a lump sum.

*Powell* is also inapposite, because contrary to ParkerVision's characterization of the award in that case as "resulting from sales from 2006 and after," it turned on the infringing use of patented saw guards that had already been installed when the patent-in-suit issued in 2006.  *Powell*, 2011 U.S. App. LEXIS 22838 (saw guards installed in 2004 and 2005).  Thus, even though the evidence in *Powell* supported a per-unit royalty, the royalties were incurred as of the date of first infringement, not over time.

---

[8] ParkerVision cites *Nickson Indus., Inc. v. Rol Mfg. Co.*, as if it stands for a different rule.  (Dkt. 490 at 12 (quoting 847 F.2d 795 (Fed. Cir. 1988).)  Not so.  *Nickson* deals with the conditions under which a court may limit the term of prejudgment interest.  *Nickson*, 847 F.2d at 800-01.  It says nothing about whether interest should be calculated using a lump sum or on a rolling basis.  *Id.*

Finally, the court in *Hako-Med* did not treat the damages award as a principal sum for interest purposes as of the date of first infringement (July 2005), as ParkerVision urges here. Instead, the court began its interest calculations as of the date plaintiff filed the complaint (September 2006), in that case just two months before the alleged infringement ended (November 2006).

In short, none of the cases cited by ParkerVision would justify its extreme, overreaching theory that the damages in this case should all be allocated to the very first date of infringement.

        **c.**      **ParkerVision's back-up position—averaging sales over the entire damages period—would still distort the prejudgment interest analysis.**

ParkerVision's brief also offers a back-up position on damages accrual. It contends that, if the Court rejects its attempt to shift all the damages back to the date of first infringement, the Court should "allocat[e] ParkerVision's damages ... evenly over the course of the infringing period." (Dkt. 490 at 16.) Once again, ParkerVision proposes an assumption in lieu of facts, an unnecessary shortcut that seeks to create a windfall rather than adequate compensation based on the record. Qualcomm's actual sales of accused products increased substantially over the damage period. Averaging the sales to distribute the total number of sales evenly across each year from 2006 onward would thus move large amounts of damages backward in time, resulting in longer periods of interest accrual, and an exaggerated prejudgment interest amount. For example, ParkerVision's request to "average" sales would result in interest accruing from the first quarter of 2006 even though no sales of accused products were made until the second quarter of that year. (Dkt. 490 at 16; Leonard

Decl., Ex. 1.) *Energy Transp. Group, Inc. v. Sonic Innov., Inc.*, No. 05-422, 2011 U.S. Dist. LEXIS 60716, at *60-61 (D. Del. June 7, 2011) ("The court agrees ... that instead of ETG's prejudgment interest calculation beginning in the first quarter of 2001, the calculation should begin in the fourth quarter of 2001 when the infringing sales began.").

Despite acknowledging that the Court should "apply interest to a patentee's damages from infringement as those damages actually occurred" (Dkt. 490 at 16), ParkerVision still seeks to skew the prejudgment interest calculation by using a linear accounting method. ParkerVision attempts to justify this argument with the misleading contention that

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████  For that reason, the parties entered into a pre-trial stipulation setting agreed-upon percentages (with precision to the tenth of a percent) of Qualcomm's products that are assumed to return to the U.S. each year for purposes of this lawsuit. (JX 99 at ¶¶85-91; JX 100 at ¶¶85-91.)

Qualcomm does track when all of its various products now adjudicated to be infringing were sold. Qualcomm keeps accurate and detailed records of the products, sale quantities, and revenues on a quarterly basis. These records were produced to ParkerVision in the litigation, analyzed extensively by ParkerVision's attorneys and experts, and, in conjunction with the stipulated percentages of products returning to the United States, formed the basis for Mr. Benoit's damages opinion as expressed in his report and testimony at trial. This same information, used throughout the trial by both sides to calculate damages, should be used to calculate pre-judgment interest.

Moreover, any uncertainty about precisely when the accused products eventually entered the United States in finished customer devices cuts in ParkerVision's favor, because under Qualcomm's approach interest is being accrued from the time Qualcomm sells the accused product, not when the product is eventually imported into the United States as part of a finished device, which necessarily occurs after the product is sold.[9]

\* \* \* \* \*

When ParkerVision's attempts to manipulate the prejudgment interest rate and base are stripped away, a much lower, compensatory award can be calculated. As detailed in Qualcomm's post-trial damages brief, substantial evidence cannot support an award above the VIA rates, which would result in damages of $17.8 million. As set forth in the Leonard Declaration, prejudgment interest for damages based on the VIA license agreement, calculated at the prime rate using quarterly compounding, is ████████. (Leonard Decl., ¶ 9 & Ex. 2.) Even if the Court declines to grant any of Qualcomm's post-trial liability and damages motions, Qualcomm has accurately computed prejudgment interest on the jury's running royalty award as ████████. (Leonard Decl., ¶ 7 & Ex. 1.) Assuming the jury's damages award is upheld, that prejudgment interest amount would fairly compensate ParkerVision for the interest it would have earned had the parties "entered into a reasonable royalty agreement" and should be adopted by the Court. *General Motors*, 461 U.S. at 655-56.

---

[9] ParkerVision also requests that prejudgment interest be applied to the pre-verdict / post-judgment supplemental damages. Subject to Qualcomm's other disputes about the calculation of the prejudgment interest and supplemental damages award, Qualcomm agrees that prejudgment interest should be awarded for sales between the verdict and judgment.

**III.     CONCLUSION**

Qualcomm respectfully requests that the Court deny ParkerVision's motion for supplemental damages and prejudgment interest and adopt Qualcomm's proposals, as detailed above.

January 8, 2014

Respectfully submitted,

COOLEY LLP

By:      /s/ Timothy S. Teter
          Stephen C. Neal (admitted pro hac vice)
          nealsc@cooley.com
          Timothy S. Teter (admitted pro hac vice)
          teterts@cooley.com
          Jeffrey S. Karr (admitted pro hac vice)
          Ben Damstedt (admitted pro hac vice)
          Five Palo Alto Square
          3000 El Camino Real
          Palo Alto, CA 94306-2155
          Telephone:  (650) 843-5182
          Facsimile:  (650) 849-7400

CRAVATH, SWAINE & MOORE LLP
          Keith R. Hummel (admitted pro hac vice)
          khummel@cravath.com
          David Greenwald (admitted pro hac vice)
          dgreenwald@cravath.com
          Worldwide Plaza
          825 Eighth Avenue
          New York, New York 10019
          Telephone:  (212) 474-1000
          Facsimile:  (212) 474-3700

BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.
          John A. DeVault, III
          Florida Bar No. 103979
          jad@bedellfirm.com
          Courtney K. Grimm
          Florida Bar No. 953740
          cgrimm@bedellfirm.com
          The Bedell Building
          101 East Adams Street
          Jacksonville, Florida 32202
          Telephone:  (904) 353-0211
          Facsimile:  (904) 353-9307

*Counsel for Defendant Qualcomm Incorporated*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of January, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Timothy S. Teter
Timothy S. Teter (admitted pro hac vice)
teterts@cooley.com
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone:  (650) 843-5182
Facsimile:  (650) 849-7400

*Attorney for Defendant Qualcomm Incorporated*

1205197/HN