# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                       JACKSONVILLE DIVISION

PARKERVISION, INC., a Florida    )  Jacksonville, Florida
corporation,                     )
                                 )
              Plaintiff,         )  No. 3:11-cv-719-J-37TEM
                                 )
         vs.                     )  December 17, 2012
                                 )
QUALCOMM, INCORPORATED, a        )  2:30 p.m.
Delaware corporation,            )
                                 )
              Defendant.         )  Courtroom 5B
_____  )
```

**TRANSCRIPT OF MOTIONS HEARING**
BEFORE THE HONORABLE THOMAS E. MORRIS
UNITED STATES DISTRICT MAGISTRATE JUDGE

```
                   OFFICIAL COURT REPORTER:

                       Scott N. Gamertsfelder, RMR, FCRR
                       300 North Hogan Street, No. 9-150
                       Jacksonville, FL 32202
                       Telephone:  (904) 301-6843
```

(Proceedings reported by stenography; transcript produced by computer.)

1  going to argue, obviously, that the nonpatented features are
2  what drive them, and we are going to argue the opposite of
3  that disputed issue of fact to be resolved by the
4  fact-finder; but to properly phrase the issue for the
5  fact-finder, we need the evidence, and they haven't provided
6  that to us.
7            There is a whole bunch of Georgia-Pacific factors
8  on damages that are cited in the letter to your Honor and in
9  the briefing.  I won't go through those.  I think this
10 relates to one of the questions that you posed to us about
11 cost savings.  We don't have to go through those, but that's
12 the gist of my argument on this issue, your Honor.
13           I'm prepared to yield the floor.
14           THE COURT:  All right.  Mr. Greenwald?
15           MR. GREENWALD:  Thank you, your Honor.  David
16 Greenwald for Qualcomm.
17           I would like to take the two issues that
18 Mr. Budwin has raised, but for reasons I think will come
19 clear, in reverse order.
20           On the first issue, whether we have only provided
21 in response to 'rog 9 apportioned financial information,
22 apportioned revenues, the short answer and complete answer to
23 this is just we have not done any apportionment.  We have not
24 done any apportionment.
25           Your Honor, we explained that to Mr. Budwin on the

1  meet and confer in this matter.  He either didn't hear us
2  clearly or for whatever reason doesn't understand our
3  position or the data we gave him as we understand it, but we
4  are confident we understand it correctly.
5           To explain why that is, I think just a little bit
6  of background on the types of products that are at issue in
7  this case.  Mr. Budwin briefly explained that.  I would just
8  like to elaborate a little bit.
9           Mr. Budwin is correct; the accused products in
10 this case, the ones they have accused of infringement and the
11 ones we concede are accused of infringement, do fall into
12 three categories.  They are all single unitary products.
13 They are all integrated products.  They are all physically
14 part of a single chip, if you will, a tiny, little square
15 piece of silicon.  They are, yes, receivers which do nothing
16 but receive a signal with the help of the circuitry that they
17 contend infringes their patents.
18           Then there are somewhat more complex integrated
19 single standalone products called transceivers.  Those both
20 have the receiver functionality and also have the ability to
21 transmit signals.  They don't transmit using any technology
22 that's at issue in the patents here; but, nonetheless, it's a
23 single unitary product.
24           Lastly, the most complex of all are what
25 Mr. Budwin correctly referred to as integrated RF base band

1  chips.  These, again, are not collections of different chips,
2  they are not a part of chipsets or chipset solutions.  They
3  are single stand-alone products.
4           In response to 'rog 9, we provided for 75 such
5  products.  By "such products," I mean receivers,
6  transceivers, and integrated RF base bands.  The complete
7  U.S. revenues, sales revenues, for those products we did not
8  make any apportionment, by which I understand Mr. Budwin to
9  mean if, for example, integrated RF base band, if we sold,
10 just for purposes of illustration, a million dollars worth of
11 that.  We didn't report to him a million dollars.  We said,
12 oh, 20 percent of that is attributable to the receiver
13 functionality, so we are only going to report in 'rog 9
14 $200,000.
15          That's not what we did.  We reported a million
16 dollars, if those are the figures.  So I think the
17 fundamental premise -- and I'm sorry if that perhaps comes
18 down to this, but I think it's just a fundamental
19 misunderstanding which we attempted to correct at least at
20 the meet and confer, if not earlier, underlies this portion
21 of this motion.
22          Second of all, with respect to what he contends to
23 be the prong of the motion challenging our decision to
24 provide only financial information for sales of products
25 shipped to the U.S., here, it is correct that in our response