# EXHIBIT E

# QUALCOMM INC/DE

## FORM DEF 14A
(Proxy Statement (definitive))

## Filed 1/12/2006 For Period Ending 3/7/2006

| | |
|---|---|
| Address | 5775 MOREHOUSE DR |
| | SAN DIEGO, California 92121 |
| Telephone | 858-587-1121 |
| CIK | 0000804328 |
| Industry | Communications Equipment |
| Sector | Technology |
| Fiscal Year | 09/30 |


Powered By EDGAR Online
http://www.edgar-online.com/
© Copyright 2005. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online's Terms of Use.

restricted stock as to which the restrictions have not lapsed prior to the participant's termination of service. Participants holding restricted stock will generally have the right to vote the shares and to receive any dividends paid, except that dividends or other distributions paid in shares will be subject to the same restrictions as the original award.

**Performance Awards**

The Board may grant performance awards subject to such conditions and the attainment of such performance goals over such periods as the Board determines in writing and sets forth in a written agreement between the Company and the participant. To the extent compliance with Section 162(m) of the Code is desired, a committee comprised solely of "outside directors" under Section 162(m) shall act with respect to performance awards, and "Board" as used in this section shall mean this committee. These awards may be designated as performance shares or performance units. Performance shares and performance units are unfunded bookkeeping entries generally having initial values, respectively, equal to the fair market value determined on the grant date of a share of common stock and a value set by the Board. Performance awards will specify a predetermined amount of performance shares or performance units that may be earned by the participant to the extent that one or more predetermined performance goals are attained within a predetermined performance period. To the extent earned, performance awards may be settled in cash, shares of common stock (including shares of restricted stock) or any combination thereof.

Prior to the beginning of the applicable performance period or such later date as permitted under Section 162(m) of the Code, the Board will establish one or more performance goals applicable to the award. Performance goals will be based on the attainment of specified target levels with respect to one or more measures of business or financial performance of the Company and each subsidiary corporation consolidated with the Company for financial reporting purposes, or such division or business unit of the Company as may be selected by the Board. The Board, in its discretion, may base performance goals on one or more of the following such measures: sales revenue, gross margin, operating margin, operating income, pre-tax profit, earnings before interest, taxes, depreciation and amortization, net income, expenses, the market price of the Company's common stock, earnings per share, return on stockholder equity, return on capital, return on net assets, economic value added, market share, customer service, customer satisfaction, safety, total stock holder return, free cash flow, or other measures as determined by the Board. The target levels with respect to these performance measures may be expressed on an absolute basis or relative to a standard specified by the Board. The degree of attainment of performance measures will be calculated in accordance with generally accepted accounting principles, but prior to the accrual or payment of any performance award for the same performance period, and, according to criteria established by the Board, excluding the effect (whether positive or negative) of changes in accounting standards or any extraordinary, unusual or nonrecurring item occurring after the establishment of the performance goals applicable to a performance award.

Following completion of the applicable performance period, the Board will certify in writing the extent to which the applicable performance goals have been attained and the resulting value to be paid to the participant. The Board retains the discretion to eliminate or reduce, but not increase, the amount that would otherwise be payable on the basis of the performance goals attained to a participant who is a "covered employee" within the meaning of Section 162(m) of the Code. However, no such reduction may increase the amount paid to any other participant. The Board may make positive or negative adjustments to performance award payments to participants other than covered employees to reflect the participant's individual job performance or other factors determined by the Board. In its discretion, the Board may provide for the payment to a participant awarded performance shares of dividend equivalents with respect to cash dividends paid on the Company's common stock. The Board may provide for performance award payments in lump sums or installments. If any payment is to be made on a deferred basis, the Board may provide for the payment of dividend equivalents or interest during the deferral period.

Unless otherwise provided by the Board, if a participant's service terminates due to the participant's death or disability prior to completion of the applicable performance period, the final award value will be determined at the end of the performance period on the basis of the performance goals attained during the entire performance period but will be prorated for the number of months of the participant's service during the performance period. If a participant's service terminates prior to completion of the applicable performance

period for any other reason, the 2006 Plan provides that, unless otherwise determined by the Board, the performance award will be forfeited. No performance award may be sold or transferred other than by will or the laws of descent and distribution prior to the end of the applicable performance period.

