**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**PARKERVISION, INC.,**

       **Plaintiff,**

   **vs.**

**QUALCOMM INCORPORATED,**

     **Defendant.**

**Case No. 3:11-cv-719-J-37JRK**

**PARKERVISION'S RESPONSE IN OPPOSITION TO QUALCOMM'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW
<u>TRIAL REGARDING INVALIDITY</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    LEGAL STANDARD.......................................................................................... 2

III.   LEGALLY SUFFICIENT EVIDENCE SUPPORTS THE JURY'S VERDICT THAT NO CLAIM IS ANTICIPATED.................................................................................... 3

    A.   The Jury Correctly Rejected Dr. Razavi's Anticipation Testimony. ...................... 3

    B.   The Jury Was Not Required To Find That Any Reference Anticipated Any Asserted Claim Of Any Of The Four Patents-In-Suit.............................................. 5

        1.   Legally Sufficient Evidence Supports The Jury's Verdict That Weisskopf Does Not Anticipate.................................................................. 6

        2.   Legally Sufficient Evidence Supports The Jury's Verdict That Estabrook Does Not Anticipate.................................................................. 9

        3.   Legally Sufficient Evidence Supports The Jury's Verdict That DeMaw Does Not Anticipate................................................................. 11

IV.   QUALCOMM's ARGUMENTS For A NEW TRIAL ARE WITHOUT MERIT.......... 14

    A.   Qualcomm Fails To Establish That The Jury's Verdict Was Against The Great Weight Of The Evidence. ...................................................................... 14

    B.   The Court Correctly Excluded Qualcomm's Requested Instructions................... 14

        1.   Qualcomm's *i4i* instruction is superfluous and misleading...................... 14

        2.   The Court's anticipation instruction is a correct statement of law. .......... 16

    C.   ParkerVision Did Not Disregard or Contradict The Court's Construction of the "Generating" Limitations.................................................................... 17

        1.   ParkerVision did not argue an erroneous claim construction to the jury.. 17

        2.   Qualcomm waived its objection to ParkerVision's application of the "generating" limitations. .......................................................... 19

V.    CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexsam, Inc. v. IDT Corp.*,
   715 F.3d 1336 (Fed. Cir. 2013)..............................................................................4

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
   448 F.3d 1324 (Fed. Cir. 2006)........................................................................8, 11

*BankAtlantic v. Blythe Eastman Paine Webber, Inc.*,
   955 F.2d 1467 (11th Cir. 1992) .....................................................................17, 19

*Broadcom Corp. v. Qualcomm Inc.*,
   543 F.3d 683 (Fed. Cir. 2008).............................................................................20

*Celeritas Techs. Ltd. v. Rockwell Int'l Corp.*,
   150 F.3d 1354 (Fed. Cir. 1998)...........................................................................16

*Conroy v. Abraham Chevrolet Tampa, Inc.*,
   8:01-CV-1466-T-27MAP, 2003 U.S. Dist. LEXIS 28052 (M.D. Fla. Feb. 13, 2003) ............16

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006)......................................................................14, 16

*Eaton Corp. v. Rockwell Int'l Corp.*,
   322 F.3d 1332 (Fed. Cir. 2003)...........................................................................19

*Ecolab Inc. v. Paraclipse, Inc.*,
   285 F.3d 1362 (Fed. Cir. 2002)...........................................................................14

*Ford ex rel. Estate of Ford v. Garcia*,
   289 F.3d 1283 (11th Cir. 2002) ..........................................................................19

*Glaxo Grp. Ltd. v. Apotex, Inc.*,
   376 F.3d 1339 (Fed. Cir. 2004).............................................................................9

*Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*,
   No. 8:06-cv-1790-T-33AEP, 2009 U.S. Dist. LEXIS 92712 (M.D. Fla. Sept. 22,
   2009) ....................................................................................................................14

*In re Omeprazole Litig.*,
   483 F.3d 1364 (Fed. Cir. 2007)....................................................................6, 8, 9

*Ins. Co. of N. Am. v. Valente*,
   933 F.2d 921 (11th Cir. 1991) ............................................................................3

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*,
   381 F.3d 1142 (Fed. Cir. 2004)...................................................................4, 7, 8

*Lamonica v. Safe Hurricane Shutters, Inc.*,
   711 F.3d 1299 (11th Cir. 2013) ......................................................................2, 3

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009).........................................................................19

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
   244 F.3d 1365 (Fed. Cir. 2001)...........................................................................2

*Microsoft Corp. v. i4i Ltd. P'ship*,
   131 S. Ct. 2238 (2011) ................................................................................2, 15

*Penny v. Williams & Fudge, Inc.*,
   840 F. Supp. 2d 1314 (M.D. Fla. 2012)......................................................2, 4, 7

*Proveris Sci. Corp. v. Innovasystems, Inc.*,
   536 F.3d 1256 (Fed. Cir. 2008)...........................................................................4

*Synqor, Inc. v. Artesyn Techs., Inc.*,
   709 F.3d 1365 (Fed. Cir. 2013).........................................................................16

*United States EEOC v. Massey Yardley Chrysler Plymouth*,
   117 F.3d 1244 (11th Cir. 1997) ..........................................................................2

*United States v. King*,
   3:06-cr-212-J-33MMH, 2006 U.S. Dist. LEXIS 87052 (M.D. Fla. Dec. 1, 2006).................16

**STATUTES**

American Intellectual Property Law .........................................................................16

**OTHER AUTHORITIES**

Fed. R. Civ. P. 51(d)(1)(B) ...................................................................................20

Rule 50 ..............................................................................................................2

## I.      INTRODUCTION

The Court should deny Qualcomm's Renewed Motion for JMOL and Motion for New Trial Regarding Invalidity (dkt. 499). Qualcomm has not satisfied, and cannot satisfy, the exceptionally high threshold to override the jury's validity verdict. At trial Qualcomm bore the burden to present clear and convincing evidence that the prior art anticipated each limitation of the asserted claims of the four patents-in-suit.[1] The jury found that Qualcomm failed to meet its burden. Qualcomm's task now is even more daunting—it must prove not only that it presented clear and convincing evidence of anticipation, but that no rational jury could have reviewed the evidence and reached any conclusion other than finding the asserted claims are anticipated.

