**UNITED STATES DISTRICT COURT**
**THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PARKERVISION, INC.,

        *Plaintiff*,

        v.

QUALCOMM INCORPORATED,

        *Defendant*.

Case No. 3:11-cv-719-J-37-JRK

**QUALCOMM'S OPPOSITION TO PARKERVISION'S**
**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE**
**ALTERNATIVE, A NEW TRIAL, ON WILLFULNESS (DKT. 497)**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................1

II.      PARKERVISION'S MOTION DOES NOT MEET EITHER PRONG OF SEAGATE ....................................................................................3

     A.      ParkerVision Cannot Show That Qualcomm Was "Objectively Reckless" ......4

         1.      ParkerVision Ignores Entirely the Threshold Objective Prong ............4

         2.      Qualcomm's Non-Infringement Defenses Were More Than Reasonable—They Require Entry of JMOL In Its Favor ....................5

         3.      Qualcomm Presented Strong Invalidity Defenses ................................8

         4.      Qualcomm Was Not Objectively Reckless in 2006.............................9

     B.      Substantial Evidence Supports The Jury's Verdict That Qualcomm Did Not Willfully Infringe Any Of The Patents ....................................................10

     C.      ParkerVision's Evidence And Argument In Support Of Its Motion For JMOL Is Insufficient and Irrelevant ................................................12

III.      PARKERVISION IS NOT ENTITLED TO A NEW TRIAL ON WILLFULNESS..13

     A.      The Court Need Not Consider ParkerVision's Claims of Error .....................13

     B.      ParkerVision Does Not Identify Any Reversible Error ...................................14

         1.      The Court Correctly Rejected ParkerVision's Attempt To Argue About An Opinion Of Counsel ........................................................14

         2.      The Court Properly Excluded PX 964 .................................................16

         3.      The Court Properly Excluded The Financial Evidence From the 1998-2000 Negotiations....................................................................17

         4.      The Court's Instruction On Willfulness Was Proper...........................18

IV.      CONCLUSION......................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*,
   615 F.3d 1352 (11th Cir. 2010) ...........................................................................12

*Alloc v. Norman D. Lifton Co.*,
   653 F. Supp. 2d 469 (S.D.N.Y. 2009) ...................................................................16

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
   682 F.3d 1003 (Fed. Cir. 2012).................................................................... passim

*Biodex Corp. v. Loredan Biomedical, Inc.*,
   946 F.2d 850 (Fed. Cir. 1991)..........................................................................17, 20

*Broadcom v. Qualcomm*,
   543 F.3d 683 (Fed. Cir. 2008)..............................................................................16

*DePuy Spine v. Medtronic Sofamor Danek*,
   567 F.3d 1314 (Fed. Cir. 2009)............................................................................3, 5

*DR Sys. v. Eastman Kodak*,
   No. 08-669, 2009 WL 3756765 (S.D. Cal. Nov. 9, 2009) ......................................16

*Haygood v. Auto-Owners Ins. Co.*,
   995 F.2d 1512 (11th Cir. 1993) ............................................................................19

*i4i Ltd. P'ship v. Microsoft*,
   598 F.3d 831 (Fed. Cir. 2010)...............................................................................11

*In re Seagate*,
   497 F.3d 1360 (Fed. Cir. 2007) (en banc)...................................................... passim

*Internet Machines LLC v. Alienware Corp.*,
   No. 6:10-cv-23, 2013 WL 4056282 (E.D. Tex. June 19, 2013) ...............................4

*Lee v. Mike's Novelties Inc.*,
   No. 2013-1049, 2013 WL 6097232 (Fed. Cir. Nov. 21, 2013) .................................5

*Nobelpharma AB v. Implant Innovations, Inc.*,
   141 F.3d 1059 (Fed. Cir. 1998)...............................................................................4

*Powell v. Home Depot*,
   663 F.3d 1221 (Fed. Cir. 2011)..........................................................................3, 11

**Table of Authorities**
**(continued)**

**Page(s)**

*Spectralytics, Inc. v. Cordis Corp.*,
    649 F.3d 1336 (Fed. Cir. 2011)..............................................................................15

*Spine Solutions, Inc. v. Medtronic Sofamor Danek U.S.A., Inc.*,
    620 F.3d 1305 (Fed. Cir. 2010)........................................................................3, 5, 9

*Virginia Innovation Sciences, Inc. v. Samsung Elecs. Co., Ltd.*,
    No. 2:12cv548, 2013 WL 6053846 (E.D.Va. Nov. 15, 2013) .................................15

# I.   INTRODUCTION.

At trial, Qualcomm presented overwhelming evidence that it never believed it was infringing any valid claim of any ParkerVision patent.  Qualcomm introduced Mr. Jaffee's testimony and contemporaneous documents from multiple engineers declaring that "we are NOT using [ParkerVision's] technique," "we gave up on [ParkerVision]," "ParkerVision's D2D technology offers little novel remedy, if any, to the known problems of zero-IF," "we told [ParkerVision] to go away, and started our own design," "[w]e have looked at [ParkerVision] and they have nothing of value," "there is no goal of doing anything with energy sampling," and "we do not need ParkerVision IPR to proceed."[1]  The undeniable or unrebutted evidence about how Qualcomm's products work and what the prior art discloses demonstrates that Qualcomm's subjective belief was not only reasonable, but correct.