**Deferred Compensation Awards**

The 2006 Plan authorizes the Board to establish a deferred compensation award program in addition to the ERMCP. If and when implemented, participants designated by the Board who are officers, directors or members of a select group of highly compensated employees may elect to receive, in lieu of compensation otherwise payable in cash or in lieu of cash or shares of common stock issuable upon the exercise or settlement of stock options, stock appreciation rights or performance shares or performance unit awards, an award of deferred stock units. Each such stock unit represents a right to receive one share of common stock at a future date determined in accordance with the participant's award agreement. Deferred stock units are fully vested upon grant and will be settled by distribution to the participant of a number of whole shares of common stock equal to the number of stock units subject to the award as soon as practicable following the earlier of the date on which the participant's service terminates or a settlement date elected by the participant at the time of his or her election to receive the deferred stock unit award. Participants are not required to pay any additional consideration in connection with the settlement of deferred stock units. A holder of deferred stock units has no voting rights or other rights as a stockholder until shares of common stock are issued to the participant in settlement of the stock units. However, participants holding deferred stock units will be entitled to receive dividend equivalents with respect to any payment of cash dividends on an equivalent number of shares of common stock. Such dividend equivalents will be credited in the form of additional whole and fractional stock units determined in accordance with a method specified by the Board in the participant's award agreement. Prior to settlement, deferred stock units may not be assigned or transferred other than by will or the laws of descent and distribution.

**Other Stock-Based Awards**

The Plan permits the Board to grant other awards based on the Company's stock or on dividends on the Company's stock.

**Effect of Certain Corporate Events**

In the event of any stock dividend, stock split, reverse stock split, recapitalization, combination, reclassification or similar change in the capital structure of the Company, appropriate adjustments will be made in the number and class of shares subject to the 2006 Plan and to any outstanding awards, in the Section 162(m) per employee grant limit (see "Federal Income Tax Information — Potential Limitation on Company Deductions," below), and in the exercise price per share of any outstanding awards. Any fractional share resulting from an adjustment will be rounded down to the nearest whole number, and at no time will the exercise price of any option or stock appreciation right be decreased to an amount less than par value of the stock subject to the award.

If a Change in Control occurs, the surviving, continuing, successor or purchasing corporation or parent corporation thereof may either assume the Company's rights and obligations under the outstanding awards or substitute substantially equivalent awards for such corporation's stock. However, if an outstanding award is not assumed or replaced, the 2006 Plan provides that the vesting and exercisability of the award shall be accelerated, effective 10 days prior to the Change in Control. Awards that are not assumed, replaced or exercised prior to the Change in Control will terminate. The acceleration of an award in the event of an acquisition or similar corporate event may be viewed as an anti-takeover provision, which may have the effect of discouraging a proposal to acquire or otherwise obtain control of the Company.

*Change in Control.* The 2006 Plan defines a "Change in Control" of the Company as any of the following events upon which the stockholders of the Company immediately before the event do not retain immediately after the event, in substantially the same proportions as their ownership of shares of the Company's voting stock immediately before the event, direct or indirect beneficial ownership of more than

18

50% of the total combined voting power of the stock of the Company, its successor or the corporation to which the assets of the Company were transferred: (i) a sale or exchange by the stockholders in a single or series of related transactions of more than 50% of the Company's voting stock; (ii) a merger or consolidation in which the Company is a party; (iii) the sale, exchange or transfer of all or substantially all of the assets of the Company; or (iv) a liquidation or dissolution of the Company.

**Duration, Amendment and Termination**

The Board may amend or terminate the 2006 Plan at any time. If not earlier terminated, the 2006 Plan will expire on the tenth anniversary of stockholder approval.

The Board may also amend the 2006 Plan at any time or from time to time. However, no amendment authorized by the Board will be effective unless approved by the stockholders of the Company if the amendment would: (i) increase the number of shares reserved for options under the 2006 Plan; (ii) change the class of persons eligible to receive incentive stock options; or (iii) modify the 2006 Plan in any other way if such modification requires stockholder approval under applicable law, regulation or rule.

**Awards Granted to Certain Persons**

The aggregate numbers of shares of common stock subject to awards granted to certain persons under the plans to be combined as the 2006 Plan in the last completed fiscal year are as follows: (i) Paul E. Jacobs, Chief Executive Officer, 1,400,000 shares; (ii) Irwin Mark Jacobs, Chairman of the Board, 500,000 shares; (iii) Steven R. Altman, President, 1,150,000 shares; (iv) Sanjay K. Jha, Executive Vice President and President, CDMA Technologies Group, 1,100,000 shares; (v) William E. Keitel, Executive Vice President and Chief Financial Officer, 400,000 shares; (vi) Roberto Padovani, Executive Vice President and Chief Technology Officer, 300,000 shares; and (vii) all current executive officers as a group, an aggregate of 5,787,000 shares; (viii) all current directors who are not executive officers as a group, an aggregate of 377,000 shares; and (ix) all employees, including current officers who are not executive officers, as a group, an aggregate of 28,270,408 shares.