JMOL is inappropriate because the verdict is supported by legally sufficient evidence and the jury was not required to find the asserted claims anticipated. Dr. Razavi failed to identify a single piece of prior art that disclosed each limitation of the asserted claims as construed by the Court. In particular, Dr. Razavi's testimony failed to show that: (1) the "energy transfer" limitations as construed by the Court were disclosed by the Weisskopf or Estabrook references; and (2) the "sampling" limitation was disclosed by the DeMaw reference. These failures of proof, alone, are sufficient grounds to support the jury's verdict that Qualcomm did not establish anticipation of the asserted claims.

JMOL is also inappropriate because the jury could have reasonably concluded that Dr. Razavi's testimony was not credible, in whole or in part. While Qualcomm asserts that Dr. Razavi's testimony was unassailable, the jury was the sole arbiter of credibility and it was not required to believe any of Dr. Razavi's testimony, especially after he was repeatedly impeached, omitted claim limitations and constructions, admitted to errors in his simulations on which his

---

[1] While styled as a motion for "invalidity," Qualcomm waived or dropped its invalidity challenges other than anticipation. Trial Tr. 10/15 at 19:22-20:4 (discussing obviousness and admitting Qualcomm "did not argue [it] – we presented anticipation"). Thus, the only issue presented to the jury was whether the claims were anticipated.

1

opinions relied, and advanced an understanding of the claim terms incongruent with that offered by Qualcomm for infringement purposes.

Qualcomm's request for a new trial should also be denied. Because the great weight of the evidence supports the jury's no-anticipation verdict, there is no reason to grant a new trial on evidentiary grounds. Further, a new trial is unwarranted because the Court correctly instructed the jury on the relevant law and Qualcomm suffered no prejudice.

## II.     LEGAL STANDARD

Judgment as a matter of law is appropriate when no "legally sufficient evidentiary basis allows a reasonable jury to find for the nonmoving party on an issue." *Penny v. Williams & Fudge, Inc.*, 840 F. Supp. 2d 1314, 1318 (M.D. Fla. 2012) (citations omitted). "In ruling on a Rule 50 motion, the court must draw all reasonable inference in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id*. at 1318. Consequently, JMOL is appropriate "only if the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1312 (11th Cir. 2013) (citation omitted).

Qualcomm's task here is even more difficult in light of its underlying burden to prove invalidity by "clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). "Courts grant JMOL for the party bearing the burden of proof only in extreme cases, when the party bearing the burden of proof has established its case by evidence that the jury would not be at liberty to disbelieve and the only reasonable conclusion is in its favor." *Mentor H/S, Inc. v. Med. Device Alliance, Inc.* 244 F.3d 1365, 1375 (Fed. Cir. 2001); *see also United States EEOC v. Massey Yardley Chrysler Plymouth*, 117 F.3d 1244, 1250 (11th Cir. 1997) (emphasizing that granting JMOL "in favor of the party having the burden of proof" is an "extreme step" that "can be done only when the evidence favoring the claimant is so one-sided as

2

to be of overwhelming effect.").

A new trial is not granted unless the verdict is "against the clear weight of the evidence ... or will result in a miscarriage of justice." *Ins. Co. of N. Am. v. Valente*, 933 F.2d 921, 922-23 (11th Cir. 1991). "New trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Lamonica*, 711 F.3d at 1312-13.

## III.   LEGALLY SUFFICIENT EVIDENCE SUPPORTS THE JURY'S VERDICT THAT NO CLAIM IS ANTICIPATED.

### A.   The Jury Correctly Rejected Dr. Razavi's Anticipation Testimony.

The jury had sound reasons for rejecting Qualcomm's anticipation defense. Qualcomm's JMOL motion ultimately fails for two primary reasons, and either reason alone warrants denial: (1) Qualcomm failed to present evidence that each of the asserted references discloses each and every limitation as construed by the Court; and (2) Qualcomm's invalidity case hinged entirely on the jury believing all of Dr. Razavi's testimony, which the jury had every reason to disbelieve.

First, Qualcomm failed to present any evidence, let alone clear and convincing evidence, that the asserted references disclose several claim limitations. In particular, Dr. Razavi's testimony failed to show by clear and convincing evidence that the Weisskopf and Estabrook references disclose the "energy transfer" limitations as construed by the Court,[2] and that the DeMaw reference discloses the "sampling" limitation as construed by the Court. A jury is entitled to find no anticipation—indeed, must find no anticipation—where expert testimony fails to explain how the prior art teaches each and every limitation as construed by the Court. *See*

---

[2] The "energy transfer" limitation includes the following limitations: "storage module receives non-negligible amounts of energy transferred from a carrier signal" of claim 23 of the '551 Patent, "transfer energy from the carrier signal" of claims 1 and 82 of the '518 Patent, "transfer energy from the first signal" of claim 90 of the '518 Patent, and "energy is transferred from the carrier signal" of claim 2 of the '371 Patent.

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004) ("Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. The testimony is insufficient if it is merely conclusory." (citation omitted)). This is especially true where, as here, the technology is complex. *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1347-48 (Fed. Cir. 2013) ("In this case, the technology was complex and the prior-art references were not easily understandable without expert testimony."); *Proveris Sci. Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008) (same). Dr. Razavi's testimony was also incomplete: he entirely ignored the Court's claim constructions and the meaning of the claim limitations in his attempt to compare alleged prior art to the asserted claims. For example, he failed to mention, let alone apply, the Court's claim construction of the "energy transfer" limitations that require the transfer of energy from the carrier signal in amounts distinguishable from noise.[3] This failure of proof in Dr. Razavi's testimony supports the jury's verdict that none of the prior art references identified by Qualcomm anticipates the asserted claims.