The evidence proves that the accused products downconvert in a fundamentally different way than ParkerVision's energy sampler because Qualcomm uses a double-balanced mixer followed by a low-pass filter.  Whereas ParkerVision's claimed energy sampler must generate the baseband from sampled energy transferred and stored in a storage device, Qualcomm's double-balanced mixer generates the baseband on its own without sampling energy into a storage device or using that stored energy to generate the baseband. Unlike ParkerVision's "D2D" concept, the capacitor in Qualcomm's low-pass filter serves to filter out the unrelated transmit jammer and has no role in generating the baseband, which the mixer has already generated.   Qualcomm's design documents, Mr. Jaffee, and even ParkerVision's own expert, Dr. Prucnal, confirm that the accused products work this way.

---

[1] 10/21 Tr. 266:15-19; DX 1695; DX 951; JX 98; DX 1706; DX 993; DX 1710.

Qualcomm understood—even before ParkerVision filed this case—the fundamental difference between its mixer-based approach and energy sampling.  So did ParkerVision.  The patents-in-suit never claim or disclose the use of double-balanced mixers followed by a low-pass filter.[2]  The trial evidence shows that ParkerVision admitted that such design had been known since the "antiquities" of communication and differed from energy sampling.[3]  Finally, ParkerVision repeatedly distinguished its claimed inventions from a double-balanced mixer approach—noting that energy sampling does not require "balanced transistor pairs."[4]  The evidence supports—indeed requires—a finding that the accused products operate in a fundamentally different way than the claimed invention, and Qualcomm was reasonable to believe as much.  Thus, ParkerVision has not met *either* prong of *Seagate*.[5]

In its motion, ParkerVision simply ignores Qualcomm's strong non-infringement defense, unrebutted invalidity showing, the fact that its own expert admitted that Qualcomm's products do not operate as the claims require, and overwhelming evidence of Qualcomm's good faith belief that it was not infringing.  Instead, ParkerVision offers improper inferences it wishes the jury had drawn from outdated and irrelevant e-mails that do not discuss the asserted claims or relate to the accused products.  ParkerVision's claim that its inferences would support a different verdict is not enough to overcome the substantial evidence that supports the jury's verdict.  ParkerVision's motion for JMOL must fail.

Alternatively, ParkerVision requests a new trial, asserting that this Court committed numerous evidentiary and instructional errors.  ParkerVision is wrong—the Court did not err

---

[2] 10/10 Tr. 159:24-160:9.
[3] 10/8 Tr. 110:9-12, 161:15-162:2, 162:18-20; 10/10 Tr. 99:2-18, 100:14-17; DX 466, DX 469.
[4] PX 308.
[5] *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).

and, even if it did, any errors were harmless.   ParkerVision has not met the first prong of *Seagate*—proving, as a matter of law, that Qualcomm's defenses were "objectively reckless." Accordingly, the question of willfulness was not properly before the jury and any evidentiary or instructional errors are immaterial.  *Powell v. Home Depot,* 663 F.3d 1221, 1236 (Fed. Cir. 2011) ("[s]hould the court determine that the infringer's reliance on a defense was not objectively reckless, it cannot send the question of willfulness to the jury . . .").  ParkerVision's motion for a new trial, therefore, must also be denied.

## II.   PARKERVISION'S MOTION DOES NOT MEET EITHER PRONG OF *SEAGATE*.

ParkerVision must prove willfulness by clear and convincing evidence.   *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).  Willfulness requires a two-prong analysis.  *Id.*  The first, the "threshold" objective prong, presents a question of law for this Court.  *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012).  The Court must determine whether the accused "infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Seagate*, 497 F.3d at 1371.  If ParkerVision fails to meet its burden on the objective prong, the second, subjective prong is irrelevant.  *DePuy Spine v. Medtronic Sofamor Danek*, 567 F.3d 1314, 1336-37 (Fed. Cir. 2009) (court "need not address" the second *Seagate* prong where patent owner failed to prove the first prong).  ParkerVision has not even attempted to meet the first prong and prove that Qualcomm's defenses were "objectively reckless" or "unreasonable"—rendering the subjective prong irrelevant.   *Seagate*, 497 F.3d at 1371 ("proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness."); *see also Spine Solutions, Inc. v. Medtronic Sofamor Danek U.S.A.,*

3

*Inc.,* 620 F.3d 1305, 1319 (Fed. Cir. 2010). Regardless, pointing to a selection of irrelevant e-mails from an irrelevant time frame—while ignoring contrary e-mails—hardly leads to "only" one "reasonable conclusion."[6] ParkerVision's motion for JMOL fails.

### A. ParkerVision Cannot Show That Qualcomm Was "Objectively Reckless."

The objective prong considers only whether Qualcomm's defenses to infringement are ***objectively*** reasonable; Qualcomm's state of mind is irrelevant. *Seagate,* 497 F.3d at 1371 ("The state of mind of the accused infringer is not relevant to this objective inquiry."). Instead, the Court must determine "whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent." *Bard*, 682 F.3d at 1008.

Contrary to ParkerVision's misstatement of the law,[7] this inquiry is not limited to defenses developed before suit. The trial court must assess the defenses raised during the infringement proceedings:

> On remand, therefore, the court should determine, "***based on the record ultimately made in the infringement proceedings,***" whether a "reasonable ***litigant*** could realistically expect" those ***defenses*** to succeed . . . If, in view of the facts, the ***asserted defenses*** were not reasonable, only then can the jury's subjective willfulness finding be reviewed for substantial evidence.