**Federal Income Tax Information**

*Incentive Stock Options.* An optionee recognizes no taxable income for regular income tax purposes as the result of the grant or exercise of an incentive stock option. Optionees who do not dispose of their shares for at least two years following the date the incentive stock option was granted or within one year following the exercise of the option will normally recognize a long-term capital gain or loss equal to the difference, if any, between the sale price and the purchase price of the shares. If an optionee satisfies both such holding periods upon a sale of the shares, the Company will not be entitled to any deduction for federal income tax purposes. If an optionee disposes of shares either within two years after the date of grant or within one year from the date of exercise (referred to as a "disqualifying disposition"), the difference between the fair market value of the shares on the exercise date and the option exercise price (not to exceed the gain realized on the sale if the disposition is a transaction with respect to which a loss, if sustained, would be recognized) will be taxed as ordinary income at the time of disposition. Any gain in excess of that amount will be a capital gain. If a loss is recognized, there will be no ordinary income, and such loss will be a capital loss. A capital gain or loss will be long-term if the optionee's holding period is more than 12 months. Any ordinary income recognized by the optionee upon the disqualifying disposition of the shares generally should be deductible by the Company for federal income tax purposes, except to the extent such deduction is limited by applicable provisions of the Code or the regulations thereunder. The difference between the option exercise price and the fair market value of the shares on the exercise date of an incentive stock option is an adjustment in computing the optionee's alternative minimum taxable income and may be subject to an alternative minimum tax which is paid if such tax exceeds the regular tax for the year. Special rules may apply with respect to certain subsequent sales of the shares in a disqualifying disposition, certain basis adjustments for purposes of computing the alternative minimum taxable income on a subsequent sale of the shares and certain tax credits which may arise with respect to optionees subject to the alternative minimum tax.



January 17, 2013

Dear Fellow Stockholder:

You are cordially invited to attend Qualcomm's Annual Meeting of Stockholders (Annual Meeting) on Tuesday, March 5, 2013. The meeting will begin promptly at 9:30 a.m. Pacific Time at the Irwin M. Jacobs Qualcomm Hall, 5775 Morehouse Drive, San Diego, California 92121. I invite you to arrive early at 8:30 a.m. to preview our product displays. We will begin the Annual Meeting with a discussion and vote on the matters set forth in the Notice of Annual Meeting of Stockholders, followed by presentations and a report on Qualcomm's fiscal 2012 performance.

This year, we are again furnishing the proxy materials to stockholders primarily over the Internet. Therefore, most stockholders will not receive paper copies of our proxy materials. We will instead send these stockholders a notice with instructions for accessing the proxy materials and voting via the Internet. The notice also provides information on how stockholders may obtain paper copies of our proxy materials if they so choose. This method expedites the receipt of your proxy materials, lowers the costs of our Annual Meeting and helps to conserve natural resources.

Whether or not you plan to attend the Annual Meeting, please vote as soon as possible. As an alternative to voting in person at the Annual Meeting, you may vote via the Internet, by telephone or, if you receive a paper proxy card in the mail, by mailing the completed proxy card. Voting by any of these methods will ensure your representation at the Annual Meeting.

**Your vote is very important to us. I urge you to vote as we recommend.**

I look forward to seeing you in San Diego at the Irwin M. Jacobs Qualcomm Hall on March 5, 2013.

Sincerely,

Paul E. Jacobs
*Chairman and Chief Executive Officer*

*We do not have a pre-defined severance plan.* We do not have a pre-defined severance plan covering the involuntary termination of employees, including the NEOs. We do not accelerate unvested stock options, RSUs or PSUs in the event of an involuntary "for cause" termination. Such terminations may involve theft, dishonesty, falsification, actions that are detrimental to the Company, conviction of a criminal act that impairs the performance of duties required by the Company or violation of a material Company policy.

The table below summarizes the treatment of unvested stock options, PSUs and RSUs following involuntary terminations without cause and the "double trigger" provisions for terminations after a change in control.