Second, Qualcomm asks the Court to set aside the jury's verdict based solely on the testimony of Dr. Razavi—testimony that the jury heard, considered, and discounted. In its JMOL review, the Court "must disregard all evidence favorable to the moving party that the jury is not *required* to believe." *Penny*, 840 F. Supp. 2d at 1318 (emphasis added). The jury was not *required* to believe Dr. Razavi's testimony, in whole or in part, and was free to determine the weight and credibility to give it. *See* Trial Tr. 10/15 at 149:9-14. The jury had good reasons for

---

[3] Dr. Razavi also never explained how or whether his simulations, which he admitted were not prior art, established that this element was satisfied. And in the simulations upon which he relied, he failed to add noise to determine whether any energy transferred was distinguishable from noise as required by the claims. *See* Trial Tr. 10/11 at 232:20-22, 231:10-13.

4

discounting Dr. Razavi's conclusory testimony.[4] Moreover, Dr. Razavi was repeatedly impeached on cross-examination and admitted to errors and omissions in the simulations upon which he based his opinions.[5] And, as set forth below with respect to the "generating" limitations, Dr. Razavi advanced an understanding of the plain meaning of this term for validity purposes that differed from the plain meaning that Qualcomm's own counsel advocated in support of non-infringement. A witness who proves unreliable in certain respects is potentially unreliable in all respects—here the jury reasonably chose not to believe Dr. Razavi's testimony on anticipation.

### B. The Jury Was Not Required To Find That Any Reference Anticipated Any Asserted Claim Of Any Of The Four Patents-In-Suit.

Qualcomm did not argue that a single reference anticipates each asserted claim. Instead, Qualcomm presented a patchwork of prior art references, alleging that the Weisskopf reference anticipates the asserted claims of the '551, '518, and the '371 Patents, the Estabrook reference anticipates claims 23, 161, and 202 of the '551 Patent, claims 27, 82, 90, and 91 of the '518 Patent, and claim 2 of the '371 Patent, and the DeMaw reference anticipates claim 18 of the '342 Patent. To show anticipation of all claims, Qualcomm had the burden to convince the jury by clear and convincing evidence that multiple references anticipate. The jury correctly found that Qualcomm failed to meet this burden.

---

[4] Time and again, Dr. Razavi offered merely conclusory testimony that incorrectly "paraphrased" the meaning of construed claim terms and the application of these claim terms to the prior art. *See, e.g.*, Trial Tr. 10/11 at 57:9-58:11 ("Again, just to paraphrase -- I don't remember the exact wording -- to paraphrase . . . ."), 94:16-95:25 ("And roughly speaking, again, a universal frequency down-conversion module means a circuit that performs down-conversion, without -- I'm just paraphrasing."), 127:21-129:24 ("Well, again, the impedance matching circuit was construed by the Court as a circuit -- again, I'm roughly speaking -- that allows transfer of desire -- desirable amount of power to the next stage, to the next circuitry.").

[5] *See* Trial Tr. 10/11 at 208:2-209:8 (impeached on "distinguishable from noise" element), 209:16-211:1 (impeached on interferors and noise), 228:14-230:15 (impeached on where down-converted signal is created in Weisskopf and purpose of load in Weisskopf), 231:5-13 (omitted noise in simulations), 231:14-232:16 (impeached on reliance on simulations), 234:14-235:6 (stating it was proper for him to make up component values), 236:2-25 (omitted resistor from simulation), 237:6-239:7 (picked arbitrary resistance and capacitance value), 261:10-263:11 (picked arbitrary capacitance and inductance value).

1.  Legally Sufficient Evidence Supports The Jury's Verdict That Weisskopf Does Not Anticipate.

The Weisskopf reference does not anticipate any of the asserted claims of the '551, '518, or the '371 Patents because it fails to describe "each and every claim limitation." *In re Omeprazole Litig.*, 483 F.3d 1364, 1371 (Fed. Cir. 2007). Weisskopf describes a sample-and-hold circuit "capable of measuring the voltage stored on the hold capacitor for the duration of the hold cycle without discharging the capacitor." DX534 at 3; *see also* Trial Tr. 10/11 at 221:5-7. Sample-and-hold circuits, unlike the claimed invention, do not use the transferred energy to generate the down-converted signal. *See, e.g.*, Trial Tr. 10/7 at 268:9-21, 279:4-13; 10/9 at 176:25-182:3; 10/11 at 173:4-175:16. Dr. Razavi's analysis of Weisskopf failed to show anticipation by clear and convincing evidence for six reasons.

First, Dr. Razavi failed to establish that energy in amounts distinguishable from noise (as required by the Court's construction) is transferred from the carrier signal in any embodiment disclosed by Weisskopf. *See In re Omeprazole Litig.*, 483 F.3d at 1371 ("An anticipation analysis requires a comparison of the *construed* claim to the prior art." (emphasis added)). Each asserted claim requires that non-negligible amounts of energy be transferred from the carrier signal to the capacitors at the output of the switches.[6] Dr. Razavi did not apply the Court's claim construction, did not mention the Court's claim construction in his testimony, and failed to explain whether or how any energy transferred from the carrier signal in Weisskopf is "distinguishable from noise." *See* Trial Tr. 10/11 at 54:20-56:24, 231:5-9. The testimony that Qualcomm points to is unavailing because it contains no more than Dr. Razavi's conclusory opinion that Weisskopf discloses the transfer of energy from the carrier signal; missing from this

---

[6] *See supra* n.2 & dkt. 243 at 10-13 (construing "energy transfer" limitations as requiring transfer of energy in amounts distinguishable from noise).

testimony is any explanation or evidence that any energy transferred from the carrier signal is in amounts "distinguishable from noise." *See* dkt. 499 at 15-16; *see Koito*, 381 F.3d at 1152 (conclusory expert testimony is insufficient to establish anticipation by clear and convincing evidence).

Second, the jury was not required to find that Dr. Razavi established by clear and convincing evidence that Weisskopf discloses generating the baseband signal from energy transferred from the carrier signal.[7] Dr. Razavi initially *disagreed* that "the energy in the capacitor shown in figure 2, $C_H$, [in Weisskopf] is not discharged to create the lower frequency signal." Trial Tr. 10/11 at 228:14-20. Dr. Razavi was then impeached with his deposition testimony in which he *agreed* to the very same question. *Id.* at 228:21-229:13.[8] Having presented two contradictory views as to how he contented the lower frequency signal was created in the Weisskopf reference, the jury was not required to believe Dr. Razavi's testimony regarding Weisskopf's alleged disclosure of the "generating" limitations. *See Penny*, 840 F. Supp. 2d at 1318 (stating the Court in its JMOL review "must disregard all evidence favorable to the moving party that the jury is not required to believe"). The jury reasonably concluded that Dr. Razavi's testimony failed to satisfy Qualcomm's clear and convincing burden.