*Bard,* 682 F.3d at 1008 (citations omitted and emphasis added); *see also Seagate,* 497 F.3d at 1371; *Internet Machines LLC v. Alienware Corp.,* No. 6:10-cv-23, 2013 WL 4056282, at *5-6 (E.D. Tex. June 19, 2013) ("Based on the record developed during trial, PLX could have realistically expected its non-infringement and invalidity defenses to succeed."). As

---

[6] Dkt. 497 at 2, *citing Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1064 (Fed. Cir. 1998) (ParkerVision acknowledging that, to prevail on this motion, it must show that it has proven its case with evidence that the jury is not at liberty to disbelieve, and the evidence leads to only one reasonable conclusion.)

[7] *See* Dkt. 497 at 8 ("the objective prong of willfulness assesses potential defenses at the time of infringement, not defenses generated for litigation purposes only"). Aside from being a misstatement of the law, this proposition is illogical when a defendant first became aware of the patents as a result of the filing of the litigation, as occurred here with several of the patents.

demonstrated below and in Qualcomm's post-trial motions for JMOL,[8] ParkerVision has not proven that Qualcomm's defenses were "objectively reckless," thus ending the inquiry.

### 1.      ParkerVision Ignores Entirely the Threshold Objective Prong.

ParkerVision's motion makes no effort to prove that Qualcomm's defenses were "objectively reckless" or "unreasonable."  ParkerVision never even mentions Qualcomm's non-infringement or invalidity defenses.  Having failed to show that Qualcomm's defenses were "unreasonable," the jury's willfulness verdict in Qualcomm's favor is not subject to review or attack, and this Court may deny ParkerVision's motion on this basis alone.  *Bard,* 682 F.3d at 1008 ("If, in view of the facts, the asserted defenses were not reasonable, only then can the jury's subjective willfulness finding be reviewed for substantial evidence.").

The fact that the jury found for ParkerVision on infringement and validity does not help.  An unsuccessful defense does not equate to an unreasonable defense.  *Spine Solutions,* 620 F.3d at 1319 (infringer "was not objectively reckless in relying on [invalidity] defense" that the jury rejected); *Lee v. Mike's Novelties Inc.,* No. 2013-1049, 2013 WL 6097232, at *1, *5-6 (Fed. Cir. Nov. 21, 2013).  Because ParkerVision failed to address the threshold prong of *Seagate*, Qualcomm need not demonstrate that its defenses were not "objectively reckless."  But it will.  Qualcomm's defenses were not just reasonable, they were correct.

### 2.      Qualcomm's Non-Infringement Defenses Were More Than Reasonable—They Require Entry of JMOL In Its Favor.

Qualcomm established non-infringement through the admissions of ParkerVision's expert and the inventor himself.  (*See generally* Dkt. 501.)  Its defense precludes a willfulness finding.  *See, e.g.*, *DePuy Spine*, 567 F.3d at 1336-37.

---

[8] Dkt. Nos. 501, 499.

***First***, Qualcomm established that its products do not meet the "generating" limitation that is an essential element of all asserted claims. Both Mr. Sorrells and Dr. Prucnal admitted that all claims require that the lower frequency baseband signal be "generated" from carrier energy transferred into and stored in a storage device:

> Q. And in order to have energy transfer as defined in every one of the claims at issue in this case, you need to have current from the carrier signal flow into the storage device, correct?
>
> A. Correct.
>
> * * *
>
> Q. And then the energy -- then the current from the carrier signal, which is flowed into the storage device, is then used to generate the baseband, correct?
>
> A. Correct.

(10/10 Tr. at 84:23-85:10.)[9]   This is how ParkerVision's energy sampler accomplishes downconversion. The baseband is generated from the energy that flowed into the storage device. As ParkerVision concedes, if the baseband is created from something ***other*** than the energy transferred and stored in the storage device, Qualcomm does not infringe:

> Q. If the accused products get the baseband signal somehow or somewhere other than from the carrier signal energy that has been stored in the capacitor, then those products do not infringe your patents, correct?
>
> A. I believe that's correct.

(10/8 Tr. 174:1-5.)

The overwhelming evidence demonstrated that Qualcomm's products do ***not*** "generate" the baseband from energy stored in a capacitor; instead, Qualcomm's double-balanced mixers generate the baseband long before the signal reaches the capacitor:

---

[9] *See also* 10/10 Tr. at 85:20-23, 86:10-14, 86:17-19, 86:24-87:10, 88:1-14, 88:21-89:5, 90:25-91:4, 91:11-15, 91:24-92:3, 163:13-20.

Q. So at least in Qualcomm's architecture, the double balanced [mixer] not only is capable of, it does, in fact, create the baseband before it hits the TX filter that you're talking about now, correct?

A. Yes.

(10/10 Tr. at 177:15-19.)  Dr. Prucnal confirmed this fact over and over and over again. (10/10 Tr. at 133:1-9, 137:9-12, 138:9-14, 199:9-200:7, 240:11-22; *see also* 10/9 Tr. at 215:22-216:7, 229:21-25, 243:15-244:2.)