**Treatment of Unvested Equity Awards in Certain Termination Situations**

|  | **Stock Options** | **RSUs** | **PSUs** |
| --- | --- | --- | --- |
| Treatment of unvested awards after involuntary terminations without cause. | 10% of the total amount granted is automatically accelerated, and up to an additional 10% may be accelerated using a pre-defined formula, subject to execution of a general release of claims. | For RSUs that vest less frequently than annual graded vesting, a prorated portion (that does not exceed one-third of the total amount granted) may be vested using a pre-defined formula, subject to execution of a general release of claims. | All unvested PSUs are immediately forfeited. The Compensation Committee, in its sole discretion, may waive the automatic forfeiture of all or any portion of the award. This is consistent with the above-mentioned practice that allows our Board to terminate employment with discretion as to the terms and conditions of separation. |
| "Double trigger" treatment of unvested awards. | If, within 24 months after a change in control, the recipient is involuntarily terminated for any reason other than for cause or if the recipient voluntarily resigns "for good reason" (as defined in the award agreements), then vesting of stock options and RSUs is accelerated in full. | | Vesting of PSUs that remained outstanding after a change in control is accelerated but the number of shares of stock that may be issued will be prorated using a pre-defined formula. |

### I. Other Policies and Practices

*We have a cash incentive compensation repayment ("claw back") policy.* We require an executive officer, including an NEO, to repay to us the amount of any annual cash incentive that an executive officer received to the extent that:

- the amount of such payment was based on the achievement of certain financial results that were subsequently the subject of a restatement that occurred within 12 months of such payment;

- the executive officer had engaged in theft, dishonesty or intentional falsification of documents or records that resulted in the obligation to restate our financial results; and

- a lower annual cash incentive would have been paid to the executive officer based upon the restated financial results.

67

The Compensation Committee is responsible for the interpretation and enforcement of this claw back policy. We plan to amend this policy as needed to comply with the additional requirements of the Dodd-Frank Act after the SEC adopts new regulations implementing those requirements.

*Practices regarding equity awards.* We may award PSUs, RSUs and/or stock options upon hiring a new NEO, and upon a promotion or change in roles and responsibilities of an NEO. The exercise price of all stock options is the fair market value (i.e., closing price) on the grant date, and the number of shares subject to the options is fixed on the grant date.

*We have stock ownership guidelines.* Our stock ownership guidelines for all of our executive officers, including our NEOs, help ensure that they maintain an equity stake in the Company, and by doing so, appropriately link their interests with those of other stockholders. Only shares actually owned and deferred stock units under the Executive Retirement Matching Contribution (ERMC) Plan count toward the stock ownership requirement. Outstanding unexercised stock options and unvested PSUs and RSUs do not count toward the requirement. Dr. Jacobs and Messrs. Keitel and Rosenberg have met their ownership guidelines. Messrs. Aberle and Mollenkopf are not yet required to meet their ownership guidelines and are progressing toward these guidelines. If an NEO has not met the guidelines by the deadline, we will require that the NEO retain at least 50% of the net shares remaining after required tax withholdings upon payment of any PSU or RSU or upon stock option exercise until they meet the minimum guideline. The guidelines are as follows:

| **Role** | **Multiple of Base Salary** |
| --- | --- |
| CEO | 6x |
| President | 3x |
| All other executive officers | 2x |

*Tax regulations.* A goal of the Compensation Committee is to comply with the requirements of Internal Revenue Service Code Sections 162(m) and 409A. Section 162(m) places a $1 million annual limit on the amount that a public company may deduct for compensation paid to the CEO and the other three most highly compensated NEOs, excluding the CFO. The $1 million limit does not apply if the compensation meets Section 162(m) requirements for performance-based compensation. We designed and administered our fiscal 2012 ACIP as cash-denominated performance units granted under the 2006 LTIP to be eligible for tax deductions to the extent permitted by the relevant tax regulations, including Section 162(m). Compliance with Section 162(m) did not influence the allocation of compensation among base salary, target annual cash incentives and long-term incentives for fiscal 2012. Only actual shares distributed that are above the PSU target amount will qualify as deductible compensation under Section 162(m). From time to time, we may pay compensation to our Section 162(m) covered officers that may not be tax deductible if there are compelling business reasons to do so. Beginning in November 2011, RSUs granted to our executive officers are structured to satisfy the performance-based compensation exception of the 162(m) limit on deductible compensation.

Under Section 409A, a nonqualified deferred compensation plan (such as our ERMC Plan) must comply with certain requirements related to the timing of deferral and distribution decisions, otherwise amounts deferred under the plan could be included in gross income when earned and be subject to additional penalty taxes. Nonqualified stock options are generally exempt from Section 409A if the option satisfies certain requirements. PSUs and RSUs are also generally exempt from Section 409A. We administer the ERMC Plan and equity awards in accordance with Section 409A requirements.

## IV. COMPENSATION RISK MANAGEMENT

The Compensation Committee engaged its independent compensation consultant, FWC, to collaborate with Qualcomm's human resources staff to conduct an assessment of potential risks that may arise from our compensation programs. Based on this assessment, the Compensation Committee concluded that our policies and practices do not encourage excessive and unnecessary risk taking that would be reasonably likely to have a