Third, Qualcomm argues incorrectly that the jury was required to find that Weisskopf's so-called "alternative embodiment" satisfies the "generating" limitation. *See* dkt. 499 at 10-12.

---

[7] The "generating" limitations include the following limitations: "a lower frequency signal is generated from the transferred energy" of claim 23 of the '551 and claim 2 of the '371 Patents, "generating the baseband signal from the integrated energy" of claims 1 and 82 of the '518 Patent, "generating the second signal from the integrated energy" of claim 90 of the '518 Patent, and "performing a plurality of charging and discharging cycles of the first and second capacitors to generate first and second down-converted information signals" of claim 18 of the '342 Patent.

[8] Dr. Razavi also impeached himself with regard to the purpose of the resistor and buffer in Figure 2 of the Weisskopf reference. He testified that he could not answer "with a yes or no" whether he agreed "that the purpose of the buffer and the resistor here is to actually prevent this capacitor from discharging energy." *Id.* at 229:14-17. Dr. Razavi was impeached with his deposition testimony in which he testified that "the purpose of that resistor and the buffer … is to actually prevent the capacitor from discharging energy." *Id.* at 229:18-230:15.

Qualcomm argues that "a reference still anticipates even if it 'teaches away' or 'disparages' the claimed invention." Dkt. 499 at 10-12. The Weisskopf "alternative embodiment" suffers from the same deficiencies discussed in the prior two paragraphs—Dr. Razavi's testimony failed to show by clear and convincing evidence that the "energy transfer" and "generating" limitations are disclosed. Thus, missing from both Qualcomm's JMOL motion and Dr. Razavi's trial testimony is any evidence that this so-called Weisskopf "alternate embodiment" taught the full scope of the asserted claims. To anticipate, a prior art reference (including one that is alleged to anticipate by disparagement) must disclose each and every element of the claims. *Koito*, 38 F.3d at 1152. Thus, Qualcomm's argument that the Weisskopf "alternate embodiment" anticipates even if it "disparages" ultimately fails because Dr. Razavi failed to establish that any embodiment in Weisskopf teaches transferring energy from the carrier signal in amounts distinguishable from noise and using that energy to generate the baseband signal.

Fourth, Dr. Razavi's analysis was incomplete—he skipped limitations and failed to apply several claim constructions. Dr. Razavi failed to identify any structure corresponding to the "means for sampling" and "means for sub-sampling" limitations of claims 82 and 90 of the '518 Patent. *See* Trial Tr. 10/11 at 83:23-93:5; *see also Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006). Dr. Razavi's analysis is insufficient as a matter of law. *See In re Omeprazole Litig.*, 483 F.3d at 1371.[9] In light of these shortcomings, Qualcomm cannot show that the jury was required to believe Dr. Razavi's testimony that Weisskopf anticipates the asserted claims.

Fifth, Dr. Razavi admitted that Mr. Weisskopf served a report rebutting Dr. Razavi's anticipation conclusion. Trial Tr. 10/11 at 212:20-214:2. Dr. Razavi testified that he reviewed

---

[9] At best, Dr. Razavi improperly "paraphrased" the meaning of claim terms subject to claim construction(s) in this case. *See supra* n.9

that report and disagreed with Mr. Weisskopf's opinions regarding Mr. Weisskopf's own paper. *Id.* at 212:20-214:7. Dr. Razavi told the jury that he—and not Mr. Weisskopf—was in the best position to compare the paper to the claims. *Id.* at 214:8-12. The jury was not required to agree.

Sixth, Dr. Razavi conceded on cross-examination that his anticipation testimony relied on his own simulations. *See id.* at 231:14-232:22. Dr. Razavi's simulations are not prior art, especially where he made up values for many of the components—values that materially impacted the operation of the circuit. *See id.* at 230:16-231:4, 235:21-239:7. The jury was free to believe that Dr. Razavi picked the component values he did—with 20/20 hindsight—in order to arrive at the result he desired. *See Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348-49 (Fed. Cir. 2004) (commending district court for avoiding "impermissible hindsight" bias in anticipation analysis). Accordingly, the jury was not required to believe any of Dr. Razavi's testimony, properly elected not to credit much of it, and Qualcomm cannot show otherwise.

> 2.   Legally Sufficient Evidence Supports The Jury's Verdict That Estabrook Does Not Anticipate.

Qualcomm argues that Dr. Razavi presented an exhaustive analysis showing that Estabrook anticipates claims 23, 161, and 202 of the '551 Patent, claims 27, 82, 90, and 91 of the '518 Patent, and claim 2 of the '371 Patent.[10] Dkt. 499 at 17-21. However, the jury found to the contrary, and its verdict is well supported by the evidence for at least five reasons.

First, Dr. Razavi failed to establish that Estabrook discloses the transfer of energy in amounts distinguishable from noise (as required by the Court's construction). Each asserted claim requires that non-negligible amounts of energy be transferred from the carrier signal to the capacitors at the output of the switches. *See supra* n.2 & dkt. 243 at 10-13. Dr. Razavi did not

---

[10] Qualcomm cites to Estabrook at DX369, but also referred to a different Estabrook paper (DX817) during trial. In its motion, Qualcomm only discusses DX369. The combination of two references cannot anticipate. *In re Omeprazole Litig.*, 483 F.3d at 1371.

apply the Court's claim construction, nor did he explain whether or how the transferred energy in Estabrook is "distinguishable from noise." *See* Trial Tr. 10/11 at 113:2-114:17, 270:13-271:13. The testimony that Qualcomm points to is unavailing. *See* dkt. 499 at 19 n.22. Qualcomm's cited testimony misses the mark because, at best, it established that Estabrook discloses a capacitor that is sized to "store substantial amounts of energy" relative to that available in the input RF signal and that the diode is on 50% of time, which is "the best we can do." *See* dkt. 499 at 17. This testimony does not establish by clear and convincing evidence that the energy *transferred* from the RF signal is *distinguishable* from noise, regardless of the capacitor's sizing and the diode's operation.[11]

Second, Dr. Razavi failed to establish by clear and convincing evidence that Estabrook discloses generating the baseband signal from the transferred energy. Dr. Razavi testified that the energy from the LO signal in Estabrook is an order of magnitude greater than the energy from the RF input signal, but he failed to present evidence proving that energy from the RF signal, as opposed from the LO signal, is transferred into the capacitor and subsequently used to generate the baseband signal. Trial Tr. 10/11 at 242:23-243:2, 244:7-13; *see also* Fig. 3 of DX369.