Aside from the admissions of ParkerVision's experts, all other relevant evidence establishes that Qualcomm creates the baseband with its double-balanced mixers and not by transferring energy into a storage device, as all claims require.  Qualcomm's design documents—which are the most reliable evidence of how Qualcomm's products work—explicitly disclose that "[t]he mixer downco[n]verts the RF signal to baseband signal."  (DX 605 at 17.)  Mr. Jaffee confirmed that Qualcomm's design creates the baseband using double-balanced mixers—not an energy sampler:  "Q. With respect to Magellan, where was the baseband generated?  A.  In the double balance mixer."  (10/21 Tr. 270:5-7.)  Dr. Razavi, one of the leading RF experts in the world, confirmed that a double-balanced mixer "performs the down-conversion operation," "generates the lower frequency signal," and cancels the carrier signal.  (10/11 Tr. 26:1-2; 106:12-20.)  As a matter of scientific fact, which ParkerVision ignores, the double-balanced mixers in all of the accused products generate the baseband before it reaches the capacitors at issue and, thus, do not infringe.  (10/10 Tr. at 177:15-19.)

The evidence uniformly establishes that the capacitors are used for an entirely different purpose—filtering the TX jammer.  No evidence supports a contrary conclusion. Dr. Prucnal conceded that Qualcomm's design documents show that the capacitors exist to

filter the TX jammer, and offered no contrary evidence.  (DX 605 at Fig. 3-2; DX 487 at 17; 10/10 Tr. 187:21-24; 199:21-200:21.)  Mr. Jaffee also confirmed that the capacitor in the TX filter is intended to and does filter the TX jammer, and does not receive any carrier energy for purposes of generating the baseband.  (10/21 Tr. 267:2-8; 269:6-12.)  In response to Qualcomm's original motion for JMOL of non-infringement, ParkerVision argued only that the baseband signal may get "baked" further or may take a detour through the capacitor. Even if true, ParkerVision has presented no evidence that this "baking" or "detour" helps "generate" the baseband in any way.  Rather, the record evidence is undisputed that the baseband already exists before it reaches the capacitor.  (10/10 Tr. at 177:15-19.)

*Second*, Qualcomm established that it does not "sample" as required by the claims. "Sampling" means to reduce a continuous time signal to a discrete time signal.  (Dkt. 243 at 6.)  If the output of the downconverter has a "continuous output," it does not infringe.  (10/8 Tr. 150:9-16.)  Dr. Prucnal admitted that the accused products convert "from RF to analog baseband" and "[a]nalog is another way of saying continuous."  (10/9 Tr. 217:9-17; 171:1-7.) Thus, Qualcomm's downconverters output a continuous time signal and do not infringe.

Qualcomm's products also do not "sample" because they do not "reduce" the carrier signal at all.  Qualcomm's products *redirect* the entire signal through various paths within the mixer core itself.  (DX 835 at 10; 10/10 Tr. 185:20-25, JX 62 at 17; 10/9 Tr. 233:5-235:3; 10/10 Tr. 185:17-25.)  Redirecting the entire signal is not "reducing" or "sampling" it.

Qualcomm's 50% duty cycle products always have a signal in both the I and Q paths in the receiver.  (DX 505 at Fig. 7-16.)  As a result, the products have only a non-infringing continuous time signal.  Although Dr. Prucnal said that the products do not always operate at

a 50% duty cycle, his testimony stopped far short of anything needed to prove infringement, much less willfulness.  He did *not* testify that Qualcomm's 50% duty cycle products ever operate at a *lower* duty cycle (rather than a higher duty cycle), which would have been necessary to support ParkerVision's sampling infringement theory.  (10/10 Tr. 65:13-66:3.)  Moreover, ParkerVision offered no evidence that Qualcomm intended the 50% duty cycle products to operate at a less than 50% duty cycle.  At most, ParkerVision speculated that Qualcomm's products might not operate as Qualcomm intended, in some unknown circumstances never established as a matter of proof.  Such speculation does not support an infringement verdict, and falls far short of establishing objective recklessness.

### 3.     Qualcomm Presented Strong Invalidity Defenses.

Qualcomm also presented a compelling invalidity defense.  (*See generally* Dkt. 499.)  Dr. Razavi provided unrebutted testimony fully explaining that three references anticipate each of the asserted claims.  (10/11 Tr. 41:7-99:10, 99:25-133:12, 140:9-164:21; JX 99.)  Unlike Dr. Prucnal's cross-examination, which yielded admissions establishing non-infringement, Dr. Razavi's cross-examination raised only red herrings.  ParkerVision also argued that the jury should ignore Dr. Razavi's testimony because he allegedly failed to show that the prior art met the imaginary "discharge" element that ParkerVision simply assumed is part of every claim—despite this Court's finding otherwise.  (Dkt. 499 at 4-5; Dkt. 318 at 6.)  None of these improper arguments establish that Qualcomm's invalidity defense was objectively reckless.  *Spine Solutions,* 620 F.3d at 1319 (where accused infringer "raised a substantial question" as to the validity, it "was not objectively reckless in relying on this defense").  Qualcomm's invalidity showing alone defeats ParkerVision's motion.

### 4.      Qualcomm Was Not Objectively Reckless in 2006.

ParkerVision argues that trial defenses are irrelevant to *Seagate's* objective prong. (Dkt. 497 at 8.)   As stated above, ParkerVision's assertion is incorrect as a matter of law. *Bard,* 682 F.3d at 1008; *Seagate,* 497 F.3d at 1371.   Regardless, the overwhelming evidence shows that Qualcomm's pre-litigation conduct was also not "objectively reckless."