Third, Dr. Razavi failed to establish that Estabrook discloses the down-conversion of a carrier signal. The asserted claims require down-conversion of a "carrier signal," which the Court construed to mean "an electromagnetic wave that is capable of carrying information via modulation." Dkt. 460 at 10. Dr. Razavi did not establish that such modulation of information is possible or occurs with respect to the input signal in Estabrook. The signal that he pointed to as the "carrier signal" within Estabrook is a pure, unmodulated sine wave, that is not carrying

---

[11] Dr. Razavi also never explained whether his simulations, which he admitted were not prior art, established that this element was satisfied. And in the simulations upon which he relied, he failed to add noise to determine whether any energy transferred was distinguishable from it. *See* Trial Tr., 10/11 at 232:20-22, 231:10-13.

information. *See* DX369 at Figs. 2(b) & 3. There was no evidence or testimony that this signal is an electromagnetic wave capable of carrying information via modulation. *See* Trial Tr. 10/11 at 99:25-133:12.

Fourth, Qualcomm's argument that Dr. Razavi presented a complete analysis of Estabrook is belied by Dr. Razavi's actual trial testimony. As with Weisskopf, Dr. Razavi again failed to identify and explain the structure that corresponds to the function claimed by the "means for sampling" and "means for sub-sampling" limitations in claims 82 and 90 of the '518 Patent, *see* Trial Tr. 10/11 at 126:11-129:16. *Applied Med.*, 448 F.3d at 1332. In addition, Dr. Razavi failed to adequately address all elements of claims 82, 90, and 91 of the '518 Patent. With respect to these claims, Dr. Razavi discussed only the final limitations of the claims—he skipped all of the other elements of these claims. *See id.* at 126:11-127:14 (for claim 82, stating only that the claim is met, and then discussing the final limitation), 127:15-129:16 (same for claim 90). Similarly, with respect to claim 27 of the '518 Patent, Dr. Razavi testified as to the added dependent limitation of claim 27, but provided no analysis whatsoever for the limitations of claim 1 of the '518 patent, from which claim 27 depends. *See id.* at 123:23-126:10.

Fifth, Dr. Razavi failed to establish that Estabrook discloses "sampling." While Dr. Razavi testified that Estabrook uses a diode as a switch, Trial Tr. 10/11 at 100:12-101:23, he never explained if or how the diode reduces a continuous-time signal to a discrete-time signal, as required by the Court's claim construction. *See id*. In the absence of such evidence or testimony, Estabrook cannot anticipate the sampling limitation of each claim.

>    3.    Legally Sufficient Evidence Supports The Jury's Verdict That DeMaw Does Not Anticipate.

Qualcomm argues that Dr. Razavi presented an "exhaustive analysis" showing that DeMaw anticipates claim 18 of the '342 Patent. Dkt. 499 at 21-24. However, the jury found to

the contrary, and its verdict is well supported by the evidence for several reasons.

First, Dr. Razavi failed to provide clear and convincing evidence that DeMaw satisfies the "sampling" limitation of claim 18. Dr. Razavi admitted that sampling, or reducing a continuous-time signal to a discrete-time signal, is required to find anticipation. Trial Tr. 10/11 at 249:13-22. But he failed to identify if or where the continuous input signal is reduced to a discrete-time signal by DeMaw. In DeMaw, the signal that Dr. Razavi points to as the carrier signal (which is a continuous-time signal) is split into two paths. *Id*. at 256:21-24. Each of the two paths has a switch, but no timing information is supplied for the opening and closing of the switches. *Id*. 251:22-252:16 (Dr. Razavi agreeing that the two output paths in the DeMaw circuit are connected and providing only his bare "assertion" that both switches in the DeMaw circuit *could* be off at the same time); *see also* DX549 (DeMaw reference that provides no information regarding the operation of the switches, *e.g.*, a timing diagram of the LO signal). After the two switches, the outputs of those switches are recombined. DX549 at 19. Without timing information it is not possible to determine whether or not there is "sampling" in DeMaw—as Mr. Sorrells explained, the "sampling" limitation is not satisfied by a circuit where there is always a connection from the input to the output with "no off time" for the switches. *Id.* 10/8 at 127:9-17. In a circuit of this type, if one of the switches is always on *and* the output of both switches are tied together, the output is *not* discrete. *Id*.[12] Dr. Razavi agreed. *Id.* 10/11 at 253:15-18 ("if one of these switches [in Figure 6-7 of DeMaw] is always on, there will always be a path form the input V RF through either branch of the circuit to V IF"). Based on this testimony, and given the differences between the DeMaw circuit and the Infringing Products, the jury was not required to

---

[12] This is *not* the type of circuit in the Infringing Products. As explained in ParkerVision's opposition to Qualcomm's infringement JMOL, the Infringing Products are I/Q demodulators, have timing diagrams showing an off time for each switch, and direct discrete (or sampled) portions of the carrier signal down at least four *separate* output paths that are *not coupled together*. *See* Trial Tr. 10/9 at 245:8-252:7.

believe that DeMaw clearly and convincingly satisfies the "sampling" limitation.