First, the non-infringement defense that Qualcomm presented at trial was not new; it was a matter of historical fact.   As Mr. Jaffee explained, Qualcomm's engineers knew that double-balanced mixers followed by low-pass filters were in the prior art long before ParkerVision filed its applications.   Qualcomm's design documents, part of the historical record, show that Qualcomm always intended to use double-balanced mixers to generate the baseband and a capacitor to filter the TX jammer.  (DX 605 at 17.)   The evidence shows that Qualcomm always believed that its approach was different from the ParkerVision approach. (DX 1695 ("We do not need Parkervision IPR to proceed. We can obtain an approximate 6 dB noise figure using a double-balanced mixer ....").)   Qualcomm's non-infringement defense was consistent both pre-litigation and post-litigation.

Second, the evidence at trial shows that it was not "objectively reckless" in 2006 for Qualcomm to use a classic double-balanced mixer followed by a low-pass filter design.   The patents at issue do not disclose the use of a double-balanced mixer.   (10/10 Tr. 159:24-160:9.)   The use of double-balanced mixers followed by low-pass filters had been known since the "antiquities"—meaning ParkerVision's patents could not and in fact do not claim that design—regardless of the contrary arguments ParkerVision presented in this case.  (10/8 Tr. at 110:9-12, 161:15-162:2, 162:18-20; 10/10 Tr. at 99:2-18, 100:14-17; DX 466; DX

469.)  ParkerVision also repeatedly distinguished its design from traditional double-balanced mixers—both to Qualcomm and publicly.  ParkerVision described its invention as making a "clean break" from conventional mixers, allowing the energy sampler to downconvert *without balanced transistor pairs.*  (PX 308; DX 734; DX 421; DX 1729; DX 1235; DX 91; 10/8 Tr. at 129:13-21, 131:17-132:6, 132:16-24, 133:6-9; 10/9 Tr. at 126:4-7, 126:17-21, 127:8-17, 127:22-128:1; 10/10 Tr. at 104:5-20.)  Indeed, ParkerVision employees chided each other if anyone referred to energy sampling using the "'m' word" (meaning "mixer").  (DX 1198; 10/9 Tr. at 135:8-20; *see also* Dkt. 398; *e.g.*, *id.*, § IV.B.2.b.)

ParkerVision cannot prove that Qualcomm was "objectively reckless" by using a design (1) never claimed in its patents, (2) known since the "antiquities" of communications, and (3) that ParkerVision itself had admitted to the public and to Qualcomm was *not* its invention.  These facts simply do not support a finding of "objective recklessness."

### B.   Substantial Evidence Supports The Jury's Verdict That Qualcomm Did Not Willfully Infringe Any Of The Patents.

Having failed to meet the objective prong of a willfulness claim, the Court need not even consider whether substantial evidence supported the jury's finding on the subjective prong.  *Bard,* 682 F.3d at 1008; *Powell,* 663 F.3d at 1236.  But if the Court elects to review the issue, ParkerVision's motion must be denied on that basis as well.

In reviewing the jury's verdict on the subjective prong, the Court must decide whether substantial evidence supports the verdict.  *Bard,* 682 F.3d at 1008; *i4i Ltd. P'ship v. Microsoft*, 598 F.3d 831, 859 (Fed. Cir. 2010).  JMOL is inappropriate if "there was any legally sufficient basis for a reasonable jury to find in favor of the nonmoving party."

11

*Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1360 (11th Cir. 2010).  Here, substantial evidence supports the jury's willfulness verdict.

First, as described above, Qualcomm designed its products using an architecture that it believed, and still believes, operates in a fundamentally different way from ParkerVision's energy sampler—with a double-balanced mixer followed by a low-pass filter (instead of a sampler that uses a storage device to generate the baseband).  Qualcomm's design documents and Mr. Jaffee confirm that the accused products were designed to "generate" the baseband with the double-balanced mixer.  (10/21 Tr. 266:15-19; DX 605 at Fig. 3-2; DX 487 at 17.)  ParkerVision can point to no evidence to establish that the designs at issue were believed or intended to infringe ParkerVision's patents.

Second, Qualcomm submitted numerous contemporaneous e-mails that show that Qualcomm engineers—including Chuck Wheatley—believed that a double-balanced mixer approach was fundamentally different than ParkerVision's sampling approach:

- "We do not need Parkervision IPR to proceed. We can obtain an approximate 6 dB noise figure using a ***double balanced mixer*** ...."  (DX 1695.)

- "We are NOT using their technique" (DX 951 (Wheatley).)

- "We told them to go away, and started our own design" (JX 98 (Wheatley).)

- "Rob [Gilmore]/Paul Peterzell [were] pursuing the ***mixer*** solution," and Chuck Wheatley and others were working on "an implementation based either on PV or impulse ***sampling***."  (DX 1694.)

- "1. Paul should pursue ***mixer*** based solution" with Gilmore and "2. Bruce should look at ***sampled*** approach" with Wheatley) (DX 712.)

Qualcomm's documents show its clear subjective intent to use a traditional double-balanced mixer and a low-pass filter according to their long-established functions, which are

fundamentally different than an energy sampler.  (*See generally* Dkt. 398; *e.g.*, *id.*, §§ III.B.1, IV.B.2.a.)  Similarly, the record shows that Qualcomm did not believe that ParkerVision's patents provided any novel invention over the prior art.