Second, Dr. Razavi failed to establish that DeMaw satisfies the "generating" limitation. Claim 18 of the '342 Patent requires "performing a plurality of charging and discharging cycles of the first and second capacitors to generate first and second down-converted information signals *across* first and second impedance devices, respectively." Dr. Razavi testified that the first and second down-converted information signals in DeMaw are observed immediately after the switches in Figure 6-7 *before* the impedance devices. Trial Tr. 10/11 at 156:15-158:14, 164:15-18, 253:4-8, 259:8-12, 260:7-19. Because Dr. Razavi's opinion is that the down-converted information signals are generated before the impedance devices, the signals disclosed in DeMaw cannot satisfy the limitation that the first and second down-converted information signals are generated *across* first and second impedance devices.[13]

Third, Dr. Razavi based his analysis of DeMaw on flawed simulations. *See id.* 10/11 at 232:17-22, 260:20-263:11. His simulations are not prior art because Dr. Razavi admitted to making up several component values that could materially impact the circuit's operation. *See id.* at 230:16-231:4, 261:16-262:2, 262:10-13, 262:19-263:5. In fact, Dr. Razavi agreed that "[t]here is an infinite range of L values [for the inductor] and C values [for the capacitor] that [one] could pick for this capacitor that would satisfy" the given impedance value. *Id.* at 261:16-262:18. But

---

[13] Qualcomm argues that this argument by ParkerVision "only demonstrate[s] the appropriateness of Qualcomm's noninfringement JMOL." Dkt. 499 at 23 n.24. Qualcomm is mistaken. First, Dr. Razavi's testimony shows that DeMaw does not disclose "generating" the down-converted information signals "across" the impedance devices as required by claim 18 of the '342 patent. Second, as discussed below, since Dr. Razavi's testimony is inconsistent with Qualcomm's noninfringement analysis, its credibility and weight is undermined. Third, ParkerVision's response to Qualcomm's noninfringement JMOL details how the evidence supports the jury's conclusion that the Infringing Products satisfy the "energy transfer" and "generating" limitations. Indeed, Dr. Razavi's testimony that the down-converted information signal is generated "right after" the switches undermines his credibility. For infringement purposes, Qualcomm's cross-examination repeatedly asked Dr. Prucnal and Mr. Sorrells whether generation of the down-converted signal *before* the capacitors (*i.e.* "right after" the switches) infringed the asserted claims, implying that there would be no infringement if the down-converted signal was generated before the capacitor. *See* Trial Tr. 10/8 at 171:24-147:5; 10/10 at 79:19-80:9, 85:11-89:5. Qualcomm similarly argued in closing that the Infringing Products do not infringe because the baseband is generated by the mixer *before* the capacitors. *Id.* 10/15 at 111:8-114:9. As this shows, it is Qualcomm, and not ParkerVision, that is pursuing conflicting infringement and validity theories.

he failed to show how he picked his simulations' values for L and C or where those values are disclosed in DeMaw. Dr. Razavi's non-prior art simulations have not been shown to accurately reflect the operation of DeMaw, and cannot support JMOL. *See Nystrom*, 424 F.3d at 1149.

## IV.   QUALCOMM'S ARGUMENTS FOR A NEW TRIAL ARE WITHOUT MERIT.

### A.   Qualcomm Fails To Establish That The Jury's Verdict Was Against The Great Weight Of The Evidence.

As established above, the jury had sound reasons to find that Qualcomm did not set forth clear and convincing evidence of anticipation. *See* Part III. As the Court noted, this well-educated jury took its duties seriously. Trial Tr. 10/11 at 272:12-13; 10/15 at 17:3-4; 10/16 at 15:4-5; 10/17 at 183:23-24; 10/21 at 285:6-9; *see also Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, No. 8:06-cv-1790-T-33AEP, 2009 U.S. Dist. LEXIS 92712, at *14 (M.D. Fla. Sept. 22, 2009) ("The Court is very mindful of the deference that it must accord any decision reached by the jury."). As a result, Qualcomm's accusation that the jury was "distract[ed] and confus[ed]" (dkt. 499 at 24) is not only belied by the facts, it is insulting to the jurors.

### B.   The Court Correctly Excluded Qualcomm's Requested Instructions.

A new trial based on jury instructions is proper only "when errors in the instructions as a whole clearly mislead the jury." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006). Qualcomm must show that the instructions "were legally erroneous" and that the "errors had prejudicial effect." *Ecolab Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1373 (Fed. Cir. 2002). Qualcomm cannot show that the jury instructions were legally inaccurate or caused prejudice. Thus, its request for a new trial is due to be denied.

#### 1.   Qualcomm's *i4i* instruction is superfluous and misleading.

Qualcomm is mistaken that the exclusion of what it terms the "*i4i* instruction" resulted in legal error and prejudice. Far from causing prejudice by its exclusion, the instruction's inclusion

would have caused confusion. The Court noted that Qualcomm's requested instruction was "not particularly illuminating," and ultimately concluded that it would not "be helpful to the jury." Trial Tr. 10/15 at 46:12-14. As the Court correctly surmised, the instruction would be "likely to confuse," especially considering Qualcomm's thinly veiled attempt to distinguish the invalidity burden of proof between the two prior art scenarios (depending on whether or not the prior art was before the Patent Office). *See* dkt. 372 at 48 (*compare* "clear and convincing" with "highly probable"). As the Supreme Court explained:

> Nothing in § 282's text suggests that Congress meant to . . . enact a standard of proof that would rise and fall with the facts of each case. Indeed, had Congress intended to drop the heightened standard of proof where the evidence before the jury varied from that before the PTO—and thus to take the unusual and impractical step of enacting a variable standard of proof that must itself be adjudicated in each case, ... we assume it would have said so expressly.