- **Saed Younis**: "From the above discussion, it should be evident that ParkerVision's D2D technology offers little novel remedy, if any, to the known problems of zero-IF."  (DX 993 (Mar. 25, 1999).)

- **Chuck Wheatley**: ParkerVision engineers "are the same guys who were here a few years ago, and could not explain how they worked ...." (JX 98.)

- **Charlie Persico**: "We have looked at them and they have nothing of value. They file patents left and right but nothing of strong value."  (DX 1710.)

The evidence Qualcomm presented, combined with its substantial defenses of non-infringement and invalidity, were more than sufficient to support the jury's verdict.

> **C.   ParkerVision's Evidence And Argument In Support Of Its Motion For JMOL Is Insufficient and Irrelevant.**

ParkerVision must show that the jury's verdict lacked substantial evidence.  Drawing unwarranted inferences from a few irrelevant and out-of-date emails that ParkerVision contends would have supported a different result is not enough to overcome the overwhelming evidence submitted by Qualcomm.   The jury was right deciding that ParkerVision could not carry its burden through its interpretation of the e-mails.[10]  First, the e-mails were remote in time.  Qualcomm is not alleged to have infringed until 2006.  With one exception, the e-mails upon which ParkerVision relies are from 1998, 1999, or 2000, when Qualcomm was still contemplating its options for direct downconversion and when ParkerVision was promising to deliver a tangible solution, including a "universal" downconverter for any and all frequencies.  (10/9 Tr. 82:18-84:25; DX 422; DX 756; DX

---

[10]   *See* Dkt. 497 at 2 (ParkerVision admitting that it must show that it could prove its case with evidence that the jury is not at liberty to disbelieve and that the "only reasonable conclusion" is in ParkerVision's favor).

1636; DX 1640; DX 1642.)  E-mails from that time frame, before the patents-in-suit issued, say nothing about Qualcomm's subjective intent in 2006.  Second, the e-mails do not even relate to the accused products, which were developed years later.  Third, the e-mails say nothing about whether Qualcomm believed it was infringing the claims asserted in this case.  At the time Chuck Wheatley analyzed the patents, the asserted claims had not even been drafted.[11]  Thus, the jury was free to decide that Wheatley's comment about stepping on an unspecified claim out of thousands was irrelevant to whether Qualcomm willfully infringed any of the asserted claims.

Finally, the jury had ample reason to discount the 2004 Seyfi Bazarjani e-mail about revisiting the "parker vision approach and see[ing] if we can make it work."  (PX 322.) ParkerVision presented no evidence that this discussion about considering all possible alternatives—in which "no idea is too stupid"—even resulted in a meeting to revisit the PV approach.  The fact that ParkerVision presented no evidence from Wheatley's deposition to that effect at trial was enough for the jury to conclude that no such meeting occurred.  Even if such a meeting had occurred, ParkerVision has no evidence that Qualcomm ever intended to incorporate the ParkerVision approach into its products, as opposed to rejecting it as an idea that lacked merit.  The overwhelming evidence shows that Qualcomm elected to go the traditional double-balanced mixer route rather than use ParkerVision's energy sampling approach.  (10/21 Tr. 266:15-19; DX 1695; DX 951; JX 98; DX 1706; DX 993; DX 1710.)

---

[11] Only the application that resulted in the '551 patent was among the applications that Wheatley reviewed.  At that time, it did not contain the claims asserted in this case.  (*Compare* JX 1 at PV0000565 (application claim 30), *with* DX 364 at col. 116, ll 24-37 (issued claim 23).)

14

### III.   PARKERVISION IS NOT ENTITLED TO A NEW TRIAL ON WILLFULNESS.

#### A.   The Court Need Not Consider ParkerVision's Claims of Error.

ParkerVision accuses this Court of committing numerous errors—both evidentiary and instructional—that it claims led to the jury's verdict on willfulness.  As discussed above, a jury cannot make a willfulness finding if ParkerVision fails to establish that Qualcomm acted in an "objectively reckless" and "unreasonable" manner.  *Bard*, 682 F.3d at 1008. Because ParkerVision failed to make that threshold showing, the alleged errors are harmless.

#### B.   ParkerVision Does Not Identify Any Reversible Error.

##### 1.   The Court Correctly Rejected ParkerVision's Attempt To Argue About An Opinion Of Counsel.

ParkerVision argues that it should have been able to highlight Qualcomm's alleged failure to obtain an opinion of counsel.  ParkerVision puts the cart before the horse.  Before it can argue about an opinion of counsel, ParkerVision must show that Qualcomm was "objectively reckless."  *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1347-48 (Fed. Cir. 2011) ("In *Seagate* . . . the court held that there must be 'objective recklessness,' before failure to obtain an exculpatory opinion of counsel can establish willful infringement."). ParkerVision's evidence does not support an infringement verdict, and falls far short of proving "objective recklessness."