*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2250 (2011) (internal citation omitted). Qualcomm attempts to mask the weakness of its argument with its incorrect claim that "ParkerVision argued . . . that Qualcomm's new prior art could be ignored." Dkt. 499 at 25. But ParkerVision made no such argument, and regardless, the Court instructed the jury to consider all of the evidence presented. Trial Tr. 10/15 at 148:16-149:14. Finally, the fact that the *i4i* instruction is unnecessary is underscored by its absence from the Federal Circuit's 2013 Model Patent Jury Instructions. *See* Ex. 1 (Federal Circuit Bar Association Model Patent Jury Instructions (February 2013)).[14] The Court's instructions, viewed "in their entirety," are a correct

---

[14] Although the *i4i* opinion includes a few suggestions as to what a jury "*may* be instructed," it explicitly *required* nothing of lower courts when it refused to "endorse any particular formulation" of instructions. *i4i*, 131 S. Ct. at 2251. But even if an instruction were required in some cases, this was not one of them. Dr. Razavi testified that he "did not believe" that the asserted prior art had been considered by the Patent Office. *See, e.g.*, Trial Tr. 10/11 at 136. And yet, notwithstanding the error in such an assumption, *see* 1 Dept. of Commerce, PTO, Manual of Patent Examining Procedure § 904.03 (8th rev. ed. 2010) ("The examiner is not called upon to cite all references that may be available"), nothing in the record shows that any of Qualcomm's references were "materially new" or that they "differ[ed] from that [which was] evaluated by the PTO." *i4i*, 131 S. Ct. at 2251. In fact, Dr. Razavi admitted on cross-examination that he did not read any of the hundreds of cited prior art references cited in the patents-in-suit and could not opine one way or the other whether the prior art he testified about differed at all from the art before

statement of the law. *DSU Med.*, 471 F.3d at 1304. Thus, exclusion of the instruction was not legal error and Qualcomm suffered no prejudice.

2.   The Court's anticipation instruction is a correct statement of law.

The Court's refusal to add Qualcomm's "disparagement" instruction was not erroneous because the proposed instruction was prejudicial and unnecessary. *See* dkt. 499 at 24. Qualcomm only cites *Celeritas*, but that opinion does not deal with jury instructions. *Celeritas Techs. Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1356 (Fed. Cir. 1998). Neither the American Intellectual Property Law Association's 2012 Model Patent Jury Instructions nor the Federal Circuit Bar Association Model Jury Instructions cite *Celeritas*. *See* Ex. 2; Ex. 3. Indeed, no such instruction appears in either set of neutral model instructions. *See* Ex. 2; Ex. 3. Moreover, the Court's instruction on anticipation as given adheres almost exactly to the American Intellectual Property Law Association's Model Patent Jury Instruction on anticipation. *Compare* Trial Tr., 10/15 at 167:1-169:3 *with* Ex. 2 (American Intellectual Property Law Association's Model Patent Jury Instructions V.6.0 (2012)). The Court, therefore, correctly noted that Qualcomm requested "argument, not instruction." Trial Tr. 10/15 at 42:9; *see also United States v. King*, 3:06-cr-212-J-33MMH, 2006 U.S. Dist. LEXIS 87052, *30 (M.D. Fla. Dec. 1, 2006) ("A court is not obligated to give a jury instruction that is argumentative.").

Although the Court need not consider any alleged prejudice to Qualcomm, Qualcomm suffered no prejudice. *See Synqor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1383 (Fed. Cir. 2013) (omitting analysis of alleged prejudicial effect after determining instruction was a proper

---

the Patent Office. Trial Tr. 10/11 at 192:2-3, 21-22, 193:14-16. Because Qualcomm failed to show any difference between the prior art selected by Dr. Razavi for presentation to the jury and the hundreds of references considered by the Patent Office in the examination of each of the patents, the *i4i* instruction was unnecessary and improper. *Id.* Moreover, a "judge need not deliver instructions describing all valid legal principles. Especially not when the principle in question describes a permissible, but not an obligatory inference. … Rather than describing each, the judge may and usually should leave the subject to the argument of counsel." *Conroy v. Abraham Chevrolet Tampa, Inc.*, 8:01-CV-1466-T-27MAP, 2003 U.S. Dist. LEXIS 28052, at *13-14 (M.D. Fla. Feb. 13, 2003).

statement of the law). Qualcomm had ample opportunity to introduce information regarding the disparagement doctrine during its time in front of the jury, and did so through Dr. Razavi. Trial Tr. 10/11 at 266:4-14. Thus, there was no legal error or prejudice to Qualcomm.

      C.      **ParkerVision Did Not Disregard or Contradict The Court's Construction of the "Generating" Limitations.**

A new trial based on improper counsel arguments requires that "the conduct was such as to impair gravely the calm and dispassionate consideration of the case by the jury." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1474 (11th Cir. 1992). ParkerVision did not argue an erroneous claim construction to the jury. Moreover, Qualcomm waived this argument by not objecting to the testimony offered by ParkerVision's witnesses, eliciting similar testimony on cross-examination, and making similar arguments for non-infringement purposes in closing arguments. For these reasons, a new trial is not appropriate.

      1.      <u>ParkerVision did not argue an erroneous claim construction to the jury.</u>

Qualcomm's assertion that ParkerVision contradicted and disregarded the Court's construction of the "generating" limitations for anticipation purposes is incorrect. *See* dkt. 499 at 1, 3-5, 7-10, 24. ParkerVision had no opportunity to do so—ParkerVision called no witnesses regarding anticipation. In light of this fact, Qualcomm's attempt to point to the *infringement* testimony of Dr. Prucnal and Mr. Sorrells, and counsel's questions during Dr. Razavi's cross-examination fails to support its arguments related to anticipation.

The Court construed the "generating" limitations to have their plain and ordinary meanings. Dkt. 243 at 38-40. The Court provided the same construction to the jury. Dkt. 460 at 11. In their infringement testimony, Dr. Prucnal and Mr. Sorrells opined that the plain and ordinary meaning of the "generating" limitations required the repeated charging and discharging of a capacitor. *See, e.g.*, Trial Tr. 10/8 at 87:6-88:14; 10/9 at 256:5-258:18. In cross-examining

Dr. Prucnal and Mr. Sorrells in support of its non-infringement arguments, Qualcomm elicited similar testimony. *Id.* 10/8 at 148:7-149:3 (Qualcomm's counsel asking cross-examination questions about "what is being transferred out of the capacitor"); *see also id.* at 168:23-169:3 (Qualcomm's counsel asking cross-examination question about "output of current from the storage device"), 171:11-23; 10/10 at 90:19-91:4. Then, in closing arguments, Qualcomm repeatedly emphasized that the claims required energy from the carrier signal to come "out of the capacitor" or to be "transferred out of a storage device" and contended that the Infringing Products did not infringe because they failed to discharge energy from the capacitor. *Id.* 10/15 at 108:21-111:11. Thus, both ParkerVision's witnesses *and* Qualcomm applied the same plain-meaning understanding of these claim limitations for infringement purposes.[15]