In any event, the Court correctly concluded that the record did not support ParkerVision's argument.  Qualcomm had no reason—and no legal obligation—to seek an opinion of counsel.[12]  *Seagate*, 497 F.3d at 1371 ("Because we abandon the affirmative duty

---

[12] Qualcomm continues to dispute that it had knowledge of all of the asserted patents.  The mere fact that it knew about the '551 patent does not, as a matter of law, establish that it knew of any later patents.  *See, e.g., Virginia Innovation Sciences, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:12cv548, 2013 WL 6053846, at *8-9

of due care, we also reemphasize that there is no affirmative obligation to obtain opinion of counsel.")  As ParkerVision conceded at trial, it did not provide any notice of infringement to Qualcomm before suit.  Without evidence of such notice or any other trigger that could have raised any question by Qualcomm about infringement, the issue of an opinion of counsel was irrelevant.[13]  Instead, ParkerVision's proposed instruction and its arguments would have served only to improperly insinuate to the jury that Qualcomm had an affirmative duty of due care not to infringe, the very duty *Seagate* overruled.  *See, e.g.*, *DR Sys. v. Eastman Kodak*, No. 08-669, 2009 WL 3756765, at *12 (S.D. Cal. Nov. 9, 2009) (rejecting advice of counsel inference for time before accused infringer received notice of alleged infringement); *Alloc v. Norman D. Lifton Co.*, 653 F. Supp. 2d 469, 476 (S.D.N.Y. 2009) ("Alloc asked the Court to consider the fact that Balterio never obtained an opinion from legal counsel .... The *Seagate* court, however, did away with this requirement by holding that there is no affirmative obligation to obtain opinion of counsel.") (internal quotation omitted).  The Court's instruction was correct.

The record also irrefutably established that Qualcomm believed that it was *not* following ParkerVision's approach.  (*See supra*.)  Qualcomm sold direct downconversion receivers for four years before introducing the first accused product.  Even then, the accused products contained the same prior art structure (double-balanced mixer followed by a low-

---

(E.D. Va. Nov. 15, 2013).  This is yet another basis on which the jury could, rightfully, have decided that Qualcomm was not a willful infringer.

[13] The facts here are unlike those in the *Broadcom v. Qualcomm* case that ParkerVision cites.  Whether Qualcomm had any reason to obtain an opinion of counsel was not in dispute.  Qualcomm had obtained and relied on a validity opinion, but not a non-infringement opinion.  *Broadcom v. Qualcomm*, 543 F.3d 683, 697 (Fed. Cir. 2008).  In addition, the Court in *Broadcom* was addressing a different issue—whether advice of counsel is relevant to inducement.  *Id.* at 697-99.  The Federal Circuit was not deciding *willfulness*, but whether advice of counsel was relevant to the intent element of an *inducement* claim.  *Id.* at 699.

pass filter) as the products that ParkerVision did *not* accuse of infringement.  ParkerVision offered no reason why Qualcomm would have believed it needed to obtain an opinion of counsel regarding a prior art design (double-balanced mixers followed by low-pass filters) that Qualcomm had used for years.  Indeed, ParkerVision submitted no evidence that it gave Qualcomm notice of its infringement allegations before this case was filed—because it did not.  To allow ParkerVision to argue the absence of an opinion of counsel would have been improper and prejudicial given the facts in this case.  *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 854 (Fed. Cir. 1991) (jury instructions must address factual issues for which there is disputed evidence of record).

Moreover, any argument by ParkerVision that Qualcomm did not obtain an opinion of non-infringement or invalidity would have been untrue as a matter of fact.  Qualcomm sought to have Mr. Jaffee testify as to opinions he formed regarding non-infringement and invalidity before he began working on this matter with the Qualcomm legal team.[14]  (10/21 Tr. 222:17-223:22.)  The Court sustained ParkerVision's objection to that testimony—after ParkerVision argued that Mr. Jaffee's testimony was effectively legal in nature.  (10/21 Tr. 223:23-224:15.)  But the Court's exclusion of the testimony was not a free pass to allow ParkerVision and its counsel to argue facts that simply were not true.  ParkerVision cannot successfully object to and exclude Mr. Jaffee from testifying to the belief he formed, when the complaint was served, that Qualcomm did not infringe and that the patents were invalid,

---

[14] The fact that Mr. Jaffee is an engineer rather than a lawyer is immaterial.  It is hard to imagine someone more qualified than Mr. Jaffee to analyze the patents and form a belief of non-infringement or invalidity.  Unlike a lawyer, Mr. Jaffee is a person of ordinary skill in the art and would know immediately what the patents and prior art disclose to just such a person.  Moreover, Mr. Jaffee was a designer on the two products presented at trial.  He is far more qualified than any lawyer to determine what the patents disclose to a person of ordinary skill in the art and to compare that disclosure to the products that he designed.

and then complain that this Court erred in precluding it from arguing that Qualcomm never obtained an opinion supporting its good faith belief of non-infringement and invalidity. Rather, having sustained the objection, it would have been error to allow ParkerVision to argue something that was untrue.

As the Court correctly observed, advice of counsel was not an issue in the case. ParkerVision never solicited testimony from any witness that Qualcomm failed to obtain an opinion of non-infringement or invalidity; obviously, ParkerVision did not want to open the door to Mr. Jaffee's testimony.  The Court did not err.

### 2.    The Court Properly Excluded PX 964.

ParkerVision argues that the Court erred in excluding PX 964, an irrelevant employee self-evaluation.  (Dkt. 497 at 15.)  ParkerVision is incorrect.  The Court had multiple reasons to exclude PX 964, including authentication, relevance, lack of foundation, and undue prejudice.  PX 964 relates to an employee's self-proclaimed "summary of accomplishments", but does *not* state that the employee worked on, or had first-hand knowledge of, any relevant product.  Moreover, PX 964 was written in September 2001—almost *five years before* Qualcomm introduced the first accused product.  ParkerVision attempts to gloss over this massive time gap by claiming that the e-mail references the "ZIF architecture" and argues that later generations of ZIF products were found to infringe.  But the ZIF products that had been developed in 2001 were not the products accused of infringement.