Dr. Razavi, Qualcomm's expert, testified that he applied the plain meaning of the "generating" limitations to his anticipation opinions. Trial Tr. 10/11 at 211:13-16. In cross-examination, ParkerVision's counsel asked Dr. Razavi if he agreed that the plain and ordinary meaning of the "generating" limitations required discharge of energy from the capacitor. Trial Tr. 10/11 at 211:13-212:13. In contrast to Qualcomm's non-infringement arguments, Dr. Razavi disagreed. *Id.* Qualcomm never explains how Dr. Razavi's disagreement with a question posed on cross-examination—particularly where Qualcomm asked similar questions in its own cross-examination of ParkerVision's witnesses—can form the basis for a new trial. The Court instructed the jury that counsel's questions were not evidence. *Id.* 10/15 at 149:3-4.[16] A new trial

---

[15] Notably, and in order to avoid highlighting the conflict between Qualcomm's application of the "generating" term for infringement and validity purposes, Qualcomm's motion for JMOL on infringement does not challenge either Dr. Prucnal's or Mr. Sorrells's infringement testimony as "disregarding" or "contradicting" the Court's construction of the "generating" limitations. *See* Dkt. 501. Moreover, in denying summary judgment, the Court noted that "[o]ne skilled in the art who reads the disclosure may conclude that the various elements of the claims combine to restrict the claimed invention" to generating the down-converted signal from the repeated charge and discharge of energy from the capacitor or "indirectly, by measuring the voltage across the capacitor." Dkt. 318 at 6.

[16] Nor does Qualcomm explain how questions posed to Dr. Razavi on cross-examination can form the basis for a

based on improper counsel arguments requires that "the conduct was such as to impair gravely the calm and dispassionate consideration of the case by the jury." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1474 (11th Cir. 1992). Such is not the case here.

> 2.   Qualcomm waived its objection to ParkerVision's application of the "generating" limitations.

Furthermore, Qualcomm waived the ability to advance any alternative construction of the "generating" limitations at this juncture. Qualcomm never objected to Dr. Prucnal's and Mr. Sorrells' infringement testimony that the "generating" limitations were satisfied by the repeated charging and discharging of the capacitor because such testimony comported with Qualcomm's non-infringement arguments. *See* Trial Tr. 10/8 at 87:6-88:14; 10/9 at 256:5-258:18. "Where a party has the opportunity to object, but remains silent or fails to state the grounds for objection, objections … will be waived for purposes of appeal, and this court will not entertain an appeal based upon such objections unless refusal to do so would result in manifest injustice." *Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1296 (11th Cir. 2002).[17] In addition, Qualcomm did not object to ParkerVision's cross-examination questioning of Dr. Razavi about whether he understood the plain meaning of the "generating" limitations to require the discharge of energy from the capacitor. *See* Trial Tr. 10/11 at 211:13-212:13. Qualcomm likely did not object because it similarly questioned ParkerVision's witnesses, *id.* 10/8 at 148:7-149:3, 168:23-169:3,

---

JMOL motion of no anticipation. More importantly, the jury, as the sole arbiters of witness credibility, was not required to believe any (or all) of Dr. Razavi's testimony on anticipation, particularly where it conflicted with the non-infringement arguments advanced by Qualcomm. *See id.* at 149:9-14. And, any disagreement between ParkerVision's experts (on infringement) and Dr. Razavi (on anticipation) as to the application of the Court's claim constructions to the facts of this case (whether infringement or validity) is a factual question that the jury properly resolved in ParkerVision's favor. *See Eaton Corp. v. Rockwell Int'l Corp.*, 322 F.3d 1332, 1337 (Fed. Cir. 2003) ("The application of a properly construed claim to an accused device is a question of fact ….").

[17] *See also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (finding objection waived because the "responsibility for objecting … remains firmly with the parties" and the party failed to object to the evidence's introduction or testimony related thereto).

171:11-23; 10/10 at 90:19-91:4, and relied on a similar understanding for non-infringement purposes. *Id.* 10/15 at 108:21-111:11.

Qualcomm also did not object to the Court's jury instructions which included the "plain meaning" construction of these terms, did not ask the Court to reconsider its claim construction, and did not ask the Court to modify the language in its claim construction or instructions. Trial Tr. 10/15 at 17-80; *see* Fed. R. Civ. P. 51(d)(1)(B); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008) ("litigants waive their right to present new claim construction disputes if they are raised for the first time after trial"). Accordingly, any request for a new trial based upon a newly raised construction argument is waived.

## V.      CONCLUSION

For these reasons, Qualcomm's requests for JMOL or a new trial should be denied.

January 24, 2014

Respectfully submitted,

**McKOOL SMITH, P.C.**

/s/ *Douglas A. Cawley*
Douglas A. Cawley, Lead Attorney
Texas State Bar No. 04035500
E-mail: dcawley@mckoolsmith.com
Richard A. Kamprath
Texas State Bar No.: 24078767
rkamprath@mckoolsmith.com
Ivan Wang
Texas State Bar No.: 24042679
E-mail: iwang@mckoolsmith.com
McKool Smith P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Kevin L. Burgess
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
Josh W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
Leah Buratti
Texas State Bar No. 24064897
lburatti@mckoolsmith.com
Mario A. Apreotesi
Texas State Bar No. 24080772
mapreotesi@mckoolsmith.com
Kevin Kneupper
Texas State Bar No. 24050885
kkneupper@mckoolsmith.com
James Quigley
Texas State Bar No. 24075810
jquigley@mckoolsmith.com
McKool Smith P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

**SMITH HULSEY & BUSEY**

/s/ *James A. Bolling*
Stephen D. Busey
James A. Bolling
Florida Bar Number 117790
Florida Bar Number 901253
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
jbolling@smithhulsey.com

ATTORNEYS FOR
PLAINTIFF PARKERVISION,
INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has

been served on all counsel of record via the Court's ECF system on January 24, 2014.

*/s/ Leah Buratti*
Leah Buratti