Second, ParkerVision cannot show any prejudice from the refusal to admit this document into evidence.  Over Qualcomm's objection, the Court allowed ParkerVision to read its substance to the jury.  (10/22 Tr. 40:19-41:4.)  Because the jury heard its content, its

exclusion was harmless. *Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1518-19 (11th Cir. 1993) (finding no substantial prejudice where the complaining party quoted from the excluded document during cross-examination and thus "successfully offered [its] own version to the jury of what this document 'showed'").

> 3. **The Court Properly Excluded The Financial Evidence From the 1998-2000 Negotiations.**

ParkerVision argues that the Court erred in excluding evidence of the financial terms of the parties' 1999 negotiations and evidence that Qualcomm allegedly wanted to maintain a poker face during its negotiations with ParkerVision. Yet again, the Court did not err.

First, these documents relate to unconsummated negotiations over a potential license and technology transfer agreement in 1999. ParkerVision concedes that Qualcomm did not sell any infringing product until 2006—seven years later. The Court correctly ruled that Qualcomm's opinions in 1999 regarding a potential technology transfer and yet-to-be-issued patents have no bearing on how Qualcomm would have valued the patents in 2006—after it had developed its own non-infringing direct downconverter. ParkerVision does not offer any reason for the Court to revisit its conclusion. It merely argues that Qualcomm's 1999 perspective (when Qualcomm had no direct downconverter and when ParkerVision promised a comprehensive technology transfer along with a "universal frequency downconverter") "supports an inference that Qualcomm later [in 2006] intentionally infringed that technology to obtain the substantial value that Qualcomm subjectively believed the technology provided [in 1999], without ever having to pay ParkerVision a dime." (Dkt. 497 at 20.) The Court correctly found otherwise.

Second, ParkerVision cannot show that the alleged error was harmful.  ParkerVision was allowed to introduce—over Qualcomm's objections—a significant amount of evidence of the 1999 discussions.  Those documents include e-mails referring to ParkerVision's technology as the "holy grail of RF" and "revolutionary."  (PX 70; PX 85; PX 91; PX 164; PX 307.)  Excluding even more of such evidence was not error and certainly not harmful error.

### 4.     The Court's Instruction On Willfulness Was Proper.

Finally, ParkerVision again complains that the Court rejected ParkerVision's "totality of circumstances" willfulness instruction.  The Court did not err.  First, the evidence did not support ParkerVision's proposed instruction, as no evidence suggested any "copying" or that Qualcomm should have obtained an opinion of counsel before continuing to use the well-known double-balanced mixers / low-pass filter architecture.  *Biodex Corp.*, 946 F.2d at 854.  Second, ParkerVision cannot show any harm.  The willfulness verdict was correct; no reasonable jury could have found otherwise, regardless of the instructions.  The jury did not need an additional explanation of the "totality of the circumstances," and the jury's deliberations do not show confusion about the willfulness standard.[15]

In short, no reasonable jury could have found for ParkerVision on willfulness, and none of the Court's evidentiary or instructional rulings could have changed the result.

## IV.    CONCLUSION.

ParkerVision has not met either prong of the *Seagate* analysis and has failed to show any reversible error warranting a new trial.  The Court should, therefore, deny ParkerVision's motion for JMOL and its alternative motion for a new trial on willfulness.

---

[15] Qualcomm could just as easily posit that after hearing the testimony in Phase II, some members of the jury doubted the correctness of the underlying infringement verdict, creating a lengthy debate.

January 24, 2014

Respectfully submitted,

COOLEY LLP

By:     /s/ Timothy S. Teter
          Stephen C. Neal (admitted pro hac vice)
          nealsc@cooley.com
          Timothy S. Teter (admitted pro hac vice)
          teterts@cooley.com
          Jeffrey S. Karr (admitted pro hac vice)
          Ben Damstedt
          bdamstedt@cooley.com
          Five Palo Alto Square
          3000 El Camino Real
          Palo Alto, CA 94306-2155
          Telephone:  (650) 843-5182
          Facsimile:  (650) 849-7400

CRAVATH, SWAINE & MOORE LLP
          Keith R. Hummel (admitted pro hac vice)
          khummel@cravath.com
          David Greenwald (admitted pro hac vice)
          dgreenwald@cravath.com
          Worldwide Plaza
          825 Eighth Avenue
          New York, New York 10019
          Telephone:  (212) 474-1000
          Facsimile:  (212) 474-3700

          -and-

BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P.A.
          John A. DeVault, III
          Florida Bar No. 103979
          jad@bedellfirm.com
          Courtney K. Grimm
          Florida Bar No. 953740
          cgrimm@bedellfirm.com
          The Bedell Building
          101 East Adams Street
          Jacksonville, Florida 32202
          Telephone:  (904) 353-0211
          Facsimile:  (904) 353-9307

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of January, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Timothy S. Teter
Timothy S. Teter (admitted pro hac vice)
teterts@cooley.com
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone:  (650) 843-5182
Facsimile:  (650) 849-7400

*Attorney for Defendant Qualcomm Incorporated*

1210252 /HN